```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

**UNITED STATES OF AMERICA** )
)
    v. )   Crim No. 13-10200-GAO
)
**DZHOKHAR A. TSARNAEV,** )
        **Defendant** )

GOVERNMENT'S NOTICE REGARDING
THE TIMING OF ANY FILING UNDER 18 U.S.C. § 3593(a)

    The United States of America, by and through its undersigned counsel, respectfully submits this notice regarding the timing of any filing under 18 U.S.C. § 3593(a).

    Dzhokhar Tsarnaev has been charged in an indictment with 30 crimes, 17 of which carry a maximum sentence of death. If the government seeks the death penalty in connection with any of those crimes, the law requires it to file a notice with the Court "a reasonable time before the trial or before acceptance by the court of a plea of guilty." 18 U.S.C. § 3593(a).

    The Attorney General has established internal policies and procedures to guide the Department of Justice in deciding whether to seek the death penalty. Those procedures are found in the United States Attorney's Manual ("USAM") and are commonly known as the Death Penalty Protocol ("DPP"). See USAM §§ 9-10.010 to 9-10.190. They provide, among other things, that the Attorney General himself will make the final decision about whether to seek the death penalty. USAM § 9-10.040. To facilitate that

decision, the United States Attorney in the charging district must make a confidential submission of relevant information to the Attorney General "as expeditiously as possible."  USAM §§ 9-10.040, 9-10.080.  If the district court sets a deadline for the government to file a section 3593(a) notice, then the U.S. Attorney must make the submission to the Attorney General no fewer than 90 days before the deadline.  Id.  The United States Attorney must give counsel for the defendant a reasonable opportunity to provide input on the death-penalty authorization decision.  Id.

By letter dated July 26, 2013, the government asked defense counsel to provide the U.S. Attorney their input on the death penalty authorization decision no later than August 23, 2013. Defense counsel responded by requesting additional time.  In reply, the government informed defense counsel that the U.S. Attorney plans to make the submission to the Attorney General on or about October 31, 2013, and asked the defense to provide any input before then.  This deadline -- i.e. approximately six months after the events giving rise to the indictment -- provides the defense a "reasonable opportunity" to present its input while also satisfying the U.S. Attorney's responsibility to make its submission to the Attorney General "as expeditiously as possible."

In the initial status conference report filed on September

17, 2013, the defendant "requests that the Court address issues relating to the timing and procedure for the death penalty protocol at the initial status hearing."  In support of this request, the defendant cites CJA Guideline 6.04, which in turn discusses the DPP.

To the extent the defense requests that the Court set a deadline for anything other than the filing of the section 3593(a) notice itself, the request is improper.  As the court correctly noted in United States v. Slone, ___ F.Supp.___, 2013 WL 5217932 (E.D. Ky. Sept. 13, 2013):

> [T]he DPP merely guides prosecutorial discretion, creating no legal rights.  By the USAM's plain terms, it is nonbinding: 'The Manual provides only internal Department of Justice guidance.  It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.'  See USAM § 1-1.100.  The Protocol therefore provides no procedural rights, but rather is a 'mere aid[ ] to the exercise of the [Justice Department's] independent discretion.'  Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1970).  Like executive orders, the DPP is not judicially enforceable because it is expressly designed only to enhance the DOJ's internal management.  See Michigan v. Thomas, 805 F.2d 176, 187 (6th Cir. 1986).  Suspects and defendants therefore are 'on notice that they lack enforceable rights in DOJ policies and procedures.'  United States v. Lee, 274 F.3d 485, 493 (8th Cir. 2001).

Slone, slip op. at 2.  The First Circuit has likewise held that the Death Penalty Protocol does not create enforceable rights, see United States v. Lopes-Matias, 522 F.3d 150, 155-56 (1st cir. 2008), and every circuit to consider the question has ruled that

USAM policies and procedures are not enforceable, see Slone, slip op. at 3 n.2 (collecting cases).

CJA Guideline 6.04, which defendant cites in the initial status conference report, likewise confers no authority on this Court to set deadlines for internal Department of Justice deliberative procedures. As the Slone court notes, a defendant "has no rights under the CJA Guidelines because they are equally as nonbinding as the DPP." Slip op. at 3. The Judicial Conference, which formulates the CJA Guidelines, publishes only "suggestions and recommendations." 28 U.S.C. § 331. "The Guidelines thus cannot empower this Court to issue [a] . . . scheduling order" for the different phases of the Attorney General's decisionmaking process. Slone, slip op. at 3. In any event, the government's own schedule for making the death-penalty authorization decision in this case is fully in keeping with the purpose of CJA Guideline 6.04, which is "to control litigation costs by speeding up, rather than slowing down, the DOJ's process." Id. at 4 (citing Jon B. Gould & Lisa Greenman, Judicial Conference Committee on Defender Services, Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases (September 2010), at 106, available at http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Viewer.aspx?doc=/uscourts/FederalCourts/AppointmentOfCounsel/FDPC2010.pdf ("Courts should exercise their supervisory powers to

ensure that the death penalty authorization process proceeds expeditiously.")).

Finally, for the Court to decide what information the Attorney General must consider and when he must consider it in making the death-penalty authorization decision would violate the Separation of Powers doctrine.  The Supreme Court has held that making investigatory and prosecutorial decisions is a "core executive constitutional function," United States v. Armstrong, 517 U.S. 456, 465 (1996), and therefore "outside the supervision of the court," Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807 (1987).  Whether to seek the death penalty in a given case is quintessentially a matter of prosecutorial discretion.  That discretion includes what information to consider and when to consider it in making the decision.

In light of the anticipated submission by the U.S. Attorney on October 31, 2013, and the DPP requirement of 90 days for the Attorney General to consider the submission, the government respectfully requests that, if the Court is inclined to set a

deadline for the filing of a Section 3593(a) notice, that date be set no earlier than January 31, 2014.

                    Respectfully submitted,

                    CARMEN M. ORTIZ
                    United States Attorney

By:  _____
     WILLIAM D. WEINREB
     ALOKE S. CHAKRAVARTY
     NADINE PELLEGRINI
     Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I certify that this document was filed on September 20, 2013, through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

                    /s/ William D. Weinreb
                    WILLIAM D. WEINREB
                    Assistant U.S. Attorney