```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )   Criminal Action
v.                                  )   No. 13-10200-GAO
                                    )
DZHOKHAR A. TSARNAEV, also          )
known as Jahar Tsarni,              )
                                    )
          Defendant.                )
                                    )



           BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                  UNITED STATES DISTRICT JUDGE



                        STATUS CONFERENCE



         John J. Moakley United States Courthouse
                       Courtroom No. 9
                       One Courthouse Way
                Boston, Massachusetts  02210
                 Monday, September 23, 2013
                          10 a.m.



             Marcia G. Patrisso, RMR, CRR
                  Official Court Reporter
             John J. Moakley U.S. Courthouse
             One Courthouse Way, Room 3510
              Boston, Massachusetts  02210
                      (617) 737-8728

        Mechanical Steno - Computer-Aided Transcript
```

1    APPEARANCES:

2        OFFICE OF THE UNITED STATES ATTORNEY
         By: William D. Weinreb, Aloke Chakravarty and
3            Nadine Pellegrini, Assistant U.S. Attorneys
         John Joseph Moakley Federal Courthouse
4        Suite 9200
         Boston, Massachusetts  02210
5        On Behalf of the Government

6        FEDERAL PUBLIC DEFENDER OFFICE
         By: Miriam Conrad, Esq.
7            Timothy G. Watkins, Esq.
         51 Sleeper Street
8        Fifth Floor
         Boston, Massachusetts  02210
9        - and -
         CLARKE & RICE, APC
10       By: Judy Clarke, Esq.
         1010 Second Avenue
11       Suite 1800
         San Diego, California  92101
12       On Behalf of the Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        P R O C E E D I N G S
2              THE CLERK:  All rise.
3              (The Court enters the courtroom at 9:59 a.m.)
4              THE CLERK:  The United States District Court for the
5    District of Massachusetts.
6              Court is in session.  Be seated.
7              For an initial status conference, the case of United
8    States versus Dzhokhar Tsarnaev, Docket 13-10200.  Will counsel
9    identify yourselves for the record.
10             MR. WEINREB:  Good morning, your Honor.  William
11   Weinreb for the United States.
12             MR. CHAKRAVARTY:  Aloke Chakravarty for the United
13   States.
14             MS. PELLEGRINI:  Nadine Pellegrini for the United
15   States.
16             THE COURT:  Good morning.
17             MS. CONRAD:  Good morning, your Honor.  Miriam Conrad,
18   federal public defender for Mr. Tsarnaev.  And with me are Judy
19   Clarke and assistant public defender Tim Watkins.
20             THE COURT:  Good morning.  Thank you for the status
21   report.  I appreciate that.
22             Let's start with whatever issues there may be with
23   respect to discovery.  I guess maybe the place to start is with
24   the defense, who indicated there may be some -- you may be
25   interested in something beyond what you've already gotten.  Is
```

1    that right?

2          MS. CONRAD:  Yes, your Honor.  We do plan to deliver,

3    hopefully by the close of business today, to the government a

4    fairly detailed discovery request letter.  But this is not

5    going to be the be-all and end-all discovery request in this

6    case.

7          We received automatic discovery -- what the government

8    defines as automatic discovery on September 3rd.  This included

9    a large amount of digital evidence, including videos and

10   computer and telephone hard drives, but also a number of

11   reports of interviews with witnesses that we're going through.

12         Notably, missing from that discovery is information

13   such as interviews or grand jury testimony of family members

14   and other information that would -- we would deem to be

15   relevant and, in fact, potentially exculpatory with respect to

16   sentencing.

17         So the biggest sort of philosophical dispute we have

18   with the government right now is the timing of disclosure of

19   information that would tend to support mitigation of

20   punishment, which, of course, is defined under *Brady* as

21   exculpatory evidence.

22         It is particularly -- well, I think I would just note,

23   your Honor, that the local rules don't really address the

24   procedure for disclosure of mitigating evidence in a death

25   penalty case.  There is timing for disclosure of mitigation in

1    a usual case, but that timing doesn't really work in a

2    potential death penalty case where we are obligated to make a

3    presentation to the U.S. Attorney and to the Department of

4    Justice in the coming months about reasons why the government

5    should not seek the death penalty in this case.

6           There are other issues that are relatively less

7    global, if you will, or philosophical in nature, such as

8    questions regarding some of the digital evidence, questions

9    regarding some of the redactions -- in some cases extensive

10   redactions -- that have been made by the government which we

11   feel are unnecessary, especially in light of the fact that we

12   have a fairly restrictive protective order in place with

13   respect to the discovery that we have received.

14          Can I just check with my co-counsel for a moment to

15   see if I've missed anything?

16          (Pause.)

17          THE COURT:  No?

18          MS. CONRAD:  That's it for discovery, your Honor.

19   Sorry.

20          THE COURT:  Mr. Weinreb?

21          MR. WEINREB:  Your Honor, it's the government's view

22   automatic discovery is complete.  And although we haven't yet

23   received this letter from the defense, I've heard nothing

24   mentioned to date that would fall into the category of

25   automatic discovery.

1           We have provided a great deal of information, in our

2     view, all of the information that we were required to produce

3     under the law.  And we've also produced a great deal of

4     additional information just in the event the defense finds it

5     useful in preparation for defense.

6           We produced a very detailed index to that information;

7     in fact, it's the same index we prepared for ourselves and

8     shared with the defense.  And there is a quantity of evidence

9     that has been made available to them at this point just for

10    inspection and review, meaning we haven't actually given them

11    copies of things.

12          And we actually do intend, over the coming weeks, just

13    as a courtesy to the defense, to produce copies of things that

14    right now are available for inspection and review.  But not

15    because they are automatic discovery in our view, simply

16    because it will expedite the case.

17          Until we get the request from the defense along with

18    whatever legal basis they're going to cite for anything else

19    they believe they deserve, I can't really comment on the

20    government's position on those matters.

21          THE COURT:  Well, we'll let that, I guess, take its

22    course when the formal request is made, and then we'll get a

23    formal response, and I guess we'll deal with that.

24          You've, in the status report, suggested some timing

25    for that.  That seems fine.  The defense submission today, and

1    then I guess it's basically two weeks for the government to

2    respond.  I'm not sure -- well, I won't fine-tune it, I guess.

3         I'm not sure we need to wait after the government's

4    response another two weeks for a motion since you know what you

5    want and you'll know what they have said should be possible to

6    generate the motion, but for the sake of a week or two, I'll go

7    by your dates.

8         And then I think, just to jump ahead to that, we can

9    set a status conference.  You suggested jointly the 12th of

10   November.  We actually have matters scheduled then, but the

11   13th, the next day, is open for us.  So if that's okay with

12   counsel, I'd like to schedule it in the afternoon of the 13th

13   of November at two o'clock.

14        MR. WEINREB:  That's fine with the government, your

15   Honor.

16        MS. CONRAD:  Your Honor, Ms. Clarke has obligations

17   out of state on the 13th.  If it would be possible to either

18   schedule it -- if it would be possible to schedule it in the

19   morning on the 13th, then that would accommodate her travel

20   schedule, if your Honor would be so kind.

21        THE COURT:  Yes, we could do that, I think.  Let me

22   just get the date here.

23        (Pause.)

24        THE COURT:  That's fine.  If we could do it in the

25   morning -- then let's make it ten o'clock in the morning on the

1    13th.

2          MR. CHAKRAVARTY:  Your Honor, we'd expect to have

3    argument on any motions that we've filed?

4          THE COURT:  Yes.  We'll let you know that beforehand,

5    but, yes, that's -- I mean, the timing is such that it would be

6    appropriate to do that.  I wouldn't see any reason not to.

7          MR. WEINREB:  Your Honor, as long as we're on the

8    business of scheduling, I would just like to add that the

9    defense has indicated that these are preliminary discovery

10   requests, they may have additional ones.  And I understand from

11   things counsel has said on the phone that some of those may be

12   relatively uncontroversial in the sense of they have video but

13   lack the Kodak that's necessary to view a particular piece of

14   video, or there's something redacted that they want unredacted.

15         We are happy to entertain those in the meantime --

16   there's no need to resolve the initial discovery request --

17   before we get to the next round, if the next round really

18   doesn't have to deal with the resolution first round.  So we

19   would be more than happy to have those as soon as they're ready

20   and be prepared to discuss them and, if necessary, argue them

21   at this status hearing.

22         MS. CONRAD:  That's fine, your Honor.  That's what we

23   anticipated doing.

24         THE COURT:  Okay.  The more we can do that day, the

25   better.

1          With respect to -- let me just say something about the

2     protective order that has been entered, jointly proposed by the

3     parties, and, more generally, about sealing matters in the

4     case.

5          As Judge Bowler indicated in one of her conferences

6     with counsel, she was concerned about the level of sealing and

7     urged people to look at that.  And you know that since then

8     I've entered an order unsealing some of the matters that have

9     been sealed.

10         Unfortunately, our local rule with respect to the

11    impoundment of documents predates CM/ECF and other

12    technological advances and needs to be reconsidered.  And our

13    local rules committee is going to undertake that.  But pending

14    that, I thought it would be appropriate to have an

15    order regarding -- a procedural order regarding sealed motions.

16    And really, it won't be particularly surprising to anyone.

17    It's simply going to try to add some order to the process.

18         In brief, I anticipate that the order will say that

19    before something can be filed under seal, there must be a

20    motion to seal explaining the reason why the matter should be

21    placed under seal, and it will include a provision that is in

22    our local rule now that when such a motion is made, it should

23    indicate when the matter might be unsealed.

24         The order would then provide that after the motion's

25    made there has to be an order granting or denying the motion,

1    what are the reasons for that, and then if it's granted, the

2    sealed matter may be filed under seal.  It's simply to make

3    sure we have a step-by-step record of the application, the

4    order on it, and then the matter, okay?

5            MR. CHAKRAVARTY:  Your Honor, just on that point --

6            THE COURT:  Yes.

7            MR. CHAKRAVARTY:  -- customarily when a motion is

8    filed, there's a time for response.  In the case of some

9    exigency, should we file and explain whether we've been able to

10   obtain the assent of the other party?

11           THE COURT:  That would be helpful, I guess.  And of

12   course, as you know, it's not uncommon in cases like this for

13   matters to be filed under seal and ex parte.  As a matter of

14   fact, the bulk of the filings tend to be that in a

15   CJA-regulated case where the defense is required to get

16   approval for various actions.  And so those are, of course, ex

17   parte and appropriately under seal.  And I think some of the

18   concern that has been voiced about sealing in this case may

19   have come from a lack of familiarity with the ordinary progress

20   of a CJA-controlled case.

21           So anyway, I anticipate -- there will be nothing

22   really surprising about the order.  I just want to be sure that

23   we are turning square corners on these matters.  And I hope it

24   won't slow things down.  In other words, we're going to try

25   to -- you know, we'll act on the motion to seal as promptly as

1    possible so the matter can then be placed on the record.  And

2    if there's a response to be made, then the time will be started

3    for that response and so on and so forth.

4         So with respect to the protective order, which is

5    where I started, the protective order provides for some

6    sensitive material -- or information, as defined in the order,

7    to be filed under seal.  And I think the order is -- is an

8    order that allows that to be done without further motion as

9    long as it's identified as sensitive as the parties understand

10   that.

11        I would urge that if that happens -- because some of

12   the examples given were personal medical information or other

13   private identifiers that already are to be -- under the

14   e-filing regimen are already to be redacted, but I would urge

15   that there be a redacted copy of the host document, if

16   possible, placed in the public record with the unredacted filed

17   under seal in case of sensitive information.  That's with

18   respect to sort of -- that's a gloss on the protective order.

19        So I guess the next topic is something that was -- has

20   been addressed last week by filings, and that is when the

21   government expects to be able to file a notice of election with

22   respect to the penalty.

23        MR. WEINREB:  Your Honor, the U.S. Attorney -- under

24   the Department of Justice's own internal guidelines, the U.S.

25   Attorney is to file a -- make a submission to the Attorney

1    General that includes information that would be useful for the

2    Capital Case Unit in the Department of Justice, and ultimately

3    the Attorney General, to make a decision on whether to

4    authorize the seeking of the death penalty.

5         The U.S. Attorney intends to make that submission on

6    or before October 31st.  The death penalty protocol asks,

7    essentially, the U.S. Attorney to make that no more than 90

8    days before a death penalty authorization decision needs to be

9    made, so that the Capital Case Unit, the review committee and

10   the Department of Justice, the Attorney General, has sufficient

11   time to consider it.

12        And just as the defense is invited to provide any

13   input to that decision that they wish to provide to the U.S.

14   Attorney, they also have a second chance to provide input to

15   the Capital Case Unit when the time comes.  And so 90 days is

16   the amount that the death penalty protocol asks the government

17   to seek for that.

18        That is why we have -- we're not asking the Court to

19   set a deadline.  We intend to file any notice respecting

20   seeking the death penalty as expeditiously as possible.  But if

21   the Court is inclined to set one, then we ask that it be set no

22   earlier than January 31st to allow for that 30-day period for

23   consideration.

24        MS. CLARKE:  Well, we're not -- good morning.  We're

25   not asking the Court to set a notice-of-intent or

1    lack-of-notice-of-intent deadline right now.  What we would
2    like the Court to do is direct the delay in the defense
3    submission -- mitigation submission.

4           We're really talking about a couple of things here,
5    and one is fairness.  And the government filed a short brief on
6    Friday about the authority of the Court to weigh in on the
7    scheduling matters.  And we can file a brief this week setting
8    forth what we think is the Court's authority to do that, should
9    the Court want us to do that.

10          We have attached the CJA guideline and Judge Gleeson's
11   memo -- 2008 memo -- which sort of sets forth the reasons that
12   the Court should weigh in on that scheduling.  And it was a
13   process by which the Department of Justice was involved.  So
14   it's not like some judges have imposed some authority on the
15   Department of Justice; they were involved in the promulgation
16   of that guideline, and it is a guideline that is aimed at
17   fairness and a reasonable opportunity for both sides to do the
18   work necessary to make a reasonably accurate determination
19   whether the government should or should not seek the death
20   penalty.

21          The government has said in its pleading that gave us
22   an August 23rd deadline initially that we asked for some more
23   time.  It's a little bit more complicated than that.  The
24   government, without notice to us, without discussion, gave us
25   an August 23 deadline, which was some ten days before

1     production of any discovery in the case.  And we essentially

2     wrote back and said, "You know, this is a big, complex case.

3     We agreed to certain decline extensions that you requested, and

4     we'd request a reasonable opportunity to prepare for this

5     presentation.  Post-discovery we'd like to meet with you and

6     talk about it."  And without any of that, their meeting and

7     talking about it, the government then decided an October 23rd

8     mitigation submission deadline would be appropriate.

9            It's in the absence of some pretty critical discovery

10    that we believe that the government has.  Now, the government

11    has taken a position with us, "Look, we know what we have, and

12    we don't need you to comment on it."  Well, that sort of defies

13    the role of defense counsel, and it seems to me the Attorney

14    General of United States would like to know whether they have

15    accurate information that they're considering in making the

16    determination of whether or not to seek the death penalty.

17           So we think it's a matter of fairness that the Court

18    should regulate the scheduling process.  If the government

19    needs a deadline for the notice of intent, that's a matter for

20    another day.  We think that when the government sees our

21    letter, we hope they will reconsider their position on what we

22    view as critical *Brady* exculpatory evidence with regard to

23    penalty.

24           I recognize that the local rules don't directly

25    address death penalty cases, but the spirit does, because the

1  spirit is that you get sentencing -- relevant sentencing

2  material prior to the sentencing process.  And the Department

3  of Justice making a decision about the death penalty is part of

4  what we really think of as the sentencing process.

5  So we'd ask that the Court do two things today:  One

6  is delay the mitigation submission deadline and set it after

7  we've had an opportunity for the Court to rule on -- or the

8  government to reconsider its own view of what is *Brady*.

9  I can't stop without reminding the Court that it was

10  at the government's request that the -- and our acquiescence in

11  a collegial sense that they delay the indictment an additional

12  30 days -- and it was at the government's request and for good

13  reason, the complex complexity of the case, that we agreed to

14  the delay of the initial -- the production of automatic

15  discovery.

16  So it's a little bit stunning for the government now

17  to say that it's the defense delaying things, and that it's six

18  months after the event that the defense wants more time.  We'd

19  be well ahead of the game, had the government not asked for and

20  we accessed, again, an extension of time to file the indictment

21  and an extension of time for the automatic discovery.

22  So what we would ask the Court to do is vacate the

23  August 23rd deadline and reset that as we -- after we've had an

24  opportunity to convince the government their view of *Brady* is

25  wrong or the Court has reevaluated.

1          THE COURT:  Mr. Weinreb?

2          MR. WEINREB:  Your Honor, the deadline of August 23rd

3     isn't an order of the Court --

4          THE COURT:  I think you're both talking about October

5     31st.

6          MR. WEINREB:  October 31st.  Thank you.

7          The Attorney General has the -- the law requires the

8     Attorney General to file a notice of intent to seek the death

9     penalty in a case where the government intends to seek it.  The

10    law does not require that the Attorney General make that

11    decision in any particular way or on any particular timeline.

12         We don't question the Court's authority to set a

13    deadline for the Court to file a notice, but how the Attorney

14    General makes up his mind, what information he deems is

15    appropriate to consider, according to what timeline, are all a

16    pure executive function.  The deadline that the -- the deadline

17    set by the death penalty protocol are simply internal Justice

18    Department -- Department of Justice matters that the Attorney

19    General has decided upon for the orderly progression of cases

20    within the Department of Justice.

21         It doesn't clearly -- clearly it doesn't create any

22    rights in the defense, and I don't believe that the defense has

23    any authority to come in here and say that as a matter of what

24    they perceive to be fairness, or what they deem to be a

25    reasonable time, they can subgrade that into a law that then

1   the Court is free to impose on the government in making this

2   decision.

3           The Attorney General has deemed this to be a

4   reasonable time and the -- I think that although it's a

5   non-judicable question, we believe -- we think that six months

6   is a reasonable time in a case like this.  Although it is true

7   that the defense has not had an opportunity to thoroughly

8   review and comment on every piece of the government's evidence,

9   the U.S. Attorney in this case is fully aware of all the

10  government's evidence, and in order to make this decision, the

11  Attorney General does not need the defense's thorough

12  consideration and commentary on all of it.

13          What we seek from the defense presentation is whatever

14  they may have come up with through their own investigation of

15  the case.  And that, added to what the government has come up

16  with from its investigation, is sufficient to make the

17  recommendation or the decision in this case.  So I don't

18  believe the defense's argument is well taken as a matter of

19  law, as a matter of fairness, or as a matter of common sense.

20          THE COURT:  Ms. Clarke?

21          MS. CLARKE:  Your Honor, the government did file

22  something late on Friday, mid-afternoon Friday.  If the Court's

23  concerned about its authority, we could file something this

24  week regarding that.  And I can tell you that there are two

25  district courts that have said, "We've got the authority to

1   delay the mitigation submission," and two district courts that

2   say no.

3        And so I think that the Court can look at that.  It's

4   the -- it's really the implementation of Judge Gleeson's memo

5   and the guideline that the Department of Justice did

6   participate in and buy into.

7        It's of concern that the government believes that it

8   can make a decision -- I don't think the Attorney General of

9   the United States would agree with this.  But it's pretty

10  stunning to say that they can make a decision based on what

11  they know without some defense input.  They may have a

12  completely erroneous story, that I think the protocol is

13  designed to help -- allow us to help them see a different way.

14  And to just doggedly go forward after getting extensions of

15  time which delay this whole process, at their request, would be

16  unfair.

17        But on the matter of the Court's authority, we would

18  be happy to file a brief in the next couple of days just at

19  least advising the Court of the status of the case law.

20        THE COURT:  Okay.  Well, I think for the time being I

21  will not set a date by which the Court must be notified of the

22  election.  I understand the time frame of the protocol.  I

23  think not only the brief that Ms. Clarke just referred to from

24  the defense, but also, I'd like to get a sense of the

25  additional discovery requests and the government's response

 1   because that may influence what is a realistic date for

 2   notifying the Court.

 3          Let me ask, because we just touched on what further

 4   discovery might or might not occur, there was a reference in

 5   the status report about substantive motions from the defense.

 6   Can you tell us anything about that?  Do you anticipate

 7   any -- on the discovery you have now.  Obviously, if something

 8   comes up in additional discovery, that has to be evaluated.

 9   But on the discovery now, do you anticipate any substantive

10   motions?

11          MS. CLARKE:  I think our problem is we're -- you know,

12   we received a substantial amount of stuff and we're not in a

13   position really to stake that out right now.  We hope to be

14   able to advise the Court now by the 12th of November.

15          THE COURT:  Okay.  Let me ask a more pointed question:

16   Do you anticipate any objection to venue?

17          MS. CONRAD:  I think it's too early to address that,

18   your Honor.  We just haven't really thought about it, frankly.

19          THE COURT:  Okay.

20          MS. CONRAD:  Your Honor, may I just ask for

21   clarification on one point?  You indicated that you would

22   accept a brief from us on this issue of the Court's authority

23   regarding the death penalty protocol, but you also mentioned

24   you would like to get a sense of the discovery request?

25          THE COURT:  Well, you're going to be filing the

1    request today, I understand.

2         MS. CONRAD:  Yes.  But we hadn't anticipated filing

3    them with the Court; we anticipated just sending them to the

4    government.  So I don't know if the Court wants us to file them

5    with the Court.  If we could, we would probably be asking --

6         THE COURT:  I guess so.  I guess my chance to be

7    looking at them would be when you move after you're

8    dissatisfied with the government's response.

9         MS. CONRAD:  Unless you want us to file them under

10   seal.

11        THE COURT:  We can follow the normal practice.  I

12   don't have to get involved in the negotiations.

13        MS. CONRAD:  Okay.  Thank you.

14        THE COURT:  So I guess that would be after -- on your

15   schedule, that would be after October 21st.

16        MS. CONRAD:  Right.

17        (Pause.)

18        THE COURT:  I guess we have a problem with the date

19   that we suggested.  That's what the clerk was passing me a note

20   on.  He tells me that the sentencing in *United States versus*

21   *Bulger* is set for that morning, so I think it would be

22   impractical to try to have a case conference in this case at

23   the same time.

24        So let me look at the calendar.

25        MS. CONRAD:  I'm wondering if the 18th or 19th would

1    be possible, your Honor?

2            MR. WEINREB:  Your Honor, if I might be heard, I would

3    suggest compressing the schedule then.  Because if the Court

4    wants the benefit of defense motion on discovery before the

5    current deadline that the government has set for defense

6    submission, it's not going to get it on the current schedule.

7            But if the defense is prepared to file their discovery

8    request today, we won't need two weeks to respond.  I mean,

9    they'll need two weeks to file a motion.  And there's no need

10   then to set the further status conference even further out.  I

11   would suggest we set it earlier and the parties simply work out

12   a more compressed schedule to address these matters.

13           MS. CONRAD:  That's fine with us.

14           THE COURT:  Well, how about just taking one week out

15   of each of those periods; that is, the government response to

16   today's request by next Monday, and then the following Monday,

17   the 7th, would be a motion due.  And then you want two weeks

18   for the response or do you want to respond faster than that?

19           MR. WEINREB:  Actually, on that score, we would like

20   the two weeks because we have no idea what's coming.

21           THE COURT:  Right.  Right.  That's fair enough.  So

22   that gets us to the 21st of October.  So we can move it maybe

23   forward.  Actually, we could do it the 1st or 2nd of

24   October -- I'm sorry.  I'm in the wrong month.

25           MS. CLARKE:  Will the 4th work?

1          THE COURT:  No, the 4th will not work.

2          MS. CONRAD:  Your Honor, if I may, if the government's

3  goal was to get a status conference before the current deadline

4  for the submission to the U.S. Attorney, which I believe is

5  actually October 24th, then --

6          MR. WEINREB:  No, that wasn't the goal.

7          MS. CONRAD:  Okay.  Then I misunderstood.

8          MR. WEINREB:  It was simply to allow the defense time

9  to file their motions so the Court could have a sense of what

10  the discovery requests are.

11          MS. CONRAD:  Okay.

12          THE COURT:  How about Friday, November 8th?

13          MS. CLARKE:  Your Honor, if it could be a Monday,

14  Tuesday or Wednesday, that would work a whole lot better.

15          (Pause.)

16          THE COURT:  Let's go back to the 12th of November.  I

17  have a trial scheduled the previous week, which may go into

18  that week, which is why I avoided the morning before, but we

19  can perhaps work around it.  So let's make it ten o'clock on

20  the morning of November 12th for the next status conference.

21          MS. CLARKE:  Have we compressed the other deadlines

22  and --

23          THE COURT:  Yes, we have compressed the other

24  deadlines but...

25          MS. CLARKE:  And we'll still have the hearing on the

1    12th?

2           THE COURT:  Well, yes, among other things.  In other

3    words, that's the next status conference.  One thing we can

4    consider are the motions.

5           Any other matters now?

6           MR. WEINREB:  Nothing from the government, your Honor.

7           MS. CLARKE:  Does the Court have a preference as to

8    when we should file the brief this week?

9           THE COURT:  No.

10          MS. CLARKE:  By Friday?

11          THE COURT:  By Friday is fine.

12          MS. CLARKE:  Thank you, your Honor.

13          THE COURT:  So we'll set the next status conference on

14   the 12th of November.  The time intervening will be excluded

15   under the Speedy Trial Act pursuant to Section

16   3161(h)(7)(B)(ii), complex case requiring additional time.  I

17   think that's fairly obvious.

18          Okay.  That's all for now.  I would -- if counsel for

19   the defense are available, I would like to have a very brief ex

20   parte conference regarding the budget for the case.

21          MS. CLARKE:  Thank you, your Honor.

22          THE COURT:  We'll be in recess.

23          MR. WEINREB:  Thank you, your Honor.

24          MR. CHAKRAVARTY:  Thank you, Judge.

25          THE CLERK:  All rise for the Court.

1          (The Court exits the courtroom.)

2          THE CLERK:  The Court will be in recess.

3          (The proceedings adjourned at 10:33 a.m.)

4

5

6                    C E R T I F I C A T E

7

8          I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

9     the United States District Court, do hereby certify that the

10    foregoing transcript constitutes, to the best of my skill and

11    ability, a true and accurate transcription of my stenotype

12    notes taken in the matter of Criminal Action No. 13-10200-GAO,

13    United States of America v. Dzhokhar A. Tsarnaev.

14

15    /s/ Marcia G. Patrisso
      MARCIA G. PATRISSO, RMR, CRR
16    Official Court Reporter

17
      Date:  9/24/13
18

19

20

21

22

23

24

25