UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 13-10200-GAO |
| v. ) | |
| ) | |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**DEFENSE RESPONSE TO GOVERNMENT NOTICE REGARDING DEATH PENALTY PROTOCOL TIMING AND MOTION TO POSTPONE SETTING OF <u>DEADLINE FOR DEFENSE MITIGATION SUBMISSION TO U.S. ATTORNEY</u>**

Defendant, Dzhokhar Tsarnaev, through counsel, respectfully responds to the government's Notice Regarding the Timing of any Filing under 18 U.S.C. § 3593(a) [DE 98] and moves to postpone any deadline for a local defense presentation to the United States Attorney until the defense has had a reasonable opportunity to obtain and review discovery and to conduct further independent mitigation investigation.

Simply put, the government's deadline of October 24, 2013 fails to provide the defense with a "reasonable opportunity" to make a presentation to the United States Attorney concerning death penalty authorization. This arbitrary date falls less than two months after the government's production of multiple terabytes of discovery, while an important preliminary defense request for *Brady* material is still pending, and while the defense is still in the early stages of independent investigation that literally spans the globe. This Court should exercise its inherent scheduling authority to ensure that the defense can make a meaningful presentation, which, in turn, will promote more fair, orderly and, indeed, cost-effective progression of the case.

Government counsel resist the defense request that this Court extend the U.S. Attorney-imposed deadline for the defense mitigation submission and argue that the Court's only authority with regard to this scheduling is to set a deadline for the Attorney General to file a notice of

1

intention to seek the death penalty pursuant to 18 U.S.C. § 3593(a).  In doing so, the government fails to acknowledge its own requests to twice delay the proceedings.  The government further fails to acknowledge the participation of the Department of Justice in the development of CJA Guideline 6.04, which urges the Court to set a schedule for the local defense mitigation submission, and ignores cases in which district courts have done so.  *See* March 25, 2008 Memorandum from Judge John Gleeson ("Gleeson Memo") (filed at DE 97); *U.S. v. McGill*, 2010 WL 1571200 (S.D. Cal. Apr. 16, 2010); *U.S. v. Benevides and Weber*, No. 06-62 (D. Mt. Oct. 22, 2008) (copy of order attached as Exhibit A).

In response, the defendant files this memorandum addressing the Court's authority to establish a schedule for the process to resolve the question of whether the government will seek the death penalty against Dzhokhar Tsarnaev.  The defendant also now moves this Court, pursuant to the Sixth and Eighth Amendments to the U.S. Constitution, CJA Guideline 6.04, Fed. R. Crim. P. 57(b), and the inherent authority of the Court, to postpone the government's current October 24, 2013 deadline for the defense mitigation submission pending resolution of current discovery issues regarding mitigating and exculpatory evidence and a reasonable opportunity for the defense to investigate and make a meaningful mitigation presentation to the U.S. Attorney.[1]

### Factual Background and Delay by the Government

Dzhokhar Tsarnaev was arrested on April 19, 2013, and charged by complaint filed April 21, 2013 with two offenses punishable by death under 18 U.S.C. § 2332a(a) (use of a weapon of

---

[1] *See* USAM 9-10.080 ("In any case in which the United States Attorney or Assistant Attorney General is considering whether to request approval to seek the death penalty, the United States Attorney or Assistant Attorney General shall give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, for the consideration of the United States Attorney or Assistant Attorney General.").  In addition, the defense is given an opportunity to comment on the many factors considered by the Attorney General, including the strength of the evidence of aggravating factors.

mass destruction); 18 U.S.C. § 844(i) (malicious destruction of property resulting in death). Mr. Tsarnaev made his initial (Rule 5) appearance from a hospital bed on April 22, 2013. Thereafter, the government sought and obtained the defendant's assent to extend the 30-day deadline for returning an indictment under the Speedy Trial Act, and delayed the return of the indictment until June 27, 2013. After Mr. Tsarnaev was arraigned on July 10, the government sought to extend the 28-day deadline for production of automatic discovery set by the Local Rules. After again requesting and obtaining defense assent, the government was granted an additional 32 days for providing this discovery to the defense. The government requested, and the defense agreed to these delays in light of the complexity of the case and volume of anticipated discovery. The government took full advantage of its requested delay, and did not produce automatic discovery until September 3, 2013.[2]

The government now makes much of the fact that it extended one arbitrarily imposed deadline for a mitigation submission at the request of the defense, and then unilaterally reset that deadline to a date six (6) months after the events of April 15, 2013. Again, the government fails to mention that the first mitigation submission deadline it set (August 23, 2013) was less than 60 days after return of the indictment and some ten (10) days <u>before</u> the production of automatic discovery. The second deadline, again set without any consultation with the defense, seems to have been chosen simply because it comes approximately six (6) months after the events of April 15, 2013.

The <u>reasonable</u> time frame for a defense mitigation submission should be based on the time the defense has had to review discovery and conduct even a preliminary independent

---

[2] This automatic discovery was produced on multiple hard drives, which contain several terabytes of videos, pictures and other documents. Initial review of these materials is ongoing.

3

mitigation investigation.[3] But for the government's requested delays to date, automatic discovery would have been provided by the end of June 2013, and any dispute regarding the failure to produce existing exculpatory and mitigation materials could well have been resolved by now. The advantages obtained by the government when it gained relief from real charging and disclosure deadlines should not now operate to disadvantage the defendant, by imposing on him an inflexible deadline that will effectively preclude him from being able to make a meaningful presentation of the mitigating factors that the U.S. Attorney must weigh in arriving at her sentencing recommendation.

At the status conference held on September 23, government counsel stated, "The U.S. Attorney in this case is fully aware of all the government's evidence, and in order to make this decision, the Attorney General does not need the defense's thorough consideration and commentary on all of it." R.T. 9/23/13 at 17. This statement suggests an apparent rush to judgment that is contrary to the spirit of the Department of Justice's protocol, the CJA Guidelines, and the interests of justice. The government cannot possibly make a well-informed decision without hearing from the defense and without allowing the defense to make a presentation informed by its own investigation and the information available to the government.

The government's expressed desire for an expeditious decision should be considered against the fact that the average time from indictment to the Attorney General's decision

---

[3] Here, in addition to the delay in producing discovery, there are numerous challenges to the defense mitigation investigation, including that much family history is half a world away. In the U.S., one potential witness was killed by an FBI agent; others have been charged in criminal investigations, and there is apparently an ongoing grand jury investigation. The defense has also been slowed and hampered by imposition of Special Administrative Measures (SAM), which greatly restrict access to the defendant, and which affect the information the defense may share in the process of its investigation. By way of a separate pleading, the defense intends to litigate the applicability of the SAM to this case, and to address some of the provisions that directly affect the work of the defense.

regarding the death penalty is 13 months, and the average time to trial is 27.3 months. *See* April 2013 Declaration of Kevin McNally, director of the Federal Death Penalty Resource Counsel Project, attached as Exhibit B.  For a host of obvious reasons, this case is far more complex than the "average" capital prosecution.

## Legal Authority

At least two courts have published orders explaining the exercise of authority to postpone a defense mitigation submission under the DOJ death penalty protocol.  In *McGill*, the court explained:

> The Court unquestionably has the authority to issue scheduling orders designed to manage its docket. *United States v. Grace*, 526 F.3d 499, 509 (9th Cir.2008). "[T]he district court is charged with effectuating the speedy and orderly administration of justice." *Id.* at 508. To that end, the court may enter pretrial case management orders "designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id*. at 509.
>
> In September of 2007, the Judicial Conference of the United States approved a Criminal Justice Act Guideline [the "Gleeson Memo"], developed jointly by Department of Justice staff and defender services representatives, which recommends that the trial court establish a schedule for resolution of whether the government will seek the death penalty. Guide to Judiciary Policy, Vol. 7, Pt. A, Ch. 6, § 670. Pursuant to these guidelines, courts routinely enter scheduling orders designed to avoid undue delay attributable to the Attorney General's consideration of whether to seek the death penalty. Courts routinely establish an outside date by which (1) the defendant must present evidence to the United States Attorney as to why the government should not seek the death penalty, (2) the United States Attorney must make a recommendation to the Department of Justice, and (3) the government must file its notice under 18 U.S.C. § 3593(a) that it will seek the death penalty or notify the court and defendant that it will not. Because any delay by the Attorney General in making the decision whether to seek the death penalty would impact the trial date, the government cannot argue that the trial court lacks authority to enter such a scheduling order to further the "speedy and orderly administration of justice."
>
> The question here, then, is whether this Court can issue a scheduling order which effectively requires the Department of Justice to delay its consideration of whether to seek the death penalty. Such an order can only be justified as an

> exercise of the Court's inherent authority if it furthers the goal of "speedy and orderly administration of justice," or is "designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Grace*, 526 F.3d at 509. The Court believes a scheduling order as requested by defendant, allowing additional time for presentation of mitigation evidence to the U.S. Attorney, furthers each of these goals.

2010 WL 1571200 at 3; *see also Benavides*, at 6 (same); Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.").

The government's reliance on *United States v. Slone*, 2013 WL 5217932 (E.D. Ky. Sept. 13, 2013), is misplaced. *Slone* was based on the proposition that the U.S. Attorney's manual, of which the Death Penalty Protocol is a part, does not create enforceable rights. *See also United States v. Hardrick*, 2011 WL 2516340 (E.D. La. Jun. 22, 2011) (same). As the Court explained in *McGill*, this is a non-sequitur:

> In issuing a scheduling order, the Court is not granting defendant any new right or invading the province of the Department of Justice to determine, according to its protocol, whether to seek the death penalty in this case. The government has not shown how a brief delay in the defendant's presentation of mitigation evidence to the U.S. Attorney will hinder its ability to carry out its prosecutorial function. The scheduling order is designed purely to ensure this case proceeds to trial in an orderly and expeditious manner without unnecessary expense.

2012 WL 157120 at 4.[4]

The Gleeson Memo specifically advises the Court that the "schedule should be flexible and subject to extension for good cause at the request of either party." The work

---

[4] *United States v. Lopes-Matias*, 522 F.3d 150 (1st Cir. 2008), cited by the government, is likewise inapposite. In that case, the First Circuit reversed a district court order striking the government's notice of intent to seek the death penalty based on failure to follow the Protocol, holding that a violation, "by itself, would not give rise to the sanction imposed here." In this case, the defense is not seeking the enforcement of any right or imposition of any sanction but rather the mere exercise of scheduling authority.

of Judge Gleeson, and the Judicial Conference action was clearly part of an effort at cost containment – recognizing that long delays were problematic, but also that adequate time for the parties to meet their obligations could result in decisions that could save substantial costs over the long run.

### Conclusion

For all of the foregoing reasons, counsel for defendant Dzhokhar Tsarnaev request that this Court enter an order postponing the October 24, 2013 deadline for the defense mitigation submission to a date to be set following resolution of the current dispute regarding mitigation and exculpatory discovery, and a reasonable opportunity for the defense to prepare a meaningful submission.

Dated:  September 27, 2013

Respectfully Submitted,

*/s/  William Fick*

Judy Clarke, Esq.
California Bar:  76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
WILLIAM_FICK@FD.ORG
TIMOTHY_WATKINS@FD.ORG

## Certificate of Service

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 27, 2013.

                                                                             /s/ *William Fick*