# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 06-62-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| LINCOLN BENAVIDES, and | ) | |
| BRIAN WALTER WEBER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I. Introduction and Factual Background**

Lincoln Benavides and Brian Walter Weber were charged in a fifteen-count Superceding Indictment on February 25, 2008. Counts I and II of the Superceding Indictment charge Benavides and Weber with non-capital offenses. The remaining counts charge capital crimes under the Anti-Drug Abuse Act of 1988 (codified at 21 U.S.C. § 848) and the Federal Death Penalty Act

-1-

of 1994 (codified at 18 U.S.C. §§ 3591-3598) .

    The Defendants were appointed CJA Counsel on March 12, 2008. The Court held a pretrial conference on May 9, 2008, in which the government stated that the local United States Attorney's Office was prepared to hear the Defendants' mitigation case.  The Defendants said they were unprepared to present their case at that time and requested several months in which to become more familiar with the case and the evidence.  The Court agreed to continue the matter for 120 days, with instructions to the parties to work diligently in the meantime and to be prepared to discuss a trial date and related deadlines at the next hearing.

    Following a status conference on September 10, 2008, the Court issued a Scheduling Order (Doc. No. 98) setting a trial date of March 1, 2010.  The deadline for the government's determination whether to seek the death penalty is May 26, 2009. Given that setting, the Defendants hope to delay the mitigation presentations to the local U.S. Attorney and the Department of Justice's Capital Crimes Unit for as long as possible, and have asked the government for hearings in February and March of 2009. The government has refused those requests, notifying the Defendants that the local hearing will occur October 31, 2008, with the Capital Crimes Unit hearing to follow on November 10, 2008.

    Defendant Weber has filed a motion to amend the Scheduling

Order to impose the Defendants' preferred dates for the mitigation hearings.  The government opposes the motion.

## II. Analysis

### A. The Authorization Process

Although the Defendants have been charged with death-eligible offenses, death is not a potential punishment unless the government files a Notice of Intent to Seek a Sentence of Death ("Notice of Intent"), as required by 18 U.S.C. § 3593(a) and 21 U.S.C. § 848(h)(1).  The Department of Justice prohibits the filing of such a notice without the prior written authorization of the Attorney General of the United States.

In January 1995, the Department of Justice adopted a formal procedure for local U.S. Attorneys to follow in federal cases charging capital crimes.  U.S. Dep't of Justice, Protocol for Federal Prosecutions in Which the Death Penalty May Be Sought, United States Attorneys' Manual, tit. 9-10.000.  All cases charging capital crimes must undergo the protocol's review process regardless of whether the local U.S. Attorney wishes to seek the death penalty.  The process begins at the local level where the U.S. Attorney's office prepares a Death Penalty Evaluation Form and prosecution memorandum.  In these documents, the U.S. Attorney sets forth information on the theory of prosecution, the facts and evidence, the defendant's background and criminal history, the aggravating and mitigating factors

associated with the crime and the defendant, the basis for federal prosecution as opposed to state prosecution, views of the victim's family regarding the death penalty, and the recommendation of the U.S. Attorney regarding whether the government should seek the death penalty. United States Attorneys' Manual, tit. 9-10.080. Prior to preparing these documents, the U.S. Attorney must offer the defendant an opportunity to submit any facts or mitigating factors for the government's consideration in deciding whether to seek the death penalty. The U.S. Attorney's office then submits the Death Penalty Evaluation Form, the prosecution memorandum, and the materials provided by the defendant to the Capital Crimes Unit.

At the second level of the review process, the local U.S. Attorney and defense counsel present their views and arguments regarding death authorization to the Capital Crimes Unit in Washington, D.C. United States Attorneys' Manual, tit. 9-10.120. The Capital Crimes Unit then makes a recommendation to the Attorney General and the Attorney General signs a letter addressed to the local U.S. Attorney directing whether to seek the death penalty. <u>See</u> United States Attorneys' Manual, tit. 9-10.130 (describing standards used to assess whether to seek the death penalty). This second level of review takes approximately ninety days. United States Attorneys' Manual, tit. 9-10.080.

If the Attorney General directs the U.S. Attorney to seek

the death penalty, the U.S. Attorney must file a Notice of Intent, setting forth the statutory and non-statutory aggravating factors the government intends to prove at the penalty phase. 21 U.S.C. § 848(h)(1); 18 U.S.C. § 3593(a). The government may only rely on aggravating factors identified in the Notice of Intent in seeking a sentence of death. 21 U.S.C. § 848(j); 18 U.S.C. 3593(c). The court may permit the government to amend its Notice of Intent for good cause. 21 U.S.C. § 848(h)(2); 18 U.S.C. § 3593(a).

**B. Discussion**

There is limited guidance on the question of the trial court's authority to set a date for the presentation of mitigating evidence to the local U.S. Attorney and the Capital Crimes Unit.[1] From the perspective of the Judicial Conference of the United States, however, there is no doubt that such authority exists. The Guidelines for the Administration of the Criminal Justice Act, promulgated by the Judicial Conference, contain several provisions specific to compensation of counsel in capital cases. Section 6.04 of the Guidelines directs the trial court to "establish a schedule for the resolution of whether the

---

[1] Defendant Weber argues this Court has the authority to intervene to protect his rights to: (1) fundamental fairness under the due process clause of the Fifth Amendment; (2) effective assistance of counsel as required by the Sixth Amendment; and (3) protection against cruel and unusual punishment under the Eighth Amendment. None of these arguments are supported by persuasive authority showing a basis upon which this Court may order the prosecution to delay its mitigation hearings.

Government will seek the death penalty." Section 6.04 instructs the court to set a dates for:

> (1) the submission by the defendant to the United States Attorney of any reasons why the Government should not seek the death penalty;
>
> (2) the submission by the United States Attorney to the appropriate officials of the Department of Justice of a recommendation and any supporting documentation concerning whether the death penalty should be sought;
>
> (3) filing of a notice under 18 U.S.C. § 3593(a) that the Government will seek the death penalty, or notification to the court and the defendant that it will not.

*Guide to Judiciary Policies and Procedures*, Vol. VII, Ch. 6.04.

It is clear from Paragraph (1) of Section 6.04 that the Judicial Conference considers it appropriate for the trial court to intervene with regard to the timing of the mitigation presentation. There does not appear to be any case law or statute expounding upon or reinforcing the scheduling power that is assumed under Section 6.04, but the government has failed to cite any authority supporting its argument that the trial court is prohibited from intervening in the scheduling of the mitigation presentation.

As recently restated by the Ninth Circuit in United States v. Grace, 526 F.3d 499 (9th Cir. 2008), a trial court is vested with the broad authority to set rules and deadlines in order to achieve the efficient and just resolution of matters before the court. It is universally accepted that a district court has the

power to enter pretrial case management and discovery orders "designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared at the trial can proceed efficiently and intelligibly." Grace, 526 F.3d at 508-09.  The Grace court quoted with approval the circuit's opinion in United States v. Richter, in which the court wrote, "It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. . . .  It would be ill-advised to limit improvidently this inherent power for fear of misuse." Grace, 526 F.3d at 512 (quoting Richter, 488 F.2d 170, 173-74 (9th Cir. 1973)).

Considered together, and in the absence of any contrary authority, Section 6.04 and this Court's inherent power to effectuate a speedy and just result furnish a sound basis to conclude the Court has the authority to set a date for each stage of the mitigation presentation.  The government makes only cursory arguments on these points, contending that Grace should be limited to the discovery context and that Section 6.04 is "a guideline for a court's scheduling order, not a basis to intervene in an internal proceeding of the executive branch." Doc. No. 114 p. 3 n.2.  Neither argument is persuasive.

-7-

Although the dispute in Grace related to discovery, the general propositions regarding the trial court's inherent authority extend beyond the narrow facts of the appeal, and are applicable here. Section 6.04, while merely a guideline and not a rule, supplies evidence that the Judicial Conference does not view it as beyond the trial court's power to set a date for the mitigation presentation. The government's contention that the setting of the date is "an internal proceeding of the executive branch" overstates the case. There is no question that the decision whether to seek the death penalty is an internal one, and committed solely to the Department of Justice. However, the decision when to schedule the mitigation presentation impacts the Defendants and their counsel and is intertwined with the progression of this matter in accordance with the Court's written Scheduling Order. The situation is similar to that of the plea agreement: the trial court has no control over the internal decision of whether government will choose to enter into a plea agreement, but it may set a deadline for any such plea agreement to be entered into by the parties.

The Court has the authority to grant the relief Defendant Weber seeks; the question remains whether such relief is warranted. Defendant Weber asserts that the Defendants have not had sufficient time to prepare a proper mitigation case, and that the prosecution risks making an ill-informed decision regarding

-8-

whether to seek the death penalty. Although the bulk of discovery has been provided to the Defendants, the discovery deadline under the Court's Scheduling Order is not until November 3, 2008. Doc. No. 98. It is therefore conceivable that the government could withhold discoverable information until *after* the presentation to the local U.S. Attorney, now set for October 31, 2008. Even discovery supplied in advance the date of the local presentation will be of little use to the defense without considerable time to assimilate the information. The absence of a reasonable interval between the discovery deadline and the dates for presentation of the mitigation case offers the most compelling reason for this Court to consider setting a later date.

Another consideration weighing in favor of Court intervention is the fact that the government will not be prejudiced by the delay. Despite the government's reference in its Response Brief to a looming deadline, in fact the deadline for the government's Notice of Intent is seven months away. If the authorization protocol takes ninety days as contemplated by the United States Attorneys' Manual, the presentation to the Capital Crimes Unit can be delayed four months without affecting the timely consideration of the matter by the Department of Justice. In order to avoid any risk that the Defendants will be put at a disadvantage, and because the government will not suffer

prejudice, the Court will grant Defendant Weber's motion and set a date for the mitigation presentation to the local U.S. Attorney.

### III. Order

Based on the foregoing, IT IS HEREBY ORDERED that Defendant Weber's motion to amend the Scheduling Order (Doc. No. 109) is GRANTED, and the Scheduling Order dated September 11, 2008 is amended as follows:

(1) The Defendants' presentation of their mitigation case to the local U.S. Attorney shall take place on February 4, 2009, at a location to be decided by the government.

(2) The government may set the date for the parties' presentation to the Capital Crimes Unit, provided that under no circumstances shall the presentation occur before February 4, 2009.

DATED this 21st day of October, 2008.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT