IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DZHOKHAR TSARNAEV | No.  13-CR-10200-GAO<br><br>REDACTED |

**MOTION TO COMPEL DISCOVERY**

Defendant, Dzhokhar Tsarnaev, by counsel, respectfully moves to compel the government to provide requested discovery of exculpatory, mitigating, and other evidence material to the defense. The government has declined to provide information in response to certain defense requests and has made deficient responses to others. The requested information — including witness statements by close family members, friends, and associates of Mr. Tsarnaev and his brother — is critical to the preparation of Mr. Tsarnaev's defense, including presentations to the United States Attorney and Attorney General under the Department of Justice's Death Penalty Protocol, as well as investigation and preparation for trial. The Court should compel the government to comply with the requests in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963), *Kyles v. Whitley*, 514 U.S. 419 (1995), their progeny, the Fifth, Sixth and Eighth Amendments to the U.S. Constitution, the Federal Rules of Criminal Procedure, and the Local Rules.

The Supreme Court has emphasized that broad disclosures "serve to justify that trust in the prosecutor as the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case but that justice shall be done." *Kyles*, 514 U.S. at 439 (ellipses in original; internal quotation marks omitted). Especially strict attention to discovery obligations is required where, as here, the "qualitative difference between death and other

- 1-

penalties calls for a greater degree of reliability" in the proceedings. *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

## Background

By 30-count indictment returned on June 27, 2013, defendant, Dzhokhar Tsarnaev, was charged with a series of alleged offenses arising from the Boston Marathon bombing and ensuing events in Watertown, Massachusetts. Multiple charges potentially carry the death penalty. Mr. Tsarnaev was arraigned on July 10, 2013.

On August 16 and September 3, 2013, the government produced an enormous volume of discovery – multiple terabytes of data on various computer media. The September 3 production was accompanied by a standard letter pursuant to Fed. R. Crim. P. 16 and the Local Rules describing correlation of the production to the government's automatic discovery obligations. Among other things, the government's production included a large number of FBI form 302 reports of interviews ("FBI 302s") with various friends and acquaintances of Mr. Tsarnaev. Notably absent, however, were grand jury transcripts or FBI 302s relating to Mr. Tsarnaev's extended family, Katherine (Russell) Tsarnaeva (Tamerlan Tsarnaev's wife), Ibragim Todashev (the young man shot and killed by the FBI during questioning at his home in Florida), Ibragim Todashev's associates (girlfriend, ex-wife, etc.), extended family and associates of Tamerlan Tsarnaev who were interviewed by FBI agents in Russia, and the three college friends of Mr. Tsarnaev who are charged separately with destruction of evidence and lying to investigators. *See United States v. Kadyrbaev et al*, 13-CR-10238-DPW (D. Mass.)

By letter dated September 23, 2013, the defense made a preliminary request for additional discovery from the government. Among other things, the defense specifically requested information that would tend to establish any relevant factor in mitigation at sentencing

or that would tend in any way to persuade the government not to seek death or a jury to return a sentence less than death. The letter noted that reports of interviews and grand jury testimony of Tsarnaev family members and others, not yet produced by the government, are likely replete with information pertinent to mitigation.

By letter dated September 30, 2013 (attached as Exhibit A), the government responded to the defense discovery letter. The government provided a brief summary of certain potentially mitigating "facts" derived from witness statements, but did not provide the FBI 302s or grand jury transcripts, or other materials from which those "facts" were extracted.[1] The government did not disclose any information provided by Mr. Tsarnaev's three separately-indicted friends, or various others who were interviewed by the FBI in Russia. The government declined to provide most of the other information and evidence requested by the defense. By letter dated October 4, 2013 (attached as Exhibit B), the government summarized additional "facts" derived from a witness' statements, again without providing underlying FBI 302s or grand jury transcripts.

This motion follows to compel full compliance with defense requests.

## Argument

The government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

The Local Rules further provide that

[e]xculpatory information includes, <u>but may not be limited to</u>, all information that is material and favorable to the accused because it tends to:

(1) Cast doubt on defendant's guilt as to any essential element in any count of the indictment or information;

---

[1] The government did provide a single FBI 302 of one family acquaintance, but that report was a duplicate of one already included in the initial production.

>	(2) Cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude . . . .;
>
>	(3) Cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief; or
>
>	(4) Diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

Local Rule 116.2(a) (emphasis added).

In addition, to exculpatory information, the Federal Rules of Criminal Procedure provide that

>	[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
>>	(i) <u>the item is material to preparing the defense</u>;
>>	(ii) the government intends to use the item in its case-in-chief at trial; or
>>	(iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Under this rule, the defendant

>	is entitled to relevant evidence, even if inculpatory. He need not show that the statements are material or exculpatory. Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 (D. Mass. 2007) (internal quotation marks omitted); *see also United States v. Poindexter,* 727 F. Supp. 1470, 1473 (D.C. Cir. 1989) ("The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case."); *United States*

*v. Karake*, 281 F. Supp. 2d 302, 309 (D. D.C. 2003) (Evidence is "material" under Rule 16, "whether inculpatory or exculpatory, as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.") (quoting *United States v. Marshall*, 132 F. 3d 63, 68 (D.C. Cir. 1998)) (internal quotation marks omitted).[2]

Under the Local Rules, the government must produce many categories of exculpatory evidence and Rule 16 materials within 28 days of arraignment. *See* Local Rule 116.1(c)(1); 116.2(b). The deadline for disclosures of sentencing mitigation information is less definite: the Local Rule only requires that it precede "any plea or to the submission by the defendant of any objections to the Pre-Sentence Report, whichever first occurs." Local Rule 116.2(b)(4). As the government concedes in its September 30 letter, however, this Local Rule does not contemplate a death penalty prosecution. In any event, a Local Rule cannot trump the requirements of due process.

In a potential capital case, courts have held that *Brady* information relevant to sentencing must be disclosed as early as possible in order for the defense to make effective use of the information both in advocacy to the United States attorney and DOJ under the Death Penalty Protocol, and in conducting diligent investigation to prepare for trial. For example, in *United States v. Ablett*, No. CR 09-749 RS (JL) (N.D. Cal. Dec. 29, 2010), the Court ruled:

> [I]n a potential capital case, even in the absence of a trial date, the Government must provide whatever it is obliged to produce under *Brady*, *Giglio* and *Kyles*, regardless of its interpretation of the limits on discovery under Rule 16, the Federal Rules of Criminal Procedure, and the Jencks Act. The pre-authorization phase of a potential capital case is analogous to the penalty phase of a trial, and defense counsel must have access to all relevant discovery, in order to provide effective assistance to Defendant.

---

[2] Notably, moreover, Rule 16 establishes the "<u>minimum</u> amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Advisory Committee Note to Fed. R. Crim. P. 16 (emphasis added).

Docket Entry # 73 (attached as Exhibit C); *see also United States v. Delatorre,* 438 F. Supp. 2d 892, 900 (N. D. Ill. 2006) (ordering pre-authorization discovery because the "exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty."); *United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71, 89 (D. P.R. 2003) (striking death penalty notice, in part, because government did not provide discovery prior to the certification meeting; "[h]ad the government timely provided such discovery as required, Defense Counsel would have been able to use the sought materials in preparation for and during the death penalty certification meeting. Defense Counsel's representation before the Review Committee on Capital Cases was, therefore, severely compromised, putting his client at a grave disadvantage."); *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D. D.C. 2003) ("The Government wisely does not contest the application of *Brady* at this stage of the proceedings to the statutory mitigating factors....[C]ourts have taken an expansive approach, recognizing that the enumerated factors are not exclusive and any mitigating factor may be considered by the jury."); *United States v. Jackson*, 2003 WL 22023972 at * 2 (S.D.N.Y. Aug. 27, 2003) ("Here, the *Brady* issue must be resolved in the sui generis context of a case in which the government may seek the death penalty against defendants....In these circumstances, penalty determination relevant material within the scope of *Brady v. Maryland*, and its progeny, must be produced in time to be used in defense counsel's argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice."); *United States v. Perez*, 222 F. Supp. 2d 164, 167-70 (D. Conn. 2002) (same).

All of the defendant's requests here fall squarely within the government's obligation to produce exculpatory evidence and information material to the defense. The Court should order the government to produce all responsive information and documents forthwith.

**Evidence Concerning Aggravation/Mitigation**

Mitigation can include "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604. The Supreme Court has referred to mitigation as "potentially infinite," *Ayers v. Belmontes*, 549 U.S. 7, 21 (2006), and as having "virtually no limits." *Tennard v. Dretke*, 542 U.S. 273, 285 (2004) (quoting *Eddings v. Oklahoma*, 455 U.S. 104 (1982)).

Evidence relevant to mitigation also includes information "regarding relative culpability" of accomplices. *Karake*, 281 F. Supp. 2d at 307. Thus, "the government is obliged to disclose any information that reflects that defendants are equally or less culpable than other co-conspirators." *Id.* at 308. Here, in other words, alleged aggravating information concerning the character and culpability of the defendant's brother, Tamerlan, is mitigating with respect to the defendant and must be produced.

The American Bar Association, in establishing minimum professional standards for performance of defense counsel in capital cases, outlined the scope of required defense mitigation investigation as follows:

> The defense team must conduct an ongoing, exhaustive and independent investigation of every aspect of the client's character, history, record and any circumstances of the offense, or other factors, which may provide a basis for a sentence less than death. The investigation into a client's life history must survey a broad set of sources and includes, but is not limited to: medical history; complete prenatal, pediatric and adult health information; exposure to harmful substances in utero and in the environment; substance abuse history; mental health history; history of maltreatment and neglect; trauma history; educational history; employment and training history; military experience; multi-generational family history, genetic disorders and vulnerabilities, as well as multi-generational

>patterns of behavior; prior adult and juvenile correctional experience; religious, gender, sexual orientation, ethnic, racial, cultural and community influences; socio-economic, historical, and political factors.

ABA Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, Guideline 10.11.B (2008).  The ABA highlights the gathering of multigenerational documentary records as a particularly important part of mitigation investigation:

>Records – from courts, government agencies, the military, employers, etc. – can contain a wealth of mitigating evidence, documenting or providing clues to childhood abuse, retardation, brain damage, and/or mental illness, and corroborating witnesses' recollections. Records should be requested concerning not only the client, but also his parents, grandparents, siblings, and children. A multi-generational investigation frequently discloses significant patterns of family dysfunction and may help establish or strengthen a diagnosis or underscore the hereditary nature of a particular impairment. The collection of corroborating information from multiple sources — a time-consuming task — is important wherever possible to ensure the reliability and thus the persuasiveness of the evidence.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003) at 83.

Developing a mitigation case is akin to construction of a mosaic.  Myriad discrete facts that may not seem obviously mitigating or even relevant viewed in isolation are combined in context to depict the defendant as a complete human being in order to persuade the government and/or a jury that he should not be put to death.  The government necessarily must provide the defense with access to any evidence, records, or other information in its possession, custody, or control that may bear on these topics — evidence that may lead to or become even a small tile in this mosaic — in order to fulfill its obligations under *Brady* and its progeny. [3]

---

[3] Although the government has argued that it already is aware of the information contained in the discovery that the defense seeks, including FBI 302s and grand jury testimony, it ignores the fact that providing that information to the defense would enable the defense to inform the government of inaccuracies or misunderstandings in those statements.

In its September 23 discovery letter, the defense listed, without limitation, "example" categories of mitigating facts (including facts that could assist to place in context or comparatively assess aggravating facts) as to which the government should disclose any information or evidence it may have. In response, the government produced brief summaries of information provided by certain witnesses under each category but did not produce the underlying FBI 302s, grand jury transcripts, or other source from which the summaries apparently were extracted, nor did it explain its omission of this information from its earlier automatic disclosures.[4]  *See* Ex. A at 2-9.

The government's disclosure of sanitized summaries of isolated facts is inadequate. The Court should order production of the actual 302s, grand jury statements, or other source documents. The defense is unaware of any authority to suggest that the government can comply with *Brady* merely by providing terse tidbits extracted from underlying documents in its possession that contain potentially exculpatory or mitigating evidence.[5]  The source documents would reveal several critical facts affecting the credibility and reliability of the information, *e.g.*, the date, time and place of the interview, the presence of others, including counsel, whether or not the individual was read, asserted or waived *Miranda* rights and the context of the excerpted information.

---

[4] With respect to the second summary disclosure, government counsel cryptically wrote: "We apologize for providing this information in a supplement but our own review of the information was unavoidably delayed." Ex. B.

[5] The Jencks Act is not a shield that can trump the requirement to produce *Brady* evidence. *See United States v. Snell*, 899 F. Supp. 17, 21 (D. Mass. 1995) ("[I]n seeking to harmonize the Jencks Act and *Brady*, it makes no sense to indulge in a crabbed interpretation of a constitutional right, like *Brady*, and an expansive interpretation of a statutory one, like Jencks."); *see also* Local Rule 115.2(b)(5) ("If an item of exculpatory information can reasonably be deemed to fall into more than one of the foregoing categories, it shall be deemed for purposes of determining when it must be produced to fall into the category which requires the earliest production.").

- 10-



Particularly in the capital mitigation context, the government is not in a position to decide what information provided by a witness may be pertinent to understand the defendant and his background in developing a mitigation case. Moreover, the context, language, and background of the witness' statements are lost in withholding the original 302 or grand jury transcript. This deprives the defense of important information to evaluate the truth and reliability of witness statements and to conduct follow-up investigation. The government has not cited any countervailing concerns, such as witness privacy or national security, that would justify the withholding of this information, especially where, as here, a protective order restricts dissemination of the information to others.

**<u>Numbered Defense Requests</u>**

In its September 23 letter, the defense requested specific types of documentation, without limitation, likely to contain *Brady* evidence or other information material to preparation of the defense. Each request, and the government's response, is handled in turn.

> *<u>Defense Request # 1</u>*: *All information and documents concerning or comprising communications (including, without limitation, e-mail messages) between or among law enforcement personnel, prosecutors, and the Court concerning our client's repeated requests for a lawyer during questioning at Beth Israel hospital following his arrest.*

In response, the government re-framed this request as simply seeking "[i]nformation concerning the defendant's request for a lawyer during questioning at Beth Israel hospital" and then stated that "the government has already complied with this request." Ex. A at 9. The government's response elides the core of the defense request. While the government has produced information regarding the interrogation, it is not known whether Mr. Tsarnaev's requests for counsel from his hospital bed were ever communicated to the Court. The defense therefore has requested and persists in requesting any communications among law enforcement, prosecutors, and the Court concerning Mr. Tsarnaev's requests for counsel in order to fully assess what remedies may be available for violations of the Fifth and Sixth Amendments. For example, it may be necessary to conduct an inquiry to determine whether information obtained from the interrogation of Mr. Tsaranaev tainted the recovery of other evidence. Evidence obtained through coerced statements may be subject to suppression. *See United States v. Patane*, 542 U.S. 630, 644 (2004) (distinguishing involuntary statements from those obtained through a violation of *Miranda v. Arizona*); *see also Chavez v. Martinez*, 538 U.S. 760, 769 (2003), cited in *Patane*, 542 U.S. at 640.

The requested information is exculpatory and expressly subject to production under Local Rule 116.2(a)(2) (requiring production of information that could "[c]ast doubt on the

admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude.").

> *Defense Request # 2.  The complete immigration "A-files" of certain individuals.*

The government responded it "will produce any exculpatory information contained in the immigration files of his nuclear family members.  We do not intend to examine the immigration files of any of the other individuals named in this request for exculpatory information unless you can identify <u>specific</u> grounds for believing that the files actually contain such information."  Ex. A at 9 (emphasis in original).

Immigration A-files contain a vast amount of biographical information, including copies of underlying documents such as birth and marriage certificates, of the sort that the ABA Guidelines require the defense to collect in its mitigation investigation.  There is no reason not to permit the defense access to this information, subject to the protective order in effect in the case. Access to the A-files — which unquestionably are in the government's possession, custody, and control — will not only streamline defense investigative work but also save substantial resources that would otherwise have to be expended acquiring the same documents from myriad disparate sources across the globe.

> *Defense Request # 3.  FBI 302s, police reports, Grand Jury transcripts, and any other documents comprising or concerning interviews of or statements by certain named individuals.*

The government responded:  "This is not a bona fide request for exculpatory information. It is, in effect, a request to review the entirety of the government's investigation and files. To the extent the request is limited to exculpatory information, we have produced the information or will do so."  Ex. A at 10.

As noted above, statements by the identified individuals are surely replete with information relevant to the defense mitigation case. Production of sanitized summaries extracted from the underlying documents is inadequate. Moreover, the government has not even produced summary information from certain individuals, such as Mr. Tsarnaev's friends charged in the *Kadyrbaev* case and certain others who were interviewed by FBI agents in Russia.

> *Defense Request # 4*. *Transcripts of Grand Jury testimony by individuals as to whom FBI 302s and other reports already have been produced.*

The government responded that it "has produced numerous witness statements without being required to do so by law. The overproduction or early production of those statements does not obligate the government to produce other statements that may exist from the same individuals. To the extent grand jury transcripts contain exculpatory information or constitute Jencks material, the government has already produced that information or will do so." Ex. A at 10.

As noted above, statements by the identified individuals are surely replete with information relevant to the defense mitigation case. Production of terse summaries extracted from the underlying documents is inadequate.

> *Defense Request # 5*. *All documents and reports concerning surveillance of and/or interviews of Tsarnaev family members by law enforcement before April 15, 2013.*

The government responded: "To the extent such an investigation occurred, the documents you seek are not discoverable. Nevertheless, the government will review any responsive documents in its possession and consider making some or all of them available." Ex. A at 10.

The government's evasive answer, which fails to confirm the existence of these materials or the basis on which it declines to produce them, is unsatisfactory. The defense has a strong

basis to believe that responsive materials exist. *See, e.g.*, Bryan Bender & Noah Bierman, "Russia Contacted U.S. Government Multiple Times," THE BOSTON GLOBE, Apr. 23, 2013 (reporting that FBI interviewed Tamerlan Tsarnaev in 2011 after being contacted by Russian authorities). To the extent the government is relying upon FISA or other authority to resist disclosure, its *Brady* obligations would control and require production. Indeed, numerous courts have held that the government must disclose classified information that is "relevant and helpful to the defense" even if it would not fall within the definition of *Brady* evidence. *See, e.g., United States v. Amawi*, 695 F.3d 457, 470 (6th Cir. 2012), and cases cited therein.[6] Information concerning the development of radical views or suspicious activity on the part of, *e.g.,* Tamerlan Tsarnaev, bears on the relative culpability of the defendant compared to others.

> *Defense Request # 6. Audio recordings of telephone calls from FMC Devens and reports/transcripts concerning/comprising those calls if/as they are created.*

The government responded: "As we stated in our automatic discovery letter, the government will periodically provide reports/transcripts of the defendant's calls from FMC-Devens after they are received by this Office." Ex. A at 10.

This response is not satisfactory. Fed. R. Crim. P. 16(a)(1)(B)(i) requires the production of "any relevant written or recorded statement by the defendant." The Court therefore should order the government to produce the actual audio recordings of Mr. Tsarnaev's phone calls on a rolling basis, as they are made.

> *Defense Request # 7. All documents and information concerning or comprising intercepted communications (e.g., U.S. mail, voice (telephone/skype/etc.) calls, text messages, e-mail messages, web search history/browser requests) of the defendant and his family members.*

---

[6] The Classified Information Procedures Act , 18 U.S.C. App'x Sec. 2, *et seq.,* provides for procedures to be followed wthen the government seeks to withhold classified information from a criminal defendant. Undersigned counsel are unaware that the government has invoked these procedures.

*Defense Request # 8*. *All documents concerning or comprising "tips," warnings, or other information provided by Russian authorities concerning Tsarnaev family members.*

To each of these two requests, the government responded: "To the extent such information exists, the government will follow all legal requirements respecting its production." Ex. A at 10.

The government's evasive answer, which fails to confirm the existence of these materials or the basis on which it will or will not produce them, is unsatisfactory. The defense has a strong basis to believe that materials responsive to both requests exist. *See, e.g.*, Bender & Bierman, THE BOSTON GLOBE, *supra*. To the extent the government is relying upon FISA or other authority to resist disclosure, it still must disclose information that is relevant and helpful to the defense. *Amawi*, 695 F.3d at 470. Information concerning the development of radical views or suspicious activity by Tamerlan Tsarnaev bears on the relative culpability of the defendant in comparison.

*Defense Request # 9*. *All documents concerning the investigation of the triple homicide that occurred in Waltham, MA on September 10-11, 2011, including without limitation documents concerning investigation of the alleged involvement of Tamerlan Tsarnaev, Ibragim Todashev, and/or our client in those murders.*

The government responded: ███████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████

The government's response is not satisfactory. The law enforcement investigative privilege cannot trump the government's *Brady* obligations. *See Delatorre*, 438 F. Supp. 2d at 902 (ordering government to produce various categories of materials in capital prosecution; "[t]he law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials."). Here, evidence about the nature

and extent of Tamerlan's alleged involvement in the Waltham murders, and the absence of information about any involvement by our client, provides critical mitigating information.

## Conclusion

For the foregoing reasons, this Court should order the Government to produce the requested discovery.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/ William Fick

Judy Clarke, Esq.
California Bar: 76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that true copies of this document and all exhibits have been served by e-mail PDF upon counsel of record for the United States on this 7th day of October, 2013.
.

/s/ William Fick