Exhibit C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 09-0749 RS (JL) |
| Plaintiff, | **DISCOVERY ORDER**<br>**(Granting Docket # 38)** |
| v. | |
| CHRISTOPHER ABLETT, | |
| Defendant._____/ | |

### I. INTRODUCTION

This discovery motion has been referred by the district court (Hon. Richard Seeborg) (Minute Order at Docket # 50). Defendant moves for discovery related to the pre-authorization process in this case in which he has been charged with two death-eligible crimes. The matter has been thoroughly briefed, including supplemental briefing at the parties' request. The matter came on for hearing. Richard Mazer and Michael Burt appeared for Defendant, Wilson Leung appeared for the Government. The Court carefully considered the moving and opposing papers, the arguments of counsel, and the record in this case, and hereby grants Defendant's motion. The Court finds that the facts in this case support the relevance of discovery related to any statements by witnesses which may contain or reflect incriminating or exculpatory statements by Defendant, as well as other *Brady, Giglio* and *Kyles* discovery which would make it possible for counsel to provide effective assistance to Defendant, as required by the Sixth Amendment, in the pre-authorization phase. The Court also finds persuasive authority that, in a potential capital

1 case, even in the absence of a trial date, the Government must provide whatever it is
2 obliged to produce under *Brady, Giglio* and *Kyles*, regardless of its interpretation of the
3 limits on discovery under Rule 16, Federal Rules of Criminal Procedure, and the Jencks
4 Act. The pre-authorization phase of a potential capital case is analogous to the penalty
5 phase of a trial, and defense counsel must have access to all relevant discovery, in order to
6 provide effective assistance to Defendant. Compliance shall be due within twenty days of
7 entry of this order. Counsel shall prepare and submit to the Court a stipulated protective
8 order within one week of entry of this order.

## II. BACKGROUND

### A. The Charges

Defendant Christopher Ablett is charged in a three count indictment filed on July 23, 2009 with violations of 18 U.S.C. §1959(a)(1), murder in aid of racketeering (count I); 18 U.S.C. § 924(j)(1), use/possession of a firearm in furtherance of a crime of violence resulting in murder (count II); and 18 U.S.C. § 924(c)(1)(A), use/possession of a firearm in furtherance of a crime of violence (count III). Counts I and II carry a potential sentence of death.

### B. The Incident

The medical examiner's report contains a very brief description of the incident which states that "on 9/2/08 at about 2300 hours, the subject was in front of 1106 Treat Street, when a vehicle with two occupants pulled up along side the subject. Shortly afterwards, a person on a motorcycle pulled onto the sidewalk close by the vehicle with the two occupants. At that time a person got out of the driver's vehicle, while the other remained in the passenger seat. At some point shots were fired and the subject collapsed on to the middle of the street in front of 1106 Treat Street." The redacted police report merely states that an Officer Hallisy arrived at the scene and "observed that Guardado was lying face down in a puddle of blood that was formed around his head."

Neither of these documents, nor any other provided in discovery, indicates any involvement of Mr. Ablett in the alleged offense, or the names or addresses of any

1  witnesses. Although certain aspects of Mr. Ablett's alleged involvement in the homicide,
2  and the names and statements of certain witnesses, were revealed to Mr. Ablett and his
3  appointed counsel in the state court proceedings, those proceedings do not involve federal
4  investigative efforts or the wide-ranging Racketeering enterprise allegations of the
5  indictment in the present case. See also, *U.S. v. Mendez*, 2008 WL 2561962 * 6 (C.D.Cal.
6  2008)("[I]f it is true that the government has identified all of the potential witnesses in
7  discovery, it will suffer no prejudice by giving the defense a definitive witness list. Indeed,
8  as the identity of the witnesses is not secret, it appears that the government seeks merely
9  to gain a litigation advantage by resisting production of a witness list.")

### C. Ruling by Judge Seeborg

Although Judge Seeborg denied Defendant's motion to dismiss the indictment and to strike the bill of particulars, he expressly found that specifics regarding the alleged predicate acts could be addressed in discovery:

"[A bill of particulars] is designed to apprise the defendant of the specific charges being presented to minimize the danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.* In other words, the purpose of a bill of particulars is to clarify ambiguities in an indictment, not to serve as a replacement for discovery requests." (Order at 2:26-3:2); "full discovery obviates the need for a bill of particulars". (Order at 3:4-5), citing *U.S. v. Giese*, 597 F.2d 1170, 1180-1181 (9th Cir. 1979); "Additional specifics as to the acts that form the basis of the VICAR charge can be addressed through discovery. " (Order at 4:2-3); *U.S. v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (citations omitted).

### III. DISCOVERY REQUESTED BY DEFENDANT

#### A. General Categories of Discovery

Defendant moves this Court to order the Government to produce forthwith all relevant, material, exculpatory or mitigating documents or evidence in the possession of United States Attorney's Office for the Northern District of California, the United States Department of Justice, the Federal Bureau of Investigation, the Drug Enforcement

1 Administration, the Bureau of Alcohol, Tobacco and Firearms, the California Department of
2 Justice, the San Francisco Police Department, the Modesto Police Department, the San
3 Francisco District Attorney's Office, or any other federal, state or local agency which has
4 assisted or allied itself with this prosecution in any way, including the prosecution of the
5 related cases involving other alleged members of the Mongols "biker gang" in the Central
6 District of California (*United States v. Cavazos*, et. al, No. CR-08-1201) and the District of
7 Colorado (*United States v. Maestas*, No. 08-CR-340 REB).

8       This request for "documents or evidence" includes, but is not limited to, all
9 books, papers, letters, correspondence, reports, memoranda, studies, calendars,
10 appointment books, diaries, notes, messages, computer files or records, computer
11 facilitated or transmitted materials, images, photographs, information in any computer
12 database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts,
13 checks, receipts, and all copies or portions of these documents, or any other written,
14 recorded or materialized material of any kind.

15       "Prosecutors are encouraged to err on the side of inclusiveness when identifying the
16 members of the prosecution team for discovery purposes. Carefully considered efforts to
17 locate discoverable information are more likely to avoid future litigation over Brady and
18 Giglio issues and avoid surprises at trial." Guidance for Prosecutors Regarding Criminal
19 Discovery (January 4, 2010)

20      **B.    Statements of Mr. Ablett**

21       The government should be ordered to provide forthwith any relevant written or
22 recorded statements made by Mr. Ablett which are within the possession, custody or
23 control of the Government, including those statements which are known to the
24 Government or which could be known to the Government through the exercise of due
25 diligence. Fed. R. Crim. P. 16(a)(1)(A). This order should include, without limitation, all
26 written or recorded statements of witnesses that reflect, relate or incorporate any relevant
27 statements made by Mr. Ablett and all other documents that reflect, relate or incorporate
28 any statement made by Mr. Ablett.

**C. Information about Witnesses**

**1. *Brady, Giglio* and *Kyles* Evidence**

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny including *U.S. v. Agurs*, 427 U.S. 97 (1976), *Giglio v. U.S.*, 405 U.S. 150 (1972) and *Kyles v. Whitley*, 514 U.S. 419 (1995), the Government should be ordered to provide forthwith all documents and information (in whatever form) that would tend to exculpate him with respect to the charges contained in the Indictment or with respect to any factor in aggravation to be alleged, that would tend to impeach the witnesses against him, that would tend to establish any relevant factor in mitigation at sentencing, or that would tend in any way to persuade the government not to seek death or a jury to return a sentence less than death. This order should include, without limitation:

1. Any document or information (in whatever form) which would indicate or tend to prove that any of the allegations in the Indictment are not true;

2. Any document or information (in whatever form) which is responsive to the requests set forth in Section C., supra;

3. Any document or information (in whatever form) which would indicate or tend to prove that Mr. Ablett engaged in any conduct that forms the basis of the alleged offense with the good faith belief that his conduct was not criminal, or that he acted under the coercion or duress of another;

4. Any document or information (in whatever form) which would indicate or tend to prove that Mr. Ablett or any of his family members suffered from any mental disease or defect or other impairment at any time;

5. Any document or information (in whatever form) which would indicate or tend to prove that Mr. Ablett acted in perfect or imperfect self defense, including any and all documents or information relating to any violent or illegal act committed, or allegedly committed, by Mark Guardado, or relating to his propensity or reputation for violence, including but not limited to any records of unadjudicated arrests ;

6. Any document or information (in whatever form) which would indicate or tend to prove that there were threats of bodily harm or death or attempts to inflict bodily harm or death made to defendant or his associates by any member of the Hells Angels or any other biker gang;

7. Any document or information (in whatever form) which would indicate or tend to prove that Mr. Ablett was not a member of the Mongols "biker gang";

8. All documents or information (in whatever form) that may be used to impeach any potential witness for the Government, or any person whose statements will be introduced pursuant to the authority of Federal Rules of Evidence Rule 801, including without limitation:

a. All documents or information (in whatever form) relating to any conviction, arrest or criminal record of any potential witness for the Government (including any information regarding any criminal charges brought against any Government witness);

b. All documents or information (in whatever form) relating to any promises, considerations or inducements made to any potential Government witness of any kind, whether the promise, inducement or consideration was made directly to the witness or indirectly to the witness' attorney, family, friends, employer or associates. "Consideration" means anything of value or use, including grants of immunity (whether formal or informal), any fees or compensation paid to a potential witness of any kind, any money, transportation assistance, lodging, expense reimbursement or salary paid to a potential witness of any kind, or any assurance , promise, suggestion or agreement of favorable treatment with respect to any criminal, civil or administrative matter, including without limitation any agreement

|   |   |   |
|---|---|---|
| 1 |   | to dismiss or prevent the filing of any criminal, civil or administrative |
| 2 |   | charges; |
| 3 | c. | All documents or information (in whatever form) relating to |
| 4 |   | inconsistencies in statements given by any potential prosecution |
| 5 |   | witness; |
| 6 | d. | All documents or information (in whatever form) that would tend to |
| 7 |   | impeach the credibility of any potential witness for the Government; |
| 8 | e. | All documents or information (in whatever form) bearing adversely |
| 9 |   | on the character or reputation for truthfulness of any potential |
| 10 |   | prosecution witness; |
| 11 | f. | Any and all specific instance(s) of misconduct by any potential |
| 12 |   | Government witness that could be inferred to reflect on the witness' |
| 13 |   | honesty, truthfulness or reputation for honesty and truthfulness; |
| 14 | g. | Any FBI, DEA, ATF, or any state or local personnel or other files for |
| 15 |   | each Government witness; |
| 16 | 9. | The date of and participants in each and every interview (including not only |

17 interviews conducted by the Government, but also interviews conducted by
18 any third party which is in the possession of the Government or its agents) by
19 any agent of the federal, state or local Government of each potential
20 Government witness, including without limitation any debriefing, "queen for a
21 day" session, proffer, deposition, or other state or description of the alleged
22 facts made by each potential witness for the Government (whether directly or
23 indirectly, such as a proffer made by counsel).

24 The order should include the requirement that the foregoing material shall be
25 produced even if it is contained in material which might otherwise be characterized as
26 *Jencks* material or work product.

27 **IV. DEFENDANT'S ARGUMENT IN FAVOR OF MOTION**

28 **A. The Government has produced voluminous redacted discovery which does not discharge its obligations under applicable law.**

Defendant argues that the Government has failed to fulfill its *Brady/Giglio* obligations to disclose the identities of witnesses and other evidence that supports a theory of self-defense. Indeed, the Government has not even acknowledged that it has any obligations under *Brady/Giglio* at the authorization stage of a capital case. It has taken the position, despite case law to the contrary, that its only discovery obligations are contained in Rule 16, Federal Rules of Criminal Procedure. The Government's actions leave the defendant in an unfair and untenable position. The Court should compel the Government to provide discovery as requested in defendant's Discovery Motion, and should adopt the procedure outlined by Magistrate Judge Hollows in *United States v. Salyer*, as requested in Mr. Ablett's Reply to Government's Further Response to Defendant's Discovery Motion at 6, n. 4 [doc. 56]. (A Detailed Proposed Discovery Order by Defendant is e-filed at Docket Number 38-2)

Judge Hollows ruled that in a complicated criminal case fairness " requires that organization of discovery take place in accordance with the categories and sub-categories of discovery explicitly set forth in Rule 16 itself." (Id. * 6). Mr. Ablett urges this Court to adopt the same procedure in this case. As colorfully explained by Magistrate Hollows,

> "To the extent that discovery has been disclosed to Salyer, it will not do to state that "to the extent *Brady/Giglio* material is present, defendant will 'know it when he sees it' "-i.e., Salyer can wade through piles of documents or gigabytes of disclosed discovery to find it, and if he is lucky, the information will bite him much as a fisherman may eventually hook a fish by casting aimlessly without bait, if he casts long enough. Prosecutors have a duty to disclose what they reasonably view as exculpatory or impeaching material. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995) (quoting the ABA rule on point). Although in performing that duty they have been instructed to not "tack[ ] too close to the wind," id. 439, 115 S.Ct. at 1568, this does not mean that in a case such as this, prosecutors can go to the extreme of disclosing everything as possible *Brady/Giglio* material such that a pearl of exculpatory or impeaching information is inevitably lost in the sea of the mundane. In other words, at some point (long since passed in this case) a duty to disclose may be unfulfilled by disclosing too much; at some point, "disclosure," in order to be meaningful, requires "identification" as well.

(Id. at * 7)

In his declaration, Defendant's counsel Michael Burt asserts that the Government has obscured, rather than aided, the discovery process:

"I have represented capital defendants in this District in *United States v. Rausini*, No. CR 95-0319 SI; *United States v. Enriquez*, No. CR 00-0654 CRB; United States v. Feng, No. 01-20154 JF; *United States v. Oregana*, No. CR 02-0388 PJH, *United States v, George*, No. CR-04-0083 MJJ, and *United States v. Diaz*, No. CRS-05-00167- WHA. In most, if not all of these cases, there were allegations of large Racketeering Enterprises and governmental claims that certain witnesses would be endangered if their names or statements were disclosed. Yet in all of these cases, even in the *Diaz* case where allegations of witness intimidation were loud and persistent, some unredacted discovery was made available for use by the defense counsel–indeed, early in each case, there were tens of thousands of pages of materials made available to defense counsel.

Furthermore, in none of these cases was there a prior state prosecution where the names and statements of certain witnesses have already been revealed to the defendant as is the case here. See, *United States v. Mendez*, 2008 WL 2561962 * 6 (C.D.Cal. 2008)("[I]f it is true that the government has identified all of the potential witnesses in discovery, it will suffer no prejudice by giving the defense a definitive witness list. Indeed, as the identity of the witnesses is not secret, it appears that the government seeks merely to gain a litigation advantage by resisting production of a witness list.")

17. In sum, I believe that the disclosures provided to date are inadequate to inform me of the nature of the evidence against my client. The discovery is not compliant with the pertinent Federal Rules and cases cited in the motion, and at this point, other than strategic and tactical decision making by the individual prosecutors who are pursuing this case, I know of no reason why this Court should not order disclosures on a specific schedule as is the custom in this District."

### V. GOVERNMENT'S OPPOSITION

**A. The Government has discharged its obligations under Rule 16.**

The Government contends that Defendant's motion to compel discovery seeks information that the Government has produced, has agreed to produce, or is not required by Rule 16, and indeed, protected from disclosure by Rule 16.

As even the defendant recognizes, the defendant does not acquire additional substantive rights to discovery simply because the Government has charged death-eligible crimes. Indeed, regardless of whether the instant case is death-eligible, the defendant is entitled to the discovery set forth in Rule 16 of the Federal Rules of Criminal Procedure.

In full compliance with Rule 16, the Government has produced all statements made by the defendant, his criminal history, and copies of police reports that provide a summary of the investigation of the September 2, 2008, murder, with any witness identifying information and statements redacted to comply with 18 U.S.C. Section 3500, which requires the Government to disclose any statement made by a government witness after that witness has testified.

The Government has also produced phone records of the defendant, as well as others with whom the defendant was in contact on or about September 2, 2008. The Government provided defense counsel with an opportunity to view all the physical evidence seized in this case, including voluminous items related to his membership in the Mongols seized from the defendant's home.

The Government has provided information to the defendant about how to obtain the discovery in a case involving the Mongols, pending in the Central District of California, and will obtain information about discovery in another case involving the Mongols, pending in the District of Colorado. The Government has no information that would suggest that the Colorado case bears any relation to the case here. The Government would reserve any objections to making available discovery in the Colorado case depending on what it learns about any relevance to this case and whether the Colorado prosecutors would object to disclosing their evidence to an unrelated case such as this.

The Government is well aware of its *Brady* obligations, and would produce *Brady* materials if it had any. The Government is well aware of the continuing nature of its *Brady* obligations and will turn over any *Brady* materials that it identifies in the future. The Government will also provide expert notices and related information about expert testimony when it is appropriate to do so. At this point, however, there is no trial date, and as such, no need for expert disclosures to be done at this time.

1  Defendant also requests grand jury ministerial and selection records. To the extent
2  that such records exist, the Government will coordinate with the Clerk of the Court in
3  providing such information. The Government respectfully requests that the Court issue a
4  protective order governing the disclosure of this information. Specifically, the Government
5  requests that the addresses and other personal information of the individuals not be
6  disclosed. Furthermore, the disclosures should be made only to defendants' counsel and
7  investigators, and used only in conjunction with the fair cross-section challenge in this
8  criminal matter.

9  Defendant further requests that the Government be "ordered, or at least strongly
10  encouraged" to produce all information relating to any witness, including any grand jury
11  testimony and memorandum of interviews of any potential Government witness. This
12  request goes far beyond what is required by Rule 16, and, indeed is specifically protected
13  from disclosure at this time by 18 U.S.C. Section 3500, which provides that, upon motion of
14  the defendant, a court shall order the Government, after a witness has testified, to produce
15  any prior statement "which relates to the subject matter as to which the witness has
16  testified." Rule 16, in turn, states that it does not "authorize the discovery or inspection of
17  statements made by prospective government witnesses except as provided in 18 U.S.C.
18  Section 3500." Although the Government is well within its rights to withhold prior witness
19  statements, the Government has advised defense counsel that it will produce copies of
20  certain witness statements, redacted as to witness name and address to protect the
21  witnesses from danger and subject to a stipulation and protective order entered by the
22  Court.

23  Nothing about the death-eligible nature of the charges in this case changes the
24  Government's approach to discovery, namely its faithful adherence to the law. Indeed, as
25  the court recognized in *U.S. v. Delatorre*, 438 F. Supp. 2d 892, 901-02 (N.D. Ill. 2006), a
26  case cited by defendant, "[e]ven courts allowing pre-authorization discovery . . . exclude
27  certain material from discovery." The court went on to identify four categories of information
28  so excluded from discovery: (1) witness lists, particularly where there is a specific showing
   of risk to potential witnesses; (2) materials subject to the work product privilege and the

1  deliberative process privilege, including discussions between prosecutors and investigative
2  agents; and (3) the law enforcement investigatory privilege, which provides protection for
3  ongoing criminal investigations; and (4) the informant's privilege, which allows the
4  Government to conceal the identity of its informants unless the defendants show that the
5  identity of the informant is essential. Id. In line with the reasoning set forth in *Delatorre*, and
6  particularly given the witness safety concerns in this case, the Government will not identify
7  witnesses, and certainly will not this far in advance of trial. The Government will, however,
8  provide certain summaries of witness statements. Rule 16 requires nothing more, and
9  indeed, requires much less.

Defendant states that he has received many of these statements from the state prosecution in unredacted form, and thus, he should receive them again from the Government. If he has them in unredacted form, he does not need them again from the Government in this case. In any event, the Government does not know what the defendant has or not, and the Government's repeated request for reciprocal discovery has been met with silence.

Thus, to the extent that the defendant requests discovery beyond Rule 16, and beyond what the Government has agreed to provide, the defendant's request should be denied.

### V. ANALYSIS

Because of the critical importance of the authorization process, "[s]everal district courts have allowed discovery before the Government has made a final decision regarding whether to seek the death penalty; i.e., pre-authorization discovery." *U.S. v.Delatorre*, 438 F.Supp.2d 892, 900 (N.D.Ill.,2006). See also, *U.S. v. Gomez- Olmeda*, 296 F.Supp.2d 71, 89 (D.P. R.2003)(death penalty notice stricken, in part because government did not provide discovery prior to the certification hearing; "[h]ad the government timely provided such discovery as required, Defense Counsel would have been able to use the sought materials in preparation for and during the death penalty certification meeting. Defense Counsel's representation before the Review Committee on Capital Cases was, therefore, severely compromised, putting his client at a grave disadvantage."); *U.S. v. Karake*, 281 F.Supp.2d

302, 306 (D.D.C.2003)("The Government wisely does not contest the application of Brady at this stage of the proceedings to the statutory mitigating factors."); *U.S. v. Jackson*, 2003 WL 22023972 * 2 (S.D.N.Y. 2003)("Here, the *Brady* issue must be resolved in the sui generis context of a case in which the government may seek the death penalty against defendants....In these circumstances, penalty determination relevant material within the scope of *Brady v. Maryland*, and its progeny, must be produced in time to be used in defense counsels' argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice."); *U.S. v. Perez*, 222 F.Supp.2d 164, 167-70 (D.Conn.2002)(same). As stated in *Delatorre*, "[t]hese courts have ordered discovery produced subject to immediate disclosure to be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice." ( 438 F.Supp.2d at 900).

"Exculpatory information, regardless of whether the information is memorialized, must be disclosed to the defendant reasonably promptly after discovery." Guidance for Prosecutors Regarding Criminal Discovery (January 4, 2010). See also, *U.S. v. Richter*, 488 F. 2d 170, 173 (9th Cir. 1973)("It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice."); *Sendejas v. U.S.*, 428 F.2d 1040, 1046 (9th Cir. 1970) (holding that "it appears that the trial judge in his discretion has the right to determine how much time is reasonably needed and to make allowances if necessary"); *U.S. v. Acosta*, 357 F. Supp. 2d. 1228 (D. Nev. 2005) (*Richter* and local rules supported magistrate's order granting early *Brady* discovery.").

The ordering of pre-authorization discovery is grounded in the notion that "[e]ven though the USAM does not create substantive rights, ... the defendants still have a right to [pre-authorization] discovery in [a federal capital] case." *U.S. v. Delatorre*, 438 F.Supp.2d at 900. Delatorre also emphasizes that "[d]istrict courts have broad discretion with regard to discovery motions in criminal cases", and this is also certainly true in the Ninth Circuit. *U.S. v. W.R. Grace* , 526 F. 3d 499, 508-510 (9th Cir. 2008) (en banc).

In *W.R. Grace*, the Ninth Circuit overruled earlier precedent and concluded that a district court did not abuse its discretion in requiring the government to disclose its final list of witnesses a year before trial. The en banc panel held that " a district court, consistent with Rule 16 and Rule 2 and as part of the court's inherent authority to manage its docket, may in appropriate circumstances require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order." 526 F. 3d at 513. The panel also concluded that an order requiring the production of a final witness list a full year before trial was justified because of the complexity of the case:

> "[t]he record reflects that the court had good reason to impose such a deadline...; the court believed that the deadline would bring the necessary focus and organization to ready the case for trial. The charged conspiracy reaches back nearly 30 years, the government now proposes to call more than 200 witnesses, there are many defendants and allegations, and millions of pages of documents have been produced during discovery. Such a complex case poses special challenges to the parties in preparing for trial and to the court in managing the litigation." Id. at 513-514.

By definition, the present case, like W.C. Grace, is complex and the government has so stipulated. See doc. 30, p. 1-2 ("The parties agree that, given the possibility of a sentence of death in this case, this case qualifies as an 'unusual' or 'complex' case ...").

As Mr. Ablett is presently subject to a possible sentence of death, "this warrants especially careful treatment as capital punishment is qualitatively different than any other form of punishment." (*Delatorre*, p. 900). In short, "[t]he exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty." (Id.)(internal quotation omitted).

The Court finds that the facts in this case support the relevance of discovery related to any statements by witnesses which may contain or reflect incriminating or exculpatory statements by Defendant, as well as other *Brady, Giglio* and *Kyles* discovery which would be essential for counsel to provide effective assistance to Defendant, as required by the Sixth Amendment, in the pre-authorization phase. The Court also finds persuasive authority that, in a potential capital case, even in the absence of a trial date, the Government must provide whatever it is obliged to produce under *Brady, Giglio* and *Kyles*, regardless of its interpretation of the limits on discovery under Rule 16, Federal Rules of Criminal Procedure, and the Jencks Act. The pre-authorization phase of a potential capital case is

analogous to the penalty phase of a trial, and defense counsel must have access to all relevant discovery, in order to provide effective assistance to Defendant.

## VI. CONCLUSION AND ORDER

Accordingly, this Court hereby orders the Government to provide all discovery requested by Defendant, as stated above. Compliance shall be due within twenty days of entry of this Order. Counsel shall prepare and submit to the Court a stipulated protective order within one week of entry of this Order.

IT IS SO ORDERED.

DATED: December 28, 2010

_____
James Larson
United States Magistrate Judge

G:\JLALL\CASES\CRIMINAL\09-0749\ORDER Re 38.wpd