UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | |
| Defendant | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SET DATE FOR PRE-AUTHORIZATION PRESENTATION TO THE U.S. ATTORNEY

The United States of America, by and through its undersigned counsel, respectfully opposes defendant's motion for an order requiring the United States Attorney to hear a presentation of mitigating factors from him on an unspecified date to be set in the future, which would effectively preclude the United States Attorney from making a death-penalty authorization recommendation to the Attorney General until after that date. As grounds for this opposition, the government states the following:

### BACKGROUND

The United States Attorney's Manual ("USAM") sets forth internal Department of Justice policies and procedures, including procedures to be followed in potential death penalty cases. See USAM §§ 9-10.010 to 9-10.190. It provides (among other things) that the Attorney General himself will make the final decision about whether to seek the death penalty. USAM § 9-10.040. To facilitate that decision, the United States

Attorney in the charging district must make a confidential
submission of relevant information to the Attorney General "as
expeditiously as possible."  USAM § 9-10.040.  Before doing so,
the United States Attorney must give the defendant "a reasonable
opportunity to present any facts, including any mitigating
factors, for the consideration of the United States Attorney."
USAM § 9-10.080.  In this case, the government has informed
defendant Dzhokhar Tsarnaev that he must make his presentation
on or before October 24, 2013 (i.e. approximately six months
after the date of the crimes charged in the indictment), so that
the United States Attorney can make her recommendation to the
Attorney General on or about October 31, 2013.

Defendant now asks the Court to order the United States
Attorney to hear his presentation on a later, unspecified date
to be set some time in the future.  In so doing, he necessarily
is also asking the Court to bar the United States Attorney from
communicating her death-penalty authorization recommendation to
the Attorney General until after that unspecified future date.
He argues that the Court may do these things pursuant to its
"inherent scheduling authority," and that it should do them
because the October 24, 2013 date does not give him a
"reasonable opportunity" to present mitigating factors for the
United States Attorney's consideration.

Defendant's motion must be denied for two reasons.  First, as defendant appears to acknowledge, USAM procedures create no legal rights and cannot be enforced by the courts.  Because this Court has no authority to order the United States Attorney to hear a mitigation presentation in the first place, it has no authority to order the United States Attorney to do so on a particular date.  Second, although the Court need not reach this question, the October 24, 2013 date provides defendant with a "reasonable opportunity" to make a meaningful mitigation presentation while vindicating the strong public and governmental interest in moving this case forward as expeditiously as possible.  Defendant's argument to the contrary is based on a fundamental misapprehension of the purpose of the mitigation presentation.

**ARGUMENT**

A.   Courts Have No Legal Authority to Set Dates For Internal DOJ Procedures Such as the Pre-Authorization Meeting With Defense Counsel.

The very first paragraph of the USAM explains its limited purpose:

> The United States Attorneys' Manual is designed as a quick and ready reference for United States Attorneys, Assistant United States Attorneys, and Department attorneys responsible for the prosecution of violations of federal law.  It contains general policies and some procedures

> relevant to the work of the United States
> Attorneys' offices . . . .   The Manual
> provides only internal Department of Justice
> guidance.  It is not intended to, does not,
> and may not be relied upon to create any
> rights, substantive or procedural,
> enforceable at law by any party in any
> matter civil or criminal.

In view of this language, every circuit court to consider the question has held that the USAM's provisions create no legal rights and cannot be enforced by the courts.  <u>See</u>, <u>e.g.</u>, <u>United States v. Lopez-Matias</u>, 522 F.3d 150, 155-156 (1st Cir.) (collecting cases), <u>cert. denied</u>, 555 U.S. 901 (2008); <u>United States v. Slone</u>, ___ F.Supp.___, 2013 WL 5217932, at *3 n.2 (E.D. Ky. Sept. 13, 2013) (same).  <u>See also</u> <u>United States v. Furrow</u>, 100 F.Supp.2d 1170, 1177 (C.D. Cal. 2000) (holding that "the death penalty authorization process does not affect either defendant's substantive rights or the ultimate merits of defendant's case [and thus] . . . is not a constitutionally critical stage" of the proceedings); <u>United States v. Gomez</u>, 62 F.Supp.2d 402 (D.R.I. 1999 (same); <u>United States v. Shakir</u>, 113 F.Supp.2d 1182, 1188 (M.D. Tenn. 2000) (same).  Defendant thus has no enforceable right to make a mitigation presentation to the United States Attorney at all, let alone to do so on a date of his (or the Court's) choosing.

Defendant sweeps aside this dispositive principle as if it

were beside the point.  He argues that even if he has no right

to make a mitigation presentation, the Court can nevertheless

order the United States Attorney to allow him to do so on a

particular date as an exercise of its "inherent scheduling

authority."  But a court's inherent scheduling authority does not

extend to the timing of discretionary procedures wholly within

the province of the Executive Branch.  As the <u>Slone</u> court

observed,

> While the Court has inherent power to manage its
> docket and to some extent supervise the administration
> of criminal justice, it may not direct the Executive
> Branch how to exercise its traditional prosecutorial
> discretion.  That discretion includes the decision
> whether to seek the death penalty.  So, even relying
> on its administrative and supervisory authority, the
> Court may not direct the process by which the
> government decides whether a death sentence is
> appropriate. . . .

<u>Id.</u> at *2; <u>accord</u> <u>United States v. Hardrick</u>, No. 10-202, 2011 WL

2516340, at *2 (E.D. La. Jun. 22, 2011) ("[T]he Court finds that

its authority to ensure the speedy and orderly administration of

justice and to manage its docket does not extend to controlling

internal deadlines within the Justice Department."); <u>United</u>

<u>States v. Jackson</u>, No. 04-801, 2006 WL 59559, at *2 (S.D.N.Y.

Jan. 9, 2006) ("The Attorney General's capital case review

procedure to determine whether, in the exercise of discretion,

to seek the death penalty is not part of the judicial

5

function.").

Defendant's argument that the Court has inherent power to delay the progress of this case in order to make it "more fair, orderly and, indeed, cost-effective," Deft. Mot. at 1, is also unavailing.  As the <u>Slone</u> court pointed out:

> [Although] district courts may direct proceedings
> efficiently for the benefit of all involved in
> litigation, [j]udges do not have free reign to pursue
> efficiency beyond the Courts; they are limited to
> managing judicial business. <u>See</u> <u>Link v. Wabash R. Co.</u>,
> 370 U.S. 626, 630-31 (recognizing district courts'
> inherent power 'to manage *their own* affairs so as to
> achieve the orderly and expeditious disposition of
> cases' (emphasis added)).  As a result, the Court has
> no administrative interest here because its
> proceedings are simply not affected by the
> government's schedule for the presentation of
> mitigating evidence. . . .  [A defendant's]
> presentation to the DOJ does not involve the Court.
> If there is any risk to the Court's docket, it is
> delay from [the defendant's] proposed schedule rather
> than the Justice Department's implementation of the
> DPP.

<u>Id.</u> at *4; <u>accord</u> <u>Hardrick</u>, <u>supra</u>, at *2 ("The presentation of mitigation evidence to the [government] . . . is a matter of DOJ internal procedure and does not involve the Court.").

CJA Guideline 6.04 likewise provides no support for defendant's argument.  For one thing, the CJA Guidelines, like the USAM, are entirely advisory and create no legal rights.  <u>Id.</u> at *3.  For another thing, the entire purpose of CJA Guideline

6.04 is to control litigation costs by speeding up, rather than slowing down, the death-penalty authorization process.  See Jon B. Gould & Lisa Greenman, Judicial Conference Committee on Defender Services, Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases (September 2010), at 106 ("Courts should exercise their supervisory powers to ensure that the death penalty authorization process proceeds expeditiously.") (Attachment "A").

Defendant's heavy reliance on United States v. McGill, Case No. 09-CR-2856-IEG (S.D. Cal. Apr. 16, 2010) -- an unpublished district court order from the Southern District of California -- highlights the weakness of his legal argument.  The court in McGill was simply wrong when it stated that "[i]n issuing a scheduling order [for a mitigation presentation], the Court is not granting defendant any new right or invading the province of the Department of Justice." Id. at *4.  On the contrary, as explained earlier, for a Court to order the United States Attorney to hear a defendant's mitigation presentation on a particular date is effectively to grant him a right to it.

Similarly, the decision whether to seek the death penalty in a given case -- and how to go about making the decision -- are matters exclusively within the province of the Department of Justice.  The Supreme Court has repeatedly held that making

7

investigatory and prosecutorial decisions is a "core executive constitutional function," United States v. Armstrong, 517 U.S. 456, 465 (1996), and therefore "outside the supervision of the court," Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807 (1987).  In keeping with this bedrock Separation-of-Powers principle, several courts have held that "the Court has no authority to interfere with internal DOJ policy governing the prosecutorial decision of whether to seek the death penalty." Shakir, 113 F.Supp.2d at 1191; accord United States v. Savage, No. 07-550-06, 2011 WL 6747479, at *2 (E.D.Pa. Dec. 23, 2011) (holding that a defense request to overrule the government's timeline for a mitigation presentation "is essentially [a request] that we interfere with the discretionary authority granted to the Government in making the decision as to whether to seek the death penalty"); Jackson, supra, at *2 (holding that, as a legal matter, the process of obtaining defense counsel's views on death-penalty authorization decision "is a process for the Attorney General to administer as he sees fit").

In short, the Court should deny defendant's motion because courts lack legal authority to manage internal Department of Justice procedures concerning the decision to seek the death penalty.

B.   The October 24, 2013 Meeting Date Provides Defendant
With a "Reasonable Opportunity" to Make a Mitigation
Presentation While Also Vindicating the Strong Public
And Governmental Interest in Moving This Case Forward.

Although the Court need not reach the question, the
scheduled October 24, 2013 meeting date allows defendant a
"reasonable opportunity" to make a mitigation presentation to
the United States Attorney.  Defendant's argument to the
contrary reflects a misunderstanding of the purpose of the
mitigation-presentation procedure.  That procedure is not an
adversary proceeding.  It offers the defense a reasonable
opportunity to present "facts, including any mitigating
factors," that it wishes to bring to the government's attention.
Of greatest interest to the government, especially in this case,
are any facts, circumstances, or conditions that the government
might not already be aware of or that the defense would like to
highlight for the government's consideration.  The six months
during which the defense team has been diligently working on
this case have given them a "reasonable opportunity" to marshal
such information.  Cf. Savage, supra, at *4 ("[S]tatistics
[about 'average' time between indictment and authorization
decision] derived from cases where the facts and investigatory
needs of counsel are not known are of little value").

Defendant's claim that the government has unfairly rushed

9

him is simply false.  The October 24, 2013 date is a full six months after the events giving rise to the charges in the Indictment.  A team of experienced public defenders was appointed to represent defendant on April 22, 2013, and an attorney learned in the law applicable to capital cases was added to the team on April 29, 2013, just 10 days after his arrest.  On information and belief, defense counsel have been meeting with defendant nearly every day or every other day since then, as well as actively investigating potential mitigating factors by meeting with his family members and others.  The Special Administrative Measures of which defendant complains in his motion did not go into effect until September 4, 2013, and they do not hinder attorney-client meetings.  And the two brief delays (in returning an indictment and providing automatic discovery) that the government requested, and to which defendant assented, benefitted the defense team as well as the government by lengthening their opportunity to build trust with the defendant and to conduct a mitigation investigation.

Although defendant complains that he needs more time to review discovery, that is not a valid reason for delaying his meeting with the United States Attorney.  For one thing, as noted earlier, the chief purpose of that meeting is not for defendant to comment on information received from the government

but rather for him to provide potentially mitigating information
that he has gathered from his own independent investigation.

For another thing, although the government has produced a
large volume of information to the defense, much of the most
compelling evidence is not voluminous.  That evidence consists
of surveillance video of the defendant's planting a bomb at the
Marathon; an eyewitness who will testify that the defendant
carjacked, kidnaped, and robbed him; fingerprint, DNA, and
ballistics evidence linking the defendant and his brother to the
murder of Officer Sean Collier; several Watertown police
officers who will testify that the defendant tried to kill them
with explosives and gunfire; and a statement written in pen on
an inside wall of the boat where the defendant was hiding in
which he explains that the killing of innocent people was meant
to punish America for its actions overseas.  The surveillance
video and defendant's statements were produced to the defense on
May 10, 2013 (i.e. less than four weeks after his arrest).  The
fingerprint, DNA, and ballistics evidence were provided as part
of automatic discovery on September 3, 2013 (i.e. nearly two
months before the scheduled meeting).  And the witness
statements were likewise produced on September 3, 2013 (even
though, as Jencks material, the statements did not have to be
produced until much later).

11

Also, it bears emphasis that in producing discovery, the government has gone far beyond what is required by the Constitution and the Federal and Local Rules.  It has produced much more than is required, and it has produced many things much earlier than required.  Its overproduction and early production of information should not be used to justify unauthorized judicial control of internal DOJ procedures.

As defendant knows, moreover, the scheduled October 24, 2013 meeting with the United States Attorney is only his first opportunity to present mitigating information during the death-penalty authorization process.  If the United States Attorney recommends that the government seek the death penalty, the defense will be given an opportunity to present mitigation evidence and argument directly to the Attorney General's Capital Review Committee.  See USAM 9-10.120.  And even if the Attorney General then authorizes the government to seek the death penalty and to file a corresponding notice of intent, the defense may still request that the notice be withdrawn if new mitigation evidence comes to light.  See USAM 9-10.150.

Finally, the October 24, 2013 meeting date set by the government reflects the strong public interest in moving this case forward expeditiously.  Defendant is accused of one of the most serious terrorist attacks against civilians on American

soil since September 11, 2001.  He is charged with brutally murdering two women and a small child; maiming, blinding, and deafening scores of others; carjacking a victim and then robbing him; executing a police officer; and then attempting to murder other police officers with bombs and gunfire.  The victims, who were most affected by the charged crimes, as well as the general public, are entitled to see justice done in this case without undue delay.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion for an order directing the United States Attorney to delay hearing a mitigation presentation and making a recommendation to the Attorney General until some unspecified future date.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:  /s/ William D. Weinreb
     WILLIAM D. WEINREB
     ALOKE S. CHAKRAVARTY
     NADINE PELLEGRINI
     Assistant U.S. Attorneys