UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

ORDER
October 18, 2013

O'TOOLE, D.J.

The defendant stands indicted for crimes for which the statutorily authorized punishment includes the penalty of death. The decision whether to seek the imposition of the death penalty on the defendant's conviction of any of these offenses rests with the prosecution. It is the policy of the Department of Justice that the final decision whether to seek the death penalty is to be made by the Attorney General of the United States. United States Attorneys' Manual ("USAM"), § 9-10.040. The Department has adopted an internal protocol governing the process to be followed within the Department prior to the Attorney General's decision. Id. § 9-10.000 et seq. The protocol provides that the United States Attorney for the District in which the indictment is pending or contemplated must make a detailed written submission to the Department's Capital Case Unit which includes her recommendation whether the death penalty should be sought. Id. § 9-10.080. The protocol further provides that the United States Attorney "shall give counsel for the defendant a reasonable opportunity to present any facts, including mitigating factors, for the consideration of the United States Attorney" before making the submission, and further provides

that the submission should include "[a]ny documents or materials provided by defense counsel."
Id.

In this case, the government has stated that it intends to make its submission to the Capital Case Unit by October 31, 2013, and it has requested the defendant to provide any pertinent information or materials by October 24. The defendant has objected to that timetable and has asked the Court to order the government to extend the time within which the defendant may provide information or materials for inclusion in the submission.

The opportunity extended by the protocol to the defendant to submit information and materials for consideration in the Department's internal deliberations does not create a legal right that can be overseen and enforced by the Court. See United States v. Lopez-Matias, 522 F.3d 150, 155-56 (1st Cir. 2008). Extending such an opportunity may easily be described as prudent policy, but it is not required by any constitutional, statutory, or decisional rule of law. It is essentially a matter of grace.

The defendant appears to accept this, but says that the Court nevertheless should exercise its "inherent scheduling authority" and order the government to extend its deadline for the defendant's submission. He also points to a section in the Judicial Conference guidelines for Criminal Justice Act ("CJA") matters recommending that a court in a death penalty eligible case set a schedule for events leading up to the filing of the government's election notice as required by 18 U.S.C. § 3593(a), including the time for "the submission by the defendant to the U.S. Attorney of any reasons why the government should not seek the death penalty," the very deadline the defendant seeks to have adjusted here. See Guide to Judiciary Policy, Vol. 7, Pt. A, Ch. 6, § 670(b)(1).

Although the CJA guideline is not binding, it is "entitled to respectful consideration." In re Sony BMG Music Entm't, 564 F.3d 1, 6 (1st Cir. 2009). Here, that consideration does not help the defendant. The evident purpose of the guideline is to promote cost containment in death penalty cases where the defense is financed by CJA funds. The caption given to the guideline is "Scheduling of Federal Death Penalty Case Authorization to Control Costs." Guide, Vol. 7, § 670. The Judicial Conference memorandum that accompanied the distribution of the guideline after its adoption noted:

> [T]he utilization of this guideline can facilitate the authorization/declination process and significantly reduce costs in capital representations. An earlier declination decision enhances the opportunity to realize cost savings.

(See Gov't App. at 2 (dkt. no. 97).) The guideline was plainly intended to help *expedite* the government's death penalty decision. In contending that it should be a reason for extending or postponing the decision, the defendant argues against its objective. Accordingly, "respectful consideration" of the guideline in this circumstance counsels that it *not* be followed.

The defendant is correct that the Court has "inherent scheduling authority" over its docket and therefore over the pace of pending cases. In this case, the government must file a notice of its election to seek or not to seek the death penalty "a reasonable time before the trial," 18 U.S.C. § 3593(a), and the Court may set a date by which the government must file that notice. Doing so is an event in the course of the pending case. Setting of timelines for court events may, in some circumstances, compel a party to adjust its own timelines so as to be in compliance with the court's dates, but, as with the CJA guideline, that would occur only where the court's dates required the parties to speed up their internal preparations so as to meet the established deadlines. Faced with a court established deadline, a party is always free to act sooner than required.

In any event, what the defendant asks is that the Court set dates for events occurring not in the course of the judicial proceeding but rather in the course of the Department's internal deliberations. That would be well beyond the scope of any inherent authority to manage judicial business. See United States v. Slone, 2013 WL 5217932, at *4-5 (E.D. Ky. Sept. 13, 2013); United States v. Hardrick, 2011 WL 2516340, at *2 (E.D. La. June 22, 2011). The contrary view, expressed in United States v. McGill, 2010 WL 1571200 (S.D. Cal. Apr. 16, 2010), is unpersuasive for the reasons set forth above.

The defendant's motion (dkt. no. 107) is therefore DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge