UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL DISCOVERY

The United States of America, by and through its undersigned counsel, respectfully opposes defendant's motion to compel discovery.  As grounds for this opposition, the government states the following:

BACKGROUND

Defendant, Dzhokhar Tsarnaev ("Tsarnaev"), is charged with 30 crimes arising from a terrorist killing spree that began with the bombing of the Boston Marathon on April 15, 2013, and concluded with his capture by police on April 19, 2013.  At his arraignment on July 10, 2013, the Court set an alternative discovery schedule pursuant to Local Rule 116.2(f), which encourages the Court to set alternative discovery schedules in complex cases.  The Court ordered the government to provide automatic discovery on September 3, 2013, and allowed Tsarnaev three weeks after that date (i.e. until September 23, 2013) to make written discovery requests.  At the initial status hearing

on September 23, 2013, the government volunteered to respond to Tsarnaev's written requests within a week, i.e. on September 30, 2013.  In keeping with that schedule, the government provided complete automatic discovery on September 3, 2013, and it responded to Tsarnaev's written requests on September 30, 2013.

Virtually all of Tsarnaev's written requests were for mitigation information, i.e. information to be used at a future sentencing hearing to determine whether he should receive the death penalty.  Those requests were plainly premature.  Although seventeen of the crimes charged in the indictment carry the death penalty, a death penalty hearing in this case is not imminent.  The government has not yet indicated that it will seek the death penalty by filing the requisite notice under 18 U.S.C. § 3593(a); the Attorney General has not yet authorized the government to seek it; the Court has not yet scheduled a final status hearing, let alone a date for a trial or change of plea hearing; Local Rule 116.2(b)(4) does not require the production of mitigation information until a defendant is found guilty after trial or elects to plead guilty; and, as numerous courts have held, "Brady requires [only] that the government disclose material evidence in time for the defendant to make effective use of it."  Bielanski v. County of Kane, 550 F.3d 632, 645 (7th Cir. 2008); accord United States v. Lemmerer, 277

2

F.3d 579, 588 (1st Cir.) (same), <u>cert. denied</u>, 527 U.S. 901
(2002); <u>United States v. Starusko</u>, 729 F.2d 256, 262 (3rd Cir.
1984) (same); <u>United States v. Celis</u>, 608 F.3d 818 (D.C. Cir.)
(same), <u>cert. denied</u>, 131 S.Ct. 620 (2010).

Nevertheless, in keeping with the advice contained in USAM
§ 9.5001, and in the interests of moving this case forward
expeditiously, the government responded to Tsarnaev's requests
by voluntarily producing virtually all potentially mitigating
information in its files. (The government also informed
Tsarnaev that it had already voluntarily produced a large amount
of potentially mitigating information in its earlier production
on September 3, 2013.) Among other things, the government has
provided hundreds of witness statements from Tsarnaev's
teachers, neighbors, classmates and friends, even though many of
them contain information that is not favorable and material to
either guilt or punishment nor discoverable under the Federal or
Local Rules of Criminal Procedure. In response to Tsarnaev's
September 3, 2013 letter, which requested additional information
falling into nearly a dozen extremely broad categories, the
government, without conceding that any of the information is
actually exculpatory under the <u>Brady</u> standard, provided
responsive information culled from the witness statements of
family members and others.

Despite receiving this extremely generous early production, Tsarnaev has now filed a motion to compel the production of yet more information.  His chief complaint appears to be that the government combed through its investigative files and extracted potentially mitigating information instead of simply handing its files over to him.  Citing the Supreme Court's dictum that mitigation has "virtually no limits," Tennard v. Dretke, 542 U.S. 273, 285 (2004), he claims he is legally entitled to complete "access to any evidence, records or other information in [the government's] possession, custody or control that may bear on" a long list of mitigation "topics," and that "the government is not in a position to decide what information" to disclose to him under Brady.  Tsarnaev Mot. at 9-10.  We disagree.

## ARGUMENT

Although a defendant's right to present relevant and admissible mitigating evidence to a jury may have "virtually no limits," Tennard, 542 U.S. at 485, the same is not true of its right to examine the government's investigative files.  The Supreme Court has made clear that "[t]he holding in Brady v. Maryland requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'"  United States v. Bagley, 473 U.S. 667, 675, and

n.7 (1985) (quoting <u>Brady</u>, 373 U.S. at 87).  And because <u>Brady</u>'s "purpose is not to displace the adversary system as the primary means by which truth is uncovered . . . the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."  <u>Id.</u>

Tsarnaev's chief strategy for seeking production of unabridged witness interviews and other documents in the government's possession is to claim that every single thing inside of them constitutes favorable material evidence.  Citing Supreme Court cases about the broad scope of potential mitigation evidence, as well as ABA Guidelines that require defense counsel to conduct a wide-ranging investigation into a defendant's "character" and "life history," <u>see</u> Tsarnaev Mot. at 7, he argues that the government cannot satisfy its <u>Brady</u> obligation by producing less than "the actual 302's, grand jury statements, or other source documents" reflecting the statements of family members and others.  His argument boils down to a simple but flawed syllogism:  Everything about his "character" and "life history" constitutes favorable material evidence; everything in the reports he seeks falls into those categories; ergo, he is entitled to the complete reports.

Both the major and minor premises of Tsarnaev's argument

5

are fatally flawed.  First, regardless of whether certain information concerning Tsarnaev's "character" and "life history" constitutes favorable material evidence, not all of it does.  It follows that not all such information must be disclosed under Brady.  Second, much of the information in the documents he seeks does not materially relate to his "character" or "life history."  Absent some other basis for characterizing that information as exculpatory, it likewise need not be disclosed under Brady.

The documents Tsarnaev seeks contain information that is flatly inconsistent with some of his proposed mitigation theories and therefore may be used against him at a future sentencing hearing.  As much as he might want access to that information now in order to prepare to defend against it, he has no legal right to it, and he cannot obtain it by the mere expedient of asserting that everything about his life story is mitigating.  See, e.g., United States v. McVeigh, 954 F.Supp. 1441, 1449 (D.Colo. 1997) ("The Constitution does not require the government's lawyers to defend against the evidence they present or to take affirmative action to prepare a defense for the accused.  While the prosecutors must reveal what they know to be the weaknesses in their case, they are not required to direct a counter-investigation to destroy it.").  Brady did not

repeal the adversary system.

Tsarnaev also argues that under <u>Brady</u>, if a witness statement contains *any* favorable material information, the government must produce the statement in its entirety.  <u>See</u> Tsarnaev Mot. at 9.  He cites no authority whatsoever for this remarkable proposition and the government is aware of none.  But there is plenty of case law to the contrary.  Courts have repeatedly held that the government satisfies its obligations under <u>Brady</u> merely by disclosing the *identities* of potentially exculpatory witnesses; it has no constitutional obligation to produce exculpatory statements made by the witnesses, let alone provide entire, unabridged witness statements.  <u>See</u>, <u>e.g.</u>, <u>United States v. Brown</u>, 582 F.2d 197, 200 (2nd Cir.) ("The government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish."), <u>cert. denied</u>, 439 U.S. 915 (1978); <u>United States v. Dupuy</u>, 760 F.2d 1492, 1502 (9th Cir. 1985) (Brady requires disclosure "only [of] the identity of the individuals who had made potentially exculpatory statements [rather than] . . . the notes themselves"); <u>United States v. Reddy</u>, 190 F.Supp.2d 558, 575 (S.D.N.Y. 2002) ("In fulfilling its obligations under Brady, the Government may

direct the Defendants' attention to any witnesses who may have material exculpatory evidence.  Once the Defendants are aware of the existence of such witnesses, the Defendants may attempt to interview them to ascertain the substance of their prospective testimony, or subpoena them if the Government does not intend to call them as witnesses at trial.") (internal quotation marks and citations omitted); see also United States v. Sampson. 820 F.Supp.2d 202, 232 (D.Mass. 2011) (finding no Brady violation where statements "were disclosed in substance" even though unabridged statements were more "graphic" and "embellished").

The court in United States v. LeRoy, 687 F.2d 610 (2nd Cir. 1982), cert. denied, 459 U.S. 1174 (1983), explained why Brady requires only disclosure of the identity of exculpatory witnesses rather than production of their actual statements: "The rationale underlying Brady is not to *supply* a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied *access* to exculpatory evidence only known to the Government." Id. At 619 (emphasis added).  This distinction between access to exculpatory witnesses and actual production of their statements flows from a basic principle of constitutional law that Tsarnaev seems to have lost sight of:  "There is no general constitutional right

to discovery in a criminal case and Brady did not create one."
Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  Brady is
merely a rule of disclosure designed to ensure basic fairness;
it is not meant to undermine the adversary system or allow the
defense to substitute the government's investigative efforts for
its own.  See Bagley, 473 U.S. at 675.

Tsarnaev's claim that he is legally entitled to "the
context, language, and background of the witnesses' statements"
in or order "to evaluate the[ir] truth and reliability" is even
more remarkable.  Unsurprisingly, he does not cite a single case
for the novel proposition that he is entitled to what amounts to
Giglio information *for possible defense witnesses*.  This is yet
another example of Tsarnaev inventing a rule of discovery that
suits his purposes and then asking the Court to enforce it as if
it were the law.  See United States v. Bland, 432 F.2d 96, 97
(5th Cir. 1970) (per curiam) (holding that Brady does not require
disclosure of information consisting only of "a refinement of
facts already possessed by" the defendant), cert. denied, 401
U.S. 912 (1971).

To the extent Tsarnaev argues that he is entitled to
documents and witness statements that *potentially* contain
*potentially* exculpatory information, he simply misstates the
law.  See, e.g., Tsarnaev Mot. At 8 ("The government necessarily

must provide the defense with access to any evidence, records, or other information . . . *that may bear on* these topics.") (emphasis added). As the Supreme Court stated in <u>United States v. Agurs</u>, 427 U.S. 97 (1976), "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not" require its production. <u>Id.</u> at 109-10. Accord <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3rd Cir. 1994) (disclosure not required based on "the mere possibility" that information constitutes <u>Brady</u> material); <u>United States v. Davis</u>, 752 F.2d 963, 976 (5th Cir. 1985) ("[T]he court is simply not required to ensure access to all government material in order that [defendant] might be able to find something exculpatory for his case."); <u>United States v Arroyo-Angulo</u>, 580 F.2d 1137, 144 (2nd Cir.) (rejecting <u>Brady</u> argument based on defendant's assertion "that he might have perceived possible defense 'leads'" in withheld material), <u>cert. denied</u>, 439 U.S. 913 (1978); <u>United States v. McDonnell</u>, 696 F.Supp. 356, 363-64 (N.D. Ill.  1988) ("<u>Brady</u> does not authorize the defendant to conduct a fishing expedition for exculpatory material based on nothing more than mere speculation."); <u>United States v. Weld</u>, 2009 WL 901871, at *2 (N.D.Cal. Apr. 1, 2009) ("[D]efendants cannot use <u>Brady</u> simply to search for <u>Brady</u> materials.  <u>Brady</u> is not a pretrial

discovery tool."); <u>United States v. Mwangi</u>, 2010 WL 690136

(N.D.Ga. Feb. 18, 2010) (mere speculation or allegation that

document contains exculpatory evidence is not enough to warrant

production).

Tsarnaev likewise misstates the law in arguing that the

Court must allow him to view witness statements in their

entirety because "the government is not in a position to decide

what information provided by a witness may be pertinent . . . in

developing a mitigation case." Tsarnaev Mot. 10.  To begin

with, <u>Brady</u> and the Local Rules require disclosure of

information only if it is "material" as opposed to merely

"pertinent," and only if it is "favorable" as opposed to merely

useful in developing the defense case.  <u>See Agurs</u>, 427 U.S. at

112 n.20 (squarely rejecting the proposition that materiality

under <u>Brady</u> depends on "the impact of the undisclosed evidence

on the defendant's ability to prepare for trial, rather than the

materiality of the evidence to the issue of guilt or

innocence").

Moreover, it is well-settled that "[t]he government is

primarily responsible for deciding what evidence it must

disclose to the defendant under Brady."  <u>United States v.</u>

<u>Prochilo</u>, 629 F.3d 264, 268 (1st Cir. 2011).  The Supreme Court

explained in <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987), that a

defendant has no right "to search through the [government's]
files" for <u>Brady</u> material even though "the eye of an advocate
may be helpful . . . in ferreting [it] out."  <u>Id.</u> at 59.  On the
contrary, "it is the State that decides which information must
be disclosed," and under normal circumstances, "the prosecutor's
decision on disclosure is final.  Defense counsel has no
constitutional right to conduct his own search of the State's
files to argue relevance."  <u>Id.</u>  Accord <u>United States v.
Danovaro</u>, 877 F.2d 583, 589 (7th Cir. 1989) ("The prosecutor need
not turn over all files so that defense counsel may search out
exculpatory material; counsel must be satisfied with the
representations of the prosecutor."); <u>United States v. Causey</u>,
356 F.Supp.2d 681, 692 (S.D. Tex. 2005) ("[T]he identification
of Brady material is preliminarily a matter for the prosecutor's
judgment."); <u>United States v. Cook</u>, 348 F.Supp.2d 22, 30
(S.D.N.Y. 2004) ("It is well established that pre-trial motions
for discovery pursuant to Brady should be denied when the
Government has made a good faith representation to the Court and
defense counsel that it recognizes and has complied with its
Brady disclosure obligations."); <u>United States v. Volpe</u>, 42
F.Supp.2d 204, 226-27 (E.D.N.Y. 1999) ("The assurance by the
government that it has in possession no undisclosed evidence
that would tend to exculpate defendant justifies the denial of a

motion for inspection that does not make some particularized showing of materiality and usefulness.")

Finally, Tsarnaev's argument that Federal Rule of Criminal Procedure 16(a)(1)(E) entitles him to mitigation information is foreclosed by the Supreme Court's ruling in <u>United States v. Armstrong</u>, 517 U.S. 456 (1996).  Rule 16(a)(1)(E) requires production of certain items if they are "material to preparing the defense."  Even assuming for the sake of argument that witness statements are among the items covered by Rule 16(a)(1)(E), mitigation evidence clearly is not covered.  The Supreme Court held in <u>Armstrong</u> that Rule 16(a)(1)(C) (Rule 16(a)(1)(E)'s predecessor) could not be used to obtain evidence for a selective prosecution claim; it reasoned that, in the context of Rule 16, the meaning of "defense" is limited to "an argument in response to the Government's *case in chief*."  517 U.S. at 462 (emphasis added).  It follows that Rule 16(a)(1)(E) cannot be used to obtain evidence for use at sentencing.  <u>See</u>, <u>e.g.</u>, <u>United States v. Brinson</u>, 208 F. App'x 420, 424 (6th Cir. 2006) (holding that <u>Armstrong</u> precludes use of Rule 16(a)(1)(E) to obtain information for use at sentencing hearing).

None of the cases defendant cites in his Rule 16 argument -- <u>United States v. Pesaturo</u>, 519 F.Supp.2d 177 (D. Mass. 2007), <u>United States v. Poindexter</u>, 727 F.Supp. 1470 (D.C. Cir. 1989),

and United States v. Karake, 281 F.Supp.2d 302 (D.D.C. 2003) --

involved mitigation evidence.  Pesaturo involved materials

needed to support an entrapment defense; Poindexter involved

materials sought to prove the absence of motive and specific

intent; and Karake involved the names and contact information of

eyewitnesses to the crime that the defense could not discover

through its own investigation.  See Pesaturo, 519 F.Supp.2d at

189-91; Poindexter, 727 F.Supp. at 1475; Karake, 281 F.Supp.2d

at 309-310.  Accordingly, none of them are on point or lend any

support to Tsarnaev's argument.

       Having established the legal framework for evaluating

motions to compel production of mitigation evidence, we now

address Tsarnaev's specific discovery requests using the same

numbering scheme as in his motion.

       Defense Request #1.  Tsarnaev writes that he "has requested

and persists in requesting any communications among law

enforcement, prosecutors, and the Court concerning [his]

requests for counsel" during questioning at Beth Israel

following his arrest.  Tsarnaev Mot. at 11.  The government

already informed Tsarnaev in its response to his September 3,

2013 discovery letter that it has fully complied with this

request.  Accordingly, Tsarnaev's motion as it relates to this

request is moot.

                                14

Defense Request #2.  Tsarnaev has moved to compel production of the complete "A files" of his parents, his siblings, his uncles Ruslan Tsarni and Alvi Tsarni and their dependents (who are not further identified), his aunt Maret Tsarnaeva, his five year-old nephew Ramzan Mamakaev, his six year-old nephew Ziyaudy Khozhugov, his ex-brothers-in-law Rizvan Mamakaev and Elmirza Khozhugov, his college friends Dias Kadyrbayev, Azamat Tazhayakov, and Robel Phillipos, and his deceased brother's deceased friend Ibragim Todahsev.

Tsarnaev claims he is entitled to each named individual's entire "A file" because (1) the ABA Guidelines recommend that he examine his own family members' biographical information for mitigating facts and the "A files" might contain that biographical information; and (2) "[t]here is no reason not to permit the defense access to this information."  Notably, Tsarnaev makes no showing that any of the "A files" actually contain discoverable information.

Tsarnaev has no legal right to the "A files" in question; that is the only reason needed to deny this portion of his motion, for the Court cannot lawfully compel production of something to which Tsarnaev is not legally entitled.  It is a bedrock principle of discovery law that "[t]he Constitution does not require the prosecutor to share all useful information with

the defendant." United States v. Ruiz, 536 U. S. 622, 630
(2002).  The government also "bears no responsibility to
[disclose] . . . potentially exculpatory evidence that is either
known to the defendant or that could be discovered through the
exercise of reasonable diligence." United States v. Freeman,
164 F.3d 243, 248 (5th Cir.), cert. denied, 526 U.S. 1105
(1999).  That is likely true of most if not all the biographical
information in the requested "A Files," given that the
information belongs to Tsarnaev's own family members and
friends.

Once again, Tsarnaev is not free to make up his own rules
of discovery and then obtain a Court order enforcing them.  And
the government cannot lawfully be compelled to produce documents
it is not otherwise obligated to provide simply because Tsarnaev
would find it convenient.  In addition, "A files" often contain
statutorily protected personal information such as information
relating to applications for asylum or refuge in the United
States.  Accordingly, except as set forth below, the motion to
compel production of the "A files" should be denied.

**a. Nuclear family members.**  As the government already
informed Tsarnaev in its response to his September 3, 2013
discovery letter, we have requested copies of his nuclear family
members' "A files," which are in the custody of Citizenship and

Immigration Services (an agency that is not part of the "prosecution team" in this case, see generally Mclaughlin v. Corsini, 577 F.3d 15, 21 (1st Cir. 2009)), and we will produce any exculpatory information contained inside them.  To that extent, this portion of Tsarnaev's motion is moot.

**b. Extended family members.**  Because Tsarnaev has not explicitly identified any favorable material evidence in the "A files" of his extended family members (i.e. his aunt and uncles and their families, his nephews, and his ex-brothers-in-law), the government has no legal obligation to obtain those files and search them for exculpatory evidence, let alone produce them in their entirety.  See, e.g., United States v. Joseph, 996 F.2d 36, 39 (3rd Cir.) ("[W]here a prosecutor has no actual knowledge or cause to know of the existence of Brady material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request [that] . . . explicitly identifies the desired material and is objectively limited in scope."), cert. denied, 510 U.S. 937 (1993).  Accordingly, this portion of Tsarnaev's motion to compel should be denied.

**c. College friends and Tamerlan Tsarnaev's friend.**

Once again, because Tsarnaev has not explicitly identified any favorable material evidence in the "A files" of his college

17

friends (Dias Kadyrbayev, Azamat Tazhayakov, and Robel

Phillipos) or Tamerlan Tsarnaev's deceased friend (Ibragim

Todashev), the government has no legal obligation to obtain

those files and search them for exculpatory evidence, let alone

produce the files in their entirety.  Moreover, Robel Phillipos,

who was born in the United States, has no "A file," and the

government has been informed that Kadyrbayev and Tazhayakov had

no "A files" until they were arrested in April 2013, making it

unlikely those files contain information that would be favorable

and material to Tsarnaev at his trial or sentencing.  This

portion of Tsarnaev's motion to compel should therefore be

denied as well.

Defense Requests #3 and #4.  These requests are moot to the

extent they seek favorable material information and should

otherwise be denied.  The government informed Tsarnaev in its

response to his September 3, 2013 discovery letter that we have

produced, or will produce in a timely fashion, all favorable

material information to be found in his family member and

friends' witness statements.  Indeed, as noted earlier, the

government has already gone over and above any legal requirement

in providing such information.  Tsarnaev's claim that the

government produced only "sanitized summaries of isolated facts"

as opposed to complete and accurate summaries of all exculpatory

information, see Tsarnaev Mot. at 9, is absolutely false and
unsupported.  On the contrary, we have erred on the side of
overproduction to make certain that we have fulfilled our
obligations under Brady.  Tsarnaev now attempts to use the
government's wholly voluntary production of broad categories of
information as a lever to pry open its investigative files and
take wholesale possession of them.  The Court should not follow
Tsarnaev in mistaking his own obligation to conduct a mitigation
investigation for a government obligation to provide him with
all the information he might find useful in doing so.

     Defense Request #5.  To the extent any information
responsive to this request exists, it is nonexculpatory,
duplicative of other information already disclosed, and/or
unlikely to lead to the discovery of admissible evidence.
Accordingly, this portion of Tsarnaev's motion should be denied.

     Defense Request #6.  Federal Rule of Criminal Procedure
16(a)(1)(B)(i) requires the production only of "relevant"
recorded statements of the defendant.  Tsarnaev, presumably at
his attorneys' direction, has so far said nothing in any phone
call from FMC-Devens that is relevant.  Unless and until he
does, the government has no legal obligation to produce the
recordings.  See, e.g., United States v. Scarpa, 897 F.2d 63, 70
(2nd Cir.) (holding that recorded statements are not "relevant"

under Rule 16 if they are "wholly innocuous"), <u>cert. denied</u>, 498
U.S. 816 (1990); <u>United States v. Skillman</u>, 442 F.2d 542, 550
(8th Cir.) (same), <u>cert. denied</u>, 404 U.S. 833 (1971).

Despite the absence of a legal obligation to do so, the
government has informed Tsarnaev that it will voluntarily
produce reports or transcripts of his calls from FMC-Devens on a
periodic basis after they are received by the United States
Attorney's Office.  Accordingly, this portion of Tsarnaev's
motion to compel should be denied.

<u>Defense Requests #7 & #8.</u>

This portion of Tsarnaev's motion should be denied for
several reasons.  First, it is premature.  As Tsarnaev concedes,
the requested information will be relevant, if at all, only in a
future sentencing hearing to determine whether Tsarnaev himself
should receive the death penalty.  Such a hearing may never
occur, in which case Tsarnaev will never have a right to the
information.  Even if such a hearing does occur, many other
phases of this case must first be completed.  Second, as the
government already informed Tsarnaev, to the extent information
responsive to this request exists, the government will follow
all legal requirements respecting its production in a timely
fashion.  No order compelling the government to comply with this
request would be lawful at this time because no legal obligation

to produce any such material has yet arisen.

Defense Request #9.  This request is patently overbroad insofar as it seeks "all documents" concerning the investigation of the triple homicide that occurred in Waltham on September 11, 2011, regardless of whether those documents relate to Tsarnaev or his brother.  It should be denied on that basis alone.

To the extent this request seeks documents that relate to Ibragim Todashev's involvement in the triple homicide, it should be denied on the ground that such documents are not discoverable under the Federal or Local Rules of Criminal Procedure or Brady.

To the extent this request seeks documents that relate to Tamerlan Tsarnaev's involvement in the triple homicide, it is premature.  As Tsarnaev concedes, information about his brother's criminal history will be relevant, if at all, only in a future sentencing hearing to determine whether Tsarnaev himself should receive the death penalty.  As noted earlier, such a hearing may never occur, in which case Tsarnaev will never have a right to the information.  And even if such a hearing does occur, many other phases of this case must first be completed.

Without intending to waive any of these arguments, the government has declined to produce all documents relating to the triple homicide investigation pursuant to Local Rule 116.6.  It

is well-settled that "'[f]ederal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation.'"  In re Department of Homeland Security, 459 F.3d 565, 569 (5th Cir. 2006) (citation omitted) (collecting cases).  That privilege can be overcome only if "the harm to the government if the privilege is lifted" is outweighed by the "need of the litigant who is seeking privileged investigative materials."  Id.  That test is not met here. The Middlesex District Attorney's Office is engaged in an active, ongoing investigation into the Waltham triple homicide. Disclosure of the details of that investigation could jeopardize it.  Tsarnaev, in contrast, has no urgent need for the privileged investigative materials he seeks.  Even assuming, as Tsarnaev claims, that "the nature and extent of Tamerlan's alleged involvement" in the Waltham triple homicide is "critical mitigation information," Tsarnaev Mot. at 16, this case has not yet even been set down for a trial date, let alone sentencing.

In any event, the government has already disclosed to Tsarnaev that, according to Todashev, Tamerlan Tsarnaev participated in the Waltham triple homicide.  Any benefit to Tsarnaev of knowing more about the precise "nature and extent" of his brother's involvement does not outweigh the potential harm of exposing details of an ongoing investigation into an

extremely serious crime, especially at this stage of the proceedings.

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's Motion to Compel Production.

                                    Respectfully submitted,

                                    CARMEN M. ORTIZ
                                    United States Attorney

                            By:  /s/ William D. Weinreb
                                    WILLIAM D. WEINREB
                                    ALOKE S. CHAKRAVARTY
                                    NADINE PELLEGRINI
                                    Assistant U.S. Attorneys