```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


                                  )
UNITED STATES OF AMERICA,         )
                                  )
         Plaintiff,               )
                                  )   Criminal Action
v.                                )   No. 13-10200-GAO
                                  )
DZHOKHAR A. TSARNAEV, also        )
known as Jahar Tsarni,            )
                                  )
         Defendant.               )
                                  )


             BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                    UNITED STATES DISTRICT JUDGE
```

### STATUS CONFERENCE AND MOTION HEARING

```
          John J. Moakley United States Courthouse
                     Courtroom No. 9
                    One Courthouse Way
                Boston, Massachusetts  02210
                 Tuesday, November 12, 2013
                        10:02 a.m.



               Marcia G. Patrisso, RMR, CRR
                   Official Court Reporter
               John J. Moakley U.S. Courthouse
              One Courthouse Way, Room 3510
                Boston, Massachusetts  02210
                      (617) 737-8728

         Mechanical Steno - Computer-Aided Transcript
```

1    APPEARANCES:

2        OFFICE OF THE UNITED STATES ATTORNEY
         By: William D. Weinreb, Aloke Chakravarty and
3            Nadine Pellegrini, Assistant U.S. Attorneys
         John Joseph Moakley Federal Courthouse
4        Suite 9200
         Boston, Massachusetts  02210
5        On Behalf of the Government

6        FEDERAL PUBLIC DEFENDER OFFICE
         By: Miriam Conrad, Esq.
7            Timothy G. Watkins, Esq.
             William W. Fick, Esq.
8        51 Sleeper Street
         Fifth Floor
9        Boston, Massachusetts  02210
         - and -
10       CLARKE & RICE, APC
         By: Judy Clarke, Esq.
11       1010 Second Avenue
         Suite 1800
12       San Diego, California  92101
         On Behalf of the Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S
 2            THE CLERK:  All rise.
 3            (The Court enters the courtroom at 10:02 a.m.)
 4            THE CLERK:  United States District Court for the
 5    District of Massachusetts.  Court is in session.  Be seated.
 6            For a status conference motion hearing in the case of
 7    United States versus Dzhokhar Tsarnaev, 13-10200.
 8            MS. PELLEGRINI:  Good morning, your Honor.  Nadine
 9    Pellegrini.
10            MR. WEINREB:  Good morning, your Honor.  William
11    Weinreb for the United States.
12            MR. CHAKRAVARTY:  And Aloke Chakravarty for the United
13    States.
14            MS. CLARKE:  Judy Clarke, Miriam Conrad, William Fick
15    and Tim Watkins for Mr. Tsarnaev.
16            THE COURT:  Good morning.
17            COUNSEL IN UNISON:  Good morning.
18            THE COURT:  I thought we would start by addressing
19    some scheduling matters.
20            Can the government confirm that it has commenced the
21    internal process under the protocol by sending -- making a
22    submission to Washington?  You had said earlier that you
23    expected to do it by the end of October.
24            MS. PELLEGRINI:  Your Honor, it will be completed this
25    week.
```

1           THE COURT:  It has not started yet?

2           MS. PELLEGRINI:  It has not been sent.

3           THE COURT:  The reason I ask is that implicates the

4    date for the filing of notice of election, and I think the

5    government had previously asked that it be not less than 90

6    days from the date of the submission.

7           MS. PELLEGRINI:  And that's because, as we understand

8    it, the usual amount of time is approximately 90 days.  It

9    could be shorter, your Honor, but just to be on the safe side,

10   we cited the Court to the 90 days.

11          THE COURT:  Well, I think I would actually like to set

12   it a little shorter than that.  The date that had originally

13   been proposed was January 31st, and I think that's an

14   acceptable date.  So that notice to be filed by the government

15   under Section 3593(a) is due not later than by the close of

16   business on January 31st.  I think that's important because

17   it's obviously a significant event in the life of the case.

18   Other things will be affected by that, obviously, including

19   other schedules.

20          I'd also like to think about a schedule for any

21   potential defense motions that are not of a discovery nature.

22   I don't know whether any are contemplated.

23          Mr. Watkins?

24          MR. WATKINS:  Perhaps I may speak to that, your Honor.

25          We're asking -- what the Court is asking is to set a

1    schedule today for a deadline for substantive motions.  We're

2    asking the Court not to do that, and instead, to defer that to

3    a later status conference, perhaps towards the end of

4    January/the beginning of February, once we do get some kind of

5    answer from the government about whether they are going to seek

6    the death penalty.

7              There are a number of reasons for that.  In our view,

8    automatic discovery is not complete.  We have continued, up in

9    recent weeks, to get additional materials that are automatic

10   discovery, and there may be additional pieces of automatic

11   discovery that should be coming.  As the Court knows, we have a

12   discovery dispute concerning other what we believe falls under

13   automatic discovery.  That is just really the tip of the

14   iceberg, and we think there will be more discovery requests

15   coming.

16             Just a couple of examples:  We don't have medical

17   reports, so far as I know, of the named victims in the

18   indictment.  That would seemingly fall under automatic

19   discovery.  We don't have forensic reports of much of the

20   digital media that has been supplied to us.

21             Just as a -- on a more basic level, we're approaching

22   100,000 -- closing in on 100,000 pages' worth of discovery,

23   paper discovery.  In addition, there's a variety of computer

24   media that we have; a variety of search warrants -- a couple of

25   dozen search warrants -- that we have.

 1          So we are almost to the point, to paraphrase badly

 2     Donald Rumsfeld, we almost know what we don't know at this

 3     point.  We're not in a position to start making more

 4     substantive discovery requests of the government to make sure

 5     that we have all of what it is -- what we're entitled to under

 6     the automatic discovery rules.

 7          In addition, the volume of the discovery

 8     is -- engenders investigation that we simply must do both in

 9     mitigation and on guilt-or-innocence kinds of issues.  We

10     cannot do that kind of investigation that's necessary, try to

11     determine what more automatic discovery is required, while at

12     the same time trying to draft and file substantive motions.

13     Indeed, at this point we don't really know where the

14     substantive motions might lie, what needs to be addressed via a

15     suppression motion, what needs to be addressed vis-à-vis a

16     motion to dismiss filing.

17          So it is really quite premature at this point to

18     schedule any kind of deadline for substantive motions.  I can

19     understand the government's point is that we perhaps have

20     enough that we could start to get going on those kinds of

21     issues, but it becomes increasingly difficult from a practical

22     matter to do that.  None of the four of us -- we are blessed

23     with four attorneys on the case, but none of our professional

24     lives started over on April 15th.  We all had other

25     obligations.  Ms. Clarke has professional obligations,

1    obligations on other cases that she has to attend to;

2    Ms. Conrad has to make sure the wheels don't come off the

3    office as each machination of Congress unfolds over the months;

4    Mr. Fick and I both have trials in very complex matters coming

5    up in the next several months.

6         To try to simultaneously draft any kind of motions to

7    suppress, even figure out exactly where we should be going with

8    the motions to suppress and the motions to dismiss, simply does

9    not make sense.  We would have to stop discovery review really

10   in its tracks, for all practical purposes.

11        And the question becomes to what end we need to do

12   that, why we need to get into substantive motions so quickly in

13   the overall scheme of the case.  We are, and I know the

14   government has been, working very hard to make our way through

15   the discovery and to amicably trade discovery, and I know that

16   we've been working hard in our office to try to get through

17   this massive volume of discovery.

18        That would, for all practical purposes, come to an end

19   if we then had to start to turn towards legal issues.  And it

20   raises the specter of filing a motion to suppress or a motion

21   to dismiss now only to find that we overlooked something -- we

22   got closer to trial, found out there was some piece of evidence

23   the government intended to introduce which we had not addressed

24   because we simply hadn't gone through with a thorough comb that

25   we need to [sic] during this automatic discovery process.

1        The case is moving along.  And this is a case where

2   none of us is sitting on our hands looking for things to do.

3   Really, the issue right now is automatic discovery.  And

4   going -- moving on to substantive motions simply doesn't make

5   sense.

6        It is contrary really to the local rules and the

7   practice that we have here.  The local rules are really

8   designed to make sure that all of automatic discovery was

9   provided to a point where a magistrate judge, or in this case

10  your Honor, was comfortable that everybody had complied with

11  the obligations.  We're simply not there, at that point.  The

12  local rules also contemplate that that would be done in advance

13  of filing the substantive motions.  And we simply aren't to

14  that stage.  I don't think there's any reason to treat this

15  particular case differently where we are trying to do two

16  independent issues at one time.

17       Finally, your Honor, in addition to the automatic

18  discovery issues and the review that's going on, substantive

19  motions that need to be filed, this is a time to consider

20  completely independent kinds of legal issues.  The Court raised

21  a motion to change venue.  Certainly that is something that

22  should be looked into and filed separately and independently.

23  It is going to take quite a bit of resources and quite a bit of

24  attention from some or all of us on the case.  Going into

25  substantive motions right now means that trial should follow

1    shortly thereafter, really putting the cart in front of the

2    horse as to other independent matters such as filing a motion

3    to change venue.

4         Simply, we would submit it does not make sense to file

5    a motion, a filing date, a briefing schedule at this point

6    where we're simply nowhere near the point where we can sensibly

7    decide what should be addressed, what should not, and then

8    thoroughly brief that for the Court.  Instead, we would ask the

9    Court to defer the decision until January, or perhaps even

10   February, in conjunction with the government's notice here, at

11   which time we will be, we're confident, in a position to tell

12   the Court exactly when we're able to thoroughly brief those

13   kinds of issues, and then the Court can schedule a briefing

14   schedule.

15        THE COURT:  Mr. Weinreb?

16        MR. WEINREB:  Your Honor, we would like to set dates

17   today.  In fact, we were going to propose setting a trial date

18   today, and then working backwards from that to the various

19   deadlines for filing of motions.

20        First of all, we dispute the characterization that

21   automatic discovery is not complete.  We have, in fact,

22   provided -- either by providing copies of matters or by making

23   available for inspection and review, which is all that's

24   required under Rule 16 -- all the material that is called for

25   under automatic discovery.

1          Medical reports of victims is a good example of that.

2     We have the medical reports.  We told the defense early on that

3     they were available for inspection and review.  We said that we

4     were not going to produce copies of autopsy photos and other

5     matters because of the sensitivity of them, but that they were

6     welcome to view them at any convenient time for them.

7          With respect to forensic reports of digital media, to

8     the extent that they exist, we have produced them.  It may be

9     that additional ones will come into existence.  As the labs

10    continue to process digital media and is required under the

11    local rules, we'll produce those as they become available.

12         I'd also note that the discovery request that the

13    defense has filed, their first round which presumably would be

14    based on defects that they saw in the automatic discovery,

15    relate almost entirely to mitigation evidence, which is not

16    something that is comprehended within automatic discovery.  So

17    I do not think that that is either a fair characterization of

18    what's happening in the discovery process nor is it a reason to

19    delay setting dates for the filing of substantive motions.

20         It may be that as the defense continues its review of

21    the materials that the government has made available to them

22    they will find new grounds for motions that they wish to file,

23    and we're not asking the Court to preclude that.  But I do

24    think that there are motions that at this point the defense

25    could file, particularly ones they've mentioned already:  A

1    motion to suppress statements is something that -- they had the

2    statements since even well before the date for automatic

3    discovery commenced; a motion to dismiss the case based on

4    anything to be found on the face of the indictment -- they've

5    had the indictment since long before automatic discovery -- a

6    motion for change of venue, just to name three.  And we would

7    propose 90 days as a date for the filing of those motions.

8         We would also propose that the Court set a trial date

9    sometime for the fall of 2014, and that we then can work

10   backwards from there to set any additional dates that may be

11   necessary.  Absent something like that, we will run into a

12   situation where months pass, dates are then set for the filing

13   of motions, and when the motions are all resolved, we'll then

14   be in an open-ended period where we have to schedule a trial

15   date at that point for a point far in the future when

16   everybody's schedules are free potentially for months.  And

17   that does not seem like an efficient use of judicial resources.

18        So we would propose, in short, at least a deadline for

19   certain substantive motions that the defense has already

20   indicated it intends to file and is capable to file at this

21   point, and then a trial date at an appropriate time so that we

22   can set additional deadlines based on that.

23        THE COURT:  Well, I think I agree that it's sensible

24   to think of the entire schedule and think of a trial date in

25   relation to motion dates, and motion dates in relation to the

1    trial date.

2          Let me ask, from the government's perspective, as to a

3    trial, assuming that there are two phases to the trial, could

4    you give me some estimate of what you think will be involved in

5    each of them?  And then I guess the second, the follow-on

6    question would be:  If there is only a latter phase and not a

7    former phase, what would your -- how much would your estimate

8    differ, if at all?

9          MR. WEINREB:  Your Honor, we believe that a trial on

10   the merits would be approximately 90 days, and that the

11   sentencing phase to follow would be six weeks for both sides,

12   not just for the government's case.  And that's assuming a

13   half-day -- typical half-day schedule.

14         If we only had a sentencing phase, I think that

15   the -- that phase would be considerably longer than six weeks.

16   That could be 12 weeks in its entirety since a large part of

17   the government's sentencing case will involve establishing

18   evidence of aggravating factors, and those are much the same

19   evidence that would -- it would put on during a trial phase.

20         MR. WATKINS:  Your Honor, just on --

21         THE COURT:  Let's start with the trial estimate.  Do

22   you have any different view on that?

23         MR. WATKINS:  I don't have any different view; we have

24   no view at this point.  It's impossible for us to even

25   speculate about how long either the guilt or innocence or

1   penalty phase would be precisely for the reasons I've stated:

2   We are plowing our way through what is really voluminous

3   discovery here, so we're simply not in any kind of position

4   where we could say the government is right or the kind of case

5   we would put on.

6        Just a couple of points:  It is a frequent reframe in

7   Court that the government says, "We've said it's available."

8   Let's think about what "available" means in this case.  That

9   means a storeroom full of documents that we could go and look

10  at at our leisure, if we had any.  It means a warehouse full of

11  physical evidence that comprises what the chief of the Boston

12  Police Department said was the most complex crime scene in

13  their history.  That's just one of the scenes that we have to

14  deal with.  We, of course, have a different -- several

15  different scenes that will be the subject of trial and

16  sentencing.

17       So for the government to say that this has been

18  available or that we've had the indictment for some time, it's

19  absolutely correct.  It's meaningful in the sense of automatic

20  discovery and what we're able to get to and whether we can go

21  to the next step, which is substantive motions.

22       Suggesting a trial date in the fall is very, very

23  quick as a matter of any case here in federal court from

24  initial appearance to final disposition.  For a case of this

25  magnitude, it is a rocket schedule.  And it's simply one that

1    is going to be difficult for, I would suggest, either side to

2    comply with, and comply with their obligations, the government

3    making sure that we have all exculpatory evidence, for us to

4    make sure that we can sensibly understand what the government's

5    case is going to be before we get into the middle of what I

6    understand the government says will be nine months of

7    litigation after a time period of perhaps 15 months where we've

8    had to review all the discovery.

9         All we're asking for at this point is that the Court

10   just defer this particular decision until January or February,

11   where it sounds like we will have much more information about

12   where the government is headed for their presentation.  At the

13   same time we'll be much better able, we believe, to answer

14   reasonably when we could file motions and what motions we would

15   file.

16        THE COURT:  Well, I think we could set some

17   motion-filing deadlines, as Mr. Weinreb suggests.  I think that

18   those that are not dependent, perhaps, or influenced by

19   processing of discovery materials or other factual matters.  So

20   I think that a filing date for any motion to change venue or to

21   dismiss the indictment can be set, and I would set that for the

22   end of February -- February 28th, any of those motions.

23        That's not exclusive.  We'll leave out

24   evidentiary -- I mean, obviously you can file a motion anytime

25   you want.  There's no limit on how soon you can file.  We will

1       not address right now any suppression motions, and can consider

2       that later.  And I think because it's still somewhat early,

3       that we can defer for now a trial date, but I appreciate the

4       information that you both have contributed on that question.

5              So I think that it would be useful to have -- I

6       don't -- unless someone thinks we need one sooner -- another

7       status conference after the government has made its election.

8       So I would suggest sometime in February for that.

9              Let me ask from the defense point of view,

10      particularly Ms. Clarke since you have to make travel

11      arrangements, do you have any day of the week preference

12      because of your travel?

13             MS. CLARKE:  Once we round the middle-of-December

14      corner, I'm pretty much yours.

15             THE COURT:  Okay.  Well, I'm looking at pretty

16      much -- actually, it's -- whatever that is, three months --

17      February 12th, a Wednesday morning, at ten o'clock for a

18      further status conference.

19             Okay.  I think those were the administrative issues.

20      Does anybody have anything else?  We have a couple of motions

21      that I'll hear you on.  Are there any other administrative

22      sorts of things besides the motions?

23             MR. WATKINS:  Yeah.  At the risk of stepping back, the

24      Court scheduled -- particularly the venue motion, the motion to

25      dismiss, that's okay.  I think we can live with that.  Venue is

1    going to take a little bit of resources to be ready and fully

2    briefed.  I think we would need more time for that in order to

3    have a thorough and complete investigation done concerning

4    whether to even ask for a change of venue.

5         THE COURT:  Well, no, I think it's something we have

6    to know, and I think three months from now, which is longer

7    from the indictment, I think is enough.  So I'd like to stick

8    with that.  I'd like to know the answer -- if there is such a

9    motion, I want to know what the answer is going to be.

10        Okay.  So let's turn to the motions.  And I would like

11   to address first the motion regarding the Special

12   Administrative Measures.  And let me say with respect to both

13   motions, they have been extensively briefed, and it's not

14   necessarily helpful or productive to simply reargue what's in

15   the papers.  So be confident that I've read the papers several

16   times.  So let me start by -- and in each case I'll start by

17   making some comments and then, I guess, invite your response.

18        With respect to the motion on the Special

19   Administrative Measures, the parties have a disagreement as to

20   whether it's something that I have any jurisdiction over.  And

21   I, in sum, agree -- well, I guess I agree enough with the

22   defendant that this is something which, under 3142, because it

23   may concern adequate preparation of a defense, which is a

24   consideration for detention, and under general and inherent

25   powers to manage a case, I have enough authority to consider

1   whether the measures work in actual interference with the

2   preparation of the defense.

3          I do not agree with the full defense position that

4   that makes everything about them subject to my review, and I

5   think if there are other issues, such as infringement of

6   constitutional rights, for example, those are better left to an

7   independent action which may well be governed by the Prison

8   Litigation Reform Act, and would probably be a *Bivens* form of

9   action or something like that.  That is not directly at issue

10  in my supervision of the case.  So I will put those aside.

11         So what I'm mostly interested in is whether there is

12  practical interference to any substantial degree and in what

13  respects, with the ability of the defense to prepare because of

14  these limitations.  Not whether they're annoying, but whether

15  they are inhibiting.  I don't know who wants to address that.

16         Mr. Fick?

17         MR. FICK:  Yes, your Honor.  And I guess the one, I

18  guess, other piece of this is what I would characterize, I

19  guess, as an administrative law, a facial challenge to the

20  SAMs -- which I think is, by nature, the kind of thing that

21  only a court is really in a position to rule on -- and those

22  were the sort of two elements to that argument:  the first

23  being that the SAMs here are unwarranted as a factual matter.

24  I mean, the typical parlance in administrative law is

25  "substantial evidence," and the argument was that there is not

1    substantial evidence here upon which it was reasonable for the

2    attorney general to conclude belatedly, four months into the

3    case, that there's a substantial risk of bodily injury or death

4    if the measure is not imposed.  And the second piece of that is

5    that the particular regulatory provision, the 501.3A under

6    which they were adopted, does not authorize any restrictions on

7    counsel inside or outside prison walls at all.  And so to the

8    extent -- to that extent, all of the provisions about counsel

9    in these particular SAMs, or essentially ultra vires, are

10   outside what the regulation authorizes.

11        And I think quite apart from the question of the

12   extent to which the SAMs interfere with counsel, those are sort

13   of threshold classic questions for judicial determination in

14   the circumstances.

15        THE COURT:  I don't necessarily disagree with that; I

16   just say it's for a different judge.

17        MR. FICK:  Okay.  Going on to the restrictions on

18   counsel, in particular, as the Court knows from the papers,

19   there are sort of two provisions that are -- we find to be the

20   most problematic.  That's Provision 2D and 2H.  2D is

21   dissemination of information received by Mr. Tsarnaev from the

22   defense team.  There's a -- sort of an initial big-picture

23   problem which is that on the one hand, right, one could look at

24   the SAMs and say, Well, the SAMs permit dissemination of

25   information for purposes of preparing the defense, so what's

1  the problem?

2       Well, the problem is who gets to decide what is a

3  legitimate purpose of preparing the defense.  And that is not a

4  theoretical question.  It's certainly not a theoretical

5  question in circumstances where attorneys have been prosecuted

6  for having a judgment that's different from the government's

7  judgment.  So that's sort of a global problem with that

8  provision.

9       The particular problem with that provision is that any

10 dissemination that is made can only be made by attorneys which,

11 as a practical matter, means if an investigator or some other

12 member of the defense team is talking to a witness, and some

13 issue comes up, some factual issue, no piece of information

14 ever gleaned from the defendant can be shared in the course of

15 that witness interview unless the attorney is sitting there and

16 making that dissemination.  And that simply means that an

17 attorney has to be present, essentially, in every witness

18 interview, which is absolutely impractical.  And there's

19 really -- given the qualifications and the clearances that the

20 core members of the defense team have already undergone to be

21 allowed to go into FMC Devens and see Mr. Tsarnaev, it's really

22 a restriction that there's no reason for it.  And that's what

23 the *Mikhel* decision of the Ninth Circuit also recognized.  It

24 extended the ability to disseminate to other members of the

25 defense team.

1            Another practical issue with that is there's a

2      tremendous number of facts that we are all gleaning in the

3      course of preparing the case and going through discovery,

4      talking to our client.  And at some level it becomes very, very

5      difficult to discern whether a fact is a piece of information

6      learned from Mr. Tsarnaev, is it learned from the discovery, is

7      it learned from multiple sources.  So then even in the course

8      of a normal interaction between an attorney and a witness or an

9      investigator and a witness, at what point it's even possible to

10     ascertain or recall where a particular piece of information

11     came from becomes, as a practical matter, nearly impossible.

12     So that, in a nutshell, is the problem with Provision 2D on

13     dissemination of information from Mr. Tsarnaev.

14            The sort of flip side of that comes in Provision 2H,

15     which deals with what can be shown to Mr. Tsarnaev.  And again,

16     we have the problem there with what is a -- you know, who gets

17     to decide or second-guess what is a legitimate purpose of

18     preparing the defense.  And we've already had, as the Court has

19     seen in the papers, some practical issues arise under this

20     provision, albeit ones that were resolved.  But even in their

21     resolution it sort of highlights the extent to which the SAMs

22     put the government in the business of the defense team in a way

23     that's very intrusive.  I mean, frankly, the government has no

24     business knowing who from the defense team sees the defendant

25     for how long, on what dates, how often, and what, in

1    particular, is shown to him.

2          And so, you know, if there is any justification for a

3    provision like this whatsoever -- and I would submit there is

4    not -- at a minimum there ought to be a taint team that at

5    least at the election of the defense we can address -- to which

6    we could bring these kinds of issues to address them.

7          Now, that wouldn't have to be anything terribly

8    burdensome.  I understand things -- in different scenarios

9    there have been taint teams in the U.S. Attorney's Office here.

10   It would simply be a different group of attorneys to whom we

11   could bring issues under the provision that would be insulated

12   from the line prosecutors on the case.

13         And then the final practical concern that we have is

14   with regard to Paragraph 2E.  There's the question of who can

15   see Mr. Tsarnaev outside the company of an attorney.  And we

16   have managed to negotiate a slight modification to that under

17   which the government has agreed that full-time Federal Defender

18   Office investigators and paralegals will be permitted to

19   interact with Mr. Tsarnaev under this provision, but not the

20   sort of special mitigation specialist who we have retained who

21   is employed under the CJA who has been doing this kind of work

22   for decades longer, frankly, than most of us, the other people

23   in the case, and has even worked under SAMs before.

24         And so for them to draw the line and say, Well, if

25   they're not FDO employees, we're not going to let them in under

1    this provision, I think is arbitrary.  And that was also akin

2    to one of the arbitrary features that the *Mikhel* court vacated

3    in that case.

4           So in a nutshell, those are the practical concerns we

5    have that interfere with our ability to represent Mr. Tsarnaev.

6           THE COURT:  Ms. Pellegrini?

7           MS. PELLEGRINI:  Your Honor, the Court anticipated the

8    government's argument to some degree.  After review of all of

9    the motions filed by both sides, the government does agree that

10   the Court, for these purposes, can consider those allegations

11   which relate to restrictions which allege an infringement upon

12   a Sixth Amendment right to counsel.

13          So there are two different ways that the government

14   suggests that the Court can address these because there are two

15   different groups:  One is the group I just mentioned, which

16   relates to an allegation on the Sixth Amendment; and the other

17   seems to be much more a part of what is everyday prison life:

18   regarding mail, phone communications, visitors and media

19   interaction.

20          I do think the Court, by its authority under 3142, has

21   and retains the ability to consider what is reasonable with

22   respect to an opportunity to consult with the defendant.  But

23   in that regard, that issue is narrow and the standards to be

24   employed do not involve a fact-by-fact characterization,

25   evaluation.  It is far closer to a categorical approach that

1   3142 itself employs when it considers whether or not there is a

2   crime of violence or a 924(c) charge or a crime that carries a

3   maximum penalty of life or imprisonment or death.

4          So that leads us, then, to the question of what is the

5   standard by which the Court can make such a determination.  And

6   frankly, despite Mr. Fick's answer, I don't think the Court has

7   any particular concrete discrete examples of its interference.

8   And the Court shouldn't be involved in considering hypothetical

9   and apocalyptic scenarios.

10          The fact that the SAMs may require consultation

11   between BOP officials, the government and counsel, does not

12   mean that the government is second-guessing the experienced

13   defense counsel's determination that materials are, in fact,

14   related to the defense.  And that is the determination that

15   this Court has to make:  Are those restrictions related to the

16   concerns -- the stated concerns?

17          The fact that the August 27th memo, which is cited in

18   the defense's papers, contains a more fulsome explanation of

19   the background of the determination doesn't give the defendant

20   any new right or any new ability to challenge what is very

21   simply a narrow view:  How does this restriction legitimately

22   relate and rationally relate to the stated concern?

23          Under the regulatory scheme if the attorney general

24   had simply said that here's the indictment, and we have a

25   stated national security concern or a concern for violence and

1   public safety, that would be sufficient.

2        So there's also the determination that if, in fact, a

3   civil suit had been brought under 18 U.S.C. 3626, this Court

4   would apply the following:  It couldn't grant or approve any

5   prospective relief unless it found that the relief was narrowly

6   drawn, it extended no further than necessary to correct the

7   violation, and was the least intrusive means possible.  But the

8   Court was also to give substantial weight to any adverse impact

9   that might be on public safety or the operation of the criminal

10  justice system.

11       Mr. Fick argues that the government is not entitled to

12  know who and when and where.  But actually, even under regular

13  BOP regulations that information would be available to the

14  government.

15       The practical aspects of this are, your Honor, that,

16  yes, it places somewhat of a burden -- not an infringement or

17  necessarily a restriction on the ability to consult with the

18  client, but a burden -- to determine that, in fact, what is

19  being disseminated to third parties is related to the defense.

20       There are several aspects that need to be addressed in

21  that regard.  We're not looking to second-guess that

22  determination.  Might there be a situation where we don't

23  agree?  It might.  But the SAM speaks to that.  The SAM is not

24  a trap for the unwary; it's a notice.  And the notice is

25  provided so that the restriction can move along as smoothly as

1   possible.

2         The fact that there may be an issue in the future, I

3   think Mr. Fick's example of the photograph is quite telling

4   with respect to the determination.  It seems to me that even

5   from the affidavit Mr. Fick supplied, there wasn't the -- at

6   least initially -- as much information shared between the BOP

7   and defense counsel as to whether that matter, the family

8   photograph, could be shared, but eventually it was worked out.

9         If the defense has any question that it's not

10  nonlegal, it can be sent as nonlegal mail, and it would still

11  be provided to the defendant who, by the way, has agreed that

12  his mail will be reviewed by members of the Federal Defender's

13  Office.

14        With respect to the practicality, this is not a

15  situation as in the *Mikhel* case.  In *Mikhel*, with respect to an

16  investigator, the Court found because the defendant was housed

17  2,000 miles away from his attorney's office, it was impractical

18  and far too burdensome to require an attorney to accompany the

19  investigator.  That's not the situation we have here.  And the

20  application of SAMs is unique to each particular pretrial

21  detainee.

22        So in this particular case there's not that aspect.

23  There is a rational basis.  In consultation with counsel from

24  the Bureau of Prisons it has been determined that, for example,

25  paralegals stand differently than investigators in some

1    regards.  Paralegals are employed by the attorney's office and

2    report directly to the attorney in a chain of authority which

3    allows there to be some oversight.  An investigator does not

4    necessarily -- and in this case does not -- report in that

5    manner, and is not, in fact, employed by the particular

6    attorney's office.  That was also a consideration.

7         I think, your Honor, that the way that the courts have

8    looked at it is not from the viewpoint of, Oh, my gosh, what

9    could happen in the future; but what are we dealing with right

10   now?  In *Savage*, one of the cases cited by the government, the

11   court indicated that, no, there's no restriction on the ability

12   to consult; there's simply a restriction on the ability to

13   disseminate information to third parties.  And that

14   determination can safely be made by the defense underneath the

15   SAMs.

16        The fact that the SAMs provide for some restriction is

17   no different than any other restriction on a pretrial detainee.

18   The Supreme Court in *Bell v. Wolfish* has long recognized that a

19   pretrial detainee and a convicted prisoner retain

20   constitutional rights, but the very fact of detention may

21   necessarily infringe upon that or restrict it to some degree.

22   The question is:  What is the accommodation to be made between

23   that infringement and the institutional right of the

24   institution to address those particular questions and concerns?

25        So that leads me to my second point, your Honor, which

1    is with respect to that day-to-day aspect of prison life, the

2    government still continues in its contentions that that would

3    be appropriate under the PLRA.  This Court should not be

4    involved in the administrative day-to-day aspects of a

5    correctional facility.

6         The fact that the attorney general directed the

7    implementation of the SAMs doesn't require that you give that

8    any less deference than if the BOP director implemented them.

9    Under the statute, the AG directs the Bureau of Prisons, and by

10   regulation, only the attorney general can direct BOP to

11   implement those restrictions.  To argue that because it's the

12   attorney general, not the BOP, is to basically ignore what is

13   the statutory and regulatory authority of the attorney general.

14        So with that in mind, your Honor, we would ask that

15   the Court -- as I said, the route we're now suggesting today is

16   slightly different but the destination is the same, that the

17   SAMs remain in place because they are legitimately connected

18   and rationally connected to legitimate safety concerns.

19        We ask that because unfettered communications by this

20   defendant may, as the attorney general has determined, result

21   in death or in serious bodily injury, that the SAMs remain

22   undisturbed.

23        THE COURT:  So let me ask you about a couple of the

24   specifics that Mr. Fick addressed.  And one is, and you already

25   touched on it, but it may -- either you're reading the language

1    differently -- so in 2D, which deals with the dissemination of

2    conversations, the restriction is that only the attorney may

3    disseminate contents of communication to third parties.  And I

4    guess -- then it says, "and not the staff."  "Staff" is a,

5    perhaps, malleable word.

6            You've addressed it as if a paralegal, in a slightly

7    different context, is in enough of a chain of command with the

8    attorney that for some other purposes they can be thought of as

9    the same team and, therefore, having the same -- I guess

10   that -- and that SAM seems to recognize that under Paragraph E,

11   that the paralegal can act in lieu of the attorney's presence

12   and so on.

13           And so I guess -- this is a very practical question:

14   Is it possible to identify who are permissible staff and who

15   are not permissible staff so that this can be expanded?

16           I tend to agree with Mr. Fick --

17           So you should probably not say anything.

18           (Laughter.)

19           THE COURT:  -- that there's some practical issues with

20   making the attorney be there all the time, not to mention

21   economic issues that I have to worry about to some degree.

22           And I guess -- so, if a paralegal is staff but an

23   investigator is not staff -- I mean, can we develop a rubric

24   where that can be sensibly understood in the realities of trial

25   preparation?

1          MS. PELLEGRINI:  Your Honor, we're not saying that

2     we're not available or open to negotiation of that.  But I just

3     wanted to reiterate that it wasn't made in an irrational --

4     "Let's just decide to make a difference between a paralegal and

5     an investigator."  Throughout the history, if you will, of SAMs

6     that have been imposed, that has always been a consideration

7     and a concern.  When an independent contractor is employed --

8     and by "employed" I don't mean "employed," I mean "used" -- to

9     contact the defendant.  The concern was that there was no real

10    control over what that particular investigator did.

11         THE COURT:  Right.

12         MS. PELLEGRINI:  That being said, are we willing to

13    consider a negotiation depending on what information regarding

14    the accountability can be put into place?  Absolutely.

15         THE COURT:  Well, just for another example, there may

16    be other kinds of, for lack of a better term, consultants of

17    some kind.  So imagine a tax case, for example, where you want

18    to have a forensic accountant.  It would seem to me to make

19    sense that that kind of person could be within the defense team

20    and controlled by the attorney enough that it would -- that

21    that person ought to not be subject to this kind of

22    restriction.  I can imagine other examples that would be on the

23    other side of that.  You know, somebody who does, you know,

24    reproduction of documents, for example, and facsimiles and

25    things like that.

```
 1              So it seems to me there ought to be a sensible
 2    authority or permission, however you want to put it, for some
 3    people other than the lawyer or hand-in-hand with the lawyer.
 4              MS. PELLEGRINI:  Your Honor, your own example sort of
 5    highlights the problem of simply wholesale making a category of
 6    a person who is or who is not able to meet with the defendant
 7    alone.
 8              We'll consider, as I said, you know, any proposal put
 9    forth and make that determination, and we'll do that in all
10    good faith.  And I think that's what the SAMs anticipates that
11    we and BOP would do.  They are -- I know the defense may
12    disagree, but they take great pains to try and control damaging
13    communication, and that's actually an aspect of it.  But if the
14    defense presents what we consider, you know, a viable
15    alternative to that particular restriction, we'll definitely
16    consider that and negotiate on that.
17              THE COURT:  Mr. Fick?
18              MR. FICK:  Just to clarify, I think there's a
19    distinction between the dissemination provision versus the
20    visit provision.  You know, we've tried to negotiate both.
21    We've had no progress on dissemination and some progress on
22    visitation.
23              THE COURT:  Well, I think they're aspects of the same
24    problem, which is how -- who should be allowed to disseminate,
25    interact with, whatever, without the attorney always being
```

1    present.

2           So it can be difficult to talk in categories because

3    they're categories, and, therefore, general.

4           What I have in mind is a list.  Maybe you can just

5    agree on people, and forget what they are, who could do this.

6           MR. FICK:  With regard to visits, at least, I mean,

7    we've come to agreement about what we are concerned about with

8    one exception, the one exception being the principal mitigation

9    specialist who was appointed under the CJA and who has worked

10   with Ms. Clarke for many, many years, and who's really sort

11   of -- I mean, she's very, very central to the case.  And so

12   it's very important for us to be on -- for her to be on that

13   side of the divide with everyone else that we've already agreed

14   about in terms of the visits.  And then if those people could

15   be included in the list of those allowed to disseminate, that I

16   think would essentially deal with most of our problems on that

17   account.

18          THE COURT:  All right.  It may not always be

19   symmetrical; that is, access doesn't necessarily mean authority

20   to disseminate.  For example, I'm not sure in that example that

21   there's any -- well, I don't know.

22          MR. FICK:  Again, for an investigator, it's really

23   critical to be able to share a fact in the course of any

24   investigation.

25          THE COURT:  All right.  Were you going to say

1    something?

2          MS. PELLEGRINI:  Your Honor, just to reiterate, we

3    will draft a proposal if the Court so wishes, trying to address

4    this particular question.  You're right, there is a difference.

5    And just simply placing a person in one category or another

6    doesn't really address necessarily the concerns about the

7    difference between visiting and dissemination of information,

8    but we'll attempt to address that.

9          THE COURT:  Okay.  Okay.  Thank you.

10          Let's move to the discovery motion.  And, again, as

11   I've said, I've gone over the specifics in the papers.  I know

12   what you're looking for.  I think the larger questions are the

13   proper understanding and application of, perhaps, the *Brady*

14   rule, although I have to say, I don't really see *Brady* here,

15   but perhaps the more broad understanding that is encompassed in

16   Rule 16 as that may be impacted by local rules classifying

17   things as automatic discovery or not.

18          And finally, under local rule, I guess, 116.1,

19   something or other, there is the recognition in the rules that

20   in complex cases there may be need to do things slightly

21   differently from what the template in the local rules would

22   ordinarily be.  And that sort of is in disagreement with

23   Mr. Watkins' earlier point that we should always follow the

24   local rules.  I don't necessarily think that's necessary or

25   appropriate in a case that has such complexity, so...

```
 1            MS. CONRAD:  Thank you, your Honor.
 2            Your Honor, it seems to me that the main two issues
 3   here are when disclosure is required and what disclosure is
 4   required.  With regard to the "when," obviously, we have
 5   automatic discovery rules.  Those automatic discovery rules do
 6   not address a capital case and the application of Brady, which
 7   addresses both guilt and innocence and punishment.  I mean,
 8   clearly Brady applies to mitigating evidence because Brady is a
 9   case that talked about mitigation of punishment.
10            So to the extent that --
11            THE COURT:  I don't want to be misunderstood.  I
12   didn't mean to say that Brady is inapplicable.
13            MS. CONRAD:  Okay.
14            THE COURT:  What I mean is I don't, from the papers,
15   see a Brady issue, but that's a merits --
16            MS. CONRAD:  In terms of exculpatory or in terms of
17   mitigating?  That's the part I'm not following.
18            THE COURT:  Both.  Both.
19            MS. CONRAD:  Okay.  I respectfully disagree, but I'll
20   address that.
21            The local rules -- the government relies on the local
22   rules that talk about, you know, lowering the offense level.
23   Clearly this is not such a case.  I mean, the punishment in
24   this case is not controlled by the Sentencing Guidelines.  So
25   the question is when is disclosure, let's just say of
```

1    mitigating evidence, required.

2         First of all, there is an overlap, as Mr. Weinreb sort

3    of acknowledged in discussing the trial schedule.  He said,

4    Well, some of the evidence that we would be presenting in the

5    guilt and innocence phase -- if we didn't have a guilt or

6    innocence phase -- would be presented in the sentencing phase.

7    So there's an overlap between evidence relating to the crime

8    itself and evidence relating to punishment.  So it's not a line

9    that you can just draw down the middle.

10         There are a number of cases, and we've cited them and

11   I won't belabor them, but one in particular, the *Perez* case

12   from the District of Connecticut, has a very thorough analysis

13   of the issue of when mitigating evidence should be disclosed in

14   a capital case.  And it comes to what I would suggest is a very

15   logical conclusion, which is that when a defendant is charged

16   by indictment with a capital crime, the case becomes a capital

17   case.  It does not await the attorney general's determination

18   of whether or not to file a death penalty notice.  It does not

19   await the completion of the death penalty protocol.  And *Perez*

20   is not alone in reaching this conclusion.  We've cited other

21   cases in our papers.

22         And the reason for that is not only a legal reason,

23   which is that *Brady* evidence and other exculpatory evidence

24   should be disclosed in a time that is soon enough to be

25   effectively used, but it's also a practical and logical

 1    component because, for example, delaying disclosure of this

 2    information can result in sort of duplication of efforts and

 3    also can be inconsistent with the judicial economy concerns

 4    that this Court, in its trial management role, has the

 5    authority and, indeed, the obligation to address.

 6            We're talking in this case about a global

 7    investigation.  If the government parcels out information to us

 8    in various stages in response to some of our requests, it says,

 9    This is premature; we'll disclose this when the time comes,

10    without saying when that time will be, we may have to go back

11    and redo some of the investigative work that we've already done

12    because now we have additional information that we can

13    incorporate into our development of mitigation, into our

14    investigation of the facts of the case and so forth.  And so it

15    just slows us down.

16            I mean, frankly, I was astonished to hear Mr. Weinreb

17    suggest September 2014, or the fall of 2014, as a proposed

18    trial date, which, needless to say, we find completely

19    unworkable, but especially given the position the government is

20    taking with respect to discovery.  They're saying, We don't

21    have to give you evidence that relates to mitigation until

22    after the death penalty notice is filed, if it's going to be

23    filed, and that wouldn't be until the end of January.

24            Well, that leaves us, you know, a handful of months to

25    review all the new information, to incorporate it into our

1    investigation, and to revisit some of the things that we've

2    already taken a look at.  And it's just not workable.  It's a

3    waste of resources.

4         Obviously, this is a case in which we have

5    CJA-appointed counsel, mitigation specialists.  The court is

6    paying for many of the things that we are doing in this case.

7    And to have to go back and redo things, or at least do some

8    overlap, would be inconsistent with the interest of justice.

9         In the *W.R. Grace* case, the Ninth Circuit talked about

10   the judge's ability and obligation and authority to ensure that

11   the -- that "to enter pretrial case management discovery orders

12   designed to ensure that the relevant issues to be tried are

13   identified."

14        The government starts out in one of its -- in

15   opposition by saying *Brady* is merely a rule of disclosure

16   designed to ensure basic fairness.  It's interesting that the

17   government uses the word "merely."  It doesn't seem to me it's

18   merely a rule of disclosure designed to ensure basic fairness;

19   it seems to me basic fairness is at the core of this.

20        The United States Attorney's manual includes a memo

21   written in 2010, often referred to as the "Ogden memo," that

22   encourages prosecutors to provide early discovery, to provide

23   information as soon as it's available, to provide information

24   that will help achieve the ends of justice, which is the

25   government's primary objective in any criminal case.

1              In this case the government has instead split hairs

2      about whether something is material but not pertinent,

3      favorable but not useful.  It seems to me that this kind of

4      line drawing, especially in a capital case where the nature of

5      mitigation is essentially endless or limitless in terms of what

6      types of information could be helpful to the defense, it

7      doesn't have to be admissible, it doesn't have to be

8      exculpatory in the sense of going to guilt or innocence.

9              The government says it has produced, quote, virtually

10     all potentially mitigating information in its files.  And that

11     sort of begs a number of questions.  First of all, what does it

12     mean that "virtually all of the information has been produced"

13     since under our view, under the *Perez* court's view, under the

14     *Delatorre* court's view, "virtually all" is not what's required;

15     all of it is what's required.

16             And second of all, with respect to the reference to

17     "in its files," the government does not explain which files

18     those might be.  Now, the U.S. Attorney's manual sets forth in

19     great detail what files are encompassed by that, but it seems

20     to me that the *McVeigh* case, which the government cites in a

21     somewhat cribbed manner, is really indicative.  Because in

22     *McVeigh* the government said, "We're providing open file

23     discovery."  And the judge said, "That's not good enough.  It's

24     not enough for you simply to dump all your files," something

25     the government has declined to do in this case; "You have to

1    identify exculpatory and mitigating evidence and you have to go

2    to agencies like the CIA and obtain information from them."

3           Now, the government -- and we intend to pursue this by

4    letter discovery request, but just to give the Court some idea,

5    the government to date has not told us whether or not it has

6    information that was obtained through or derived from foreign

7    surveillance, FISA and the like, despite the fact that the

8    local rules require disclosure of intercepted conversations,

9    not limited to Title III, but intercepted conversations.  So

10   the government again is taking for itself the prerogative of

11   saying, We'll decide what to disclose and when to disclose it,

12   but interestingly enough, doesn't say when that time will be.

13          We contend that that time is now, when we are

14   preparing our mitigation investigation, when we are in the

15   process of providing -- meeting our rule under the death

16   penalty protocol, and when we are digesting a massive amount of

17   information and trying to make sense of it.

18          With respect to the government's disclosure of simple

19   summaries of certain information, these are almost like tweets,

20   140 characters, maybe a little bit longer, summarizing a

21   general principle.  There is one exception that is several

22   pages long.  But the government has in those cases -- clearly

23   this information is exculpatory or mitigating, and

24   nevertheless, the government has resisted providing us with the

25   underlying interviews or grand jury statements.

1          It is obvious, it would seem, that when a witness says

2     something that is a general characterization of someone, or

3     gives sort of an overall description, that that witness would

4     have provided specific incidents, anecdotes or examples that

5     illustrate the larger point.  We haven't seen that.

6          The government, I submit, should submit those

7     underlying documents, if the Court is not going to order them

8     to provide them to us, but as a fallback, the government should

9     submit those documents to the Court and allow the Court to

10    review in camera those documents to determine whether the

11    disclosures that have been made to date are adequate.

12         Again, why the government won't provide the documents

13    themselves is, frankly, baffling to us.  We have a very

14    restrictive protective order in this case.  We are not

15    permitted to disclose information unless it is in connection

16    with the preparation of the defense, and we have to keep a list

17    of people to whom we provide copies of discovery.

18         Why the government will not provide -- these are not

19    confidential informants.  These are not secret sources, to our

20    knowledge.  Why the government won't provide that information

21    is beyond us except that we -- it appears the government is

22    trying to retain every possible advantage in this litigation

23    for itself.

24         With respect to just a few of the specific requests,

25    I'm not going to belabor all of them; however, Mr. Weinreb

1    talked about filing a motion to suppress statements, for

2    example.  And we appreciate your Honor not setting a deadline

3    for that.  We do not have all the information that we need

4    regarding those statements at this time.  Yes, we have the

5    statements, but what we do not have is the information

6    regarding the circumstances behind those statements.

7           The government has not responded to our request for

8    any communications among government agents, prosecutors,

9    government officials in general, and communications with the

10   Court regarding Mr. Tsarnaev's request -- repeated request both

11   orally and in writing -- for a lawyer.

12          With respect to the government's -- our request for

13   information about the Waltham murders and Mr. -- and Tamerlan

14   Tsarnaev's alleged involvement in that, the government simply

15   says it's an ongoing investigation.  Well, that is a qualified

16   privilege, and under the local rules the government's

17   declination does not carry the day.  The Court has an

18   obligation, including in camera inspection, if necessary, to

19   determine whether or not that information should be disclosed.

20          With respect to the A files and Rule 16, the

21   government's reliance on *United States versus Armstrong*,

22   frankly, is misplaced because in that case the information that

23   was sought was information that was relevant to a pretrial

24   motion to dismiss based on selective prosecution.  What we're

25   seeking here is information, documentary information, that the

1    government has within its possession that we have been denied,

2    even with releases from the individual -- signed releases from

3    the individuals concerned, that would assist us in our

4    development of mitigation.

5           And it seems to me this is precisely the type of area

6    where the Court's supervisory authority comes into play.  There

7    is absolutely no reason why this information shouldn't be

8    provided to us, especially under the existing protective order.

9    It would make our work easier.  It would be -- add to our

10   efficiency in trying to do this.  And the government, on the

11   one hand, seems to want to be pushing for an early trial date,

12   and at the same time is withholding information that could give

13   us the ability to move forward more quickly.

14          Going back, if I might, for one moment to the issue of

15   both surveillance before April 15th and interceptions and tips

16   provided by Russian authorities, the government says this is

17   premature.  As I mentioned, it doesn't say when it intends to

18   either disclose this or tell us it has such information.  The

19   Classified Information Procedures Act, Section 2, permits any

20   party to request a pretrial conference to address the existence

21   of such information.  So it's within the Court's authority to

22   schedule such a conference and to address this.

23          Your Honor, with respect to the Court's comment that

24   your Honor does not see what we're requesting as *Brady*, I'm

25   frankly somewhat at a loss.  I mean, it seems to me we've

```
 1    identified particular areas.  And crucial among those areas are
 2    issues regarding the family -- Mr. Tsarnaev's family -- issues
 3    regarding the relative roles of Tamerlan and Dzhokhar Tsarnaev
 4    in the bombings.  And it seems to me that those are precisely
 5    the core types of issues that go to mitigation and are -- and
 6    the government's --
 7          I'm not sure if your Honor is saying that your Honor
 8    feels that the disclosures so far are adequate or that those
 9    are not issues that go to mitigation.  And it would be helpful
10    if your Honor could expand on that.
11          THE COURT:  Your better argument, in my view, is under
12    Rule 16 than under the Brady doctrine, which I view as, I
13    guess, more specific and limited than perhaps you do.
14          MS. CONRAD:  Well --
15          THE COURT:  Brady is essentially a remedy for what we
16    might call knowing suppression of identified information that
17    is recognizable to the government as exculpatory in the various
18    categories.  It is not a general materiality standard as might
19    be more generously available to you under Rule 16.
20          MS. CONRAD:  Well, I understand your Honor's point,
21    but the government, nevertheless, has an obligation under Brady
22    as it's broadly used.  And as we have discussed in some of the
23    cases, they addressed -- and we've discussed the government's
24    opposition in which the government talks about materiality.
25          Materiality is the postconviction standard.  And Brady
```

1    does impose an obligation, but it also imposes a remedy.  The

2    remedy comes into play when the government has failed to

3    disclose or has suppressed material exculpatory or mitigating

4    evidence.

5         But the fact that we are in the pretrial stage, I

6    would submit, expands rather than contracts the scope of the

7    government's obligation.  And that's something that's

8    recognized in the U.S. Attorney's manual.  We cited the case

9    *United States versus Safavian* that talks about the fact that in

10   addressing pretrial disclosure in the pretrial standpoint, the

11   government should -- that the withholding of evidence should

12   not be viewed with the benefit of hindsight after trial.

13        It is true that Rule 16 requires disclosure of

14   material documents and objects, and we believe that that

15   requires the government as well to provide this.  But Rule 16,

16   the government notes, also talks about evidence relating to the

17   case-in-chief.

18        Now, we think that is too narrow a view of the

19   *Armstrong* case.  But I think materiality is clearly not the

20   standard under *Brady* in the pretrial posture in which we

21   currently find ourselves.

22        And it seems to me that some of the cases we cited,

23   including the *Karake* case, the *Delatorre* case, the *Perez* case,

24   the *Ablett* case, all of those are cases in which the government

25   was ordered to provide mitigating evidence in a capital case

1    before notice was filed.

2            May I just have one --

3            And I think *McVeigh* addresses this as well.  It talks

4    about the government's burden under *Brady* which includes

5    information that is helpful to the defense both with respect to

6    punishment and guilt or innocence.

7            So, your Honor, I would submit that the government has

8    not complied, and, frankly, the whole tenor of the government's

9    opposition, especially this line about virtually all mitigating

10   evidence, is, you know, We'll give it to you if we feel like

11   it, when we feel like it.  And your Honor has the authority to

12   order full disclosure at this juncture so that we can make

13   effective, and I would stress efficient, use of that

14   information in our development and investigation of this case.

15           THE COURT:  All right.  Mr. Weinreb?

16           MR. WEINREB:  Your Honor, I think it is a completely

17   untrue and unfair characterization of the government's motion

18   or of its position in this case of how we've conducted

19   discovery to say that our view has been, We will give you what

20   we want, when we want.  On the contrary.

21           As the Court itself acknowledged in the beginning, as

22   we all have to acknowledge, because it's written in ink in the

23   local rules, there is no requirement that mitigation evidence

24   be produced at any particular time, under Rule 16 or under the

25   local rules.  And under the Constitution, it seems clear that

1     *Brady* -- to the extent mitigation evidence rises to the level

2     of *Brady*, it need only be produced in time for it to be used.

3              Notwithstanding that, the government has produced

4     virtually all the mitigation evidence in its possession

5     already; in other words, we have voluntarily stepped up, combed

6     through our files carefully to look for both evidence

7     identified by the defense as mitigating and evidence that in

8     our own judgment could be mitigating, and we have given it to

9     the defense early so that they could make the greatest use of

10    it.

11             We have not withheld any favorable material

12    information from them and we do not intend to.  We have not

13    tacked close to the wind, in a phrase that's favored by the

14    defense and from *Kyles v. Whitley*; on the contrary, we're erred

15    on the side of caution and we have produced everything that we

16    believe corresponds to genuine categories of -- or falls within

17    genuine categories of favorable material evidence that they

18    could use either at trial or in sentencing.  In some cases

19    we've given over entire reports.  In virtually all cases, we've

20    just given them all the reports even though those reports

21    contain much -- much of what's in those reports, under no

22    conceivable standard, could be considered *Brady* or mitigating.

23             In some cases we've provided complete and accurate

24    summaries of what the witnesses have said that either

25    corresponded to categories identified by the defense as

1   mitigation theories or that we have judged are potentially

2   mitigating.  To characterize them as tweets sounds like a

3   statement being made for the benefit of the press, not an

4   argument to the Court.

5        Obviously, these are not meant to be -- maybe I

6   shouldn't say "obviously" -- it's obvious to us; I hope it's

7   obvious to the Court -- but these are not meant to be bare

8   minimum statements, but rather, complete, accurate, total

9   summaries of all the information that bears on the categories

10  that were identified.

11       What the government has not produced is unfavorable

12  information, information that we believe we could use against

13  the defense, either at trial or in sentencing, or that we might

14  use to impeach defense witnesses.  That is our right under the

15  adversary system.

16       In asking for access to our files, the defendant is

17  not asserting a right that exists under *Brady*, under Rule 16,

18  under the local rules or under any other law.  They admit in

19  their motion that they don't even know their mitigation

20  theories yet.

21       If you look at page 6 of the defense reply brief they

22  write, "At this stage the defense does not have fixed

23  mitigation theories; instead, various hypotheses under our

24  investigation in the alternative are not necessarily consistent

25  with each other" -- that's what they characterize as their

1    *Brady* -- "and therefore," they go on to say, "the attempt to

2    characterize facts as either favorable or unfavorable is a

3    futile attempt."  It can't be done.

4           Essentially what the defense is trying to do here is

5    obliterate the distinction between favorable and unfavorable

6    evidence and say, Since every single nugget of information in

7    your files is potentially favorable to us, you should open it

8    up to us and let us go on a fishing expedition looking for

9    things that we might turn to our advantage.

10          That obviously is not the law.  It's certainly not the

11   law under the Constitution, it's not the law under Rule 16 --

12   under any reading of the Rule 16 -- the local rules, and it's

13   not compatible with the adversary system.  To the extent that

14   there is overlap evidence, evidence that could be used both at

15   trial and at sentencing, we have produced it.  So that is a

16   nonissue.

17          As for our asserting, with respect to some specific

18   requests of the defense, that the requests are premature, the

19   purpose of that is, first of all, to raise the general

20   objection that it's all premature, because we believe that as a

21   purely legal matter it is all premature.  No legal right to any

22   mitigation evidence has yet attached.  The only legal right to

23   mitigation evidence, as I said earlier, exists under the

24   Constitution, and it's clear under *Brady* that the standard is

25   that it be produced in time for them to make use of it.

1          In this case we not only don't have a trial date, but

2     the defense is urging the Court not to set a trial date for

3     months hence.  To say that at this point the legal right to all

4     mitigation evidence has attached would be novel under the case

5     law, I believe.  Instead, we have asserted that defense simply

6     to make the point that we are producing what we are producing

7     voluntarily, and that in a very few narrow cases, we are

8     essentially still working on certain matters.

9          And let me turn to the specific requests so that I can

10    address those specifically.  Essentially, with respect to

11    Requests 5, 7 and 8, the government's position is not that we

12    have material responsive to those requests and that we are

13    refusing to produce it; our response is that to the extent that

14    there is material responsive to those requests, we will either

15    produce it or we will file an appropriate pleading with the

16    Court.  But at this point a motion to compel is premature

17    because there's no legal obligation on our part to produce that

18    information at this time.

19          With respect to Request 9, which is the information

20    about the Waltham homicide, that's a different matter.  That is

21    a matter that is still actively under investigation by the

22    Middlesex District Attorney's Office.  For that reason, we have

23    tacked closer to the wind when it comes to information with

24    respect to that investigation.  Obviously, as is the case with

25    any criminal investigation, revealing the details of it while

1    it's still under investigation would have a tendency to

2    jeopardize it, to undermine it.

3            If there were, in fact, a legal right for the defense

4    to have that information at this point, formal compliance with

5    the requirements of the local rules and so on might be

6    required, but that's simply not the case at this point.  The

7    defense cannot articulate a reason why they need all the

8    information relating to that investigation at this point.  They

9    may never be able to articulate that kind of argument.  But

10   even if they could come up with any kind of argument on that

11   score, they can't possibly show that with respect to that

12   narrow issue they need it now.

13           The defense spent a great deal of time earlier today

14   talking about how they're so overwhelmed with discovery that

15   it's going to take them months and months and months to go

16   through it, and even more time because they have to write

17   motions simultaneously.  For them to say that despite all of

18   that they need the information that falls into these very

19   narrow categories immediately is disingenuous.  It is certainly

20   not based in any legal right.

21           Given what the Court said, let me just address one

22   other thing.  With respect to in camera review, the government

23   has nothing to hide.  We have complied with our obligations.

24   We have no objection to allowing the Court to review anything

25   that's in our possession to assure compliance with our legal

1    obligations, if that's what the Court desires.  We do not,

2    however, think the defense has a legal right to demand that

3    that be the case.  They're not entitled to second-guess the

4    government's judgment of whether it has complied with its

5    obligations under *Brady*.  That, under the law, is committed to

6    the government in the first instance.

7            We have complied with our obligations.  And although

8    it is the case that the government sometimes, in cases where it

9    feels uncertain about whether something is *Brady*, asks the

10   Court to review it in camera and render essentially an advisory

11   legal opinion on it, we are not doing so in this case because

12   we're confident that we have fulfilled our obligations by going

13   above and beyond what the law requires in this area.

14           The defense also said at some point that the Court

15   under its supervisory authority could order that things be

16   produced, such as the A files of people remotely connected to

17   the defendant:  friends of his, you know, relatives, cousins,

18   nieces, nephews.  The government objects to that.  There is no

19   right.  The Court cannot, under its supervisory authority,

20   simply create new rules of discovery that the defense can then

21   come in and ask it to compel.

22           Congress, in writing Rule 16, the court in drafting

23   the local rules, and the Supreme Court in interpreting the

24   Constitution, have created and articulated what the rights to

25   discovery are for the defense, and there's no legal basis for

1  the Court to simply draft new ones because it suits the

2  defense, or they claim it would save them work or allow them to

3  substitute our investigation for theirs.

4        And that's really what this boils down to, your Honor,

5  from the government's point of view.  We are not in any way

6  attempting to inhibit the defense from conducting a thorough

7  investigation of this case.  We acknowledged when the

8  indictment was filed, yes, 17 of the charges carry a potential

9  death penalty.  Obviously, it was a potential death penalty

10  case from the start.  We did not object to the defense having

11  learned counsel, counsel learned in the death penalty appointed

12  days after the defendant had his initial appearance, indeed,

13  which was months before the indictment was even filed.

14        The defense has been thoroughly investigating the case

15  since then, including any mitigation case.  The government has

16  been investigating its case.  Under the adversary system, they

17  don't have to open their files to us and we don't have to open

18  our files to them.  To the extent that fairness requires that

19  we produce certain information to them, we've produced it.  But

20  we also have an obligation to zealously represent the United

21  States in this case, and to that extent, it's our duty to

22  assert our rights to keep in our own files information that are

23  the fruits of our investigation that we can use down the road

24  in the event that there is a trial and a sentencing phase in

25  this case.

1            And that is all we are seeking to do in this case.

2            MS. CONRAD:  May I just respond very briefly, your

3    Honor?

4            THE COURT:  Go ahead.

5            MS. CONRAD:  First of all, I'm going to start with

6    the -- down in the weeds and hopefully work my way up a little

7    bit.

8            On this business about the A files, let's be clear

9    about what we're talking about here.  Mr. Weinreb talks about,

10   you know, peripheral people.  We're talking about the

11   defendant's nuclear family.  We've asked for other individuals;

12   it is true.  We have asked immigration for the A files.  We

13   have provided signed release forms.  We have been refused.  We

14   are now probably going to have to embark on FOIA litigation to

15   get those files, which the government could get with a phone

16   call and provide to us.

17           Now, if the Court wants to see CJA counsel and

18   CJA-paid investigators spend their time on FOIA litigation to

19   obtain something that we submit these individuals have a legal

20   right to, that the government could provide to us at will, it

21   seems to me that that is a very poor use of judicial resources,

22   especially in this difficult budget time.  And I think it falls

23   squarely within Rule 16(a)(1)(E).  It is not a new rule.  It's

24   been there for a very long time, although it used to be called

25   16(a)(1)(C), but it still said the same thing, which is

1    documents material to the preparation of the defense.  And

2    *Armstrong* doesn't cover it, and the government could provide it

3    and has not offered a single reason why it won't.

4         And it seems to me that this is illustrative of the

5    government's position throughout this matter.  The government

6    keeps saying it doesn't have to provide this information now,

7    but that is because the government is of the -- has taken an

8    extremely narrow view of 16(a)(1)(E), and the government also

9    takes a view that is contrary to the decisions in *Perez*, *Karake*

10   and so forth, *Delatorre*, that once there's a capital

11   indictment, we are entitled to mitigation evidence.  We are

12   entitled to helpful evidence.

13        For the government to say, They have their

14   investigators, we have ours, frankly, is ridiculous.  Yes, we

15   have investigators.  We do not have a network of hundreds,

16   maybe thousands, of law enforcement, FBI agents all over the

17   world who are working on this case.  As your Honor well knows,

18   we have a small group of people who are doing our best with a

19   large amount of information, much of which does not relate to

20   mitigation.

21        In addition, we do not have a grand jury.  I'm not

22   saying we should have one.  But frankly, this is not a level

23   playing field.  We do not have the power to subpoena witnesses

24   and hold them in contempt if they fail to appear or refuse to

25   testify.

```
 1              So the government has all these resources and the
 2    government also has, as a result, a proportional obligation to
 3    at least level the playing field a little bit.  And to say that
 4    the Court can't second-guess but has to take their
 5    representation at face value that they have provided everything
 6    that they're required to, when it is based on a cribbed reading
 7    of their obligation, an erroneous view of the timing obligation
 8    and an erroneous view of 16(a)(1(E), it seems to me is just
 9    plain wrong.
10              And for them to say, We've given you virtually all of
11    the discovery evidence, doesn't cut it.  We are entitled to all
12    of it.  And the Court is entitled to order the government to
13    provide information in an orderly and efficient manner,
14    especially if the government is eager for a trial date as soon
15    as possible.  Thank you.
16              THE COURT:  Okay.  I'll take the matters under
17    advisement.
18              And I think, unless there's something else that we
19    haven't touched on --
20              MR. WEINREB:  Nothing for the government.
21              MR. CHAKRAVARTY:  I'm sorry, your Honor.  Just
22    excludable delay, your Honor.
23              MS. CONRAD:  Oh, I'm sorry.  May I just say one more
24    thing?  I apologize.
25              On the Waltham murder issue, as to that, I would
```

1   stress that under the relevant cases the Court does

2   have -- well, first of all, the government under 116.6 under

3   the local rules bears the burden in showing why that shouldn't

4   be disclosed.  And the law enforcement privilege is a qualified

5   privilege as explored in the *In Re Homeland Security* case that

6   we cited in our papers.

7           So if the government is going to continue to withhold

8   that evidence, we do urge the Court, at a minimum, to look at

9   that material in camera.

10          MR. WEINREB:  Your Honor, we would ask that if we are

11  going to wait to set additional dates in the future, that the

12  defense agree to an order of excludable delay and that the

13  Court enter the order notwithstanding --

14          THE COURT:  Until February 12th, which is our next

15  status conference?

16          MR. WEINREB:  Yes, your Honor.

17          MS. CLARKE:  No problem, your Honor.

18          THE COURT:  I think it's palpably appropriate under

19  the statute, and I'll so order.  All right.  We'll be in

20  recess.  Thank you.

21          THE CLERK:  All rise for the Court.

22          The Court will be in recess.

23          (The Court exits the courtroom and the proceedings

24  adjourned at 11:31 a.m.)

25

1                   C E R T I F I C A T E

2

3          I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4     the United States District Court, do hereby certify that the

5     foregoing transcript constitutes, to the best of my skill and

6     ability, a true and accurate transcription of my stenotype

7     notes taken in the matter of Criminal Action No. 13-10200-GAO,

8     United States of America v. Dzhokhar A. Tsarnaev.

9

10    /s/ Marcia G. Patrisso
      MARCIA G. PATRISSO, RMR, CRR
11    Official Court Reporter

12
      Date:  11/21/13
13

14

15

16

17

18

19

20

21

22

23

24

25