UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 13-CR-10200-GAO |
| v. ) | |
| ) | |
| ) | |
| DZHOKHAR TSARNAEV ) | |

### SUPPLEMENTAL MEMORANDUM IN
### SUPPORT OF MOTION TO VACATE SAMs

On October 3, 2013, the defendant, through counsel, filed a motion to vacate the Special Administrative Measures that were imposed on the defendant and counsel in late August, 2013. [Dkt. # 110.] The motion remains pending. At a hearing on November 12, 2013, the Court advised:

> So what I'm mostly interested in is whether there is practical interference to any substantial degree and in what respects, with the ability of the defense to prepare because of these limitations. Not whether they're annoying, but whether they are inhibiting.

11/12/13 Tr. at 17. The defense responded on the record at that time and now makes this supplemental filing to advise the court of further developments concerning the SAMs and their impact on the defense.

Notably, in the wake of the Court's comments at the November 12, 2013, hearing, the government did agree to modify provisions 2d and 2e of the SAMs to permit additional defense team members to disseminate the content of the defendants' statements to third parties for the purpose of preparing the defense. The government also agreed to add additional defense team members to the pre-cleared list of individuals who may meet unaccompanied with the defendant. These modifications were memorialized and took effect on November 27, 2013.

1

Apart from these accommodations, however, the government has not modified the SAMs, which continue to interfere with preparation of the defense in important ways. Specifically, as detailed below, the defense is encountering obstacles related to FBI monitoring of family visits and BOP screening of materials that defense counsel need to review with the defendant. These obstacles thwart preparation of important parts of the defense case in mitigation and also threaten the integrity of attorney work product.

The Supreme Court has held repeatedly that a capital defendant has a broad right to present any mitigating evidence to the jury. *See, e.g., Ayers v. Belmonte*, 549 U.S. 7 (2006) (describing the jury's penalty phase task as weighing "the finite aggravators against the potentially infinite mitigators"); *Tennard v. Dretke*, 524 U.S. 274, 284-85 (2004). Defense counsel thus have a corresponding obligation to investigate mitigating evidence, and to develop and preserve that evidence for presentation to the jury. *See, e.g., Porter v. McCollum*, 558 U.S. 30, 40-41 (2009); *Wiggins v. Smith*, 539 U.S. 510, 524-25 (2003); *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

The Supreme Court has also confirmed that the work product doctrine plays an essential role in the integrity of criminal cases:

> Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.
> . . . .
> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.

*United States v. Nobles*, 422 U.S. 225, 238 (1975). Put another way, the work product doctrine grants attorneys "a zone of privacy within which to prepare the client's case and plan strategy,

2

without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014 (1st Cir. 1988).

Specifically, for example, courts "have held that defense counsel's selection and compilation of documents in preparation for pretrial discovery fall within the highly-protected category of opinion work product." *United States v. Horn*, 811 F. Supp. 739, 746 (D. N.H. 1992), *rev'd in part on other grounds*, 29 F.3d 754 (1st Cir. 1994). In *Horn*, the court found that the government had improperly invaded defense work product where the prosecution had directed a vendor to make an additional copy for the government of materials that the defense had selected to be copied. *See id.* Based on similar reasoning, in *United States v. June*, 2011 U.S. Dist. LEXIS 127902 (D. Mass. Oct. 19, 2011), the Court order the government to permit the defense to review and copy original documents without the presence of an agent.

### A. FBI Monitoring.

The SAMs require that any visits by defendant's family members "be contemporaneously monitored by the USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM." Exhibit A to defendant's Motion to Vacate SAMs, ¶ 3.f.iii.(1). [Dkt # 110-1.] In practice, an FBI case agent from the underlying investigation, Timothy Brown, has been physically present in the small interview room used during visits by the defendant's sisters that defense counsel have organized and in which a member of the defense team has participated.

As detailed below, the agent's physical presence has thwarted the defense ability to develop important mitigation information. Moreover, the fact that monitoring is being performed by a case agent, specifically, also threatens attorney work product and creates a

3

scenario where government observations of the defendant's demeanor may be used against him at trial, which is not a legitimate purpose of the SAMs.

### 1. Development of Mitigation Evidence.

The critical role of defense-observed interactions between Mr. Tsarnaev and his sisters in developing mitigation evidence and the obstacles posed by FBI in-person observation, are described by the lead defense mitigation specialist in an *ex parte* and sealed declaration that accompanies this motion.

Courts have recognized the types of information that the defense seeks to develop as admissible mitigation evidence. For example, evidence regarding the defendant's relationship with his family, and the impact that his execution would have on family members, has been presented as mitigation evidence. *See, e.g, Payne v. Tennessee*, 501 U.S. 808, 825-26 (1991). Similarly, evidence regarding family dysfunction, mental illness, and the impact of family chaos on the defendant as he grew up, has long been recognized as appropriate mitigating evidence. *See, e.g., Porter*, 558 U.S. at 40; *Wiggins*, 539 U.S. at 524-25.

The defense request to participate in unmonitored visits between the defendant and family members is not unusual. In other federal capital cases, U.S. Marshals and/or jail or prison facilities have arranged for confidential, contact visits with defense team members, selected family members of the defendant and the defendant without the presence of law enforcement or prosecution agents.

### 2. Avoiding Abuse of SAMs and Protecting Work Product.

The purported purpose of in-person visit monitoring under the SAMs is to prevent the passing of messages or incitement of violence. The monitoring is not properly imposed as a tool to invade attorney work product — the choice of topics and information concerning family

4

history and dynamics that the defense team aims to elicit and observe — or to develop information about the defendant's demeanor for use by the government at trial.

Special Agent Brown has been present during all of the sisters' visits to date, has provided directions at the beginning of each visit, has admonished the sisters and Mr. Tsarnaev to speak only in English, has listened to the content of the conversations as they occur, and has taken notes. Short of vacating or modifying the SAMs, the defense has requested that a taint team be used to monitor visits, and/or that none of Agent Brown's observations, or notes, be provided to anyone on the prosecution team. The prosecution has refused this request.

### B. BOP Screening of Materials for Review with Defendant.

Other than an apparent misunderstanding about family photographs that defense counsel brought to the prison in September 2013, noted in the original motion papers, over the course of several months BOP personnel had not sought to inspect or review substantively items that defense counsel brought to the prison to review with Mr. Tsarnaev. BOP has stationed a stand-alone desktop computer in the interview room where counsel meet with Mr. Tsarnaev to facilitate viewing of digital materials. Over the course of several weeks, defense counsel began to review various digital materials on CD/DVD-ROM with the defendant using this computer.

However, on January 24, 2014, BOP staff asked to review the content of a CD that defense counsel had brought in to review with their client. In the absence of a taint team, defense counsel declined to submit to the review and therefore were unable to review the material with the defendant. Since that time, staff have asked counsel if they are bringing in digital media to review with Mr. Tsarnaev. Pending resolution of this issue, counsel have not sought to do so.

Consistent with the teaching of *Horn, supra*, government knowledge of materials that the defense has selected to review with the defendant would undermine the integrity of attorney work product. The defense has requested that the government employ a taint team for this purpose, but the prosecution has declined to do so.

## Conclusion

For the foregoing reasons, as well as the reasons identified in prior filings and oral argument, the Court should vacate the SAMs in their entirety. Alternatively and/or in addition, the Court should (1) order that unmonitored family visits be permitted under the supervision of a defense team member; and (2) order the government to employ a "taint team" to protect attorney work product.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/ Judy Clarke

Judy Clarke, Esq.
California Bar: 76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I, Judy Clarke, hereby certify that I have served a copy of the foregoing document on counsel of record for the government on this 11th day of February, 2014, by e-mail PDF.

_____
Judy Clarke