UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )

                )

      v.                )      Crim. No.13-10200-GAO

                )

DZHOKHAR A. TSARNAEV, )

         Defendant )

2014 FEB 27  A 9: 57

## GOVERNMENT'S OPPOSITION TO TSARNAEV'S MOTION TO VACATE SPECIAL ADMINISTRATIVE MEASURES ("SAMs") AND MOTION TO SEAL

The United States of America, by and through its undersigned counsel, respectfully opposes Tsarnaev's Supplemental Memorandum "(Memorandum") to vacate the Special Administrative Measures ("SAMs") imposed upon him pursuant to Title 28, C.F.R. § 501.3(a), and requests that the Court deny the motion in its entirety.

The government also opposes Tsarnaev's sealed motion to seal the Motion and its accompanying Memorandum. As the court has granted the sealed motion to seal prior to the government's filing, the government has filed its response under seal. However, the government does not believe there is sufficient basis for sealing or redaction and seeks to unseal the Defendant's motion to seal, the Defendant's Memorandum, and the government's Opposition.

As basis for its opposition, the government states as follows:

**Factual background:**

By letter dated September 11, 2013, the government advised defense counsel that social and legal visits may not be combined, and that, in the absence of SAMs, BOP regulations do not permit a combination of a social and legal visit.  Defense counsel was also informed that, if [s]he articulated a reason why a particular combined visit (that is, a non-legal visitor and legal visitor together) was necessary, an exception might be made to the rule for that visit.  Defense counsel was aware that the visit was still deemed a social visit and governed by the rules relating to social visits. At the time of this filing, there have been two social visits.

Within the same letter, defense counsel was advised that BOP reviews all documents which enter a BOP facility and that procedure was reflected in SAMs Section 2(h). BOP performs a cursory review to ensure that contraband is not being introduced and, in the case of digital media, that there are no viruses. Defense counsel was informed at that time that BOP does not share its review with the prosecution team.

In December of 2013, defense counsel requested that Deborah Garvey, identified as an investigator for the Federal Defenders Office, be present at the meeting of Tsarnaev and each of his

2

sisters.   In keeping with the government's efforts to facilitate
defense access, BOP officials agreed to permit Garvey to be
present.

Prior to the first visit by non-legal visitors to Tsarnaev,
a BOP official made a comment in passing to a member of the
defense team that it might be nice if the press did not report
upon the visit.

Prior to the second visit, in a letter to BOP officials,
defense counsel advised that Garvey would accompany Tsarnaev's
sisters on the next scheduled visit.   There was no further
explanation by defense counsel as to the reason for her
presence.

At one point during the second visit, Garvey started to
explain the rationale behind the SAMs to Tsarnaev's sister.   In
response to Garvey's comment regarding the prohibition against
providing information to third parties outside of the prison,
Tsarnaev made a comment in return.

Pursuant to the SAMs, during both visits, an FBI agent
remained in the room. His presence was legally permitted by the
SAMs.

On January 24, 2014, the lobby clerk advised the
supervising Lieutenant that the defense had brought a disk which
had not been reviewed.   The BOP official asked to review the
disk. Counsel refused to provide it and it was not provided to

the defendant.

### 1. Sealing is Unnecessary and Inappropriate

In the sealed motion to seal, Tsarnaev makes several claims that are incorrect or misleading. First, he claims that the sealing is due to the fact that "[p]rison officials have requested that the defense refrain from publicizing the facts of [visits by Tsarnaev's sisters]." To the contrary, Bureau of Prison ("BOP") officials have never requested or directed the defense or any family member to refrain from commenting upon the fact of a visit to Tsarnaev. The SAMs do not prohibit a visitor from commenting on the fact of a visit. Rather, a BOP official made a comment in passing to a member of the defense team that it might be nice if the press did not report upon the visit. Nothing further was said.

The defendant's motion fails to mention that the fact that Tsarnaev can receive visitors is a matter of public record and became such when the defense filed a copy of the SAMs. [Docket #110, Ex. 1]. Regarding the defense's concern that Tsarnaev's sisters will be susceptible to harassment, no personal identifying information about Tsarnaev's sisters is contained in the motion, the Memorandum, or the Opposition. Indeed, the visits which are referenced in all of the aforementioned documents have already taken place. There is no mention of any date and/or time of any future visit. Therefore there is no

4

information in the public record that would identify the
sisters' planned visits for purposes of harassment.

The mere fact that there have been past social visits does
not tip the balance in favor of sealing. "Relevant documents
which are submitted to, and accepted by, a court of competent
jurisdiction in the course of adjudicatory proceedings, become
documents to which the presumption of access applies." *United
States v. Kravetz*, 706 F.3d 47, 59 (1st Cir.2013).

### 2.   FBI Monitoring of Non-Legal Contacts

Defendant's motion appears to seek greater privileges for
than would be available to inmates in the general population,
and to otherwise interfere with the warden's desire to control
security within the institution.  Where he has challenged
specific SAMs, he has not provided a sufficient basis for his
motion.  Finally, Tsarnaev appears to ask this Court to expand
the attorney-client and work-product privilege impermissibly.

### A. *SAMs regulations*

Pursuant to Section 3.f. of the SAMs, non-legal visits are
restricted to immediate family members only.  There must be
written notice to the facility 14 days in advance of any non-
legal visit.

Pursuant to Section 3.f.iii.(1) of the SAMs, the visits are
contemporaneously monitored by the FBI. The monitoring allows
such visits to be analyzed for indications that the visit is

being used to pass messages soliciting or encouraging acts of
violence or other crimes, or to otherwise attempt to circumvent
the SAMs.  Even in the absence of SAMs, however, BOP supervises
each inmate visit to prevent the passage of contraband and to
ensure security. 28 C.F.R. § 540.51(h).  General population
inmates may have their communications with the public restricted
by the warden of a particular facility.  28 C.F.R. §540.15 et
seq.

Additionally, pursuant to Section 3.f.iii.(3) of the SAMs,
the visitor and the defendant are not permitted to have any
physical contact.  Under general BOP regulations, the decision
to permit physical contact rests with BOP which may limit and
deny contact to minimize opportunity for the introduction of
contraband and to maintain the orderly operation of the visiting
area.  28 C.F.R. §541.51(h)(2).

Finally, pursuant to SAMs Section 3.f.iii.(4), non-legal
visits are limited to one adult visitor at a time.

All of the aforementioned SAMs restrictions are "reasonably
necessary to protect persons against the risk of acts of
violence or terrorism." 28 C.F.R. §501.3(a).

The defense attempts to expand and alter long-defined
privileges regarding attorney-client relationships and work-
product.  Pursuant to the SAMs, during both visits, an FBI agent
remained in the room. His presence was legally permitted by the

6

SAMs. As such, his observations -- whether related to the SAM
restriction or not -- were permissible.  The defense provides no
support for the contention that the agent was required to close
himself off from the conversation. There was no expectation of
privacy on the party of Tsarnaev, his visitors, or the
investigator. The agent was in a legally obtained vantage point,
making his ability to see and hear all which occurred lawful.
(*United States v. Mankani*, 738 F.2d 538, 543 (2nd Cir.1984)
("Just as what an officer sees when lawfully present is
considered nonintrusive plain view, what he hears while so
stationed is similarly not a search and seizure is thus *per se*
lawful."). The reasonable rationale for the SAM monitoring
restriction did not dissipate or lessen because an FPD
investigator decided to participate in the conversations between
Tsarnaev and his sisters.

At noted, during the second visit, Garvey started to
explain the rationale behind the SAMs to Tsarnaev's sister.  In
response to Garvey's comment regarding the prohibition against
providing information to third parties outside of the prison,
Tsarnaev made a comment in return.  It is the government's
belief that this comment is the driving force behind the present
motion. The motion has nothing to do with the SAMs and
everything to do with the fact that Tsarnaev, despite the
presence of an FBI agent and an employee of the Federal Public

Defender, was unable to temper his remarks and made a statement
to his detriment which was overheard by the agent.

In seeking to control the government -- as opposed to their
client -- the defense relies almost exclusively upon the issue
of mitigation. In doing so, they claim that the mere presence of
an investigator during a social visits turns everything said
during that visit into protected work-product. But the defense
does not cite to any legal authority for this proposition.
Social conversation in the presence of a defense investigator is
not a mental process.  There was no review of the investigator's
notes; no interference with the manner or the nature of her
remarks.  However broad the field of mitigation issues might be,
the issue of mitigation itself does not create a right or
privilege where none otherwise exists. Additionally, the defense
counsel fails to address why any such privilege was not
otherwise breached by the presence of third parties.  The
privilege and confidentiality applicable to the attorney work-
product and attorney-client privilege cannot be stretched to
include non-clients. "When information is transmitted to an
attorney with the intent that the information will be
transmitted to a third-party ..., such information is not
confidential." *United States v. Lawless,* 709 F.2d 485, 487 (7th
Cir.1983).

8

The SAMs, as well as BOP regulations, seek to encourage family relationships. 28 C.F.R. §540.40 (purpose and scope). Tsarnaev's ability to visit with his sisters is not prohibited. The fact that the defense may wish to exploit these social visits and encourage a particular relationship does not give rise to a work-product privilege covering these visits and does not transform the social visit into a legal one.

None of the defense's suggested remedies are supported by law. There can be no suppression of a defendant's voluntary statement if there is no implication of any Fourth Amendment expectation of privacy. The suggestion that the defense and visitors be allowed to meet with Tsarnaev without monitoring by law enforcement would, in effect, allow Tsarnaev far greater freedom than the general population of inmates who are subject to the BOP regulations. The issue of mitigation should not allow Tsarnaev to receive greater latitude in visits and contact than inmates who are not subject to SAMs.

2. **BOP review of Material brought into Facility**

Pursuant to SAMs Section 2(h), BOP reviews all materials that are brought into a BOP facility.  As explained to counsel in September of 2013, this review is a cursory one and does not involve a detailed review of the material.  With respect to digital media, the review is to determine whether or not the item contains any viruses. The review has never been

substantive.  The review is normally done by a lobby clerk prior to the defense meeting with the defendant.

On January 24, 2014, the lobby clerk advised the supervising Lieutenant that the defense had brought a disk which had not been reviewed.  The BOP official asked to review the disk. Counsel refused to provide it for review and it was not provided to the defendant.

Again, the defense's requests for a taint team or some lessening of the SAMs restrictions are attempts to turn the spotlight away from their behavior and their decisions. If the defense chooses not to comply with the SAMs, the material will not be provided to the defendant. That is the choice of the defense.

A taint team was not, and is not, necessary. BOP officials do not, and have not, shared their review of legal material with the prosecution team.

Respectfully submitted,
CARMEN M. ORTIZ
United States Attorney
District of Massachusetts


By:  /s/Nadine Pellegrini
Nadine Pellegrini
William D. Weinreb
Aloke Chakravarty
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, Nadine Pellegrini, Assistant U.S. Attorney, certify that I
served a PDF version of this document upon counsel of record for
the defendant on February 26, 2014 by electronic mail.

/s/Nadine Pellegrini
Nadine Pellegrini
Assistant United States Attorney