IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DZHOKHAR TSARNAEV | No. 13-CR-10200-GAO |

## **MOTION TO DISMISS SURPLUS COUNTS OF THE INDICTMENT**

Defendant, Dzhokhar Tsarnaev, by and through counsel, moves to dismiss surplus counts of the indictment that charge single acts of violence in multiple ways, in violation of the Double Jeopardy Clause of the U.S. Constitution.[1] The government has charged four murders in 18 separate counts that carry the death penalty. Such proliferation of multiple capital charges arising from each alleged act appears designed to put a thumb on the scales of justice in favor of the death penalty. The Court is not required to countenance such tactics and the unfair prejudice that flows from them. Rather, the Court should require the government to elect a theory of prosecution and to dismiss inappropriate surplus counts.

---

[1] Counsel plan to address Eighth Amendment challenges, the "Notice of Special Findings" by the Grand Jury, and issues related to those findings in the motions regarding death penalty-related issues, currently scheduled to be filed by May 7, 2014. A request for discovery related to the government's Notice of Intent to Seek the Death Penalty was sent to prosecutors on February 14, 2014.

## **The Indictment**

The government obtained a 30-count indictment against Dzhokhar Tsarnaev, which includes 18 separate capital counts alleging his participation in the deaths of Krystle Campbell, Lingzi Lu, Martin Richard, and Officer Sean Collier.  Each of the deaths is alleged repeatedly in virtually identical counts:

|  | § 2332a(a)(2) | § 2332f(a)(1) | § 844 (i) | § 924(c)/(j) |
|---|---|---|---|---|
| **Death of Krystle Campbell** | Violations of 18 U.S.C. 2332a(a)(2): Counts 1, 2 | Violations of 18 U.S.C. 2332f(a)(1): Counts 6, 7 | Violations of 18 U.S.C. 844: Counts 11, 12 | Violations of 18 U.S.C. 924(c)/(j): Counts 3, 8, 13 |
| **Death of Lingzi Lu** | Violations of 18 U.S.C. 2332a(a)(2): Counts 1, 4 | Violations of 18 U.S.C. 2332f(a)(1): Counts 6, 9 | Violations of 18 U.S.C. 844: Counts 11, 14 | Violations of 18 U.S.C. 924(c)/(j): Counts 5,10 15 |
| **Death of Martin Richard** | Violations of 18 U.S.C. 2332a(a)(2): Counts 1, 4 | Violations of 18 U.S.C. 2332f(a)(1): Counts 6, 9 | Violations of 18 U.S.C. 844: Counts 11, 14 | Violations of 18 U.S.C. 924(c)/(j): Counts 5,10, 15 |
| **Death of Sean Collier** | Violations of 18 U.S.C. 2332a(a)(2): Count 1 | Violations of 18 U.S.C. 2332f(a)(1): Count 6 | Violations of 18 U.S.C. 844: Count 11 | Violations of 18 U.S.C. 924(c)/(j): Count 16, 17, 18 |

Twelve additional non-capital counts allege Mr. Tsarnaev's participation in the carjacking of DM (count 19), the taking of money from DM's ATM account (count 21), and the "shootout" in Watertown during the early morning hours of April 19, 2013 (counts 23, 25, 27, 29); for each of these multiple counts, the indictment includes a violation of 18 U.S.C. § 924(c) (counts 20, 22, 24, 26, 28, 30).

The usual remedy for over-indictment through multiplicitous counts is vacating redundant convictions and resentencing.  *See Ball v. United States*, 470 U.S. 856, 864. (1985). However, notwithstanding *Ball*, courts also have recognized that over-charging risks unfair prejudice to the accused at trial that a post-conviction remedy cannot erase. *See, e.g., United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009).  Multiplicity

"'may prejudice a jury by suggesting that a defendant has committed not one but several crimes.'" *Id*. (quoting *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981)). Prolix "pleading may have some psychological effect upon a jury by overstating the level of the defendant's criminal activity." *United States v. Ketchum*, 320 F.2d 3, 7 (2d Cir. 1963). Unlike *Ball*, a case in which the Supreme Court recognized the prejudice flowing from concurrent convictions and sentences, in this case, a jury, not a judge, will be imposing a final sentence and weighing two possible sentences – life imprisonment without the possibility of release, or death. And, while a judge may be immune to the prejudice of multiple, concurrent counts, a capital sentencing jury may not be so immune.[2] Thus, for obvious reasons, the risks posed by such trial prejudice are especially acute in a death penalty prosecution.[3] Requiring prosecutors to elect among counts charged avoids these problems. *See Polizzi*, 257 F.R.D. at 36-37.

---

[2] *See, e.g.* Theodore Eisenberg and Martin T. Wells, *Deadly Confusion: Juror Instructions in Capital Cases,* 79 CORNELL L. REV. 1 (1992) (There is a "presumption of death." *Id.* at 12. "[Our] data suggest that the sentencing phase of a capital trial commences with a substantial bias in favor of death. This is not in and of itself an indictment of the death trial phase. But the tilt towards death suggests that a defendant with a confused jury may receive the death sentence by default, without having a chance to benefit from the legal standards deigned to give him a chance for life." *Id.* at 38, n.12.)

[3] That "death is different" almost goes without saying. *See Woodson v. North Carolina*, 428 U.S. 280, 305 (1986) ("… the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.")

- 3 -

Unnecessary counts should be kept from a jury because "'[o]nce such a message of [repeated crimes] is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue,' and [c]ompromise verdicts or assumptions that, with so many charges pending the defendant must be guilty on at least some of them, pose significant threats to the proper functioning of the jury system.'" *Id*. (quoting *United States v. Clarridge*, 811 F. Supp. 697, 702-07 (D.D.C. 1992)); *cf. Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1988) (one form of prejudice from misjoinder of counts "may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one").

### The §§ 924(c) & (j) Counts

**Counts 3, 5, 8 (death of Krystle Campbell), 10, 13, 15 (deaths of Lingzi Lu and Martin Richard), 16-18 (death of Officer Sean Collier)**. The indictment alleges three violations of 18 U.S.C. §§ 924(c) & (j) for each of the destructive devices/bombs that exploded on April 15, 2013 on Boylston Street during the Boston Marathon and it alleges three §§ 924(c) and (j) counts for the murder of Officer Sean Collier.

All of the § 924 violations are tied to one of two components of each of three sets of underlying crimes of violence. The first set of underlying crimes is conspiracy to use a weapon of mass destruction resulting in death (18 U.S.C. § 2332a(a)(2)) and use of a weapon of mass destruction resulting in death (18 U.S.C. § 2332a(a)(2)). The second set is conspiracy to bomb a place of public use resulting in death (18 U.S.C. § 2332f(a)(1) & (c)) and bombing of a place of public use resulting in death (18 U.S.C. § 2332f(a)(1) &

(c)).  The third set is conspiracy to maliciously destroy property resulting in personal injury and death (18 U.S.C. § 844(i) & (n)) and malicious destruction of property resulting in personal injury and death (18 U.S.C. § 844(i)). The three § 924 violations tied to each destructive device are based on the second component of each set; the three § 924 violations tied to the murder of Officer Sean Collier are based on the first member of each set.   The three sets of predicates, however, are based upon the same, simultaneous conduct.

At most, each destructive device (bomb) at the Marathon should support only one § 924 count; and the murder of Sean Collier should not be the basis of more than one § 924 count.  *See United States v. Cureton*, 739 F.3d 1032, 1044 (7th Cir. 2014) (section 924(c)(1) authorizes only one conviction for a single use of a single firearm during the commission of multiple predicate offenses based on same conduct); *United States v. Walters*, 351 F.3d 159 (5th Cir. 2003) (same);  *United States v. Finley*, 245 F.3d 199, 207-208) (2nd Cir. 2001) (finding no Congressional intent to impose multiple, consecutive sentences under § 924(c) for guns possessed in furtherance of two simultaneous drug crimes); *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998); *but see United States v. Luskin*, 926 F.2d 372, 277 (4th Cir. 1991) ("[a]s long as the underlying crimes are not identical under the *Blockburger* analysis, then consecutive section 924(c) sentences are permissible"); *United States v. Rentz*, 735 F.3d 1245, 1252,

1254 (10th Cir. 2013) (same, but noting that other circuits have interpreted § 924(c) to permit only one firearm charge when a defendant has used a firearm once).[4]

The Government's decision to charge both §§ 924(c) and 924(j) in these counts does not authorize multiple counts.  It is an offense under 18 U.S.C. § 924(j) to "cause the death of a person through the use of a firearm" while "in the course of a violation of" § 924(c).  *United States v. Curtis*, 324 F.3d 510 (7th Cir. 2003) upheld two § 924(j) convictions where the two killings underlying the counts had the same predicate §924(c) violations.  As *Cureton* points out, however, the *Curtis* defendants caused the death of two different persons on two different days with two separate uses of a firearm.  *Cureton*, 739 F.3d at 1042-43.  Here, the Government has charged multiple § 924 counts for each individual use of a bomb or firearm.

The government should be required to elect whether to proceed on Counts 3/5, or 8/10 or 13/15 with regard to the Marathon bombings, and either count 16, 17, or 18 with regard to the death of Sean Collier, with dismissal of the remaining six §924(c)/(j) counts.  In other words, each bombing and the shooting of Collier should correspond to only one count charged under § 924(c) and (j).

---

[4] It appears there is a circuit conflict, although the test and analysis may well depend on the underlying or predicate offenses at issue.  Regardless, the defense submits that the *Cureton* analysis is the correct interpretation of § 924(c) and is faithful to the purpose of that statute.  See 739 F.3d at 1044-1045.

**Counts 24, 26, 28, 30.**  A similar analysis requires dismissal of three of the four non-capital § 924 charges contained in Counts 24, 26, 28 and 30 – each of which charges use, carrying, and possession of a firearm and bomb, during and in relation to or in furtherance of, the underlying crime of using a weapon of mass destruction.  *See United States v. Pena-Lora,* 225 F.3d 17, 32 (1st Cir. 2000) (imposition of multiple consecutive sentences under § 924(c) for using multiple weapons during a single underlying act of hostage-taking would impinge upon fundamental double jeopardy principles); *United States v. Johnson*, 25 F.3d 1335, 1338 (6th Cir. 1994), *rev'd on other grounds,* 529 U.S. 53 (2000) (possession of one or more firearms in conjunction with predicate offenses involving simultaneous possession of different controlled substances should constitute only one offense under § 924(c)(1)).

**Counts 3, 5, 8, 10, 13, 15, 16-18, 20, 22, 24, 26, 28, 30.**  All of the § 924(c) counts also charge both use and carrying/during and in relation to, and possession/in furtherance of – which in essence either charges two distinct ways to violate § 924(c), or two separate violations of § 924(c).  *Compare United States v. Arreola*, 467 F.3d 1153, 1157-8 (9th Cir. 2006) ("using or carrying" and "possessing" are not separate offenses, but two ways in which a defendant could violate § 924(c)) *with United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) (§ 924(c) criminalizes two separate and distinct offenses – using or carrying/during and in relation to, or possession/in furtherance of).  The First Circuit recognizes as "colorable" the argument that the use/carry and possession clauses describe two distinct, culpable acts.  *See U.S. v. Ayala-Lopez*, 493 Fed. Appx. 120, 127 (1st Cir.

2012). However, and significantly to the § 924(j) counts (3, 5, 8, 10, 13 15, 16-18), *Ayala-Lopez* notes that § 924(j) requires proof of the *use* of a firearm, and that a jury must find death by "use" and "during and in relation to" as (c) defines those terms. *Id.* at 127. The government should be required to elect the theory of the § 924 prosecutions that survive the multiplicity and/or double jeopardy challenges.[5]

**Counts 2, 3, 4, 5.** In this case, § 924(c)/(j) counts 3 and 5 should also be considered lesser included offenses to the greater § 2332a(a)(2) violations alleged in Counts 2 and 4 and dismissed on that basis. *But see United States v. Khalil*, 214 F.3d 111 (2d Cir. 2000) (finding that because a § 2332a violation may be established without necessarily proving conduct that the defendant violated § 924(c); the latter section is not included in the former). Here, the "firearm" is the bomb alleged in each count, and the use of the same in each count).

Congress did not intend § 924(c) to apply to § 2332a offenses. First, § 924(c) was enacted and relevantly amended well before § 2332a. Originally part of the Gun Control Act of 1968, § 924(c) was amended in 1984 to include destructive devices. *See* Pub. L. 90-618, 82 Stat. 1213-2; Pub. L. 98-473, 98 Stat. 1976. Ten years later, § 2332a was enacted as part of the Violent Crime Control and Law Enforcement Act. Pub. L. 103-322. Second, § 2332a, as it is titled, was specifically aimed at the use of weapons of mass destruction. *See also* H.R. Conf. Rep. No. 102-405, 102d Cong., 1st Sess. at 46 (1991) (finding that "the use of weapons of mass destruction . . . gravely harm the national

---

[5] This argument also applies to non-capital counts 24, 26, 28 and 30.

security and foreign relations interests of the United States, seriously affect interstate and foreign commerce, and disturb the domestic tranquility of the United States.") It covered weapons Congress clearly believed were not covered by 18 U.S.C. § 921, providing a list of weapons of mass destruction in § 2332(c)(2) that incorporates destructive devices as defined in 18 U.S.C. § 921, but adding, *e.g.,* in § 2332(c)(2)(D), weapons designed to release radiation. It would be absurd to think that Congress intended that greater penalties should apply to destructive devices made of traditional materials than should be applied to, *e.g.,* release of radiation.

## The Bombing Counts: §§ 2332a, 2332f and 844

In addition to the § 924(c) & (j) overload, the government has also charged the deaths of Krystle Campbell, Lingzi Lu and Martin Richard in three sets of counts, alleging separate crimes of violence: 18 U.S.C. § 2332a(a)(2) (conspiracy and use of weapon of mass destruction), 18 U.S.C. § 2332f(a)(1) & (c) (conspiracy and bombing a place of public use), and 18 U.S.C. § 844(i) (malicious destruction of property). Each of the sets of substantive counts relies on the same general allegations set forth in the beginning paragraphs 1-10 of the indictment; and each of the conspiracy counts rely not only on paragraphs 1-10, but also Overt Acts 14-40, initially set forth in Count 1 (the first of the charged conspiracy counts). Essentially, in addition to the § 924(c)/(j) counts, the two Marathon bombs are each charged in six additional counts.[6]

---

[6] Bomb #1 is charged in counts 1, 2, 6, 7, 11, and 12; Bomb #2 is charged in counts 1, 4, 6, 9, 11 and 14.

Moreover, the three separate statutes under which these charges have been brought rest on the same factual elements, differing only with respect to their jurisdictional underpinnings.  The charges of using a weapon of mass destruction, 18 U.S.C. § 2332a(a)(2), allege that the defendant "used a weapon of mass destruction, namely a destructive device . . . against a person and property within the United States."   The charges of bombing a public place, 18 U.S.C. § 2332f, allege that the defendant "knowingly and unlawfully delivered, placed, discharged, and detonated an explosive and other lethal device . . . in, into, and against a place of public use (1) with the intent to cause death and serious bodily injury, and (2) with the intent to cause extensive destruction of such place, where such destruction results in and is likely to result in major economic loss."  The charges of malicious destruction of property, under 18 U.S.C. § 844(i), allege that the defendant "maliciously damaged and destroyed and attempted to damage and destroy, by means of fire and an explosive,  a building , vehicle, and other real and personal property used in interstate and foreign commerce."

As applied to the facts of this case, each of the statutes depends upon proof of: 1) use of an explosive or lethal or destructive device (all of which are essentially synonymous, and 2) against a person and property within the United States.  It is true that § 2332f requires that the explosive be detonated in a public place with the intent to cause death or serious injury or extensive destruction, but it is difficult to conjure a scenario where use of a weapon of mass destruction could occur either in a private place or without the intent to cause serious bodily injury or significant destruction.  The charges

under § 844(i) suffer from a similar defect, in that they allege the use of an explosive to damage and destroy real and personal property. Again, there is no possibility that one could violate § 2332 without violating the other two statutes. *But see United States v. Mann*, 701 F.3d 274, 285 (8th Cir. 2012) (holding that because each count requires proof of an element the other does not, the two counts are not multiplicious).

The main differences among the three statutes is their jurisdictional components. Both § 2332a and § 844(i) rely on the Commerce Clause, with the charges under § 2332a alleging that "such property was used in interstate and foreign commerce and in an activity that affects interstate and foreign commerce" and that the results of the offense affected interstate and foreign commerce" and the charges under § 844(i) alleging that the defendant damaged and destroyed property used in interstate and foreign commerce and in an activity affecting interstate and foreign commerce." Section 2332f, on the other hand, has a separate jurisdictional clause, set apart from the elements of the offense. Subsection (b) of § 2332f requires, in pertinent part, that the offense be "committed in an attempt to compel another state or the United States to do or abstain from doing any act" or that a victim be a national of another state.

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 294 U.S. 299, 304 (1932).

"The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes."  *Ball v. United States,* 470 U.S. 856, 861 (1985).  *Ball* held that a defendant could not be convicted of both possession and receipt of a firearm, concluding, "it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon."  *Ball*, 470 U.S. at 82 (emphasis in original).  Legislative history shows that § 2332f was intended to supplement, not duplicate already existing statutes, which included § 844(i) and § 2332a:

> I am sure everyone is aware that there are already State and Federal laws that criminalize terrorist bombings.  This legislation will supplement those laws and close any loopholes that an accused terrorist may try to exploit in a court of law.  Furthermore, the legislation covers biological, chemical, and radiological weapons, as well as conventional explosives.

*See* 147 *Congressional Record* H 10358, 10361 (Rep. Sensenbrenner).  The reference to closing loopholes indicates that § 2332f was intended to provide an alternative, not an additional, means of punishing bombings.

The same is true here, too, where proof of a bombing in a public place necessarily requires proof of use of a weapon of mass destruction which, in turn, necessarily requires proof of malicious destruction of property using an explosive. The fact that the different statutes require different jurisdictional "hooks" does not undermine the argument that the government should be required to elect the statutes under which it wishes to proceed. The government has essentially taken two bombing offenses, committed concurrently,

and multiplied them into twelve separate charges (if the charges under § 924 are included).

The government should be required to elect its theory of the bombings, and proceed on either §2332a, §2332f or §844(i), but not under each statute, given that each aims at the same harm and relies upon the same underlying facts.

## Conclusion

For the foregoing reasons, surplus counts of the indictment should be dismissed.

Respectfully submitted,

DZHOKHAR TSARNAEV

*/s/ Judy Clarke*
_____

Judy Clarke, Esq.
California Bar: 76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG

- 13 -

TIMOTHY_WATKINS@FD.ORG  
WILLIAM_FICK@FD.ORG

## **Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 28, 2014.

                                                          */s/ Judy Clarke*