UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13-CR-10200-GAO |
| v. | ) | |
| | ) | |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

## RESPONSE TO GOVERNMENT'S
## SUPPLEMENTAL OPPOSITION TO MOTION TO VACATE SAMs

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits this

response to the government's supplemental opposition ("opposition" or "Opp.") [D.E. 207] to his

motion to vacate the Special Administrative Measures ("SAMs").  In its opposition, the

government distorts the factual record and tears down "straw man" legal arguments that the

defense has not made.  The government's opposition also has unleashed a wave of unwarranted

and prejudicial public speculation[1] about a comment by Mr. Tsarnaev, supposedly "to his

detriment" [Opp. at 8], during a visit with one of his sisters.   The SAMs prohibit the defense

from refuting in public the government's claim with reference to the actual substance of the

statement.  The defense does not dispute that the SAMs, by administrative fiat, empower the

government, FBI, and BOP to do what they have been doing.  The defense "chooses" to comply

with the SAMs, to use the government's locution [Opp. at 10], because it must.  The problem

with this so-called "choice" is that the SAMs — which, as noted in prior filings, are based on the

flimsiest of factual foundations — threaten the integrity of defense information and attorney

work product, which the defense is ethically required and legally entitled to protect.  The SAMs

also interfere with the defense ability to develop mitigation evidence in a death penalty

---

[1] See, e.g., Feds say Tsarnaev's rant hurt his case, THE BOSTON HERALD, Mar. 1, 2014;
Tsarnaev allegedly made statement 'to his detriment' in visit with sister, THE BOSTON GLOBE,
Feb. 28, 2014.

prosecution.  Against that backdrop, the government's unwillingness to consider even a modest

accommodation such as the use of a "taint team" is mystifying.

## A.  FBI Monitoring of Family Visits.[2]

Contrary to the government's contention, the defense is not seeking "greater privileges

than would be available to inmates in the general population."  [Opp. at 5.]  FMC Devens

permits social contact visits for inmates in the general population and does not subject those

visits to one-on-one monitoring by law enforcement of every word exchanged.  Nor is the

defense seeking "to expand the attorney-client and work-product privilege impermissibly."

[Opp. at 5.]  The defense does not contend that communications between Mr. Tsarnaev and his

sisters are protected by the attorney-client privilege.  Rather, the defense has explained that in-

person FBI monitoring of meetings among Mr. Tsarnaev, the defense team, and his sisters

creates a chilled atmosphere that thwarts the observation of family dynamics and the eliciting of

reliable family history information necessary to develop the defense case in mitigation.

Government surveillance by a law enforcement agent who is part of the prosecution team of the

topics about which the defense team seeks to elicit information also invades defense work

product and exceeds any justification for the SAMs.

---

[2] While the defense acknowledges the Court's decision to unseal the defendant's partially-
redacted supplemental memorandum and the government's opposition, the motion to seal was
made in good faith based on real and ongoing concerns about the security of Mr. Tsarnaev's
sisters.  As the government points out [Opp. at 4], the fact that the SAMs theoretically permit
family visits was a matter of public record.  However, the fact that Mr. Tsarnaev's sisters
actually have visited him was not.  While the government now downplays the BOP admonition
to avoid publicity about the fact of a visit as merely "a comment in passing" [Opp. at 4], the
defense took it seriously and continues to be concerned that this now-public information will
provoke renewed intense and harassing attention on Mr. Tsarnaev's sisters and could also result
in their being followed as they travel to or from a future visit, even if the date is not publicly
known in advance.

The supposed comment by Mr. Tsarnaev "to his detriment" during a visit with one of his sisters is a red herring.  Indeed, the government's focus on this comment highlights the unfair prejudice that FBI case agent monitoring of family visits creates.  On the advice of counsel, Mr. Tsarnaev has not made any statements concerning the substance of the charges against him during visits with his sisters.  Rather, on one occasion, as the SAMs restrictions were being explained to one of his sisters, in an effort to put her at ease, Mr. Tsarnaev made a comment that might be characterized as jocular or gently mocking toward the purported security concerns that underlie the SAMs prohibition on repeating his statements to others.  The government's expressed belief that this comment is "detrimental" to Mr. Tsaranaev's legal position is telling.  Apparently, if Mr. Tsarnaev appears to be lighthearted in interactions with his sisters, this will be spun into an argument that he should be executed because he lacks remorse and is insufficiently serious about his predicament or his actions.  On the other hand, if Mr. Tsarnaev appears impassive or subdued, those observations also likely will be characterized as evidence that Mr. Tsarnaev is cold-hearted and more deserving of the death penalty.  The bottom line is that the government should not be permitted to exploit the SAMs family visit monitoring provision, purportedly justified with the narrow aim of preventing incitement of violence, to closely monitor Mr. Tsarnaev's demeanor for the slightest detail that the case agent can later spin into character defects that militate in favor of execution.  If the true purpose of the SAMs is to ensure security, then there is no reason why a member of the Bureau of Prisons staff or a taint team member could not monitor Mr. Tsaraev's visits without conveying the information to the prosecution team.  The government's insistence on the presence of an agent who is working directly with the prosecution trial team suggests that the government is intent on securing yet

another litigation advantage in a case  in which its resources — both legal and financial —
already dwarf those of the defense.

Contrary to the government's claim [Opp. at 9], the defense has never suggested that any
of Mr. Tsarnaev's statements to his sisters should be suppressed under the Fourth Amendment.
Rather, the defense has argued that communications among Mr. Tsarnaev, his sisters, and the
defense team should not be subjected to in-person content monitoring by a case agent.  This is
necessary to enable uninhibited development of mitigation information and to protect defense
team information.

**B.  BOP Review of Materials.**

In its opposition, the government argues that "[p]ursuant to SAMs Section 2(h), BOP
reviews all materials that are brought into a BOP facility."  [Opp. at 9.] In fact, however, section
2(h) says no such thing.  *See* D.E.110-1 (original signed SAMs).  Section 2(h) places restrictions
on what the defense may review with Mr. Tsarnaev :  "documents related to his defense."  It does
not authorize BOP content screening of materials that the defense brings in for that purpose.
Further government representations in its opposition [Opp. at 9-10] concerning the purported
"cursory" nature of BOP screening, which, the government now inexplicably claims, "has never
been substantive" and is aimed merely "to determine whether or not the item contains any
viruses" are far from reassuring.  Indeed, those representations are inconsistent with what the
government actually "explained to counsel in September of 2013" [Opp. at 9], in writing, about
its position and the nature of BOP scrutiny:

> Section 2(h). BOP needs to review all materials brought into BOP facilities to
> ensure the safety and security of the institution, its inmates, and BOP personnel.
> The review is normally performed by an officer at the front desk. In the case of
> purported legal materials brought in by a member of an inmate's defense team,
> the review is only as extensive as needed to ensure that the materials are in fact
> legal materials. If the officer determines that the materials are in fact legal, he or

4

she does not normally report on the contents of the materials to higher level BOP officials (let alone to the prosecution team) except in extraordinary circumstances; the officers therefore effectively operate as a taint team.

If, however, an officer has a question about certain material, he or she may bring it to the attention of the supervising lieutenant, who may in turn seek guidance from other BOP personnel, including BOP attorneys. In addition, if BOP has reason to believe that members of the defense team have attempted to carry non-legal materials into the facility in violation of the SAM, they may bring that to the attention of the US Attorney's Office.

BOP notes that the family photographs the defense attempted to bring in to the defendant are not legal materials and therefore were prohibited from being delivered to him in this way by Section 2(h) of the SAM. Although family photos may seem harmless, the Section 2(h) prohibition on non-legal materials is a bright-line rule designed to be easy to enforce and obey. No non-legal materials should be carried in to the defendant by members of the defense team. Instead, they should be sent to the defendant through non-legal mail so that they can be screened by appropriate BOP personnel in the ordinary fashion.

D.E. 110-3 (Gov. Letter dated September 11, 2013). As noted in prior filings, the government subsequently acknowledged that the SAMs do not contain the phrase "legal materials" and conceded that counsel could properly review family photographs with Mr. Tsarnaev as part of preparing his defense. But the government's broader position, that substantive BOP screening is warranted to verify compliance with the SAMs, remains intact and highlights the problem in principle. The ultimate series of events last fall concerning family photographs, where the dispute was brought to the attention of line prosecutors on the case, confirm its practical effect.[3]

BOP personnel are not in a position to know whether a particular sheaf of papers or collection of computer files are part of the discovery material produced by the government in the case, much less to evaluate whether the materials are otherwise related to preparation of the

---

[3] Curiously, the government has reverted to use of the inapposite phrase "legal material" in its opposition: "BOP officials do not, and have not, shared their review of legal material with the prosecution team." [Opp. at 10.] The issue is not with BOP screening of some narrow class of "legal material," whatever that phrase may mean, but with BOP screening, without a guarantee that the information will not be shared with the prosecution team, of any and all materials that counsel need to review with Mr. Tsarnaev in connection with preparing his defense.

defense.  Members of the defense team have affirmed they will comply with the SAMs, albeit, as noted in prior filings, with real trepidation about the vagueness of their terms and concern about potentially dire consequences of later second-guessing by prosecutors.  To the extent questions or other issues continue to arise going forward with regard to materials counsel wish to review with the defendant, procedures must be put in place to ensure the integrity of defense work product.  Of course, the defense understands that the BOP must continue to screen facility visitors for "contraband" that might threaten the safety and order of the institution, but such review typically does not delve into the substantive content of defense materials.  To the extent more substantive screening takes place, the BOP should be barred from sharing information with government trial counsel about materials that the defense is reviewing with Mr. Tsarnaev.  A taint team should be employed to address any issues that cannot be resolved between the defense and BOP.

## Conclusion

For the forgoing reasons, as well as those set forth in prior filings, the Court should

vacate the SAMs in their entirety or, alternatively, order modifications designed to protect

defense information and to enable the defense to perform necessary mitigation investigation.

Respectfully submitted,

DZHOKHAR  TSARNAEV
by his attorneys

/s/  William Fick

Judy Clarke, Esq. (CA Bar #  76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

### **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 5, 2014.

/s/ William Fick
William Fick, Esq.