```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| **UNITED STATES OF AMERICA**    ) | |
| )  | |
| v.                              ) | Crim. No.13-10200-GAO |
| ) | |
| **DZHOKHAR A. TSARNAEV,**       ) | |
| Defendant            ) | |

## MOTION FOR PROTECTIVE ORDER PURSUANT TO
## FED.R.CRIM.P.16(d)(1)

The United States, by undersigned counsel, hereby moves for a protective order prohibiting the defendant, DZHOKHAR A. TSARNAEV, from personally reviewing autopsy photographs of victims in this case, except for those photos that are offered as exhibits at trial or sentencing.

To be clear, the government is not seeking to prevent Tsarnaev's attorneys from reviewing and copying any of the autopsy photos, which have been available for their inspection and review at the U.S. Attorney's Office, or from allowing Tsarnaev to review personally any photos that will actually be used against him at trial or sentencing. The government maintains, however, that Tsarnaev has no need to review personally the many photos that will not be used against him, and that allowing him to do so would violate the victims' rights to dignity and privacy and subject them to needless harm and suffering. Specifically, allowing photos of the mutilated

bodies of the victims to be viewed by the man accused of mutilating them would needlessly revictimize the family members in the same way that innocent children who are photographed pornographically are revictimized whenever those photos are seen by others. Here, as in other cases where a defendant has no need personally to review sensitive or classified evidence that will not be used against him, the Court has the power to fashion an appropriate order that will safeguard the defendant's rights without needlessly risking harm to others.

## I. Background

On February 12, 2014, the government provided copies of the autopsy reports for Krystle Marie Campbell, Lingzi Lu, Martin Richard and Sean Collier to defense counsel. In its cover letter to the defense, the government indicated that, due to the sensitive nature of the autopsy photographs, the government would not supply copies of the photographs to defense counsel but would make all photographs available for inspection and review at the offices of the United States Attorney.

On Thursday, February 13, 2014, government counsel spoke with a member of the defense team and reiterated its position that, in order to safeguard the dignity and privacy of the victims and protect their families from unnecessary grief, Tsarnaev should not be permitted to view the photographs, except those that would actually be used against him. The government

indicated that if defense counsel intended to allow Tsarnaev to view all the photographs without restriction, the government would continue to make them available for counsels' review but would decline to provide copies.  Defense counsel refused to accept any limitation on Tsarnaev's ability to view the autopsy photos and repeated their demand for copies of all of them.

## II. Statutory Framework

Under the Crime Victims' Rights Act, a crime victim has the right to be treated with fairness and with respect for the victim's dignity and privacy.  18 U.S.C. § 3771(a)(8).  Where a crime victim is deceased, "the legal guardians of the crime victim or the representative of the crime victim's estate [or] family members . . . may assume the crime victim's rights under this chapter . . . ."  18 U.S.C. § 3771(e).

Although Fed. R. Crim. P 16(a)(1)(E) and (F) permit a defendant to inspect and copy "the results or reports of any physical or mental examination" such as an autopsy, Fed. R. Crim. P. 16(d)(1) allows the court to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief," if "good cause" is shown.  A sufficient showing of good cause "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac*, Inc. 805 F.2d 1, 8, (1st Cir. 1986).  "The nature of the showing of particularity . . . depends upon the nature or type of

protective order at issue." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012).

The autopsy photos are extremely graphic. They show the victims, who are all badly mutilated, in various states of undress, including completely naked. Although the photos, which are a standard part of all autopsies, are necessary, allowing Tsarnaev the unrestricted right to review all of them is completely unnecessary. He does not need to review photos that will not be used against him in order to prepare his case or exercise any of his constitutional rights. To the extent any of the photos might prove helpful to his case, his attorneys are fully capable of identifying them and their potential uses.

It is well-settled that a court may deny a defendant access to information that will not be used against him so long as his attorneys are permitted to make full use of it. In *In re: Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 125 (2nd Cir.2008), for example, the court held it was not error to prohibit the defendant from personally viewing classified material so long as the material was made available to defense counsel. The Court noted that "production of materials to a party's attorney alone falls within the common meaning of 'discovery.'" Id. Similarly, in *United States v. Ahmed*, 2011 WL 4915005 (S.D.N.Y. 2011), the court held that prohibiting the defendant from reviewing classified materials

4

did not violate his Sixth Amendment rights because his attorneys were able to review them and make inquiries on the defendant's behalf. And in *United States v. Worman,* 2007 WL 2221425 (E.D. Pa. 2007), a child pornography case, the court held that the defendant did not need to view each and every image and video tape in the government's possession so long as he had access to those that would be used against him and his lawyers had access to the others.

Here, granting Tsarnaev an unlimited right to view the naked and mutilated corpses of the victims would needlessly invade the victims' privacy and expose their families to unnecessary anguish.  Just as each new viewing of a defamatory statement, or of an image of a naked child in pain or torment, causes new injury, *see, e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002), each unnecessary viewing of the autopsy photos is an avoidable harm.  The government will, of course, need to offer many of the autopsy photos (with appropriate privacy blocks) into evidence to meet its burden of proof, and Tsarnaev will have an opportunity to review those photos ahead of time; but Tsarnaev has no legitimate need to personally view *all* the autopsy photos of those he is accused of murdering -- certainly no need that outweighs the victims' rights to dignity and privacy and their families' right to an unmolested recovery.

5

Accordingly, the government seeks a protective order prohibiting the defense from allowing Tsarnaev personally to view any autopsy photos of the victims except those that are offered as exhibits at trial or sentencing.

                              Respectfully submitted,
                              CARMEN M. ORTIZ
                              United States Attorney
                              District of Massachusetts

By:  /s/Nadine Pellegrini
     Nadine Pellegrini
     William D. Weinreb
     Aloke Chakravarty
     Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I, Nadine Pellegrini, Assistant U.S. Attorney, certify that I served a PDF version of this document upon counsel of record for the defendant on March 17, 2014 by electronic mail.

                              /s/Nadine Pellegrini
                              Nadine Pellegrini
                              Assistant United States Attorney