UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 13-10200-GAO |
| | ) | |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION FOR NOTICE OF USE OF FISA OR OTHER SURVEILLANCE**

Defendant, Dzhokhar Tsarnaev, hereby moves that this Court order the government to provide notice of whether:

1) it intends to use as evidence against him information that was obtained through the use of surreptitious surveillance or searches, including but not limited to surveillance conducted under the Foreign Intelligent Surveillance Act ("FISA") or the FISA Amendments Act ("FAA"), including the collection and examination of telephone and computer records pursuant to Sections 215 and 702 of the FAA, or was derived from such evidence, see 50 U.S.C. §§ 1806(c), 1825(d); Local Rule 116.1(c)(1)(B)[1] and 116.1(c)(1)(C)[2]; 18 U.S.C. § 3504; or

---

[1] Local Rule 116.1(c)(1)(B) requires the government to provide the defendant, within 28 days of arraignment, with a "copy of any search warrant (with supporting application, affidavit, and return) and a written description of any consent search or warrantless search (including an inventory of items seized) . . . (i) that resulted in the seizure of evidence or led to the discovery of evidence that the government intends to use in its case-in-chief[.]"

[2] Local Rule 116.1(c)(1)(C) requires the government to provide the defendant, within 28 days of arraignment, with a written description of any interception of wire, oral, or electronic communications as defined in 18 U.S.C. § 2510, relating to the charges in the

1

2)  it has within its possession, custody, or control information collected under FISA, FAA, the auspices of national security programs, or is otherwise classified[3] that is relevant and helpful to the defense,  see United States v. Amawi, 695 F.3d 457 (6th Cir. 2012) (quoting United States v. Yunis, 867 F.2d 617 (D.C. Cir. 1989), and collecting cases).

**A.  Background**

Defense counsel has repeatedly sought this information from the government.  On September 23, 2013, counsel requested the disclosure of any intercepted communications involving Mr. Tsarnaev or his immediate family.  The government responded, in relevant part: "To the extent such information exists, the government will follow all legal requirements respecting its production."  Letter from William Weinreb, dated September 30, 2013.

On December 9, 2013, defense counsel again wrote to the government, this time requesting

> notice and production of any evidence that the government has in connection with this case or the Tsarnaev family that was obtained through or derived from any surveillance and searches, other than what has been disclosed to date.  This includes searches and surveillance conducted pursuant to FISA authorization and

---

indictment in which the defendant was intercepted and a statement whether the government intends to use any such communications as evidence in its case-in-chief[.]"

[3] This includes information gained or derived from surveillance and data collection conducted pursuant to both the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 et seq. and the FISA Amendments Act, 50 U.S.C. § 188a, also referred to as "Title VII."  In addition, the government has claimed authority to "conduct FISA-exempt human and technical surveillance programs that are governed by Executive Order 12333."  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1149 (2013).

searches and surveillance that were not authorized by any court or entity, including but not limited to those conducted by any national security agencies, such as the CIA, NSA, and foreign government agencies.

The government did not respond to this request until February 7, when it wrote, "Unless this request is narrowed appropriately, we believe it has no basis in law and therefore decline to respond to it."

Defense counsel then renewed its request, asking only for notice of whether any evidence was derived from such surveillance.  Letter from Judy Clarke, dated February 28, 2014.  On March 14, the government wrote in response, "We are aware of the legal requirements for the use of FISA-derived evidence and will abide by them."

**B.  Notice under FISA and FAA**

Section 1806(c) of Title 50 of the U.S. Code, which codifies FISA, provides:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this title [50 USCS §§ 1801 et seq.], the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

These procedures also apply to searches under FISA, 50 U.S.C. § 1825(d), and information gathered under the FAA.  50 U.S.C. § 1881e.

An "aggrieved person" is defined in 50 U.S.C. § 1801(k) as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."  A separate provision relating to

3

physical searches defines an "aggrieved person" as "a person whose premises, property, information, or material is the target of physical search or any other person whose premises, property, information, or material was subject to physical search."  50 U.S.C. § 1821.  While it is unlikely that Dzhokhar Tsarnaev was the direct target of surveillance or searches, a report by the House Homeland Security Committee released on March 26 suggests that government agents monitored Tamerlan and his communications during 2011 and perhaps 2012.  According to the report, the FBI Joint Terrorism Task Force in Boston conducted a threat assessment of Tamerlan in response to a 2011 alert from the Russian government.  *See* Report, found at http://homeland.house.gov/sites/homeland.house.gov/files/documents/Boston-Bombings-Report.pdf at 11.  This threat assessment included a check of "U.S. government databases and other information to look for such things as derogatory telephone communications, possible use of online sites associated with the promotion of radical activity, associations with other persons of interest, travel history and plans, and education history."  Id. at 12.  The report also states that, according to FBI officials in Moscow, "electronic communication" between Tamerlan and a jihadist named William Plotnikov "may have been collected."  Id. at 16.  Interception of communications by Dzhokhar in the course of surveillance of Tamerlan would make Dzhokhar an "aggrieved person" within the meaning of the statute, just as a search of property or premises the brothers shared would likewise earn him that status.

    Moreover, in a recent change in policy, the Department of Justice  has recognized a broader obligation to provide notice of its intent to use evidence derived from

surveillance pursuant to the FAA, 50 U.S.C. § 1881a et seq. ("Section 7").  This change in position first came to light in the wake of allegations that, during oral argument in Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1149 (2013), the Solicitor General had unknowingly provided misleading information to the Supreme Court about the government's policy regarding notice. *See* "Justice Dept. Defends its Conduct on Evidence," New York Times (February 14, 2014), attached as Exhibit A.

Since then, the government has provided notice of FISA-derived evidence to federal defendants in Colorado, Chicago, and Oregon.  Three U.S. Senators have commended the Justice Department for "acknowledging for the first time the use of FAA-derived evidence in a criminal case."  See Letter dated November 29, 2013, attached as Exhibit B.  In the letter, the Senators described this as "an important step, since it will finally provide the courts with the opportunity to adjudicate the constitutionality of the FISA Amendments Act, which the ruling in Clapper had appeared to foreclose." Id.

In light of these recent developments, the government's responses to undersigned counsel's repeated requests for notice have been puzzlingly opaque.  After first rejecting the request for notice and disclosure of such evidence as overly broad, the government responded to a renewed request for notice only by stating, "We are aware of the legal requirements for the use of FISA-derived evidence and will abide by them."  Letter from Aloke Chakravarty, dated March 14, 2014.  This, of course, begs the question of when it will provide the required notice, if such notice is due.

5

**C. Disclosure of "Relevant and Helpful" Information under CIPA**

The Classified Information and Procedures Act ("CIPA") provides in pertinent part:

> (a) Motion for hearing.
> Within the time specified by the court for the filing of a motion under this section, the United States may request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding.
>
> (b) Notice.
> (1) Before any hearing is conducted pursuant to a request by the United States under subsection (a), the United States shall provide the defendant with notice of the classified information that is at issue. Such notice shall identify the specific classified information at issue whenever that information previously has been made available to the defendant by the United States. When the United States has not previously made the information available to the defendant in connection with the case, the information may be described by generic category, in such form as the court may approve, rather than by identification of the specific information of concern to the United States.

18 U.S.C. App. § 6.

The government's obligations under CIPA are broader than those imposed by Brady v. Maryland, 373 U.S. 83 (1963), and Fed.R.Crim.P. 16. As stated by the Sixth Circuit in Amawi:

> The "favorable" materiality standard of Brady is much more difficult to satisfy than the "relevant and helpful" standard of Yunis . All Brady evidence that is "favorable" would be "relevant and helpful" under Yunis, but not all evidence that is "relevant and helpful" would be favorable. "To be helpful or material to the defense, evidence *need not rise to the level that would trigger the Government's obligation under Brady v. Maryland*." United States v. Aref, 533 F.3d 72, 80 (2nd Cir. 2008) (emphasis added).

Amawi, 695 F.3d at 471.

The government's response to defense requests for information regarding surveillance of Tsarnaev family members does not acknowledge this crucial difference. Instead, the government has asserted, "To the extent any information responsive to this request exists, it is nonexculpatory, duplicative of other information already disclosed, and/or unlikely to lead to the discovery of admissible evidence."  Govt. Opp. to M. Compel, DE 129, at 19.   The Court's discovery order, DE 151, dated November 27, 2013, did not address this specific request or acknowledge the lower threshold applicable to CIPA disclosures.

The "fundamental purpose" of CIPA "is to protect[ ]and [] restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005) (quoting United States v. O'Hara, 301 F.3d 563, 569 (7th Cir. 2002)).  In United States v. Moussaoui, 382 F.3d 453, 477 (4th Cir. 2004), the court stated that CIPA "adequately conveys the fundamental purpose of a substitution to place the defendant, as nearly as possible, in the position he would be in if the classified information . . . were available to him."  As stated in another high-profile case involving the unlawful disclosure of the identity of a CIA agent, the court stated that when addressing a discovery request pursuant to CIPA,

> the Court should not take into account or balance the government's national security interest in protecting the classified information from disclosure.  Rather, the statute makes clear that the Court's only inquiry is whether the proposed substitutions provide the defendant substantially the same ability to present his defense.

United States v. Libby, 467 F. Supp. 2d 20, 25 (D.D.C. 2006) (citing 18 U.S.C. app. III, § 6(c)); see also United States v. Fernandez, 913 F.2d 148, 162 (4th Cir. 1990) (affirming

7

dismissal of indictment based on government's refusal to disclose information necessary to defense).

Here, it is likely that evidence in the government's possession meets the "helpful and relevant" standard. Any surveillance, evidence, or interviews showing that Tamerlan's pursuit of jihad predated Dzhokhar's would tend to support the theory that Tamerlan was the main instigator of the tragic events that followed.

The pre-trial inquiry with respect to classified as well as unclassified documents is whether there is an indication that the evidence would "'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" United States v. George, 786 F. Supp. 11, 13 (D.D.C. 1991) (analyzing defendant's claim of materiality of classified information under Fed. R. Crim. P. 16(a)(1)(C)) (quoting United States v. Felt, 491 F.Supp. 179, 186 (D.D.C 1979)).

Both Ms. Clarke and Mr. Bruck have previously received security clearances that allowed them access to classified information. Although these have expired, they presumably could be renewed. In a recent case, a district court judge for the Northern District of Illinois ordered the government to disclose classified FISA application material to defense counsel upon proof that he had a valid classified information clearance. See United States v. Daoud, Criminal No. 12-00723, DE 92 (January 29, 2014), attached as Exhibit C, at 4-5. The existence of a protective order also minimizes security concerns. Id. at 4.

DZHOKHAR  TSARNAEV
by his attorneys

/s/  Miriam Conrad

Judy Clarke, Esq. (CA Bar #  76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET


David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
        51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG


## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 28, 2014.

/s/ Miriam Conrad

9