# United States Senate
WASHINGTON, DC 20510

November 20, 2013

The Honorable Donald Verrilli Jr.
Solicitor General
950 Pennsylvania Ave NW
Washington, DC 20530-0001

Dear Solicitor General Verrilli:

We write to bring to your attention a matter regarding *Clapper v. Amnesty*, a U.S. Supreme Court case decided earlier this year. On February 26, 2013, in a 5-4 decision, the U.S. Supreme Court determined that respondents in the case of *Clapper v. Amnesty* did not have standing to challenge the FISA Amendments Act. We are concerned that the Court's decision was not informed by a complete understanding of how the FISA Amendments Act (FAA) has been interpreted and implemented. Official records suggest that the Court was given misleading information that appears to have informed the majority's decision, and that some of these misleading statements have not yet been acknowledged or corrected.

We are pleased that the Justice Department has now publicly clarified that going forward, its policy will be to inform defendants when evidence against them has been acquired or derived from surveillance conducted under Section 702 of the FISA Amendments Act (FAA). In *Clapper v. Amnesty*, the government represented to the Court that it provides notice to a defendant of evidence obtained or derived under the FAA, a statement that was then incorporated into the majority opinion in the case. It has become clear, however, that this was not actually the policy practiced in the Justice Department and that the government misrepresented its policy and practice to the Court. Last month, by acknowledging for the first time the use of FAA-derived evidence in a criminal case, the government appears to have at least begun to realign its policy with its representations in *Clapper*. This is an important step, since it will finally provide the courts with the opportunity to adjudicate the constitutionality of the FISA Amendments Act, which the ruling in *Clapper* had appeared to foreclose.

Still, we are concerned that the Justice Department has not gone far enough to correct incomplete or misleading representations that we believe were made by the government to the Supreme Court in *Clapper v. Amnesty*.

In *Clapper v. Amnesty*, the majority opinion characterizes as "highly speculative" the plaintiffs' fear that "the Government will decide to target the communications of non-US persons with whom they communicate," and states that the "respondents' theory necessarily rests on their assertion that the Government will target other individuals – namely their foreign contacts." These and other statements in the opinion indicate the Court's view that the only way the plaintiffs' communications could be intercepted under the FAA is if those communications are to or from a foreign intelligence target.

Yet with the disclosure and declassification in recent months of relevant documents regarding Section 702, the role of 'about' collection under the FAA is now public, although not widely

understood. In addition to authorizing the collection of communications to and from foreign, overseas targets, the FISA Amendments Act also has been secretly interpreted to authorize the collection of communications that are merely *about* a targeted overseas foreigner.

This form of collection allows the government – through the "upstream" collection under Section 702 – to collect any communication whose content includes an identifier, such as an email address, associated with an overseas foreigner who may be a foreign intelligence target. But according to the FISA Court's October 2011 opinion, the 'about' collection likely results in the acquisition of "tens of thousands" of wholly domestic communications every year. In other words, tens of thousands of emails between law-abiding Americans are likely being collected – even though these Americans are not actually communicating directly with a foreign intelligence or terrorism target. As FAA collection was intended to target persons "reasonably believed to be located outside the United States," and targeting procedures were intended to "prevent the intentional acquisition of any communication as to which the sender and all intended recipients are known at the time of acquisition to be located in the United States," the FISA Court in its October 2011 opinion called this expanded FAA collection a circumvention of the "spirit" of the law and a "cause of concern for the Court."

In *Clapper v. Amnesty*, the government's argument that respondents could not demonstrate that their communications had been collected under the FISA Amendments Act – in part, because they could not prove that their contacts were targets under the FISA Amendments Act – was incorporated into the Supreme Court's majority opinion determining that the respondents did not have standing.

In the context of *Clapper v. Amnesty*, the significance of the 'about' collection under Section 702 is that in order to have been a subject of FISA Amendments Act collection, the respondents would <u>not</u> necessarily have had to have communicated with an FAA target. They could also have had their communications collected if they sent international or even wholly domestic emails in which the content included an FAA target's email address.

We are not claiming to know whether knowledge of the 'about' collection would have changed the majority's decision in this case. But we believe that the existence of the 'about' collection clearly increases the likelihood that the respondents' communications would have been collected under the FISA Amendments Act, and thus we are concerned that this collection was not contemplated in the government's arguments or the Court's opinion. In fact, the government's statements and oral arguments were misleading in that they suggested that Section 702 collection only involves communications to and from particular targets.

We would appreciate answers to the following questions:
- Was the fact that the communications of Americans might also be collected under the FISA Amendments Act if they are communicating *about* an FAA target conveyed to the Supreme Court during consideration of *Clapper v. Amnesty*? If not, why not?
- Was the FISA Court's October 2011 opinion made available to the Supreme Court during consideration of this case? If not, why not?

- Do you stand by the statements and oral arguments the government made to the Court in *Clapper v. Amnesty*, including those concerning the provision of notice to criminal defendants? If so, please explain why.
- If not, can you please provide or describe each statement and oral argument that you no longer stand by and explain how you intend to correct the record with regard to each of those representations made to the Court in *Clapper v. Amnesty*?

We believe that a formal notification to the Supreme Court of the government's misrepresentations in the case—both relating to its notice policy and relating to its practice of 'about' collection under Section 702 of the FISA Amendments Act—would be an important step in correcting the public record and would be in the interests of the public as well as of the Administration and the Supreme Court.

We look forward to your reply.

Warm Regards

Mark Udall
U.S. Senator

Ron Wyden
U.S. Senator

Martin Heinrich
U.S. Senator