UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION TO COMPEL COMPLIANCE WITH**
**AUTOMATIC DISCOVERY OBLIGATIONS**

Federal Rule of Criminal Procedure 16(a)(1)(A)-(F) requires the government to disclose certain specified items that are necessary for the defense to prepare for trial. The Local Rules for the District of Massachusetts recognize that meaningful preparation requires not only that the specified items be disclosed, but that they be fully disclosed at the earliest opportunity. Loc. R. 116.1(c)(1)(A). In this case, the government's adherence to both the letter and the principles of Rule 16 and Loc. R. 116.1 has been lacking. For the reasons that follow, defendant requests that the Court order the government to immediately comply with its automatic discovery obligations by producing the documents and tangible items the defense has requested and to timely produce all reports of examinations and tests.

**A. RULE 16 AND THE AUTOMATIC DISCOVERY PROVISIONS OF THE LOCAL RULES**

Federal Rule 16 reflects its drafters' view that broad discovery contributes to the fair and efficient administration of criminal justice by providing a defendant with enough information to, <u>inter alia</u>, minimize the undesirable effect of surprise at the trial and otherwise contribute to an accurate determination of guilt or innocence. Fed. R. Crim. P.

16 advisory committee's note to 1975 amendment. The Rule provides for discovery to the defense of specific categories of evidentiary material, including, inter alia, books, papers, documents, photographs, data and tangible objects, as well as results or reports of physical examinations, scientific tests, or experiments. Fed. R. Crim. P. 16(a)(1)(E) & (F). Such items must be produced if: (1) the requested evidence is material to preparing the defense, (2) the government intends to use the item in its case-in-chief at trial, or (3) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Materiality is not limited to favorable or exculpatory evidence. Rather, it encompasses evidence that is helpful to the preparation of a defense by permitting the accused to conduct an investigation to attempt to discredit evidence the government may present at trial, or by not presenting a defense which is undercut by such evidence. United States v. Marshall, 132 F.3d 63, 67-68 (D.C. Cir. 1998). See also United States v. Armstrong, 517 U.S. 456, 462 (1996) (explaining that Rule 16's phrase "material to the preparation of the defendant's defense" means "the defendant's response to the Government's case in chief.").

The District of Massachusetts Local Rules echo and expand upon the government's obligations to disclose core Rule 16 evidence under the so-called "automatic discovery" rubric. According to the Judges Wolf, Woodlock, and Bowler, the Judicial Members of the Committee to Recommend Reforms of the Local Rules Concerning Criminal Cases, the materiality standard

> is not a heavy burden, rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering

>admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.

REPORT OF THE JUDICIAL MEMBERS OF THE COMMITTEE ESTABLISHED TO REVIEW AND RECOMMEND REVISIONS OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS CONCERNING CRIMINAL CASES (October 28, 1998) ("Local Rules Committee Report") at 19, quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993).  Moreover, the District of Massachusetts Local Rules require disclosure of this core evidence within 28 days of arraignment.  Loc. Rule 116.1(c).  Implicit in the Local Rules' inclusion of Rule 16(a)(1)(E) & (F) in the discovery that should be immediately disclosed is the recognition that such early disclosure promotes fairness to the defendant in preparation for trial, and is feasible for the government, which will ordinarily have identified that evidence by the time the case is indicted.  See generally Local Rules Committee Report at 10 (discussing rationale for timing of discovery disclosures).

While the government has provided substantial discovery to date, it has by no means complied with all of its discovery obligations.  Notwithstanding its repeated insistence to the defendant and the Court that automatic discovery is complete, material and indeed crucial disclosures have yet to be made eight months after the defendant's arraignment, and just seven months before trial.  The government's failure threatens the defendant's ability to adequately prepare for trial, which is precisely the harm that Fed. R. Crim. P. 16 and the Local Rules were designed to prevent.

**B. SPECIFIC ITEMS AT ISSUE**

   1.     Documents and Tangible Items

In its September 3, 2013 automatic discovery letter and accompanying disclosure, the government notified the defense that it possessed numerous records that were available for review. It listed 95 organizations, agencies and other entities from which it had obtained records. A copy of the list is attached as Exhibit A to this Motion. By letter dated December 9, 2013, defense counsel requested, among other things, copies of the records contained in the list. On February 7, 2014, five months after the government promised to produce all records and nearly two months after defense counsel's specific requests, the government appeared to backtrack from its initial vow to make all the records available:

> The list of organizations beginning at DT-004169 includes organizations from which we received no records or records that are not discoverable under Rule16 or Brady. The enclosed disk contains the following records, which we have digitized where necessary and made searchable to the extent possible (DT-0017001 through DT-0030148). We will produce additional records shortly.

The disk produced by the government contained records from just 26 of the 95 entities initially identified.

Since then, the government has provided some quantity of additional records as promised, and appears poised to provide more. It has not, however, explained the basis for withholding documents from selected entities, documents which would appear to be subject to mandatory disclosure pursuant to Fed. R. Crim. P. 16(a)(1)(E). It has not, for example, suggested that the records will compromise any ongoing investigation. Nor has

it notified the defense that it is invoking the declination procedure set forth in Loc. R. 116.6.  Compounding the issue is the government's obfuscation over which records from which entities it is withholding.  Such deliberate vagueness forces the defense to engage in a guessing game that is at odds with the open and self-executing discovery contemplated by Rule 16 and the Local Rules.  The government should be ordered to produce copies of all records listed in Exhibit A, or else it should invoke the declination procedure set forth in Loc. R. 116.6, which puts the burden on the government to justify its non-compliance with Fed. R. Crim. P. 16(a)(1)(E).

    2.    <u>Reports of Investigations</u>

        a.  <u>The MIT Scene Investigation</u>

The government has charged the April 18, 2013 shooting of MIT Police Officer Sean Collier as an act committed in furtherance of the conspiracy count (Count 1).  The indictment also charges the shooting in three additional counts (Counts 16-17).   By letter dated February 18, 2014, defense counsel specifically requested, among other things, reports generated by MIT officers and personnel.  On March 4, 2014, the government responded that it had requested the additional incident reports related to the shooting of Officer Collier.  To date, however, no reports have been received.  The government should be ordered to produce the reports immediately.  Alternatively, given the impending trial date, the Court should require all investigation reports, including those related to the shooting of Officer Collier, to be disclosed to the defense by April 30, 2014.

b.  <u>Watertown Scenes</u>

Tsarnaev's participation in the April 19, 2013 shoot-out and his later capture in Watertown are identified as overt acts committed in furtherance of the conspiracy count (Count 1). Seven additional counts cite his alleged participation in the Watertown events. (Counts 23-30). Significantly, the government specifically alleges in the conspiracy count that in the course of escaping Tsarnaev caused MBTA Police Officer Richard Donohue to sustain serious bodily injury, Indictment ¶ 39, and assigns substantive liability for Donohue's shooting to Tsarnaev in Count 19.

Discovery provided thus far reveals that Dzhokhar Tsarnaev was unarmed when when attempting to escape and Tamerlan Tsarnaev was already incapacitated, having been mortally wounded. This discovery appears to confirm widespread media reports that Donohue was in fact injured by gunfire from a law enforcement officer, rather than as a result of any act by Dzhokhar Tsarnaev directed toward Donohue. Against this backdrop, defense counsel by letter dated February 18, 2014 made the following requests:

- a list/index of all law enforcement weapons fired during the encounter at Laurel and Dexter Streets and at the 61 Franklin Street vicinity and report of any testing done in regard to those weapons;

- report(s) of and reports of investigations into shots fired on or near Oliver Road between Dexter and Adams Sts.,Watertown;

- report(s) of any investigations conducted by the Middlesex District Attorney's Office (or any other law enforcement agency) into the shooting of MBTA Police Officer Richard Donahue;

- treatment/Medical Records of Richard Donahue in connection with/as a result of his shooting in Watertown; and

- reports documenting blood and urine trails and the use of dogs during the search for a suspect in the Spruce/Lincoln/Walnut/Franklin.

The government's response, as set forth in its letter of March 4, 2014, was equivocal and unsatisfactory. In summary, the government averred that:

- it was unaware of the existence of a list matching the weapons fired to law enforcement agents, but that it had not yet received all the investigative information;

- it would provide ballistics reports and a list of law enforcement weapons which had been test-fired;

- law enforcement had not created and did not intend to create reports matching law enforcement personnel to specific weapons and scenes where the weapons were used;

- "[t]o the extent that additional reports related to those weapons are generated, we do not consider those discoverable in this case;" and

- it did not have treatment or medical records for Officer Donahue.

The government declined to provide a date by which it would provide the ballistics reports and list of weapons test-fired, and it provided no explanation for its bald assertion that reports related to the weapons – all of which were discharged during the Watertown events, and one of which was the likely source of the bullet that injured Officer Donohue – were not discoverable despite the allegations in the indictment.

Equally confounding is the government's response to the request for treatment and medical records for Officer Donohue. The gravamen of the overt act and substantive count is the allegation of serious bodily injury sustained by Donohue; thus, his medical records appear indispensable to both the government's case and the defendant's response.

As to the defense requests regarding investigation results and reports, the government was circumspect, if not evasive, stating:

> To the extent that an investigation into the shooting of MBTA Police Officer Donahue is ongoing, there were no reports to provide you. Reports generated in that investigation, if they have not already been provided, will be assessed for production if and when we receive them.[1]

Absent from the government's response was any acknowledgement that (1) a use of force investigation by the local district attorney's office (in this case, Middlesex County District Attorney's Office) is standard operating procedure whenever, as here, death results from the use of deadly force; (2) a least one media outlet has reported that the Middlesex District Attorney's Office was or is conducting an investigation into the shooting of Richard Donahue, and (3) the government's September 3, 2013 automatic discovery letter confirmed that such an investigation was ongoing at that time.[2]

---

[1] As exemplified by its response to the defense's request here, the government's responses to defendant's requests for discovery often imply that it is at the mercy of independent law enforcement agencies in obtaining discovery. Here, where the investigation has been conducted by a joint task force comprising multiple law enforcement agencies and authorities, the government cannot avoid its discovery obligations by claiming that it does not have physical possession of some quanta of the requested discovery. Local Rule 116.8 ("The attorney for the government shall inform all federal, state, and local law enforcement agencies formally participating in the criminal investigation that resulted in the case of the discovery obligations set forth in this Local Rules and obtain any information subject to disclosure from each agency."); Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (in joint investigation, federal prosecutor had obligation to search for exculpatory evidence in Washington, D.C. Metropolitan Police Department's homicide and internal affairs file).

[2] Indeed, since the defendant's request was made and the government's equivocal response was provided, the Boston Globe has twice described ongoing government investigations in addition to that being conducted by the Middlesex District Attorney's Office. In a March 9, 2014 story titled "Unease lingers a year after manhunt," the Globe quoted Watertown Police Chief Edward Deveau stating that the Massachusetts Emergency Management Agency was conducting an investigation into the Boston Marathon Bombing and aftermath. In a March 14, 2014 story titled "Boston Marathon reviews still incomplete," the Globe reported that the FBI, the Department of Homeland Security, the Director of National Intelligence James R. Clapper, and a private governmental contractors working on behalf of the Commonwealth of Massachusetts are

Rule 16 requires production of the requested reports, records, and results. They will necessarily include or refer to the kinds of items subject to discovery as documents and objects under Rule 16(a)(1)(E), and are, will include, or will refer to reports of examinations and tests, as set forth in Rule 16(a)(1)(F). They should have been made available immediately as part of automatic discovery. With just seven months left until trial, the Court should order the government to produce the requested discovery immediately. To the extent the government has indicated that it is seeking or will seek the materials, the Court should require disclosure by April 30, 2014.

3.   Laboratory Testing

In its September 3, 2013 automatic disclosure letter, the government identified and provided 13 pages of reports of examinations and tests, under Fed. R. Crim. P. 16(a)(1)(F), with the proviso that "[a]dditional reports will be provided to you upon receipt by this office." Since then, the government has provided reports of laboratory examinations and tests – the heart of materials described in Fed. R. Crim. P. 16(a)(1)(F) - to the defense team at a glacial pace. What limited reports have been provided indicate that both the FBI laboratory in Quantico, Virginia and the Massachusetts State Police Forensic Services Group (MSP FSG) have conducted many tests and examinations involving DNA, blood, fingerprints, hair, ballistics, gunshot residue, explosives,

---

all investigating aspects of the Boston Marathon Bombing and the Watertown. While the reports from these additional investigations are not included in this motion because the defense has not yet made a letter request, it appears clear that the results and reports of these (or any governmental) investigations fall within the scope of Fed. R. Crim. P. 16(a)(1)(E) or (F) and should be disclosed by the government without resort to the call and response procedure set forth in the Local Rules.

chemicals, materials, and handwriting.  The government continues to indicate that it possesses or anticipates additional reports from the FBI laboratory and the MSP FSG, and that those reports will be produced to the defense "as they are completed."  A large portion of the as-yet undisclosed reports presumably relate to scientific and forensic analysis of the more than 1,200 items of evidence currently held by the FBI laboratory and the MSP FSG, which is investigating the Watertown events.  Meanwhile, more than half of the 16-month interval between the indictment and the scheduled trial date has already elapsed.

Complicating the disclosure of Rule 16(a)(1)(E) material, at least in regard to the limited reports thus far provided, is the government's decision to provide only redacted copies of many reports.  As an example, the government has conducted DNA tests on a number of questioned items, using DNA samples not only from Tamerlan and Dzhokhar Tsarnaev, but from a variety of other individuals, whose identities the government has chosen to hide from the defense.  In response to the defense team's request for unredacted copies, the government in a March 6, 2014 letter advised:

> [Redaction] was done to protect the privacy of the named individuals as well as the secrecy of ongoing investigations.  None of the redactions involve information that is favorable and material or material to the preparation of the defense.  Accordingly, we decline the request for unredacted copies of these pages.

The government's response is inadequate, illogical, and inconsistent with the Local Rules.  By invoking privacy and secrecy of ongoing investigations, the government seems to have forgotten that the defense team operates under a strict protective order.  The government need only mark the items as "sensitive" to ensure they are not

- 10 -

disseminated beyond the defense team, and so guarantee both privacy and the security of any ongoing investigations. If the government needs more – and it doesn't – it must resort to the declination procedure set forth in Loc. R. 116.6, which places the burden on the prosecution to demonstrate why such disclosure should not be made.

The failure to timely provide reports or to provide only redacted reports puts the defendant in an untenable position, given the short time to trial. The defense has been inspecting voluminous physical evidence, in addition to reviewing the massive discovery provided thus far. Much of the physical evidence, however, is necessarily entwined with the forensic and scientific evaluation that only the government can conduct. The reports that only the government can produce at this stage of the case should be provided under the government's discovery obligations. Visual examination of much of this physical evidence will be of limited value unless and until the government provides the reports and results of tests and examinations that give meaning to this evidence.

Once produced, of course, the reports and results of tests and examinations must be evaluated by the defense for accuracy, scientific validity, and admissibility at trial. See, e.g., United States v. Hines, 55 F.Supp.2d 62 (D.Mass., 1999) (discussing admissibility and scope of handwriting analysis in light of Daubert and Kumho Tire); United States v. Pearsall, 492 F.Supp.2d 432, 433-434 (D. Del. 2007) (Daubert hearing required to determine admissibility of gunshot residue opinion). Once that evaluation is completed, the defense must engage experts in the appropriate fields to prepare for Daubert challenges and cross-examination at trial. The initial task of engaging experts

and compiling the relevant materials is impossible without the disclosures mandated by Rule 16(a)(1)(E)-(F).

Sensing the ever-shortening time to trial and the dearth of reports of tests and examinations regarding various items of evidence, defense counsel requested supporting data and documentation by letter dated February 6, 2014, relating to tests and examinations---mainly surrounding DNA and ballistics analysis---that have been completed.  The requested documents, which one way or another will have to be disclosed in advance of trial pursuant to Fed. R. Crim. P. 16, included:

- copies of all books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items that were in any way relied upon by any testifying government expert witness;

- copies of the laboratory case file for any scientific test or experiment that is material to preparing the defense or that the government intends to use in its case-in-chief, including any "bench notes";

- all instrumental, electronic or other data generated in the course of any scientific test or experiment that is material to preparing the defense or that the government intends to use in its case-in-chief, including any data generated in the course of maintenance, quality control, or quality assurance testing of any equipment used in any testing, and any data relating to the use or attempted use of any control samples;

- all relevant laboratory protocols for any scientific test or experiment that is material to preparing the defense or that the government intends to use in its case-in-chief;

- the results of any relevant proficiency testing performed by any analyst who performed any scientific test or experiment that is material to preparing the defense or that the government intends to use in its case-in-chief; and

- unredacted copies of any audits, whether internal or external, conducted with respect to any laboratory that performed any scientific test or experiment that is material to preparing the defense or that the government intends to use in its casein

chief.

Categorizing the request as falling under the expert testimony provision of Rule 16, see Fed. R. Crim. P. 16(a)(1)(G), the government declined to disclose any of the information in its letter dated March 6, 2014, averring that the request is premature in the absence of an expert disclosure deadline.

The amount of discovery that may be the focus of expert testimony at trial, as well as the variety of scientific fields potentially involved, is staggering. While the defense stands ready to evaluate and litigate issues regarding evidence of examination and tests, the passage of time without the meaningful automatic discovery mandated by Fed. R. Crim. P. 16(a)(1)(E)-(F) makes it far less likely that the defense will be adequately prepared in time for the scheduled trial date. The problem is compounded when, at this increasingly late date, the government is unable or unwilling to provide the data forming the underlying bases and reasons for potential expert testimony---even for those areas of forensic analysis it is sure to use at trial. Where the FBI laboratory and MSP FSG personnel have conducted analyses and reached conclusions, there is no logical reason not to disclose the bases and reasons for those conclusions. Whether denominated as Rule 16(a)(1)(F) or Rule 16(a)(1)(G) evidence, the disclosures are necessary to permit the defense to evaluate and respond to the evidence. The Court should order the disclosures requested by the defense.

In sum, disclosure of all reports and results of the numerous laboratory examinations and tests that have been conducted and are being conducted are long

overdue.³  Given the short time remaining in which to prepare for what is likely to be complicated litigation over expert testimony, the government should be ordered to provide reports and results of tests and examinations immediately, with the back-up documentation to follow closely.  The Court should set April 30, 2014 as the date by which the requested results and reports must be disclosed to the defense and should set a hearing to consider sanctions and other remedies should the government be unwilling or unable to comply.  See United States v. Davis, 244 F.3d 666, 670-673 (8th Cir. 2001)(since continuance would have severely disrupted trial schedule, least severe sanction available was exclusion of DNA evidence not disclosed sufficiently in advance of trial to permit defendants to confront and evaluate evidence).  To the extent that the government is able to comply with Fed. R. Crim. P. 16(a)(1)(E) and identify potential subject fields for expert testimony at trial, the Court should set a date for disclosure of Fed. R. Crim. P. 16(a)(1)(G) information to closely follow.

4. Results of Examination of Digital Evidence

The indictment alleges that Dzhokhar Tsarnaev downloaded onto his computer extremist religious literature that advocated terrorist attacks and gave instructions for

---

³ To be sure, the defense has no reason to believe that the prosecution team is operating in bad faith in withholding or otherwise delaying the disclosure of reports and results mandated under Rule 16(a)(1)(F); presumably, the government awaits production of those reports itself and may well wish the responsible agencies would expedite production of reports.  It must be noted, however, that the government initially urged the Court to set a September 2014 trial date.  Where the Court largely adopted the government's suggested pretrial schedule, and set the trial only two months after the date that the government had proposed, any difficulty the government may be experiencing in complying with its mandatory discovery obligations is a problem of its own making.

carrying them out.  Count I, ¶¶ 15-18.[4]  This allegation apparently is based primarily on evidence gathered from computers and other data storage media that were used by Dzhokhar.  Understanding the evidentiary basis for the government's allegation is critical to preparing the defense at both the liability and penalty stages of trial.  Digital media can provide a unique window into the activities, communications, and states of mind of the individuals who used that media, all of which can assist a jury to assess culpability.

Presumably because it recognizes that the contents of multiple seized computers and other digital media are likely to provide highly detailed evidence of, inter alia, the planning and state of mind underlying the offenses, the government has carried out forensic analysis and testing of this digital evidence.  The Forensic Tool Kit (FTK) reports containing such forensic analysis are discoverable under Fed. R. Crim. P. 16(a)(1)(F) because they are  "results or reports of [a] scientific test or experiment" on items that the government intends to use in its case-in-chief at trial.

FTK (Forensic Toolkit), a software program used to image and analyze digital media, is the industry standard and is used by almost every federal agency.  See United States v. Perocier, 269 F.R.D. 103, 110 (D. P.R. 2009).   FTK allows an examiner to identify and "bookmark" files or data that are of evidentiary value for further review, analysis, and extraction.  For example, the examiner can search for and catalog images extracted from a computer into viewable formats.  See United States v. Mann, 592 F.3d 779, 781 (7th Cir. 2010).  The examiner can then generate an overview screen to see

---

[4]The indictment does not specify whether the government believes these materials came directly to Dzhokhar's computer from the Internet or rather were copied from other data storage media.

"how many images, videos, and documents are on the computer and whether there are encrypted documents or files that may be ignored (such as program files)."  Id.  Of particular importance here, FTK can also generate reports that may show when files were saved to a computer hard drive or other medium, when they were last modified, what devices were connected to each other when, what sorts of Internet searches were conducted, how long the user spent downloading files, and which search terms were used. In sum, the government's FTK reports are directly relevant to allegations in the indictment and may well have allowed the prosecution to develop a map of the respective digital activities of the older and younger Tsarnaev brothers and their associates over time.

By letter dated December 9, 2013, defense counsel requested, among other things, "the FTK and/or Encase reports on each computer and/or computer storage medium seized (i.e. external; hard drives and thumb drives)."  Two months later, on February 7, 2014, the government responded as follows:

> FTK and Encase reports are not reports of "a mental or physical condition," or of a "scientific test or experiment" within the meaning of Fed. R. Crim. P. 16. Accordingly, to the extent the information sought by this request exists, it is information that the government is not obligated to produce in discovery.

The government has suggested no reason why reports of forensic examinations of digital media do not qualify as "scientific tests or experiments."  Forensic examinations of digital media are performed by trained examiners using specialized software tools to identify files and information of evidentiary value. The hidden attributes of the digital files listed in the indictment — when they were first downloaded, whether they were

transferred from one computer to another, and under what circumstances — are not discernible by an untrained or unskilled observer, and the FTK reports sought by the defense are the only reports generated by the examiners who apply computer technology to bring these attributes into view. There is no categorical difference between such digital forensic evaluations and many others kinds of forensic evidence, such as fingerprint examinations, ballistics test, or chemical or DNA analyses, which are universally acknowledged as discoverable scientific tests under Rule 16. FTK reports should be treated no differently.

The government may contend that FTK reports are not discoverable because they are work product. Fed. R. Crim. P. 16(a)(2) excludes from discovery any government work product, that is, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." But as the Third Circuit explained in Government of the Virgin Islands v. Fahie, 419 F.3d 249 (3d Cir. 2005), Rule 16(a)(2)'s limitation on discovery protects material containing "mental impressions, conclusions, opinions or legal theories concerning litigation of an attorney or other representative of a party." Id. at 257 (quoting In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003)) (additional citation omitted). In Fahie, an ATF agent revealed on cross-examination that he had run firearms trace report three months before trial; the report revealed the name of the gun's registered owner and the fact that the gun had never been reported stolen. Fahie, 419 F.3d at 251. When defense counsel argued that the ATF trace report was exculpatory and had been improperly suppressed pursuant to Rule 16(a)(1)(F) and Brady

- 17 -

v. Maryland, the government responded that the report was not Brady material and was exempt from discovery as government work product. Id. The Third Circuit held that both Rule 16(a)(1)(F) and Brady had been violated by the government's nondisclosure of the document before trial. Id. at 257. After noting that the report did not contain mental impressions or litigation strategy of the prosecutor, the court also explained that the ATF report was "a computer-generated printout from a government database maintained for broader purposes than the prosecution of Fahie," and stressed that the report did not reveal any confidential information about the strategy of the prosecution. Id. Because FTK reports in this case likewise are simply computed-generated reports of forensic examinations that do not include or reveal the strategy of government lawyers or officers, they are not exempt from disclosure as government work product and must be disclosed under Rule 16.

To be sure, the government's FTK reports may disclose areas that may have been of particular interest during the course of a criminal investigation and preparation for trial. But that is true of most "scientific tests or experiments." Any law enforcement or prosecution decision to test a given item of evidence against samples or exemplars from one source rather than another has a tendency to reveal the thought processes of the person ordering the test. But if that was enough to immunize all such testing from disclosure as "work product," the exception would swallow the Rule.

Nor is the government excused from its Rule 16 discovery obligations by the fact that it has provided forensic image copies of underlying digital media, comprising terabytes of data. While the defense can try to "reinvent the wheel" by embarking on its

own examinations and tests using FTK, the defense lacks the time and resources to duplicate the efforts of law enforcement teams composed of dozens, if not hundreds, of examiners and agents on scores of digital items. Simply put, the government has performed examinations and tests on digital media resulting in the identification of evidence that the government intends to use at trial and that is otherwise discoverable. Failure to produce reports of the results would be akin to producing copies of latent fingerprints without the accompanying analysis or disclosing the fact of a search pursuant to warrant without producing the return listing items of evidentiary value that were identified and seized.[5]

## CONCLUSION

For the foregoing reasons, the defendant requests that the Court Order the government to immediately disclose the Fed. R. Crim. P. 16(a)(1)(E-G) evidence outlined above. To the extent the government is unable to immediately disclose all of the requested materials, the Court should set a deadline of April 30, 2014 for disclosure.

---

[5] Even if Rule 16(a)(1)(F) does not compel disclosure of the reports as "scientific tests or experiments" the reports have sufficient mitigating value to mandate their disclosure under Brady v. Maryland, and are material to the preparation of the defense under Rule 16(a)(1)(E). If, for example, the evidence supports an inference that it was Tamerlan who first obtained these materials and then provided them to his younger brother, it becomes more probable that Dzhokhar played a lesser role in conceiving and planning the bombing, and that his older brother was the dominant actor in this activity as in so many other aspects of their lives. See 18 U.S.C. § 3592(a)(3) (designating as a statutory mitigating factor that "[t]he defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge" (emphasis added)). The reasons why the FTK and similar reports and analyses of digital media constitute Brady material are discussed in greater detail in Defendant's Further Motion to Compel Favorable Evidence.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/ Timothy G. Watkins

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
 51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 28, 2014.

/s/ Timothy G. Watkins
Timothy G. Watkins