UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          )
                                   )
        v.                         )          Crim. No. 13-10200-GAO
                                   )
                                   )
DZHOKHAR TSARNAEV                  )

**DEFENSE PROPOSED SCHEDULE FOR EXPERT DISCLOSURES, RULE 12.2 NOTICE AND DEFENDANT'S RECIPROCAL DISCOVERY**

At the hearing on April 16, 2014, the Court directed counsel to confer on the scheduling of expert disclosures, Rule 12.2 notice, and the defendant's reciprocal discovery.  Thereafter, the Court requested that joint, or several, recommendations be filed by April 30, 2014. [DE 264].  Counsel conferred on April 29, 2014, but were unable to reach agreement.  Though we remain concerned about our ability to be adequately prepared for a November 2014 trial date, undersigned counsel recommend the following schedule, and provide reasons in support.

1. **May 16, 2014**: Government (guilt phase) expert reports/summaries [Rule 16(a)(1)(G)]

2. **August 15, 2014**: Defense (guilt phase) expert reports/summaries [Rule 16(b)(1(C)]

3. **September 15, 2014**: Defense 12.2(b) notice, and Rule 16(b)(1)(A) discovery (guilt phase)

4. **October 17, 2014**: Government expert summaries (penalty phase)

5. **October 31, 2014**: Defense expert summaries and penalty phase exhibits (penalty phase)

6.  **November 14, 2014**: Government rebuttal expert summaries (penalty phase)

**MEMORANDUM IN SUPPORT**

**Guilt phase experts (scheduling items 1, 2)**.    The government has been in possession of all items of physical evidence relevant to expert examinations and tests for over a year.  Indeed, ABC News recently reported on FBI forensic examiners' conclusions reached more than a year ago concerning the manufacture of the explosive devices – information that has apparently been leaked to the news media but has yet to be provided to the defense.  It appears that the government is already in possession of a great deal of material that must be disclosed under Fed. R. Crim. P. 16(a) (1) (G).  Unless the government takes the position that the work of its experts is not complete, it should be able to provide the required materials by May 16, 2014.  Disclosure of these materials is obviously necessary before the defense can identify the expert services that it may need, seek court approval to retain such experts, arrange for the work to be done, and finally disclose to the government the results of any such expert examinations that the defense intends to present at trial.

We therefore request three months from the date the government produces its guilt phase expert reports/summaries to identify, retain and work with responsive experts and to produce summaries.   While to some degree defense counsel can deduce from discovery provided thus far that the government will produce fingerprint, explosives and ballistics testimony, for example, that is not enough to begin to investigate possible responses.  What matters are the conclusions the government's witnesses will offer.  The identification of the items that the prosecution intends to use at trial, and the analyses and

conclusions of the various government's experts, will necessarily guide the defense response, including possible *Daubert* challenges to the reliability and admissibility of the government experts' opinions.

**Defense "Automatic" Discovery.**   On April 11, 2014, the prosecution filed a Motion to Compel Compliance with Automatic Discovery Obligations.  [DE 245].  The Motion quotes the language of Fed. R. Crim. P. 16(b), but ignores its limited scope. The Rule requires disclosure by the defense only "(i) if the item is within the defendant's possession, custody, or control; and, (ii) the defendant intends to use the item in the defendant's case-in-chief at trial."  At this time, the defense is in no position to identify or produce the documents or other evidence it will seek to introduce.  We recommend guilt phase production on September 15, 2014 and penalty phase production on October 31, 2014.  We separate the production dates recognizing that we need substantially more time to obtain, identify and produce penalty-phase-related items, and that any penalty phase is not likely to begin for several months after the start of trial.

**Rule 12.2(b) Notice**.  On April 11, 2014, the prosecution also filed a request for "Notice Pursuant to Fed. R. Crim. P. 12.2(b)" by May 7, 2014.  [DE 242].  In making this request, the prosecution advised the court that the rule "requires that the defendant make this notification within the time provided for filing a pretrial motion."  *Id.*   However, the Rule goes on to provide in the alternative that such notice may be filed "at any later time the court sets…" Fed. R. Crim. P. 12.2(a) & (b).   We request a notice deadline no earlier than September 15, 2014.

To date, no potential testifying expert has yet met Mr. Tsarnaev, much less

conducted any evaluation requiring notice under Rule 12.2.  The factual complexity of

this case, the vast amount of discovery to be reviewed by the defense, and the wide scope

of the factual investigation that is a precondition for any reliable mental health

evaluation[1] have slowed the progress of the defense effort.  Further complicating the task

are the distractions caused by the need to litigate conditions of defense representation

(such as confidentiality of legal meetings with the defendant and his family and the

identity of legal visitors) that are taken for granted in any other case.

Moreover, it cannot be ignored that the aggressive timeline for bringing this

complicated and multifaceted case to trial dramatically compresses the time available for

the defense to adequately prepare for trial.  The available time is well below that

available in the more typical federal capital cases.  Indeed, the *average* time between

indictment and trial in federal capital cases is 28 months, and the average time between

---

[1] Competent forensic mental health evaluation in capital cases requires adherence to four
principles.  First, an accurate and complete medical and social – often called
"biopsychosocial" – history must be obtained, not only from the client, but also from
sources independent of the client.  Second, a thorough physical examination (including
neurological examination) must be conducted.  Third, appropriate diagnostic studies (*e.g.*
psychological and neuro-psychological testing, brain imaging techniques, and
electroencephalograms) must be undertaken in light of the information obtained from the
client's history and the physical examination.  Fourth, while a standard mental status
examination (*i.e.,* clinical interview of the client by a mental health expert) must be part
of the evaluation, it cannot be relied on in isolation as a diagnostic tool.  *See* Liebert and
Foster, The Mental Health Evaluation in Capital Cases:  Standards of Practice, 15 AM. J.
FORENSIC PSYCHIATRY 43 (1994).

the filing of the "Notice of Intent to Seek the Death Penalty" and trial is 16.2 months.[2]

Here, the Notice of Intent was filed on January 30, 2014, and the case has been set for

trial to begin November 3, 2014 – barely half of the preparation time that the federal

courts have allowed in the *average* case.   Given the international investigation that this

case requires (and the complications of travel, language and culture that this entails), as

well as the diverse and complex forensic issues that will be featured at trial, this case is

far from average.

## CONCLUSION

Defense counsel submit that the above schedule is an aggressive and balanced one

that recognizes the Court's desire to start jury selection on November 3, 2014.  We

request that the Court adopt it.

Dated:  April 30, 2014

DZHOKHAR  TSARNAEV
by his attorneys

*/s/  Judy Clarke*

Judy Clarke, Esq. (CA Bar #76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.  (SC Bar #967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

---

[2] *See* Declaration of Kevin McNally, Director of the Federal Death Penalty Resource
Counsel Project, April 23, 2014 (attached as Exhibit A).

Miriam Conrad, Esq. (BBO #550223)
Timothy Watkins, Esq. (BBO #567992)
William Fick, Esq. (BBO #650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 30, 2014.

*/s/ Judy Clarke*

**EXHIBIT A**

## DECLARATION OF KEVIN McNALLY
## REGARDING PRE-TRIAL PREPARATION TIME

1.  I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts.  I have served as Resource Counsel since the inception of the Resource Counsel Project in January, 1992.  The Project is funded and administered under the Criminal Justice Act by the Office of Defender Services of the Administrative Office of the United States Courts.

2.  My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50.  A recent update to the Report stated: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to

3.    In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases.  I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel.  The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4.  Resource counsel collect comprehensive, accurate data concerning various practices that have emerged since the federal courts resumed trying capital cases in 1990.  This collection of data includes the intervals of time between various pretrial milestones and trial.  The federal courts have, with  few exceptions, permitted considerable time between the indictment and mitigation submission and between

_____

consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable."   http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

2

the government's notice of intent to seek the death penalty and the commencement of trial.

5.  The average time between indictment and the trial date in federal capital cases is approximately 28.0 months.  The average time between indictment and the notice of intent to seek the death penalty is 13.0 months.  The average time between the notice of intent to seek the death penalty and the trial date is approximately 16.2 months.[2]

6.  Pursuant to declarant's responsibilities as Federal Death Penalty Resource Counsel, declarant has compiled the above information regarding federal capital cases in the regular course of the business of the Federal Death Penalty Resource Counsel Project.

I declare under the penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing is true and correct.  Executed this 23rd day of April, 2014.

/s/ Kevin McNally
Kevin McNally

---

[2]The Project has obtained the date for 491 indictments, 479 notices of intent to seek the death penalty and the date or scheduled date for 439 trials.  These dates are in the attached report.  This accounts for the apparent disparity in the figures above.