UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Crim. No.13-10200-GAO |
| ) | |
| DZHOKHAR A. TSARNAEV, ) | |
| Defendant ) | |

**GOVERNMENT'S PROPOSAL RE: SPECIAL ADMINISTRATIVE MEASURES**

Undersigned counsel for the government, after consulting with the Bureau of Prisons, respectfully submits this proposal to respond to the concerns the Court raised at the April 16, 2013 status hearing regarding the Special Administrative Measures ("SAMs"):

**A. BOP Rules and Regulations Governing Visits**

Bureau of Prison ("BOP") regulations treat social and legal visits differently.  Although BOP encourages family members to visit inmates, it is also charged with developing procedures that may restrict social visits to ensure the security and good order of the institution.  See BOP Program Statement, 5267.08(h).  BOP may limit the number of family visits, restrict the dates and times on which they occur, and supervise them, to, among other things, prevent the passage of contraband.  Attorney visits, in contrast, are governed by 28 C.F.R. 543.12 through 543.16.  BOP may not limit them or supervise them to ensure the confidentiality of attorney-client communications.  Maintaining

a clear distinction between social and legal visits simplifies application of the rules and ensures that consistent standards will be applied throughout the prison system.

**B. Monitoring of Relatives' Visits under the SAMs**

The restrictions on family visits in the SAMs are animated by the same concerns that underlie BOP Program Statement, 5267.08(h).  The SAMs reflect that in the case of certain detainees, verbal communications may be a form of dangerous contraband that can be passed to and from visitors.  Only real-time monitoring of social visitors' conversations with Tsarnaev by someone familiar generally with terrorist tradecraft and specifically with the facts of this case can ensure that those conversations are not being used as a vehicle to convey forbidding messages.

Some of Tsarnaev's telephone conversations while at FMC-Devens have raised the possibility that he might seek to use social visits to communicate with third parties.  Ms. Tsarnaeva, the defendant's mother who is now in Dagestan, twice mentioned to Tsarnaev in phone calls he made to her from FMC-Devens that close friends of Tamerlan's, his late brother, are with her. She has indicated her awareness that Tsarnaev's sisters are visiting him.  Although these calls do not themselves constitute forbidden communications, they raise the possibility that Tsarnaev's sisters might, perhaps unwittingly, be used to pass

2

or receive forbidden communications from Tsarnaev.

Tsarnaev remains an attractive source of information and an attraction for those who wish to provide information to him. The media and public interest in the defendant has not abated within the past year. There is no reason to believe that other terrorist organizations – who publicly applaud his actions – and other extremists have lost interest in communicating with the defendant.[1]

Tsarnaev committed one of the most sophisticated and successful terrorist attacks on American soil since September 11, 2001. Despite defense counsel's confident assertion at the April 16, 2014 status hearing that "there is no more conspiracy," the government cannot simply take him at his word and the government continues to investigate. To permit Tsarnaev unmonitored visits with family members -- a privilege that BOP can deny even ordinary detainees -- would needlessly jeopardize the public's safety.

In light of these concerns, the government proposes to address Tsarnaev's concerns about the prosecution team's access to his communications with his sisters by designating an agent

---

[1] As the government noted in its previous opposition, "[a]mong those who have already picked up the gauntlet thrown down by Tsarnaev were the writers and editors of the July 2013 issue of *Inspire* magazine, a publication of al-Qaeda in the Arabian Peninsula, which lauded Tsarnaev and his brother as heroes and martyrs.

3

who is not part of the prosecution team to monitor those visits. (It is the government's understanding that Tsarnaev is not requesting that any other social visits be unmonitored.) The monitoring agent will familiarize himself or herself with the facts of the case and the provisions of the SAMs.  The monitoring agent will not provide any information to the prosecution team relating to the social visits unless he or she has a reasonable and articulable suspicion that there has been a violation of the SAMs.  The monitoring agent may consult with the case agents, but the consultation will be narrowly limited to the question of whether there has been a violation under the SAMs.

                                  Respectfully submitted,

                                  CARMEN M. ORTIZ
                                United States Attorney
                                District of Massachusetts

By:  /s/Nadine Pellegrini
     NADINE PELLEGRINI
     WILLIAM D. WEINREB
     ALOKE S. CHAKRAVARTY
     Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that these document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 30, 2014.

                                  /s/Nadine Pellegrini
                                  Nadine Pellegrini
                                  Assistant U.S. Attorney