```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
     v.                       )     Crim. No.13-10200-GAO
                              )
DZHOKHAR A. TSARNAEV,         )
          Defendant           )
```

### GOVERNMENT'S PROPOSED SCHEDULE FOR EXPERT DISCOVERY RECIPROCAL DISCOVERY, AND DEFENDANT'S RULE 12.2 NOTICE

The United States of America, by and through its undersigned attorneys, respectfully proposes the following schedule for expert discovery.  (Government and defense counsel conferred but were unable to agree on a proposed schedule.)

A. Background

The schedule for expert discovery should reflect the differences between an ordinary case and a capital case such as this one.  In the ordinary case, only the government makes affirmative use of experts; the defense makes use of experts, if at all, only responsively.  The schedule in an ordinary case therefore typically requires the government to produce expert discovery, say, six weeks before trial, and the defense to produce its expert discovery, say, three weeks before trial.  That enables both parties to plan their respective trial strategies, including their opening statements, fully apprised of all expert testimony.

In this case, in contrast, both parties are likely to make

affirmative use of experts: the government mainly in its case-in-chief during the guilt phase, and Tsarnaev mainly in his case-in-chief during the sentencing phase. The government's experts will mainly testify about forensic matters, _e.g._, fingerprint, ballistics, blood, and DNA, whereas Tsarnaev's experts will likely testify about other things. It follows that there is no reason for either side to "go first" in producing affirmative or responsive expert discovery; disclosure should be simultaneous so that both parties have the maximum opportunity to examine the other's expert submissions and engage responsive experts as needed.

In addition, in contrast to the ordinary case, the trial of this matter will be a single proceeding divided into a guilt phase and sentencing phase with virtually no break in between. It is unfair and unrealistic to expect either party to search for, interview, and engage responsive experts, let alone get them up to speed on the sprawling facts of this case and supervise their work, once the trial has begun. The schedule should therefore require both sides to produce both affirmative and responsive expert discovery in connection with the sentencing phase as well as the guilt phase well in advance of trial.

The defense has informed the government that identifying responsive experts and obtaining court approval and funding for

them is a lengthy process.  Accordingly, the government has volunteered to produce the bulk of its affirmative expert discovery well ahead of the deadline it has proposed for the completion of all affirmative expert discovery by both parties.

Proposed Schedule

In light of the foregoing, the government proposes the following schedule for expert discovery:

| | |
|---|---|
| June 30, 2014: | **Government**: affirmative expert discovery concerning ballistics, fingerprint, blood and DNA |
| | **Defense**: Rule 12.2 notice |
| August 4, 2014: | **Government and defense**: all remaining affirmative expert discovery |
| | **Defense**: reciprocal automatic discovery |
| October 6, 2014 | **Government and defense**: all responsive expert discovery |

C. Rule 12.2 Notice

Ordering early Rule 12.2 notice is essential to keeping this case on track.  Unlike most types of forensic expert testimony (e.g., computer, blood, fingerprint, ballistics, DNA), psychiatric and psychological expert testimony can raise a multitude of legal issues that require time to resolve.  In addition, the government anticipates that it will need months to produce responsive expert discovery in connection with any defense psychiatric or psychological experts.  That is in part because the government will likely seek permission for its own

3

experts to perform tests and examinations on Tsarnaev in light of the tests and examinations that defense experts perform.

Rule 12.2(b) embodies a recognition that early notice of psychological evidence is essential. It requires that a defendant provide notice of evidence of any mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case "within the time provided for filing a pretrial motion, or at any later time the court sets." If the defendant provides such notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B). The results and reports of any such examination "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2). Disclosure of the government's examination triggers a reciprocal disclosure obligation on the part of the defense. Fed. R. Crim. P. 12.2(c)(3).

If Tsarnaev claims that he suffers from some kind of mental defect or condition, that is likely to be an important issue at sentencing. One can only assume that the defense has already contemplated the possibility of offering expert testimony on

4

Tsarnaev's mental condition and has assembled materials (such as pertinent records, opinions from mental health experts, and perhaps interviews and examinations of Tsarnaev) to determine whether to pursue that avenue.  The government, however, has no access to these defense materials, and will remain completely ignorant of information that could be critical during the sentencing phase until the defense files a meaningful Rule 12.2 notice.

To be meaningful, a Rule 12.2 notice must "provid[e] the government with an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony."  <u>United States v. Johnson</u>, 362 F. Supp. 2d 1043, 1079 (N.D. Iowa 2005); <u>accord</u> <u>United States v. Sampson</u>, 335 F. Supp. 2d 166, 242 243 (D. Mass. 2004); <u>see also</u> <u>United States v. Fell</u>, 372 F. Supp 2d 753, 759 (D. Vt. 2005) ("The right to offer rebuttal testimony . . . would be a hollow one indeed without discovery into the mental condition of an accused.")  Meaningful disclosure includes not only the identities of the defense experts and their areas of expertise, but also an indication of "the nature of the tests that the defendant's experts have performed or will perform, <u>e.g.</u>, the MMPI-2, the WAIS-2, etc., in the course of their evaluations of the defendant."  <u>Johnson</u>, 362 F. Supp. 2d at 1080 (citing <u>Sampson</u>, 335 F. Supp. 2d at 242–43).  Only after receiving a meaningful Rule 12.2 notice will the government be

5

able to research the defense experts, locate pertinent records, interview relevant witnesses, and retain appropriate rebuttal experts.

Although Rule 12.2(c)(2) prohibits the trial team from seeing "the results and reports" of their own expert's examination of Tsarnaev before the guilty verdict, the trial team is still entitled to a prompt and meaningful Rule 12.2 notice.  The government concedes that "the results and reports" of its own expert's examination should be disclosed only to firewalled counsel until Rule 12.2(c)(2)'s triggering events occur.  But Rule 12.2(c)(2)'s prohibition does not extend to notice and discovery.  In Johnson, for example, the court found that notice and discovery, including the identity of tests administered by defense experts, should be given to the trial team, rather than to a separate firewalled team.  The court reasoned that the purpose of such notice was to permit the trial prosecutors to hire experts to prepare a response:

> The court, however, believes that the prosecuting attorney should have the opportunity to select the government's rebuttal mental health experts.  The court also finds that Johnson will not be prejudiced by requiring her to add disclosures of the tests that her experts have performed or will perform to the disclosures that she has already made concerning her experts.  Because tests like the MMPI-2 or the WAIS-2 are standard diagnostic tools, use of such tests does not disclose to the prosecuting attorneys the specific nature of the mental condition that Johnson may assert in such a way that either her constitutional rights or the scheme contemplated by Rule 12.2 is violated.  Therefore, the court will require Johnson to include

>in her supplement to her Rule 12.2(b) notice the nature of the tests that her experts have performed or will perform.

Johnson, 362 F. Supp. 2d at 1080 (emphasis removed); see also Sampson, 335 F. Supp. 2d at 242 (notice of tests provided to prosecution team by agreement of the parties).

In addition, because the jury in making its penalty recommendation may consider the evidence it heard during the guilt phase, both parties will no doubt formulate their trial strategies with the penalty phase in mind.  Absent meaningful mental-health notice and discovery from the defense, Tsarnaev will be in a position to lay the foundation during the guilt phase for expert testimony in the penalty phase of which the trial team knows nothing.  Blinding the trial team in that way would deprive the jury of the full examination of the issues that the adversary process is designed to provide.

Following Johnson's lead, the government requests that the Court order the defense to include in its Rule 12.2 notice and related discovery: (a) the identity of each mental health expert that may be called by the defense at the penalty phase; (a) each expert's area of expertise; (c) a copy of each expert's curriculum vitae; (d) identification, by name, of each test or examination administered thus far or that will be performed; (e) all medical records, witnesses, third-party documents or reports of interviews or other memoranda, other than those relating to

7

an interview of or examination of Tsarnaev, upon which any mental health expert relies or that will be the subject of anticipated expert testimony; and (f) a list of citations or copy of any and all research articles or studies on which any expert relied in reaching any conclusion or opinion Tsarnaev intends to offer.

For the government's mental health experts to conduct their own examinations and tests and prepare their rebuttal testify in a meaningful way, the defense experts will need to disclose by August 4, 2014 their conclusions and opinions, the bases for them, and the results and reports of any examination or tests they have performed.  The government proposes that these disclosures be made to firewalled counsel, who will not share with the trial team any privileged information that the defense intends to rely upon solely during the penalty phase until the government secures a conviction against the defendant for a death-eligible charge.  This arrangement assures not only that the government's experts will be equipped to do their job, but that the government (through firewalled counsel) and defense can efficiently litigate issues concerning the defendant's mental health well before the sentencing phase begins.