IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
v. ) Crim. No. 01-405A
)
BRIAN PATRICK REGAN )

F I L E D
APR 19 2002
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## NOTICE OF INTENT TO SEEK A SENTENCE OF DEATH

The United States, pursuant to 18 U.S.C. § 3593(a), notifies the Court and the defendant that the United States believes the circumstances of the offenses charged in Counts One and Two of the Superseding Indictment are such that, in the event of the defendant's conviction on either of Counts One or Two, a sentence of death is justified under Chapter 228 (Sections 3591 through 3598) of Title 18, United States Code, and that the United States will seek the sentence of death for either or both of the following offenses: Count One, attempted espionage, which was committed with the intent to injure the United States and to advantage Iraq; and Count Two, attempted espionage, which was committed with the intent to injure the United States and to advantage Libya.

The United States proposes to prove the following factors as justifying a sentence of death.

## COUNTS ONE AND TWO

## ATTEMPTED ESPIONAGE (IRAQ & LIBYA)

A.  Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(b)

1. **Grave risk to national security.** The defendant knowingly created a grave risk of substantial danger to the national security. The defendant intended to give to Iraq, a hostile country that regularly attempted to shoot down U.S. and allied aircraft flying in the No-Fly Zone (NFZ), detailed and comprehensive information concerning U.S. reconnaissance satellites, the disclosure of which would necessarily make it more difficult for the United States to protect against such threats. The fact that the defendant was attempting to leave the country with the specific coordinates to one SAM emplacement in the NFZ is further evidence of the clear and present danger posed by the defendant

2. **Grave risk of death.** The defendant knowingly created a grave risk of death to another person, namely U.S. and allied pilots patrolling the NFZ.

B.  Non-statutory Aggravating Factors

1. **The nature and breadth and sensitivity of the classified information which the defendant sought to compromise.** The scope and sensitivity of the information which the defendant offered to compromise in return for money was particularly egregious. It is appropriate, therefore, to distinguish his conduct from that of an individual who offers to compromise one piece or several small pieces of classified information.

2. **The long-term planning and premeditation which the defendant has demonstrated.** The defendant's conduct evidenced exceptional planning and premeditation, including his avowed removal and secretion of classified material from NRO and his

-2-

sophisticated encoding of his communications. This demonstrates meticulous planning designed to permit the transmittal of highly classified information to foreign countries and to protect the defendant's true identity.

3. **The defendant's betrayal of a position of trust.** The defendant betrayed the trust invested in him by the Air Force and the NRO, and, in his latter employment, by TRW.

4. **An Air Force sergeant/retiree placing Air Force pilots at grave risk of death.** The fact that the defendant was a member of the Air Force community and nevertheless engaged in conduct which placed his fellow Air Force personnel at grave risk of death makes the defendant's conduct particularly egregious.

5. **The crime was committed for pecuniary gain.** Through his attempted espionage, the defendant was seeking to make himself rich – regardless of the damage he did to his country's security.

6. **Form letter espionage.** The defendant attempted to commit espionage for at least three countries and, as to two of them, it appears that he used a form letter which was modified to better appeal to his target country.

7. **The countries in question are true adversaries of the United States.** The countries involved, Iraq and Libya, are aggressively hostile to the United States. Iraq was an adversary in the Gulf War and is known to be attempting to develop weapons of mass destruction. Libya is a known exporter of terrorism.

8. **Consciousness of damage to the United States.** The defendant was aware of the damage he was seeking to inflict on the United States. He states that "THE INFORMATION I AM OFFERING WILL COMPRIMISE US INTELLIGENCE SYSTEMS WORTH

-3-

HUNDREDS OF BILLIONS OF DOLLARS" and that "THE KNOWEDEGE I WILL PROVIDE YOU CAN SAVE YOU BILLIONS, BY IMPROVING YOUR WEAPON SYSTEMS TACTICS, WHICH WILL LIMIT THE US CAPABILITY TO TARGET AND DESTROY YOUR EXPENSIVE AND VITAL WEAPON SYSTEMS AND FACILITIES." He also states that, if he is not caught, the US Government will undertake a "MOLE HUNT" which is "VERY DESTRUCTIVE AND DEGRADES THERE CAPABILITY TO FUNCTION EFFECTIVELY."

9. **Using the death penalty as a marketing tool.** In order to demonstrate to his target countries the value of his services, the defendant emphasized the risk he was taking: "IF I AM CAUGHT I WILL BE ENPRISIONED FOR THE REST OF MY LIFE, IF NOT EXECUTED. FOR THIS DEED. MY WIFE AND DAUGHTER WILL BE DISCRASED AND HARRASHED BY EVERYONE IN OUR COMMUNITY. CONCIDERING THE RISK I AM ABOUT TO TAKE I WILL REQUIRE A MINIMUM PAYMENT OF THIRTEEN MILLION US DOLLARS WIRE TRANSFERRED ...."

10. **Awareness of the fact that he is committing a potential death penalty offense.** The same excerpt cited above demonstrates the defendant's awareness that he is committing a potential death penalty offense.

11. **Compromising of techniques.** Wholly aside from the content of the information which the defendant offered to compromise, the defendant was compromising techniques which a foreign country could use to commit further acts of espionage and to defeat U.S. counterespionage efforts. His letters devote substantial efforts to detailing mechanisms of

-4-

communication and transmittal that are intended to protect the defendant's identity but which could also be copied in other espionage operations.

12. **The use of US Government funded training.** Regan used training he received *from* the United States to commit espionage *against* the United States, such as his training in cryptology.

13. **Offer to commit ongoing acts of espionage indefinitely.** Regan was not just seeking a one time $13 million deal but, rather, an ongoing relationship until "I AM EITHER CAUGHT, SUSPECTED OR RETIRE OR IF YOU DECIDE YOU HAVE RECIVED ANOUGH INFORMATION."

14. **The defendant actually committed espionage, not just attempted espionage.** The United States will show, during the death penalty phase, that the defendant actually committed espionage. Title 18, United States Code, Section 3593(c) provides that information is admissible in the death penalty phase of the trial "regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

15. **The defendant removed 800 pages of classified material from US Government facilities.** By his own admission in his letters to Iraq and Libya, the defendant removed 800 pages of classified material to a "hidden storage area."

16. **Other evidence indicating that the defendant moved many other documents out of NRO.** There is substantial reason to believe that the defendant moved far more than 800 pages out of the NRO and may have buried, or otherwise secreted, the material. This is indicated

-5-

by his traveling with dirt (which might possibly be used to mark a burial site), Rubbermaid containers (large enough to contain a ream of paper), and packing tape; by his pattern of renting cars for a day, withdrawing several hundred dollars in cash just before the car rental, putting substantial mileage on the car indicative of out-of-area travel; by a trip he made into the woods in Farmingdale, New York, which may have been a scouting trip for a potential burial site; and by his various visits to the high speed copier at NRO.

**17. The United States is involved in active hostilities with Iraq.** The fact that the defendant was attempting to leave the country with the coordinates to the SAM missile site in the Northern No Fly Zone – and had previously written the letter to Hussein – must be viewed in the context of our present and recent relationship with Iraq. There is a qualitative difference between committing espionage on behalf of a country whose interests are inimical to the United States and committing espionage on behalf of a country whose interests are inimical to the United States *and* who is presently manifesting those hostile intentions by engaging in belligerent activities against the United States.

**18. The defendant's gratuitous advice.** The defendant not only offered to commit espionage in his letters to Iraq and Libya but he offered them specific techniques for getting his material out of the United States. By giving this gratuitous advice, the defendant sought to further injure the United States and aid a foreign country.

**19. Use of an overseas bank account.** Use of an overseas bank account increases the likelihood that a spy's misconduct will go undetected.

**20. Undermining Intelink.** Intelink is designed to foster and facilitate the sharing of critical and sensitive national security information among those in the intelligence community

-6-

with the proper clearances and the proper "need to know." The defendant's misconduct potentially, perhaps inevitably, chills this appropriate and salutary exchange of classified information and thereby makes it that much harder for the U.S. intelligence community to share classified information amongst itself. — *See Webster Report*

21. **The defendant attempted to compromise information above the Top Secret level.** Regan's letters offer to Iraq and Libya information classified at the Top Secret Codeword level.

22. **The defendant had the benefits and privileges of a full Air Force career and a substantial retirement salary.** Regan attempted to commit espionage despite the fact that he was the beneficiary of a number of privileges and advantages, including all the benefits of a full Air Force career, substantial retirement pay, and an excellent post-retirement job.

23. **Future Dangerousness.** The defendant poses a continuing danger to the national security. The organized and meticulous way in which he went about the attempted espionage demonstrates that the defendant has the mental faculties to retain, recall, and communicate classified information he acquired in the course of his employment at NRO. Whatever documents the defendant managed to secret also pose a continuing threat.

24. **Victim Impact.** The U.S. Government suffered harm as a result of the defendant's conduct. The defendant's misconduct undermines public confidence in those individuals charged with responsibility for protecting our nation's most sensitive secrets. It also contributes to an erosion of trust within the U.S. intelligence community and further emphasizes the need to devote precious resources to counterespionage activities rather than the gathering of foreign intelligence information.

-7-

The United States gives further notice that in support of the imposition of the death penalty it intends to rely upon all the evidence admitted by the Court at the guilt phase of the trial and the offenses of conviction as described in the Superseding Indictment as they relate to the background and character of the defendant, his moral culpability, and the nature and circumstances of the offenses charged in the Superseding Indictment.

Respectfully submitted,

*[signature]*

Paul J. McNulty
United States Attorney
Eastern District of Virginia

*[signature]*

Randy I. Bellows
Assistant United States Attorney

*[signature]*

Patricia M. Haynes
Assistant United States Attorney

*[signature]*

James P. Gillis
Assistant United States Attorney

-8-

## Certificate of Service

I certify that a true and correct copy of the foregoing Notice of Intent to Seek A Sentence of Death was served by U.S. mail and facsimile transmission on the defense counsel listed below this ____ day of April, 2002.

James P. Gillis
Assistant United States Attorney

Nina J. Ginsberg
908 King Street
Suite 200
Alexandria, VA 22314
Fax: (703) 548-3181

Jonathan Shapiro
910 King Street
Suite 200
Alexandria, VA 22314
Fax: (703) 684-9017

-9-