UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**MOTION FOR GRAND JURY INSTRUCTIONS REGARDING THE
DEATH PENALTY, AND TO STRIKE THE CAPITAL "SPECIAL FINDINGS"**

COMES NOW the defendant, Dzhokhar Tsarnaev, by and through undersigned counsel, and hereby moves this court, pursuant to Rules 6(e)(3)(E)(I), 12(b)and (ii), and 16(a)(1)(F)(iii) of the Federal Rules of Criminal Procedure, and to the Indictment and Due Process Clauses of the Fifth Amendment to the United States Constitution,

1. to produce or to order the Government to produce the legal instructions provided to the Grand Jury that returned the indictment against him, and, absent a showing that the grand jury was informed of the life-or-death significance of it special findings,

2. to strike the grand jury's special findings of statutory aggravating factors upon which the government's notice of intent to seek the death penalty rests, and to exclude the death penalty as a possible punishment in this case.

### I. INTRODUCTION AND FACTUAL STATEMENT

The 30-count indictment against Mr. Tsarnaev contains 17 counts that the government alleges to be punishable by death.  Paragraphs 155 and 156 of the indictment

also include a total of 26 "special findings" comprised of various factual allegations that must be established before a sentencing jury may consider imposing a sentence of death under the Federal Death Penalty Act. 18 U.S.C. §§ 3591(a)(2) and 3592(c).  The Supreme Court has held that "such enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense.'" *Ring v. Arizona*, 536 US 584, 609 (2002) (quoting *Apprendi v. New Jersey*, 530 U.S., 466, 494, n. 19 (2000)).  By necessary implication, therefore, in federal capital cases the Indictment Clause of the Fifth Amendment requires that such factors also be alleged by the grand jury.  *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *United States v. Bourgeois*, 423 F.3d 501, 507 (5th Cir. 2005); *United States v. Allen*, 406 F.3d 940, 942–943 (8th Cir. 2005) (en banc).

It was presumably to comply with this constitutional requirement that the government included the special findings of ¶¶ 155-156 in the indictment.  The defendant adheres to the position set forth in his Motion to Preserve Constitutional Challenges to the Federal Death Penalty Act filed this date that despite *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), neither the FDPA nor any other provision of law authorizes the grand jury to return such special findings.  But even if such authority existed, the defendant submits that it can only be exercised by a grand jury that has been informed of the significance of the special findings – namely, that by returning such findings, the grand jury was authorizing the government to seek the death penalty, and the petit jury to impose it.

Whether the grand jury in this case was so informed is a factual question to which defense counsel have yet to uncover the answer.   In order to determine whether the instructions provided to the grand jury allowed it to perform its historic role as a democratic check on the power of the government to seek the execution of an accused, counsel must review the legal instructions that guided the grand jury's deliberations with respect to its special findings. For this reason, on February 14, 2014, counsel for the defendant made following request of the government:

> (4) <u>Instructions to the grand jury</u>.  We request that you provide copies of instructions and legal advice given by the District Court or the prosecutors to the Grand Jury that returned the indictment and Special Findings.

The government responded to this request by letter of March 7, 2014, as follows: "We decline to comply with this request because there is no legal basis for it."   Having failed to secure from the government the information he seeks, the defendant now moves the Court to make known to him what if anything the grand jury was told concerning the meaning and effect of the allegations contained in ¶¶ 155-56.  Until it is established that the grand jury had reason to know that the government's proposed special findings amounted to a request to authorize a death penalty prosecution, it should be presumed that the grand jurors could not have approved these findings in the manner required by the Indictment Clause, and that the special findings should therefore be stricken from the indictment.

## II. LEGAL ARGUMENT AND AUTHORITY

The power to decide whether an accused should stand trial for his life has historically constituted one of the most important functions of the grand jury. As the Supreme Court has explained:

> [T]he grand jury is a central component of the criminal justice process. The Fifth Amendment requires the Federal Government to use a grand jury to initiate a prosecution. . . . The grand jury, like the petit jury, 'acts as a vital check against the wrongful exercise of power by the State and its prosecutors.' It controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, *including the important decision to charge a capital crime.*

*Campbell v. Louisiana*, 523 U.S. 392, 398 (1998) (emphasis added); see also, *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense – all on the basis of the same facts."). The question is particularly acute in a case such as this one, where a grand jury comprised of Massachusetts citizens represents the only democratic check on the prosecutorial authority of government officials in Washington to order a death penalty prosecution in a Commonwealth that has long rejected capital punishment as a matter of state law.

But for this check to operate as the Framers of the Indictment Clause of the Fifth Amendment intended, it is obviously essential that the grand jury have been made aware that in approving the government's proposed "Special Findings," it was authorizing the government to seek the defendant's execution. The issues presented by this motion are

whether the grand jury's instructions or other direction on this point should be disclosed, and whether, absent some indication that the jury understood the legal significance of the special findings, the indictment cannot support the government's request for the death penalty.

### A.   The grand jury's instructions regarding the special findings should be disclosed.

Grand jury secrecy poses no barrier to this request for a transcript of the grand jury's instructions or other legal guidance. The applicable law concerning the defendant's request was fairly summarized in *United States v. Burgoin*, 2011 WL 6372877 * 6 (D.Kan. 2011):

> [G]rand jury proceedings are confidential and matters before the grand jury are presumed to be secret. The secrecy of grand jury proceedings is codified in Fed.R.Crim.P. 6(e). The court, however, can allow the disclosure of ministerial records of the grand jury. *In re Cudahy,* 294 F.3d 947, 951 (7th Cir.2002); *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3rd Cir.1990); *In re Special Grand Jury*, 674 F.2d 778, 779 (9th Cir.1982); *United States v. Diaz*, 236 F.R.D. 470, 479 (N.D.Cal.2006); *In re Grand Jury Proceedings, Special Grand Jury 89–2*, 813 F. Supp. 1451, 1469–70 (D.Colo.1992). A ministerial record is one that generally relates to the procedural aspects of the empaneling and operation of the grand jury. *In re Special Grand Jury*, 674 F.2d at 779 n. 1. The standard is whether "disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations." *In re Grand Jury Proceedings*, 813 F.Supp. at 1469. The disclosure of these materials is discretionary with the court. Id.

In *Burgoin* the court exercised its discretion in favor of disclosure, and ruled that the materials to be disclosed included "the charge to the grand jury given by Judge Robinson."

Other courts have also ordered the disclosure of grand jury instructions. In *United States v. Diaz*, 236 F.R.D. 470, 477-478 (N.D. Cal. 2006), a capital case, the court ruled:

> In both motions, defendants request all instructions given to any grand jury that heard evidence in this matter. . . . This Court agrees that such instructions do not fall within the bar of Rule 6(e) because their disclosure would not reveal the substance or essence of the grand jury proceedings. Furthermore, disclosure of jury procedures and responsibilities poses no security threat to past, current or prospective jurors.  Accordingly, defendants' request for instructions given to any grand jury that heard evidence in this matter is Granted.

And in *In re Grand Jury Proceedings, Special Grand Jury 89–2*, 813 F.Supp. 1451, 1469–70 (D. Colo.1992), the court likewise ordered the release of grand jury instructions, concluding that

> [w]hile the reasons for disclosure of ministerial documents do not weigh so heavily in public policy as might more substantive court documents, the reasons against disclosure are also less weighty. We hold that there can be little justification to deny in its entirety petitioners' more limited and narrowly tailored request.

*Id.* at 1470.

As these cases recognize, transcripts of legal instructions or legal advice provided to the grand jury do not implicate any Rule 6 secrecy concerns.  Generally, a party seeking disclosure of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure must demonstrate a particularized need.  *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001) (particularized need not demonstrated by broad request for all grand jury materials).  In this case, the defendant is seeking a very limited amount of grand jury material, that is, legal instructions or legal advice given to

6

the grand jury by the prosecutors or by the court. There is simply no need to keep this information secret, and the defendant has a due process right to review it. In this case, where the indictment includes a "Notice of Special Findings" which is not authorized by any rule or statute law, a particularized need exists for the defendant to have copies of the requested grand jury material. *See In re: Grand Jury Proceedings,* 841 F.2d 1048, 1051 (11th Cir. 1988) (particularized need exists because grand jury no longer investigating matter, much of information already public, and limited material sought).

There can be no good-faith basis for the government to object to the defendant's obtaining copies of the grand jury transcripts which contain the legal instructions and legal advice given to the grand jury by the prosecutors or the Court. The government will suffer no prejudice by such production, and no witness secrecy will be violated. On the other hand, failure to produce the requested information will deny the defendant the information he needs to support his motion to dismiss the death penalty, and in this way would violate his Fifth Amendment rights to due process, and to not be tried for his life except by grand jury indictment.

### B.  Until the instructions are disclosed, the court should presume that the jury did not know of the significance of the special findings, and they should therefore be quashed.

Until the government produces the instructions or other legal advice that guided the grand jury when it considered the special findings in this case, the defendant (who has no means of obtaining the requested information on his own) is entitled to a presumption that the government either failed or refused to inform the jury of the

7

special findings' legal significance.  Given the ease with which the government could resolve this question by providing the instructions, it is both realistic and fair to suppose that counsel for the government left the grand jury in the dark about the life-or-death significance of these final paragraphs of the indictment.  And for reasons already discussed, a grand jury deprived of so elemental a piece of information simply cannot fulfill its historic constitutional role as a local, democratic restraint on the life-or-death prosecutorial power of distant, unelected government functionaries – be they at the seat of British royal power in London, or at the Department of Justice in Washington, D.C.

Tucked into the third and second-to-last paragraphs near the end of a 74-page indictment, the largely repetitive special allegations include nothing that would have alerted the grand jury to the momentous fact that by approving them, the grand jurors would be authorizing a punishment which the people of Massachusetts – along with almost every other democratic nation – had long since rejected.   In the absence of any explanation or instruction to the grand jury, the mere fact that the special allegations appear somewhere near the end of the indictment  provides no assurance that, as to this most solemn of decisions, the defendant has been afforded the full protection of that "'strong and two-fold barrier, of a presentment and a trial by jury, between the [lives] of the people and the prerogative of the [government].'" *Duncan v. Louisiana*, 391 U. S. 145, 151 (1968) (quoting W. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 349 (T. Cooley ed. 1899)).

The government may respond with the general proposition that a criminal defendant may not challenge an indictment by relitigating the sufficiency or propriety of the evidence heard by the grand jury, *United States v. Capozzi*, 486 F.3d 711, 726 (1st Cir. 2007),  or that federal prosecutors are not normally required to provide legal instructions to grand juries. *United States v. Lopez-Lopez,* 282 F.3d 1, 8-9 (1st Cir. 2002).  But in those cases, defendants sought judicial review of claims of mere evidentiary insufficiency or procedural irregularity in the grand jury room.  The issue here is more fundamental:  unless the grand jury in this case was told in some way that it was being asked to authorize a capital prosecution, it simply could not have fulfilled its most basic function as a check on the prosecutorial authority of the executive branch of government to seek a defendant's execution.

The First Congress both drafted the Indictment Clause of the Fifth Amendment and passed the new nation's first federal criminal statutes.  In 1790, laws that authorized the death penalty mandated it; they left no other sentencing option.  *See* generally, Rory K. Little, "The Federal Death Penalty: History and Some Thoughts about the Department of Justice's Role," 26 FORDHAM URBAN L.J. 347, 450-90 (1999).  This practice was consistent with that of the states, which at the time the Bill of Rights was adopted in 1791, "followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses." *Woodson v. North Carolina*, 428 U.S. 280, 289 (1976). Thus, the Framers of the Fifth Amendment necessarily understood the Indictment Clause as a guarantee that the grand jury would

9

retain the power to choose which defendants would receive a sentence of death upon conviction. And it is inconceivable that the Framers would have recognized any mode of procedure that concealed this life-or-death authority in an incomprehensible morass of fine print.

The grand jury's historical role in deciding whether a defendant should face the death penalty is more critical now than ever. Few checks exist on the federal government's power to pursue death as punishment against one of its citizens, and fewer opportunities exist for any local community to express its desires about the appropriateness of the death penalty in a given case. Prosecutorial decision-making in capital cases is centralized in the Department of Justice in Washington. *See United States v. Navarro-Vargas*, 367 F.3d 896, 902 (9th Cir. 2004) (Kozinski, J., dissenting) ("[a]n independent grand jury – one that interposes the local community's values on prosecutorial decisions that are controlled by policies set in Washington as to the enforcement of laws passed in Washington – seems like an important safeguard that is entirely consistent with the grand jury's traditional function"), *reh'g en banc*, 408 F.3d 1184 (9th Cir. 2005). And nowhere is this decision-making authority more centralized than in death penalty cases, since the actual decision to seek the death penalty in this and every other federal capital case is made personally by the Attorney General of the United States. USAM 9-10.050 ("Except as otherwise provided herein . . . the Attorney General will make the final decision whether to seek the death penalty.").

The Indictment Clause of the Fifth Amendment is designed as a check on the unfettered exercise of prosecutorial power by subjecting the national government's decision to charge "a capital . . . crime" to the independent review of a local grand jury. That cannot happen if the grand jury is deprived of the minimum amount of information required to exercise its constitutionally-assigned role. Absent proof to the contrary, such a deprivation appears to have occurred here. Therefore the special findings cannot support a death penalty prosecution, and should be stricken from the indictment.

### III. CONCLUSION

For the foregoing reasons, the defendant requests that the Court require the government to produce a transcript of all legal instructions, legal advice, and legal opinions given by the district court or the prosecutors to the grand jury which returned the indictment in this case. He further moves that, absent such production, the Court strike the special findings contained in ¶¶ 155-166 of the indictment for lack of evidence that the grand jury could have known that by returning such findings, it was exposing the defendant to a capital rather than to a non-capital prosecution, and that it exclude the death penalty as a possible punishment in this case.

        Respectfully submitted,

        DZHOKHAR TSARNAEV
        By his attorneys

        */s/ David I. Bruck*

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 7, 2014.

*/s/ Judy Clarke*