UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION TO PRESERVE CONSTITUTIONAL CHALLENGES
TO THE FEDERAL DEATH PENALTY ACT**

Counsel for the defendant Dzhokhar Tsarnaev hereby move that the court declare the Federal Death Penalty Act, 18 U.S.C §§ 3591-3599, to be unconstitutional on the following grounds:

1. The FDPA violates the Indictment Clause of the Fifth Amendment under *Ring v. Arizona,* 536 U.S. 584 (2002), because 18 U.S.C. § 3593(a) expressly confers upon the prosecution the unilateral power to charge the statutory aggravating factors which raise the maximum punishment from life imprisonment to death, whereas *Ring* recognized such sentencing factors as the functional equivalent of offense elements which must, in federal cases, be found by a grand jury.

2. The statute's misallocation of the death-penalty charging power cannot be corrected by including special findings of statutory aggravating factors in the indictment, because such a practice is at odds with Congress's having expressly conferred death-eligibility charging authority on the prosecution. See *United States v. Jackson,* 390 U.S. 570 (1968) (declining to fashion new capital sentencing procedures to correct a constitutional defect in existing statute).

3. The FDPA violates the Eighth Amendment mandate of *Furman v. Georgia*, 408 U.S 238 (1972), because, as demonstrated by the infrequency of its application since its enactment in 1994, and the extremely unequal racial and geographical distribution of the relative handful of sentences that federal courts have actually imposed, the statute's operation and effect "is

1

> cruel and usual in the same way that being struck by lightning is cruel and unusual." *Id.,* 408 U.S. at 309-310 (Stewart, J., concurring).
>
> 4. The FDPA violates the Eighth Amendment because, as manifested by its seemingly ineradicable pattern of racially disparate enforcement and the risk it poses of executing innocent people, the death penalty constitutes cruel and unusual punishment under all circumstances.

The defendant recognizes that the First Circuit rejected each of these challenges in *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), and that *Sampson* remains binding precedent in this Circuit. Under these circumstances, counsel will not further elaborate on these claims except to observe that the force of several of them has only increased since *Sampson* was decided in 2007, in view of:

   a. a sharp and sustained reduction in the number of new federal and state death sentences and executions over the past decade[1]

   b. the steady year-by-year increase in states that have legislatively abolished the death penalty, or that have imposed executive moratoria on its use[2]

   c. the concentration of death sentences in a tiny minority of the nation's counties[3]

---

[1] *See* Pete Yost, "Report: Use of death penalty shows decline in United States," WASHINGTON POST (December 22, 2013)

[2] Peter Baker, "Obama Orders Policy Review on Executions," NEW YORK TIMES A-1 (May 3, 2014) (citing recent abolition of death penalty in New York, New Jersey, New Mexico, Illinois, Connecticut, and Maryland, and executive moratoria in states of Washington, Oregon and Colorado).

[3] Elizabeth Chuck, NBC News (Oct. 9,2013), available at http://www.nbcnews.com/news/other/study-two-percent-counties-responsible-majority-us-executions-f8C11362075

   d. mounting evidence that innocent people have actually been executed in recent years in the United States[4]

   e. public and worldwide revulsion over the recurring spectacle of botched executions,[5] and

   f. the nearly-total (and increasing) isolation of the United States as an executing nation among the democratic countries of the world.[6]

The vulnerability of this particular death penalty prosecution to Eighth Amendment challenge is all the greater in light of recent legal authority and scholarship that cast doubt on the power of the federal government to impose the death penalty in states, like Massachusetts, that have abolished it.  In decisions such as *Bond v. United States*, 131 S.Ct. 2355 (2011), *cert. granted after remand*, 133 S.Ct. 978 (2013), and *United States v. Windsor*, 133 S.Ct. 2675 (2013), the Supreme Court has placed renewed emphasis on respecting the limitations of federal authority in areas that have traditionally been consigned to the states, either wholly (as in the case of domestic relations) or primarily (in the case of suppression of crime under state law).  The importance of respecting the primacy of state authority in criminal law has particular resonance where the federal

---

[4] *See e.g.*, John Schwartz, "Evidence of Concealed Jailhouse Deal Raises Questions about a Texas Execution," NEW YORK TIMES A-17 (Feb. 28, 2014) (detailing case of Cameron Todd Willingham); David Grann, "Trial by Fire:  Did Texas Execute an Innocent Man?" NEW YORKER (Sept. 7, 2009) (same).

[5] Austin Sarat et al., "Botched Executions Have Never Swayed Public Opinion. This Time Could Be Different, THE NEW REPUBLIC (May 2, 2014) http://www.newrepublic.com/article/117614/clayton-lockett-botched-execution-could-it-sway-public-opinion

[6] Max Fisher, "Map: Which Countries Use the Death Penalty?" THE ATLANTIC (July 6, 2011) http://www.theatlantic.com/international/archive/2011/07/map-which-countries-use-the-death-penalty/241490/

government seeks to impose the death penalty in a state that has rejected it. For as modern scholarship has begun to reveal, the original purpose of the Eighth Amendment was to deprive the federal government of the power to inflict, as impermissibly "cruel and unusual," severe punishments that were unknown ("unusual") *in a given state.*

This understanding of the Eighth Amendment's Cruel and Unusual Punishments Clause, as detailed in an illuminating law review article by Professor Michael Mannheimer, *When the Federal Death Penalty is 'Cruel and Unusual,'* 74 U. CIN. L. REV. 8198 (2006), is faithful to the Anti-Federalist origins of the Bill of Rights. The Eighth Amendment was part of an effort not simply to secure individual rights, but also to constrain the power of the federal government that was created by the new Constitution. Such concern about a potentially overweening federal government inspired the Anti-Federalists' successful campaign to secure the criminal procedure protections found in the Bill of Rights. Mannheimer, *id.* at 851 ("Though framed in terms of protecting the rights of individuals, the Bill of Rights was viewed in 1791 as a barrier between the States and the national government.") When the Eighth Amendment is properly understood as part of an effort to limit the power of the federal government, it should prohibit the federal government from inflicting severe punishments that are not authorized by state law. *Id.* at 874-876. See *United States v. Fell*, 571 F.3d 264, 289-290 (2nd Cir. 2009) (Calabresi, J., dissenting). In the present case, we submit, the Eighth Amendment prohibits the application of the death penalty because the death penalty is not authorized under Massachusetts law, and is therefore unusual in the constitutional sense.

The defense advances all of these constitutional claims now, and requests that the Court strike the death penalty as a possible punishment for the reasons set forth above. In so doing, defense counsel would note that in the course of its decades-long struggle with the death penalty, the Supreme Court has eventually overruled many of its own seemingly well-settled precedents. E.g. *Roper v. Simmons*, 543 U.S. 551 (2005) (overruling *Stanford v. Kentucky*, 492 U.S. 361 (1989) to prohibit the execution of persons for crimes committed under the age of 18); *Atkins v. Virginia*, 536 U.S. 304 (2002) (overruling *Penry v. Lynaugh*, 492 U.S. 302 (1989) to prohibit the execution of persons with mental retardation); *Ring v. Arizona*, 536 U.S. 584 (2002) (overruling *Walton v. Arizona*, 497 U.S. 639 (1990) to require that all facts required to authorize imposition of the death penalty be found by a jury and proven beyond a reasonable doubt); *Furman v. Georgia*, 408 U.S. 238 (1972) (effectively overruling *McGautha v. California*, 402 U.S. 183 (1971) to invalidate all capital sentencing schemes that failed to provide legislative guidelines to restrict imposition of the death penalty). Many more such reversals of the legal underpinnings of America's death penalty system are sure to come as capital punishment continues its inexorable decline. However, counsel recognize that so long as *Sampson* remains as precedent in this Circuit, this Court is bound by it. The defendant's claims are therefore submitted for decision.

        Respectfully submitted,

        DZHOKHAR TSARNAEV
        By his attorneys

        */s/ David I. Bruck*

        Judy Clarke, Esq. (CA Bar # 76071)
        CLARKE & RICE, APC
        1010 Second Avenue, Suite 1800
        San Diego, CA 92101
        (619) 308-8484
        JUDYCLARKE@JCSRLAW.NET

        David I. Bruck, Esq. (SC Bar # 967)
        220 Sydney Lewis Hall
        Lexington, VA 24450
        (540) 460-8188
        BRUCKD@WLU.EDU

        Miriam Conrad, Esq. (BBO # 550223)
        Timothy Watkins, Esq. (BBO # 567992)
        William Fick, Esq. (BBO # 650562)
        FEDERAL PUBLIC DEFENDER OFFICE
        51 Sleeper Street, 5th Floor
        (617) 223-8061
        MIRIAM_CONRAD@FD.ORG
        TIMOTHY_WATKINS@FD.ORG
        WILLIAM_FICK@FD.ORG

## Certificate of Service

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 7, 2014.

        */s/ Judy Clarke*