(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                                   **Date:** 3/23/2006

**To:** All Field Offices          **Attn:** ADIC, SAC, and CDC
    All HQ Divisions                    EAD; AD
                                        FBIHQ, Manuals Desk
    All Legats                          Legal Attache

**From:** Office of the General Counsel
        Investigative Law Unit
        **Contact:** Jung-Won Choi (202)324-9625

**Approved By:** Caproni Valerie E
            Lammert Elaine N
            Larson David C

**Drafted By:** Choi Jung-Won

**Case ID #:** 66F-HQ-1283488-3
            66F-HQ-C1384970

**Title:** ELECTRONIC RECORDING OF CONFESSIONS AND WITNESS
        INTERVIEWS

**Synopsis:** To clarify existing FBI policy on electronic recording
of confessions and to provide guidance on some of the factors
that the SAC should consider when deciding whether to authorize
recording.

**Administrative:** This document is a privileged FBI attorney
communication and may not be disseminated outside the FBI without
OGC approval. To read the footnotes in this document, it may be
required to download and print the document in WordPerfect.

**Details:** FBI policy on electronic recording of confessions and
witness interviews is contained in SAC Memorandum 22-99, dated 10
August 1999, which revised SAC Memorandum 22-98, dated 24 July
1998. Under the current policy, agents may not electronically
record confessions or interviews, openly or surreptitiously,
unless authorized by the SAC or his or her designee. See MIOG,
Part II, Section 10-10.10(2). Consultation with an AUSA, CDC, or
OGC may be appropriate in certain circumstances, but it is not
required.[1] In certain circumstances (set forth in the above)

---

[1] If the recording is going to be surreptitious, SACs are urged to
obtain the concurrence of the CDC or the appropriate OGC attorney. In
addition, in accordance with the Attorney General's "Procedure for Lawful,
Warrantless Monitoring of Verbal Communication," dated May 30, 2002, advice
that the proposed surreptitious recording is both legal and appropriate must
be obtained from the USA, AUSA or DOJ attorney responsible for the
investigation.

DAG000001627

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1283488-3, 3/23/2006

guidance),[2] FBIHQ concurrence is required.

In recent years, there has been on-going debate in the
criminal justice community whether to make electronic recording
of custodial interrogations mandatory.  According to a study
published in 2004 by a former U.S. Attorney,[3] 238 law enforcement
agencies in 37 states and the District of Columbia electronically
record some or all custodial interviews of suspects.  In four of
those jurisdictions, electronic recording is mandated by law - by
legislation in Illinois and the District of Columbia and by case
law opinions issued by the state supreme courts of Alaska and
Minnesota.  In addition, it is the practice in some foreign
countries--such as Great Britain and Australia--to record all
interviews of suspects, and some U.S. Attorneys feel strongly
that at least some interviews should be required to be recorded.[4]

There is no federal law that requires federal agents to
electronically record custodial interviews and, to our knowledge,
no federal law enforcement agency currently mandates this
practice.  There have been isolated incidents in which federal
district court judges, as well as some United States Attorneys,
have urged the FBI to revise its current policy to require
recording all custodial interviews, or at least those involving
selected serious offenses.  In addition, agents testifying to
statements made by criminal defendants have increasingly faced
intense cross-examination concerning this policy in apparent
efforts to cast doubt upon the voluntariness of statements in the
absence of recordings or the accuracy of the testimony regarding
the content of the statement.  Furthermore, in some task force
cases that result in state prosecution, FBI state or local
partners have been precluded from using FBI agent testimony of
the defendant's confession because of restrictive state law or
policy.

---

[2] These circumstances include, among other things, extensive media
scrutiny, difficult legal issues, complex operational concerns, or significant
involvement by FBIHQ.

[3]  Thomas P. Sullivan, *Police Experiences with Recording Custodial
Interrogations*, Northwestern University School of Law, Center on Wrongful
Convictions, Number 1, Summer 2004.

[4]  There is a group within the Department of Justice, which includes
the FBI, DEA, ATF and the Marshals Service, that has met periodically to
discuss this issue.  It is conceivable that an outgrowth of those discussions
will be a pilot program in one or more judicial districts in which recording
at least certain interviews will be required.

2

DAG000001628

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1283488-3, 3/23/2006


        Against this backdrop, FBI executive management has
reviewed the current policy.  After a careful deliberation of all
the available options, the Director has opted for now to retain
the current policy but has tasked the General Counsel to issue
guidance on the factors that the SAC or his or her designee
should consider before granting exceptions.

        Before listing those factors, a brief review of the
sound reasons behind the FBI policy on electronic recording of
confessions and interviews is in order.  First, the presence of
recording equipment may interfere with and undermine the
successful rapport-building interviewing technique which the FBI
practices.[5]  Second, FBI agents have successfully testified to
custodial defendants' statements for generations with only
occasional, and rarely successful, challenges.  Third, as all
experienced investigators and prosecutors know, perfectly lawful
and acceptable interviewing techniques do not always come across
in recorded fashion to lay persons as proper means of obtaining
information from defendants.  Initial resistence may be
interpreted as involuntariness and misleading a defendant as to
the quality of the evidence against him may appear to be unfair
deceit.  Finally, there are 56 fields offices and over 400
resident agencies in the FBI.  A requirement to record all
custodial interviews throughout the agency would not only involve
massive logistic and transcription support but would also create
unnecessary obstacles to the admissibility of lawfully obtained
statements, which through inadvertence or circumstances beyond
control of the interviewing agents, could not be recorded.

        Notwithstanding these reasons for not mandating
recording, it is recognized that there are many situations in
which recording a subject's interview would be prudent.  For this
reason, it has been FBI policy for nearly eight years to grant an
SAC the authority and flexibility to permit recording if he or
she deems it advisable.

        Often, during the time this policy has been in effect,
SAC discretion has been viewed negatively; i.e., as an
"exception" to the "no recording" policy, instead of positively;
i.e., as a case-by-case opportunity to use this technique where
and when it will further the investigation and the subsequent
prosecution.  Supervisors are encouraged to seek permission to
record, and SACs are encouraged to grant it, whenever it is
determined that these objectives will be met.

---

[5] In theory, surreptitious recording would not affect this approach.
However, if recording became routine practice, it would not take long before
that practice became well known--especially among members of organized crime.

3

DAG000001629

To: All Field Offices   From:   Office of the General Counsel
Re:   66F-HQ-1283488-3, 3/23/2006

When deciding whether to exercise this discretion, SACs
are encouraged to consider the following factors:

1) Whether the purpose of the interview is to gather
evidence for prosecution, or intelligence for analysis, or both;

2) If prosecution is anticipated, the type and
seriousness of the crime, including, in particular, whether the
crime has a mental element (such as knowledge or intent to
defraud), proof of which would be considerably aided by the
defendant's admissions in his own words;

3) Whether the defendant's own words and appearance (in
video recordings) would help rebut any doubt about the
voluntariness of his confession raised by his age, mental state,
educational level, or understanding of the English language; or
is otherwise expected to be an issue at trial, such as to rebut
an insanity defense; or may be of value to behavioral analysts;

4) The sufficiency of other available evidence to prove
the charge beyond a reasonable doubt;

5) The preference of the United States Attorney's
Office and the Federal District Court regarding recorded
confessions;

6) Local laws and practice--particularly in task force
investigations where state prosecution is possible;

7) Whether interviews with other subjects in the same
or related cases have been electronically recorded;

8) The potential to use the subject as a cooperating
witness and the value of using his own words to elicit his
cooperation;

9) Practical considerations--such as the expected
length of the interview; the availability of recording equipment
and transcription (and, if necessary, translation) services; and
the time and available resources required to obtain them.   If
cost factors prove prohibitive, consider whether the requesting
U.S. Attorney's Office will agree to pay for the services.

These factors should not be viewed as a checklist and
are not intended to limit the SAC's discretion.   It is
recognized, however, that establishing reasonable standards on
the type of cases, crimes, circumstances, and subjects for which
recording is a desirable objective so as to maintain internal
field office consistency and to inform field agents and
supervisors when and why to request recording.

4

DAG000001630

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1283488-3, 3/23/2006


       Field office standards are to be encouraged for another
very important reason.  The absence of any standard by which
field office discretion in this matter is exercised will render
testifying agents vulnerable to attack on cross-examination.  If,
on the other hand, an agent can point to identifiable standards
that provide a reasonable explanation for why some interviews are
recorded and others are not, the implication that the agent chose
not to record an interview to mask the involuntary nature of the
defendant's admissions will be much harder to argue.[6] This office
is prepared to assist in the preparation of such standards if
desired.

       Finally, in order to assist agents who testify to
unrecorded admissions, an explanation of this policy and the
reasons behind it should be added to field office quarterly legal
training.  Questions may be directed to Assistant General Counsel
Jung-Won Choi, at the Office of the General Counsel,
Investigative Law Unit, at 202-324-9625.

---

[6] Carrying this point further, it would be even easier to withstand
cross-examination if a fixed policy as to when to record and when not to
record were established at FBI Headquarters that permits no field office or
agent discretion.  Yet, such an advantage would be far off set by the loss of
flexibility that field office SACs and supervisors need to make sound
investigative decisions such as the choice of interviewing techniques.

5

DAG000001631

To:  All Field Offices   From:   Office of the General Counsel
Re:  66F-HQ-1283488-3, 3/23/2006

LEAD(s):

Set Lead 1:   (Action)

ALL RECEIVING OFFICES

Disseminate to all personnel.  The CDC of each field
office should be the principal point of contact for this EC and
should provide a briefing to the agents in his or her office
consistent with this EC.

♦♦

1 - Ms. Caproni
1 - Mr. Kelley
1 - Ms. Gulyassy
1 - Ms. Thomas
1 - Ms. Lammert
1 - Mr. Larson
1 - Mr. Choi
2 - ILU

6

DAG000001632