*The New York Times* Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



March 25, 2011

# F.B.I. Memorandum

*Below is the text of an unsigned, internal F.B.I. memorandum, obtained by The New York Times, that provides guidance to agents about when, in the course of interrogating a terrorism suspect, they should advise the suspect of his so-called Miranda rights to remain silent and have an attorney present during questioning.*

U.S. Department of Justice

Federal Bureau of Investigation

October 21, 2010

Custodial Interrogation for Public Safety

and Intelligence-Gathering Purposes of Operational

Terrorists Inside the United States [1]

Identifying and apprehending suspected terrorists, interrogating them to obtain intelligence about terrorist activities and impending terrorist attacks, and lawfully detaining them so that they do not pose a continuing threat to our communities are critical to protecting the American people. The Department of Justice and the FBI believe that we can maximize our ability to accomplish these objectives by continuing to adhere to FBI policy regarding the use of Miranda warnings for custodial interrogation of operational terrorists [2] who are arrested inside the United States:

1. If applicable, agents should ask any and all questions that are reasonably prompted by an immediate concern for the safety of the public or the arresting agents without advising the arrestee of his Miranda rights. [3]

2. After all applicable public safety questions have been exhausted, agents should advise the arrestee of his Miranda rights and seek a waiver of those rights before any further interrogation occurs, absent exceptional circumstances described below.

3. There may be exceptional cases in which, although all relevant public safety questions have been asked, agents nonetheless conclude that continued unwarned interrogation is necessary to collect valuable and timely intelligence not related to any immediate threat, and that the government's interest in obtaining this intelligence outweighs the disadvantages of proceeding with unwarned interrogation. [4] In these instances, agents should seek SAC approval to proceed with unwarned interrogation after the public safety questioning is concluded. Whenever feasible, the SAC will consult with FBI-HQ (including OGC) and Department of Justice attorneys before granting approval. Presentment of an arrestee may not be delayed simply to continue the interrogation, unless the defendant has timely waived prompt presentment.

The determination whether particular unwarned questions are justified on public safety grounds must always be made on a case-by-case basis based on all the facts and circumstances. In light of the magnitude and complexity of the threat often posed by terrorist organizations, particularly international terrorist organizations, and the nature of their attacks, the circumstances surrounding an arrest of an operational terrorist may warrant significantly more extensive public safety interrogation without Miranda warnings than would be permissible in an ordinary criminal case. Depending on the facts, such interrogation might include, for example, questions about possible impending or coordinated terrorist attacks; the location, nature, and threat posed by weapons that might post an imminent danger to the public; and the identities, locations, and activities or intentions of accomplices who may be plotting additional imminent attacks.

As noted above, if there is time to consult with FBI-HQ (including OGC) and Department of Justice attorneys regarding the interrogation strategy to be followed prior to reading the defendant his Miranda rights, the field office should endeavor to do so. Nevertheless, the agents on the scene who are interacting with the arrestee are in the best position to assess what questions are necessary to secure their safety and the safety of the public, and how long the post-arrest interview can practically be delayed while interrogation strategy is being discussed.

[1] This guidance applies only to arrestees who have not been indicted and who are not known to be represented by an attorney. For policy on interrogation of indicted defendants, see Legal Handbook for Special Agents (LHBSA) Section 7-3.2 For policy on contact with represented persons, see LHBSA Sections 7-4.1 and 8-3.2.2.

[2] For these purposes, an operational terrorist is an arrestee who is reasonably believed to be either a high-level member of an international terrorist group; or an operative who has

personally conducted or attempted to conduct a terrorist operation that involved risk to life; or an individual knowledgeable about operational details of a pending terrorist operation.

[3] The Supreme Court held in New York v. Quarles, 467 U.S. 649 (1984), that if law enforcement officials engage in custodial interrogation of an individual that is "reasonable prompted by a concern for the public safety," any statements the individual provides in the course of such interrogation shall not be inadmissible in any criminal proceeding on the basis that the warnings described in Miranda v. Arizona 384 U.S. 436 (1966), were not provided. The court noted that this exception to the Miranda rule is a narrow one and that "in each case it will be circumscribed by the [public safety] exigency which justifies it." 467 U.S. at 657.

[4]The Supreme Court has strongly suggested that an arrestee's Fifth Amendment right against self-incrimination is not violated at the time a statement is taken without Miranda warnings, but instead may be violated only if and when the government introduces an unwarned statement in a criminal proceeding against the defendant. See Chavez v. Martinez, 538 U.S. 760, 769 (2003) (plurality op.); id. at 789 (Kennedy, J., concurring in part and dissenting in part); cf. also id. at 778-79 (Souter, J., concurring in the judgment); see also United States v. Patane, 542 U.S. 630, 641 (2004) (plurality opinion) ("[V]iolations [of the Fifth Amendment right against self-incrimination] occur, if at all, only upon the admission of unwarned statements into evidence at trial."); United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) ("[A] violation [of the Fifth Amendment right against self-incrimination] occurs only at trial.")