UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION FOR LIST OF MITIGATING FACTORS**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files his response to the Government's Motion for List of Mitigating Factors. [DE 294] In that motion, the government asks that the Court require the defendant to provide a list of the mitigating factors on which he intends to rely at sentencing at least 30 days before the deadline for submitting jury questionnaires. The government's request comports with neither the constitutional and statutory framework for capital trials under the Federal Death Penalty Act nor the practical realties of trial procedure in such cases, and should be denied. Indeed, undersigned counsel are not aware of a supplemental juror questionnaire in a federal capital case where a list of mitigating factors, specific to a case, has been included.

**1.    The Federal Death Penalty Act does not support the government's unprecedented request**

The government seeks an advance look at the defendant's basic arguments for life – essentially, his theory for why he should be allowed to live if convicted. And in this context, the government acknowledges, as it must, that the Federal Death Penalty Act imposes only upon the government – and not the defendant – a duty to file pretrial notice of the sentencing factors upon which it will rely. *See* 18 U.S.C. § 3593(a).

The failure to expressly require defense notice of mitigating factors is not the only way in which the FDPA accords starkly different treatment to aggravating and mitigating factors. The FDPA requires that aggravating factors be proven beyond a reasonable doubt and to the unanimous satisfaction of all 12 jurors, while a mitigating factor may be found by a mere preponderance and, once found by even a single juror, it may be weighed in the sentencing calculus. 18 U.S.C. § 3593(c), (d). Moreover, and perhaps most importantly, while the FDPA sets out a list of eight nonexclusive statutory mitigating factors, 18 U.S.C. § 3592(a), there is no requirement that any list of mitigating factors be prepared as such. In practice, of course, the defense prepares such a list in order to focus the jury on some of the reasons why a client should be spared execution and for inclusion on a verdict sheet. But nothing about that practice requires or implies advance disclosure to the government.

The handful of district court cases the government cites provide little support for the relief it seeks. In *United States v. Catalan Roman*, 376 F.Supp.2d 108 (D PR 2005), the court's memorandum opinion began as follows: "The issue presented is one of narrow compass, concerning whether the Court may compel a capital defendant to notice and disclose non-mental expert mitigation in advance *of the sentencing phase*, where that defendant spurns reciprocal disclosure." (Emphasis added). The court answered that question in the affirmative, but *Catalan Roman* neither says nor implies anything about whether a capital defendant may be compelled to disclose the reasons why he should not be sentenced to death, if convicted, to the government, the public, and the jury panel long before he has even been tried. In *United States v. Wilson,* 493 F.Supp.2d 464 (EDNY 2006), the court, with little discussion, ordered the defense to provide notice of mitigating factors four days after the scheduled start of trial. And the trial court's

omnibus pretrial order in *United States v. Taveras*, 2006 WL 1875339, *9 (EDNY 2006) contained a brief and largely unexplained reference to a previous order requiring the defendant to furnish his list of mitigating factors prior to trial. In short, *Wilson* and *Taveras* appear to be the only cases – out of roughly 250 federal capital trials over the past nearly 25 years – in which federal district courts have ordered capital defendants to disclose to the government before trial (or in *Wilson*, four days into trial) the mitigating factors upon which they plan to rely in the event of conviction. And as the government acknowledges, Mot. at 3, not even in these few cases did the court order disclosure prior to the due date for the government's proposed jury questionnaire.

Other federal courts to have considered that issue have declined to impose such a requirement on the accused. Illustrative of these is the relatively recent unpublished order in *United States v. McCluskey,* Case 1:10-cr-02734-JCH, DE 1072 (D. N.M. July 2, 2013), attached as Exhibit A. There, faced with a government request for disclosure of a list of defense penalty phase witnesses, as well as mitigating factors, 30 days before *trial* (but not before the filing of proposed jury questionnaires), the Court noted that that the government already had "some indications of McCluskey's mitigating factors and penalty phase witnesses, and . . . has already conducted substantial investigations," and concluded:

> In exercising its inherent authority, the Court must balance McCluskey's constitutional rights, the Government's right of meaningful rebuttal, and the interest of the parties and the Court in fairness and judicial efficiency. *See [United States v]. Beckford*, 962 F. Supp. [748], 763 [(E.D. Va. 1997)]. The Court concludes that the Government has not justified its request for pretrial disclosure of McCluskey's penalty phase witnesses and mitigating factors. The Court orders that McCluskey disclose his lists of proposed mitigating factors and penalty phase witnesses on the next business day after a guilty verdict, if one is returned by the jury.

*Id.,* Mem. Op. at 4-5.

## 2.    Congress has already rejected the very notice requirement that the government proposes here.

Apparently dissatisfied with the asymmetry of its notice obligations under the FDPA, the Justice Department supported legislation in the 110th Congress that would have amended 18 USC § 3593 to add a new section, proposed 18 U.S.C. § 3593(b)(1), as follows:

> "(1) If, as required under subsection (a), the government has filed notice seeking a sentence of death, the defendant shall, a reasonable time before the trial, sign and file with the court and serve on the attorney for the government, notice setting forth the mitigating factor or factors that the defendant proposes to prove mitigate against imposition of a sentence of death. . .")

Congressional Research Service, CRS Report for Congress, THE DEATH PENALTY: CAPITAL PUNISHMENT LEGISLATION IN THE 110TH CONGRESS (2007) at 12.   Following a hearing before the House Judiciary Subcommittee on Crime, Terrorism, Homeland Security, and Investigations on March 30, 2006, at which a Fifth Amendment objection was directed at the notice-of-mitigation proposal, Congress took no further action on the proposed FDPA amendments, and no proposal to require defense notice of mitigating factors has been reintroduced in the years since then.

The Fifth Amendment objection to mandatory pretrial notice of mitigating factors is substantial – no defendant can announce that he "intends to rely" on many of the statutory mitigating factors set forth in 18 U.S.C. § 3592(a), e.g., impaired capacity, duress, minor participation, equally culpable defendants and mental or emotional disturbance, without also effectively admitting that he committed the charged offense.  That is why the Federal Death Penalty Act, like every modern capital sentencing statute, segregates the determination of punishment from the adjudication of guilt or innocence, and why federal law takes great care to ensure that pretrial litigation

concerning punishment does not encroach upon the presumption of innocence and the right against compelled self-incrimination.  *E.g.,* Fed. R. Crim. P. 12.2(c)(2) (withholding from the government all results of defendant's pretrial mental health evaluations until after conviction).  Like the ill-fated 2006 legislative proposal to force such early disclosure of mitigating factors, the government's request here seems oblivious to this fundamental precept of death penalty sentencing procedure.

To be sure, there can be many reasons why any given bill fails to win Congressional approval, and so, as a general matter, courts "are chary of attributing significance to Congress' failure to act."  *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 137 (1985).  But given that the government relies so heavily on the Court's discretionary authority under Rule 57(b) "to regulate practice" in the district court, Mot. at 2, it seems appropriate to accord some significance to the Justice Department's fairly recent failure to persuade Congress of the value – and the constitutionality – of a less intrusive version of what it wishes the Court to order here.

### 3. Even if the Fifth Amendment and the FDPA permitted the relief requested, granting it would further none of the government's stated objectives.

Finally, it remains to consider the practical value of what the government seeks:  a listing of mitigating factors for its own use in drafting a proposed jury questionnaire to be filled out by prospective jurors before the Court evaluates their qualifications to serve.  As a general matter, the defense agrees with the government that to be meaningful, voir dire examination of prospective jurors in death penalty cases must be framed in terms of the case to be tried.  *United States v. Fell*, 372 F. Supp. 2d 766, 769-771 (D. Vt. 2005); *United States v. Johnson*, 366 F. Supp. 2d 822, 834-844, 848 (N.D. Iowa 2005); *United States v. Burgos*, 2012 WL 1190191 (D. P.R. 2012).  But the government never suggests

how it could possibly utilize the information from a defense-generated list of mitigating factors *in a jury questionnaire.*

A list of mitigating factors from the defense is also inadequate to serve the government's stated objectives because, under 18 U.S.C. § 3592(a), jurors are not limited to considering those mitigating factors cited by the defense. ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including . . . (8) [o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." )

In sum, the government's expressed concerns are more theoretical than real.  To the extent that it needs to know what mitigating factors may prove relevant in determining juror impartiality, it already knows what those factors are, or can figure them out easily enough.  The government has no need of such information from the defense to craft its own proposed jury questionnaire, and will not need such a list of mitigating factors in order to know which questions to ask prospective jurors once jury selection begins.  This vanishingly small government interest in early defense disclosure is far outweighed by the statutory and constitutional protections that the government seeks to displace by its request.

## Conclusion

For the forgoing reasons, the Court should deny the government's motion to require the defendant to file a list of mitigating factors 30 days before whatever date the Court may set for submission of jury questionnaires.

Dated: May 21, 2014  Respectfully Submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/      David I. Bruck

Judy Clarke, Esq. (CA Bar# 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 458-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 21, 2014.

/s/ Judy Clarke