UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Crim. No. 13-10200-GAO |
| v. | ) | |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR "INFORMATIVE OUTLINE" OF THE EVIDENCE OF AGGRAVATING FACTORS

The United States of America, by and through its undersigned counsel, respectfully opposes Tsarnaev's motion to compel the government to produce an "informative outline" of the evidence it will offer to prove various aggravating factors alleged in the government's Notice of Intent to Seek the Death Penalty.  Tsarnaev claims he needs this evidence to determine whether the factors improperly duplicate one another.  He also contends that he cannot properly defend against the uncharged-crimes aggravator without more specific notice of the facts supporting it.

Tsarnaev's motion should be denied for three reasons. First, the law does not require the government to identify the evidence it will present in aggravation, let alone identify it over five months before trial.  Second, the Constitution does not bar reliance on "duplicative" aggravators, and even if it did, the alleged aggravators in this case are conceptually distinct, regardless of the evidence that supports them.  Third,

the information provided to Tsarnaev in the Indictment, the
government's Notice of Intent to Seek the Death Penalty, and
discovery, have provided adequate notice of all the uncharged
crimes referenced in the government's aggravating factors.

   A.   The Law Does Not Require The Government to Provide The
        Defense a Guide To Its Case.

     As a preamble to his request for an "informative outline,"
Tsarnaev asserts that a heightened reliability standard applies
to this case because the government is seeking the death
penalty.  Although the law distinguishes between capital and
non-capital cases, generally speaking, it ensures heightened
reliability in death penalty matters through procedural
safeguards such as "a bifurcated proceeding, instruction on the
factors to be considered, and meaningful appellate review," not
by limiting the "particular substantive factors that should be
deemed relevant to the capital sentencing decision."  See
California v. Ramos, 463 U.S. 992, 998-99 (1983).  As numerous
courts have held, adequate procedural safeguards in federal
capital cases are provided by the Federal Death Penalty Act
("FDPA"), 18 U.S.C. §§ 3591 to 3593.

     The FDPA is a carefully crafted statute designed to ensure
heightened reliability and fairness in death penalty
determinations.  It places many burdens on the government,
including that the government provide advance notice of its

intent to seek the death penalty and of the aggravators alleged to exist, that it prove aggravators beyond a reasonable doubt to a unanimous jury, and that it respect constitutional limitations on the introduction of evidence.  But it does not require that the government provide a guide to its case or to identify all of the evidence that it will offer at a sentencing hearing to prove aggravators.  On the contrary, it satisfies its legal obligations on that score when it informs a defendant of the aggravators it intends to prove at trial.  See United States Higgs, 353 F.3d 281, 325 (4th Cir. 2003); United States v. Lecroy, 441 F.3d 914, 929 (11th Cir. 2006).  The Notice of Intent fully comports with those requirements.

Numerous courts have held that the government need not preview its evidence in aggravation.  See, e.g., Higgs, 353 F.3d at 321; United States v. Battle, 173 F.3d 1343, 1347 (11th Cir. 1999); United States v Solomon, 513 F. Supp.2d 528, 539 (W.D. Pa. 2007); United States v. Gooch, 2006 WL 3780781, at *21 (D.D.C. 2006); United States v. Sablan, 2006 WL 1028780, at *28 (D. Colo. 2006); United States v. Mayhew, 380 F. Supp.2d 936, 943 (S.D. Ohio 2005); United States v. Taylor, 316 F. Supp.2d 730, 738 (N.D. Ind. 2004); United States v. Roman, 371 F. Supp.2d 36, 44-45 (D.P.R. 2005); United States v. Williams, 2004 WL 2980027, at *17 (S.D.N.Y. 2000).

3

This Court should resist Tsarnaev's invitation to alter the balance struck by Congress in the FDPA or re-write its procedures to ensure what the statute already provides -- heightened procedural protection for the defendant.  Because the government has provided notice of its intent to seek the death penalty and the theories on which it intends to proceed, the Court should deny Tsarnaev's request for the disclosure of additional information.

B.    "Duplicative" Aggravators Are Not Impermissible And Do Not Appear in This Case.

There is no merit to Tsarnaev's argument that he needs an "informative outline" to determine whether five of the alleged aggravators are "duplicative."  For one thing, as we explained in our Combined Opposition to Tsarnaev's Motion to Strike Aggravating Factors ("Combined Opposition"), the FDPA contains no express prohibition on "duplicative" aggravating factors, and neither the Supreme Court nor the First Circuit has ever held that they are problematic, much less unconstitutional. (Combined Opp. at 8-11).  For the reasons set forth in our Combined Opposition, which we incorporate herein by reference, this Court should join the Fifth and Eighth Circuits in holding that the Constitution does not bar "duplicative" aggravators. See United States v. Robinson, 367 F.3d 278, 292-293 (5th Cir.

2004); United States v. Purkey, 428 F.3d 738, 761 (8th Cir. 2005).

For another thing, each of the challenged aggravators in this case -- alone or in combination with the others -- makes Tsarnaev more deserving of the death penalty than he would be if the aggravator did not apply.  That means they are not "duplicative" even pursuant to the decisions that recognize the "duplicativeness" doctrine.  Aggravators are "duplicative" only when one "necessarily subsumes" the other.  See, e.g., Cook v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998).  If two aggravators that apply to a murderer's conduct or character make him more deserving of the death penalty than he would be if only one of them applied, then, by definition, neither one "necessarily subsumes" the other.

That is the case here.  The substantial planning aggravator concerns Tsarnaev's premeditation to kill people; the Marathon-targeting aggravator concerns Tsarnaev's selection of a crime scene calculated to maximize harm; the justification-of-terrorism aggravator involves encouragement of third parties to commit similar offenses; the lack-of-remorse aggravator concerns Tsarnaev's personal callousness; and the uncharged-crimes aggravator stems from his involvement in other violent acts.  Because each of these factors, alone or in combination with the

others, increases Tsarnaev's culpability, none of them "necessarily subsumes" any of the others.

Furthermore, Tsarnaev's entire motion is based on the flawed premise that he needs to know all of the evidence that will be used to prove the aggravators because evidentiary overlap can make aggravators duplicative.  As we explained in our Combined Opposition, however, just because the **evidence** used to prove one factor subsumes the **evidence** used to prove another does not mean the one **factor itself** subsumes the other.  See Fields v. Gibson, 277 F.3d 1203, 1219-20 (10th Cir. 2002) ("[We] see no problem with . . . us[ing] the same evidence to support different aggravators."); accord United States v. Fell, 531 F.3d 197, 236 (2nd Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence.") (citing Jones v. United States, 527 U.S. 373 (1999)).  So long as two aggravating factors, in combination, make a murderer more culpable than he would be based on only one of those factors, they are not "duplicative" even if the evidence used to prove them is identical.  (See Combined Opp. at 13-14).

Finally, the Supreme Court has held that any possible harm from "duplicative" factors can be precluded merely by giving the jury an appropriate "weighing" instruction.  See Jones, 527 U.S. at 399-400.

Because Tsarnaev's argument that certain aggravators are "duplicative" has no legal or factual basis and could not in any event be aided by advance notice of the evidence underlying them, the Court should not compel the government to make disclosures that are not required by the FDPA or any other law.

C.   The Government Has Provided Adequate Notice of The Facts Underlying The Uncharged-Crimes Aggravator.

The government's uncharged-crimes aggravator is properly alleged and in no need of further explanation.  In capital cases, "it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision." Gregg v. Georgia, 428 U.S. 153, 204 (1976). Accordingly, proof of a defendant's other criminal acts, especially violent offenses, is highly relevant:

> To withhold [other acts of violence] from the jury creates a significant gap in the basis for their decision and paints a much rosier picture of the defendant than is true.  It is noteworthy that the statute . . . provides that the lack of a significant prior history of criminal conduct is a factor in mitigation. 18 U.S.C. § 3592(a)(5).  To disallow evidence of significant unadjudicated criminal conduct could create the misleading impression that this mitigating factor applied [to the defendant], when it did not.

United States v. Davis, 2003 WL 1873088, at *3 (E.D. La. Apr. 10, 2003); accord United States v. Gilbert, 120 F. Supp.2d 147, 152 (D. Mass. 2000).  Many courts have upheld the introduction of unadjudicated criminal acts during capital sentencing

7

proceedings.  See United States v. Runyon, 707 F.3d 475, 505 (4th Cir. 2013); United States v. Corley, 519 F.3d 716, 723-24 (7th Cir. 2008); United States v. Hall, 152 F.3d 381, 404 (5th Cir. 1998), abrogated on other grounds, United States v. Martinez-Salazar, 528 U.S. 304, 310-11 (2000).

In this case, the government has provided adequate notice of the uncharged crimes at issue.  Its Notice of Intent states that Tsarnaev

> participated in additional uncharged crimes of violence, including assault with a dangerous weapon, assault with intent to maim, mayhem, and attempted murder, on April 15, 2013 in Boston, Massachusetts (Counts One through Ten and Twelve through Fifteen) and on or about April 19, 2013 in Watertown, Massachusetts (Counts One through Ten and Twelve through Eighteen).

Doc. 167 at ¶ D.7.  The allegation identifies specific dates and offenses.  Furthermore the allegation refers to specific counts in the Indictment -- which in turn provide a narrative account of Tsarnaev's conduct.  The information available in the allegation itself and in the cited portions of the Indictment provides adequate notice of the factual basis for the aggravator.

Additionally, the government has already produced extensive information about this prosecution in discovery, including all of the evidence currently in its possession, custody and control that it will use to prove the uncharged-crimes aggravator.  In

light of that extensive discovery and the notice provided in the

aggravator itself and the Indictment, Tsarnaev cannot

demonstrate that he lacks adequate notice of the offenses

referenced in the uncharged-crimes aggravator.  See, e.g.,

United States v. Merriweather, 2014 WL 1513256 (N.D. Ala. Apr.

14, 2014) (considering discovery in determining adequacy of

notice).

**CONCLUSION**

WHEREFORE, the government respectfully requests that the

Court deny Tsarnaev's motion for an "informative outline" in its

entirety.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:  /s/ William D. Weinreb
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF
system, will be sent electronically to the registered
participants as identified on the Notice of Electronic Filing
(NEF) and that paper copies will be sent to those indicated as
non-registered participants on this date.

/s/ William D. Weinreb
WILLIAM D. WEINREB