UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
            v.                  )      Crim. No.13-10200-GAO
                                )
DZHOKHAR A. TSARNAEV,           )
            Defendant           )


COMBINED OPPOSITION TO
<u>DEFENDANT'S MOTIONS TO STRIKE AGGRAVATING FACTORS</u>

The United States of America, by and through its undersigned counsel, respectfully opposes defendant's two motions to strike certain aggravating factors from the government's Notice Of Intent to Seek the Death Penalty.  As grounds for this opposition, the government states the following.

> I.   "Betrayal of the United States" is a permissible factor that distinguishes Tsarnaev from less culpable murderers.

One of the nonstatutory aggravating factors alleged in the government's Notice of Intent to Seek the Death Penalty reads as follows:

> **Betrayal of the United States**.  DZHOKHAR TSARNAEV received asylum from the United States; obtained citizenship and enjoyed the freedoms of a United States citizen; and then betrayed his allegiance to the United States by killing and maiming people in the United States.

Tsarnaev claims that this factor violates the Fifth and Eighth Amendments to the Constitution and 18 U.S.C. § 3593(f).  We disagree.

In <u>Furman v. Georgia</u>, 408 U.S. 238 (1972) (per curiam), and <u>Gregg v. Georgia</u>, 428 U.S. 153, 189 (1976), the Supreme Court held that sentencing juries in capital cases must be given "adequate information and guidance" to ensure that the death penalty decision is not "arbitrary and capricious." <u>Gregg</u>, 428 U.S. at 195. The Federal Death Penalty Act ("FDPA") achieves this goal in part by directing juries to consider aggravating and mitigating factors in recommending a sentence. 18 U.S.C. §§ 3591-3593. There are two types of aggravating factors: "statutory aggravating circumstances . . . circumscribe the class of persons eligible for the death penalty," and nonstatutory aggravating factors (or NSAFs) aid the jury "in selecting, from among that class, those defendants who will actually be sentenced to death." <u>Zant v. Stephens</u>, 462 U.S. 862, 878 (1983). Considering aggravating factors helps the jury make "an individualized determination on the basis of the character of the individual and the circumstances of the crime." <u>Id.</u> at 879.

In this case, as in all capital cases, a comprehensive list of aggravating factors is essential to prevent an arbitrary and capricious sentencing decision. Unless the aggravating factors in this case fully comprehend all aspects of Tsarnaev's character and crimes that militate in favor of the death penalty, it is possible that another murderer whose character

2

and crimes are as reprehensible as Tsarnaev's might receive the death penalty while Tsarnaev is spared it.  "[P]otentially arbitrary impositions of the death sentence" such as that are precisely what the FDPA's procedures are meant to forestall. Beard v. Banks, 542 U.S. 406, 419 (2004).  See Furman 408 U.S. at 309-310 (Stewart, J., concurring) ("These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.  For, of all the people convicted of rapes and murders in 1967 and 1968, many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed.")

Tsarnaev begins his attack on the "Betrayal" factor by setting up a straw man and devotes the remainder of his motion to striking him down.  He argues that it is both unlawful and offensive to impose the death penalty on a murderer because he is a naturalized rather than a natural-born citizen.  As we previously explained, however, in our combined opposition to Tsarnaev's second and third motions to compel evidence ("Combined Opposition"), the "Betrayal" factor serves a different purpose.  (See Combined Opp. at 18-19).  It focuses the jury's attention on a relevant *circumstance* of Tsarnaev's crimes (namely, his motive for committing them), as well as on a

relevant aspect of his *character* (namely, his integrity and

trustworthiness).

Tsarnaev explained the motive for his crimes in the note he

wrote on the inside of the boat in which he was found hiding:

> God has a plan for each person.  Mine was to
> hide in this boat and shed some light on our
> actions.
>
> The US Government is killing our innocent
> civilians but most of you already know that.
> As a [UI] I can't stand to see such evil go
> unpunished.  We Muslims are one body, you
> hurt one you hurt us all.  Well at least
> that's how muhhammad (pbuh) wanted it to be
> [for]ever.  The ummah is beginning to rise.
> [UI] has awoken the mujahideen.  Know you
> are fighting men who look into the barrel of
> your gun and see heaven, now how can you
> compete with that.  We are promised victory
> and we will surely get it.  Now I don't like
> killing innocent people it is forbidden in
> Islam but due to said [UI] it is allowed.
> All credit goes [UI].
>
> Stop killing our innocent people and we will
> stop.

As these words make clear, Tsarnaev, a United States citizen,

committed his deadly terrorist attacks in order to punish

America for perceived wrongdoings against others.  (Combined

Opp. at 18).  He acted, in short, to aid America's enemies.

Committing his crimes for this purpose distinguishes Tsarnaev

from citizens who commit deadly terrorist attacks for other

reasons and makes him more worthy of the death penalty.  See

Katz v. United States, 89 U.S. 347, 360 (1967)(Douglas, J.,

concurring) (noting that betraying one's country is "the worst crime of all.")

Second, in becoming a citizen, Tsarnaev took a solemn oath of allegiance to his country and betrayed it seven months later. His violation of a freshly-made oath impugns his integrity and trustworthiness and reflects poorly on his moral character. See Zant, 462 U.S. at 886 (noting with approval Georgia law allowing evidence in aggravation of a defendant's "general moral character") (quoting Fair v. State, 245 Ga. 868, 873 (1980)). The importance of the oath of citizenship, and the alacrity with which Tsarnaev broke it, highlight his lack of integrity and trustworthiness.

The "Betrayal" allegation references *the* **fact** of Tsarnaev's citizenship because attacking America to aid its enemies is more reprehensible if you are an American citizen than if you are not. Citizens, unlike non-citizens, owe a duty of allegiance to their country. The allegation recites **the manner** in which Tsarnaev became a citizen because that is the circumstance in which he took the solemn oath that he later betrayed. Although all citizens may owe equal allegiance to the United States and have an equal duty to protect and defend it, naturalization requires individuals to take an oath of allegiance as part of the process of obtaining citizenship. To violate such a solemn oath just seven months after making it is a moral lapse

regardless of whether one is a natural-born or naturalized
citizen.

Tsarnaev contends that even if the "Betrayal" allegation's
purpose is not to treat Tsarnaev as more culpable merely because
he is naturalized, that will inevitably be its effect, because
jurors will naturally feel "[r]esentment of Tsarnaev's
immigration status and history." (Deft. Mot. at 4). We reject
that premise, and the Court should not accept it. As we stated
in our Combined Opposition, the government does not share
Tsarnaev's doubts about the fairness of Massachusetts jurors, or
Americans in general, and we are confident that, after a
thorough voir dire, the Court will seat only fair-minded jurors
who will obey its instructions and disregard irrelevant
considerations.

Nevertheless, to allay any uncertainty about this important
matter, we propose to amend the government's Notice of Intent to
Seek the Death Penalty to substitute the following two narrower
NSAFs for the "Betrayal" NSAF:

> Dzhokhar Tsarnaev, a United States citizen, betrayed
> his countrymen by killing and maiming people in the
> United States to promote an extremist ideology that
> calls for attacks against the United States.

> Dzhokhar Tsarnaev violated a solemn oath of allegiance
> to the United States by committing a deadly attack
> against it.

The wording of these NSAF's makes clear that they are not premised on Tsarnaev's naturalization, because they could be applied to natural-born citizens as well.  Natural-born citizens are just as capable as naturalized ones of attacking the United States to aid violent extremists.  And numerous natural-born citizens (such as many federal officeholders and employees) take solemn oaths of allegiance to United States.  The wording of these NSAFs thus obviates the central concern voiced in Tsarnaev's motion to strike.

At the same time, the wording of these NSAF's ensures the jury will hear evidence about key aspects of Tsarnaev's character and crimes that make him more deserving of the death penalty than other murderers.  That, in turn, will help ensure that the jury makes "an individualized determination on the basis of the character of the individual and the circumstances of the crime," Zant, 462 U.S. at 878, and will diminish the risk of an "arbitrary and capricious" sentencing decision, Gregg, 428 U.S. at 195.

   II.  The substantial planning and premeditation and site-
        selection aggravating factors are not impermissibly
        duplicative.                                         `

The government has alleged the following statutory and nonstatutory aggravating circumstances, respectively:

   **Substantial Planning and Premeditation**.  DZHOKHAR
   TSARNAEV committed the offense after substantial
   planning and premeditation to cause the death of a

7

person and commit an act of terrorism (Counts One through Ten and Twelve through Fifteen).  18 U.S.C. § 3592(c)(9).

**Selection of Site for Acts of Terrorism.** DZHOKHAR TSARNAEV targeted the Boston Marathon, an iconic event that draws large crowds of men, women and children to its final stretch, making it especially susceptible to the act and effects of terrorism.

Tsarnaev claims that these two factors are "duplicative" and thus violate the Eighth and Fifth Amendments to the Constitution He writes:

[T]hese two allegations actually are duplicative, for if the jury finds the second allegation (that Tsarnaev "targeted the Boston Marathon"), his having engaged in substantial planning to cause death and an act of terrorism would require no additional fact-finding by the jury.  Stated differently, the allegation that Tsarnaev targeted the Marathon is simply a more specific statement of the substantial planning allegation.  [Deft. Mot. at 4].

He also writes:

[T]hese two factors do not represent different facets of the defendant's conduct, but are simply two different ways of describing the same thing.  His culpability would not be increased by a finding of both factors rather than just one, given that they allege the same conduct and will be proven by the same evidence.  [Deft. Mot. at 5].

Tsarnaev's argument misstates the meaning of the two factors, which are not in fact "duplicative," as well as the law governing "duplicative" aggravators.  His attack on the two factors should therefore be turned aside.

The FDPA contains no express prohibition on "duplicative" aggravating factors, and neither the Supreme Court nor the First Circuit has ever held that they are problematic, much less

8

unconstitutional.  There is good reason for that.  The supposed harm of alleging "duplicative" aggravators is solely that the resulting increase in the number of aggravators will tip the scales in favor of the death penalty.  But the FDPA requires juries to weigh aggravating and mitigating factors individually, not tally them and compare their respective totals.  See 18 U.S.C. § 3593(e); United States v. Purkey, 428 F.3d 728, 762 (8th Cir. 2005).  Indeed, an appropriate weighing instruction informs jurors, "You're not being asked to simply count the total number of aggravating and mitigating factors and reach a decision based on which number is greater.  Instead, you must consider the weight and value that you feel should be given to each factor."  United States v. Sampson, 486 F.3d 13, 29 (1st Cir. 2007) (quoting the jury instruction upheld by the opinion).

Nevertheless, in United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996), the Tenth Circuit held that "duplicative" factors violate the Eighth Amendment because the "double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily." Id. at 2111.  McCullah was charged with violating the Continuing Criminal Enterprise statute, which authorizes a sentence of death if the defendant "intentionally kills or counsels, commands, induces, procures, or causes the intentional killing

of an individual and such killing results."  21 U.S.C.
§ 848(e)(1)(A).  The government alleged as separate aggravating
factors that McCullah "committed the offenses as to which he is
charged in the indictment;" that McCullah "intentionally engaged
in conduct intending that the victim be killed . . . , which
resulted in death of the victim;" and that McCullah
"intentionally engage[d] in conduct which he kn[ew] create[d] a
grave risk of death and that such death result[ed]."  McCullah,
76 F.3d at 2111.  The Tenth Circuit held that these factors were
unconstitutionally "duplicative" because the first factor
"subsumed" the second and the second "subsumed" the third.  Id.
The Tenth Circuit has since reiterated that in its view
aggravators are duplicative when one "necessarily subsumes" the
other."  Cook v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998).

     McCullah does not have much of a following among the Courts
of Appeals.  The Fourth Circuit announced its agreement with
McCullah at least with respect to statutory intent factors, see
United States v. Tipton, 90 F.3d 861, 899 (4th Cir. 1996), and
the Ninth Circuit applied a somewhat similar analysis to
McCullah's in Allen v. Woodford, 395 F.3d 979, 1012 (9th Cir.
2005).  But the Fifth and Eighth Circuits have squarely rejected
McCullah's holding as lacking any constitutional foundation.
See United States v. Robinson, 367 F.3d 278, 292-293 (5th Cir.

2004); <u>United States v. Purkey</u>, 428 F.3d 738, 761 (8th Cir. 2005).

In <u>Jones v. United States</u>, 527 U.S. 373 (1999), which involved assertedly "duplicative" aggravators, the Supreme Court wrote:  "We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the 'double counting' theory that the Tenth Circuit advanced in <u>McCullah</u>. . . .  What we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an *invalid* factor."  <u>Id.</u> at 398 (plurality opinion) (emphasis added).  The Court went on to hold that the two factors before it were, in any event, "not duplicative —- at best, certain evidence was relevant to two different aggravating factors."  <u>Id.</u> at 399.  It also noted that "any risk that the weighing process would be skewed was eliminated by the District Court's instruction that the jury 'should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater [but rather] should consider the weight and value of each factor.'"  <u>Id.</u> at 399-400.

This Court need not decide whether the Eighth Amendment forbids "duplicative" factors for the same reasons the Supreme Court did not do so in <u>Jones</u>:  the challenged factors in this case are not "duplicative" even under a <u>McCullah</u> analysis

because neither "necessarily subsumes" the other; and, in any event, the Court can avoid any risk of prejudice by instructing the jury to not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater but rather to consider the weight and value of each factor.

It is easy to see why the two challenged factors in this case are not "duplicative." The fact that Tsarnaev's deadly acts of terrorism were substantially planned and premeditated makes him more deserving of the death penalty than someone whose deadly acts of terrorism were not substantially planned or premeditated, regardless of whether he targeted the Boston Marathon. The fact that he targeted the Boston Marathon makes him more deserving of the death penalty than if he targeted, say, an empty building, regardless of whether he engaged in substantial planning and premeditation. Each factor narrows the class of offenders who deserve a death sentence. See Brown v. Sanders, 546 U.S. 212, 219 (2006). And they do so even more in combination than separately because a murderer who both engages in substantial planning and premeditation to commit an act of terrorism *and* who explodes bombs at an iconic American event that draws crowds of spectators is more culpable than a murderer who does one but not the other.

Tsarnaev's attack on these factors is based on a misstatement of the law. Aside from simply asserting that "the allegation that Tsarnaev targeted the Marathon is simply a more specific statement of the substantial planning allegation" and that the factors are "simply two different ways of describing the same thing" (Deft. Mot. at 4), Tsarnaev's entire argument rests on his claim that the two factors "will be proven by the same evidence" (Deft. Mot. at 5). See also Deft. Mot. at 4 ("[If] the jury finds the second allegation [that Tsarnaev 'targeted the Boston Marathon'], his having engaged in substantial planning to cause death and an act of terrorism would require no additional fact-finding by the jury."). But just because the *evidence* used to prove one factor subsumes the *evidence* used to prove another does not mean the one factor *itself* subsumes the other. Even the Tenth Circuit has held that using the same evidence to prove different aggravators does not make the aggravators "duplicative." See Fields v. Gibson, 277 F.3d 1203, 1219-20 (10th Cir. 2002) ("[We] see no problem with . . . us[ing] the same evidence to support different aggravators."); accord United States v. Fell, 531 F.3d 197, 236 (2nd Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence.") (citing Jones, 527 U.S. at 399).

A good example of how the exact same evidence can support
two non-"duplicative" aggravators can be found in <u>Patton v.
Mullin</u>, 425 F.3d 788 (10th Cir. 2005).  The defendant there
claimed that the factor "Mr. Patton was previously convicted of
a [violent] felony" duplicated the factor "Mr. Patton committed
the murder while he was on parole," because the government
"reli[ed] on the same California robbery conviction to support
both aggravators." <u>Id.</u> at 808.  The Tenth Circuit rejected this
argument.  It wrote:

> [the] aggravating circumstance[s] do not necessarily
> subsume one another and thus are not duplicative.  In
> order to establish the first aggravating circumstance,
> the prosecution was required to prove that Mr. Patton
> was convicted of a certain kind of felony (a violent
> one).  In order to establish the [other] aggravating
> circumstance, the prosecution was required to prove
> that Mr. Patton was on parole for a felony conviction
> at the time of the murder.  The fact that the same
> conviction was used by the prosecution to prove both
> aggravators does not render the aggravators
> unconstitutionally duplicative.

<u>Id.</u> at 809.  Similarly, a "prior violent crimes" allegation does
not duplicate a "future dangerousness" allegation even if all of
the evidence used to prove the first allegation is included in
the evidence used to prove the second.  <u>See</u>, <u>e.g.</u>, <u>Fields v.
Gibson</u>, 277 F.3d 1203, 1218–19 (10th Cir. 2002); <u>United States v.
Casey</u>, 2012 WL 6645702, *3 (D.P.R. Dec. 20, 2012); <u>United States
v. Umana</u>, 707 F.Supp.2d 621, 638 (W.D.N.C. 2010); <u>United States
v. Wilson</u>, 493 F.Supp.2d 364, 391 (E.D.N.Y. 2006).

14

In sum, the Court need not and should not endorse an Eighth Amendment "duplicativeness" doctrine that the Supreme Court itself has never adopted, because here, as in <u>Jones</u>, the two challenged factors are not "duplicative" even under a <u>McCullah</u> analysis, and any possibility of harm can be precluded by an appropriate "weighing" instruction.

**CONCLUSION**

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's two motions to strike aggravating factors.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:  <u>/s/ William D. Weinreb</u>
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

<u>/s/ William D. Weinreb</u>
WILLIAM D. WEINREB

15