UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 13-CR-10200-GAO |
| v. ) | |
| ) | |
| ) | |
| DZHOKHAR TSARNAEV ) | |

## REPLY TO GOVERNMENT OPPOSITION TO MOTION FOR A HEARING TO ADDRESS LEAKS BY LAW ENFORCEMENT

Defendant, Dzhokhar Tsarnaev, by and through counsel, hereby files this Reply to the Government's Opposition to the Motion for a Hearing to Address Leaks by Law Enforcement.

The response by the government reinforces the need for a hearing to assess responsibility for the leaks and for the Court to stop the ongoing release of non-public information and inappropriate public comments by law enforcement officials involved in the investigation and prosecution of Mr. Tsarnaev. In opposing the defense motion, government counsel attempt to avoid responsibility for the leaks and prejudicial comments by law enforcement and inaccurately minimize the revelations and comments. This sort of cavalier response bolsters the need for the Court to determine responsibility for leaks and to put a stop to both the release of investigative materials and the inappropriate public comments by law enforcement.

1. The government argues that public statements by (retired) law enforcement (former Boston FBI Special Agent in Charge Richard DesLauriers and Stephanie Douglas, the Washington, D.C.-based Executive Assistant Director of the FBI ) are not

1

governed by 28 C.F.R. §50.2(b), were not prejudicial, and did not express opinions on guilt or innocence.  [Opp, at 3].  The claim that these high-ranking officials are not subject to restrictions on their public comments because they have retired is particularly troublesome because, whether or not retired agents are bound by the policy statements of the C.F.R., or other F.B.I. policy in all cases, the prosecution *in this case*, by letter dated June 4, 2013, specifically advised defense counsel:

> Both before and after your client's arrest, numerous law enforcement briefings were held during which representatives of the USAO, as well as FBI officials, strongly reiterated the prohibitions regarding extrajudicial statements to all personnel present. Indeed, on one such occasion, U.S. Attorney Ortiz personally reminded the investigators of their duty to avoid public disclosure of investigative materials. We have since continued to underscore those prohibitions. For example, I enclose a copy of a Notice which has been sent to all those law enforcement personnel who have been involved in the investigation and prosecution of this case and related matters.

The "Notice", attached as Exhibit A, admonished individuals "identified as an investigator, law enforcement person, employee or other person *who has been or is assisting, or has been or is currently associated with*, the federal prosecution of the criminal case of *United States v. Tsarnaev* and/or related investigations" (emphasis added) that they are "prohibited from disclosing anything about this case to the media or anyone not working on this case." [*See* Exhibit A].  This language essentially tracks the restrictions set forth in 28 C.F.R. §50.2(b).  It is inconceivable that the lead investigating agent and his supervisor in Washington, D.C. were exempt from this prohibition; it is more likely that one or both of the named (and now retired) individuals participated in admonishing others under their supervision.

2

By dismissing the comments by Douglas and DesLauriers as permissible comments by private citizens,[1] government counsel ignore the prominent role of these individuals in the investigation and fail to clarify whether they had been admonished not to make public statements or had cleared the appearances through former superiors.

2. The government's efforts to re-characterize the comments by these retired officials and to minimize the seriousness of their conduct ignores their actual words and their potential impact. The government's approach depends on simply refusing to acknowledge the most prejudicial and inappropriate comments by the agents, including DesLauriers' description of Tsarnaev's erroneously reported "smirk" during his arraignment as "galling" and "reprehensible," his expression of support for the death penalty for Tsarnaev (which ended the 60 Minutes program), his almost tearful characterization of an unseen video as "a horrible video to watch", and a vivid description of the video by both Douglas and DesLauriers that went well beyond what was included in the complaint. Both essentially expressed their belief in the guilt of the accused. Ms. Douglas confirmed that "white hat" and "black hat", whom they believed were the bombers, were the Tsarnaev brothers, and that reports of other arrests were false. *See* Script of 60 Minutes program at http://www.cbsnews.com/news/manhunt-inside-the-boston-marathon-bombing-investigation/.

The government acknowledges that DesLauriers' statement on 60 Minutes that "I can see the subject who has been charged and people who were grievously injured" would have been prohibited by the C.F.R. (though failing to acknowledge the "Notice"

---

[1] The shows do not identify either DesLauriers or Douglas as retired.

3

provided to law enforcement), but again shirks responsibility for all of the statements by suggesting the information provided referenced only "incontrovertible" and "innocuous" facts, disclosing no non-public information.  The government's dismissal defies common sense and depends on a blinkered view of the comments and their impact.  It also ignores the significance of the source:  professional law enforcement agents presumed to have inside knowledge of the investigation.  The government's minimization only adds to the defendant's concern about its view of its responsibilities to control law enforcement and guard against a tainted jury pool.

      3.  Government counsel accuse defense counsel of "reckless speculation", Opp. at 2, that grand jury material was released, while admitting to uncertainty regarding the source of the release of a photo of writings inside the boat, and making a veiled and outrageous suggestion that the defense might have been the source of the photos.  This is a red herring.  Whether or not the material leaked to the press was grand jury material, discovery, or investigative material, it should not have been released to the public.[2]

      Of course, defense counsel has no way of knowing who had access to the information, who released it to the media, and what – if any – steps have been taken to investigate and stop such leaks.  The government's apathy toward these questions demonstrates the toothlessness of the non-disclosure policy it touts and indicates a head-

---

[2] In a curious move, government counsel included a text of the boat writings in more detail than set forth in the indictment in two separate pleadings filed May 21, 2014. *See* DE 320, p. 4; DE 319, p. 4.  This follows the government's gratuitous and misleading reference to a "remark to his detriment" allegedly made by Tsarnaev during a visit with his sisters. *See* DE 207 at 7-8.  Both disclosures fueled publicity and speculation.

4

in-the-sand approach. That approach increases the need for the Court to determine responsibility for the release of non-public information, and to put a stop to it.

    4. Government counsel assert that the National Geographic footage about which the defense complained was apparently a dramatization by the producers and suggest that the video that (former) Agent DesLauriers described with emotion on the show must have been a different video. Whether or not the footage shown was a dramatization, it was not identified as such, and the comments of Agent DesLauriers were connected to the video that was shown.[3] The government suggests that "to the best of the government's knowledge" other photos shown during the National Geographic show were also dramatizations, and not leaks. The government's uncertainty in this regard shows a studied disinterest in the fact that such material *has* been leaked and thus could have been part of the show. Whether the footage was real or not, the juxtaposition of DesLauriers' comments with the images left the impression that he was authenticating them. It is possible that this was the fault of the producers and editors and that DesLauriers was simply an unwitting dupe. But had he not participated in any of the programs at all – as the C.F.R. and the government's own "Notice" prohibition would require – or had he at least taken steps to insure that his comments were not misused, the misleading impression would not have been created. The failure to clarify that a video is a dramatization is almost more harmful than the release of the actual video, as it suggests to the public and potential jurors the accuracy of false information. Whether or not the FBI official who

---

[3] There is a single reference before the show starts that "This film contains dramatizations based on witness accounts." There are dozens of film clips and it is often impossible to tell whether any given clip is real or a dramatization.

contributed to the creation of this false impression was retired at the time, one would think the government would take steps to clarify the record.

     5.  The government's efforts to deflect accusations of leaks demonstrates its indifference to these serious threats to the defendant's right to a fair trial and the compliance of law enforcement officials with their own regulations and obligations.  The government suggests that the photograph of the boat writing may have come from a private rather than official source, but ignores the fact that ABC news reported that "[t]wo state and two federal law enforcement official confirmed the authenticity of the image."

The government's response regarding the TEDAC report relies on the fact that the report was "made available to hundreds of law enforcement and intelligence agencies." This is hardly a defense:  it simply suggests that the universe of possible sources for the leak is a large one.  In other words, as to both of these recent reports, the government simply does not care to determine whether its own policies have been violated, in a manner that threatens the defendant's right to a fair trial.

     6.  Finally, the government flatly denies that "leaks of investigative materials continue seemingly unabated." Govt. Opp. at 10.  This ignores the recent publication of the boat writing images and the May 13, 2014 Los Angeles Times story about the tracing of the gun allegedly used in the MIT and Watertown shootings alleged in this case.  The government does not even acknowledge the latter report, which relied on "Justice Department records obtained by the Times Washington Bureau" and "government sources" for its description of the tracing of the gun.

*See* http://www.latimes.com/nation/la-na-boston-bombing-gun-20140513-story.html.

The avoidance of responsibility and defense of leaks and prejudicial statements by those involved in the investigation and, indeed, possible trial witnesses – highlights the need for this Court to determine responsibility and enter an Order directing those involved in the investigation and prosecution of this case to stop releasing information and making inappropriate public statements.

## Conclusion

The government's apparent disinterest in stopping the ongoing leaks of investigative materials and other discovery or grand jury materials, and ensuring that the defendant receives a fair trial, requires the Court to hold a hearing and enter appropriate orders.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

*/s/   Judy Clarke*

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)

Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 27, 2014.

*/s/*