UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

DZHOKHAR TSARNAEV

No. 13-CR-10200-GAO

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO MOTION TO SUPPRESS STATEMENTS**

Defendant, Dzokhar Tsarnaev, by and through counsel, respectfully submits this reply to the Government's Opposition to the Defendant's Motion to Suppress Statements ("Govt. Opp."), DE 319.

Because the government concedes that it bears the burden of proving the voluntariness of Mr. Tsarnaev's statements, Govt. Opp. at 10, and acknowledges the need for an evidentiary hearing, Govt. Opp. at 11, this submission will not itemize undersigned counsel's many disagreements with the government's version of events.  Nor will we endeavor to distinguish all of the cases cited by the government, beyond noting that the government has not identified a single case in which a court has affirmed the admission of statements obtained under comparable circumstances, applying current legal standards.

Instead, defendant provides this submission to set forth the correct legal framework for evaluation of the claims presented.

I.   THE GOVERNMENT RELIES ON AN ERRONEOUS VIEW OF THE
     VOLUNTARINESS INQUIRY.

The government's lengthy description of the public safety concerns that existed at the time of the interrogation is simply beside the point.  The exception recognized in *New York v. Quarles*, 467 U.S. 649 (1984), does not apply to involuntary statements.  *United States v.*

- 1-

*DeSantis*, 870 F.3d 536, 540 (9th Cir. 1989).  *Cf. Quarles* at 654 (case involved "no claim that respondent's statements were actually compelled by police conduct which overcame his will to resist").  Instead, public safety concerns are only relevant to the question of whether the failure to give *Miranda* warnings requires suppression, an issue which the government has rendered moot by its agreement that it will not introduce Mr. Tsarnaev's statements in its case-in-chief.  Govt. Opp. at 20, 24.

The government's position regarding voluntariness depends in large part on its repeated rejection of factors that, *standing alone*, do not warrant suppression of the statements.  *See, e.g.,* Govt. Opp. at 13, 14.  These arguments ignore the touchstone of voluntariness analysis: consideration of "the totality of circumstances." *Dickerson v. United States*, 530 U.S. 428, 434 (2000).  "[A] totality of the circumstances analysis does not permit state officials to cherry-pick cases that address individual potentially coercive tactics, isolated one from the other, in order to insulate themselves when they have combined all of those tactics in an effort to overbear an accused's will." *Wilson v. Lawrence County* 260 F.3d 946, 953 (8th Cir. 2001).

> As the Ninth Circuit recently explained in an en banc decision:
>
> Thus, the voluntariness inquiry "is not limited to instances in which the claim is that the police conduct was 'inherently coercive,'" *Miller v. Fenton*, 474 U.S. 104, 110 (1985) (quoting *Ashcraft v. Tennessee*, 322 U.S. 143, 154 (1944)), but "applies equally when the interrogation techniques were improper only because, in the particular circumstances of the case, the confession is unlikely to have been the product of a free and rational will," *id.* (citing *Mincey v. Arizona*, 437 U.S. 385, 401 (1978)).

*United States v. Preston*, ____F.3d _____,  2014 U.S. App. LEXIS 88252014 (May 12, 2014) (en banc).

 In *Mincey v. Arizona,* 437 U.S. 385 (1978), the Supreme Court held:

> There were not present in this case some of the gross abuses that have led the Court in other cases to find confessions involuntary, such as beatings, see *Brown* v. *Mississippi*, 297 U.S. 278, or "truth serums," see *Townsend* v. *Sain*, 372 U.S. 293. But "the blood of

>the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn* v. *Alabama*, 361 U.S., at 206.  Determination of whether a statement is involuntary "requires more than a mere color-matching of cases." *Reck* v. *Pate*, 367 U.S. 433, 442.  It requires careful evaluation of all the circumstances of the interrogation.

*Mincey,* 437 U.S. at 401.

The government's version of the facts surrounding the interrogation – a narrative which the defendant disputes[1] – omits a crucial fact, set forth in the FBI's own reports: that the agents told Mr. Tsarnaev, in response to his repeated requests for a lawyer, "that he first needed to answer questions to ensure that the public safety was no longer in danger from other individuals, devices, or otherwise."  Exhibit 1S to Motion to Suppress Statements, DE 295.  Here, as in *Greenwald v.Wisconsin*, 390 U.S. 519 (1968), the defendant answered the FBI's questions because "[he knew they weren't going to leave [him] alone until [he]I did."  *Id*. at 520.  *See also Darwin v. Connecticut*, 391 U.S. 346, 340 (1968) (applying pre-*Miranda* law, suppressing statements obtained after suspect held incommunicado and deprived of access to lawyer for 30 to 48 hours).

The government's reliance on *Stein v. New York,* 346 U.S. 156 (1953), illustrates its antiquated view of the law.  The government fails to note that *Stein* was overruled in part by *Jackson v. Denno*, 378 U.S. 368 (1964), and depended upon an examination of the reliability of a  confession, "a short-lived departure from prior views of the Court" that "was unequivocally put to rest in *Rogers v. Richmond* [365 U.S. 534 (1961)]," *Jackson*, 378 U.S. at 384-85.

---

[1] " Such disputes, we may say, are an inescapable consequence of secret inquisitorial practices. And always evidence concerning the inner details of secret inquisitions is weighted against an accused, particularly where, as here, he is charged with a brutal crime, or where, as in many other cases, his supposed offense bears relation to an unpopular economic, political, or religious cause." *Ashcraft v. Tennesse*, 322 U.S. 143, 152-53 (1944)

## II. WHERE AGENTS DELAYED MR. TSARNAEV'S PRESENTMENT IN ORDER TO CONTINUE QUESTIONING HIM, HIS STATEMENTS MUST BE SUPPRESSED.

The government asserts that the presentment of Mr. Tsarnaev "was not delayed *exclusively* for purposes of interrogation[.]"  Govt. Opp. at 2 (emphasis added).  Given this admission that the desire to interrogate Mr. Tsarnaev was at least a partial reason for the delay, the government's reliance on *United States v. Jacques*, 744 F.3d 804, (1st Cir. 2014) is misplaced.  In that case, the First Circuit concluded:

> [T]his situation is not one where agents took the unavailability of a magistrate as an excuse to "continue their interrogation through the night." Rather, it is one where agents properly informed Jacques of his right to terminate the interrogation and presented him with a formal waiver when their six-hour safe harbor expired.

*Id*. at 815 n.4.  The *Jacques* court distinguished the facts presented from those found in *United States v. Middleton*, 344 F.2d 78, 82 (2d Cir. 1965).  There, the Second Circuit held :

> The objective of Rule 5(a) is to check resort to psychologically coercive or 'third degree' practices, see United States v. McNabb, 318 U.S. at 344, 63 S.Ct. at 614, and not simply to insure that the accused is arraigned at the earliest possible time. And since the purpose here, at some point after 7:00 p.m., had narrowed to a single objective -- to obtain the flat admission from the accused's lips that he had stolen the calculating machine -- the delay became unreasonable.

*Id.* at 83.  In *Middleton*, arraignment occurred at the earliest possible time, the following morning.  *Id.* (Moore, J, concurring in part, dissenting in part).  Nevertheless, the majority of the panel required suppression of the statements obtained during the delay.

CONCLUSION

For the reasons set forth above and in defendant's Motion to Suppress Statements, an evidentiary hearing should be held to determine whether Mr. Tsarnaev's statements must be suppressed.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/  Miriam Conrad

Judy Clarke, Esq.
California Bar:  76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 9, 2014.

/s/ Miriam Conrad