UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13-CR-10200-GAO |
| v. | ) | |
| | ) | |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**RENEWED MOTION FOR HEARING TO ADDRESS
LEAKS BY LAW ENFORCEMENT**

Defendant, Dzhokhar Tsarnaev, by and through counsel, hereby files this

Renewed Motion for a Hearing to Address Leaks by Law Enforcement.

On May 2, 2104, the defendant filed a Motion for a Hearing and Appropriate

Relief concerning Leaks and Public Comments by Law Enforcement.  The motion

focused on public comments by law enforcement involved in the Marathon bombing

investigation on 60 Minutes and the National Geographic Channel, a broadcast regarding

an FBI analysis of the bombs, and the release of photos of writings from inside the boat

where Mr. Tsarnaev was found.  [DE 280].  The government opposed the motion. [DE

336].  In reply the defense provided a copy of the instructions allegedly given to all law

enforcement involved in the investigation, and cited a recent May 13, 2014 Los Angeles

Times story about the gun allegedly used in the MIT and Watertown shootings as

evidence that the leaks had not abated.  [DE 336].

Addressing the defendant's motion at the June 18, 2014 status conference, the

Court expressed displeasure with the leaks and public comments by law enforcement, and

singled out the participation of recently-retired law enforcement officials on the 60

Minutes and National Geographic broadcasts:

> Let me just say I saw both interviews in real time when they occurred and I was not very happy about it.  I thought they were completely unnecessary opportunities for the communication of information which would be inappropriate from active members of the prosecution team  . . . .  I do think that the prosecution has practical, if not legal control over them.  And I expect the government will remind people involved in the case, even formerly, of their responsibility to the integrity of the trial….

[Status Conference Transcript, DE 425, at p. 7].  The Court directed prosecution counsel

to "communicate to them that it is unwise for them to – and for anybody else in their

position to engage in similar interviews." [Id.]  When defense counsel pressed for an

order which would subject individuals to sanctions for leaking information about the

case, the Court responded, "I don't think a formal order would add that much.   If

something happens that it's similar, with or without a formal order I can take appropriate

action." [Id., at 8-9].

The leaks appeared to subside for a few weeks, but have now begun anew.

Within hours of the July 22 arrest of Stephen Silva following his federal indictment for

several recent drug offenses and for unlawfully possessing a firearm in February, 2013,

the news media publicized leaked investigative (and potentially grand jury) information

from "law enforcement sources,", a "high ranking government official", an "official,"

and/or "local and federal law enforcement."   Though no such allegations were included

in the Silva indictment, an "official" told ABC News that the gun used to kill MIT

Officer Sean Collier was provided by Mr. Silva to Dzhokhar Tsarnaev.  ABC's law

enforcement source – a "high-ranking government official" – went so far as to opine that

this allegation would rebut a defense mitigation theory that Dzhokhar was less culpable

than his older brother, Tamerlan.[1]  In another news story, "two people who spoke on

condition of anonymity because they were not authorized to discuss the investigation"

told the Associated Press that "[t]he 9mm Ruger pistol described in the indictment is the

same handgun that was used to kill MIT police officer Sean Collier during the manhunt

for the bombing suspects."  *See* Lavoie, Associated Press, July 22, 2013, "*New Arrest*

*linked to gun used after Boston attacks*."  And NBC News reported that while the federal

indictment "does not mention the Collier shooting or the Tsarnaev brothers, local and

federal law enforcement officials say Silva was the source of the gun used in the

shooting."  *See* Pete Williams and Tom Winter, "Boston Marathon Bombing: Tsarnaev

Gun Mystery Solved, Say Officials," (July 22, 2014).

As these almost instantaneous leaks of sensitive investigative information

demonstrate, members of law enforcement apparently feel free to ignore the Court's

admonition to refrain from discussing the investigation in the media, including trying to

---

[1] "Law enforcement sources said that gun was the same as the Ruger P95 described in other court documents as used by Tamerlan Tsarnaev, Dzhokhar's older brother, in a gun battle with police three days after the marathon bombing in April 2013….Defense attorneys for Dzhokhar have filed papers and have said in open court that Tamerlan was the architect of the marathon attacks that left three dead, 260 wounded, and that Dzhokhar came under the 'stronger influence of his older brother.' 'The defense is trying to paint Tamerlan as the mastermind [of the Boston attacks], but they were working in concert and we have evidence that Dzhokhar secured the weapon,' the official said."  July 22, 2014 ABC News, "*Official:  Gun Shows Dzhokhar Tsarnaev Played Greater Role in Bombing and Aftermath*"); *see also* ABC News, http://abcnews.go.com/blotter/official-gun-shows-dzhokhar-tsarnaev-played-greater-role ("However, a high ranking government official said that while Tamerlan may have used the Ruger last, it was Dzhokhar who was friends with Silva and in the end, it was Dzhokhar's gun.")

3

marshal the evidence against Mr. Tsarnaev.  Further action by the Court is now warranted, and we again request that the Court hold a hearing to assess responsibility for the leaks.

Given the Court's stern warning to the government at the June 18, 2014 hearing, it would be appropriate  for the Court to ascertain what steps the government took after the June 18 hearing, and what new instructions (if any) were provided to law enforcement. This issue is especially pertinent in light of recent news reports that "a Cambridge police official acknowledged that federal prosecutors briefed top officers in the department about Silva's arrest."  Patricia Wen and Evan Allen, *Tsarnaev friend in gun charge had past drug arrest,* Boston Globe (July 23, 2014).  We further suggest that the Court require the presence and testimony of the law enforcement officers in charge of the investigation to determine who had access to the information that has recently been released, and what steps were taken to prevent such leaks.

## Conclusion

For the reasons set forth above and in prior briefing, the defense requests that the Court hold a hearing to determine responsibility for the leaks and inquire into the actual instructions provided to law enforcement after the June 18, 2014 status conference.  The Court should order the government to produce the law enforcement officials in charge of

the investigation of this case at the hearing for testimony.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/   Judy Clarke

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on
July 25, 2014.

/s/ Judy Clarke