UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Crim. No. 13-10200 GAO |
| v. ) | |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**MOTION FOR CLARIFICATION OF DEFENSE PRETRIAL
PENALTY-PHASE EXPERT DISCOVERY OBLIGATIONS**

The Court's June 23 scheduling order, DE 385, provides a September 2, 2014 deadline for "[d]efense reciprocal discovery under Rule 16(b)(1)(A), (B), and (C), including responsive and reciprocal "discovery." The order also sets an August 1, 2014 deadline for notice of the defendant's intent under Rule 12.2 to introduce expert mental health evidence "pertinent either to the issue of guilt or to the issue of punishment." However, except for the Rule 12.2 notice requirement (which applies only to "expert evidence relating to . . . a mental condition of the defendant"), the order makes no express reference to disclosure of any defense evidence that may be offered solely at sentencing. Out of an abundance of caution, defense counsel hereby request clarification of whether the Court intended the defendant's September 2 disclosure deadline to extend to mitigation (i.e. penalty phase) expert evidence as well as guilt-or-innocence phase evidence. For the reasons that follow, counsel submit that pretrial mitigation expert disclosures should not be required because:

    (1)    the cited provisions of Rule 16 do not provide for pretrial disclosure of mitigation evidence;

1

(2) to the extent that the Court has discretion to order the defense to provide discovery of its sentencing evidence beyond that authorized by Rules 12.2 and 16, requiring such broad disclosure is unwarranted under the circumstances of this case; and

(3) given the government's lack of timely compliance with its own black-letter discovery obligations to produce reports of examinations and tests and expert witness summaries under Rule 16 and Local Rule 116, any deadline for production of defense penalty-phase discovery that the Court might otherwise have been inclined to set should be deferred or suspended.

**1.    Rule 16 does not provide for pretrial disclosure of defense mitigation evidence**

Rule 16(b)(1)(A), -(B), and -(C) require disclosure of only such defense evidence and information as "the defendant intends to use . . . in the defendant's case-in-chief at trial," Rule 16(b)(1)(A) and (B), or "the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Rule 16(b)(1)(C). The mitigation phase of a capital case occurs well after the conclusion of "the defendant's case-in-chief at trial," and is not encompassed by it. *United States v. Beckford,* 962 F.Supp. 748, 754 (E.D.Va. 1997) ("More importantly, the rather explicit language of [Rule 16] . . . limits [its] application to the guilt phase of a trial. See, e.g. Fed.R.Crim.P. 16(b)(1)(A) (respecting evidence 'which the defendant intends to introduce as evidence in chief at the trial ') (emphasis added); Fed.R.Crim.P. 16(b)(1)(B) (same)"). In addition, even if the penalty phase of a capital case could be described as a "trial," capital defendants do not offer evidence at such hearings "under Rules 702, 703, or 705 of the Federal Rules of Evidence," Rule 16(b)(1)(C), since the Federal Death Penalty Act provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials." 18 U.S.C. § 3593(c). *Beckford,* 962

F. Supp. at 754 n. 3.  Indeed, it was the very inapplicability of Rules 12.2 and 16 to the penalty phase of a federal capital case that motivated the 2002 amendments to Rule 12.2 carving out a narrow exception – accompanied by an elaborate protective structure – to provide the government with notice of certain defense mental health evidence at sentencing, and an opportunity for a rebuttal evaluation.

The defendant's position here is not inconsistent with the Court's previous ruling that in a capital case such as this one, the *government's* Rule 16 obligation to disclose evidence "material to the defendant's defense" extends to evidence that is material only to punishment.  Order on Defendant's Motion to Compel, DE 151 (Nov. 27, 2013) at 5-6.  The Court's ruling on this preliminary "minor skirmish" was carefully limited to the issue before it, and did not create a novel rule of reciprocal discovery that Rule 16 does not provide.  Given the government's long-established constitutional obligation to disclose all favorable mitigating evidence that is material to sentence, *Brady v. Maryland*, 373 U.S. 83 (1963), and the capital defendant's equally well-established Eighth Amendment right to have all such mitigating evidence considered by the sentencer, *Lockett v. Ohio,* 438 U.S. 586 (1978), it would have been both illogical and futile to construe Rule 16 as permitting the government to withhold evidence which it was constitutionally required to turn over on the grounds that the defendant's case in mitigation was not part of his "defense" under Rule 16.  See also, Local Rule 116(1)(a)(1), -(2), Local Rules for the District of Massachusetts (automatic discovery encompasses "[e]xculpatory information . . . includes . . . information that tends to . . . . (4) diminish the degree of the defendant's culpability . . . ").  But no corresponding constitutional rule requires the defense to turn

over evidence favorable to the government's effort to secure a sentence of death, and thus any apparent symmetry between the prosecution's Rule 16 obligations in this regard and those of the accused is spurious.

2. **To the extent that district courts have discretion to impose novel penalty-phase discovery obligations on the defense, such obligations would be unwarranted and unfair under the facts of this case.**

Despite the lack of express statutory authority for the practice, a very few federal district courts have ordered capital defendants to disclose to the government summaries of non-mental health expert testimony that they intend to offer at sentencing. The first and apparently only reasoned decision justifying such an order is *United States v. Catalan-Roman*, 376 F.Supp.2d 108 (D. PR 2005). The facts of *Catalan-Roman* are instructive. Jury selection in that case began nearly two years after the defendants' indictment, and approximately 18 months after the government had given notice of its intent to seek the death penalty. *Id.* at 110. The district court observed that "the government disclosed most of its evidence far in advance of trial." *Id.* The government did not file its first motion for reciprocal penalty phase discovery until jury selection was underway. The court granted the motion, but two months later, as the penalty phase was about to begin, neither defendant had complied. Ultimately the Court required one of the defendants to disclose the anticipated testimony of a defense ballistics expert and of a social worker "who would testify to negative family influences affecting [the defendant's] development." Explaining this order in a post-trial memorandum opinion, the *Catalan-Roman* court acknowledged the lack of express statutory or decisional authority for requiring defense expert penalty-phase discovery, and admitted that

4

"defendants' arguments are appealing," but found them "ultimately unpersuasive." *Id.* at 110-111.  In sum, the court found that reciprocal disclosure was warranted by the trial-like structure of federal capital sentencing proceedings, and by the requirement of 18 U.S.C. § 3593(c) that "[t]he government and the defendant shall be permitted to rebut any information received at the hearing." *Id.,* at 111.  More generally, the *Catalan-Roman* court thought that expanding the government's discovery rights justified by Supreme Court decisions stressing the special importance of reliability and non-arbitrariness in capital sentencing. *Id.*[1]

Even accepting *arguendo Catalan-Roman*'s various reasons for extending the defendant's disclosure obligations beyond those imposed by Rule 16, the stark factual differences between that case and this one point to a different result here.  *Catalan-Roman* involved a rather straightforward robbery-murder.  The 18-month interval between the government's notice of intent to seek the death penalty and the start of jury selection in *Catalan-Roman* was twice as long as the nine-month interval here.  This case is vastly more complex.  And as the *Catalan-Roman* court observed, the government's mid-jury selection request for reciprocal penalty phase discovery occurred long after it had disclosed most of its own evidence "far in advance of trial." On those facts, no conceivable unfairness could have resulted from requiring the defendants to provide their

---

[1] Perhaps unsurprisingly, given the mid-trial timing of the disclosure litigation in *Catalan-Roman*, the court's opinion also gives no consideration to the Fifth and Sixth Amendment considerations weighing against pretrial disclosure of defense mitigation evidence that figured so prominently in the 2002 amendments to Rule 12.2.

penalty phase experts' reports a few weeks before the experts testified at the sentencing hearing.

This case differs from *Catalan-Roman* in every material respect. Here, despite the compressed pretrial schedule and the enormous complexity of the case, and as explained in detail in the defendant's separate *Motion to Compel the Government to Comply With Its Compliance Expert Disclosure Obligations and Suspend Defendant's Expert Disclosure Deadline* filed herewith, the government

- has withheld all of its own expert disclosures until between four and three months before trial,
- has yet to provide many of the underlying reports and data,
- has failed to provide the bulk of its reports of "scientific test(s) or experiment(s)" under automatic discovery, even though many of them have been completed for more than a year,
- has yet to identify which experts and what scientific or technical evidence will actually be offered at trial,
- has said nothing about what expert testimony may be offered at the penalty phase, as opposed to the guilt-or-innocence phase of trial, and
- has provided much of its discovery in a manner that seems calculate to impede rather than assist defense efforts to prepare for trial.

Under these circumstances, the government is in no position to insist that the court should impose special and unusual penalty phase discovery obligations on the defense. Even in cases where the government's discovery obligations have been fully and timely discharged, federal courts have almost never required capital defendants to provide the government with pretrial summaries of defense expert testimony that will be offered only in mitigation. It should be recalled that even in *Catalan-Roman*, the government's best

(and perhaps only) case, such penalty-phase disclosures were ordered only during jury selection, and did not actually occur until after the penalty phase was underway.  For the reasons listed above, this case is an especially poor candidate to break new ground in this respect.

    3.    **Even if the Court were inclined to require pretrial disclosure of defense expert mitigation testimony, any deadlines for such disclosure should be suspended until the government's own disclosure obligations have been met.**

In a separate filing this date, the defense has detailed the many respects in which the government's conduct with regard to its own expert disclosure obligations has impeded defense counsel's ability to prepare for trial.  Without repeating those details here, defense counsel submit that the Court should take them into account before holding the defense to its own disclosure deadlines for both "responsive" and "affirmative" expert testimony.  If the government has found it so difficult to comply with its own expert disclosure obligations many months after much of the expert examinations and reports were apparently completed, and on a time-table that the government had itself proposed, it would not be fair to require the defense to respond just 31 days after receiving the last installment of government material – whether or not this last batch proves to be as massive, incomplete and disorganized as those that have preceded it.  In light of the disarray that now characterizes the government's expert disclosures, the Court should suspend all defense disclosure deadlines, including any that are applicable only to sentencing evidence, until the Government has fully complied, and the defense has been afforded a reasonable amount of time in which to respond.

7

DZHOKHAR  TSARNAEV
by his attorneys

/s/ *David I. Bruck*

Judy Clarke, Esq.
California Bar:  76071
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 25, 2014.

/s/ *Judy Clarke*