```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
          v.                   )    Crim. No.13-10200-GAO
                               )
DZHOKHAR A. TSARNAEV,          )
          Defendant            )
```

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION FOR CLARIFICATION OF DEFENSE
### <u>PRETRIAL PENALTY-PHASE EXPERT DISCOVERY OBLIGATIONS</u>

The United States of America, by and through its undersigned counsel, respectfully opposes Tsarnaev's motion for clarification of defense pretrial penalty-phase expert discovery obligations (Doc. 442).

Tsarnaev's pleading is a motion for reconsideration; to label it a motion for "clarification" is a charade. Now that the government has complied with its own discovery obligations -- including penalty-phase discovery -- Tsarnaev wants complete relief from his own reciprocal obligations. And he wants it on the basis of arguments that he has never before raised, even though the timing of penalty-phase discovery has been discussed at several status hearings and previously briefed by both parties. To grant Tsarnaev's motion would be to reward gamesmanship, punish the government for timely complying with the Court's orders instead of playing similar games, and deprive the jury of information it will need to make a fair and fully informed penalty decision.

    A.    Tsarnaev's motion for "clarification" should be rejected as an unfair and untimely motion for <u>reconsideration.</u>

No "clarification" of the Court's June 23, 2014 Scheduling Order is needed because the Court's intended meaning could hardly be clearer. One of the key disputed issues in this case has been the appropriate timing of penalty-phase discovery. At the status hearing on February 12, 2014, for example, the government argued that it could not adequately prepare to rebut Tsarnaev's mitigation evidence -- a right guaranteed to the government by 18 U.S.C. § 3593(c) -- unless the defense provided penalty-phase discovery in advance of trial. (Trans. 02/12/14 at 16-17). Although the Court did not rule at that time, it stated: "I guess one thing Mr. Chakravarty said that struck me about separating the potential two phases of the trial is that it's the same jury and it probably would be necessary to have all disclosures before the selection of the jury." <u>Id.</u> at 18.

When the same subject arose again at the June 18, 2014 status conference, the government argued:

> [To] the extent that the defense is going to offer affirmative experts in the penalty phase, we need the same amount of time pretrial to respond to them as they would need to respond to us. That's been our point all along, that this is not the normal kind of case. The defense is going to be putting on affirmative experts in the penalty phase that are every bit as much affirmative as the government typically puts on in the guilt phase. And there's no way to respond to that in the course of the trial. That's why we picked 90 days from the beginning of

2

>     trial [for production of defense penalty-phase
>     discovery].

(Trans. 06/18/14 at 18-19).  The Court responded, "I understand that and I generally agree with it, it's just putting it into the calendar, is really the question." Id. at 19.  This colloquy leaves no doubt that when the Court, five days later, ordered the defense to provide "reciprocal discovery under Rule 16(b)(1)(A), (B), and (C), including responsive and affirmative expert discovery," it meant to include penalty-phase as well as trial-phase discovery.

It is hardly surprising that Tsarnaev would prefer to characterize his motion as one for "clarification" rather than reconsideration because it is far too late to be moving for reconsideration.  Tsarnaev did not argue that it is unlawful for the Court to order pretrial production of penalty-phase discovery at the February 12, 2014 status hearing; he did not argue it at the June 18, 2014 status hearing; and he did not even file a timely motion asserting it when the Court issued its June 23, 2014 scheduling order; instead, he filed his motion at a point when it would not become ripe for decision until after the government had produced all of its own affirmative expert discovery -- trial-phase and penalty-phase -- but before Tsarnaev had produced any of his.  Respect for the orderly administration of justice, not to mention simple fairness,

3

demands that the Court deny the motion as untimely without reaching its merits.

  B. Reconsideration of the Court's order is not warranted in any event.

Motions for reconsideration are appropriate only under limited circumstances such as where the movant (1) presents newly discovered evidence; (2) demonstrates an intervening change of law; or (3) shows that the original decision was manifestly erroneous or unjust. United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). None of those circumstances is present here.

  1. **Rule 16 provides authority for the Court's order.**

Far from being "manifestly erroneous," the Court's reciprocal discovery order reflects a reading of Rule 16 first urged by Tsarnaev himself. In an October 7, 2013 motion to compel the government to produce its own penalty-phase evidence as part of automatic discovery, Tsarnaev argued that Rule 16 applies to the penalty phase of a capital trial and provides a basis independent of the Constitution for ordering the production of penalty-phase discovery. Specifically, Tsarnaev argued that he was entitled to *exculpatory* penalty-phase information under Brady, and then wrote: "In addition to exculpatory information, the Federal Rules of Criminal Procedure provide that . . . the defendant is entitled to relevant

4

[penalty-phase] evidence, even if inculpatory." (Dkt. 112 at 4). The Court adopted Tsarnaev's reading of Rule 16, holding that Rule 16 applies to penalty-phase information because "[t]he penalty phase is a part of the bifurcated trial." (Dkt. 151 at 5-6). This decision was not "manifestly erroneous or unjust" merely because the shoe is now on the other foot and Tsarnaev's former position no longer suits his present purposes.

The Court's earlier decision also was not "manifestly erroneous" because most other courts to consider the question have reached the same conclusion. See, e.g., United States v. Northington, 2012 WL 2873360, at *4 n.9 (E.D.Pa. 2012) ("'Trial' includes both the guilt and penalty phases of a capital trial. . . . Accordingly, the disclosure requirements of Rule 16 apply to both the guilt phase and the sentencing phase of a capital trial."); United States v. Wilson, 493 F.Supp.2d 348, 355 (E.D.N.Y. 2006) (same); United States v. Catalan–Roman, 376 F.Supp.2d 108, 113 (D.P.R.2005) (same).

Far from being "manifestly erroneous," the Court's decision was manifestly correct. As the court explained in Wilson:

> As a general rule, the Federal Rules of Criminal Procedure apply to sentencing hearings. See Fed.R.Crim.P. 1 ("These rules govern the procedure in all criminal proceedings in the United States district courts...."). Additionally, subsection (5) of Rule 1 explicitly excludes certain proceedings from the purview of the Federal Rules, but sentencing hearings is not among those excluded. Id. 18 U.S.C. § 3593(c), which governs death penalty sentencing

5

> proceedings, expressly waives the presentence report requirement of Fed.R.Crim.P. 32(c), which "suggests the negative implication that the Rules of Criminal Procedure usually do apply to sentencing hearings under the FDPA." United States v. Webster, 162 F.3d 308, 346 (5th Cir. 1998); see also Lorenzo-Catalan-Roman, 376 F.Supp.2d at 113-14. . . .  [Finally,] the important goals served by Rule 16(b) disclosure are implicated in the penalty phase and are well-served by applying Rule 16(b) in this context.

493 F.Supp.2d at 355.

Both the Wilson and Lorenzo-Catalan courts squarely rejected Tsarnaev's argument that "it was the very inapplicability of Rules 12.2 and 16 to the penalty phase of a federal capital case that motivated the 2002 amendments to Rule 12.2." (Deft. Mot. at 3).  They found instead that Congress amended Rule 12.2 simply to codify the courts' power to issue certain types of discovery orders that they had long been issuing pursuant to their inherent powers, and that the amendment thus revealed nothing about the applicability of the Rules as a whole to the penalty phase of a capital trial.  See Wilson, 493 F.Supp.2d at 355; Lorenzo-Catalan, 376 F.Supp.2d at 114.

> **2.   The Court's inherent authority also provided a lawful basis for its Order.**

Even assuming for the sake of argument that this Court's earlier decision regarding the applicability of Rule 16 is not only erroneous but so "manifestly erroneous" as to justify reconsideration pursuant to an untimely motion, the Court should

6

reach the same decision on other grounds -- namely, its inherent authority to regulate discovery in criminal cases.  In United States v. Beckford, 962 F.Supp. 748 (E.D. Va. 1997) -- the very decision Tsarnaev cites as authoritative in this area -- the court held that "the authority to impose notice and reciprocal discovery is an inherent judicial power which need not be grounded in a specific statute or rule . . . [and may] be exercised in exactly the same manner as prescribed by Rules 12.2 and Rule 16(b)."  Id. at 754-55.  The Wilson court held the same thing.  See 493 F.Supp.2d at 355 ("[T]he policies which underlie Rule 16 are implicated in the penalty phase context, and thus Rule 16 disclosure ought to be extended in this manner, even if not statutorily required.").  So did the Lorenzo-Catalan court, which added that it is "imperative that the facts affecting a sentencing determination be as trustworthy as those informing a guilty verdict, and it is beyond dispute that the adequate preparation eased by early disclosure will contribute to the truth-seeking process, resulting in a more reliable sentencing determination."  376 F.Supp.2d at 114.  These rulings are all consistent with the goals of the Federal Death Penalty Act, which authorizes the parties to rebut information offered at the penalty phase and provides that each shall be given a "fair opportunity" to do so.  18 U.S.C. § 3593(c).

7

"Clarifying" for Tsarnaev that he must do what he was ordered to do would be fair not only to the government, which has produced its own penalty-phase discovery, and to Tsarnaev, who has received that discovery months before trial, but also to the jury, which will be called upon to make an important decision during the trial's penalty phase.  Unless Tsarnaev provides reciprocal discovery on the date set in the Court's June 23, 2014 scheduling order, the government will not have sufficient time to identify rebuttal experts, hire them, and prepare them for trial.  That, in turn, will deprive the jury of an opportunity to make a fair and fully informed penalty decision.

WHEREFORE, the government respectfully urges this Court to deny Tsarnaev's motion for clarification.

>                       Respectfully submitted,
>
>                       CARMEN M. ORTIZ
>                       United States Attorney
>
>                By:    /s/ William D. Weinreb
>                       WILLIAM D. WEINREB
>                       ALOKE S. CHAKRAVARTY
>                       NADINE PELLEGRINI
>                       Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ William D. Weinreb*
WILLIAM D. WEINREB