UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA            )
                                    )
            v.                      )       Crim. No.13-10200-GAO
                                    )
DZHOKHAR A. TSARNAEV,               )
            Defendant               )


GOVERNMENT'S OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR HEARING TO ADDRESS "LEAKS"

The United States of America, by and through its undersigned counsel, respectfully opposes defendant Dzhokhar Tsarnaev's renewed motion for a hearing to address law enforcement "leaks."

INTRODUCTION

On July 15, 2014, the grand jury returned an indictment charging Stephen Silva with seven counts of distributing heroin and one count of possessing a firearm with an obliterated serial number.  United States v. Stephen Silva, Crim. No. 14-10210-MLW (D. Mass.).  Silva was arrested on the night of July 21, 2014, and the indictment was unsealed the following morning.  At Silva's initial appearance, which took place at 12:30 p.m., the government moved for pretrial detention.  The government said nothing about the firearm in open court, and it did not file a detention memorandum discussing the firearm.  The indictment likewise alleged nothing about the firearm except that it was a Ruger P95 9mm pistol, that Silva "received or possessed" it "in or about February 2013" in Cambridge, and that its serial number had been obliterated.

Even so, almost as soon as the indictment was unsealed, reporters familiar with the Tsarnaev case who knew that Silva was Tsarnaev's close friend and that Tsarnaev was alleged to have murdered Officer Sean Collier in Cambridge with a Ruger P95 9mm pistol in April 2013 perceived a possible connection; several asked the Press Officer for the United States Attorney's Office for the District of Massachusetts whether the gun alleged in the Silva indictment was used to kill officer Collier.  The Press Officer refused all comment.  That did not, however, stop news outlets from reporting on the possible connection.  In an article that same day, for example, the Boston Globe noted that "[t]he US attorney's office in Boston . . . declined to say if the arrest of Stephen Silva . . . is related to the Boston Marathon bombing investigation . . . and law enforcement officials would not comment."[1]  The Globe nevertheless highlighted the facts that Silva and Tsarnaev were close friends and that the gun Silva allegedly possessed is "the same model alleged to have been used in the shooting of MIT police Officer Sean Collier days after the bombings."  Id.  Other news outlets ran similar stories.

As Tsarnaev correctly points out, two reporters also quoted anonymous sources in their reports.  Both reporters quoted "law

---

[1]

http://www.bostonglobe.com/metro/2014/07/22/friend-marathon-bombing-suspect-arrested-drug-gun-charges/kyqTZ032qhejRHZxa96yzO/story.html

enforcement officials" as saying that the gun alleged in the Silva indictment was the gun used to kill Officer Collier.  One reporter also quoted a "high-ranking government official" as stating that this allegation would help rebut a defense mitigation theory that Tsarnaev was less culpable than his older brother.  Tsarnaev also correctly points out that at the June 18, 2014 status hearing, the Court expressed unhappiness that two former law enforcement officials had participated in news programs concerning the Marathon bombing investigation and directed the government to "remind people involved in the case, even formerly, of their responsibility to the integrity of the trial."

Tsarnaev now asks that the Court: (1) "ascertain what steps the government took after the June 18 hearing, and what new instructions (if any) were provided to law enforcement;" and (2) "require the presence and testimony of the law enforcement officers in charge of the investigation [at a hearing] to determine who had access to the information that has recently been released, and what steps were taken to prevent such leaks."  (Deft. Mot. at 4).

## ARGUMENT

The government agrees with the defense that law enforcement officials involved in the investigation and prosecution of this matter should not make public statements (including subjective observations) about the evidence or the defendant's character, guilt

3

or innocence, or relative culpability.  No law enforcement official involved in the investigation or prosecution of this case should have alleged publicly (i.e. to a reporter) that the gun referenced in the Silva indictment was the gun used to kill Officer Collier, and no federal government official, "high-ranking" or otherwise, should have stated that this allegation would help rebut a defense mitigation theory that Dzhokhar Tsarnaev was less culpable than his older brother.  Assuming these comments have been accurately reported and attributed, the government deplores them.

As the defense acknowledges, the prosecution team has issued several oral and written reminders to law enforcement officials involved in this matter to refrain from inappropriate public comments.  Similar reminders were repeatedly given to the law enforcement officers involved in the Silva investigation.

Following the June 18, 2014 status hearing, the government immediately ordered a copy of the transcript so that the Court's own words could be included a letter to law enforcement about the importance of avoiding inappropriate public comment.  The government received a certified copy of the transcript on July 18, 2014, and sent a letter to relevant department heads and former law enforcement agents on July 22, 2014.  A copy of the letter is attached.  That effectively answers the question of "what steps the government took after the June 18 hearing and what new instructions

4

(if any) were provided to law enforcement."

The government does not believe a hearing "to determine who had access to the information that has recently been released" (Deft. Mot. at 4) would serve any useful purpose, because the anonymous law enforcement sources cited in the news articles did not actually "leak" any information and thus did not necessarily have knowledge of the evidence in the Silva case. As noted above, it has long been public information that Silva and Tsarnaev were close friends; the Silva indictment charges that in February 2013 Silva "received and possessed" a Ruger P95 9mm pistol; and the Tsarnaev indictment charges that in April 2013 the Tsarnaevs used a Ruger P95 9mm pistol to kill Officer Collier. The allegation that the gun referenced in the Silva indictment is the same gun that was used to kill Officer Collier is merely an allegation. News reporters made the connection based on public information; the anonymous law enforcement sources cited in their articles simply (albeit improperly) expressed their own view that the allegation is correct. But no non-public information in support of that allegation has ever "leaked," either during the months-long investigation that preceded the Silva indictment or in the weeks since it has been unsealed.[2] The anonymous law enforcement sources who "confirmed" the allegation may well have known little or nothing more about the evidence in the Silva case

---

[2] The detention affidavit that the government refrained from filing in the Silva case sets forth detailed facts about the underlying investigation.   A copy is attached hereto as Sealed Exhibit "A."

than the reporters who sought their confirmation in the first place. This simply is not a case where knowing who "had access to" the evidence in the Silva case would meaningfully limit the universe of law enforcement officials who might have expressed a view on the matter.[3]

The same holds true for the "high-ranking government official" who purportedly stated that the allegation about the gun would help rebut a defense mitigation theory that Tsarnaev was less culpable than his older brother. This purported statement likewise is not a "leak" of non-public information but rather an improper comment. The government deplores the making of this comment. But there is no indication in the article that the "government official" is a law enforcement officer, someone else with actual knowledge of the evidence in the Silva case, or someone connected in any official way with this case. It could be any government official -- federal, state, or local -- from any jurisdiction. A hearing to determine the identity of this anonymous "government official" would almost certainly be fruitless.

As much as the government regrets all instances in which law

---

[3] Tsarnaev cites a news report "that federal prosecutors briefed top officers in the [Cambridge Police Department] about Silva's arrest." Ranking officers in the Cambridge Police Department were in fact briefed in advance about Silva's arrest because the arrest took place in Cambridge. When armed federal agents plan to make an arrest in a residential area they routinely notify local law enforcement. In this case, moreover, Cambridge police officers were part of the task force that investigated the Silva case. But no federal prosecutors were involved in any such briefing. This inaccuracy bolsters the likelihood that the anonymous "officials" who spoke to reporters may have had no actual knowledge of the matters they commented on.

enforcement officials -- regardless of whether they are involved in this case or have any access to the evidence -- comment on the evidence, the government cannot fairly be held accountable for all of them.  The government has done its best to notify relevant law enforcement agencies of their responsibilities and will continue to do so.  In this particular case, the actions in question were not "leaks" of non-public information but rather the publicly-stated opinions of anonymous law enforcement officers and an anonymous "government official" who may well have had no access to the evidence underlying the Silva case.  There is no evidence of actual prejudice to the defendant.  Under the circumstances, a hearing to determine the source of the "leaks" would serve no purpose.

### CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's renewed motion for a hearing to address law enforcement "leaks."

                    Respectfully submitted,

                    CARMEN M. ORTIZ
                    UNITED STATES ATTORNEY

              By:  /s/ William D. Weinreb
                    WILLIAM D. WEINREB
                    ALOKE S. CHAKRAVARTY
                    NADINE PELLEGRINI
                    Assistant U.S. Attorneys

7

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ William D. Weinreb*
WILLIAM D. WEINREB