**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )    **Crim. No.13-10200-GAO** |
| | )    **FILED UNDER SEAL** |
| **DZHOKHAR A. TSARNAEV,** | ) |
|        **Defendant** | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION TO COMPEL COMPLIANCE WITH GOVERNMENT'S EXPERT DISCOVERY OBLIGATIONS**

The United States of America, by and through its undersigned counsel, respectfully opposes Tsarnaev's "Supplemental Motion to Compel The Government to Comply With Its Expert Discovery Obligations." As set forth below, the government has complied with its obligations under Federal Rule of Criminal Procedure 16(a)(1)(G) and has provided the requisite level of detail about the government's expert witnesses. Because Tsarnaev's supplemental motion complains of the disclosures made by the government on August 1, 2014, the government incorporates its prior briefing and responds to Tsarnaev's new complaints below.

## ARGUMENT

"The *type* of information that must be disclosed under [Rule 16(a)(1)(G)] is . . . very clear. The *quantity* and *specificity* required of the disclosure, however, is less so." United States v. Mehta, 236 F.Supp.2d 150, 155 (D. Mass. 2002) (emphasis in

original).  Despite the lack of clarity on these issues, the

following basic principles have emerged from the case law.

First, the "summary" required by Rule 16(a)(1)(G) is

limited by the Rule's purposes.  According to the comments that

accompanied the Rule's enactment in 1993, it is intended to: (a)

"permit the requesting party to determine whether in fact the

witness is an expert within the definition of Federal Rule of

Evidence 702," (b) "inform the requesting party whether the

expert will be providing only background information on a

particular issue or whether the witness will actually offer an

opinion," and, in the latter case, (c) provide the opponent

"with a summary of the bases of the expert's opinion."

This language makes clear that unlike the corresponding

rule of civil procedure, Fed. R. Civ. P. 26(a)(2), which

requires a "complete statement" of the "basis and reasons" for

"all opinions" an expert will offer, Rule 16(a)(1)(G) requires

only a "summary."  See Mehta, 236 F.Supp.2d at 155.  A party

need not, for example, include all information that might be

useful to an opponent at a Daubert hearing.  See United States

v. McCluskey, 954 F.Supp.2d 1224, 1231 (D.N.M. 2013) ("Detailed,

extensive discussion is not required in the Rule 16 summary" and

"the requirement of setting forth 'the bases and reasons for'

the witnesses' opinions does not track the methodological

2

factors set forth by the Daubert Court.") (internal quotation marks and citation omitted).

Courts have fleshed out Rule 16(a)(1)(G)'s limited disclosure obligation in a number of cases. In United States v. Brown, 592 F.3d 1088 (10th Cir. 2009), for example, the government disclosed that a fingerprint expert would testify that she compared a latent print found at the crime scene to the defendant's inked print and found that they matched; the Tenth Circuit found that this disclosure adequately summarized the bases for the expert's opinions even though it "failed to mention fourteen identical points of comparison or specifically describe the expert's methodology." Id. at 1090-91. Similarly, in United States v. Jackson, 51 F.3d 646 (7th Cir. 1995), the Seventh Circuit found sufficient a drug expert disclosure that stated the experts would "testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics" and would base their testimony on "the use of beepers, firearms, walkie-talkies and wire transfers" as well as "their years of training and experience in the area of drug investigations." Id. at 651. See also United States v. Duvall, 272 F.3d 825, 828 n.1 (7th Cir. 2001) (holding that government's notice adequately disclosed bases for expert's opinions where it stated that opinions would

be "based on [the expert's] education, training and experience

with the Evansville Police Department and Drug Enforcement

Administration" and the expert's qualifications were in an

attached resume); United States v. Rogers, 2006 WL 5249745, at

*3 (D.D.C. Jul. 17, 2006) ("A party sufficiently states an

expert's basis for his testimony by noting the experts'

education, training and experience and attaching a resume.").

Second, the comments accompanying the enactment of Rule

16(a)(1)(G) make clear that different disclosure obligations

attach depending on whether the expert "will be providing only

background information on a particular issue or whether the

witness will actually offer an opinion." Rule 16(a)(1)(G) (1993

comments). In United States v. Lamonda, 2006 WL 843823 (M.D.

Fla. Mar. 29, 2006), for example, the government notified the

defendants that it intended to call an expert to testify about

> viaticals, viatical settlements and terms associated
> with viatical settlements . . . [and] the nature of a
> viatical settlement, including the individuals and
> entities involved in a viatical settlement, the role
> that life expectancy determinations play in a viatical
> settlement and the roles of an escrow agent and
> trustee in a viatical settlement."

Id. at *3. The government specified that the expert would not
offer opinions in this area but rather would

> only provide testimony regarding the general
> background of the viatical industry" and "[definitions
> of] such industry terms as viator, viatical, life
> settlement, broker, sales agent, viatical settlement
> provider, life expectancy, purchaser, premiums,

escrow, trust, beneficial and fractionalization.  He
will also explain the nature of a viatical transaction
and the risks and potential returns associated with
the investment.

Id.  The court held that this disclosure was sufficient

considering the nature of the testimony being offered.  Id.

    With these legal standards in mind, we address each of

Tsarnaaev's complaints in turn.

**ARGUMENT**

    **Terrorism/Geopolitics.**  The government's terrorism/

geopolitics experts will not offer opinion testimony but rather

only background information about matters within their area of

expertise.  Disclosure of their anticipated testimony is a good-

faith effort to put Tsarnaev on sufficient notice of the

government's case so that he has adequate time to hire his own

responsive experts if he so wishes.  The government has

summarized the matters about which they will be testifying and,

to the extent the experts prepare written reports, will provide

them as Jencks material when it receives them.  Under the

circumstances, Tsarnaev's allegation of a Rule 16(a)(1)(G)

violation with respect to these experts has no merit.

    Tsarnaev claims, incorrectly, that it is not enough under

Rule 16(a)(1)(G) to disclose that an expert will testify about

the meanings of certain phrase, images, and symbols found in

various writings and photos and videos without specifically

5

listing each writing, photo, video; each phrase, image and symbol; and the meaning that will be ascribed to each.  (Deft. Mot. at 3).  He is wrong for several reasons.  First, explaining the meaning of a phrase or symbol (particularly one in a foreign language) may require expert knowledge (as it does here), but it is not the same as offering an opinion; it is merely providing background information.  Second, the kind of detailed information Tsarnaev demands -- in essence a script of the expert's testimony -- is perhaps the kind of "complete statement" required by Fed. R. Civ. P. 26(a)(2), but it is plainly much more than the "summary" required by Rule 16(a)(1)(G).  The government's disclosure is sufficiently detailed so that Tsaranev -- with the aid of his own expert, if he has one -- can prepare for cross-examination of the government's experts.

Tsarnaev next claims, again incorrectly, that the government has inadequately disclosed the basis for anticipated expert testimony that the evidence is consistent with Tsarnaev's having self-radicalized.  (Deft. Mot. at 4).  Once again, however, this is not opinion testimony -- no expert will testify that in his expert opinion Tsarnaev self-radicalized -- but rather will testify to background information about facts and circumstances associated with his radicalization.  The

6

witness(es) will base this testimony on their education,

training, experience, as disclosed in their detailed c.v.'s, as

well as on their review of the discovery materials in this case.

Rule 16(a)(1)(G) does not require the government to identify

each "underlying fact" and "research report" that collectively

make up an expert's education, training, and experience, or each

item of discovery that the expert has reviewed and may mention

in his testimony.  Once again, the government's disclosure is

sufficiently detailed for Tsarnaev to prepare for cross-

examination and/or rebuttal of the government's experts.

    Tsarnaev is likewise mistaken in assuming that the

government's experts will offer *their opinion* that his crimes,

compared to other acts of terrorism, "were especially heinous,

had an extraordinary impact on victims and the community,

reflect an extraordinary commitment to violent jihad, and

demonstrate that he poses a risk of continuing harm."  (Deft.

Mot. at 6).  Rather, as before, the experts will provide

background information about other terrorists, their level of

commitment to jihad, other acts of terrorism, the amount of

planning that went into those acts, the impact of those acts,

and the impact of the Marathon bombings.  They will highlight

specific items of evidence and explain their significance.  Once

again, they will base this testimony on their education,

7

training, and experience.

In arguing that the remainder of the government's terrorism-expert disclosure is "generic" and "boilerplate" and "could apply to virtually any Islamic terrorism case or defendant in the internet age" (Deft. Mot. at 3, 4), Tsarnaev does not allege a violation of Rule 16(a)(1)(G). Background information of the type detailed in the criticized portion of the disclosure is by definition not case-specific. In this case, it will help the jury understand how Tsarnaev became a violent jihadi and why he chose to advance his radical agenda through acts of terrorism. Expert testimony of this sort is routinely introduced in terrorism cases to prove the defendant's motive and intent, see, e.g., United States v. Mehanna, 735 F.3d 32, 67 (1st Cir. 2013); United States v. Mubayyid, 658 F.3d 35, 43, 56, 67 (1st Cir. 2011), and the level of detail and prospective scope of testimony laid out in the government's disclosure has routinely been deemed sufficient in terrorism cases across the country, including Mehanna and Mubayyid.

**Computer Forensics.** Like the government's terrorism experts, its computer forensic experts will not offer opinion testimony. Rather, they will describe the features of various digital devices (e.g., computers, iPhones, iPods) and their respective operating systems, describe software programs that

8

they used to examine the data on those devices, and recount the
results of their examinations.  A more detailed description of
the subject matter of their anticipated testimony is included in
the government's disclosure.  There are no "opinions" to
disclose and therefore no "bases" for those opinions.  The basis
for their testimony will be their education, training and
experience.  The level of etiological detail Tsarnaev seeks to
compel from the government goes far beyond the kind of summary
information required by Rule 16(a)(1)(G).

     The government has already identified for Tsarnaev the few
digital devices that he is known to have used or on which his
statements or documents are known to have been stored.  We will
supplement this list if other devices become known.  The
government has also identified the digital media from which the
government intends to offer most of its digital evidence.  This
information, in conjunction with the government's disclosure,
should enable Tsarnaev's forensic expert to conduct his own
examination of the relevant devices and thus prepare Tsarnaev to
cross-examine and/or rebut the government's experts.

     When the government identifies its final exhibits, it will
produce the specific files and metadata that it intends to
introduce against the defendant.  Rule 16(a)(1)(G), however,
does not require that such disclosure be compelled at this

stage, especially, as here, where the witnesses are not rendering "opinions" about this data, but rather will be explaining what it is.

**Linguists**. The government has not yet determined whether it will need to offer translations of any foreign-language documents and therefore has not yet prepared (or produced) and preliminary translations. In an abundance of caution, however, the government has provided notice of the linguists it will call if needed so that Tsarnaev can prepare to cross-examine them and, if he wishes, hire his own translators. To the extent Ms. Shishani testifies about common cultural norms within Chechen and Caucasian society she will be testifying as a lay witness, for whom no Rule 16(a)(1)(G) disclosure is required.

**Cellular Geolocation**. The government produced all of the cell site data at issue in this case nearly a year ago. That data discloses the locations of the subject phones on all dates for which data is available. The government's expert will not offer his "opinion" on where the phones were on a particular date; he will simply explain what cell-site data is and how he used software to plot it on a map. Rule 16(a)(1)(G) does not entitle Tsarnaev to an advance account of his exact testimony. Tsarnaev already has all the information he needs to analyze the data himself and use the results to cross-examine or rebut the

10

expert's testimony.

**Forensic Pathologists/Medical Examiners**. The government has produced the autopsy reports and photographs for all of the victims in this case. Those reports fully disclose the experts' opinions as to the manner of death and the bases for those opinions. The three victims who died at the Marathon did not die instantly because they bled to death. Officer Collier was shot to death. The examiner who performed the autopsy on Officer Collier will not opine that he was shot by more than one person.

**Trauma Surgeon**. Among the facts that the government will seek to prove at trial are that Tsarnaev used IEDs to kill the victims; that IED's kill victims in a particular manner that is extremely painful; and that the IEDs Tsarnaev exploded created a grave risk of injury death to people other than decedents. Because these matters are not within the ken of the average juror, the government intends to call Dr. David King as an expert witness. Dr. King's c.v. has been provided to the defense. His expertise is based on his education, training, and experience. He gained part of that experience during his multiple postings as Chief of Surgical Services during Operation Enduring Freedom and Operation Iraqi Freedom, where he treated numerous soldiers who had been wounded by IEDs.

11

Most of Tsarnaev's argument is taken up with a spurious attack on the government's motives for calling Dr. King and an apparent attempt to pre-litigate a motion in limine to exclude his testimony under 18 U.S.C. § 3593(c). Suffice it to say that the government's summary of his anticipated testimony and the bases for it amply satisfies Rule 16(a)(1)(G).

**Toolmarks**. Erich Smith is an FBI forensic analyst. Like all FBI forensic analysts, his reports concisely summarize his opinions and the bases for them. For example, with regard to one comparison, the analyst writes "The insulation on Q582.2 through Q582.4 wires were identified as having been cut by the 18 gauge slot of the Q725.10 wire strippers from Laboratory number 130421100 AAR NN." (Report of Erich J. Smith at 14-18.) This is not as much as an opinion as an observation, but to the extent that it describes, in narrative form, the conclusion of the witness and the reasons he arrived at the conclusion, it is apparent from the report itself.

The government has also produced all of the supporting materials that underlie his reports. Disclosures of forensic expert testimony are routinely made in this manner and routinely upheld by the courts. See, e.g., United States v. McCluskey, 954 F.Supp.2d 1224, 1230 (D.N.M. 2013) (holding that government's disclosure for a Supervising Forensic Scientist was

adequate where the government "provided Defendant with [the expert's] reports and approximately 70 pages of methodology, testing analysis, results, notes, and national match detail report.").

**Explosives.**  The government provided a supplemental disclosure with respect to explosives testimony to identify areas which may not have been included in the previous explosives expert reports, but along which the government intends to elicit testimony. In it, the government provided notice that the witness would highlight similarities and differences between the devices at issue in this case, and those that are described in Inspire magazine (one of the resources used by the defendant), and military ordnance.  Again, these are not opinions at all, but rather relevant observations of significant aspects of the devices in this case that the jury will have to consider with respect to the preparatory steps for the crimes alleged, the intent of the defendant, and objectives of the devices themselves.  Again, this disclosure places the defendant in the position to prepare his case.

## CONCLUSION

To the extent that the defendant's objective is to obtain writings which they can use to impeach a witness, or a detailed transcript of the witness' prospective testimony, the criminal

13

rules of procedure simply don't require such production.  The
defendant is entitled to a summary, and the government's
disclosure satisfies this requirement, especially as relates to
the very limited opinion testimony.

Nevertheless, as indicated in its disclosure letter, the
government intends to provide further materials related to some
of the witnesses, essentially as Jencks-type material.  With
respect to the terrorism witnesses, each is preparing an expert
report along the lines outlined in the government's disclosures.
In addition, the FBI has prepared a report of significant items
from the defendant's laptop computer, which the government will
produce to the defendant.  The government will produce this
information to the defendant by September 2, 2014.

WHEREFORE, the government respectfully requests that the
Court deny Tsarnaev's Supplemental Motion to Compel.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:  /s/ Aloke Chakravarty
     ALOKE S. CHAKRAVARTY
     WILLIAM D. WEINREB
     NADINE PELLEGRINI
     Assistant U.S. Attorneys

14

Certificate of Service

I hereby certify that this document was served on the counsel for the defendant by email August 20, 2014, and will be provided paper copies, along with the Court on August 21, 2014.

/s/ Aloke Chakravarty
Aloke Chakravarty
Assistant U.S. Attorney

15