EXHIBIT A

Declaration of Kevin McNally

## DECLARATION OF KEVIN McNALLY
## REGARDING PRE-TRIAL PREPARATION TIME

1. I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. I have served as Resource Counsel since the inception of the Resource Counsel Project in January, 1992. The Project is funded and administered under the Criminal Justice Act by the Defender Services Office of the Administrative Office of the United States Courts.

2. My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1] The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50. A recent update to the Report stated: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance

In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases. I accomplish this by internet news searches, reviewing dockets, and downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and orders and opinions by the District Courts. I also conduct telephonic or in-person interviews with defense counsel, and consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel. The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center, and by various federal district courts.

    4. Resource counsel collect comprehensive and accurate data concerning various practices that have emerged since the federal courts resumed trying capital cases in 1990. This collection of data includes the intervals of time between various

---

in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable."
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

pretrial milestones and trial and mitigation submission.

5.  There have been 150 defendants whose federal capital cases have actually commenced trial since January 1, 2004.  A number of these cases involved two or more capital co-defendants; as a result, the 150 defendants' cases represent a total of 119 trials.[2]

6.  The average time between indictment and the trial date for the 150 federal capital defendants who actually began trial from January 1, 2004 forward, is approximately 36.5 months.

7.  The median time between indictment and the trial date for the 150 federal capital defendants who actually began trial from January 1, 2004 forward, is approximately _32.6__ months

8.  The average time between indictment and the trial date in the 119 federal capital cases which actually began trial from January 1, 2004 forward, is approximately 37.1 months.

9.   The median for the time between indictment and the actual trial date in these 119 federal capital cases, from 2004 forward is 32.6 months.

---

[2] There are three defendants included in this total (Donnell Young, Ronell Wilson and George Lecco) who two trials during the period. These figures include only the first trial.

3

10.   In order to determine whether these time-to-trial calculations were of trials of Bureau of Prison inmates for murders committed while incarcerated, I recalculated the time-to-trial intervals with 18 BOP cases removed. This was done to test the hypothesis that BOP murder cases might typically to take longer to reach trial for reasons unrelated to the needs of the parties for adequate preparation time. Removing the 18 BOP cases had little effect on the average or median time-to-trial intervals, which remained at 36.1 (average) and 31.6 (median).

11.   Of the 150 federal defendants to stand trial during this period, three (in one case) were Russian nationals whose cases involved mitigation investigation in Russia. Two of these defendants (Iouri Mikhel and Jurijus Kadamovas) were tried jointly; the case of the third co-defendant (Petro Krylov) was severed, and he was tried last. The first of these trials began 52.9 months after indictment. The second and last began 60.3 months after indictment.

12.   Pursuant to declarant's responsibilities as Federal Death Penalty Resource Counsel, declarant has compiled the above information regarding federal capital cases in the regular course of the business of the Federal Death Penalty Resource Counsel Project.

I declare under the penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 29th day of August, 2014.

/s/ Kevin McNally
Kevin McNally