UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA　　　）
　　　　　　　　　　　　　　　　）
　　　　v.　　　　　　　　　　　）　　　CRIMINAL NO. 13-10200-GAO
　　　　　　　　　　　　　　　　）
DZHOKHAR TSARNAEV　　　　　　）

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO MOTION TO CONTINUE TRIAL**

**False allegations regarding defense investigation in Russia.**  In arguing that the

current expedited trial schedule is adequate to the demands of the defense sentencing

investigation, the government has managed to erect yet another barrier that the defense

must now overcome.  Without any effort  to contact defense counsel to determine the

actual facts, or even the simple courtesy of a few hours' advance notice, the government

has seen fit to include in a publicly-filed pleading false and facially preposterous

allegations about the conduct of members of the defense – including that defense team

members refused to identify themselves, and claimed to be "members of the FBI" while

conducting interviews in Russia.  Let us be clear: at no time have members of the defense

team misrepresented themselves or lied about their work.   The government made these

reckless allegations after being placed on notice that the defense had filed an *ex parte*

supplement to its continuance motion under seal because "public disclosure of the

circumstances surrounding the [overseas] defense investigation in this case would greatly

exacerbate the already-formidable obstacles that counsel face."  Mot. for Continuance,

DE 518 at 8.  The government was also aware of our observation, as set out in the same

motion, that the domestic defense investigation was being hampered by widespread fear

1

and suspicion among potential witnesses, and that these obstacles to the defense investigation were at least partly due to the continuing series of arrests, indictments, convictions and deportations of potential witnesses who knew Tamerlan or Dzhokhar Tsarnaev. *Id.* at 2, 11-14.

Despite all of this, the government has endorsed and publicly disseminated the absurd charge that members of Mr. Tsarnaev's defense team have been impersonating "members of the FBI" while attempting to investigate their client's family background in Russia.[1]  Leaving aside that such conduct is a federal crime punishable by up to three years' imprisonment, *see* 18 U.S.C. § 912, the defense has no motive to lie or impersonate FBI agents, and every reason not to.  One of the greatest obstacles to defense investigation in cases like this one is witnesses' misplaced belief that anyone from the United States asking questions must be a government agent of some sort.  In countries where truly independent appointed defense counsel is an unfamiliar concept, defense attorneys and investigators must devote much time and effort to persuading potential witnesses that the defense is actually working to protect their client rather than facilitating the U.S. government's effort to execute him.  Now the prosecution has undermined our work with a false and inflammatory charge that we had never seen (from Russian government officials or anyone else) before its latest filing.

---

[1] Not surprisingly, this sensational allegation was quickly picked up and disseminated by local, national and international news media.  *See, e.g.*, Travis Andersen and Milton J. Valencia, *Russian authorities say Tsarnaev defense team claimed to be FBI,* BOSTON GLOBE (September 12, 2014); Erik Larson, *Bomb Suspect's Lawyers Impersonated FBI in Russia: U.S.,* BLOOMBERG NEWS (September 13, 2014); Sneha Shankar, *Boston Marathon Bombing Accused Tsarnaev's Defense Team Members Posed As FBI, Says Russia,* INTERNATIONAL BUSINESS TIMES (September 13, 2014).

Just how much damage has been done by the prosecution's repetition and apparent endorsement of this baseless allegation remains to be seen.  But such a gratuitous attack on the integrity and trustworthiness of the defense is likely to further impede and slow the unfinished work in which the defense is now engaged.

**Comparison to all other federal capital trials.**  The government suggests that the Court should attach no significance to the fact that this complex case is on an unusually fast track compared to the entire universe of 119 federal death penalty cases to reach trial in the past decade.  *Compare* Opp. 2 *with* DE 518, Exhibits A-D.  But the government's reasoning appears to boil down to the remarkable assertion that since the current indictment-to-trial period is not shorter than *every single* prior case, but only the large majority of them, this case "is not an outlier but rather falls within the preparation-time range established by other cases."  Opp. 2-3.  Beyond this, the government recites the truism that every case is different, Opp. at 2, but fails to suggest anything about *this* case that would justify *less* time (let alone 50 percent less time) than the median of all cases tried since 2004.  The government's cliché about "apples and oranges" is a poor substitute for an actual examination of the data, since any inquiry into the facts and circumstances of the other federal capital cases would only show that very few involved issues and evidence even approaching the magnitude and complexity of this one.

In this connection, it is worth noting that of the 151 individual defendants to have faced federal capital trials since 2004, only three – Iouri Mikhel, Jurijus Kadamovas, and Petro Krylov – were nationals of former Soviet states, including Russia, whose cases involved investigations in those countries.  Mikhel and Kadamovas's trial began well

over four years after indictment, while their co-defendant Krylov's trial got underway after that.  DE 518, Exhibit C, No. 121-22, 137.  Of course the defense has never suggested, and does not suggest now, that four or five years' preparation time is appropriate or necessary here.  But there can be no serious question that substantial barriers of language, geography, culture, and history make a difference in how fast defense counsel can be expected to prepare a capital case for trial and sentencing.  And the difference is that these factors normally require *more* time to overcome, not less.

**Government's critique of the defense investigation.**  The government charges defense counsel with "wasted effort," and offers the single example of our attempt to investigate the explosively violent behavior of one of Tamerlan Tsarnaev's closest friends (and allegedly his confessed accomplice in a triple murder), Ibragim Todashev.  According to the government, this investigation is irrelevant because "Todashev . . . had no connection whatsoever to the events charged in the Indictment."  Opp. at 5.  But Todashev had an important connection to the world in which our then-teenaged client came of age, and understanding that world – including the violent and powerful people in it – is part of the job of the defense in a capital case.  The government's uninformed second-guessing of our work sheds little light on the merits of our request for the time we need to finish it.  Investigation of the defense case in mitigation is necessarily much broader than the government's investigation of the crimes.  The government's self-serving assertion that much of the evidence it has reluctantly produced is irrelevant does not make it so, nor does it relieve the defense of its constitutional obligation to review all of the material thoroughly.

4

**Effect of government disclosure delays.**  Having produced a series of inadequate and uninformative expert witness disclosures that have stymied our ability to respond, *see* DE 440, 460, the government now asserts that these issues "have been overtaken by events."  Opp. at 7.  By "events," the government apparently means its own belated compliance with some of its Rule 16 obligations.   But November 3 is now just six weeks away, and the defense is struggling to respond in the next 18 days to still-incomplete summaries of expert testimony that the government has had well over a year to develop.

As just one example, on September 2 and 3 the government produced an undated and still incomplete 53-page FBI report analyzing some of the contents of Dzhokhar Tsarnaev's laptop computer, followed by 99 pages of reports by three experts in "terrorism and geopolitics" which rely on that computer analysis to draw sweeping and misleading conclusions about the history and course of Dzhokhar Tsarnaev's "self-radicalization."  In its cover letter, the government accurately describes the FBI computer document as a "report of examination" of the defendant's computer, which means that it should have been produced a year ago.   See Fed. R. Crim. P. 16(a)(1)(F) and Loc. R. 116.1(C)(1)(a).   The government still has not produced analogous reports – as required by Rule 16 – for the many other electronic devices that the FBI also surely examined forensically (including Tamerlan's laptop, a shared desktop from the family residence, and an external hard drive recovered from the Watertown scene).   Tamerlan's computers – and indeed his very existence – are omitted from all four of these reports, presumably because the government believes that its case for the death penalty will be stronger if the jury remains in the dark about how the Marathon bombing was conceived, and by whom.

But developing and disclosing the expert digital and other responses to this unexpectedly one-sided analysis will take more time than we presently have.  In short, the government's belated and still incomplete disclosures have had the effect of compressing the defense's opportunity to respond into an impossibly short time frame, and further justify a reasonable continuance of the trial.

## CONCLUSION

We have done our best to complete the work required of us in the eight-and-a-half months allotted by the Court when it set the November 3, 2014 trial date.  We must now report that the job has proven too large and the time too short.  An extraordinarily aggressive pace of preparation work will still be required, and this case still will be tried much more quickly than the average federal capital case, even with the additional ten months we have requested.  And this case is far from average.

More time is needed to ensure basic fairness to the accused.  It is also needed to serve society's interest in the fullest possible accounting of what happened in Boston during the week of April 15, 2013, and why it happened.  For these reasons, the defendant's motion to continue this case should be granted.

Dated:    September 15, 2014          Respectfully submitted,
                                      DZHOKHAR TSARNAEV

                                      by his attorneys

                                      */s/ David I. Bruck*

                                      Judy Clarke, Esq. (CA Bar # 76071)
                                      CLARKE & RICE, APC
                                      1010 Second Avenue, Suite 1800
                                      San Diego, CA 92101

(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

### Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 15, 2014.

*/s/ David I. Bruck*