UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )
                                   )   Criminal Action
v.                                 )   No. 13-10200-GAO
                                   )
DZHOKHAR A. TSARNAEV, also         )
known as Jahar Tsarni,             )
                                   )
        Defendant.                 )
                                   )


BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


**STATUS CONFERENCE**


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Thursday, September 18, 2014
10:02 a.m.


Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

1    APPEARANCES:

2         OFFICE OF THE UNITED STATES ATTORNEY
          By: Donald L. Cabell, Aloke Chakravarty, Nadine Pellegrini
3         and William D. Weinreb, Assistant U.S. Attorneys
          John Joseph Moakley Federal Courthouse
4         Suite 9200
          Boston, Massachusetts  02210
5         On Behalf of the Government

6         FEDERAL PUBLIC DEFENDER OFFICE
          By: Timothy G. Watkins, Esq.
7         51 Sleeper Street
          Fifth Floor
8         Boston, Massachusetts  02210
          - and -
9         LAW OFFICES OF DAVID I. BRUCK
          By: David I. Bruck, Esq.
10        220 Sydney Lewis Hall
          Lexington, Virginia  24450
11        On Behalf of the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        P R O C E E D I N G S
 2              THE CLERK:  All rise.
 3              (The Court enters the courtroom at 10:02 a.m.)
 4              THE CLERK:  The United States District Court for the
 5     District of Massachusetts.  Court is in session.  Please be
 6     seated.
 7              For a status conference in the case of United States
 8     versus Dzhokhar Tsarnaev, Docket 13-10200.  Would counsel
 9     identify yourselves for the record.
10              MR. WEINREB:  Good morning, your Honor.  William
11     Weinreb for the United States.
12              MR. CHAKRAVARTY:  As well as Aloke Chakravarty for the
13     United States, your Honor.
14              MR. CABELL:  Good morning, your Honor.  Donald Cabell
15     also for the United States.
16              THE COURT:  Good morning.
17              MS. PELLEGRINI:  Good morning, your Honor.  Nadine
18     Pellegrini.
19              MR. BRUCK:  Good morning, your Honor.  David Bruck and
20     Tim Watkins for the defendant, whose presence is waived.
21              THE COURT:  Good morning.
22              As the parties have noted in the status report, there
23     are a number of pending motions that have been fully briefed.
24     I had hoped to have addressed the suppression motions by this
25     point but have not quite completed that.  I expect that to
```

1    happen very shortly.

2         Let me deal with a couple of the motions that are more

3    procedural than substantive, although maybe one or two of these

4    had some substance as well.  There's a pending motion,

5    second -- supplemental motion to compel discovery from the

6    government concerning expert witnesses, which is Number 460,

7    posed by the government.  That motion is denied.  I think the

8    response has been sufficient under the rule.

9         A pending motion, Number 531, to supplement the record

10   or for an evidentiary hearing on the motion to change venue is

11   denied.  The record is complete.

12        Number 548, a motion for leave to file a reply, is

13   granted, and Number 550, a motion for leave to file a surreply,

14   is granted.  And 558, a motion for leave to file a reply, is

15   granted.

16        Now, with respect to pending discovery matters, there

17   are renewed motions by the government concerning the defense's

18   obligation regarding reciprocal discovery and also a motion for

19   a list -- a renewed motion for a list of mitigating factors.  I

20   would like you to address those, if you would.  Let's take the

21   reciprocal discovery one first.

22        MR. WEINREB:  Your Honor, we have received absolutely

23   nothing in reciprocal discovery from the defense, and their

24   argument seems to be that they have no obligation to give us

25   anything in reciprocal discovery until they have borne the

1    intention to use it at trial, which is what the rule states.

2    But I think that rule has to be interpreted in a reasonable

3    fashion.  After all, the rule for the government is exactly the

4    same.  Our obligation under the corresponding rule is to

5    produce things in discovery that we intend to use at trial, but

6    no one would suggest that the government can wait until the day

7    it submits its exhibit list to give the defense discovery in

8    the case, nor would it be acceptable for us to simply give them

9    everything in discovery and say we intend to use all of it

10   without, you know, any distinction.

11        The defense made it -- this isn't the kind of case

12   where the defense is simply going around gathering things at

13   the last minute and therefore it might be reasonable for them

14   to say, Well, we don't even have these things in our possession

15   or we haven't had a chance to look at them; this is a case

16   where the defense has been gathering materials and information

17   from day one, and it's been 18 months.

18        If the defense has materials from among which they

19   know that they will be drawing their exhibits, then I think a

20   reasonable interpretation of the rule is that they need to

21   produce those to the government in discovery.  I think it was

22   one thing for them -- you know, the local rules contemplate

23   that the defense will provide reciprocal discovery a couple of

24   weeks after the government provides its discovery.  Clearly,

25   now it's been a lot longer than that and we are on the eve of

1  trial.

2          The government needs these materials not simply to

3  help strategize about what it's going to do in the case, but we

4  have obligations coming up to provide reciprocal expert

5  disclosures that may be influenced by what the defense is going

6  to offer at the trial.  We also, you know, are making decisions

7  about which witnesses are going to be on our witness list, what

8  exhibits are going to be on our exhibit list.  And, again, this

9  is a situation where -- because it's a death penalty case,

10  where if we don't include somebody on our expert list, then

11  arguably under the statute -- unless they're on the witness

12  list three days before trial begins, the defense would have an

13  argument that they can't be called.  So we need reciprocal

14  discovery in a timely fashion.

15          The Court ordered that it be provided.  Nothing was

16  provided.  So we would ask that the Court craft some kind of

17  remedy, a reasonable one, that does not necessarily commit the

18  defense to using any particular item at trial or that does not

19  necessarily preclude them from adding things that they may

20  acquire after this date or that may suddenly become clear to

21  them that it's a necessary exhibit, but some basic reciprocal

22  discovery among the items that they reasonably believe -- or

23  have reason to believe that they will be offering as exhibits

24  at trial or that fall into any of the other categories of

25  reciprocal discovery.  We would ask that we receive those

1    forthwith.

2              THE COURT:  Mr. Bruck?

3              MR. BRUCK:  Thank you, your Honor.

4         This litigation, this motion, is inextricably

5    intertwined with the continuance.  The problem which we clearly

6    have failed to persuade the government of is that we are so far

7    from having the case prepared to present that we cannot

8    possibly identify which exhibits will illustrate testimony that

9    has yet to be developed.  We know where we're going with our

10   case, but we don't have the case.

11            Now, it is not true that there is some equivalence

12   between the defense and the prosecution discovery obligations

13   because the prosecution must turn over both that which

14   is -- they intend to use and that which is material to the

15   preparation of the defense.  We do not have any obligation to

16   turn over anything which is material to the prosecution.  So

17   until we are at the point of having our case essentially in an

18   outline form ready to go, the identification of which items

19   will illustrate or corroborate specific bits of that narrative

20   simply cannot be done.

21            The other thing that I think -- which we pointed out

22   in our reply which was just filed yesterday afternoon which is

23   very important to remember is that basically our client's

24   entire life was seized by the government.  In terms of

25   virtually every manifestation of his existence for 19 years on

1    this earth, they have it.  They have everything out of his

2    house.  Truckloads of stuff.  They have everything from his

3    computer.  They have everything from his social networking

4    sites, government files for immigration.  Not just him but his

5    entire family.  They have the contents of his dorm room.  They

6    have the contents of his friend's apartment at college.  And

7    the list goes on and on and on.

8            The large majority of documentary exhibits -- and this

9    is all we're talking about -- and physical exhibits and

10   photographs that are likely to turn out to be relevant to what

11   we intend to prove at trial and at sentencing we've already

12   gotten from the government in discovery.  We don't have to give

13   it back to them under Rule 16.  They're talking about the

14   little -- sort of the small group of things that we've

15   collected so far, and there aren't that many, of physical

16   items, not testimony.  At one point they refer to -- we have to

17   turn over all the information that we're going to use.  Well,

18   that's not what the rule requires; it's stuff:  documents,

19   photographs.

20           We are hard at work halfway around the world

21   collecting as many of those items as we can.  We are, as the

22   Court well knows from sealed submissions as well as from our

23   public pleading, way, way behind in that process.  If

24   Mr. Weinreb knew how little there is to even theoretically dump

25   on them they probably wouldn't have brought this motion, or

1    they certainly wouldn't have pressed it with such a sense of

2    urgency.

3         So that's the problem.  We could, I suppose, collect

4    some things that, you know, have to do with our client that the

5    government doesn't have.  We couldn't -- and give it to them

6    and let them scratch their heads over it, but that's not going

7    to advance anybody's preparation for trial, and it's not

8    responsive to the rule because we don't intend to use whatever

9    we happen to have.  That's not how one prepares for trial.

10        So that's the problem we're in and that's why I say

11   that this really is inextricably bound to the matter of

12   continuance.  We will do what the Court requires, but I don't

13   know how we can turn over things that we intend to use when

14   we're simply not at that point yet.

15        THE COURT:  When you refer to preparing your case, are

16   you referring to two phases?

17        MR. BRUCK:  Yes.

18        THE COURT:  Is it possible for you to respond to the

19   Rule 16 category with respect to a guilt phase?

20        MR. BRUCK:  It would be considerably easier.  You

21   know, we have not separated things out, but there's going to be

22   a great deal less.  And I --

23        Excuse me.

24        (Counsel confer off the record.)

25        MR. BRUCK:  We are not -- we would not be ready this

1    morning to make disclosures on the guilt phase.  I think if

2    they were staggered we would be in better shape on the guilt

3    phase than on the penalty phase.  Considerably better shape.

4              THE COURT:  Mr. Weinreb?

5              MR. WEINREB:  Your Honor, if I could just respond

6    briefly.  I didn't address the reciprocal or the affirmative

7    expert disclosures that the Court ordered.  I thought that was

8    coming second, but I realize now that's part of this same

9    motion and I should address it because one of the most

10   important things that we need from the defense is their

11   affirmative expert disclosure.  They have moved several times

12   to delay that.  The Court gave them delays but then ultimately

13   ordered that it be produced, and the only thing that was

14   produced was the name of one expert with no summary whatsoever

15   of what the testimony would be at trial or any

16   underlying -- any information about the underlying bases or

17   reasons for -- or any documents or any discovery or anything

18   underlying it; simply a social worker to testify about his life

19   history.

20              Again, the defense argument seems to be that, Well,

21   this expert hasn't completed her work.  We can't give you a

22   summary of her expected testimony because she's still

23   formulating it.  But that, in our view, takes the matter and

24   stands it on its head.  The Court set a deadline, and the

25   purpose of the deadline is to require the expert to come up

1    with whatever the expert's going to say by the deadline, and

2    that way there can be discovery in advance and you can have an

3    orderly progression to trial and neither side is surprised by

4    the other and both sides are in a position to identify

5    reciprocal experts.

6            We have several affirmative experts, as the defense

7    and the Court knows, and they very much would have liked

8    additional time to conduct their analyses of the underlying

9    materials and to develop their opinions.  But the Court set a

10   deadline and we told them they had to abide by it.  And so we

11   produced in great detail what they were going to say at trial

12   and what documents or computer programs they were going to rely

13   upon, and we expected the defense to do the same.

14           I don't think the defense can be heard to come in here

15   and say that once a deadline has been set, Well, that just

16   doesn't give us enough time.  It's for the Court to set the

17   deadlines and the parties to comply with them, not vice versa.

18           As for the argument that there's very little

19   reciprocal discovery, that seems to cut the other way.  If the

20   government has everything already that the defense intends to

21   offer during the trial, let them say so.  And if there are

22   additional materials we haven't produced to them and that they

23   have collected on their own and it's just a small number of

24   additional materials, let them produce it.  Nothing requires

25   them to offer it at trial.

1           But the way it stands now they are essentially coming

2     up with an argument for not producing discovery which would

3     arguably allow them to wait until the day before trial or

4     whenever they compile their exhibit list to say, Okay.  It's

5     not until today that we've decided what we intend to use.

6           And that's where this is headed.  Unless the Court

7     continues the trial so far ahead into the future that the

8     defense finally feels like they have enough time, then what we

9     can see coming is that we're going to hear that no amount of

10    time is enough time and there's never going to be any

11    disclosures.

12          THE COURT:  What you need first is what they would

13    offer in a guilt phase.

14          MR. WEINREB:  Well, your Honor, we have a deadline of

15    October 1st to identify reciprocal experts that we intend to

16    use during both phases, guilt and penalty phase, and how can we

17    do that if we don't have expert discovery, their affirmative

18    penalty phase expert discovery?  And in addition to that, we

19    really need all the reciprocal discovery because the experts

20    will be -- in the rebuttal part, or the responsive part, of the

21    penalty phase will be addressing what they intend to put in

22    during the penalty phase which may take the form of a document

23    or it may take the form of an expert's testimony.

24          And even beyond that, our identification of witnesses

25    and exhibits that we intend to offer during the guilt and

 1    penalty phases, which will be due at some point in the future,

 2    you know, as the trial approaches, that also will be influenced

 3    by what they intend to offer.

 4         So we really can't wait for the penalty phase

 5    information until some later date, certainly not after the

 6    trial has begun and not even too close before the trial has

 7    begun because we're going to be locked into what witnesses we

 8    can call and to some degree by circumstances what exhibits we

 9    can put together and offer.

10         THE COURT:  All right.  Let's turn to the second

11    motion regarding a list of mitigating factors.

12         MR. WEINREB:  Your Honor, we briefed the law on that

13    in our first motion.  It's clear the Court has the authority to

14    order the disclosure of a list of mitigating factors.  It is in

15    keeping with the principles of federal trials that the parties

16    should not be surprised by one another's presentations.  It's

17    also in keeping with the spirit of the Federal Death Penalty

18    Act which gives each side a chance to rebut what the other side

19    has to offer.

20         And we'd also argue that it's important for us to have

21    a list of mitigating factors for the jury selection process

22    because when the jurors -- when we're trying to decide who can

23    be a fair and impartial jury, the government needs to know what

24    arguments are going to be made to them, what types of evidence

25    are going to be offered to them, so that we can question

1    whether that's going to trigger some kind of response on their

2    part that will prevent them from being fair and impartial.

3         Again, we're not asking that the defense, in a brief,

4    you know, give us their entire mitigation case.  We're talking

5    about a list of mitigating factors.  Eventually there will have

6    to be a list because the jury votes on each one independently.

7    And, you know, at this point undoubtedly the defense knows what

8    their mitigating factors are.  They may not know every last

9    one, and we're not arguing that they can't amend the list down

10   the road if another one shows up that they in good faith

11   couldn't have included on a list today.  Obviously, they could

12   always delete items also if they decide that they don't want to

13   pursue a particular avenue.

14        But it's clear that there's no legal or constitutional

15   obstacle to the Court ordering such a list, and it would serve

16   a lot of beneficial purposes.  And the defense is in a position

17   to produce one.  They don't really say they're not; they just

18   say they don't have to.

19        The other argument the defense seems to make about the

20   mitigation case is that they've already told us essentially

21   what their mitigating themes are during their presentation to

22   the government to -- back when the attorney general was

23   deciding whether to seek the death penalty, they identified

24   certain mitigation themes.  And if they tell us today that

25   those are the only themes that they're going to produce, then

1    we've got our answer -- I'm sorry -- they're going to pursue,

2    then we've got our answer.

3         But if there are additional mitigating factors, or if

4    they're going to elaborate on those in ways that they didn't at

5    the time, then we need to know about them so that we can write

6    a useful jury questionnaire, we can ask useful questions during

7    voir dire, and we can begin to prepare to fulfill our statutory

8    obligation to rebut their mitigation case once the trial

9    begins.

10        THE COURT:  Mr. Bruck?

11        MR. BRUCK:  Well, there are reasons why virtually no

12   federal court has ever done this and there's a reason why

13   Congress rejected this proposal when the Justice Department

14   proposed to add it to the Federal Death Penalty Act in the

15   Federal Death Penalty Reform Act of 2006, which never made it

16   out of the House Judiciary Subcommittee.  There was a hearing

17   on it, and one of the objections that was raised, and it seemed

18   to have some force, is that there is a constitutional problem.

19        If you look at the list of statutory mitigating

20   factors, most of them assume guilt.  Many, many statutory and

21   non-statutory mitigating factors also assume guilt.  So to

22   provide the government with notice of what the -- and to allow

23   the government then to put that -- which has never been done,

24   to put this into a jury questionnaire and then start

25   questioning jurors about mitigating factors received from the

1    defendant that have been filed -- their motion is to file

2    these, absolutely tramples on the Fifth Amendment.

3          I think that's probably why Congress -- who knows why

4    Congress ever doesn't or does anything, but I think it's fair

5    to say that was a very good reason why this was not enacted.

6    Now the government says, Well, the Court should do it anyway.

7    Almost no courts have ever done anything like this.  No court

8    whatsoever has ever required a list of mitigating factors prior

9    to the formulation of the jury questionnaire.  This is absolute

10   uncharted seas.

11         The government does basically know -- they've known

12   from day one what some of the more important mitigating factors

13   in this case are.  Some of them are statutory.  They can

14   certainly question jurors about major issues in the case

15   without the defendant having filed a notice that has not been

16   required of any other defendant in virtually any other case.

17         There's some cases that we've distinguished, two or

18   three out of the hundreds of federal death penalty prosecutions

19   that have taken place since 1988 -- or 1994.  This is just

20   something they don't need, they're not entitled to.  The law

21   doesn't provide for it.  There is absolutely an asymmetry

22   between the notice requirements of the government in the

23   statute and the nonexistent notice requirements in this respect

24   for the defendant, and we don't think that there is any reason,

25   any basis or any logical need for the Court to create one.

1          MR. WEINREB:  I'll just respond briefly to the Fifth

2     Amendment argument.

3          As we stated the last time this motion was argued and

4     as we cite in our brief, there is no Fifth Amendment obstacle

5     to the defense having to reveal things that they will have to

6     disclose anyway when -- later on in the proceedings.  The

7     federal rules require that a defendant give advance notice of a

8     claim of insanity, a claim of public right and other defenses

9     that arguably involved the defendant admitting engaging in

10    conduct that the government would normally have to prove during

11    the liability phase.

12         In this case in particular there's no argument, I

13    think, that can be made that in identifying mitigating factors

14    the defendant is admitting guilt.  The defense has made no

15    secret of the fact that for the past 16 months it's been doing

16    quite an expensive mitigation preparation preparing what its

17    mitigation case will be if the defendant is convicted.

18         There's, you know, little difference in identifying

19    what the mitigation themes will be than in saying that there's

20    going to be a mitigation case.  For example, saying that the

21    defendant was 19 years old and that's a mitigating factor,

22    that's not something that implicates whether he's guilty of the

23    crime or not.

24         To the extent the defense has concerns about

25    particular mitigating factors and their being disclosed to the

 1    jury through a public filing, the government doesn't have any

 2    objection to them filing the list under seal.  The government

 3    obviously is not going to say in a jury questionnaire that the

 4    defense will assert this or the -- the government obviously is

 5    going to be -- will respect the defendant's right to stand on

 6    his presumption of innocence throughout the proceedings.

 7         But there's no actual Fifth Amendment problem in the

 8    sense that the Supreme Court has made it clear that the Fifth

 9    Amendment -- the defendant's right against self-incrimination

10    is violated only if his words are actually introduced against

11    him in trial -- that's a far cry from the defense identifying

12    mitigation factors in advance of trial -- but there's also no

13    violation of the spirit of the idea that a defendant should be

14    permitted to stand on his presumption of innocence throughout

15    the trial.

16         Stating what one will argue in the event of a

17    conviction is a far cry from admitting guilt or from -- an even

18    further cry from the government trying to use a defendant's own

19    words against him, which is obviously nothing close to what the

20    government is asking for here.

21         And then finally, I'd only say about Mr. Bruck's claim

22    in this argument, as in so many arguments, that this has never

23    been done before in a federal death penalty case, that the

24    cases speak for themselves.  They were only able to cite one

25    case in which a court sided with them on this issue.  We found

1    several cases in which the court sided with the government.

2    And you simply can't draw from silence the inference that the

3    courts rejected the idea.

4         The motion may never have been made.  The defense may

5    have simply produced the list.  The parties may have simply

6    never litigated it.  It may have never made it into a recorded

7    decision.  It's simply not a basis for a legal argument to say,

8    Trust me, it's never been done that way.

9         THE COURT:  All right.  I'll reserve both of those

10   motions and resolve them shortly.

11        With respect to the motions to change venue and to

12   dismiss the indictment, those matters will be resolved on the

13   papers which are, as I said earlier, complete.

14        With respect to the motion to continue the trial date,

15   I do invite argument focused on the preparation in light of the

16   volume of production by the government.  The other two

17   arguments I don't need argument on, so...

18        MR. BRUCK:  I'm sorry.  Focused on the preparation in

19   light of -- I didn't catch the Court's --

20        THE COURT:  "The volume of potentially relevant

21   evidence" is the way it's phrased in the motion.

22        MR. BRUCK:  Yes.  And that is the one issue you wish

23   me to address?

24        THE COURT:  Yes.

25        MR. BRUCK:  Well, as we have explained in the papers,

1    this is a case with an enormous amount of evidence that has

2    been produced by the government.  It has been produced in ways

3    that we've explained in the papers, in fits and starts, in ways

4    that have been extremely difficult for us to grasp, to use, to

5    understand.

6           The government informed the Court that automatic

7    discovery was complete in -- as of, I think, September of 2013,

8    and then that date has continually moved back.  And now it

9    turns out that we're still receiving reports of examinations

10   that should have been part of automatic discovery as recently

11   as a couple of weeks ago.  And these are -- have been the

12   matters that have absolutely been central to the case; for

13   example, a partial, incomplete, undated FBI analysis of the

14   defendant's computer giving the FBI analyst's versions of when

15   various items were placed on that computer.

16          These are -- this is what is important about this

17   case, and we did not receive that last September.  We have no

18   idea when this analysis was complete.  We've received it within

19   the last couple of weeks.  Our preparation on those sorts of

20   critical issues begins now.

21          I mean, we have been working as much as we could by

22   our own lights trying to figure out what the government's

23   findings were going to be, what their allegations were going to

24   be, but it is only -- it is really only recently that we're

25   able to focus the issues and begin getting our own experts

1    identified, appointed and tasked with the issue of responding.

2            And this is -- the government has focused on a single

3    computer, the defendant's, which is obviously strategic.  Their

4    goal appears to be to try to show that Dzhokhar Tsarnaev

5    self-radicalized as an isolated individual all by himself

6    without any context, any explanation, without anything working

7    on him or influencing him.  That's their case for the death

8    penalty and that's what we have to respond to.

9            That means that we now have to seek out the analysis

10   that the government did on all of the other digital devices, on

11   hundreds of megabytes of materials from Tamerlan Tsarnaev and

12   all the other digital devices that were seized in this case and

13   find out what the government has to say about them.  We still

14   don't know.

15           These are -- in addition to that we have -- we have

16   just learned that there were 100 --

17           THE COURT:  I just want to be sure I heard that

18   correctly.  You have to know what the government thinks about

19   evidence it won't use?  Is that what you're saying?

20           MR. BRUCK:  We have to -- the government has, we are

21   confident, done -- has reports and examinations which were

22   discoverable under automatic discovery as soon as they were

23   produced, if they weren't already last September of 2013, that

24   we should have had under Rule 16(1)(a)(F) [*sic*] that we still

25   don't have, and those are about the critical issues in the

1    case.

2           In addition to that, we have -- we have gradually

3    received masses of FBI reports of examinations, again, in a

4    confusing and difficult-to-use and scatter-shot fashion.  We

5    now know there were 177 FBI scientists and technicians that

6    have worked on this case alone, and to that within the last six

7    weeks or so we've been in a position of having to find out what

8    we're going to do in response, what experts we have to retain

9    or what *Daubert* challenges are appropriate in those cases.

10          It is the way that this massive amount of information

11   has been produced to us and the delays and the slowness with

12   which anything that we could actually do anything with has been

13   produced has set us back and back and back until now almost all

14   of the work that we have to do to respond to the government's

15   case is compressed into the next six weeks, while we're trying

16   to get ready for the process of jury selection and jury

17   questionnaires and all the other things we have to do.

18          This is all set against the part of the case that you

19   have not asked me to address but with which the Court is

20   familiar, which is the tremendous obstacles that we have

21   encountered in investigating the case in mitigation.  And I

22   mention that not to go into it, because I can't go into it in

23   this setting and because you have not invited argument on that

24   point, but simply to show what we've been busy with.

25          It is not as though we have been failing to use our

1    time.  This -- we are faced with a massive array of government,

2    7-1/2, whatever it is, terabytes of electronic discovery, this

3    enormous array of scientific and technical evidence from the

4    government.  The Court may recall a very, very slow

5    fits-and-starts process of physically being able to examine the

6    government's evidence in Quantico and here during the spring

7    and late winter of last year.  All the way through we have hit

8    delay after delay after delay in trying to get our arms around

9    this massive case.

10        Now, this is all in the context of how relatively

11   expedited this trial schedule is.  Now, I recognize and I agree

12   with the government's position that every case is different,

13   and one cannot make facile comparisons between one case and

14   another.  But in terms of answering the question how much time

15   does this case require, I think we are faced with an example of

16   Justice Holmes' famous statement that the life of the law is

17   not logic; it is experience.  And the experience that we have

18   to guide us, I would suggest, is the collective experience of

19   the federal courts throughout this country.

20        We have provided the Court with not a sampling or a

21   selection but with time-to-trial statistics, indictment to

22   trial, in all 119 federal capital trials that have gone to

23   trial in the last decade, and this case has been set until now

24   on a schedule half the median of those cases.

25        Now, the cases are different in lots of different

1    ways, but when one faces the -- when one looks at the entire

2    picture of how long these cases take to go to trial, I think it

3    has to give one pause that the reason that we are so far behind

4    is not, as the government says, because of things of our own

5    making but that there has just been too much to do.

6         We look at the typical time to trial, the median time

7    to trial -- we haven't asked you to look at the average time to

8    trial which is much longer, because that can be affected by a

9    handful of outliers -- and then we look at the facts of this

10   case.  This is a case that is atypical because one would think,

11   and, in fact, it has proven to be true, that it takes longer to

12   get this case ready for trial, not a shorter period of time,

13   than in the run of federal capital cases.

14        So that is -- I could go into more granular detail

15   about the question of the size of electronic and other physical

16   discovery and scientific testing if the Court wishes.  It's in

17   our papers.  But standing back and looking at this entire

18   picture, it is clear that this case is atypical because it is

19   far more complex, far more difficult to investigate from the

20   point of the defense than the typical average or median federal

21   capital case.

22        Out of 119 cases, we did point you to two that

23   involved Russian or former Soviet Republic nationals.  Those

24   cases took four years and five years to reach trial.  They

25   involved mitigation investigations in the Ukraine and in

1    Russia.

2           Now, we are not for a moment suggesting that this case

3    ought to take, nor are we asking for, four years or five years

4    to get ready.  But the point I think is undeniable that this

5    case is atypical because of its complexity, because of the

6    factors that require it -- that will require more time, not

7    less time.

8           So I just think that while I realize that the Court's

9    decision has to be based on the evidence in this case and on

10   the particular factors that you have before you, I think it is

11   helpful to view this case in context in answering the question

12   how much time is enough, is our inability to meet this trial

13   date the product of our own doing or is it simply, as we've

14   submitted in our papers, that the job it too big and the time

15   is too short?

16          Now, I would be surprised if the Court doesn't feel

17   some frustration over the fact that when you set the trial date

18   we said we don't think that's going to be enough time and now

19   we're back here saying it wasn't enough time.  All I can say to

20   that, your Honor -- and I think you have followed the progress

21   of the defense mitigation investigation overseas in the funding

22   requests and in some of the submissions that have been made

23   here.  All I can say is that we have done our best to meet this

24   trial date.  We have not for a moment thought, Well, we'll just

25   come back in September and ask for more time.  That is not the

1  way we approached the trial setting in this case.  But it

2  cannot be done.

3         Now, I rise primarily to advance -- obviously to

4  advance the defendant's right to a fair trial, but there is a

5  broader interest here as well.  When this occurred, on the day

6  of the bombing President Obama came to the White House

7  pressroom and made a statement.  And at the end he said, "We

8  will get to the bottom of this and we will find out who did

9  this and we will find out why they did this."

10        We are part -- we, the defense, are part of the

11  process of getting to the bottom of this and perhaps of finding

12  out why, which is the question everyone, everyone wants

13  answered.  We cannot play our role unless we have the time to

14  do it.

15        Now, it is in no one's interest, no one's interest,

16  none of the people who have suffered so grievously as a result

17  of the Boston Marathon bombing, for there to be half a trial or

18  three-quarters of a trial and for the truth that could be

19  developed never to be developed and never to come out, for us

20  not, in the President's words, to get to the bottom of this.

21        So I would suggest to the Court that there are the

22  gravest reasons to ensure that both sides, not just the

23  government, has the time to do our job.  If the idea of a delay

24  in this case is distressing to people who have been affected by

25  this, that distresses us too.  The last thing we want to do is

 1    cause any more grief to people who have suffered so much grief

 2    already.  But as I say, I don't think it will help anyone for

 3    this case to be tried before both sides are ready, before all

 4    the evidence can be developed.

 5         If the government had not asked for the death penalty,

 6    this case would probably be over by now.  It might have been

 7    over a long time ago.  It would have been over a long time ago.

 8    So that's what we're concerned with and that is the issue --

 9    those are the issues which require so much time for us to

10    investigate.  And we ask that the Court give us the time we

11    need and ensure that this case is fair to the defendant and

12    fair to everyone.

13         Thank you.

14    MR. WEINREB:  Your Honor, the question isn't whether

15    the government shares the defense's desire to get to the bottom

16    of what happened here, because of course we do, but the

17    question is simply how much time should be allowed to get to

18    the bottom of it.  In answering that question, we would submit

19    that the relevant pool of experience or the area of experience

20    the Court should draw from is not the collective experience of

21    other judges in other cases whose experience in those cases is

22    really unknowable and can't be known just through looking at

23    statistics, but the Court's own experience in trying cases in

24    this courthouse.

25         And I would wager that the Court's experience is that

1   if the parties are given three years to go to trial, they will

2   spend three years trying to get to the bottom of what happened,

3   and if they're given two years, they will get ready in two

4   years, and so forth.  However much time you have is your budget

5   of time, and you tend to focus on what is most important in

6   light of the amount of time you're given.

7          We submit, as we did back when you proposed the trial

8   date originally, that this was a reasonable amount of time to

9   get to the bottom of what is going on here, and the parties

10  have both been working very diligently to achieve that goal.

11  And the government is confident that if this case goes to trial

12  on November 3rd the jury will be fully informed and will be

13  able to make a fair and impartial decision about what happened.

14         The defense, undoubtedly, given one, two, three,

15  however more years of extra time, could continue gathering more

16  and more and more information, but there comes a point where

17  more and more information doesn't really help you get to the

18  bottom of things.  And I think that the Court has -- although

19  we, of course, aren't privy to the defense's funding requests

20  and their requests for experts and personnel, we know enough to

21  know that they have been doing an extremely diligent and

22  thorough investigation of the case and they are experienced

23  counsel and we have no doubt that they have managed to do an

24  excellent job and we expect that the jury will benefit from

25  that.  The government has endeavored to do a similar kind of

1    job and we hope the jury will benefit from that as well.  We

2    don't think that simply allowing more and more time will

3    materially improve the jury's understanding of the case, and

4    that's why we have opposed the defense's motion.

5              An example of the importance of budgeting time may

6    be -- one of the best examples is the computer evidence, since

7    that's what Mr. Bruck focused on in the beginning of his

8    argument.  And to that end, we understood that the computers of

9    the various people involved or who in the indictment -- have

10   been charged in the indictment would be important to the

11   defense, and so we provided them with forensic copies of those

12   computers even before the deadline for automatic discovery was

13   due.  Presumably, they have hired a computer expert who is in

14   the same position to analyze those computers as we are.

15             They fault us for not doing a -- the kind of analysis

16   of Dzhokhar Tsarnaev's computer that they would have liked to

17   have seen earlier until the time that we did it, but they were

18   free to do the same thing from the start.  They were free to

19   focus their fire power, their energy, their time on analyzing

20   that computer.

21             THE COURT:  Let just ask you, is this an FTK analysis?

22             MR. CHAKRAVARTY:  Yes, this is an FTK analysis.  But

23   as we said in the beginning when we argued this in the motion

24   to compel the production of FTK analyses, FTK is simply a tool

25   for looking at a computer.  And FTK has been used by the

 1    government to look at the computers, but we did not -- the FBI

 2    did not produce reports of the type that the defense is

 3    interested in until now because we were simply investigating

 4    them until now.  It's not until the government gets ready to

 5    begin the -- identifying the exhibits it's going to use at

 6    trial that we ask the FBI to make sort of a formal report that

 7    we can potentially introduce into evidence or at least give to

 8    experts and have them rely upon in their testimony.

 9              (Counsel confer off the record.)

10              MR. WEINREB:  I should also clarify the types of

11    reports that we're talking about here aren't simply the raw

12    output of an FTK examination of a disk, which can be done by

13    anybody with the FTK software very easily.  It's a narrative

14    report by the agent commenting, basically summarizing what the

15    agent will say about a particular byte of computer evidence.

16    It's like an expert report.

17              The government takes the position that it's not really

18    expert testimony because it's not -- it's just the use of a

19    commercially available software program.  But nevertheless, we

20    do have them produce reports, just like I'm sure the Court has

21    seen drugs expert reports and ballistics experts' reports where

22    they sort of narrate the results of their examination of

23    various things.  Those are the reports -- that's the report

24    that was recently produced with respect to Dzhokhar Tsarnaev's

25    computer because it was only recently produced by us and we

1    produced it as soon as we created it.

2         Let me address a different question.  Now, the defense

3    says that the government's theory of the case is that Dzhokhar

4    Tsarnaev self-radicalized in isolation from everybody, his

5    brother, his family, other people in the world, you know, that

6    we intend to produce -- to introduce his life out of context.

7    That's not the government's theory.  But it is the government's

8    obligation to prove Dzhokhar Tsarnaev guilty of these offenses.

9    He is the person charged in the indictment.  He's the person

10   for whom we have noticed an intent to seek the death penalty.

11        Tamerlan Tsarnaev is not on trial.  Other people in

12   the defendant's family are not on trial.  So the government

13   obviously is not going to be doing the same kind of examination

14   of other people's computers or other people's possessions as

15   we're going to do of the defendant for whom we have the burden

16   of proving guilt beyond a reasonable doubt and prove

17   aggravating factors in a penalty phase.

18        To the extent we do create such reports, we'll produce

19   them.  But the defense here, they're not novices at this.

20   They've known from the start, from the very beginning of this

21   case, that their theory would be that Dzhokhar Tsarnaev was

22   induced or influenced or somehow affected to commit this crime,

23   if he did, if that's what is found, by his brother.  And so

24   they've had his brother's computers, phones, everything from

25   the very beginning of the case, and they could have had a

1   computer expert doing the exact same kind of analysis that

2   they're now saying the government should have done and should

3   have given to them sometime early in the case.

4        If they chose to spend their time and energy doing

5   other things, that was their decision, but it's not an argument

6   for a continuance for them to turn now and say, Well, since the

7   government didn't do it for us, now we have to.  Now we're six

8   weeks before trial, and now we have to do it for ourselves.

9   They could have done it 18 months ago.

10        With respect to all the computer evidence, which they

11   claim is the most important evidence, we gave all the most

12   important devices to them before automatic discovery was due,

13   and all the others were made available for them to copy and

14   examine, if they wanted, many, many months ago.  Not now, not

15   six weeks ago, many months ago.

16        With respect to the expert testimony with which they

17   say they've been overwhelmed, everything that we gave them, as

18   we've said before, is what they requested.  Yes, many, many

19   experts looked at the evidence in this case, not necessarily

20   for use in the trial, because anytime that there is a terrorist

21   act or the use of IEDs, the FBI analyzes how they were made,

22   how the components were obtained, various other features of

23   them in order to disseminate that information to other -- to

24   the intelligence community and to other law enforcement agents

25   to help them try to forestall a future attack, to see it before

1    it's coming.

2         They asked for all of that and we gave it all to them.

3    The defense then came to -- filed a motion with the Court

4    saying that they were overwhelmed, it wasn't -- it was too much

5    for them, they couldn't sort through it.  The Court ordered the

6    government to identify for them precisely which experts we

7    would be using at trial and exactly what they would be relying

8    on, and we did that and they have that.

9         And most of that information is not complicated stuff.

10   It's fingerprint evidence, DNA evidence, ballistics evidence,

11   the kinds of things that defense attorneys deal with every day,

12   that experts are familiar with.  It doesn't take very long to

13   take -- to look at a set of fingerprints and determine whether

14   the analyst did the match correctly or not.  So I don't believe

15   again that that is certainly not grounds for a ten-month

16   continuance.

17        I simply think for the defense to try to blame the

18   government for their difficulties in investigating the case is

19   unfair.  You know, we have been -- we have been giving them

20   copious amounts of discovery all along, made every effort we

21   can to accommodate them and have met the Court's deadlines for

22   the production of various matters.

23        So we agree that this is an unusual case in some

24   respects, but in some respects it's a less complicated case

25   than many because the evidence in this case is going to -- this

1    is not a case where we will be trying to piece together our

2    proof of the defendant's involvement through very complicated

3    or far-flung pieces of evidence.  We will be offering

4    videotape.  We'll be offering, you know, basic forensic

5    evidence that links the defendant to the crimes.  And the

6    defense may want to go very far afield themselves in an effort

7    to try and challenge that evidence, but the point of setting a

8    trial date and sticking to it is to cabin that effort and, you

9    know, force the parties to exercise some degree of

10   self-restraint and reason.  And that's what we believe the

11   Court has successfully done with this trial date, and so we

12   would encourage the Court to either keep the current trial date

13   or, if the Court's inclined to continue it, to continue it for

14   a very short period of time, not the ten months that will

15   simply continue what's been going on so far for another ten

16   months with perhaps very little productive value.

17            THE COURT:  I would like to see two things:  One is

18   the government's disclosure as of September 2nd pursuant to the

19   order, which I don't think is in the record -- it wouldn't be

20   normally -- and, secondly, the report that's been referred to

21   by both of you.  And that can be submitted -- I leave it to

22   you, I guess.  I don't know that it has to be submitted for

23   entry on the docket.  I would just like to review it.

24            MR. WEINREB:  Very well.

25            THE COURT:  Mr. Bruck, anything else?

1           MR. BRUCK:  Just one moment.

2           (Counsel confer off the record.)

3           MR. BRUCK:  I think that's it, your Honor, except,

4    again, with reference to the parts that we have not addressed.

5           THE COURT:  Well, you have, actually.

6           MR. BRUCK:  I'm sorry?

7           THE COURT:  You have, actually.

8           MR. BRUCK:  Well, I mean, Mr. Weinreb was complaining

9    earlier about our failure to produce a more detailed -- or

10   really any detail about our social historian/social worker

11   expert.  The Court knows what has happened with that, knows the

12   problems that have been encountered.  And this is all part of

13   really unforeseeable reasons why we stand here today in need of

14   a reasonable continuance.  Thank you.

15          THE COURT:  All right.  I'll reserve on the matter and

16   let you know shortly.

17          The parties have submitted what's called an "Agreed-To

18   Proposal Regarding Procedures For Jury Selection."  That tracks

19   pretty much what I had been thinking and talking with the jury

20   clerk about.  It's, as I'm sure you all appreciate, based on

21   our recent experience with high-profile trials.

22          I don't want to set precise timetables right now.  I

23   want to kind of work it in conjunction, perhaps, with the jury

24   clerk, but it's very close.  In other words, we'll send out a

25   large number of summonses, bring people in, have them fill out

1    questionnaires, let you review the questionnaires, do some of

2    the strikes on paper, basically, and get down to a place where

3    we'll be interviewing people in actual voir dire.  So the

4    general template is one that we'll follow.

5            Now, assuming for present purposes no change in the

6    schedule, we have a pretrial conference -- the final pretrial

7    conference set for October 20th.  I guess my first question is:

8    Is there any need for an interim conference before that that we

9    can anticipate?  I mean, there might be issues that arise that

10   would cause it, but would there be any reason -- I would think

11   not, I guess is my position, but...

12           MR. WEINREB:  Your Honor, I would think if we need

13   one, we can always ask for it.

14           THE COURT:  Fair enough.

15           Now, I don't know whether you have, with respect to

16   the pretrial conference, conferred about other disclosures such

17   as witness lists, *Jencks* material.  Has there be any

18   conversation among you about those matters?

19           MR. WEINREB:  Not yet, your Honor.

20           THE COURT:  It's getting time to do that, isn't it?

21           MR. WEINREB:  Yes, we will do so.

22           THE COURT:  Okay.  Maybe a joint or several schedule?

23   Could we ask for that in two weeks?

24           MR. WEINREB:  That's fine with the government.

25           MR. BRUCK:  Yes.

1          THE COURT:  Okay.  We're coming to the point where

2     we'll have to do an October budget.  If you could -- let me

3     look at the calendar.  A week from today, is that -- that's the

4     25th.  Is that possible?

5          MR. WATKINS:  It's possible, yes.

6          MR. WEINREB:  Your Honor, we'd ask that the defendant

7     be present for the pretrial conference.  We haven't seen him

8     since the arraignment, and just in case any issues arise that

9     require waivers on the record or any other reason.

10          THE COURT:  Colloquies?

11          MR. WEINREB:  I think that would be best.

12          MR. BRUCK:  Can we reserve that until the government

13     identifies whether there are any such issues?

14          THE COURT:  Yeah, I think so.  I mean, I guess it's

15     the defendant's principal decision whether to be here or not.

16     If it's necessary for him to appear so that he can answer or

17     make his position plain on some pertinent issue, then we can

18     require it.

19          MR. WEINREB:  I just -- even in the absence of a

20     pre-identified issue, I think in a case where we haven't heard

21     from the defendant from the date of the arraignment until now,

22     just to ensure that no issues are going to arise later that --

23          THE COURT:  Well, it will come at some point.  There's

24     no question about it.  Whether it has to be the October 20th

25     occasion or some other.

1          That just reminds me.  I don't know in your

2    consideration of jury selection procedures if you've considered

3    the defendant's presence and participation in those matters.

4    Have you?

5          MR. WEINREB:  Well, your Honor, the defendant has a

6    right to be present for jury selection, and we'd ask that he be

7    there.

8          THE COURT:  That would be the normal arrangement.

9          MR. WEINREB:  Yes, to protect his rights and make sure

10   no issues arise there.

11         THE COURT:  I want to be sure if there are any issues

12   about that we know about it and plan accordingly.

13         MR. BRUCK:  We'll certainly take that up with him and

14   see whether he has any wishes.  It can be a protracted process.

15   But we'll talk to him about it and report to the Court our

16   decision.

17         THE COURT:  As you know, in the large empanelment

18   cases in the past we've used something other than the courtroom

19   in the initial stages which requires some logistical decisions,

20   and that's one of the things I'm interested in.

21         MR. BRUCK:  I am confident that he will not insist on

22   being present for large -- for settings in which there would be

23   logistical difficulties in his being present, if that's what

24   the Court is concerned about.

25         THE COURT:  Well, as I understand it, not having been

1   there, in the Bulger trial, for example, the pools that were

2   originally called in were addressed by the Court in the jury

3   assembly room with the defendant present and defense counsel

4   and government counsel all present so they could be identified

5   to the prospective jurors at that time.  That would be a normal

6   course.  What's not normal about it is that it occurs someplace

7   other than the courtroom which is our usual venue, and as I

8   say, that may present some logistical issues.

9        MR. BRUCK:  I don't see a problem either way, and we

10  have no strong view about this at this point, but what I'm

11  trying to suggest is that we will work with the Court on it.

12       MR. WEINREB:  Your Honor, we have no doubts whatsoever

13  about counsel's qualifications or competence or capability, but

14  things sometimes happen after trials that are different during

15  trials.  This is an example of a situation where if the

16  defendant's going to waive his presence at jury selection, we

17  would like to have it on the record and not have a question

18  arise later about whether there was any kind of objection.

19       THE COURT:  I think that's prudent.

20       MR. BRUCK:  That's fine.

21       THE COURT:  Well, let me -- this is sort of in the

22  area of administrative matters, I guess.  Let me just clarify

23  for the defense our manner of seeking to file replies or other

24  papers that are not in the ordinary course, the normal course

25  is to file a motion for leave to file the reply with the reply

1    attached as a proposed reply and then to -- if the motion is

2    granted, to file the reply.  You'll see the contrast between

3    the recent flurry of yours and the government's.  The

4    government was doing it the way we usually expect it to be

5    done.

6              MR. BRUCK:  Very well.

7              THE COURT:  Are there other issues at this time?

8              MR. WEINREB:  Once again, your Honor, we'd ask that

9    the time from now to the next status conference be excluded on

10   the grounds that this is a complex case and it's in the

11   interest of justice.

12             THE COURT:  I think that's plainly true.  Is there any

13   dissent from that?

14             MR. BRUCK:  No.  No objection to that, your Honor.

15             THE COURT:  So ordered.

16             All right.  Thank you.  I'll, as I say, attend to the

17   pending matters shortly.

18             We'll be in recess.

19             THE CLERK:  All rise for the Court.

20             (The Court exits the courtroom at 11:05 a.m.)

21             THE CLERK:  Court will be in recess.

22             (The proceedings adjourned at 11:05 a.m.)

23

24

25

1                          C E R T I F I C A T E

2

3           I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4    the United States District Court, do hereby certify that the

5    foregoing transcript constitutes, to the best of my skill and

6    ability, a true and accurate transcription of my stenotype

7    notes taken in the matter of Criminal Action No. 13-10200-GAO,

8    United States of America v. Dzhokhar A. Tsarnaev.

9

10   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
11   Official Court Reporter

12
     Date:  9/26/14
13

14

15

16

17

18

19

20

21

22

23

24

25