UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 13-10200-GAO
)
DZHOKHAR TSARNAEV )

**MOTION TO COMPEL DISCOVERY**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully requests that Court order the government to produce discovery responsive to disputed requests as outlined below.

The basic legal framework is set forth at length in previous motion papers and this Court's orders. Fed. R. Crim. P. 16(a)(1)(A)-(G) describes various categories of material subject to automatic disclosure. Among these provisions, Rule 16(a)(1)(E) requires production of items "material to preparing the defense," which encompasses not only information probative of innocence or guilt but also "includes information material to defense preparation for the penalty phase." DE 151. This includes even *inculpatory* (and thus, with respect to the penalty phase, *aggravating*) information. *See, e.g., United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 (D. Mass. 2007). In addition, the prosecution bears an ongoing obligation to produce material "that is favorable to the defendant and material to the question of guilt or punishment," which includes *mitigating* information. DE 151 (citing *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995) and the authorities cited therein).

The materials described below are all discoverable under one or more of these authorities. The Court therefore should order their production.

**Documents Purportedly Provided by the Russian Government**

The prosecution has provided in discovery a handful of texts that apparently were excerpted, according to prosecutors, from materials that "were provided by the Russian government on or after April 22, 2013." A copy of the materials as provided to the defense, accompanied by preliminary defense working translations, is appended in Exhibit A.[1] The texts were produced on otherwise blank (or redacted) pages, without cover, letterhead, dates, or any identifying or confirming data indicating their provenance. Multiple pages in the bates range DT-57641 - DT-57655 also were physically "cut off" at the bottom, obscuring some of the text, apparently due to lack of care in the scanning/copying process.

Substantively, the materials are both material and very helpful to the defense because they provide evidence of Tamerlan Tsarnaev's radicalization as early as 2010 and his pre-existing intention to engage in violent jihad when he traveled to Russia in 2012. This evidence is mitigating with respect to the relative roles of the brothers in the charged offenses.

In correspondence with the government, the defense requested complete and legible copies of the "cut off" pages as well as full copies of the apparently excerpted documents, with whatever additional information about their dates, sources and

[1] Exhibits are being filed separately under seal because they constitute or refer to discovery materials subject to the Protective Order.

provenance that the government could provide. *See* Exhibits B (compiling 7/25/14 defense letter; 8/8/14 government letter, 9/9/14 defense letter) and C (9/26/14 government letter). The government has declined the defendant's requests.

At a minimum, the Court should order the government to re-produce complete and legible copies of the pages in bates range 57641-57655 that were physically cut off in the copying/scanning process. The government has simply ignored this request without articulating any basis to refuse it. Beyond that, the defense is not asking that the government obtain or generate information not already in its possession. Rather, the Court should order the prosecution to produce the documents substantially in the form they were received from the Russian government, with whatever indicia of authenticity, authorship, dates, and provenance that original form may convey, in order to ensure that the defense can make optimal use of the materials at trial and that the jury will give them the full weight they warrant.

**Pre-2013 Communications from the Russian Government**

Upon learning that the so-called "Russian Government Materials" produced by the prosecution were sent by the Russian government in or after April 2013, the defense made a follow-up request for copies of the widely-reported pre-2013 warnings from Russia that Tamerlan might be a radical. In response, the government stated:

> The Russian government warned the United States before April 2013 that Tamerlan Tsarnaev might be a radical, but it did not disclose the basis for the warning at that time. After April 2013, the Russian government disclosed the basis for its pre-2013 warning, and we have already produced that information to you. We do not believe the pre-April 2013 communication itself is discoverable.

Exhibit C. The government's position is meritless. Its admission that a pre-2013 warning took place does not excuse the failure to disclose the communication itself, which is a tangible item of evidence that the defense should have at its disposal for possible presentation to the jury.

**Transcripts/Translations of Defendant's BOP Calls**

Early in the case, the government produced translated transcripts of the defendant's telephone calls to his parents. The Court subsequently ordered the government to produce the audio recordings as well. DE 151 at 8-9. More recently, the government has produced audio recordings on a rolling basis but has stopped producing translated transcripts. By letter dated September 12, 2014, the defense requested production of the subsequent batch of audio recordings as well as any transcripts. Exhibit D. Under cover of its September 26 letter (Exhibit C) the government produced a new batch of recordings but was silent as to any translated transcripts.

The Court should order the government also to produce such transcripts as they are created because they are statements of the defendant subject to production under Fed. R. Crim. P. 16(a)(1)(B)(i). Production also insures that the defense not waste resources duplicating this work.

**Reports of Computer Forensic Examinations**

On September 2, 2014, the government produced an undated document that it described as a "report of examination" of the defendant's computer, DT-66552 (Exhibit E). The document itself indicates that forensic analysis of the computer remains ongoing. In its September 12 letter, the defense requested certain additional information, including

the date of the report and all other reports of examinations and tests of other electronic devices seized or obtained in the case. Exhibit D.

In response, the government stated: "To the extent this request seeks material the government is obligated to produce under Rule 16(a)(1)(F), we have produced it already." Exhibit C.

The government's response begs the question. The only narrative "report of examination" concerning a seized electronic device that the government has produced was the single undated report concerning the defendant's computer. To the extent similar reports of examination exist with respect to other devices, they should be produced as well.

**List of Digital Devices**

In a letter dated September 3, 2014, the government stated, "we are updating the list of digital devices among which we may introduce digital evidence," and named several additional devices for inclusion on this "list." In its September 12 letter, the defense requested the complete "list," since it had never before seen such a document. Exhibit D. In response, the government stated: "All of the digital devices that the government intends to introduce in its case in chief have already been produced." Exhibit C. The government's letter was non-responsive. The government has produced myriad electronic devices in discovery. What the defense seeks is the government's list identifying which among those devices it actually intends to use at trial.

**Purported Russian Government Communications Concerning Defense Team**

In papers responding to the defendant's motion to continue, the government made inflammatory and false allegations that, among other, things, members of the defense team traveling in Russia had misrepresented themselves as "members" of the FBI. [DE 547,550.] In its September 12 letter, the defense requested production of documents concerning or comprising the "notification" that the prosecution purportedly received from the Russian government about these matters. Exhibit D. In response, the government stated: "We are aware of no legal basis for this request and therefore decline it." Exhibit C.

Responsive documents should be produced so that the defense may investigate the government's purported good faith basis for making the allegations in its publicly filed pleadings, and to seek whatever relief may be appropriate. Moreover, the items are material because federal prosecutors from another district already have sought in an unrelated case to impeach the defendant's social history expert witness on this basis. The defense should be afforded an opportunity to see any "evidence" of misconduct on which the government is relying so that it may be prepared to respond and/or to file an appropriate motion *in limine* in this case.

**OIG Report**

The defense requested a copy of the complete, classified Inspectors General Report concerning the Marathon Bombing dated April 14, 2014. By letter dated June 15, 2014, the defense refined this request at the government's behest.

> Our request was clear – we asked for access to the full report. We did so in part because the chronology included in report was prefaced by the statement that "[m]any of the activities and events that occurred during the period [prior to the Marathon Bombing] cannot be included in this unclassified summary." Given that the subject matter of the chronology is the activities of older, dominant members of Dzhokhar's family – notably Tamerlan and Zubeidat – it appears that the classified report contains additional information that is mitigating with respect to Dzhokhar because it tends to demonstrate Tamerlan's (and perhaps others') dominance, leadership, priority, and control. For this reason, an itemization of unclassified materials mentioned in the publicly-available summary cannot substitute for access to the entire classified report.

Exhibit F. By letter dated August 15, the government stated: "We have conducted a thorough review of all of the information that underlies the references in the OIG report cited in your letter. The review revealed no additional discoverable information. Accordingly, we decline this request." Exhibit G.

The government should be required to submit the OIG report to the Court for *in camera* review.

**Waltham Murders**

The defense previously moved to compel the production of information and evidence concerning a 2011 triple homicide in Waltham, allegedly committed by Tamerlan Tsarnaev and Ibragim Todashev. The government declined production on the basis of the law enforcement investigation privilege. The Court, after ordering production of Ibragim Todashev's statements for *in camera* review, ultimately denied the motion without comment. This issue is now ripe for renewed examination (including the continuing viability and weight of any investigative privilege) as the trial nears.

Simply put, information and evidence tending to show that Tamerlan Tsarnaev participated in a triple homicide in 2011, and information depicting the brutality of those murders, is critical to the defense case in mitigation. Such evidence would tend to corroborate Tamerlan's dominant role in the charged offenses and would place the brothers' respective personal characteristics and relative culpability into stark relief.

More narrowly, even the government has conceded that evidence concerning Tamerlan's participation in Waltham murders might be relevant if Dzhokhar were aware of it. *See*, *e.g.*, DE 243 at 24.[2] By letter dated August 15, 2014, the government disclosed that an identified witness would be prepared to testify that Dzhokhar had such awareness. *See* Sealed Exhibit H. Thus, Tamerlan's alleged role in the Waltham murders is now relevant even on the government's crabbed reasoning.

For these reasons, evidence of Tamerlan's role in the Waltham murders and evidence concerning the brutality of those murders should be produced.

**Zubeidat Tsarnaeva's Emails**

The government has produced in discovery certain e-mails from "yahoo.com" attributed to defendant's mother Zubeidat Tsarnaeva, for which the government obtained and executed a search warrant. By letter dated July 29, 2014, the defense requested production of a forensic copy of the search warrant return from Yahoo. *See* Exhibit I.

[2] "Even assuming Tamerlan participated in the triple homicide, the defense has not even alleged that Dzhokhar Tsarnaev knew about Tamerlan's purported involvement. Absent such knowledge, there is simply no logical connection between Tamerlan's purported involvement in the murders and Dzhokhar Tsarnaev's experience of Tamerlan." Government's Opposition to Defendant's Motions to Compel at 24, DE 243 (April 11, 2014).

By letter dated August 15, 2014, the government responded: "We have provided all of the discoverable emails that we obtained from Zubeidat Tsarnaeva's Yahoo account. We therefore decline this request." Exhibit G.

Local Rule 116.1(c)(1)(B) requires the production of search warrant returns. The government has provided no basis to limit production to some smaller set of e-mails that it has deemed "discoverable." *See* Fed. R. Crim. P. 41(e)(2)(B) and (f)(1) (setting forth rules for execution and return of Electronically Stored Information). The complete return should be produced.

**Conclusion**

Based on the foregoing, the defense requests that the Court order the government to produce materials responsive to the above-listed requests.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

*/s/* William W. Fick

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)

Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 10, 2014.

*/s/* William W. Fick