# EXHIBIT F

| CLARKE & RICE, APC | FEDERAL PUBLIC DEFENDER OFFICE | DAVID I. BRUCK |
|---|---|---|
| 1010 Second Avenue, Ste. 1800 | DISTRICT OF MASSACHUSETTS | 220 Sydney Lewis Hall |
| San Diego, California 92101 | 51 Sleeper Street, Fifth Floor | Lexington, VA 24450 |
| (619) 308-8484 | Boston, Massachusetts 02210 | (540) 458-8188 |
|  | (617) 223-8061 |  |

June 15, 2014

Aloke Chakravarty
Nadine Pellegrini
William Weinreb
Assistant U.S. Attorneys
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

    Re: United States v. Dzhokhar Tsarnaev
       Criminal No. 13-10200- GAO

Dear Counsel:

  We write in response to your letter of June 10, 2014, which was in response to our May 23, 2014 requests for discovery. We also write in response to your June 11, 2014 letter regarding digital evidence.

  1. **Classified April 10, 2014 Inspectors General Report**. Our letter of May 23, 2014 sought access to the full 168-page classified report issued by the Inspectors General of Inspectors General for the Intelligence Community, Central Intelligence Agency, Department of Justice, and Department of Homeland Security on April 10, 2014. Rather than addressing our request for access to the "full report," you ask that we identify the "materials" we seek so that you can evaluate our request. Our request was clear – we asked for access to the full report. We did so in part because the chronology included in report was prefaced by the statement that "[m]any of the activities and events that occurred during the period [prior to the Marathon Bombing] cannot be included in this unclassified summary." Given that the subject matter of the chronology is the activities of older, dominant members of Dzhokhar's family – notably Tamerlan and Zubeidat – it appears that the classified report contains additional information that is mitigating with respect to Dzhokhar because it tends to demonstrate Tamerlan's (and perhaps others') dominance, leadership, priority, and control. For this reason, an itemization of *unclassified* materials mentioned in the publicly-available summary cannot substitute for access to the entire classified report.

1

Nevertheless, we will also specify discoverable materials that are mentioned in the report which we do not believe you have provided, and which we also hereby request. These include, but are not limited to:

i. 

ii.

iii. The Boston JTTF assessment of Tamerlan Tsarnaev, memorialized in an incident report maintained in the FBI Guardian system (see p. 8 of the Unclassified Summary)

iv. 

v. The document closing the FBI assessment of Tamerlan Tsarnaev (and family members) on June 24, 2011 (see p. 10 of the Unclassified Summary)

vi. 

vii.

viii. Documents which supported inclusion of Tamerlan Tsarnaev on the known or suspected terrorist watch list (see p. 11 of the Unclassified Summary)

ix.

x. The December 201█  information (see p. 12 of the Unclassified Summary)

xi. The passenger data received from CBP for Tsarnaev's travel, and document(s) vetting it against various databases, including TECS (see p. 12 of the Unclassified Summary)

xii. Information that existed prior to April 15, 2013 but that was not obtained or first accessed and reviewed until after the bombings that shows that Tamerlan Tsarnaev intended to pursue jihad, statements by Tsarnaev's former girlfriend describing

2

272

Tsarnaev's shift toward radical Islam between 2006 and 2009, descriptions from multiple sources of Tsarnaev's activities while in Russia in 2012 and Tsarnaev's collection and sharing of jihadi-themed videos and other extremist materials beginning at least a year prior to the bombings (see p. 18 of the Unclassified Summary)[1]

    xiii.    The "January 2011 Communications" (see p. 18 of the Unclassified Summary)

    xiv.    █████████████████████████████████

    xv.    Analyses of computer media from Tsarnaev's home obtained through a method only available in a full investigation, including a March 19, 2014 EC analyzing information that included information about Tsarnaev's YouTube account (see p. 19 and 20 of the Unclassified Summary)

    xvi.    █████████ (see p. 20 of the Unclassified Summary)

On a related note, we have received one report of an interview with Tamerlan Tsarnaev (April 22, 2011) and one report of an interview of his parents (April 14, 2011). We believe that there were more official FBI and/or other law enforcement contacts with the parents and/or Tamerlan before April 15, 2013, and request copies of those interview reports.

2. **Surveillance of the defense team communications.** Your carefully worded response ("No communications of the types you describe in your letter have been made available to the prosecution team.") is of great concern to us. We sought by our letter to identify any attempts by law enforcement or any governmental agency to listen to, record, or obtain non-public or confidential information about the defense team's work in this case. Our request was not limited to what may have been "made available to the prosecution team." To be clear, we are asking whether or not there has been any surveillance or attempted surveillance of the defense team's communications or activity, or any request for such surveillance, by any federal, state or local governmental agent or agency. The term "defense team's communication or activity" includes our internal contacts or communications or documents shared within the defense team, our contacts or communications with potential witnesses, and our contacts or communications with our client or his family.

---

[1] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

3. **Notes and reports concerning FBI observations at FMC Devens.** We believe these notes/reports are appropriately discoverable as *Brady* material. Your letter also did not respond to our request for the BOP phone recordings between Mr. Tsarnaev and his parents; we noted the last production was in January.

4. **Tamerlan's use of Russian Social Media cites.** Your response suggests that we have received discovery of Tamerlan's Russian social media websites, and asks that we narrow our request. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ our knowledge we have been provided with <u>no</u> information about Tamerlan's use of Russian social media websites, and again request it.

5. **Ruger.** In response to our letter of May 13, 2014 (regarding the L.A. Times article and the Ruger trace), you provided the single piece of paper we have regarding the source of the Ruger found on Laurel Street and allegedly used to kill Officer Collier. Contrary to your suggestion, we have not received the investigative reports documenting that the Ruger was ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Also contrary to the suggestion in your May 23, 2014 letter regarding the Ruger, we did not receive any forensic report narrowing the serial number down to seven of eight digits; the sole report we received, dated April 25, 2013, indicated that the examiner was only able to conclusively identify <u>five</u> of the eight digits. We reiterate our request for information regarding the Ruger.

6. **Boylston Street evidence collection and chain of custody.** We do not view these items as *Jencks* material, but rather discoverable under Rule 16.



8. **Other Digital Items.** Also left unclear from your correspondence of June 10-11, 2014 is the status of the other items we have identified to the FBI that should be copied for us. In the course of the last five months, we have repeatedly requested, orally and in email, to FBI ASAC David Donahue, Mr. Chakravarty, and Ms. Pellegrini, production of the copies. It is difficult to reconcile this delay with your repeated assurances, since your automatic discovery letter of last September that the items are available to us. Please advise us as to when these items will be made available to us.

4

Thanks in advance for your prompt attention to these requests.

Sincerely,

/s/ *Judy Clarke*

David I. Bruck
Judy Clarke
Miriam Conrad
William Fick
Timothy Watkins

Counsel for Dzhokhar Tsarnaev

5