UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

OPINION AND ORDER
October 17, 2014

O'TOOLE, D.J.

The defendant has moved to suppress the fruits of physical and digital searches that took place between April 19, 2013 and July 26, 2013. The government opposes the motions, and the defendant has filed a reply brief. The defendant has requested an evidentiary hearing, but as set forth below, a hearing is not necessary to resolve the present motions.

I.    **Background**

A.    Physical Searches

On April 19, 2013, after the defendant's brother, Tamerlan Tsarnaev, had been identified after his death through fingerprint comparisons, federal agents obtained and executed a search warrant for 410 Norfolk Street Apartment 3, Cambridge, Massachusetts, identified as the residence of the defendant and his brother. Two days later on April 21, agents searched the defendant's dormitory room at the University of Massachusetts at Dartmouth ("UMass") pursuant to a warrant. The FBI obtained a second warrant to search the Norfolk Street apartment, and that warrant was executed on May 5. On June 27, after the close of the academic year, UMass officials entered the defendant's dorm room and removed his personal items that

remained there. An FBI agent was present and took notes and photographs of some of the items. On July 24, the FBI obtained warrants to search the dorm room itself, as well as certain items that had been removed from the room by UMass officials. Those warrants were executed on July 26.

      B.     <u>Digital Searches</u>

On April 19, 2013, a warrant issued authorizing the search of the defendant's and his brother's Yahoo! email accounts. On April 23, 2013, the FBI obtained a warrant authorizing the search of the defendant's Sony VAIO laptop computer and seizure of certain digital evidence located on the computer. A warrant issued on July 3, 2013, for two Google email ("Gmail") accounts registered to the defendant.

## II.    Discussion

The defendant contends that the warrants authorizing searches of the Cambridge apartment at 410 Norfolk Street and the UMass Dartmouth dorm room were insufficiently particular, and alternatively, that at least some items seized fell outside the scope of the warrants and were improperly seized. He also challenges the FBI's warrantless entry into the dorm room on June 27, and further contends that the fruits of the July 26 search must be suppressed because the warrant was supported by observations made by the FBI agent during the allegedly improper June 27 entry.

The defendant also challenges the search of the Yahoo! email accounts and the Sony VAIO laptop on the ground that the warrants failed to establish probable cause, and he objects to the use of the fruits of those searches to establish probable cause to search his Gmail accounts. He further challenges the warrants authorizing the digital searches for purportedly failing to outline a search procedure to distinguish between responsive and irrelevant information, and he

argues that the government's inspection of the digital information exceeded the scope of those warrants.

A.    April 19, 2013 Search Warrant – Norfolk Street Apartment

The April 19 warrant authorized the search of the "residence of Tamer[l]an Tsarnaev . . . and Dzhokhar Tsarnaev . . . located at 410 Norfolk Street, Apartment 3, Cambridge, Massachusetts 02139 ('the Target Residence')." (Def.'s Mot. to Suppress, Ex. 1 at 3 (dkt. no. 297-1) (under seal).) [1] The warrant authorized the seizure of various items listed in its "Attachment B":

> All evidence inside the premises and curtilage located at the Target Residence, related to violations of 18 U.S.C. §§ 2332(a) (Using and Conspiring to Use A Weapon of Mass Destruction), 844(i) (Malicious Destruction of Property by Means of an Explosive Device Resulting in Death), 2119 (Carjacking), 1951 (Interference with Commerce by Violence), 924(c) (Use of a Weapon During a Crime of Violence) and 371 (Conspiracy to Commit Offenses), including but not limited to:
>
> 1. Property, records, items, or other information, related to violations of the aforementioned statutes, including but not limited to, bomb making material and equipment, ammunition, weapons, explosive material, components of bomb delivery devices;
>
> 2. Property, records, or other information related to the ordering, purchasing, manufacturing, storage, and transportation of explosives;
>
> 3. Property, records, or other information related to the ordering, purchasing, manufacturing, storage, and transportation of firearms;
>
> 4. Property, records, or other information related to the ordering and purchasing of pressure cooker devices, BBs, nails, and other small metallic objects;
>
> 5. Property, records, or information related to the Boston Marathon;

---

[1] The parties have submitted materials pertinent to the present motions under seal in order to comply with the provisions of the protective order previously entered. (Stipulated Protective Order (dkt. no. 91).) As no substantial interests are adversely affected by the limited quotations from those materials in this order, the seal is lifted for the purposes of this Opinion and Order to the extent necessary to permit the public discussion of the issues raised by the present motions.

6. Property, records, or information related to any plans to initiate or carry out any other attacks inside or outside the United States, or any records or information related to any past attacks;

7. Property, records, or information related to the state of mind and/or motive of Tamer[l]an and Dzhokhar to undertake the Boston Marathon bombings;

8. Property, records, or other information related to the identity of Tamer[l]an and Dzhokhar;

9. Property, records, or other information related to the identity of any individuals who were in contact with, or were associates of Tamer[l]an and Dzhokhar;

10. Property, records, or information, related to any organization, entity, or individual in any way affiliated with Tamer[l]an and Dzhokhar, that might have been involved in planning, encouraging, promoting the actions described herein;

11. Property, records, or other information, related to Tamer[l]an's and/or Dzhokhar's schedule of travel or travel documents;

12. Property, records, or information related to any bank records, checks, credit card bills, account information, and other financial records.

13. All digital evidence [as defined in the application and the warrant].

(Id. at 6-7.)

The warrant was executed the same day, and the FBI seized about 100 items.

i.    *Standing*

A defendant has standing to challenge a search on Fourth Amendment grounds where he has both "a subjective expectation of privacy" in the place to be searched, and "society accepts that expectation as objectively reasonable." United States v. Vilches-Navarrate, 523 F.3d 1, 13 (1st Cir. 2008) (citing California v. Greenwood, 486 U.S. 35, 39 (1988)). A subjective expectation of privacy is manifested where a defendant has "made some minimal effort to protect [his] property or activities from warrantless intrusions." United States v. Cardona-Sandoval, 6 F.3d 15, 20-21 (1st Cir. 1993) (collecting cases). In determining the reasonableness of an

expectation of privacy, courts in this Circuit "consider ownership, possession, control, ability to exclude from the premises, or a legitimate presence on the premises." Id. at 21.

The government contends that the defendant has no standing to challenge the search of the Norfolk Street apartment because he had moved out of the apartment and into UMass Dartmouth student housing and was only an occasional overnight guest at the apartment. The government also argues that he abandoned any "residual expectation of privacy" on April 18, 2013, when he left the apartment, apparently not expecting to return alive.

To the contrary, I conclude that the defendant does have standing to challenge the Norfolk Street apartment search. The government's application for the warrant supports this conclusion. The application identified the apartment as the residence of both Tamerlan and Dzhokhar Tsarnaev and noted that public records indicate the same. Indeed, it was part of the government's probable cause calculus as to the defendant that because he resided at the apartment, things of his could likely be found there. Moreover, the idea that a college student has no reasonable expectation of privacy in a family residence while he is away at school and living in a dorm is, to say the least, a novel idea, for which the government offers no specific precedential support.

I also conclude that the defendant's conduct on April 18 did not amount to an unambiguous abandonment of his expectation of privacy in the apartment or in his belongings.

       *ii.*    *Particularity*

The Fourth Amendment instructs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The aim of the particularity requirement is to impede "general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443,

467 (1971). A valid warrant: "(1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized." United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013) (citing United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999)).

The defendant asserts that the categories of items to be searched for and seized listed in Attachment B were too broad and authorized the kind of general rummaging that the Fourth Amendment prohibits. There are two principal strands to his argument. First, he asserts that the use of the phrase "including but not limited to" at the end of the initial paragraph of Attachment B just before the list of categories of evidence effectively eliminated any restriction on what could be searched for. Kuc disposes of this argument. The language of the warrant "must be read in context." Id.; see also Andresen v. Maryland, 427 U.S. 463, 480-81 (1976) (reading warrant clause in context). Here, as in Kuc, the warrant described the scope of the authorized search by reference to specific crimes as to which probable cause was said to exist. That reference had a limiting effect, requiring that any items seized be in some manner evidence of violation by the defendant of at least one of those statutes. See 737 F.3d at 131-32. Further, the general first paragraph is followed by a series of more specific categories describing the kind of evidence that might reasonably be expected to be found in a search focused on investigation of the enumerated crimes. It has long been recognized that "the 'general tail' of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." Id. at 133 (internal quotation marks omitted). The scope of the warrant is thus limited first by restricting the search to evidence of specified crimes. The list of categories further instructs the executing officer as to the kinds of things that can plausibly be considered evidence of the enumerated crimes. See United States v. Timpani, 665 F.2d 1, 5 (1st Cir. 1981) ("The warrant breaks the

items into categories. Each item is plausibly related to the crime . . . that is specifically set out."). The "including" phrase the defendant points to does not have the nullifying effect he suggests.

The second strand of the defendant's argument is that some of the enumerated categories, particularly paragraphs 8 though 12, are phrased so broadly that they give little guidance to an executing officer and thus permit an impermissible general search. This argument depends on isolating the language of those paragraphs from the context of the relevant language as a whole. Kuc and other cases instruct against that approach. It is true that some of the categories are broadly expressed and, viewed in isolation, would be too general. But in context they are properly understood as narrowed by the reference to particular criminal activity in the preamble paragraph of Attachment B. For example, paragraph 12 authorizes seizure of "any bank records, checks, credit card bills, account information, and other financial records." Read by itself in isolation, it would fail the particularity test. But read in context it authorizes the seizure of documents within the broad categories *if* they are evidence of the listed crimes. That is a significant narrowing of the scope of the authorized seizure, and it provides guidance to the executing officers as to what may and may not be seized.

It should be noted that the particularity requirement does not forbid *any* use of generic descriptions of items to be seized. See United States v. Cortellesso, 601 F.2d 28, 31 (1st Cir. 1979). Sometimes only generic description is possible, such as when law enforcement agents, while having probable cause to believe that evidence of a crime will be found in a particular place, simply lack information about what specific form that evidence will take. For example, agents might reasonably expect that a search of an apartment from which illegal drug distribution was occurring would yield documents evidencing the distribution, but yet be unable to give a more specific description of the documents. In another case, in contrast, agents investigating a

particular kind of fraud might be able to be more specific and identify a particular kind of document to be seized. See e.g., United States v. Roche, 614 F.2d 6, 7 (1st Cir. 1980). There is no reason to think that the agent who applied for the warrant in this case had information available to him that could have narrowed the language of the more generic paragraphs without defeating the legitimate purpose of the warrant.

Even if some of the categories in the numbered paragraphs were too broadly phrased, the remedy would be directed to items seized under those categories, not the entire warrant. United States v. Morris, 977 F.2d 677, 682 (1st Cir. 1992) (citing United States v. Diaz, 841 F.2d 1, 4 (1st Cir. 1988)). The defendant's argument has been directed at the validity of the entire warrant; he has not argued for the suppression of particular items under an invalid subpart of the warrant.

Finally, even if the defendant's argument regarding the lack of adequate particularity had merit, the "good faith" doctrine announced in United States v. Leon, 468 U.S. 897, 923 (1984), would justify denial of the motion to suppress. See United States v. Trinh, 665 F3d 1, 16 n.5.

   iii.   *Scope of Search*

"It is settled law that the search and seizure conducted under a warrant must conform to the warrant." United States v. Upham, 168 F.3d 532, 536 (1st Cir. 1999) (citing Marron v. United States, 275 U.S. 192, 196-97 (1927)). However, seizure of items beyond the scope of a warrant "does not *alone* render the *whole* search invalid and require suppression and return of *all* documents seized, *including those lawfully taken pursuant to the warrant*." United States v. Young, 877 F.2d 1099, 1105 (1st Cir. 1989) (emphasis in original) (quoting Marvin v. United States, 732 F.2d 669, 674 (8th Cir. 1984)).

The defendant argues that the seizure of certain items—such as textbooks and notes—by their description suggest that they were outside the scope of the authorized seizure, but he also

acknowledges that for the very reason of their unrelatedness the government may not seek to introduce such items in evidence. (On the other hand, any offer would necessarily include a proffer of their relevance, which might explain why their seizure was not beyond the scope of the warrant.) Additionally, if they are offered, the "plain view" exception might apply. These issues can be addressed as the need arises at or before trial.

B.     April 21, 2013 Search Warrant – UMass Dorm Room

The April 21 warrant authorized the search of "Room 7341 of Pine Dale Hall ('the Target Residence'), at the University of Massachusetts at Dartmouth, located at 285 Old Westport Road, North Dartmouth, Massachusetts." (Def.'s Mot. to Suppress, Ex. 2 at 3 (under seal).) The list of items to be seized was generally the same as in the warrant for the Norfolk Street apartment set forth above. The defendant challenges this search on the same grounds. For the reasons explained above, the defendant's challenge is unmeritorious. Again, to the extent that the defendant argues that some items are not admissible in evidence because their seizure went beyond the scope of the warrant, the Court will make rulings as the need arises.

C.     May 3, 2013 Search Warrant – Norfolk Street Apartment

The May 3 warrant authorized the seizure of the following:

Evidence, in whatever form inside the premises and curtilage located at the Target Residence, related to violations of 18 U.S.C. §§ 2332a (Using and Conspiring to Use A Weapon of Mass Destruction), 844(i) (Malicious Destruction of Property by Means of an Explosive Device Resulting in Death), 2119 (Carjacking), 1951 (Interference with Commerce by Violence), 924(c) (Use of a Firearm During a Crime of Violence) and 371 (Conspiracy to Commit Offenses), including but not limited to:

1. Low-explosive powder residue from locations within the Target Residence, including but not limited to table tops, countertops, under furniture, and concealed locations;

2. Low-explosive powder residue from the plumbing system of the Target Residence, including but not limited to the drains and pipes;

3. Male and/or female clothing consistent with clothing worn by the two individuals in the February 23, 2013 surveillance video from Macy's department store, located at 450 Washington Street, in Boston, Massachusetts.

4. A five-quart perforated colander, an eleven-inch teal-colored frying pan, and an eleven-inch stainless steel frying pan, all of which are Martha Stewart brand products.

5. Chrome-colored shoes consistent with the description of the individual present in the fireworks store in Seabrook, New Hampshire in February 2013.

6. Evidence not previously seized, which based on information available at the time of the search, is related to violations of the aforementioned statutes, including but not limited to, bomb making material and equipment, ammunition, weapons, explosive material, and components of bomb delivery devices.

(Def.'s Mot. to Suppress, Ex. 3 at 4 (under seal).)

The warrant was executed on May 5, and the FBI seized 30 items.

The defendant acknowledges that the language of this warrant is more particularized than the prior warrant. His argument is that the reference in paragraph 6 to "information available at the time of the search" left too much to the judgment of the executing officers.

The execution of a search warrant necessarily entails the use of judgment by the executing officers. See Trinh, 665 F.3d at 16 (noting that officers executing a search warrant are required to interpret it). With respect to any item considered for seizure the question an officer would ask is whether the item is plausibly evidence of one of the enumerated crimes. In some instances the answer to that question is clear, in some instances debatable. Answering the question always involves the exercise of judgment, and any judgment would necessarily be made in light of the information possessed by the officer at the time. That would be true whether paragraph 6 explicitly recognized it or not. This warrant, when read in a commonsense fashion,

see United States v. Barnes, 492 F.3d 33, 37-38 (1st Cir. 2007), does not violate the particularity requirement.

As with the previous warrants, even if it did, the good faith exception to the exclusionary rule would apply because a reasonable officer would not have known that the warrant was invalid despite the magistrate judge's authorization. See Kuc, 737 F.3d at 134 (citing Leon, 468 U.S. at 923 n.23).

D.    June 27, 2013 Entry – UMass Dorm Room

On June 27, 2013, an FBI agent accompanied UMass officials as they entered Room 7341 at Pine Dale Hall, formerly occupied by the defendant, to collect the defendant's belongings that remained there. No warrant had been issued. The agent took note of the items he observed and took photographs of some items. The agent noted that he observed the UMass officials collect a sample of a reddish-brown powder on the window sill, remove the listed items, and re-secure the dorm room. (Def.'s Mot. to Suppress, Ex. 4 at 3 (under seal).)

The defendant challenges the propriety of the agent's entry, arguing that university officials had no right to consent to a search of the room and that he had not abandoned his privacy interest in the room or his possessory interest in his belongings.

The government's first argument is that the defendant lacks standing to raise this challenge, and I agree. As noted above, to establish standing to challenge the validity of a search on Fourth Amendment grounds, a defendant must show that he had a "legitimate expectation of privacy." United States v. Salvucci, 448 U.S. 83, 95 (1980). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." Minnesota v. Olson, 495 U.S. 91, 95-96 (1990) (internal quotation marks omitted). Assuming the defendant himself

did have a subjective expectation of continuing privacy in the dorm room, that expectation would not be legitimate because it would not have been objectively reasonable.

There is no dispute that under the defendant's occupancy agreement with UMass his right to occupy the room had terminated several weeks prior to June 27 with the end of the academic year. (Gov't Appx., Ex. M at 1, 6 (under seal).) The housing agreement also explicitly provided that "[p]ersonal property remaining in the residence hall after the term of this Contract has expired shall become the property of the University." (Id. at 4.) The defendant, as with all students, was thus on notice that his privacy expectations were time-limited.

The defendant cites United States v. Robinson, 430 F.2d 1141 (6th Cir. 1970), for the general proposition that a defendant who is absent from his residence by virtue of his incarceration has not voluntarily abandoned the premises. The case is inapposite. The defendant's privacy interest in the dorm room was not defeated by his involuntary detention, but by his prior agreement with UMass. This is not a case where the defendant, had he not been incarcerated, could have continued his occupancy in the premises indefinitely and thus could have continued to have a reasonable expectation of privacy in the room as his place of habitual residence after the time contemplated under his arrangement with the school.

On the facts of this case, any expectation the defendant might have had about privacy of the room's physical space, as distinguished from his personal property within it, would not have been objectively reasonable, and he has no standing to object to the admission of the FBI agent to the room by UMass authorities.

The question of standing aside, for similar reasons the UMass authorities, themselves having the right to enter the room, could consent to the presence of the FBI agent. The agent's presence did not violate the Fourth Amendment.

While in the room, the agent took notes and photographs. There is no suggestion that he viewed anything that was not in plain sight. In particular, there is no indication that he searched any of the defendant's personal property, and it appears undisputed that he seized nothing. Rather, government agents later applied for and received a warrant to search the personal property.

E.     July 24, 2013 Search Warrants – UMass Dorm Room and Personal Property

The July 24 search warrants identified the UMass Dartmouth dorm room as the "Target Location" and the "Personal Property of Dzhokhar Tsarnaev Obtained from Room 7341 of Pine Dale Hall" as the "Target Materials." (Gov't Appx., Ex. D, E.) The warrants, quoted in the government's papers, authorized the seizure of various evidence from the "Target Location" and "Target Materials," including materials remaining in the dorm room and those in the possession of the UMass authorities who cleaned out the room.

The defendant's principal argument is that this warrant was tainted by the FBI's improper observations made during the June 27 entry into the dorm room. Since that entry was not unlawful, the premise of the argument is incorrect.

The defendant also repeats his argument that some objects were seized beyond what was authorized. Again, if any item seized beyond the scope of the warrant is offered in evidence, the issue can be resolved as needed.

F.     April 19, 2013 Search Warrant – Yahoo! Email Accounts

The April 19 warrant ordered that certain files and records associated with the email accounts J.tsarnaev@yahoo.com and Tamerlan_tsarnaev@yahoo.com be duplicated by Yahoo!

Inc. and provided to law enforcement.[2] The warrant authorized law enforcement agents to then search the duplicated materials and seize the following:

> Evidence, fruits, or instrumentalities of violations of 18 U.S.C. Sections 2332a(a)(2)(d), 844(i), 1951, 924(c) and 371, including records relating to:

> 1. All communications between or among Tamer[l]an Tsarnaev and Dzhokhar Tsarnaev

> 2. All communications pertaining to the Boston Marathon, explosives, bombs, the making of improvised explosive devices, firearms, and potential people and places against which to use firearms, explosives or other destructive devices.; [sic]

> 3. The identity of the person or persons who have owned or operated the J.tsarnaev@yahoo.com and Tamerlan_tsarnaev@yahoo.com e-mail accounts or any associated e-mail accounts;

> 4. The data described in paragraphs II(A)(3)-(5), above ["3. The contents of all electronic data files, whether word-processing, spreadsheet, image, video, or any other content; 4. The contents of all calendar data; 5. Lists of friends, buddies, contacts, or other subscribers."]

> 6. [sic] The existence and identity of any co-conspirators;

> 7. The travel or whereabouts of the person or persons who have owned or operated the J.tsarnaev@yahoo.com and Tamerlan_tsarnaev@yahoo.com e-mail accounts or any associated e-mail accounts;

> 8. The identity, location, and ownership of any computers used to access these e-mail accounts;

> 9. Other e-mail or Internet accounts providing Internet access or remote data storage or e-commerce accounts;

---

[2] The disclosure by Yahoo! was apparently made under the authority of 18 U.S.C. § 2702 (b)(8), which authorizes disclosure of such information "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." The defendant comments in a footnote that the disclosure was "far broader than the emergency at issue on April 19, 2013," but does not present any developed argument on the point. It is worth noting that at the time the warrant was applied for and issued, the defendant had not yet been taken into custody.

10. The existence or location of physical media storing electronic data, such as hard drives, CD- or DVD-ROMs, or thumb drives; and

11. The existence or location of paper print-outs of any data from any of the above.

(Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information, Ex. 1 at 6-7 (dkt. no. 303-1) (under seal).) At the time that the warrant was issued, the defendant was still at large.

        *i.*    *Probable Cause*

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." <u>United States v. Woodbury</u>, 511 F.3d 93, 97 (1st Cir. 2007) (quoting <u>United States v. Feliz</u>, 182 F.3d 82, 86 (1st Cir. 1999)). As to the nexus element, "a magistrate has to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>United States v. Rodrigue</u>, 560 F.3d 29, 33 (1st Cir. 2009) (quoting <u>United States v. Ribeiro</u>, 397 F.3d 43, 49 (1st Cir. 2005)). There is no dispute that the warrant application provided information to satisfy the commission element. As to the nexus element, the defendant contends that the warrant application failed to establish that evidence, fruits, or instrumentalities of the enumerated crimes would be found in the J.tsarnaev@yahoo.com email account.[3]

In his affidavit supporting the warrant application, the agent averred that "[b]ased on [his] training and experience, [he was] familiar with how people, including those who commit crimes, use e-mail accounts and social media to plan, discuss, or commit their crimes." (Def.'s Mot. To Suppress Fruits of Searches: Electronically Stored Information, Ex. 2 at 1 (under seal).) The

---

[3] The defendant lacks standing to challenge the search of his brother's Yahoo! account.

affidavit established that the defendant had used J.tsarnaev@yahoo.com to apply for federal student aid (and that Tamerlan Tsarnaev had provided Tamerlan_tsarnaev@yahoo.com to Bunker Hill Community College, where he had studied). (Id. at 10-11.) The affidavit also included the following under the heading "Probable Cause to Believe that the Accounts Contain Evidence, Fruits, and Instrumentalities":

> 37. I also have probable cause to believe that the Subject Accounts and the data associated with those accounts contain evidence, fruits, and instrumentalities of the crimes identified above. I base this conclusion in part on my training and experience. I know that many people regularly use e-mail to provide contact information to others, as well as to discuss future plans and to make logistical arrangements. I also know, based on my training and experience, that many criminals use e-mail to plan and discuss their criminal schemes.

> 38. Furthermore, the characteristics of both Tamer[la]n and Dzhokhar Tsarnaev make it likely that the Subject Accounts contain evidence, fruits, and instrumentalities of the crimes identified above. It appears that both Tamer[la]n and Dzhokhar used social media. It appears that Tamer[la]n had a YouTube page containing several videos. It appears that Dz[h]okhar has a Facebook page. Given their ages (19 for D[h]zokhar and 26 for Tamer[la]n), their use of social media, and the fact that they provided Yahoo! E-mail addresses to the Department of Education and Bunker Hill Community College, there is probable cause to believe that they used these e-mail accounts regularly, and that evidence of the crimes described in this affidavit would be found in them.

(Id. at 11.)

The "issuing magistrate's conclusion that probable cause has been established" is to be given "considerable deference." Woodbury, 511 F.3d at 98 (citation omitted). Here, no reason appears to conclude that she could not legitimately have accepted the inference suggested in the application and made a "practical, common-sense decision" that there was a "fair probability" that, because it was likely the defendant actively used his Yahoo! email account, some evidence of the criminal activity referred to in the affidavit could be expected to be found in the Yahoo! email accounts. See Rodrigue, 560 F.3d at 33.

Moreover, again there is no evidence of an absence of good faith on the part of executing agents that would preclude the <u>Leon</u> good faith exception from being applied. <u>See</u> <u>Woodbury</u>, 511 F.3d at 99 (quoting <u>Leon</u>, 468 U.S. at 923).

        *ii.*        *Particularity*

The defendant raises similar particularity challenges here as he did regarding the warrants authorizing the physical searches of his dorm room and the Norfolk Street apartment. He argues that the categories listed are not sufficiently particular and do not provide enough guidance as to what can and cannot be seized.

The defendant again fails to read the categories in context. For example, he argues that clause 4, which refers to "the contents of all electronic data files," is so broad that it renders all the other limitations in the warrant meaningless, and as a result, law enforcement was authorized to seize anything it found in the Yahoo! email accounts. This is not a sensible reading of this clause, which clearly contemplates that the contents of electronic data files must be evidence of the listed crimes in order to be properly seized.

        *iii.*        *Search Procedure*

The defendant also challenges the manner in which the FBI conducted its search. Consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the procedure established by the warrant and set out in its Attachment B was for agents (1) to obtain from Yahoo! a duplicate of all the information associated with the two Yahoo! email accounts and (2) to search the produced information for the enumerated categories of evidence. (Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information, Ex. 1 at 6-7.) Rule 41(e)(2)(B) provides:

> A warrant . . . may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.

The procedure adopted was consistent with this provision of the rule.

Whether searches of electronically stored data or files should be guided by rules specially devised to account for the characteristics of compilations of electronic files and different from rules otherwise applicable to compilations of hard-copy files is currently a matter of debate. Compare In re Info. Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc., No. 14-MJ-228, 2014 WL 4094565, at *4-6 (D.D.C. Aug. 8, 2014) (approving issuance of warrant and search in accordance with "two-step" procedure of Rule 41(e)(2)(B)) with In re Applications for Search Warrants for Information Associated with Target Email Accounts/Skype Accounts, No. 13-MJ-8163, 2013 WL 4647554, at *8 (D. Kan. Aug. 27, 2013) (noting concern with warrant application's "fail[ure] to set any limits on the universe of information to be disclosed to and searched by the government" and denying warrant). According to the defendant, the government should have been required to implement some mechanism to minimize unauthorized intrusion by, for example, having a filter or taint team conduct the search.

However, in the absence of a specific applicable requirement, it is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." Dalia v. United States, 441 U.S. 238, 257 (1979); accord Upham, 168 F.3d at 537 ("The March 21 warrant did not prescribe methods of recovery or tests to be performed, but warrants rarely do so. The warrant process is primarily concerned with identifying *what* may be searched or seized—not how.").

The procedures employed in the execution of the April 19 warrant and the review of the data furnished by Yahoo! were not in violation of any existing rule or standard and were in fact consistent with Rule 41's two-step approach. Filtering or other procedures, however salutary

such approaches might be, were not required as a matter of law, and neither the magistrate judge nor the executing officers acted unlawfully in proceeding as they did.

The executing agents' good faith reliance on the warrant again would preclude an order of suppression.

G.    April 23, 2013 Search Warrant – Sony VAIO Laptop

The April 23 warrant authorized the search of the Sony VAIO laptop for the identification of the following items:

> All records stored within the Target Computer, related to violations of 18 U.S.C. §§ 2332a (Using and Conspiring to Use A Weapon of Mass Destruction), 844(i) (Malicious Destruction of Property by Means of an Explosive Device Resulting in Death), 2119 (Carjacking), 1951 (Interference with Commerce by Violence), 924(c) (Use of a Firearm During a Crime of Violence) and 371 (Conspiracy to Commit Offenses), including but not limited to:

> 1. Records, items, or other information, related to violations of the aforementioned statutes, including but not limited to, bomb making material and equipment, ammunition, weapons, explosive material, and components of bomb delivery devices;

> 2. Records or other information related to the ordering, purchasing, manufacturing, storage, and transportation of explosives;

> 3. Records or other information related to the ordering, purchasing, manufacturing, storage, and transportation of firearms;

> 4. Records or other information related to the ordering and purchasing of pressure cooker devices, BBs, nails, and other small metallic objects;

> 5. Records or information related to the Boston Marathon;

> 6. Records or information related to any plans to initiate or carry out any other attacks inside or outside the United States, or any records or information related to any past attacks;

> 7. Records or information related to the state of mind and/or motive of Tamerlan and Dzhokhar to undertake the Boston Marathon bombings;

> 8. Records or other information related to the identity of Tamerlan and Dzhokhar;

9. Records or other information related to the identity of any individuals who were in contact with, or were associates of Tamerlan and Dzhokhar;

10. Records or information, related to any organization, entity, or individual in any way affiliated with Tamerlan and Dzhokhar, that might have been involved in planning, encouraging, promoting the actions described herein;

11. Records or other information, related to Tamerlan's and/or Dzhokhar's schedule of travel or travel documents;

12. Records or information related to any bank records, checks, credit card bills, account information, and other financial records.

(Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information, Ex. 3 at 4 (under seal).)

        *i.*     *Standing*

It is apparently undisputed that on April 18, 2013, the defendant texted a friend, inviting him to take whatever he wanted of the defendant's property from the defendant's dorm room at UMass Dartmouth. The friend took from the room, among other things, a Sony VAIO laptop computer belonging to the defendant. On April 19, before the defendant's apprehension, the FBI seized the laptop from the friend's apartment, and at the time of the application for a warrant to search it, the laptop was in the FBI's possession.

The government contends that the defendant lacks standing to challenge the search of his laptop because he had told his friend he could take anything he wanted from the dorm room, and it was pursuant to that permission that the friend took possession of the laptop. The argument is plausible; the invitation to take whatever he wanted could be interpreted as an abandonment by the defendant of any privacy interest in the contents of the computer. On the other hand, the invitation is not entirely inconsistent with other possibilities, including the entrustment of private materials to a reliable friend to be kept secure. See United States v. Basinski, 226 F.3d 829, 836-

38 (7th Cir. 2000). In <u>Basinski</u>, however, the developed facts supported an inference of non-abandonment, whereas here they are simply enigmatically sparse. I think it is the better course here to presume standing.

However, in the absence of abandonment, the laptop could be searched on the issuance of a warrant to do so, and that of course occurred. The defendant challenges the warrant on several grounds.

### ii.     *Probable Cause*

According to the defendant, the "sole link" in the warrant application providing a nexus between the laptop and the crimes listed was that the agent "had learned that Tamerlan and Dzhokhar purchased materials online which they used to manufacture the explosives used in the Marathon bombings," and that he "almost certainly learned this from the statements made by Mr. Tsarnaev at Beth Israel Deaconess Medical Center on April 20 through 22. (Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information, at 13.) Since the defendant has moved to suppress statements made at the hospital, his argument here is that a warrant that issued in reliance on any of the challenged statements is tainted, and the fruits of the search pursuant to it must be suppressed.

The problem for the defendant is that reference to the disputed statement is not the "sole" basis for believing the laptop contained information related to the crimes being investigated. Rather, the necessary probable cause for the warrant is contained in paragraphs 41 through 46 of the application affidavit. (<u>Id.</u>, Ex. 4 at 13-16 (under seal).) The affidavit supported probable cause even without the hospital information. <u>Cf.</u> <u>United States v. Dessesaure</u>, 429 F.3d 359, 366-67 (1st Cir. 2005) (excising offending information in warrant application related to illegal search to evaluate whether what remains is sufficient to establish probable cause); <u>United States v.</u>

Veillette, 778 F.2d 899, 904 (1st Cir. 1985) (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978) (warrant stands where, after setting aside the offending statements in affidavit, there remains sufficient content to support finding of probable cause). The affidavit established that this laptop had belonged to the defendant and that he had used this laptop in his dorm room. The special agent further asserted, "From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in computer hardware, computer software, computer-related documentation, and storage media." (Id. at 14.) In light of the information set forth in the affidavit, the magistrate judge made a common-sense determination that there was a fair probability that evidence of the enumerated crimes would be found on the laptop.

      *iii.*     *Particularity and Search Procedure*

The defendant's arguments with regard to the particularity of the warrant and the search procedure used are the same as to all three warrants for electronically stored information. For the reasons set forth above, the defendant's arguments lack merit.

      H.      July 3, 2013 Search Warrant – Google Email Accounts

The July 3 warrant authorized the following materials to be seized from the defendant's Gmail accounts:

> All information . . . that constitutes evidence related to violations of 18 U.S.C. §§ 2332a (Using and Conspiring to Use Weapons of Mass Destruction), 844(i) (Malicious Destruction of Property by Means of an Explosive Device Resulting in Death), 2119 (Carjacking), 1951 (Interference with Commerce by Violence), 924(c) (Use of a Firearm During a Crime of Violence) and 371 (Conspiracy to Commit Offenses), including:
>
> a.  Information related to the identity of Dzhokhar Tsarnaev ("Dzhokhar") or Tamerlan Tsarnaev ("Tamerlan");

b. The Boston Marathon, explosives, bombs, the making of improvised explosive devices, firearms, and potential people and places against which to use firearms, explosives or other destructive devices;

c. The investigation into the two explosions that occurred on April 15, 2013 in Boston during the Boston Marathon and a subsequent shootout that occurred on April 18-19, 2013 in Cambridge and Watertown, Massachusetts.

d. Information related to the travel schedule, travel documents, or locations visited by Dzhokhar and Tamerlan;

e. Communications between and among Dzhokhar, Tamerlan, and other possible co-conspirators;

f. The identity, and travel of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above;

g. Information related to any plans to initiate or carry out any other attacks inside or outside the United States, or any records or information related to any past attacks;

h. Information related to the state of mind and/or motive of Dzhokhar and Tamerlan to undertake the Boston Marathon bombings;

i. Information related to the identity of any individuals who were in contact with, or were associates of Dzhokhar and Tamerlan;

j. Information, related to any organization, entity, or individual in any way affiliated with Dzhokhar and Tamerlan, that might have been involved in planning, encouraging, promoting the actions described herein.

(Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information, Ex. 5 at 5-6 (under seal).)

i. *Probable Cause*

The defendant concedes that this warrant provides more support as to probable cause than the April 19 and 23 affidavits, but he contends that the July 3 warrant was tainted because it was issued in reliance on information that was gathered from what he claims were unlawful searches of the Yahoo! email accounts and the Sony VAIO laptop. The conclusion herein that the two prior searches were not constitutionally infirm dooms this argument as to the Gmail searches. In

any event, this warrant is supported by probable cause for essentially the same reasons the other were. The affidavit supporting this warrant presents basically the same information as that contained in the April 19 warrant affidavit, which sufficiently established probable cause.

ii.     *Particularity and Search Procedure*

The defendant's arguments with regard to the particularity of the warrant and the search procedure used are the same as to all three warrants for electronically stored information. For the reasons set forth above, the defendant's arguments are meritless.

I.     Request for Evidentiary Hearing

"A criminal defendant has no absolute or presumptive right" to an evidentiary hearing. United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010) (quoting United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990)). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013).

With respect to the physical searches, the defendant requests an evidentiary hearing "to determine whether items were seized outside the scope of the warrants, the circumstances of the warrantless June 27 entry, and the role that the June 27 entry played in the agents' decision to seek a second search warrant in July for the dorm room and its contents." (Def.'s Mot. to Suppress at 21.)

The defendant has failed to make the necessary showing of a need for an evidentiary hearing. As explained above, the presence of the FBI agent with UMass personnel when they entered the room on June 27 entry did not require a warrant, and accordingly there was no violation of the defendant's Fourth Amendment rights. As to the request for testimony as to whether agents seized certain items outside the scope of the warrants, the defendant has not

alleged any specific facts in dispute. Instead, he points to the property listed in the warrant returns and suggests certain items appear from their nature to be outside the scope of the warrant. For example, the defendant suggests the agents wrongly seized a pizza box from the dorm room. There is no factual dispute whether they took a pizza box; it is listed on the return. As noted above, if and when the government offers the pizza box in evidence, it can be determined whether it should be admitted or excluded.

With respect to the digital searches, the defendant contends that "[w]here the extent of the forensic searches of [his] email accounts and laptop are unclear, but where it appears that an unguided and unrestricted general rummaging occurred, the Court should conduct an evidentiary hearing to determine whether there were Fourth Amendment violations in the execution of the searches." (Def.'s Mot. to Suppress Fruits of Searches: Electronically Stored Information at 29.) This is fishing. The defendant has failed to present any specific facts to support a showing that "general rummaging" occurred—particularly a rummaging inconsistent with Rule 41's two-step procedure. His suspicion is insufficient to require an evidentiary hearing.

## III.   Conclusion

For the reasons set forth above, the defendant's Motion to Suppress Fruits of Searches at Norfolk Street and University of Massachusetts (dkt. no. 297) and Motion to Suppress Fruits of Searches: Electronically Stored Information, Including Email Communications and Data Contained in the Sony VAIO Laptop Computer (dkt. no. 303) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge