UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | CRIMINAL NO. 13-10200-GAO |
| ) | Leave to file granted 11/4/14 |
| DZHOKHAR TSARNAEV   ) | |

### REPLY TO GOVERNMENT'S OPPOSITION
### TO MOTION TO COMPEL DISCOVERY

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits the following Reply to the government's Opposition ("Opp.") [DE 618] to his Motion to Compel Discovery [DE 602].

**Documents Purportedly Provided by the Russian Government**

The government states that "[n]o relevant substantive information was redacted from the documents — only letterhead information, references to intergovernmental communications, and exact date information." Opp. at 1-2. Missing from the government's opposition is any justification for such wholesale redaction. The government has conceded by its production that the substantive content is discoverable. The associated letterhead features, names, and dates are attributes that make a piece of paper into a "document"; these attributes of a writing carry weight with a jury, demonstrate authenticity, and also can provide important background information and investigative leads.

The content was and is discoverable. That information is contained in specific documents. Absent a showing of compelling need, particularly given the stringent

1

protective order in effect, unredacted copies of those actual documents should be produced.

**Pre-2013 Communications from the Russian Government**

The government argues that an "unidentified Russian analyst's opinion" about Tamerlan Tsarnaev prior to April 2013 is irrelevant since "underlying information" on which the opinion was based was provided to the U.S. government (and subsequently to the defense) after April 2013. Opp. at at 2-3. There are several problems with this argument. First, there is no way to be certain that the "underlying information" produced after April 2013 makes up the entirety of the basis for the pre-2013 warnings to the U.S. Second, the fact, date, and specific language of pre-2013 warnings about Tamerlan provide important evidence in establishing the trajectory over time of his radicalization, and permits comparison of that trajectory to Dzhokhar's own history. Finally, the government's suggestion that the information is irrelevant and of no use to the defense because it comes from an "unidentified Russian analyst" is a tautology; the defense seeks the information to investigate who the analyst is and, if appropriate, arrange for his or her testimony at trial. A copy of the actual pre-2013 communications therefore should be produced.

**Transcripts/Translations of Defendant's BOP Calls**

The government states that it will "produce any transcripts in its possession," Opp. at 3, and implicitly recognizes that it must continue to produce the underlying audio recordings as well. To date, the government has produced audio recordings of calls

2

through September 10, 2014 but transcripts/translations only through January 15, 2014.[1] The government either should commit to prompt production of both recordings and transcripts on a rolling basis or the Court should so order.

**Reports of Computer Forensic Examinations**

The government states that it "understands its legal obligations, has complied with them, and will continue to do so." Opp. at 3-4. This conclusory statement is not responsive. The only "report of examination" concerning a seized electronic device that the government has produced was the single undated report concerning the "ongoing" analysis of a Sony Vaio laptop, alleged to be the defendant's computer. Does the government actually take the position that it has no "reports of examination" concerning any other electronic devices from among the dozens seized in connection with this case? If that is really the claim — which strains credulity — then the government should say so. If, instead, the government is withholding analogous reports concerning myriad devices on some other basis, it should explain how that is compatible with its obligations under Rule 16(a)(1)(F).

**List of Digital Devices**

The government's response, that Mr. Tsarnaev effectively is seeking an early exhibit list, Opp. at 4, misapprehends the defendant's request. The underlying request flowed from a defense attempt to clarify information provided by the government. In a letter to the defense, the government named several additional devices for inclusion in

---

[1] Most recently, in its production of various materials on October 24, 2014 the government included four call transcripts. However, all four transcripts were re-productions of previously-provided transcripts of calls that took place prior to January 15.

3

"the list of digital devices among which we may introduce digital evidence." Never having received the underlying "list" the government was purporting to supplement, the defense requested it.

The government has produced a very large number of digital devices in discovery, each of which contains many thousands of files and other digital artifacts. To the extent the government has identified a sub-group of devices from which it actually plans to extract evidence for trial, the defense sought clarification in order to focus its own review and use resources efficiently. This is not a premature request for an exhibit list but rather a request for clarification/identification of the digital universe that the government has already identified from which its individual digital exhibits, to be identified by the relevant deadline, ultimately may be drawn.

**Purported Russian Government Communications Concerning Defense Team**

The government's response, Opp. at 4-5, recognizes that its decision to repeat or embellish an allegation about the defense team in a public pleading was recklessly made without regard to the truth or falsity of the allegation. The defense seeks to clarify that the government's response means that it will not cross-examine or otherwise seek to impeach any defense witness about this matter. Regardless, the Court should order disclosure of the underlying documents to the defense so that the defense can determine whether there are legitimate safety concerns in conducting interviews in Russia.

**OIG Report**

The government states that there is no reason to doubt that it has produced all discoverable information in the OIG report and therefore no basis to order *in camera*

4

review.  Opp. at 6.  To the contrary, as set forth in the letters appended to the defendant's motion, the OIG report references "activities and events" not included in the publicly available summary that apparently bear on the activities of older, dominant members of the defendant's family.  The government has not indicated on what basis it reached the self-serving conclusion that the information is not mitigating or discoverable and should at the very least submit the material to the Court *in camera* for independent judicial assessment.

**Waltham Murders**

The government states that "nothing has changed to warrant reconsideration of the Court's earlier ruling," that the Middlesex investigation "remains active and ongoing," that Tamerlan's "actual participation in the Waltham homicides" would not be relevant, and that "the government has no evidence that Tamerlan Tsarnaev actually participated in the Waltham murders."  Opp. at 6-8.

What has changed are (1) the passage of time in which the Middlesex investigation has proceeded, and (2) the rapid approach of the trial date.  The need for the government to withhold information based on the theoretical risk that its disclosure (subject to a stringent protective order) could jeopardize an investigation shrinks as time passes and the defense need for the information becomes more critical.  The Court should reassess the considerations surrounding the government's assertion of an investigative privilege.

The government is simply mistaken to think that actual participation of Tamerlan in the Waltham homicides is not relevant.  Part of the jury's assessment in a penalty

5

phase would be the relative culpability and contrasting personal attributes of those implicated in the charged crimes.  Evidence of Tamerlan's past participation in an unusually brutal triple homicide, in contrast to Dzhokhar's non-violent reputation and lack of a prior record of violence, is mitigating with respect to Dzhokhar's relative role.

The government's assertion that it "has no evidence" of Tamerlan's participation in the Waltham murders is puzzling given its earlier assertions, set forth in defendant's motion.  Presumably this means that it has no evidence other than Todashev's alleged confession.  Whatever it means, the statement begs the question of whether local law enforcement, which undeniably is part of the "prosecution team" for the Marathon investigation, has forensic or any other evidence of Tamerlan's participation in the murders that federal prosecutors don't physically possess.  In any event, evidence concerning the murders, in particular their singular brutality, nevertheless would be relevant when coupled with Todashev's supposed statement implicating Tamerlan.

**Zubeidat Tsarnaeva's Emails**

The government objects to producing the search warrant return for Zubeidat Tsarnaeva's emails because, apparently, it does not plan to introduce any of those emails or other evidence to which those e-mails may have led. Opp. at 8.  *See* Local Rule 116.1(C)(1)(B) ("[T]he government must produce . . . [the return and inventory of items seized from any search] that resulted in the seizure of evidence *or led to the discovery of*

*evidence* that the government intends to use in its case-in-chief.") (emphasis added).[2] Be that as it may, there also is an independent basis for the defense request: the government should produce this search warrant return because it is material to preparation of the defense, that is, material to understanding the defendant's family history and dynamics — among the very same reasons that the government noted in its recitation of probable cause underlying the search warrant application.

---

[2] Notably, this raises the prospect of hearing(s) to determine "taint" if any of the government's trial evidence or testimony appears that it may, in fact, have been obtained as a result of obtaining and reviewing those e-mails.

## Conclusion

Based on the foregoing, the defense requests that the Court order the government to produce materials responsive to the above-listed requests.

>Respectfully submitted,
>
>DZHOKHAR TSARNAEV
>by his attorneys
>
>*/s/*   William W. Fick
>
>Judy Clarke, Esq. (CA Bar # 76071)
>CLARKE & RICE, APC
>1010 Second Avenue, Suite 1800
>San Diego, CA 92101
>(619) 308-8484
>JUDYCLARKE@JCSRLAW.NET
>
>David I. Bruck, Esq.
>220 Sydney Lewis Hall
>Lexington, VA 24450
>(540) 460-8188
>BRUCKD@WLU.EDU
>
>Miriam Conrad, Esq. (BBO # 550223)
>Timothy Watkins, Esq. (BBO # 567992)
>William Fick, Esq. (BBO # 650562)
>FEDERAL PUBLIC DEFENDER OFFICE
>51 Sleeper Street, 5th Floor
>(617) 223-8061
>MIRIAM_CONRAD@FD.ORG
>TIMOTHY_WATKINS@FD.ORG
>WILLIAM_FICK@FD.ORG

## **Certificate of Service**

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 4, 2014.

                                      */s/*  William W. Fick