UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
                               )
        v.                     )          Crim. No. 13-10200-GAO
                               )
DZHOKHAR TSARNAEV              )

### DEFENDANT'S MOTION FOR EXTRA PEREMPTORY CHALLENGES

Defendant, Dzhokhar Tsarnaev, by and through counsel, moves for an order allowing him ten peremptory challenges in addition to the twenty challenges allocated to each side by Rule 24(b)(1) of the Federal Rules of Criminal Procedure.

The Court is already well aware of the unprecedented levels of pretrial publicity and notoriety surrounding this case.  The case is also unprecedented in the extent to which the offenses charged in the indictment have been broadly characterized as an attack on the entire Greater Boston community, and in the vast numbers of residents of the area from which the jury must be drawn who either

> (1) attended some part of the "iconic event" that was the target of the bombing, DE 167, *Notice of Intent to Seek the Death Penalty* at 6,
>
> (2) are closely related to people who attended, or
>
> (3) were directly affected by the "shelter-in-place" order and requests that preceded the defendant's arrest.

The Court has ruled that none of these circumstances warrant a presumption of prejudice sufficient to require changing venue without first attempting to seat a jury, DE 577, and has adhered to a trial schedule that will provide for a relatively short interval between indictment and trial.  *Id.,* and see DE 518, Ex. D (18-month pretrial preparation period in

this case, including a two-month continuance, is shorter than 100 out of the 120 federal capital cases to reach trial since January 1, 2004).

Distance (change of venue), time (continuance), and investigation of prejudicial law enforcement leaks are three of the tools available to courts to counteract the biasing effects of extreme local notoriety and intense pretrial publicity. So far, the Court has not used any of these tools. The defense now submits that it should deploy a fourth: the granting of additional defense peremptory challenges.

This remedy is particularly appropriate in a capital case due to an anomalous feature of Rule 24(b)(1) of the Federal Rules of Criminal Procedure; namely, that the Rule permits the government to erase a criminal defendant's 10-6 advantage in peremptory challenges by its own unilateral and unreviewable decision to seek the death penalty, and thereby equalize challenges at 20-20. Rule 24 provides, in pertinent part:

> **(b) Peremptory Challenges.** Each side is entitled to the number of peremptory challenges to prospective jurors specified below. The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly.
>
> > **(1) Capital Case.** Each side has 20 peremptory challenges when the government seeks the death penalty.
> >
> > **(2) Other Felony Case.** The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year.

It is arguable that the inherent complexity of jury selection in capital cases—in particular, the practice of culling  the jury of anyone whose death penalty views would

impair his or her ability to follow the applicable law—justifies greater numbers of peremptory challenges. *United States v. Chong,* 123 F.Supp.2d 559 (D. Hawaii 1999) (rejecting Equal Protection challenge to Rule 24(b)'s differing treatment of capital and non-capital defendants). But the issue here is not the absolute number of challenges, but the fact that Rule 24(b) creates an advantage for the defendant in all felony trials *except* capital cases. There is no rational explanation for the Rule's singling out of capital cases as the only felony cases in which the government has as many peremptory challenges as the defense. Indeed, the Rule would appear to create a perverse incentive for the government to seek the death penalty in precisely those cases where its proof is sufficiently weak that equalizing the number of challenges might increase the likelihood of conviction. In this respect, Rule 24(b) operates in the opposite direction as most other provisions of law that are specific to capital cases—affording *less* protection to capital defendants rather than more.

Against this backdrop, the government can claim no unfair prejudice from an order granting additional defense challenges. Had the government not sought the death penalty, the defendant would have enjoyed a 10-6 advantage in peremptory challenges. Maintaining this 5:3 ratio against a complement of 20 government challenges would require the court to award more than 13 additional peremptory challenges to the defense. Thus the defendant's request for 10 additional challenges would not even restore him to the ratio of challenges guaranteed to all felony defendants in the federal courts—except where the government seeks the death penalty.

- 3 -

While Rule 24(b)'s express reference to the granting of additional challenges extends only to multi-defendant cases, *United States v. Gullion*, 575 F.2d 26, 29 (1st Cir. 1978), few if any courts have treated the Rule's lack of explicit authorization to grant extra challenges in single-defendant cases as categorically barring such relief, and the issue is generally regarded as discretionary.  *See e.g., United States v. McCollom,* 1987 WL 15387 (N.D. Ill. 1987) ("This court does not doubt that it can refuse to grant additional challenges, *United States v. Gullion*, 575 F.2d 26, 29 (1st Cir. 1978), but it believes that it has inherent authority despite Rule 24 to increase that number if it concludes that to be a proper means of ensuring a fair trial, *see Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966)").  And the defendant submits that the Court should take into account, in exercising discretion, the anomalous benefit that Rule 24(b)(1) confers upon the government in a capital case.

The Supreme Court has implicitly approved of the granting of additional peremptory challenges to criminal defendants as a remedy to vindicate fair trial rights.  In *Skilling v. United States,* 561 U.S. 358 (2010), for example, a case concerned with whether the denial of a change of venue had violated the defendant's right to a fair trial, the Court repeatedly noted with evident approval that the trial court had "allotted the defendants jointly two extra peremptory challenges."  561 U.S. at 359, 373, 375 n. 7.[1]  And a federal trial court recently utilized this remedy in a capital case involving a single defendant.  In

---

[1]It should be noted in this connection that because *Skilling* was not a death penalty case, two extra challenges left the defendants with *double* the number of challenges allowed the prosecution in selecting the jury, exclusive of alternates.

*United States v. McCluskey*, No. 10-CR-2734, DE 1148 (D. N.M. August 8, 2013) Memorandum Opinion and Order attached as Exhibit A), the district court awarded eight extra peremptory challenges to a capital defendant after 65 jurors had already been qualified. The *McCluskey* court explained its action as follows:

> As the Court has explained, there has been significant pretrial publicity in this case, with a strong majority of the prospective jurors having at least some knowledge of the case. The Court takes judicial notice of the fact that, as far as it is aware, none of that publicity has been at the behest of the defendant or the defense team. In contrast, the United States Attorney for the District of New Mexico has conducted at least one press conference and has issued multiple press releases about this case in which he described facts and evidence prejudicial to McCluskey. As a result, various jurors have stated that, based on the pretrial publicity to which they had been exposed, they had formed the opinion that McCluskey was guilty of the crimes charged. In contrast, no juror has stated that the pretrial publicity had led him to opine that McCluskey was innocent of the charged crimes. While it is true that most of the jurors have stated that they can put aside any feelings about the case that have resulted in their exposure to pretrial publicity, the Court is left with the definite impression that the pretrial publicity engendered by the Government has to some degree affected the objectivity of the jury panel in favor of the Government. In order to ensure that McCluskey's right to a fair and impartial jury is protected, the Court finds it necessary to exercise its discretion to permit him to use eight additional peremptory challenges.

While the *McCluskey* case had received substantial media coverage, *see e.g.,*

http://www.cnn.com/2010/CRIME/07/31/arizona.prison.break/index.html *,* the trial took place three years after McCluskey's crime and more than 33 months after his indictment, DE 518 Exhibit C, Case # 81, and in any event the volume of news coverage amounted to only a small fraction of what has occurred here.  The prejudicial pretrial publicity cited by the *McCluskey* court*,* moreover, has an analogue in the persistent expressions of opin-

ion and leaks of non-public information from law enforcement sources that have plagued Mr. Tsarnaev's case from the beginning to the present.[2]   Finally, this case has the very unusual feature of having directly affected vast numbers of potential jurors in Massachusetts, due both to the salience of the Boston Marathon in the life of this community, and the impact of the manhunt and shelter-in-place orders that followed the bombing.   For all of these reasons, both *Skilling* and *McCluskey* support both the availability and the appropriateness of the relief sought by this motion.

## Conclusion

For the foregoing reasons, the defendant submits that the Court should allow him ten peremptory challenges  in addition to the twenty challenges authorized by Rule 24(b)(1).

Dated:  December 1, 2014                    Respectfully Submitted,

DZHOKHAR TSARNAEV
By his attorneys

*/s/      David I. Bruck*

Judy Clarke, Esq. (CA Bar# 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

---

[2]See DE 280 (Defendant's Motion for a Hearing and Appropriate Relief Concerning Leaks and Public Comments by Law Enforcement, May 2, 2014); DE 348 (Defendant's Renewed Motion for Hearing to Address Leaks by Law Enforcement, July 25, 2014), DE 616 (Defendant's Third Motion for Hearing to Address Leaks by Law Enforcement, October 24, 2014); DE 680 Defendant's Motion for Reconsideration of Order on Third Motion for Hearing to Address Leaks, November 26, 2014).

JUDYCLARKE@JCSRLAW.NET
David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 458-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 1, 2014.

/s/ David I. Bruck