UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S RESPONSE TO**
**GOVERNMENT'S PROPOSED JURY SELECTION PROCEDURES**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully responds to the Government's Proposed Jury Selection Procedures.  [DE 681.]

The Government proposes that the Court begin the jury selection process by propounding to panels of 50 jurors "general voir dire on the issues normal to any criminal case, as well as supplemental voir dire on the issue of death-penalty qualification."  Govt. Proposed Procedures at 2.  Under the government's proposal, the Court would then conduct individual sequestered voir dire of only those jurors "for whom follow-up questioning is needed."  *Id.* Although the government does not spell this out, presumably under its proposal any juror who fails to respond to the Court's questions to the 50-member group would be deemed qualified without any individualized inquiry.  The government does not say whether jurors whose prior responses on their *questionnaires* indicate that "follow-up questioning is needed" would still also be questioned en masse, nor does it explain why such group questioning would be of any value in the case of jurors whose questionnaire responses had already demonstrated the need for individualized inquiry.

1

This case has had an enormous impact on the greater Boston area, and has also occasioned an unprecedented level of pretrial publicity. It also involves divisive "hot-button" issues including immigration, Islamic extremism, and terrorism. The news media's focus and the public's concern over all of these issues have only increased during recent weeks, and their salience in this case is likely to trigger both conscious and unconscious prejudice against the defendant. Under these circumstances, few if any jurors are likely to answer the numerous questions on the supplemental jury questionnaire so as to necessitate no individual follow-up questioning. Thus, individual sequestered voir dire will be the norm rather than the exception, even if the government's proposal for initial group voir dire were adopted.

Given that the Court will almost certainly find it necessary to question each juror individually in any event, the defense submits that the Court should dispense with group questioning altogether, or else limit it to routine issues of jurors' statutory qualifications for service. Group questioning is not likely to fully expose possible bias stemming from jurors' having been personally affected by the Marathon bombing, or from pretrial publicity. Nor would such group questioning provide reliable information concerning jurors' death penalty views. On the contrary, such group questioning is likely to create a needless obstacle to candor during follow-up individual questioning, since jurors who failed to respond to group questioning may feel obliged to continue to deny the existence of bias during individual questioning, simply to avoid having to explain their failure to speak up sooner.

The government does not "conced[e]" that the Court should accord any weight to the practice and experience of the large majority of federal courts outside the district of Massachusetts to have conducted capital trials before this one, and at the same time disputes the defendant's evidence about what those practices are, while providing no evidence of its own. Govt. Proposed Procedures at 1, n. 1. The government says nothing about the fact that both federal courts to have conducted capital trials in *this* district since the passage of the Federal Death Penalty Act also relied on individual sequestered voir dire examination (and permitted attorney-conducted voir dire as well), rather than on group voir dire of the sort the government proposes here. The government fails to identify any aspect of this case that would justify *less* probing and thorough voir dire examination than was conducted in the *Gilbert* and *Sampson* cases, and we think it obvious that there is none.

The obstacles to empanelling an impartial jury in this case will be, to say the least, considerable. Of all capital cases, this is not the one to experiment with inferring impartiality from a juror's failure to speak up when questioned in a group of 50. Such a method is especially unlikely to ferret out biased jurors who are eager to serve in order to implement their own agendas — whether to convict, to impose a death sentence, or simply to be part of a famous criminal case. In a state that just elected as governor a candidate who publicly designated the defendant as the "living person [he] most despise[s]," Yvonne Abraham, "Charlie Baker Takes the Proust Questionnaire," BOSTON GLOBE Oct. 15, 2014, such concerns are not unfounded. *See also,* Keith Wagstaff, *5 books from jurors who cashed in on their court cases,* THE WEEK (July 15, 2013). The

3

Court needs no reminder of the potential effect of even a single juror's failure to disclose evidence relevant to his or her potential bias. *Sampson v. United States*, 724 F.3d 150 (1st Cir. 2013) (affirming grant of habeas relief necessitated by juror's materially inaccurate responses in capital case). While no method of ensuring juror impartiality is foolproof, the defendant submits that the Court should at least personally question and individually evaluate the impartiality of *every* juror who may be sworn in this unprecedented case.

The government also proposes that the Court should not permit any attorney-conducted voir dire questioning, but it offers no rationale for its position. The defense has already set forth its reasons why counsel should be permitted to question jurors directly, and so will not further address this aspect of the government's proposal here.

## Conclusion

For the foregoing reasons, and those contained in his *Memorandum of Law Respecting Voir Dire Examination Of Prospective Jurors On Death-Penalty Views* [DE 682 at 17-20], the defendant requests that the Court conduct individual sequestered voir dire examination with respect to potential bias, pretrial publicity, and death penalty views, and that it permit reasonable questioning of prospective jurors by counsel.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys

*/s/   David I. Bruck*

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450

...
...

(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 8, 2014.

*/s/ David I. Bruck*