UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED UNDER SEAL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR FOREIGN DEPOSITION**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits this reply to the government's Opposition ("Opp.") [DE 698] to his Motion for Foreign Deposition of Magomed Kartashov. [DE 669.]

### I. THIS COURT HAS AUTHORITY TO ORDER THE GOVERNMENT TO ASSIST IN OBTAINING ACCESS TO KARTASHOV.

The government begins with the assertion that the Court lacks authority to "order the government to arrange for the deposition of a foreign witness." Opp. at 1. This distorts the relief that the defendant is seeking in that it confuses the taking of a deposition for possible later use at trial with the provision of access to the witness. The defendant is asking the Court to *authorize* a foreign deposition under Rule 15. In addition, because *only* the prosecution has actual access to the witness via the Russian government (the 2013 FBI interview of Kartashov in Russia demonstrates such access is *actual*, not merely theoretical), the defense also requests an order that the prosecution take steps to obtain access to the witness again. The defense is then prepared to make

1

whatever necessary travel and other logistical arrangements may be necessary for an interpreter, a stenographer, and/or other means to preserve the testimony.

Where, as here, the prosecution alone has exclusive and demonstrated ability to obtain access to an important witness such as Kartashov, the Court has both the power and the obligation to order the government to assist in providing access to the defense. "The equal right of the prosecution and the defense in criminal proceedings to interview witnesses before trial is clearly recognized by the courts." *United States v. Arboleda*, 929 F.2d 858, 868 (1st Cir. 1991) (quoting *Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981), cert. denied, 456 U.S. 980 (1982)). Put another way, "witnesses belong neither to the defense nor to the prosecution and both must have equal access to witnesses before trial." *United States v. Savage*, 2013 WL 271800, *2 (E.D. Pa. Jan. 24, 2013) (quoting *United States v. Bryant*, 655 F. 3d 232, 238 (3d Cir. 2011) and citing *United States v. Medina*, 992 F.2d 573, 579 (6th Cir. 1993)) (internal quotation marks omitted).

These principles derive from the Fifth and Sixth Amendments to the Constitution. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). Accordingly, "at a minimum . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Washington v. Texas*, 388 U.S. 14, 19 (1967). This reasoning applies with special force in a death penalty prosecution. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 608 (holding that defendant cannot be sentenced to death if the jury is precluded from considering mitigating evidence pertaining to the defendant's role in the offense).

It follows in a variety of contexts that when the prosecution has exclusive access to a witness, courts can order the government to take steps to provide or assure defense access. For example, when a witness is in protective custody, courts have ordered the government provide access to the defense. *See, e.g., Savage*, 2013 WL 271800 at *1; *United States v. Walton*, 602 F. 2d 1176 (4th Cir. 1979) (holding that "it was error for the [defendant] to be deprived of access to the witness" in protective custody). Similarly, in *United States v. Moussaoui*, 382 F.3d 453, 476 (4th Cir. 2004), the Fourth Circuit upheld the district court's authority to order that the government produce enemy combatant witnesses held at Guantanamo Bay.

The government next asserts that it "cannot and ought not be compelled to engage with a foreign government on a criminal defendant's behalf." Opp. at 1. However, the cases the government cites do not stand for such a sweeping proposition. The first of the three cases in the government's string citation, *United Kingdom v. United States*, 238 F.3d 1312 (11th Cir. 2001), involved a request to obtain U.S. investigative materials to defend a criminal prosecution pending in the U.K and is therefore inapposite. The other two cases cited, *United States v. Marquez*, 2012 WL 349580 (S.D. Cal. Feb. 2, 2012) and

3

*United States v. Jefferson*, 594 F. Supp. 2d 655(E.D. Va. 2009)[1] both conclude that courts cannot force the U.S. government to obtain evidence from a foreign government under a Mutual Legal Assistance Treaty ("MLAT") on the basis that such treaties typically, by their language, do not give rise to an individual right on the part a private person to obtain evidence under the treaty. However, these cases, which in any event do not bind this Court, erroneously conflate the *basis* of the defendant's claimed right with the *mechanism* by which the government can give effect to that right. Put another way, the defendant's *right* to obtain evidence, with the government's assistance where necessary, inheres in the Constitution, not any treaty. The defendant does not, himself, claim any power or right under an MLAT treaty to seek assistance from Russia. But where such a treaty gives the government an exclusive tool to obtain access to a witness, the government can and should be obliged to employ the tool in the interests of justice.[2]

---

[1] In *Jefferson*, as an alternative remedy, the Court agreed to issue letters rogatory at the defendant's request to seek judicial assistance from Nigeria. *See* 594 F. Supp. 2d at 675. That mechanism is unavailable to the defense here because Russia has ignored letters rogatory from the United States since 2003. *See generally* <http://travel.state.gov/content/travel/english/legal-considerations/judicial/country/russia-federation.html>.

[2] While the government's opposition suggests that the 2013 FBI interview of Kartashov was obtained pursuant to a formal request under the MLAT with Russia, Opp. at 1-2, it is not entirely clear whether that is the case or whether some more informal or expedited channel was employed. Notably, the government claims that "the FBI made the request," Opp. at 2, but under the MLAT, the sole authority authorized to make formal MLAT requests is the Attorney General or his designee. *See* Treaty between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters, U.S.-Russia art. 3, June 17, 1999, T.I.A.S. 1304 (naming the Attorney General as the "Central Authority" empowered to make requests on behalf of the United States under the treaty).

4

The Fourth Circuit in *Moussaoui* expressly rejected the government's argument that a court order would be too burdensome to national security interests:

> In all cases of this type — cases falling into "what might loosely be called the area of constitutionally guaranteed access to evidence," *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988) (internal quotation marks omitted) — the Supreme Court has held that the defendant's right to a trial that comports with the Fifth and Sixth Amendments prevails over the governmental privilege.

*Moussaoui*, 382 F.3d at 474.

### II. THE DEFENSE MOTION SATISFIES RULE 15 REQUIREMENTS TO AUTHORIZE A FOREIGN DEPOSITION.

The government's discursive objections to the defense request, citing cases under Rule 15, Opp. at 3-6, are not persuasive. The defense has made a sufficient showing that fulfills all prerequisites of the Rule.[3]

As initial matter, it is important to keep in mind that the "primary reasons for the law's normal antipathy toward depositions in criminal cases are the factfinder's inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant's Sixth Amendment confrontation rights." *United States v. Drogoul*, 1 F.3d 1546 (11th Cir. 1993). Here, of course, such considerations are inapplicable because it is the defense that seeks to obtain the deposition testimony; the government has no constitutional right of confrontation.[4] In addition, the criteria for the mere *taking* of a deposition, the only thing at issue now, are less stringent than those that govern whether

---

[3] As the government itself concedes, "Courts may accept the assertions of counsel on the facts" underlying a Rule 15 motion. Opp. at 3 (quoting *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980); *see also Jefferson*, 594 F. Supp. 2d at 665 ("representations made by counsel in open court have been held sufficient").

5

the testimony may be *admitted* at trial. *See id.* at 1554-55. "Exceptional circumstances" that warrant a deposition exist "when the prospective deponent is unavailable for trial and the absence of his or her testimony would result in an injustice." *Id.* at 1552.

Each of the government's objections is addressed in turn.

### A. Kartashov is Unavailable But is Willing to Testify.

It is difficult to discern the basis for the government's claim that the defense has made an insufficient showing of Kartashov's unavailability to testify in person a trial. Opp. at 3. He is serving a term of incarceration in Russia. He is not expected to be released before the conclusion of the trial as currently scheduled. The government does not dispute either of these things. "A potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial." *Drogoul*, 1 F.3d at 1553. Nothing further is needed.

Separately, the government complains that the defense "has not established that Kartashov would agree to be deposed," Opp. at 2, even though this is not a requirement of Rule 15.[5] In the circumstances here, there is no reason to believe that Kartashov would *not* agree to be deposed. *See Moussaoui*, 382 F.3d at 472 ("While it is possible that the witness would be reluctant to testify in a deposition setting, there is no particular reason to assume that they would refuse."). He answered the FBI's questions in a 2013

---

[4] In any event, the expectation is that both parties would have the opportunity to participate in the deposition, and the demeanor of the witness could be captured by video recording.

[5] Indeed, depositions are most commonly sought when a witness refuses to testify voluntarily. Here, in contrast, the only reason a deposition is being sought is that Kartashov is in custody and cannot travel to the U.S. to testify at trial.

interview, apparently free of any coercion. In addition, one evening while undersigned counsel was visiting the Kartashov family home outside the city of Kizlyar in Dagestan, Russia, Magomed Kartashov made a phone call to his mother from his place of detention. Kartshov's mother passed the phone to undersigned counsel for a brief conversation. While undersigned counsel refrained from conducting a detailed interview given time constraints and the likelihood that the call was monitored, Kartashov expressed willingness to answer counsel's questions at an appropriate time and place in the future.[6]

### B. Kartashov's Testimony is Material.

The intensity and timing of Tamerlan's radicalization in contrast to Dzhokhar is a central part of the defense mitigation case at trial. Kartashov is a uniquely valuable witness on this issue because Tamerlan viewed him as a learned Muslim peer and appears to have confided in him more fully than in anyone else. As the government well knows, and contrary to its insinuations, Opp. at 2, no other witness or evidence — not the defendant's mother nor any computer materials or recorded conversations — can come close to conveying this critical information with the same power as live testimony by Kartashov himself.[7]

---

[6] It is precisely Kartashov's willingness to cooperate that distinguishes this case from *United States v. Oudovenko*, 2001 WL 253027 (E.D.N.Y. 2001), cited by the government, Opp. at 3, where the concern about limitations on questioning flowed from the procedures that would be applicable in Russia in the case of a *recalcitrant* witness.

[7] The government mentions recorded conversations between Tamerlan and Kartashov extracted from Tamerlan's computer. Opp. at 2. However, unless the government is prepared to stipulate, Kartashov may be the only witness who can identify the voices and authenticate the recording since Tamerlan is dead.

The FBI 302s and other accounts of written statements by Kartashov are no substitute for live testimony. As noted in *Moussaoui*:

> Even if Moussaoui is permitted to admit substitutions derived from the [Redacted] summaries, those substitutions cannot be considered a functional equivalent of live (or deposition) testimony, nor are they adequate or sufficient to substitute for the testimony. *Cf. Old Chief v. United States*, 519 U.S. 172, 187-89 (1997) (recognizing that stipulation "may be no match for the robust evidence that would be used to prove" the stipulated facts). Because the summaries are not responses to the questions that Moussaoui would ask if given the opportunity to depose the witnesses, and because the jury will not be able to see the witnesses and judge their credibility, use of the summaries will necessarily place severe limits on the evidence Moussaoui can present in his defense, particularly during the penalty phase of a capital proceeding.

382 F.3d at 486 (Gregory, J. dissenting).

Finally, the "materiality" bar is lower where, as here, the defense "has not had — and will not receive — direct access to [the] witnesses." *Moussaoui*, 382 F.3d at 472.

### C. The Defense Request is Timely.

The government's complaint that the deposition request is untimely lacks merit. Opp. at 4, 5. Nearly a month remains before the start of jury selection and perhaps as many as 3-4 months remain before the possible commencement of a penalty phase at which the defense would seek to introduce Kartashov's testimony. This is ample time for one attorney from each trial team to make a brief trip to Russia for a deposition.

The government's complaint also rings hollow in light of its own unexplained tardiness in producing the Kartashov 302 and the plainly exculpatory (mitigating) information that it contains. The 302 was created on June 14, 2013. Automatic discovery of exculpatory evidence ordinarily would be due within 28 days of arraignment

in July 2013 but was extend by defense consent to a date in September 2013. Yet inexplicably, the Kartashov 302 was not produced until February 2014. It was only then that the defense became aware of the nature and extent of Kartashov's knowledge and possible testimony.

Since that time, the defense has diligently pursued its foreign investigation in the face of many challenges, of which the Court is aware, on a trial schedule that is much more aggressive than the schedule in typical capital cases, most of which lack the complex foreign issues present here. Among other things, the defense made efforts to obtain access to Kartashov to conduct a basic interview, a normal first step prior to making a decision about whether to call a witness at trial or seek his deposition. When those efforts were exhausted without success, and with the trial date approaching, the defense filed the instant motion.

Even if the Court were to conclude that the defense should have made this request earlier,

> it is error rigidly to adhere to a trial schedule regardless of the all-important factors of unavailability and materiality. The ultimate inquiry is whether exceptional circumstances exist and whether it is in the interest of justice to allow the depositions to be taken. Fed. R. Crim. P. 15(a). When a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony. Absent a serious lack of due diligence by the moving party, therefore, precluding the taking of depositions under those circumstances is likely to frustrate, not expedite, the administration of criminal justice.

> We hold that the district court erred to the extent that it denied the request for depositions solely on the ground that taking the depositions would delay the trial.

*Drogoul*, 1 F.3d at 1556. The defense has been sufficiently diligent here.

### D. Resource and Security Objections are Exaggerated.

The government's purported concerns cost and safety are unfounded. Opp. at 5. The proposed deposition would represent but a tiny drop in the bucket of resources that the parties have invested and will continue to invest in this case. The defense is not suggesting that the deposition should take place in a Russian prison. Rather, as before with the FBI, Russian authorities would presumably bring Kartashov to a secure office-type location. The government has failed even to explain, much less prove, why this would be dangerous. Undersigned counsel has traveled to Russia with some regularity for decades, and to the Caucasus for the last 18 months, always without incident.

### Conclusion

For the foregoing reasons, as well as those set forth in the original motion, the Court should authorize the foreign deposition of Kartashov and order the government to assist in obtaining access to him.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

*/s/ William Fick (fo)*

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that I have caused a true copy of this document to be served upon the government by e-mail PDF this 8th Day of December, 2014.

/s/ William Fick (fa)