UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 13-10200-GAO |
| | ) | **Leave to File Granted 12/16/14** |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
RESPECTING VOIR DIRE EXAMINATION**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files this

Reply to the Government's Response to his Memorandum of Law Respecting Voir Dire

Examination of Prospective Jurors.  [DE 737].

The government spends much of its response knocking down arguments that the

defendant has not made, such as that a juror must be "categorically opposed" to the death

penalty (rather than "substantially impaired") before excusal is permissible, Govt.

Response at 2, or that the federal constitutional limitations that the Court must observe in

excusing jurors due to opposition to the death penalty vary according to state law or local

attitudes.  Govt. Response at 3-4.  But the government does eventually engage the

primary area of disagreement between the parties, which is whether a juror must be able

to fairly consider both life imprisonment and death as punishments in *this* case, or only in

some *other* kind of murder case.

The government seems to argue for the latter view when discussing jurors who

*favor* the death penalty. Govt. Reply at 7-11.  But when the shoe is on the other foot, the

government implicitly concedes the point.  This occurs when it cites authority for the

proposition that jurors may be properly excluded for cause if they indicate that they would never impose the death penalty for the particular type of murder charged in the case to be tried — even though such jurors can (and do) truthfully state that they could vote for either life or death depending on the evidence presented.  Govt. Response at 2; *United States v. Moore,* 149 F.3d 773, 780 (8th Cir. 1998) (holding, *inter alia*, that a juror was properly disqualified in a murder-for-hire case because she would not impose the death penalty "on somebody who didn't pull the trigger"); *Riles v. McCotter*, 799 F.2d 947 (5th Cir. 1986) (holding that juror was properly excluded in robbery-murder case because she stated that she could not impose the death penalty for a robbery-murder, but would require "brutal 'butcher[y]' of a victim").  The government could have cited many more cases for this proposition.  *E.g. United States v. Flores,* 63 F.3d 1342, 1356 (5th Cir. 1995) (juror properly excused in drug-related murder prosecution because he would not impose death where the victim was a co-conspirator in a drug-trafficking case); *State v. Garcia,* 224 Ariz. 1, 8-9, 226 P.3d 370, 378 (2010) ("[g]iven the nature of this case," state was properly allowed to ask whether prospective jurors could consider imposing death sentence for non-triggerman).  But having made this point, the government cannot avoid its corollary under *Morgan v. Illinois*, 504 U.S. 719 (1992):  if a juror's predetermination that he or she could *never* impose the death penalty in the very type of case to be tried is a permissible grounds for excusal, so too, is a juror's corresponding predetermination that he or she would *always* impose the death penalty once some basic element of the particular death-eligible crime was proven.

Without acknowledging the inconsistency in its position, the government derides the type of voir dire necessary to uncover disqualifying bias under *Morgan* as requiring jurors to be questioned about "a laundry list of potential crime elements and aggravating factors," Govt. Response at 7, and mischaracterizes as a "stake-out" or "precommitment" any juror's assurance on voir dire that he or she would consider mitigating factors, or would consider a life sentence as well as the death penalty in the type of case that is about to be tried. *Id.* at 8. But simply requiring assurances from jurors that they could and would remain open to considering both sentences authorized by law, even if the government proved the capital crimes and statutory elements of death-eligibility alleged in the indictment "sounds like" (as the government acknowledges on page 8), "the opposite for asking for a precommitment," *id.* Indeed it does.

The government concludes by deprecating the defendant's position as a request to "effectively ask jurors to predetermine the weight they would give particular facts or evidence at sentencing, or [to] ask them how they would vote when faced with certain facts or evidence." But as Judge Bennett pointed out in his lucid exploration of this subject in *United States v. Johnson,* 366 F.Supp.2d 822, 845 (N.D. Iowa 2005)

> it is a misconception to assume that any 'case-specific' question is necessarily a 'stake-out' question. . . . For example, a question about whether . . . a prospective juror could fairly consider either a death or life sentence, notwithstanding proof of certain facts, commits a juror to no other position than fair consideration of the appropriate penalty in light of all of the facts and the court's instructions. *Cf. Morgan,* 504 U.S. at 729,  (''A juror who will automatically vote for the death penalty in every case *will fail in good faith to consider the evidence* of aggravating and mitigating circumstances as the instructions require him to do.'') (emphasis added).

Stripped of rhetoric and misleading terminology, the issue is actually quite simple. The government has charged the defendant with use of a weapon of mass destruction resulting in death, and has alleged (for example) that he is death-eligible because he killed a child.  Having done so, does the government actually contend that *Morgan* would allow the defendant to be sentenced by jurors who would *automatically* impose the death penalty upon conviction of that aggravated crime, regardless of any mitigating factors that might be adduced at trial?

The government stops short of making such an unsupportable claim.  It suggests instead only that the Court should not screen for such bias by propounding or permitting voir dire questioning that is specifically tailored to uncover it.  But as the Georgia Supreme Court recently held, in reversing a death sentence in a child-murder case due to the trial court's refusal to allow defense counsel to ask whether prospective jurors "would automatically vote for a death sentence in any case in which two murder victims were young children, regardless of any other facts or legal instructions," only focused questioning will suffice to reveal such a commonly-held disqualifying bias.  *Ellington v. State,* 292 Ga. 109, 121, 735 S.E.2d 736, 750 (2012).  *Ellington's* discussion of this point is worth quoting:

> *Morgan* recognized the reality that there are some prejudices that will not
> be adequately exposed with the basic impartiality questions, by simply
> asking jurors "generally whether [they] could be fair and impartial."
> *Morgan*, 504 U.S. at 723. To the extent the prospective jurors know what
> the case is about (for example, because the indictment has been read to
> them), they may be able to answer such a question with particular key facts

in mind. But to the extent they are not focused on an issue—like the sentencing options in a death penalty case—they may honestly answer a general impartiality question when they would answer differently if asked a more focused question. See id. at 735 ("As to general questions of fairness and impartiality, such jurors could in all truth and candor respond affirmatively, personally confident that such dogmatic views [about the death penalty] are fair and impartial, while leaving the specific concern unprobed.").

In this case, for example, asked after hearing the indictment read if they could be fair and impartial, prospective jurors might have honestly answered yes; and they might honestly have answered no when asked, per *Morgan*, if they would automatically impose the death sentence in any murder case. But if they were advised that the case involved the murder of two young children, at least some of the prospective jurors might have changed their answers.

292 Ga at 129-130, 735 S.E.2d at 756.

How best to frame voir dire questions that will satisfy *Morgan's* constitutional requirement will likely become clearer after the jurors' questionnaire responses are reviewed, and will vary from one juror to the next. *See Ellington,* 292 Ga at 137, 735 S.E.2d at 760 (listing examples of proper case-specific questions from *United States v. Johnson,* 366 F.Supp.2d at 849). As a preliminary step, the defendant submits, the Court should at least include in the juror questionnaire the three simple screening questions that the defense has proposed to identify those jurors who are especially likely to believe that the death penalty should be automatic for terrorism-murders, or for murderers of children or police officers. [DE 715, at 2]. As for the precise contours of follow-up inquiry, it is enough for now to recognize

a) that due process will require 12 jurors who remain willing to consider both

    punishments authorized by law even if the government proves the crimes and

    statutory aggravating factors alleged in the indictment, and

b) that seating such a jury will require appropriate voir dire questioning framed in

    terms of the actual charges that the government has levelled in this case.


Dated:  December 16, 2014                Respectfully Submitted,

                                        DZHOKHAR TSARNAEV
                                        By his attorneys

                                        */s/      David I. Bruck*

                                        Judy Clarke, Esq. (CA Bar# 76071)
                                        CLARKE & RICE, APC
                                        1010 Second Avenue, Suite 1800
                                        San Diego, CA 92101
                                        (619) 308-8484
                                        JUDYCLARKE@JCSRLAW.NET

                                        David I. Bruck, Esq. (SC Bar # 967)
                                        220 Sydney Lewis Hall
                                        Lexington, VA 24450
                                        (540) 458-8188
                                        BRUCKD@WLU.EDU

                                        Miriam Conrad, Esq. (BBO # 550223)
                                        Timothy Watkins, Esq. (BBO # 567992)
                                        William Fick, Esq. (BBO # 650562)
                                        FEDERAL PUBLIC DEFENDER OFFICE
                                        51 Sleeper Street, 5th Floor

                                        (617) 223-8061
                                        MIRIAM_CONRAD@FD.ORG
                                        TIMOTHY_WATKINS@FD.ORG

WILLIAM_FICK@FD.ORG

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 16, 2014.

*/s/ David I. Bruck*