UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | Leave to file granted 12/18/14 |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR CHANGE OF VENUE

The United States of America, by and through its undersigned counsel, respectfully opposes defendant Dzhokhar Tsarnaev's second motion for a change of venue. As grounds for this opposition, the government states the following.

Although Tsarnaev claims that his second motion to change venue is based on "[c]ontinuing extensive pretrial publicity — including unabated law enforcement 'leaks,'" [Deft. Mot. at 1], he cites very little evidence of that. Nor can one believe that Tsarnaev actually expects the Court to reverse itself and move this trial to another state just a week or two before it starts. Tsarnaev's motion is instead a transparent effort to circumvent the Court's earlier rulings striking improper and untimely additions to the record in support of his first motion to change venue. The government has detailed the history of that effort in its motion to Strike Exhibits To Tsarnaev's Second Motion For Change of Venue. [Dkt. 760]. The Court should grant that motion and deny this one for the same reasons it denied Tsarnaev's first motion for change of venue.

Tsarnaev once again relies on Professor Edward Bronson's polling data without addressing any of the deficiencies the Court found in those data. In denying Tsarnaev's first motion to change venue, the Court cited the poll's low response rate and unrepresentative sample. See Opinion and Order dated 09/24/14 (hereinafter "Order") at 4-5 ("Regarding the poll, the response

rate was very low (3%), and that small sample is not representative of the demographic distribution of people in the Eastern Division."). Tsarnaev does not address these issues at all, much less explain why the Court should reject its own analysis. The Court also pointed out that "almost all individuals who answered the poll questions were familiar with the bombing and the majority of them answered that they believed the defendant is 'probably' or 'definitely' guilty in all four jurisdictions surveyed." Id. (emphasis in original). Once again, Tsarnaev fails to address this key finding in its own poll.

Tsarnaev's survey of post-July 2014 news articles – again selected on the basis of overbroad search terms -- shows exactly what the first survey showed: most of the articles have little or nothing to do with this case, and the ones that do are largely factual and objective in nature. As was the case with the news articles cited in Tsarnaev's first motion, these additional articles "do not persuasively show that the media coverage has contained blatantly prejudicial information that prospective jurors could not reasonably be expected to cabin or ignore." Order at 4.

Tsarnaev again relies heavily on the "story model" and other social scientific theories of juror behavior, even though the courts have consistently rejected them, as the government documented in its surreply to Tsarnaev's first motion for change of venue. The "story model" essentially holds that jurors exposed to pretrial publicity become hardened in their views over time and thus are unable to view the evidence fairly and impartially. But the Supreme Court has found that the opposite is true. See, e.g., Hayes v. Ayers, 632 F.3d 500, 509 (9th Cir. 2011) ("The Supreme Court has repeatedly recognized that the passage of significant time between adverse press coverage and a defendant's trial can have a profound effect on the community and, more important, on the jury, in softening or effacing opinion.") (internal quotation marks and citations omitted); People v. Prince, 40 Cal.4th 1179, 1214 (Cal. 2007) ("The passage of time ordinarily

blunts the prejudicial impact of widespread publicity."). Tsarnaev simply ignores the adverse case law – further evidence that the true purpose of his perfunctory second motion is to add documents to the record that the Court has already twice ordered struck.

Tsarnaev also relies again on a flawed comparison of this case to <u>United States v. Timothy McVeigh</u>, 918 F.Supp. 1467 (W.D.Okla.1996), claiming that this trial, like that one, should be moved to a different state because the crime has been characterized as an attack on an entire community rather than just on the individual victims. But as the government pointed out in its opposition and surreply to Tsarnaev's first motion, the district court in <u>McVeigh</u> did not hold that it was necessary to change the venue of that trial; the parties in that case *agreed* to a change of venue, in part because the local courthouse was damaged, and the only question was where to move it. Although the <u>McVeigh</u> district court cited the harm to the community as one reason for moving the trial to a different state (as opposed to another part of the same state), that was not the only or even the dispositive reason for its decision; and, in any event, <u>McVeigh</u> is not law in the First Circuit, and in the nearly 20 years since it was decided it has never been cited by another court to justify a change of venue.

Finally, Tsarnaev attacks the efficacy of voir dire itself, completely ignoring this Court's previous observation that "recent experience with high profile criminal cases in this District suggests a fair and impartial jury can be empaneled." Order at 5. One of those cases -- <u>United States v. Bulger</u>, Cr. No. 99-10371-DJC (Aug. 12, 2013) – was among the most highly-publicized ever in the Commonwealth. Two others -- <u>United States v. Tazhayakov</u>, Cr. No. 13-10238-DPW-2 and <u>United States v. Tazhayakov</u>, Cr. No. 13-10238-DPW-2 – involved defendants accused of obstructing justice or making false statements in the Marathon bombing investigation itself. All three resulted in split verdicts, indicating that the jurors were not blinded

3

by the "story model" but rather were able to view the evidence at trial fairly and impartially. As legal authority for the proposition that jurors cannot be fair and impartial in high-profile cases, Tsarnaev cites only United States v. Delaney, 199 F.2d 107 (1st Cir. 1952) -- a 60 year-old decision in which the First Circuit held only that the lower court erred by failing to grant a continuance in a case involving "massive, nation-wide publicity." Although the First Circuit there called into question jurors' ability to follow instructions, it has never since cited the case for that proposition (or any other), and it has on countless occasions expressed total confidence in jurors' ability to follow instructions. See, e.g., United States v. Acosta-Colon, 741 F.3d 179, 202 n.13 (1st Cir. 2013) ("We presume that juries follow instructions."). Tsarnaev's inability to muster virtually authority for the proposition that juries cannot be trusted is evidence of the truth of the opposite proposition, and once more indicates that his motion is aimed more at improperly supplementing the record than actually obtaining a change of venue.[1]

---

[1] To the extent Tsarnaev's motion relies on allegations that the government has created adverse pretrial publicity through "leaks" of non-public information, the government relies on its previously-filed oppositions to Tsarnaev's motions for hearings to address those alleged "leaks." As shown in those motions, with only one exception, there is no evidence – let alone proof – that any law enforcement officer actually associated with this case has "leaked" any non-public information to the press.

4

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's renewed motion for a hearing to address law enforcement "leaks."

    Respectfully submitted,

    CARMEN M. ORTIZ
    UNITED STATES ATTORNEY

By:   /s/ William D. Weinreb
    WILLIAM D. WEINREB
    ALOKE S. CHAKRAVARTY
    NADINE PELLEGRINI
    STEVEN D. MELLIN
    Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

    */s/ William D. Weinreb*
    WILLIAM D. WEINREB