```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


                              )
UNITED STATES OF AMERICA,     )
                              )
     Plaintiff,               )
                              )  Criminal Action
v.                            )  No. 13-10200-GAO
                              )
DZHOKHAR A. TSARNAEV, also    )
known as Jahar Tsarni,        )
                              )
     Defendant.               )
                              )


     BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
            UNITED STATES DISTRICT JUDGE
```

**FINAL PRETRIAL CONFERENCE**

```
  John J. Moakley United States Courthouse
            Courtroom No. 9
           One Courthouse Way
      Boston, Massachusetts  02210
       Thursday, December 18, 2014
               10 a.m.



       Marcia G. Patrisso, RMR, CRR
          Official Court Reporter
      John J. Moakley U.S. Courthouse
     One Courthouse Way, Room 3510
       Boston, Massachusetts  02210
              (617) 737-8728

  Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:

 2        OFFICE OF THE UNITED STATES ATTORNEY
          By: William D. Weinreb, Aloke Chakravarty and
 3            Nadine Pellegrini, Assistant U.S. Attorneys
          John Joseph Moakley Federal Courthouse
 4        Suite 9200
          Boston, Massachusetts  02210
 5        - and -
          UNITED STATES DEPARTMENT OF JUSTICE
 6        By: Steven D. Mellin, Assistant U.S. Attorney
          Capital Case Section
 7        1331 F Street, N.W.
          Washington, D.C.  20530
 8        On Behalf of the Government

 9        FEDERAL PUBLIC DEFENDER OFFICE
          By: Miriam Conrad, Federal Public Defender
10        51 Sleeper Street
          Fifth Floor
11        Boston, Massachusetts  02210
          - and -
12        CLARKE & RICE, APC
          By: Judy Clarke, Esq.
13        1010 Second Avenue
          Suite 1800
14        San Diego, California  92101
          - and -
15        LAW OFFICE OF DAVID I. BRUCK
          By: David I. Bruck, Esq.
16        220 Sydney Lewis Hall
          Lexington, Virginia  24450
17        On Behalf of the Defendant

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK: All rise.

(The Court enters the courtroom at 10:00 a.m.)

THE CLERK: The United States District Court for the District of Massachusetts. Court is in session. Be seated.

For a final pretrial conference in the case of *United States of America v. Dzhokhar Tsarnaev*, 13-10200. Would counsel identify yourselves for the record.

MR. WEINREB: Good morning, your Honor. William Weinreb for the United States.

MS. PELLEGRINI: Good morning, your Honor. Nadine Pellegrini for the United States.

MR. CHAKRAVARTY: Aloke Chakravarty for the United States, your Honor.

MR. MELLIN: Good morning, your Honor. Steve Mellin for the United States.

THE COURT: Good morning.

MR. BRUCK: Good morning, your Honor. David Bruck, Judy Clarke, Miriam Conrad for Dzhokhar Tsarnaev, who is present this morning.

THE COURT: Yes. Good morning. Thank you.

As a preliminary matter, let me just thank the legal teams for their hard work. I know you have both been working very diligently on these matters. There are a lot of issues. And most of the deadlines are being met, with few exceptions,

```
 1   but I fully understand the effort that both sides are putting
 2   into this and I appreciate it.  As I think we've seen from the
 3   past, we have a very high quality on both sides of the case.
 4           I do -- because this is Mr. Tsarnaev's first
 5   appearance in court since his arraignment, I do want to inquire
 6   of him whether he's been kept apprised of the proceedings.  So
 7   I just have a couple of questions for Mr. Tsarnaev, if he would
 8   stand, please.
 9           (The defendant complies.)
10           THE COURT:  So, Mr. Tsarnaev, as you probably know, a
11   defendant in a criminal case such as this has a right to a
12   public trial, among other things, and that includes the right
13   to be present at any meaningful court proceeding related to the
14   trial.  As I've just noted, since the arraignment you have not
15   been present, although I've been advised by your lawyers that
16   that's been at your election based on their advice.  And I want
17   to confirm whether that's the case.
18           Have you elected not to be present at the prior status
19   conferences that we've had?
20           THE DEFENDANT:  Yes, sir.
21           THE COURT:  Have your lawyers kept you -- have they
22   regularly communicated with you about events in the case so
23   that you feel you're been kept up to date as to what is
24   proceeding in the case?
25           THE DEFENDANT:  Yes, sir.
```

1           THE COURT:  And are you satisfied that in representing
2    you, the lawyers have been acting in your best interest?
3           THE DEFENDANT:  Very much.
4           THE COURT:  Do you have any concerns about your
5    representation that you would like to address with me
6    privately?
7           THE DEFENDANT:  No.
8           THE COURT:  All right.  Thank you.
9           MR. BRUCK:  If I may, your Honor, in connection with
10   the question of Mr. Tsarnaev's presence, I think the record
11   should reflect that this is the first time that there has been
12   any request for him to be present.  He obviously would have
13   attended any pretrial hearing at which his presence was wished
14   for.  The government hadn't asked for it, of course the Court
15   had not ordered it, and I think the record should also reflect
16   that it is routine for the defendant to attend the final
17   pretrial conference, which this is, and it is also routine for
18   a defendant not to attend status conferences prior to that time
19   at which there is no evidence being presented, which is the
20   only kind of conference we've had in this case.
21          THE COURT:  Fine.  Both points are fairly taken.
22          MR. BRUCK:  Thank you, your Honor.
23          THE COURT:  Now, as the parties know, there are a
24   number of motions that are pending.  We'll address some of them
25   but not all of them.

1           Let me start with Number 680, which is the defendant's
2  motion for reconsideration concerning an order regarding leaks.
3  I continue to be concerned about disclosures in the press that
4  could possibly be as a result of information being disclosed
5  improperly by law enforcement sources.  The government has
6  filed a reply to this latest motion, which on its face
7  indicates that we've made the inquiry that can be made without
8  greater disruption.
9           I note that in the *Matanov* case, Judge Young has
10 scheduled a hearing for tomorrow afternoon as to the same
11 matter, and since the matter relates principally to his
12 defendant, although it implicates this case as well, I will not
13 take any action until Judge Young has had a chance to address
14 the matter in his case.
15          I will say that the matter that concerns me is the
16 possibility of leaks from law enforcement or investigative
17 personnel.  The substance of the matter reported in the Boston
18 magazine I think is, to a large extent, in the public domain
19 otherwise, and I make that conclusion having reviewed, at my
20 request, the FBI 302s of Mr. Matanov.  Anyway, I'll just leave
21 it at that for now.
22          The motion to reconsider the order denying the
23 defendant's motion to produce grand jury instructions, the
24 motion to reconsider is denied.  The reason advanced is
25 insufficient, in my view, to warrant a reconsideration.

1           The government had moved to exclude testimony of a
2  witness for the defense, Janet Vogelsang, on the grounds of
3  inadequate disclosure, and since that time there has been a
4  further disclosure.
5           I guess my question for the government is:  Do you
6  press the motion?
7           MR. WEINREB:  Your Honor, our motion was styled a
8  motion to exclude or to compel and --
9           THE COURT:  Right.
10          MR. WEINREB:  -- we understand the desire of the
11 defense to present testimony about the defendant's life story,
12 and our ultimate goal here is not to prevent them from doing
13 that during the penalty phase, if there is one.  We simply want
14 to be in a position, the position that we're entitled to be in
15 under various laws cited in our response, to adequately
16 challenge her testimony so that the jury has an opportunity to
17 evaluate its reliability.
18          We know from what the defense has said in public
19 filings, in filings under seal and in letters to us that -- and
20 from looking at what Ms. Vogelsang has done in previous cases,
21 that she will be channeling a huge amount of hearsay
22 information at the sentencing hearing.  In other words, she
23 will have read reports of interviews with numerous people, she
24 will have interviewed people or will have been present at
25 interviews that had been done by the defense, and she will

1   be -- basically all those people will be testifying through her
2   mouth at court -- in court.
3           And at this point we have no idea who any of those
4   people are or what they are going to say through her.  We have
5   some information about the general contours of what she's going
6   to say, but what we don't know is whether the people whose
7   testimony she will be channeling, the facts of the defendant's
8   life and his parents and grandparents and uncles and aunts and
9   siblings, which is apparently what she intends to talk about,
10  we have no idea whether the facts that are going to be coming
11  through her are based on the firsthand observations of those
12  people who had a basis to -- had the opportunity to reliably
13  observe them and are without bias in relating them to
14  Ms. Vogelsang, or whether they're just rumor, family lore, or
15  they're being told by people who have a very strong bias.
16          And so we have no way of bringing out any of that in
17  front of the jury because we're not going to find out who the
18  people are who she relied on until she testifies, and maybe not
19  even then if she doesn't say who they are.  And that is what we
20  believe is unfair in this case, and not in the -- it's not fair
21  to us and it's not fair to the jury who will presumably be
22  asked to put a great deal of weight on what she says and should
23  have the opportunity to evaluate it.
24          So our quarrel right now with the adequacy of the
25  disclosure is that we don't know -- we don't have what we would

1  normally think of as expert discovery from Ms. Vogelsang.  The
2  defense has not identified -- has not given us the interview
3  reports that she has relied on, not even the names of the
4  people who she interviewed, particularly the interviews we've
5  never seen, the ones that were done by the defense on their
6  own.  And we have not been pointed to the particular records
7  that she's relying on, although we have somewhat less concern
8  with the records than with testimony.
9        The other thing is that the first disclosure that the
10 defense gave us, and particularly the second disclosure,
11 suggests that Ms. Vogelsang will be drawing conclusions, if not
12 rendering outright expert opinions, about much of which she is
13 testifying, that she will be drawing conclusions about what
14 influenced the defendant to do various things in his life, make
15 various choices.  What caused him to make those choices, for
16 example.
17       That to the extent that a biopsychosocial expert
18 provides an expert opinion, or an expert conclusion, that's the
19 type of opinion and conclusion they provide:  "Based on this
20 person's life history, these facts that I've related, I
21 conclude that he was influenced by this."  I mean, it may not
22 come out that way but that implicitly is what that person is
23 saying.
24       We would not necessarily file a *Daubert* challenge
25 because as the Court knows the rules of evidence don't apply in

1   sentencing hearings so it's not clear whether *Daubert* applies
2   in its formal way, but Rule 403 encapsulates many of the same
3   concerns.  And opinions, conclusions that she might draw are
4   susceptible to a 403 challenge, but we're not in a position to
5   mount that challenge, and particularly not to give the Court
6   advance briefing on it, which I'm sure would be helpful, so we
7   don't have to do it in the middle of her testimony, until we
8   have a list of the opinions and the conclusions.
9           So that's what we're looking for, your Honor, and we
10  still haven't gotten it.
11          THE COURT:  Okay.
12          MR. BRUCK:  Your Honor, I can be very brief.  I think
13  we should be able to resolve this.  As the Court notes, since
14  the filing of the motion, we have provided a summary of
15  Ms. Vogelsang's anticipated testimony.  It is not opinion
16  testimony; it is a description of the narrative.  You could
17  maybe analogize it somewhat to a presentence report.  The
18  government has been provided with all of the documents on which
19  Ms. Vogelsang has relied so far.  She is still at work and we
20  will update if there are additional documents.
21          We have a -- the Court has ordered that we disclose
22  our trial witness list on the 29th of December.  Many of the
23  interviews that Ms. Vogelsang has or will conduct are of trial
24  witnesses.  And for those that are not, we are prepared to and
25  will furnish the government with the names of any people that

1  she has interviewed regardless of whether they are trial
2  witnesses, on the same date, the 29th.
3         So the government has all of the documents.  They have
4  a summary which we used as our template, the government's
5  expert witness disclosures as far as the degree of specificity
6  and detail.  We were really guided by the expert witness
7  summaries that were provided by the government on August 1st
8  and which, after some litigation, were held to be adequate, and
9  that's what we provided from [*sic*] Ms. Vogelsang.  And 11 days
10 from today we will provide them with the list and they can
11 interview whoever they like and determine the reliability of
12 the information that these witnesses provide.
13        So I would hope that that will give the government
14 everything they think they're entitled to, and if not,
15 Ms. Vogelsang will probably testify in April, or perhaps March
16 if this trial goes forward as a death penalty case and we reach
17 that point at a very, very high rate of speed.  So this is
18 not -- I understand the government's desire to do everything
19 yesterday, but this is not something that they will lack the
20 time to follow up on once the rest of the disclosures have been
21 made.  And as I say, most of the disclosures have now been
22 made.
23        MR. WEINREB:  If I might, your Honor.
24        THE COURT:  Go ahead.
25        MR. WEINREB:  I would like to add two things.  First

1  is, it's one thing just to have the names of witnesses, but if
2  there are interview reports -- that is what we have given the
3  defense, is the interview reports of everybody who we expect
4  their testimony to be put in front of the jury in any capacity.
5  And that's what we would expect to get from the defense, is
6  that if there were interviews done of people and those
7  interviews were recorded in any way and the
8  defense is -- Ms. Vogelsang is going to rely on them, we should
9  be able to see those.  She's an expert witness.  Those are the
10 materials on which she is relying to give her testimony.
11 That's one.
12         And the other thing I would say is we'll take
13 Mr. Bruck at his word that she is not going to render any
14 opinions or conclusions within the ordinary meaning of those
15 words.  It's one thing if she simply relates facts that were
16 told to her and the defense argues in closing argument that
17 based on those facts the jury should conclude that Mr. Tsarnaev
18 was influenced by his brother, let's say, among other people,
19 but it's another thing for her to get up and say, "I
20 interviewed family members and so on, and what they all told me
21 is that Tamerlan told everybody what to do and the defendant
22 was influenced by him."
23         That, in our mind is an opinion, a conclusion, not a
24 fact.  You know, the facts are what people said; the conclusion
25 about whether he was influenced or not is something that either

1  the jury's asked to conclude or she says "based on my expert
2  opinion, although nobody can say what made one person do
3  something or didn't, I conclude that that's what made him do
4  this."
5            So if we're not going to be hearing that from her,
6  then that's one thing, but I want to make it clear if we are,
7  we're entitled to know that in advance.
8            THE COURT:  Okay.  Well, my purpose in asking the
9  question was to see whether there was a live dispute, and it's
10 apparent there is.  We're not going to resolve it at this point
11 but now I understand what the parties' views are on it.  All
12 the other motions we'll reserve and deal with on the papers
13 largely.
14           Now, let me just say a couple of things about
15 logistics.  I guess you're seeing logistics before your eyes.
16 We have a full courtroom.  We have taken care to be sure that
17 various perspectives are adequately represented, so we have
18 provided, of course, for seating for people associated with
19 both trial teams as well as people who are affected by the
20 events of the bombing, the media, of course, and the general
21 public.  And we've made allocations of all of that, and we've
22 had in mind, of course, that if everybody had their wish, we'd
23 have a courtroom that was five times as big but we don't have
24 that.
25           And so we've had the -- as we've had in other cases,

Case 1:13-cr-10200-GAO   Document 800   Filed 12/23/14   Page 14 of 20

14

```
 1   the occasion to prepare other courtrooms in the building where
 2   live streaming of video and audio will occur.  And some of
 3   those are reserved for people involved in the events, some are
 4   reserved for the media, and there are some available for the
 5   general public as well.  And I'm sure that's all available to
 6   people on our website, and they can take advantage of those
 7   other opportunities if they're not able to have seating in the
 8   courtroom itself.
 9            Let me remind people -- and this is, I hope, pro
10   forma, but I do it to underscore the importance of our local
11   rules regarding comment, public comment, by lawyers on the
12   case.  And also applicable principally, I guess, to the media,
13   but it could be to everybody, our rule against photographing or
14   recording not just in the courtrooms but on any courtroom floor
15   where court business is taking place.  That's local Rule 83.3,
16   and for those not familiar with it, I ask that you become
17   familiar with it.
18            We will be entering what is generally referred to in
19   the business as a decorum order which will provide some further
20   specifics about logistics and other kinds of things and
21   expectations for the conduct at the trial.  It's a kind of
22   order that is not uncommon in cases which have the interest
23   that this case has.
24            As everybody knows, there are a large number of
25   documents filed under seal in this case.  That's been necessary
```

1  for a number of reasons.  Some of them have been placed under
2  seal in order to advance the success of our jury empanelment
3  efforts.  There are some things concerning the case that if
4  discussed broadly in the public might interfere with the
5  ability to get a fair-minded jury.  Among those, for example,
6  are witness and exhibit lists by the parties.  I think it would
7  be inadvisable for those to be public before the jury is
8  selected.  I expect that once the jury has been selected and
9  sworn, those matters will be unsealed.  That's an example.
10 There may be other sealed matters that once the jury has been
11 selected should also be unsealed.  We would like to have as
12 much public as we can consistent with the other needs of the
13 case.  And one thing I'd ask counsel to do is to be thinking
14 about whether there are matters that might be placed in the
15 public record once the jury has been sworn.
16         I know there's been some discussion between the clerk
17 and the parties about exhibits, and I think we ask that the
18 government's exhibits be available by the 2nd of January.
19 There is -- ordinarily we would be using the Jury Evidence
20 Recording System which puts all the proposed exhibits in a file
21 and then managed digitally as the case goes on.  It may be, for
22 various reasons including the volume of exhibits, that that
23 becomes technically problematic or at least hazardous, inviting
24 error, so we may deviate from that and simply have the JERS
25 system loaded with the admitted exhibits once the evidence has

1  closed.  I haven't resolved that yet because I haven't yet
2  gotten into the technical discussion with the personnel but
3  we'll do that.
4           But I would like to ask the government if they could
5  furnish me with a -- with, I guess, a digital copy of all the
6  exhibits in the case just for my reference as needed.  It won't
7  be part of the official record but just something for me to
8  have in camera whenever it's convenient.  January 2nd would be
9  fine.
10          Our local rule provides for advance notice of expected
11 witnesses.  I was surprised to look at it recently and see that
12 it, as written, actually calls for seven days' notice.  If
13 that's feasible, that's desirable, but it's often not feasible
14 as trials go on.  Maybe the parties could discuss what might be
15 acceptable arrangements for advance notice of expected
16 witnesses.  The rule says seven days unless otherwise ordered,
17 and as I say, I think seven days may be optimistic and
18 ambitious for any reliability.  I mean, one of the things you
19 want to know is who is actually coming in on Thursday, not who
20 might be.
21          Similarly, with respect to the exhibits, I believe our
22 schedule calls for responsive expert discovery from the
23 government for Monday.  And if you could furnish me a copy of
24 that in chambers, I would appreciate that as well.
25          Administratively for the defense, it's time for

another budget cycle.  I entertain any suggestion you have for when we might have that.

    MS. CLARKE:  Your Honor, we were thinking that we would do January and then a February through --

    THE COURT:  That might make sense, actually, under the circumstances.  So when do you think you could have a January budget?

    MS. CLARKE:  Oh --

    THE COURT:  We're operating on a continuing resolution sometimes.

    MS. CLARKE:  Right.  If we can continue our resolution, within a week?

    THE COURT:  Okay.

    MS. CLARKE:  Maybe the day after Christmas.

    THE COURT:  Fine.  I probably won't look at it until Monday but...

    I think those are principally the matters I have.  Are there matters for -- yes, Mr. Bruck.

    MR. BRUCK:  I just wanted the government, and particularly the Court, to be aware that we anticipate filing a continuance motion as quickly as possible.  It would have been filed sooner except that it's largely responsive to events in the last 48 hours, disclosures from the government that have created issues for us.  We're still analyzing what those issues are and what they mean, but we do anticipate filing something

1  very shortly on that.
2          THE COURT:  All right.  We'll deal with whatever comes
3  in.
4          MR. WEINREB:  Your Honor, with respect to the
5  mechanics of jury selection and voir dire, would the Court be
6  issuing something in writing?
7          THE COURT:  Yes.  I would like to -- again, I'm
8  concerned about a discussion of that in public that could
9  affect the product of the process, so I am -- I want to
10 schedule an in camera session with both sides to discuss that,
11 and we'll work out the timing of that.
12         MR. WEINREB:  Thank you.
13         THE COURT:  And so that's why I've avoided any
14 specific discussion of jury selection procedures for the time
15 being.  Once we've settled it -- well, some of it will become
16 public and some won't, I guess, until the process is finished,
17 I guess.
18         Anything else?
19         MR. BRUCK:  No, sir.
20         MR. WEINREB:  Not from the government.
21         THE COURT:  All right.  Thank you all.  We'll be in
22 recess.
23         THE CLERK:  All rise for the Court.
24         COUNSEL IN UNISON:  Thank you, your Honor.
25         (The Court exits the courtroom at 10:25 a.m.)

1          THE CLERK:  Court will be in recess.
2          (The proceedings adjourned at 10:25 a.m.)

```
 1                    C E R T I F I C A T E
 2
 3          I, Marcia G. Patrisso, RMR, CRR, Official Reporter of
 4   the United States District Court, do hereby certify that the
 5   foregoing transcript constitutes, to the best of my skill and
 6   ability, a true and accurate transcription of my stenotype
 7   notes taken in the matter of Criminal Action No. 13-10200-GAO,
 8   United States of America v. Dzhokhar A. Tsarnaev.
 9
10   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
11   Official Court Reporter
12
13   Date:  5/10/16
```