...

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SEALED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 13-CR10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION
FOR ORDER THAT LAW ENFORCEMENT WITNESSES'
HOME ADDRESSES NEED NOT BE PROVIDED TO THE DEFENDANT**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files his response to the Government's Sealed Motion for Order that Law Enforcement Witnesses' Home Addresses Need Not Be Provided to the Defendant [DE ___].

When the government filed its Notice of Intent to Seek the Death Penalty on January 30, 2014, it knew that it was triggering an obligation to furnish the name "and place of abode" of each witness whom it would call at trial. Now, at almost the last minute, it claims to have detected a genuine risk that compliance with this requirement—under a protective order barring dissemination of the addresses beyond the defense team—"may jeopardize the life or safety of law enforcement agents and their families," and supports this claim with vivid descriptions of online threats and scattered attacks against law enforcement and military targets around the world.[1]

---

[1] We note that the government has apparently acceded to the weight of authority holding that "place of abode" in § 3432 means the home address of each witness or juror, as it does not argue otherwise in its motion.

1

It is difficult, in the current atmosphere of fear, to make a sober assessment of the true magnitude of the hypothetical risk posited by the government. But when such an assessment is made, it reveals that the government's fears are fanciful. The government cites as evidence:

- some recent examples from a long-running stream of extremist internet incitement against various military and civilian targets, including police officers,

- one jihadist attack on two New York City police officers three months ago,

- two similarly-motivated attacks on Canadian soldiers in Canada last October, and

- a very recent assault on two French police officers in Tours, France.

Govt. Mtn. at 3-6. This falls far short of proof, by a preponderance of the evidence, that complying with 18 U.S.C. § 3432's "place of abode" requirement by furnishing the list to defense counsel and their staff under a protective order would "jeopardize" the lives or safety of anyone.

The one arguably relevant case cited by the government shows how attenuated the government's concerns are here. In *United States v. Savage*, 2013 WL 420294 (E.D. Pa. Feb. 4, 2013), the court sustained a government request to withhold witness addresses on the basis of the following facts:

> The 140 overt acts that comprise Count 1 of the Indictment allege an organization that thrived on threats and intimidation. Indeed, the underlying theme of this prosecution is the obstruction of justice through witness intimidation and violence. Seven of the twelve murder counts involve witnesses or their families. One victim, Tybius Flowers, was allegedly murdered the night before he was scheduled to testify against Kaboni

> Savage in a state murder trial. Six victims perished in an arson fire allegedly ordered by Savage to intimidate a government witness from testifying against him at his 2005 drug conspiracy trial. Through the course of ruling on pretrial motions, the Court has reviewed countless wiretap transcripts, FBI reports, transcripts from prior trials, search warrant affidavits, and grand jury testimony excerpts. This evidence reveals threats made to witnesses, their families, and law enforcement officers, at times in disturbing and graphic detail. The Government advises that these threats of violence and instances of witness intimidation have continued into the present. (Gov't's Resp. 5.)

*Id.* at 3. Given this extraordinary level of real and present danger to the witnesses whom Savage had not already succeeded in killing, the court declared itself "satisfied, by a preponderance of the evidence, that providing the witnesses' addresses may jeopardize the life or safety of witnesses, or their families." *Id.* The government's citation of *Savage* only serves to highlight how thin is its basis for requesting similar relief in this case.

Were the merits of the government's request the only consideration that defense counsel need address, we would stop here. But our responsibility to our client requires us to evaluate the actual effect of requiring the government to abide by its legal obligations. Simply put, we have substantial reason to believe that the government will unfairly use our receiving the information to which the defendant is entitled under 18 U.S.C. § 3432 in such a way as to arouse hostility and even outrage against the defendant on the part of hundreds of law enforcement officers, and through them, of the wider public from which a jury must soon be drawn.

The most recent evidence for this concern is contained in an exchange of four letters which are attached as an exhibit to this response. In sum, these letters reflect that

the government has notified certain *civilian* witnesses that the duty to provide the witnesses' home addresses arises from "the defendant's request." In fact, no such request was made in this case, unless one characterizes (as the government apparently does) the failure of a defendant to voluntarily waive the protection of a statute constitutes a "request" for the information that the statute already mandates the government to provide. The government's communications to the witnesses also neglect to inform them that the obligation to provide his/her home address (characterized in the government's message as "undesirable") arose only because the government has exercised its discretion to seek the death penalty in this case. In sum, it is clear that at least with respect to the government's expert witnesses, the government intends to "spin" its obligation to comply with § 3432 into a fresh source of fear and anger against the accused on the eve of trial.

The defense followed up on this disturbing evidence by asking the government to provide us with what it has written or said to *all* of its witnesses concerning disclosure of home addresses under § 3432. The government has declined our request to provide any further information concerning how it has communicated this point to its many hundreds of witnesses. The government's refusal supports a strong suspicion that the civilian experts are not the only witnesses to whom the government has suggested that the defendant has gone out of his way to "request" their home addresses. If this suspicion is unwarranted, the government can easily allay it by furnishing the Court and defense counsel with examples of the letters or messages, if any, by which it conveyed information about its § 3432 compliance to the hundreds of civilian and law enforcement

witnesses on its list. But until this is done, the defense must assume that the government has explained its witness-list obligations to its law enforcement witnesses in substantially the same terms as it has to its experts. And if this assumption is correct, the defense would need to reckon on the near-certainty that law enforcement officers (some of whom have not been reluctant to disclose all manner of non-public information and evidence already) will make known their displeasure to the news media, with devastating effect.

We regret to note that the government has manifested a willingness to take unfair advantage of the defendant's exercise of his legal rights before. Just yesterday, for example, the government advised the Deputy Clerk that it intended to file the present motion on the public docket, after defense counsel expressly requested in writing that the filing be under seal, and an order of this Court was required to prevent the government's motion from generating what would surely have been a firestorm of angry public reaction. Likewise, last March the government publicly filed a meritless but inflammatory motion seeking an order to bar defense counsel from showing certain autopsy photos to the defendant, and cited case law from child pornography prosecutions in support of its position. [DE 225]. Such a public filing put defense counsel in the impossible position of appearing to be indifferent to the feelings and privacy of the murder victims' families in order to resist an unwarranted intrusion into the attorney-client relationship and the process of preparing the defense for trial. [DE 234]. The predictable result was a ruling in the defendant's favor accompanied by a flurry of prejudicial coverage that implied—without the slightest basis in reality—some sort of

unsavory desire on our client's part to view autopsy photos of the bodies of the Marathon bombing victims. See *e.g.*, NBC News, *Judge: Tsarnaev can view autopsy photos of bombing* (April 16, 2014).

We could list still more examples of the government's seeming willingness to generate or contribute to prejudicial pretrial publicity. Suffice it to say that under all of these circumstances, defense counsel has no basis for confidence that the government will manage its responsibilities under 18 U.S.C. § 3432 without doing grievous harm to what remains of the defendant's ability to receive a fair trial. For this reason, the defense is compelled to advise the Court that the defendant will waive compliance with the requirements of § 3432 to the extent that the statute requires the government to furnish the defendant with the "place of abode" of each of its law enforcement witnesses, and will accept the government's proposed substitution of the witnesses' law enforcement agency address for his or her home address.

                Respectfully submitted,

                /s/ *signature*

                DAVID I. BRUCK
                JUDY CLARKE
                MIRIAM CONRAD
                WILLIAM FICK
                TIMOTHY WATKINS

                Attorneys for Dzhokhar Tsarnaev

## Certificate of Service

I hereby certify that this document was hand-delivered to the U.S. Attorney's Office, District of Massachusetts, Attention: William Weinreb on December 24, 2014.

_/s/ Timothy G. Watkins_
Timothy G. Watkins
