UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**SEALED MOTION IN LIMINE TO EXCLUDE TESTIMONY**
**OF TRAUMA SURGEON DAVID KING, M.D.**

At the guilt-or-innocence phase of the trial, the government proposes to call

Dr. David King.  The government's August 1, 2014 Rule 16 expert disclosure states that

Dr. King is a trauma surgeon who treated an unspecified number of non-fatal Marathon

Bombing injuries at Massachusetts General Hospital.  He is further described as having

"provid[ed] military combat care during his multiple postings as Chief of Surgical

Services as part of Operation Enduring Freedom and Operation Iraqi Freedom."  The

government describes Dr. King's first-phase testimony as follows:

> To the extent that he presents opinion testimony, it will be based upon his
> medical training and experience as set forth in his C.V., his experience as a
> trauma surgeon at MGH, and his experience providing military combat care
> during his multiple postings as Chief of Surgical Services as part of
> Operation Enduring Freedom and Operation Iraqi Freedom.
>
> Dr. King will explain the clinical manifestations and mechanisms of
> injury of improvised explosive devices ("IED"). He will also describe his
> personal observations and clinical assessments of victims in this case.
>
> Dr. King will opine to a reasonable degree of medical certainty that
> the injuries suffered by those who were present at the scene of both
> explosions in Boston on April 15, 2013, and which Dr. King observed and
> treated at MGH, were caused by ground-placed IEDs that shredded flesh,
> bone and vital soft tissues. Dr. King will also opine that the pattern of

injuries was consistent with the classic presentation of an improvised
explosive device blast.

For the reasons that follow, the defendant submits that the Court should exclude Dr.

King's proposed testimony under Rule 403 of the Federal Rules of evidence because its

probative value is substantially outweighed by a danger of unfair prejudice and of

needlessly presenting cumulative evidence.  He further submits that this testimony, if

admitted at either stage of the trial, would inject passion, prejudice, and other arbitrary

factors into the capital sentencing process, in violation of 18 U.S.C. § 3595(c) and the

Fifth and Eighth Amendments.  The basis of this objection is as follows.

Although the government's expert disclosures provide little detail and no actual

information concerning the bases of Dr. King's opinions, it is not difficult to see why the

government proposes to call him.  His truly extraordinary service in the aftermath of the

bombing – service he rendered immediately after completing the Marathon himself – is

well-known, having been extensively chronicled in the news media.  See e.g. ABC News,

"Medical Doctor Runs Marathon and Compares Bombings to War" (April 16, 2013);

WCBV News, "President Obama 'humbled' by bombing victims' bravery, drive to

recover" (April 18, 2013) (depicting Dr. King with President during visit to Massa-

chusetts General); Scott Helman and Jenna Russell, *Long Way Home: Boston Under*

*Attack, the City's Courageous Recovery, and the City's Epic Hunt for Justice* (2014).

But Dr. King has no direct connection to any of the homicide victims in this case, and all

of the facts he is offered to establish are uncontested and indeed self-evident.  There will

be abundant testimonial and photographic evidence that the injuries and deaths inflicted on April 15, 2013 were caused by ground-placed improvised explosive devices, and the government will be offering much of the shrapnel that these devices contained, along with autopsy and lay testimony about the injuries they inflicted.

What Dr. King adds to this already clear and uncontested evidentiary picture is his ability to compare the Marathon bombing to the carnage and suffering he witnessed as an Army surgeon in Afghanistan ("Operation Enduring Freedom") and Iraq ("Operation Iraqi Freedom"). And the inevitable effect of such a comparison is to create a spurious but inflammatory and prejudicial connection between the Boston Marathon bombing and the deaths and injuries suffered by American soldiers over the last thirteen years of war. The irrelevance of the wars in Iraq and Afghanistan to this prosecution should be self-evident. But in linking them through the testimony of an exemplary physician and public figure like Dr. King, the government will create an association that will be impossible to dispel—an association all the more powerful because the perpetrators in both instances were foreign-born Muslims.

If Rule 403's protection against unfair prejudice means anything, it must mean this. By needlessly injecting the combat-related experience of an Army combat surgeon into the jury's consideration of the evidence in this case, the government will be inviting the jury to evaluate the defendant and his crime through the lens of national loyalty, patriotism, and support for our nation's military — as an foreign enemy on the battlefield,

- 3 -

rather than as a accused person entitled to all the rights of any defendant in a civilian courtroom. If the facts of the case revealed any need for such testimony, the Rule 403 question might be a closer one. But given that Dr. King's military medical experience bears only on facts that are certain to be both abundantly established by other evidence and uncontested by the defense, his testimony will be needlessly cumulative as well as unfairly prejudicial, and should be excluded. Fed. R. Evid. 403.

The government will no doubt argue that Dr. King's background as an Army combat surgeon makes him especially qualified to describe and explain the nature of the IED-inflicted injuries that he and other health care professionals encountered after the Marathon bombing. And if there were even the slightest question about the causation or severity of these injuries, such an argument might have at least some weight. But there is not, and so his testimony would contribute nothing more than added prejudice against a foreign-born Muslim defendant who can too easily be conflated in the jurors' minds with the foreign Muslim combatants against whom American troops have been fighting — and by whom so many have been killed and maimed by IEDs — ever since late 2001.

The government will likely deny the prejudicial effect of this association, or even that the jury will make the association at all. But the government's apparent wish to inject discussion of the deaths and maimings of American soldiers overseas into the trial of this case recalls its unsuccessful effort to invoke the defendant's immigration and naturalization history in support of an unprecedented nonstatutory aggravating factor of

- 4 -

"Betrayal of the United States." [DE 167 at 5-6). Explaining that aggravating factor, the government asserted that the defendant's motivation "by his own account, was to punish America for the actions of American soldiers who, in fulfilling their own oaths to protect and defend the Constitution, were waging a war against terrorism overseas" [DE 243 at 18]. The Court ultimately granted the defendant's motion to strike the "betrayal" aggravating factor [DE 384]. But the government's proposal to have Dr. King link his own wartime experiences to the Marathon bombing suggests that its desire to frame its case so as to resonate with the jury's feelings about the sacrifices of our troops overseas is undiminished.

Protecting the defendant's right to be judged on the basis of his own conduct and character, rather than as a reviled stand-in for all of the violent Islamic adversaries and threats that have erupted into public view over the last 20 years, will require sustained vigilance throughout these proceedings. A fair trial and sentencing cannot be assured simply by requiring the jurors to sign a boilerplate form attesting to their own impartiality, *see* 18 U.S.C. § 3593(f), after all their decisions have been made. At a minimum, the Court should reject the government's effort to use Dr. King's exemplary service, both overseas and in Boston on Patriot's Day, 2013, as a means of stimulating and channeling jurors' feelings of patriotism, national pride, and support for our military into the trial of an immigrant Muslim youth, when the facts of the case disclose no need for his testimony.

- 5 -

## CONCLUSION

For the reasons set forth above, the Court should grant the motion *in limine* to exclude Dr. King's cumulative, unnecessary and inflammatory testimony.

Respectfully submitted,
DZHOKHAR TSARNAEV

By his attorneys

David I. Bruck, Esq. (SC Bar # 967)
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

- 6 -

## CERTIFICATE OF SERVICE

I, David I. Bruck, hereby certify that copies of this document filed under seal have been served on Assistant U.S. Attorneys William Weinreb, Aloke Chakravarty, and Nadine Pellegrini by email and will be served by hand delivery on December 29, 2014.