UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**REPLY TO THE GOVERNMENT'S OPPOSITION TO
MOTION TO EXCLUDE TESTIMONY OF CERTAIN CONCLUSIONS
REGARDING DNA MATCHING AND OPPOSITION TO THE
GOVERNMENT'S MOTION TO SUPPLEMENT EXPERT DISCLOSURES**

The government's opposition [DE __ (Motion to Seal [DE 788] pending)] to defendant's motion to exclude conclusions by Massachusetts State Police Forensic Services Group analyst Jennifer Montgomery [DE 728] proposes to insert a brand new expert, Dr. Mark Perlin, to testify in yet another forensic field, DNA statistical analysis, in a trial that is already replete with experts of all stripes. Inserting this new subject matter, according to the government, renders the defendant's motion moot. For the reasons that follow, the Court should deny the government's untimely motion to supplement, given the now imminent trial date. Even if the Court is inclined to consider the newly proposed expert, the testimony should be excluded because the risk of confusion, waste of time, and unfair prejudice outweigh and probative value.

I. **THE COURT SHOULD DENY THE GOVERNMENT'S MOTION, FILED TWO WEEKS BEFORE TRIAL IS NOW SET TO BEGIN, TO INTRODUCE A PREVIOUSLY UNDISCLOSED EXPERT TO TESTIFY IN A WHOLLY NEW, HIGHLY TECHNICAL FORENSIC FIELD.**

The daunting challenge presented by the massive amount of forensic and other expert discovery in this case has been well documented in prior pleadings made to this Court. *See, e.g.,* DE 440, 460, 518, 549.

Now, almost four months after its August guilt phase disclosure deadline, some six weeks after its November 3 responsive expert deadline, and on the eve of trial, the government proposes to introduce a brand new expert to testify in cutting edge opinions in a wholly new, highly technical field. The government suggests that introduction of opinion testimony in yet another field of forensics at this late date "will not prejudice Tsarnaev because Mr. Perlin's work was limited to "performing a computer analysis of existing DNA data that was previously provided to Tsarnaev in discovery." Government's Response to Defendant's Motion to Exclude Certain Conclusions Regarding DNA Evidence and Motion to Supplement Expert Disclosures (DE __) at 2. What the government's motion fails to mention is that "Mr." Perlin is actually "Dr." Perlin, who holds advanced degrees in mathematics (Ph.D.), computer science (Ph.D.), and medicine (M.D.), as well as an undergraduate degree in chemistry. A brief review of Dr. Perlin's underlying methodology reveals that Dr. Perlin arrived at his proffered conclusions and opinions through a series of sophisticated theories and assumptions in a

rapidly evolving field,[1] a far cry from the government's suggestion that the method is a straightforward application of an "easily understood" method.

The government does not provide an explanation of why it chose to wait until two weeks before the beginning of trial to proffer this testimony and associated materials. It cannot. The defendant provided notice on October 2, 2014 that it intended to challenge admission of Ms. Montgomery's DNA opinion about the right glove because of the lack of statistical analysis. *See* Defendant's October 2, 2014 Rule 16 disclosure letter (attached hereto as Exhibit A) at pp. 4-5. Thus, the issue was joined nearly three months ago and the government failed to respond until the very eve of trial. Should the Court permit the government to inject this new witness and field into trial, defendant will be obliged to procure his own statistical expert with a pedigree corresponding to Dr. Perlin's in order to review the past discovery regarding DNA collection and analysis as well as the newly provided materials. Given the late date, the work of procuring the expert, providing the relevant discovery, and consulting as to courses of action, must all take place while the defense is preparing for and engaging in jury selection and a trial that features hundreds of witnesses and over a thousand exhibits. *United States v. Bresil*, 767 F.3d 124, 127 (1st Cir. 2014)("The government's [expert] notice was plainly untimely because it is unreasonable to expect a defense attorney in the midst of trial preparation to drop everything and try to obtain an expert five days before trial."). The Court should

---

[1] Notably, Dr. Perlin lists as references relied upon for his statistical conclusions in this case two papers dated 2015 and denoted "in press." *See* December 8, 2014 Report of Mark Perlin Re: Lab Nos. 13-07864, 13-08091, 13-08140 (attached to Gov't Opp.) at 3.

deny the government's motion to supplement and exclude testimony regarding DNA profiles extracted from the interior of the right glove.

## II. REGARDLESS OF THE TIMELINESS OF THE EXPERT DISCLOSURE, THE TESTIMONY SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE ANY PROBATIVE VALUE OF THE TESTIMONY IS OUTWEIGHED BY THE RISK OF CONFUSION, WASTE OF TIME, AND UNFAIR PREJUDICE.

What Dr. Perlin's statistical analysis does *not* do is assist the jury in discriminating between the relative likelihood that Tamerlan or Dzhokhar *both* were contributors, either in the past or on the night of Sean Collier's murder. Thus, neither Ms. Montgomery's nor Dr. Perlin's testimony can answer the only question which is truly at issue: did Tamerlan or Dzhokhar fire the gun which killed Officer Collier? The presentation of DNA evidence population matches will only serve to confuse the jury as to its responsibility to determine whether it was Tamerlan or Dzhokhar who shot Officer Collier. Such testimony, which fails to meaningfully contribute to the fact finding, but which suffuses the jury in a confusing, technical and lengthy discussion of irrelevant scientific facts, should be excluded pursuant to Federal Rules of Evidence 402, 403, and 702, *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1993), and the due process and fair trial clauses of the Fifth and Sixth Amendments to the Constitution.

The analysts will concede that any of three or more people could have contributed DNA on the inside of the right glove at any point during the glove's lifetime. The analysts will also concede that others could have worn the gloves during their lifetime without their profiles being present in the extracted DNA. However, the government seeks to introduce DNA testimony, in conjunction with testimony establishing the existence of gunshot

residue on the gloves, to suggest that one of the Tsarnaev brothers wore the gloves while shooting Officer Collier. Thus, which brother's DNA was found inside the glove(s) is the question, not the probabilistic likelihood that the DNA came from any of three people donating to the mixture as compared to a random person.

 To make sense of this issue, it is useful to compare the DNA results by allele type for each of the three people. The DNA is mixed, meaning three or more persons contributed to what was extracted. At every allele location where results were obtained, a mixture of Officer Collier's and Tamerlan's DNA could combine to explain the sample observed. Thus, considering Officer Collier's and Tamerlan's DNA profiles, all of the alleles are explainable with no role for Dzhokhar. It is also possible that Dzhokhar rather than Tamerlan's DNA is inside the glove. But the DNA evidence simply does not, and cannot, provide any probative evidence as to whether it is one or the other. Because the question at trial will not be whether either of the brothers touched the gloves - the gloves were in the car and had Officer Collier's blood on them - the question is which of the brothers had his hands inside the gloves and the probative value must relate only to that inquiry.

 If the contributor of DNA to the right glove is Tamerlan and not Dzhokhar, the evidence would lead to the deduction that Tamerlan was the person who shot Officer Collier, as his DNA would be inside both gloves and gunshot residue is on both gloves. Testimony concerning conclusions that neither brother can be excluded, but which does not answer the question as to which brother is the contributor, simply provides the appearance of scientifically reliable testimony that actually fails to elucidate the central

issue. For this reason, opinion regarding inclusion of the brothers and possible contributors should be excluded. Where, as is the case with the right glove, evidence that the DNA profile is consistent with both brothers and some number of others, it is impossible to understand when, at the end of the day, the evidence fails to differentiate the two key participants. It serves only to add a scientific veneer to facts which are obvious and not at issue, providing no additional information or bases for weighing the evidence, and potentially confuses the issue at hand by leading the jury to consider the acts of one person sufficient basis for convicting and sentencing another.

Here, evidence that the defendant's DNA profile makes him a "potential contributor" to the sample obtained from inside the right glove is unreliable, speculative, irrelevant, and more prejudicial, misleading, and confusing than probative. Thus any testimony about this particular sample is inadmissible under Federal Rules of Evidence 402, 403, and 702, as well as under *Daubert* and the due process and fair trial of the Fifth and Sixth Amendments to the Constitution.

### III.  A HEARING IS NECESSARY

As argued in defendant's initial motion to exclude testimony regarding the DNA extracted from the interior of the right glove and apparently now conceded by the government, Jennifer Montgomery's testimony that defendant is a potential contributor without statistical basis is inadmissible, and the Court can and should allow the defendant's motion to exclude it. Should the Court consider admitting testimony regarding the DNA profile extracted, either with or without Dr. Perlin's late-provided opinion, defendant requests a hearing to determine admissibility.


## Certificate of Service

I hereby certify that this document was served on counsel for the government by email and paper copy by interoffice delivery on December 29, 2014.

Timothy Watkins

## CONCLUSION

Based on the forgoing, as well as the reasons set forth in defendant's motion to exclude conclusions regarding certain DNA conclusions, the defense moves that the Court exclude testimony and evidence that the defendant was a potential contributor to the DNA extracted from the inside of the right golf glove recovered from the Honda Civic at the Laurel/Dexter Scene.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG