UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY REGARDING MATCHING
TRANSMITTER-RECEIVER BINDING CODES**

The government's primary argument in opposition to the defendant's motion to

exclude testimony regarding binding code matches is that the testing procedure to which

its expert will testify  produced results and an opinion "about which experts [can]not

disagree" because it is the result of "well-known and valid technology" that "is logically

sound and be easily replicated."  Government's Opposition to Defendant's Motion to

Exclude Testimony Regarding Matching Transmitter-Receiver Binding Codes [DE __] at

5-7.  In so doing it reveals, for the first time, that its proposed expert Michael McFarlane

has conducted wholly new testing to support his determinations that the bind code

extracted from the receiver recovered at BMB 1 matched the code programmed into the

transmitter collected by police at Laurel/Dexter scene in Watertown, and that the bind

code could not be extracted from the receiver recovered from BMB 2, and has underlying

testing reports to prove it.  Notwithstanding its argument and suggestions, the

government, as set forth below, has failed to demonstrate that the proposed testimony

meets the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and survives Federal Rules of Evidence 401, 402, 403 and 702.  At a minimum, the Court must conduct an evidentiary hearing before acceding to the reliability and admissibility of the proposed opinion testimony.

## A.   THE METHOD BY WHICH THE BIND CODE WAS EXTRACTED AND THE RESULTS OF THAT METHODOLOGY.

The government's opposition consists of a series of *ipse dixit* statements as to the methodology of the tests supporting McFarlane's testimony regarding bind codes, including that "bind code was obtained using a commercially-available microchip reader," that "[r]eading a chip is an elementary, mechanical function," that "it is not a 'test' that can yield different results depending on who does it or when and how it is done" and that it "is the customary means of determining a transmitter's bind code." Gov't Opp at 5.  According to the government, the support for its statements is contained in new discovery to the defense, provided during the week of December 15 and culminating with a December 19, 2014 disclosure letter, regarding the radio control transmitters and receivers. *See id.* at 4-5.  Missing from this tardy disclosure, however, is any support, whether by affidavit or exhibit, for the government's characterizations.  The sole document relevant to McFarlane's newly conducted analysis is entitled "Overview of Bind Code Methodology," which was included as Exhibit E8 to the government's

opposition and is attached hereto as Exhibit A.[1]  But that "overview" does nothing but

summarize the steps McFarlane took in achieving his goal of concluding that the bind

codes matched and is replete with the use of the passive voice, thus masking what was

done, by whom, why it was done in this way, and why the method was expected to yield

reliable results.  *Id.*  Moreover, absent from either the Government's Opposition or

McFarlane's "overview" are the actual results of testing, *e.g.*, the values obtained in his

testing or any of the method and testing documentation the FBI ordinarily requires when

a procedure is conducted in its laboratory.  *See, e.g.,* FBI Laboratory Operations Manual,

*Practices for the Examination of Evidence* (attached hereto as Exhibit C) § 3.1 (an

examiner "will ensure that the work product is accurate and inclusive of all pertinent

information to support a conclusion"), § 4.1.3 ("methods or procedures applied to the

examination of evidence will be validated"), § 4.1.5 "(upon completion of the

examinations, results will be communicated in a Report of Examination (7-1) according

to LOM - Practices for Formatting and Content of a Report); FBI Cryptographic and

---

[1] The government's opposition and the December 19, 2014 expert disclosure letter that
arrived with it both promised more materials than were included.  In its December 19,
2014 letter, attached hereto as Exhibit B, the government wrote:

> We're providing a summary of his methodology related to extracting bind
> codes, *as well as additional materials that he reviewed and noted.*

December 19, 2014 letter at 1 (emphasis supplied).  The additional materials were not
provided.  Similarly, the government promised the Court that Exhibit F to its opposition
contained "notes and photographs taken [by McFarlane] during the testing process."  No
such notes or photographs were included; instead, Exhibit F contains previously-
undisclosed notes generated by one of the previous examiners.  The government has
indicated that some exhibits and information may have been unintentionally omitted from
the discovery and exhibits and has promised to rectify the omission.

Electronic Analysis Unit (CEAU) Embedded Engineering Program (EEP) *Standard Operating Procedures (SOPs) For Forensic Examinations* (attached hereto as Exhibit D) at p. 2 (analyst case notes "must contain all examination steps performed on the evidence [and] must contain sufficient detail that another competent examiner could evaluate what was done and interpret the data).

Nor is there any explanation of why, if the testing was so pedestrian, the government saw it necessary – until approximately two weeks ago – to have the testing outsourced to government contractor Booz Allen Hamilton and its cadre of specialists. And it is not at all clear from the materials provided to the defense and to the Court that McFarlane's conclusions are free from the conclusions of the other analysts who initially tested the items at issues that would implicate the Sixth Amendment's confrontation clause. *See generally Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 318-20 (2009). In short, the government has provided nothing but its naked assurances to allow the Court to determine reliability and admissibility.

The government concedes, as it must, that "[t]he expert's methodology 'is commonly the central focus of a *Daubert* inquiry.'" Gov't Opp at 7 (quoting *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012)). However much it wishes it weren't so, the government has failed to supply the Court with the information necessary to make its reliability and admissibility determinations and the evidence must therefore be excluded.

## B. MCFARLANE'S QUALIFICATIONS TO RENDER OPINIONS AS TO BIND CODES AND INTEROPERABILITY OF TRANSMITTERS

The government writes in a footnote:"[t]he defendant's motion does not challenge McFarlane's expertise." Gov't Opp. at 2 n. 1. To the extent the government drew such an implication from the defendant's attack on the lack of clear methodology and reliability, it is wrong. To be clear, the defendant indeed challenges whether McFarlane is qualified to testify as to transmitters and receivers generally, let alone opine as to the issue of bind code extraction and matching. McFarlane appears not to have been qualified as an expert in any field outside of cellphone data extraction, a field having nothing to do with the variety of opinions the government proposes to elicit from him regarding the evidence recovered from BMB 1 and the Watertown scenes. Moreover, as is the case with the bind codes, it is not clear from the discovery provided thus far that McFarlane's opinions and observations regarding modifications to the FlySky transmitter and interoperability of transmitters and receivers are his own, or are grounded in his own training and experience; most of the substantive conclusions underlying McFarlane's proposed testimony are contained in unsigned, undated reports. *See Gov't Opp. Exhibits D1 & D2.* The defendant submits that, at a minimum, the Court must conduct a *voir dire* of McFarlane as to his qualifications, personal knowledge, and methodology before the government is permitted to present this testimony to the jury.

## CONCLUSION

For the forgoing reasons, the Court must exclude the government's proposed expert testimony regarding the purported matching of bind codes at trial. At a minimum,

it must conduct a voir dire of the proposed expert and his proffered opinions out of the

hearing of the jury to determine admissibility.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on
December 29, 2014.

Timothy Watkins