Sealed Motion to Limit Defense Penalty Phase

Foreign Witness Disclosure (DE ____ )

Sealed Exhibit A

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

### District of New Hampshire

### Notice of Electronic Filing

The following transaction was entered on 2/10/2012 at 3:47 PM EST and filed on 2/10/2012
**Case Name:**    USA v. Munyenyezi
**Case Number:**   1:10-cr-00085-SM
**Filer:**
**Document Number:** No document attached

Docket Text:
**ENDORSED ORDER granting in part and denying in part [78] MOTION to Approve Delayed Disclosure of Foreign Defense Witnesses as to Beatrice Munyenyezi (1).** *Text of Order: Granted in part. The identity of defense witnesses travelling from Rwanda shall be disclosed to the prosecution upon the later of: seven days before trial, or within 6 hours after the witness(es) leave Rwanda en route to the United States.* **So Ordered by Judge Steven J. McAuliffe. (jab)**


**1:10-cr-00085-SM-1 Notice has been electronically mailed to:** Aloke S. Chakravarty aloke.chakravarty@usdoj.gov, caryn.shedd@usdoj.gov, pamela.maffee@usdoj.gov, patricia.carlozzi@usdoj.gov   David W. Ruoff    druoff@howardruoff.com, jdowaliby@howardruoff.com, marieh@howardruoff.com, mvincent@howardruoff.com
John A. Capin    john.capin@usdoj.gov   Mark E. Howard
mhoward@howardruoff.com, jdowaliby@howardruoff.com, marieh@howardruoff.com, mvincent@howardruoff.com
**1:10-cr-00085-SM-1 Notice, to the extent appropriate, must be delivered conventionally to:**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| United States of America ) | |
| ) | |
| ) | |
| ) | Case No. 10-CR-85-SM |
| v. ) | |
| ) | |
| ) | |
| Beatrice Munyenyezi ) | |
| ) | |

## Defendant's Motion for Delayed Disclosure of Foreign Witnesses

NOW COMES the Defendant, Beatrice Munyenyezi, ("Ms. Munyenyezi") by and through her attorneys, Howard & Ruoff, P.L.L.C., pursuant to LCr 16.1(h) and requests authorization to delay disclosure of foreign defense witnesses until they have arrived in the continental United States. Previously, after much discussion with the Court during a Chambers conference, the parties attempted to fashion an attorneys-eyes only protective order. The government subsequently withdrew its Motion for Disclosure of Foreign Witnesses and now demands full disclosure 7 days prior to trial.

In support of this Motion, the Defendant states as follows:

1.      Previously, the Government filed a motion seeking early disclosure of all "foreign" witnesses that the defense may call in this matter. As grounds for this request the government offered two basic arguments: (1) that early disclosure was required to prevent unfair surprise; and (2) that the Government should be able to vet defense witnesses because of the expense and perceived security risks defense witnesses may pose. These arguments were further discussed at a status conference held on February 2, 2012.

2. During the discussion at the scheduling conference, the Court expressed its view that the defense had established a sufficient basis to delay disclosure in order to avoid any improper influence being exerted on defense witnesses before they left Rwanda. In response, the Government suggested a limited disclosure to the attorneys only of only the names of the witnesses. The defense agreed to consider the request and propose a protective order. That same afternoon, the defense proposed a protective order which was consistent with the discussions in chambers and with the Government's request. Nevertheless, the prosecutors rejected the defendant's draft protective order and by email dated February 3, 2010, indicated they did not want to spend "any more time" on this issue, were withdrawing their motion, and that they expected full disclosure pursuant to the local rules. Of course, since the local rule requires disclosure seven (7) days before trial, this result does not address the fundamental concern of defense witnesses being disclosed while still in Rwanda.

3. Because of the potential risks to defense witnesses living in Rwanda, the government previously agreed to a double-blind procedure to assist the defendant in obtaining the parole of and travel documents for any defense witnesses. A "neutral" ICE agent was assigned to the defense team to assist with the parole of defense witnesses into the United States. This was intended specifically to allow the defense to arrange for and transport defense witnesses to the United States safely. If the defense witness identities are leaked prior to their travel to the United States, there is a very real risk that either the witnesses will be coerced or prevented from traveling to the United States to offer testimony.

4. As it stands, there are several federal employees in Kigali, Rwanda, that are working on the conveyance of defense witnesses to the United States. The government must recognize the risk to potential defense witnesses because it agreed to submit all witnesses passport applications to the Rwandan government together – so the Rwandan government would not be able to distinguish between government and defense witnesses.

5. There are a number of developed countries that refuse genocide-related extradition requests from Rwanda because of the well-documented human and civil rights violations and blatant attempts by the Rwandan government to intimidate and suppress defense witnesses in genocide related cases. In short, courts in these sovereigns (the ICTR included) have determined that defendants in Rwandan courts cannot obtain a fair trial because of the intimidation and suppression of defense witnesses.[1]

6. As a preliminary matter, to the extent the Government has security concerns, the Defendant has been required to disclose all witnesses to ICE agents in Boston and Rwanda. The disclosure required a photo, name, address and an affidavit stating that the witnesses have no criminal record. The witnesses will also be required to undergo health screening. Moreover, according to the ICE security plan, all paroled witnesses will be under constant ICE supervision and will be required to wear an

---

[1] See http://www.bbc.co.uk/news/world-europe-11310352; (France refuses to extradite Rwandan genocide suspect, BBC Europe, September 15, 2010); http://www.nytimes.com/2011/09/29/world/africa/rwanda-france-refuses-to-extradite-presidents-widow.html ; http://news.bbc.co.uk/2/hi/uk_news/7989534.stm (London High Court holds that if (the four) were extradited to face trial in the High Court of Rwanda, the appellants would suffer a real risk of a flagrant denial of justice by reason of their likely inability to adduce the evidence of supporting witnesses and that there was a real risk of executive Government interference with the judiciary in Rwanda); http://jurist.org/dateline/2010/06/tanzania-transferring-cases-from-the-ictr-to-rwanda-courts.php ("the [ICTR] Prosecutor has unsuccessfully attempted to transfer cases to Rwanda's national courts on five separate occasions. These cases were rejected for several reasons, including concerns over the appropriateness and applicability of punishments for genocide, the adequacy of protection for defense witnesses, witnesses' ability to enter Rwanda to testify, and ethnic biases that could affect the trials' impartiality. . . Rwanda also has a history of witness intimidation and harassment, which poses a serious threat to defense teams and their ability to fairly advocate for their clients.")

3

electronic monitoring device (this includes one of the defense investigators, a prominent lawyer in Kigali).

7. Under the local rules, the Defendant is not obligated to disclose its witnesses until 7 days prior to trial. Under LCr 16.1(h), this Court has the authority to allow the defendant to <u>delay</u> disclosure of the witnesses, for good cause shown, beyond the 7-day window.[2] Presumably, this is to address situations in which disclosure of witness identities places them in jeopardy – as is the case with defense witnesses traveling from Rwanda in defense of an alleged *genocidaire*.

8. In this case, many of the witnesses who have agreed to come to the United States have done so reluctantly. Visits from badge-wielding "mazungu" – potentially escorted or followed by Rwandan authorities – will have a predictable chilling effect on the witness's willingness to travel around the world to testify. Of course, if any defense witness refuses to come to the United States and there is evidence of witness coercion or intimidation, the defendant will be seeking dismissal of the indictment.

9. The Defendant has little doubt that the government will be able to fully investigate the defense witnesses after they are disclosed and arrive in the United States. Accordingly, the government will not be prejudiced by any delay in disclosing the identities of the foreign defense witnesses until they are in the continental United States. All the material foreign witnesses will be in ICE custody at a local hotel once in the United States.

10. In light of the government's previous position on this issue, an objection to the requested relief is presumed.

---

[2] LCr 16.1(h) states: "[t]he parties shall exchange and file witness lists at least seven (7) days prior to trial. For good cause shown, either party may seek court approval to exchange witness lists at a later date."

4

Wherefore, Ms. Munyenyezi respectfully requests this Honorable Court to:

A. Grant this request and approve the disclosure of the defendant's list of foreign witnesses upon their arrival in the continental United States; and

B. Grant such other relief that is equitable and just.

Respectfully submitted,

BEATRICE MUNYENYEZI

By her Attorneys

HOWARD & RUOFF, PLLC

February 7, 2011        By:    /s/ David W. Ruoff
                               David W. Ruoff, Esquire
                               (Bar No.12151)
                               1850 Elm Street
                               Manchester, NH  03104
                               (603) 625-1254

                        By:    /s/ Mark E. Howard
                               Mark E. Howard, Esquire (Bar No. 4077)
                               1850 Elm Street
                               Manchester, NH  03104
                               (603) 625-1254

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically via ECF notification upon Aloke S. Chakravarty, Assistant United States Attorney and all Counsel of record.

                        By:    /s/ David W. Ruoff
                               David W. Ruoff, Esq.

                        By:    /s/ Mark E. Howard
                               Mark E. Howard, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 10-CR-00085-SM |
| | ) | |
| BEATRICE MUNYENYEZI, | ) | |
| Defendant | ) | |

### GOVERNMENT'S OPPOSITION TO THE DELAYED DISCLOSURE OF DEFENSE WITNESSES

The Government respectfully opposes the defendant's proposed variation from the requirements of the local rules that witnesses be disclosed seven-days before trial. This is a complex case in which as much notice as possible is necessary for the parties to be equally situated to examine foreign witnesses. Moreover, the stated basis for the defense's desire to disclose its witness list late – protection of witnesses from reprisal by the Rwandan government – is patently without merit. The Rwandan government must provide travel documents to the defense witnesses and thus will necessarily know who the defense witnesses are.[1] Therefore, the arrangement proposed by the defense solely serves to prejudice the government by ensuring that the prosecution learns the identity of defenses witnesses only after trial is under way.

The gamesmanship attendant to delayed disclosure of defense

---

[1] Indeed, the defense's proffered expert (Thomson) opines that the Rwandan government is already aware of the defense witnesses. Thomson Report at 11.

witnesses constitutes prejudicial asymmetry which prevents the government from anticipating and preparing for witnesses, and amplifies the risk of inefficient examination, recalling witnesses and prolonging trial. See U.S. v. Cruz, 152 F.3d. 22, 30 (1st Cir. 1998)(prejudice from delayed witness disclosure can attend if it prevents opposing party from adequate preparation to examine the witness).

The defense motion for delayed disclosure of witness identities comes after the government sought early disclosure. The defendant argues that disclosure of witness identities increases the likelihood that witnesses will not appear for trial. Disclosure of witnesses even in the ordinary case, could result in a witness' reluctance to appear for trial. The defense position is premised on the notions that (1) disclosure to the United States government is tantamount to disclosure to the Rwandan government; and (2) that the Rwandan government will prevent the testimony of the defense witnesses. Neither of these propositions has evidentiary support, and in fact, the Rwandan government has apparently kept defense witness travel arrangements on track, and had made similar arrangements in the case in Kansas involving Rwandan defense witnesses.

In contrast, the government had filed a motion for early disclosure of witness identities and provided a real fair notice and resource-based justification for same. Mindful of the Court's concerns about doing anything that could inadvertently

prevent a witness from being able to travel to the United States, as a potential alternative to early disclosure of defense witnesses, the government proposed at least some eyes-only list so that the attorneys for the government would at least be able to plan their schedules and for division of labor in advance of and during trial. The defense indicated it would have to craft a protective order related to what the government would with the list, and when it would do it. The defense then outlined four basic principles of the protective order they were drafting and notified the court that parties were negotiating the terms. The government proposed two additions as part of that negotiation: (1) since this was an eyes-only list, the government asked for all the defense witnesses so it would be better able to plan for division of labor and scheduling; and (2) the government asked to know when the witnesses would be expected to leave Rwanda so it could anticipate when it would be permitted to disseminate the witness identities, purely for logistical purposes. The defense dismissed both requests without negotiation. Since the defense was inflexible in imposing conditions even on an *eyes-only* disclosure, the undersigned's objectives of knowing how many witnesses there would be and when we would be able to tell others about them were left unsatisfied. Consequently, the government has withdrawn the request.

The defense has repeatedly intimated that there is in fact a serious safety risk attendant to the disclosure of witness

identities. This premise is unrooted in evidence. The government does not discount the possibility of harm that might befall individuals anywhere around the world where it cannot assure their security, but that is a far cry from suggesting, without evidence, that defense witnesses are somehow in greater danger to be prevented from testifying, which is the operative concern. Absent an evidence-based demonstration of this phenomenon, the court should not accept this premise as the basis of relief from a local rule which balances the conflicting strategic and preparatory demands in a typical case as best it can. As the government has argued, it does not account for the inability to conduct foreign investigation of defense witnesses, or for the unprecedented complexity of preparing witness testimony in this case, but it does account for the potential that disclosure of witnesses could yield opposite-party investigators to approach the witnesses.

More importantly, there's no evidence to support that either information from the United States would be transmitted to the Rwandan government (it would not be by the prosecution team), nor that an approach to a defense witness by U.S. officials in Rwanda would be any different than an approach to a defense witness if he were local. Regardless of the alleged Rwandan governmental preferences, Rwandan witnesses have traveled internationally to testify for the defense in dozens of trials. Moreover, as stated above, the Rwandan government is already

aware of the identity of these witnesses in connection with issuing travel documents.

The ICTR itself is in Tanzania. Canada, Finland, and other countries have all successfully conducted investigations and trials involving defense witnesses in genocide-related cases. Numerous witnesses were brought to the United States for the Kobagaya prosecution without incident. There are many genocidaires who live freely and openly in Rwanda. In fact, the weight of the evidence suggests that it is in the greater Rwandan governmental interest that Rwanda be seen as a place where the rule of law governs and witnesses are made available to all parties. The Prosecutor General of the country, in describing defense access to witnesses for this case said unequivocally, "We were informed of the arrival of these defence lawyers. This is common practice as we facilitate both prosecution and defence. Their visit is welcome".[2]

There have been documented instances of reprisals against those who testify against genocidaires, some of which were presented to the court in the context of the protective order governing discovery in this case. The defendant, unlike the government, has a compelling motive to further disseminate that information both in her own defense and as part of a broader fabric of expatriate Rwandan opposition groups. Consequently

---

[2]Hirondelle News Agency, January 10, 2012 available at http://allafrica.com/stories/201201110317.html, visited on February 7, 2012.

disclosure of witness lists at this juncture in advance of public testimony, is very different than disclosure of government witness identities pre-trial, even when the latter was supported by evidence.

The government is however, also mindful that anything that could potentially interfere with the ability to conduct this trial is undesirable. Consequently, the government has done whatever it could to facilitate defense access to witnesses, and has agreed to pay for them to come to the United States. This is far more than the Constitution requires, but demonstrates a commitment to the search for the truth as relevant to the acts of the defendant. The government has provided this support pursuant to a procedure in which the prosecution team is not aware of the identity of these witnesses. The government engaged in this procedure in order to (1) ensure that there is pre-mature invasion of the defense camp; and (2) minimize any risk, real or perceived, that anything the prosecution team did could interfere with the defense access to witnesses.

The defendant's request for relief is to disclose her witnesses whenever she likes, by notifying the government, even mid-trial if she chooses, that her foreign witnesses are comfortably in the hotel. This highlights the prospect of individuals coming into an American court without any confirmation even of their identity, let alone the plausibility of whatever it is that they will say, and without the cross-

Case 1:10-cr-00085-SM Document 79 Filed 02/09/12 Page 7 of 7

examining lawyer having any opportunity to be prepared. This stands in stark contrast with the approximately 18 months of investigation that the defense team and investigators have been able to devote to turning over every rock related to the government witnesses. Cross-examination is the greatest tool for the search for the truth in our judicial system. The defense's motion undermines the fairness of that instrument.

Consequently, the government requests timely disclosure of the defense witnesses in accordance with the local rules.

Respectfully submitted,

Donald Feith,
Attorney for the United States,

Acting Under Authority
Conferred by 28 U.S.C. 515

By:    /s/ Aloke Chakravarty
     Aloke S. Chakravarty
     John A. Capin
     Special Assistant U.S. Attorneys

Date:    February 9, 2012