UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

OPINION AND ORDER
January 2, 2015

O'TOOLE, D.J.

## I.      Defendant's Second Motion for Change of Venue

### A.      Relevant Background

At a status conference on September 23, 2013, the Court first raised the issue of venue with the defendant. At that time, defense counsel stated that they had not yet considered whether to contest venue in this District. Two months later, at a further status conference on November 12, 2013, the Court set February 28, 2014 as the deadline for the defense filing of a motion to change venue. About a month later, on December 16, 2013, the defendant moved to vacate that deadline for a motion to change venue, stating that it would be impossible to investigate whether a motion to change venue was warranted, determine whether a motion should be filed, and file an adequately briefed and supported motion by February 2014. (Mot. to Vacate Filing Deadline for Mot. to Change Venue (dkt. no. 154).) The government opposed the motion. On January 14, 2014, the Court granted the defendant's motion and vacated the filing deadline. At a status conference on February 12, 2014, the Court extended the deadline by four additional months to

June 18, 2014, just slightly less than a year after the return of the indictment and nine months after the Court first raised the question.

On June 11, 2014, one week before the defendant's motion to change venue was due, the defendant filed a two-page motion for extension of time, requesting that the Court extend the deadline for six additional weeks to August 3, 2014. The government opposed the further extension. The Court denied the defendant's request for additional time.

On June 18, 2014, the defendant filed his Motion for Change of Venue. The motion relied only on a "preliminary review of still-to-be-finalized survey data," was not supported by any declarations or exhibits, and concluded with a request that the Court grant him additional time to prepare his venue-change submission. (Mot. for Change of Venue (dkt. no. 376).) The government timely opposed the motion.

Two weeks later, on July 15, 2014, the defendant sought leave to file a reply to the government's opposition and to submit supplementary material in support. He did not append the proposed reply brief or supporting materials to the motion, but instead requested to be allowed to file the materials on August 7, 2014. On July 22, 2014, the Court granted the defendant's motion over the government's opposition.

On August 7, 2014, pursuant to the leave granted, the defendant filed his "reply" brief and supporting documents. The material, which totaled 9,580 pages, set forth new arguments with new evidentiary support, including a 37-page declaration by an expert, Edward J. Bronson. In order to permit the government to respond to the matter raised for the first time in the defendant's "reply," the Court permitted the government to file a sur-reply, which it did on August 25, 2014.

On August 29, 2014, the defendant filed a motion for leave to respond to the government's sur-reply, essentially asking for a third round of briefing on a motion that the defendant had already received multiple extensions of time to file. The defendant actually filed the proposed reply to the sur-reply and an affidavit from a new expert, Neil Vidmar, without waiting for a decision from the Court on the motion for leave, in contravention of the Local Rules. L.R. 7.1(B)(3), D. Mass. That same day, the government opposed the defendant's motion, arguing that the third round of briefing was unwarranted and that, "[b]y ignoring deadlines and filing unauthorized briefs without first obtaining permission, Tsarnaev has indicated that he does not believe the rules apply to him." (Gov't's Opp'n to Def.'s Mot. for Leave to File Resp. and Mot. to Strike Def.'s Resp. (dkt. no. 519).) The Court granted the government's motion to strike the defendant's inappropriately filed materials and denied the defendant's motion for leave to file.

Despite the Court's denial of his motion for leave to file the materials, the defendant filed yet another motion on September 4, 2014 to "supplement" the record by responding to the government's sur-reply and to enter into the record the just-stricken Vidmar declaration. Unsurprisingly, the government opposed the defendant's renewed request. On September 18, 2014, the Court denied the defendant's motion to supplement the record, stating that "[t]he record is complete." (Status Conf. Tr. at 4 (dkt. no. 580).)

The Court denied the motion to change venue in an order entered September 24, 2014 (dkt. no. 577). There were no further filings on the issue of venue until the defendant filed his Second Motion for Change of Venue, the subject of this Order. The second motion relies largely on previously argued grounds but seeks to expand the supporting materials by, among other things, including the Vidmar affidavit which the Court already twice rejected. The government

moved to strike Vidmar's affidavit and related material and, after receiving leave from Court, filed a late opposition to the defendant's second motion to change venue. The defendant opposed the motion to strike and, with leave, filed a reply to the government's opposition.

On December 31, 2014, having signaled the decision to both parties at a jury selection-related lobby conference on December 30, the Court denied the defendant's motion to change venue, stating that this explanatory opinion would be issued shortly.

> B.     Discussion

>> i.     *Opportunity to Develop Argument and Supporting Evidence*

As the chronology described above makes clear, the defendant had ample time and opportunity to develop and present a venue change motion. It was the Court, rather than the defendant, who first raised the issue of venue in this case. When the first deadline appeared to set too tight a schedule, the Court granted a considerable extension. When the first motion was filed, it was summary and unsupported by affidavits or other evidentiary materials. Nevertheless, even though it is generally inappropriate for a moving party to advance new arguments and supporting facts in a reply brief, the Court permitted the defendant the opportunity to expand on his opening brief in his reply to the government's opposition. In substance, the reply brief became the main motion. And in effect, the defendant gave himself the extension of time the Court had denied him in June.

The defendant now justifies his late submission of supporting materials in August and again in December by complaining of what he calls "bifurcated funding for Prof. Bronson's work." (See, e.g., Opp'n to Mot. to Strike Exhibits to Def.'s Second Mot. for Change of Venue at 3 n.1 (dkt. no. 774).) Because of the confidential nature of a criminal defendant's requests for funds for expert services and in order to limit the risk of divulging any defense work product, the

Court will not address the merits of the argument in detail. It is sufficient to say that the Court rejects the defendant's explanation. After the Court raised the issue of venue, the defendant waited several months to seek funds for a venue expert and once funds were certified, waited a further period of time to request continued funding. In any event, the Court permitted him the time and opportunity to submit Bronson's material as his "reply" to the government's opposition to his first venue motion.

### ii.   *Procedural Impropriety of Present Motion*

Although it is not styled as such, the defendant's second motion for a change of venue is essentially a motion for reconsideration. It does not advance new or different arguments, but seeks instead to bolster former, unsuccessful arguments with additional information.

Although motions for reconsideration in criminal cases are not specifically authorized by either statute or rule, they may be considered in the exercise of the Court's inherent authority to revisit its own orders. See United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014); see also United States v. Iacaboni, 667 F. Supp. 2d 215, 216 (D. Mass. 2009) (noting that courts which have considered motions to reconsider in criminal cases "generally borrow standards either from civil cases or from the local rules"). As a general matter, under those standards motions for reconsideration are "not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented' earlier." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006)). Rather, such motions "are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was

based on a manifest error of law or was clearly unjust." Id. (citing Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)).

As to the first circumstance, the defendant does not present newly discovered evidence within the relevant meaning of the term. The "new evidence" the defendant proffers is comprised of (a) the already-twice rejected Vidmar declaration and (b) a declaration by Josie Smith and accompanying exhibits concerning the extent of publicity about the case updated since similar exhibits were submitted and considered last summer. As explained below in Section B(iii), although the new survey covers publicity in recent months since the ruling on the prior motion, it does not advance anything genuinely "new." Additionally, several paragraphs in Smith's declaration purport to respond to the government's sur-reply to the defendant's first motion to change venue. Having previously found the record complete and denied the defendant's multiple attempts to initiate a third round of briefing, the Court does not now consider those paragraphs. Similarly, the Court rejects the defendant's third attempt to insert Vidmar's declaration into the record.

As to the second and third circumstances in which a reconsideration motion may be entertained, the defendant does not point to any intervening change in the law since the Court decided the defendant's first motion to change venue and does not appear to argue that the decision was a manifest error or law or was clearly unjust under the circumstances. Rather, it is plain that he does not agree with the Court's decision on the first motion and seeks to relitigate the same matter with what he presumably hopes is a more convincing showing. That is not recognized as an appropriate ground for reconsideration, which has never been considered a mechanism for serial relitigation of decided issues.

Consequently, the motion is procedurally deficient.

*iii.    Substantive Merits of Motion*

Even were the Court to overlook the procedural deficiency, the defendant has not presented anything that would persuade it that the denial of the first motion to transfer venue, for the reasons explained in that Opinion and Order, was wrong.

In support of his renewed motion, the defendant again focuses on pretrial publicity. As the Court recognized in its previous opinion, media coverage of the case has been extensive. Although the defendant proffers a new media "analysis" based on the number of search hits in the Boston Globe and Boston Herald between July and November, he does not actually offer anything that is genuinely "new." The survey continues to be flawed for the same reasons the Court explained before. For instance, the search terms, some of which are overbroad, hit on articles that sometimes have little (or nothing) to do with the case. More importantly, it also does not distinguish between articles which might be deemed inflammatory and those that are largely factual in nature.

The defendant again argues that the jury pool has been so tainted that a change of venue is required, this time on a theory of "nearly universal local victimization." (See Mem. Supp. Second Mot. for Change of Venue at 8-10 (dkt. no. 686).) In summary, the defendant appears to suggest that it would not be possible to find 18 qualified and capable jurors out of the millions who reside in the Eastern Division of the District because "victims" in this case should be construed broadly to include the Boston Marathon; the entire cities of Boston, Watertown, and Cambridge, including their residents and those involved in the events in those locations; the Marathon spectators and their families, friends, and acquaintances; and those who treated and cared for the injured. The defendant bases his argument on the disclosure by the government of an expert witness who may testify as to injury to the local population. The disclosure, however,

was made on August 1, 2014, prior to the defendant's filing of his important reply brief of his first motion to transfer venue, and the defendant's argument should be rejected for that reason alone. The argument was plainly available to be made in the prior motion, and it is therefore an inappropriate basis for reconsideration.

Further, as previously emphasized by the Court, the Eastern Division is large and diverse. It certainly includes Boston, Cambridge, and Watertown—each of which contains a "diverse cross-section of ethnicities, backgrounds, and experiences"—but it is also a large district expanding significantly beyond those specific communities. See, e.g., United States v. Awadallah, 457 F. Supp. 2d 246, 253 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); United States v. Salim, 151 F. Supp. 2d 281, 284 (S.D.N.Y. 2001); United States v. Yousef, No. S12 93 CR. 180 (KTD), 1997 WL 411596, at *3 (S.D.N.Y. July 18, 1997); United States v. Salameh, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486, at *1 (S.D.N.Y. Sept. 15, 1993).

The defendant also argues that the Court should not base its analysis of the issues on the teachings of Skilling v. United States, 561 U.S. 358 (2010), and instead adopt the analysis utilized in United States v. McVeigh. (See Mem. Supp. Second Mot. for Change of Venue at 11 ("The defense submits that the analysis employed by the court in United States v. McVeigh is more appropriate [than Skilling] to the facts of this case.") (internal citation omitted).) The Court, however, regards Supreme Court precedent as the more authoritative source of guidance.

Finally, the defendant reargues claims that Bronson's declaration from the defendant's first venue motion supports a change of venue. As already noted, the Court rejects the defendant's attempt simply to reargue matters already considered and rejected.

In sum, the Court adheres to the reasons previously expressed in concluding that the defendant has not shown that a presumption of inevitable prejudice arises so as to support a change of venue. See Skilling, 561 U.S. at 381; United States v. Quiles-Olivo, 684 F.3d 177, 182 (1st Cir. 2012).

iv.     <i>Upcoming Voir Dire Procedures</i>

The defendant requests the Court to revisit its prior comment that a "thorough evaluation of potential jurors in the pool will be made through questionnaires and voir dire sufficient to identify prejudice during jury selection." (Sept. 24, 2014 Opinion and Order at 6 (dkt. no. 577).) The Court declines to do so.

First, the purported support the defendant advances in furtherance of his attack against the voir dire process is not new. The Bronson declaration supported his first venue motion, the Vidmar declaration has been twice (and now thrice) rejected, and the proffered Studebaker and Penrod article is from 1997. Evidence is not "new" if it "in the exercise of due diligence[] could have been presented earlier." Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005).

Second, since the Court's opinion citing recent District experience with high-profile cases, another case generating wide publicity has been tried to verdict here. On October 28, 2014, a jury returned a mixed verdict in the case of Robel Phillipos, who was charged with making false statements in connection with the Boston Marathon bombing investigation. Verdict, United States v. Phillipos, Cr. No. 13-10238-DPW (Oct. 28, 2014) (ECF No. 510). The verdict, which reflects a careful evaluation of the trial evidence in the face of widespread media coverage, supports the Court's previous observation regarding the capacity to empanel a fair and partial jury in the District.

Finally, voir dire has long been recognized as an "effective method for rooting out such [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." Correia v. Fitzgerald, 354 F.3d 47, 52 (1st Cir. 2003) (citing Patton v. Yount, 467 U.S. 1025, 1038 & n.13) (1984)). It "is a singularly important means of safeguarding the right to an impartial jury. A probing voir dire examination is '[t]he best way to ensure that jurors do not harbor biases for or against the parties.'" Sampson v. United States, 724 F.3d 150, 163-64 (1st Cir. 2013) (quoting Correia, 354 F.3d at 52)).[1]

In this case, the parties and the Court have been working diligently to develop a comprehensive juror questionnaire that every qualified juror, culled from the initially summonsed group of 3,000, will complete.[2] The questionnaire contains approximately 100 questions, and many of them are designed to determine the extent to which potential jurors have been affected in the ways in which the defendant is concerned. The questionnaire will be followed by oral voir dire examination of all prospective jurors who were not excused for cause based on the questionnaire alone. The parties will be asked to submit to the Court questions they

---

[1] See also United States v. Mitchell, 752 F. Supp. 2d 1216, 1227 (D. Utah 2010) (concluding that defendant's poll did not support a finding of presumed prejudice and that defendant "failed to demonstrate that his concerns regarding community impact [could not] be adequately addressed and ameliorated through an extensive juror questionnaire and voir dire"); Salim, 189 F. Supp. 2d at 97 ("Precautions can function to assure the selection of an unbiased jury. Specifically, careful voir dire questioning on this topic, accompanied by the assembling of a jury pool significantly larger than the normal size, will be sufficient in detecting and eliminating any prospective jurors prejudiced by their personal connection to [the terrorist attack]."); United States v. Lindh, 212 F. Supp. 2d 541, 549 (E.D. Va. 2002) (volume of pretrial publicity alone was insufficient as "[n]o juror will be qualified to serve unless the Court is satisfied that the juror (i) is able to put aside any previously formed opinions or impressions, (ii) is prepared to pay careful and close attention to the evidence as it is presented in the case and finally (iii) is able to render a fair and impartial verdict based solely on the evidence adduced at trial and the Court's instructions of law").

[2] Indeed, the Court is implementing several protective voir dire procedures recommended by the defendant's expert, Edward Bronson, in at least one case, including a comprehensive jury questionnaire, an expanded jury pool, individualized voir dire when indicated, and attorney input on the content of the voir dire. See Salim, 189 F. Supp. 2d at 97 n.7.

would like each potential juror to be asked during individual voir dire, particularly based on the questionnaire answers, and while the Court anticipates itself primarily conducting the voir dire, counsel-led follow-up may be permitted as appropriate.

The process is designed to screen out jurors who would be unable to conscientiously perform the impartial and fair assessment of the evidence at trial. "[T]he proof of this pudding will be the voir dire results; only those prospective jurors found to be capable of fair and impartial jury service after careful voir dire will be declared eligible to serve as jurors." See United States v. Lindh, 212 F. Supp. 2d 541, 549 (E.D. Va. 2002). The Court has confidence that a sufficient number of qualified, impartial jurors will be identified and ultimately sworn as jurors. Should the process of voir dire prove otherwise, the question of transfer can obviously be revisited. See id. at 549-50 & n.7.

## II.    Government's Motion to Strike Exhibits

In response to the defendant's Second Motion for Change of Venue, the government has moved to strike certain paragraphs of Exhibit 1 (Declaration of Josie Smith) and all of Exhibit 2, the Vidmar declaration. The government argues that their inclusion in the defendant's motion papers constitute an attempt to reopen a record the Court previously declared complete. For the reasons articulated by the government and also described in Sections B(i) and B(ii) of this Opinion, the Court agrees. Paragraphs 11 through 14 of Exhibit 1 and all of Exhibit 2 to the defendant's Second Motion for Change of Venue are hereby STRICKEN.

### III.   Conclusion

As previously ordered, the defendant's Second Motion for Change of Venue (dkt. no. 684) is DENIED. The government's Motion to Strike Exhibits to Defendant's Second Motion for Change of Venue (dkt. no. 760) is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge