```
                                                    FILED
                                               IN CLERKS OFFICE
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS   2015 JAN -6 PM 5 18
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | U.S. DISTRICT COURT |
| | ) | DISTRICT OF MASS. |
| v. | ) | No. 13-cr-10200-GAO |
| | ) | (FILED UNDER SEAL) |
| DZHOKHAR TSARNAEV | ) | |

## NOTICE OF CRIMES, WRONGS, AND OTHER ACTS

The United States, by and through undersigned counsel, respectfully provides notice of crimes, wrongs and other acts committed by the defendant that are inextricably intertwined with other evidence the government expects to offer. The evidence is also admissible under Fed. R. Evid. 404(b)(2) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake and lack of accident.

A.   Uncharged crimes

The Indictment alleges criminal conspiracies involving many overt acts, some of which are independently criminal or otherwise wrong. These include the construction and transportation of explosive devices and the kidnaping and assault with a deadly weapon of carjacking victim Dun Meng. The government's Notice of Intent to Seek the Death Penalty further alleges that Tsarnaev "participated in additional uncharged crimes of violence, including assault with a dangerous weapon, assault with intent to maim, mayhem, and attempted murder, on April 15, 2013 in Boston, Massachusetts . . . and on or about April 19, 2013 in Watertown, Massachusetts." The government has previously produced in discovery all evidence that it intends to offer to prove those allegations. Evidence of these uncharged crimes is admissible to prove the acts alleged in the Indictment and Notice of Intent; to tell the story of the charged offenses; and, pursuant to Rule 404(b)(2), as evidence of Tsarnaev's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake and lack of accident.

B. <u>Tsarnaev's distribution and use of drugs, especially marijuana</u>

Virtually all of Tsarnaev's friends supplied him with drugs, sold drugs with him, purchased drugs from him, used drugs with him, or knew that he used drugs. In some instances, the purchase and/or use of drugs was the basis of the friendship between potential witnesses and Tsarnaev. In other instances, a potential witness's desire to purchase drugs from Tsarnaev, or to use drugs with him, was the reason the witness made contact with Tsarnaev. Tsarnaev's drug use is also reflected in many of his communications with others using digital and social media. Tsarnaev's drug use and relationships with others are extensively documented in the materials the government has produced in discovery.

The ubiquity and centrality of drug sales and drug use in Tsarnaev's relationships with others, his communications with them, and his social media use, make it inextricably intertwined with the evidence of the charged crimes. The government also submits that in light of the gravity of the charges against Tsarnaev, references to his drug sales (which were relatively small-scale), and his drug use (which consisted almost entirely of smoking marijuana), will not be prejudicial in the legal sense.

C. <u>Tsarnaev's illegal acquisition of a gun with an obliterated serial number and claimed use of it to commit an armed robbery</u>

The government intends to offer evidence that Tsarnaev acquired the Ruger used to kill Officer Sean Collier and to shoot at police officers in Watertown from his friend Stephen Silva four to eight weeks before the Marathon bombings. In addition, Silva is expected to testify that Tsarnaev told him that he needed the gun in order rob a pair of drug customers and later told him that he had in fact used the gun for that purpose. This evidence is admissible in the trial's guilt phase irrespective of Rule 404(b)(2) because it is direct evidence that the Tsarnaevs in fact possessed the Ruger used to kill Officer Collier and to shoot at the officers in Watertown at the

time those crimes occurred. It is also evidence of Dzhokhar Tsarnaev's ability to conceal criminal activity from family members and friends.

D. <u>Tsarnaev's plan to commit another armed robbery</u>

Silva is also expected to testify that after Tsarnaev claimed to have robbed a pair of drug customers (as discussed above), he proposed to Silva that he (Silva) rob one of Tsarnaev's college friends and split the proceeds with Tsarnaev. This proposal provides additional evidence that the two were close friends and confidantes and that Tsarnaev viewed Silva as a "partner in crime," thus corroborating Silva's testimony that he gave Tsarnaev the Ruger. Tsarnaev's proposal -- which was known only to him and Silva -- is also evidence of Tsarnaev's ability to conceal criminal planning in the time period leading up to the Marathon bombings.

        Respectfully submitted,
        CARMEN M. ORTIZ
        United States Attorney

By:   /s/Aloke Chakravarty
       ALOKE S. CHAKRAVARTY
       NADINE PELLEGRINI
       WILLIAM D. WEINREB
       Assistant U.S. Attorneys
       STEVEN MELLIN
       Trial Attorney, U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that this document was emailed to counsel of record on January 5, 2015.

        /s/ Aloke Chakravarty
        Aloke Chakravarty
        Assistant U.S. Attorney

3