UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO DEFENDANT'S MOTION TO LIMIT
DISCLOSURE OF DEFENSE PENALTY PHASE FOREIGN WITNESSES**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files this reply to the Government's Opposition ("Govt. Opp.") [DE __ (under seal), filed Jan. 4, 2015] to Defendant's Motion to Limit Disclosure of Foreign Defense Witnesses. [DE ___ (sealed), filed on Dec. 29, 2014].

The defendant's motion made two requests: 1) the delay of disclosure of foreign defense penalty phase witnesses to the government, or, alternatively, a protective order barring the government from revealing the identities of such witnesses to their home country governments or attempting to interview the witnesses before their arrival in the United States; and 2) an order requiring the government to designate a firewalled ICE agent to assist in securing parole into the United States of any potential foreign witnesses who are unable to obtain ordinary U.S. entry visas. *See, e.g., United States v. Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) (holding that failure of government to assist in obtaining special interest parole for foreign witness would violate 5th and 6th Amendments). The government opposes both requests.

The Court allowed the defense to delay, for now, disclosure of foreign defense witnesses but has not ruled on the length of that delay.[1] The request regarding the designation of a firewalled ICE agent remains pending.

As to both requests, the government argues that there is no danger that disclosure will result in intimidation or coercion of witnesses. In support of this, the government claims that law enforcement agents who have interviewed witnesses in this case "have candidly identified themselves, asked only for voluntary interviews, and have conducted themselves in a polite and respectful manner." Govt. Opp at 6. This assertion ignores the reality of this case, especially with respect to *foreign* investigation. Witnesses in the U.S. have been prosecuted, deported, detained, and, in one instance, killed. In Russia, it appears that all FBI interviews to date took place at offices of the Russian Federal Security Service (FSB), the successor agency of the infamous Soviet-era KGB.[2]

At least one witness interviewed by the FBI in Russia, Magomed Kartashov, was in custody at the time. Such an interview can hardly be characterized as "voluntary".

---

[1] The government's procedural complaints about the timing of the defense motion are unfounded. As explained in prior filings, the defense has had to severely compress its efforts to identify, interview, and assess potential foreign witnesses in light of various events beyond its control as well as the trial schedule. It was not until conversations with prospective witnesses in December 2014 that the defense fully appreciated the reluctance and fear that potential identification as a witness and travel to the United States for that purpose provokes. The government rejected a defense request to designate a "firewalled" ICE agent (as it did voluntarily in the Rwanda cases) by letter to the defense dated December 15, 2014. In any event, litigation of these issues is occurring many months before any of these witnesses are likely to testify and thus there is no conceivable prejudice to the government.

[2] A number of the reports of interviews provided by the prosecution are heavily redacted and do not reflect when or where the interviews took place.

Moreover, Kartashov was interviewed shortly after he reportedly was beaten by Russian police and arrested in late April 2013. *See* James Brooke, *Boston Bomber Spent 6 Months in Russia's Most Violent Republic*, Voice of America (May 20, 2013), *available at* <http://www.voanews.com/content/tsarnaev-dagestan-russia-ties-may-hold-valuable-clues/1664419.html>; Tim Franks, *Dagestan and the Tsarnaev brothers: The radicalisation risk,* BBC News Magazine (Jun. 23, 2013), available at <http://www.bbc.com/news/magazine-23004244>.

None of the FBI reports regarding interviews with witnesses in Russia reflect that the interviews were voluntary, whether FSB agents were present, or how the witnesses came to be at the FSB offices. On information and belief, the FSB and local law enforcement summoned and/or "escorted" the witnesses to appear. The FSB has been described as "much more than just an ordinary security service. [It combines] the functions of an elite police force with those of a spy agency, and wield[s] immense power[.]" Shaun Walker, *FSB: Vladimir Putin's immensely powerful modern-day KGB*, The Guardian (Oct. 6, 2013), available at <http://www.theguardian.com/world/2013/oct/06/fsb-putins-modern-day-kgb>.

Presumably, disclosure of foreign witnesses to the prosecution in this case and resulting efforts to conduct home-country interviews would result in further disclosure to and participation of the FSB. The possibility of intimidation, fear, and retaliation is far from remote in this highly publicized case. Indeed, any suggestion that attention from the FSB could be anything other than intimidating is profoundly ahistorical and defies common sense, particularly in the Caucasus region where repression and forced

3

relocation of entire ethnic populations in the 1940s, coupled with devastating wars and "security operations" from the 1990s through the present, remain an acute and painful part of living memory.

The government argues that delayed disclosure will unfairly hamper its case preparation. But it fails to explain why it cannot simply request any desired interviews once the witnesses arrive in the U.S. It also relies heavily on a misreading of *Taylor v. Illinois*, 484 U.S. 400 (1988). In *Taylor*, the Supreme Court rejected an argument that a trial court can *never* exclude a defense witness as a sanction for non-compliance with procedural rules. *Id*. at 406, 413. Instead, the Court held that a judge can exclude a witness where, as in the case before it, the failure to provide notice "was willful and motivated by a desire to obtain a tactical advantage." *Id*. at 415. Indeed, the Court recognized that the defense could seek a protective order or object to a disclosure requirement if "a defendant has legitimate objections to disclosing the identity of a potential witness." *Id*. at 415 n.20.

Here, the defense is not seeking a tactical advantage but has requested the same relief granted in *United States v. Munyenyezi*, No. 10-0085-SM (D.N.H.): protection of the identity of foreign defense witnesses from harassment and intimidation by foreign officials in their homeland. The government's unsupported, self-serving, and sweeping claim that the defense witnesses in that case "gave false testimony that the simplest of investigations would have exposed" is undercut by the fact that the defendant in that case was convicted. Here, moreover the subject matter of prospective testimony is background information about Mr. Tsarnaev's extended family history, which is very

4

important in the context of this case but not at all analogous to contentious accounts of the Rwandan genocide.

Finally, this Court should reject the government's claim that "it would not be practical" to exclude the prosecution team from the process of obtaining parole for foreign witnesses. In fact, in the *Munyenyezi* case, the government *agreed* to this procedure. Notably, one of the prosecutors in that case is a member of the prosecution team here and authored the government's opposition to this motion. Yet the opposition does not identify any way in which the firewall procedure created practical problems in the *Munyenyezi* case.

The government asserts that the prosecution team "would need to be involved," because ICE would need information from the FBI regarding any security issues. Govt. Opp. at 7. But surely that information is available from sources other than the prosecution team; the FBI's vast resources presumably include a readily searchable database. Any delay that the government imagines would arise from designation of a firewalled agent would be far from significant, given the fact that presentation of penalty phase defense witnesses is months away.

## Conclusion

For the foregoing reasons, as well as those set forth in the original motion, the requested relief should be granted.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/ Miriam Conrad

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document has been served upon counsel for the United States by e-mail PDF this 12th day of January, 2015.