UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim No.13-10200-GAO |
| ) | |
| DZHOKHAR A. TSARNAEV, ) | FILED UNDER SEAL |
| Defendant ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO BAR SPOLIATION OF BOAT WRITINGS AND MAKE BOAT AVAILABLE TO JURY

The United States of America, by and through its undersigned attorneys, respectfully opposes Tsarnaev's "Motion to Bar Spoliation of Boat Writings and to Make Boat Available To jury." The government's proposal to cut out the portions of the boat that bear the defendant's writings so they can be offered into evidence will not "spoil" the evidence in either the legal or commonsense use of that term. And there is no reason for the Court to order a view of the boat. Accordingly, Tsarnaev's motion lacks merit and should be denied.

### INTRODUCTION

On April 19, 2013, at approximately 7:00 p.m., an individual living in Watertown reported that a person was hiding inside his boat, which was drydocked in his back yard. Police responded to the scene and quickly determined that the person was probably Tsarnaev. As police surrounded the boat, they saw Tsarnaev poking something through the tarp covering the boat. Fearing that Tsarnaev might be preparing to shoot them, or throw additional bombs at them, several officers fired on the boat.

Officers eventually removed Tsarnaev from the boat and arrested him. When they examined the boat they discovered that Tsarnaev had written a message in pencil on an inside wall of the boat. The note read:

1

> I'm jealous of my brother who ha[s] [re]ceived the reward of jannutul Firdaus (inshallah) before me. I do not mourn because his soul is very much alive. God has a plan for each person. Mine was to hide in this boat and shed some light on our actions. I ask Allah to make me a shahied (iA) to allow me to return to him and be among all the righteous people in the highest levels of heaven. He who Allah guides no one can misguide. A[llah Ak]bar!
>
> The US Government is killing our innocent civilians but most of you already know that. As a [UI] I can't stand to see such evil go unpunished, we Muslims are one body, you hurt one you hurt us all. Well at least that's how muhammad (pbuh) wanted it to be [for]ever, the ummah is beginning to rise/[UI] has awoken the mujahideen, know you are fighting men who look into the barrel of your gun and see heaven, now how can you compete with that. We are promised victory and we will surely get it. Now I don't like killing innocent people it is forbidden in Islam but due to said [UI] it is allowed. All credit goes [UI].

The note was streaked with blood and was punctured by at least five bullet holds. Other portions of the boat likewise bear traces of blood and are punctured by bullet holes. Several photographs of the inside wall of the boat bearing Tsarnaev's written message are attached.

## ARGUMENT

The statement Tsarnaev penned inside the boat is one of the most important pieces of evidence in the case. In it, he essentially confesses to the charged crimes and explains his reasons for committing the charged crimes. The statement is plainly relevant and admissible. See, e.g., United States v. Shulman, 624 F.2d 384 (2nd Cir. 1980) (holding it was proper to instruct jury that "[a]dmissions or statements by a defendant are among the most effectual proofs in law. They constitute the strongest sort of evidence against the party making the admissions"). The government therefore intends to offer it by cutting out the sections of the boat on which it is written and bringing them into court.

The government should not be limited to introducing photographs of the defendant's writings rather than the writings themselves. The government needs to prove to the jury that

Tsarnaev actually wrote the message in the boat, and the actual writings are more convincing evidence of that than mere photographs of them. Because the government bears a heavy burden of proof, it is normally entitled to present its best evidence to the jury. See, e.g., United States v. Peters, 937 F.2d 1422, 1426 (9th Cir. 1991) ("In the absence of a specific constitutional, statutory or other violation warranting the imposition of the exclusionary sanction, and subject also to the rules regulating admissibility, the government is entitled to offer its best evidence to the court and the jury."); United States v. Brown, 520 F.2d 1106, 1126 (D.C. Cir. 1975) ("[R]ecognizing the heavy burden of proof that the Government bears in a criminal case, and recognizing that the double jeopardy rule gives it only one chance to prove a defendant guilty, it is not to be criticized for desiring to present all available incriminating evidence at the trial. The Government, as with any other party, is entitled to present its full case. Only in that way can the public interest be properly served.").

The danger that some jurors will doubt the writings are real is not hypothetical. A number of people have speculated publicly, and in the press, that it was not feasible for Tsarnaev to have written the message at all. See, e.g., http://truthandshadows.wordpress.com/2013/05/20/dzhokhars-boat-confession-the-most-unbelievable-part-yet-of-boston-psyop. Offering the actual message into evidence is an important means of dispelling those doubts.

Bringing the sections of the boat that bear the defendant's writings into court is the best and most convenient way of preserving the evidence and presenting it to the jury. A view of the entire boat, in contrast, would be impractical and unnecessary. The First Circuit held in United States v. Crochiere, 129 F.3d 233 (1st Cir. 1997):

> The decision to permit a view is entrusted to the sound discretion of the trial court. See United States v. Pettiford, 962 F.2d 74, 76 (1st Cir. 1992); United

3

> States v. Passos-Paternina, 918 F.2d 979, 986 (1st Cir. 1990). A court generally acts within that discretion in denying a motion for a view when there is sufficient evidence describing the scene in the form of testimony, diagrams, or photographs. See Pettiford, 962 F.2d at 76; United States v. Drougas, 748 F.2d 8, 31 (1st Cir. 1984). In making this determination, the court may consider such factors as the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene. See id.; Pettiford, 962 F.2d at 76; Passos-Paternina, 918 F.2d at 986; Bundy v. Dugger, 850 F.2d 1402, 1422 (11th Cir. 1988).

Id. at 236.

All of these factors militate against granting Tsarnaev's request for a view. The government has produced an enormous amount of information about the boat in discovery, including diagrams, maps, and numerous photographs of its interior. Tsarnaev himself has twice viewed the boat and had the opportunity to take his own video and photographs of it. Although the government does not concede that any such evidence is admissible, Tsarnaev has had ample opportunity to document the boat and offer any evidence he wishes the jury to consider. On the other hand, to say that arranging a view of the boat would be "logistically difficult" is an understatement. The boat is quite large: it is 22 feet long, nearly eight feet wide, and over nine feet high when on a trailer. It is not clear that the boat would fit in the courthouse garage, as Tsarnaev suggests. The alternative -- having the jurors view the boat outside the courthouse or at a remote location -- would undoubtedly create a media circus and inevitably expose the jurors to unwanted media scrutiny.

A view would be time consuming and difficult for other reasons as well. Regardless of whether the boat is located, it will take time for the jurors to get to it and then return to court, especially in light of necessary security arrangements. It also will be difficult and potentially unsafe and unsanitary for jurors physically to view the boat's interior. To enter it, one must

4

climb a ladder and then climb over boat's side, which some jurors may find difficult or even impossible to do. The boat itself is still littered with debris and broken glass, and there is dried blood in several places. Finally, because the writing on the boat's interior is in a small hand and has faded over the past two years, it will take time for each juror to read it. But jurors may well choose not to spend the necessary time in order to avoid inconveniencing other jurors, get the view over with, and return to more comfortable surroundings. If the writings are presented to them in court, in contrast, they can view them at their leisure from the relative comfort of the jury box without any inconvenience, wasted time, transportation headaches, extra security arrangements, exposure to debris, broken glass, or dried blood, or unwanted media scrutiny.

Tsarnaev's argument in favor of a view is at best confusing and unconvincing. He claims a view "will permit the jury to see the spatial relationships inside the boat and to understand where and how, for example, the bloodstains and bullet holes on the surfaces that contain writings fit into the broader picture." That argument makes little sense. To the extent the "spatial relationships" inside the boat matter at all, they can easily be illustrated with a diagram. Bloodstains, to the extent they are part of a relevant "broader picture," appear on the message itself and in the photographs of it, obviating the need for a view. Bullet holes are not even arguably part of any relevant "broader picture," because the bullets that made the holes were fired after Tsarnaev wrote the message. In any event, like bloodstains, bullet holes appear in the message itself and in the photos of it.

Finally, excising the portions of the boat that bear the defendant's writings will not "spoil" anything. The rest of the boat will remain intact, allowing for future inspection if necessary. And the excised portions could always be put back if that ever became necessary.

5

The First Circuit has repeatedly affirmed the government's right to manipulate or even destroy potential evidence where the defendant cannot establish that it has evidentiary value. See United States v. Alston, 112 F.3d 32, 35-36 (1st Cir. 1997); United States v. Guerrero, 114 F.3d 332, 345 (1st Cir. 1997). Tsarnaev has not even alleged that the boat has evidentiary value other than to show how Tsarnaev's writings fit into the "broader picture." That nebulous claim barely merits consideration. It certainly does not carry the day.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's motion to bar purported "spoliation" of the writings in the boat, deny his motion for a view, and vacate the previously-granted stay so that the government can excise the portions of the boat it intends to offer in time for trial.

.

                          Respectfully submitted,

                          CARMEN M. ORTIZ
                          United States Attorney

By:   /s/ Aloke Chakravarty
       ALOKE S. CHAKRAVARY
       WILLIAM D. WEINREB
       NADINE PELLEGRINI
       Assistant U.S. Attorneys
       STEVE D. MELLIN
       Trial Attorney, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served via electronic mail to Judy Clarke, Esq., counsel for Dzhokhar Tsarnaev, on January 12, 2015.

/s/ Aloke Chakravarty
ALOKE CHAKRAVARTY