UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 13-CR-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF
UNCHARGED CRIMES, WRONGS, AND OTHER ACTS**

Defendant, Dzhokhar Tsarnaev, by and through counsel, and pursuant to Fed. R.

Evid. 404(b), Local Rule 117.1(a)(4)(B),  and the Fifth and Eighth Amendments to the

United States Constitution, respectfully requests that the Court exclude any and all

evidence concerning:

1. the defendant's use, possession, purchase and distribution of marijuana, except

   where the government establishes that a particular instance of such misconduct is

   inextricably intertwined with its proof of the crimes charged in the indictment;

2. Stephen Silva's uncorroborated statement that the defendant admitted to having

   robbed a couple of drug dealers with a gun that Silva says he furnished; and

3. Silva's uncorroborated statement that the defendant proposed to Silva that they

   orchestrate another robbery of a college friend that Silva would commit, and that

   they could split the money.

The grounds for this motion are that:

1

(a) the government failed to provide timely pretrial notice of Rule 404(b) evidence as required by the Rule and by Local Rule 117.1(a)(4)(B),

(b) the fact that some references to the defendant's dealings in marijuana may be intertwined with the government's proof does not authorize introduction of whatever drug-related evidence the government may possess; *see* Fed. R. Evid. 403;

(c) Silva's uncorroborated statement concerning the defendant's supposed boast that he had robbed two drug dealers with the borrowed firearm is neither "inextricably intertwined" with any of the offenses charges, nor within any category of admissible "other crimes" evidence under Rule 404(b), and is in event properly excluded under Rule 403; and

(d) Silva's further uncorroborated statement that the defendant proposed a second robbery that never occurred is likewise inadmissible under Rules 404(b) and 403.

## DISCUSSION

1.    <u>The notice was untimely.</u>  The government's 404(b) notice was served and filed on the first day of trial, January 5, 2015.  This is untimely under the Rule itself, which provides that upon request by a defendant (a request that is automatically deemed to have been made under the Local Rules of this Court), the government "must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so *before trial* — or during trial if the court, for good cause, excuses lack of pretrial notice" (emphasis added).  And Local Rule 117.1(a)(4)(B)

2

contemplates that 404(b) notice will occur "no later than 21 days before the trial date."

In its December 29, 2014, trial brief, the government did include a single sentence under

the heading, "Other 'bad acts' evidence" in which it stated:

> As the government has already noticed in a separate pleading, it intends to
> offer evidence that the defendant sold and used drugs, and that he obtained
> the Ruger used to kill Officer Collier (among other things) by telling
> Stephen Silva that he needed it to rob other drug dealers.

DE ___ at 20.  But defense counsel had never received any such "separate pleading," and

when counsel asked about it, the government responded by email at 7:20 p.m. on Friday,

January 2, as follows: "Counsel – to the extent that you did not receive the earlier 404(b)

notice referenced in the trial brief, we attach it herewith."   The attachment was an

unsigned, undated copy of a 404(b) notice that bore no proof of service.  Defense counsel

responded by asking the government to provide the docket number of this "earlier 404(b)

notice," whereupon the government finally served and filed its 404(b) notice on the first

day of trial.  The notice was unaccompanied by any explanation of why the notice was

being served 21 days late.

 The government's proffered 404(b) evidence should be excluded on this ground

alone.  One of the robbery-related allegations by Stephen Silva was mentioned in various

disclosures made by the government in August, 2014; the second was first disclosed on

December 17, 2014, more than three months after Silva proffered it.  Both allegations

include many references to telephone text messages, but the government has not provided

Silva's phone records or his cell phone.  The  innumerable undercover tapings, interviews

and proffers of this extremely cooperative witness are replete with exaggerated and

3

irrelevant factual assertions. Only actual, timely notice that the government intended to offer particular parts of Silva's statements could have alerted the defense to what evidence it had to meet. Specifically, without the notice that Rule 404(b) requires, the defense had no way to know that it would be required to investigate and rebut Silva's allegations involving an uncharged robbery and a vague plan to commit another. Moreover, had the government surfaced its intention to portray the defendant as an armed robber in the months before the Marathon bombing before the jury questionnaire was finalized, counsel would have requested that the Court include questions about whether such evidence might affect jurors' impartiality.

Those are among the reasons why Rule 404(b) does not permit the government to surprise defendants with its intention to introduce other-crimes evidence on the eve (or, as here, the day) of trial. Absent a showing of good cause for the very late notice, the Court should deny the government's request as untimely.

2. The government should be required to provide advance notice and a particularized showing of relevance before eliciting any evidence of the defendant's marijuana use and sales. The government claims that the defendant's "relatively small-scale" marijuana dealing and his marijuana use were all integrally related to his personal relationships and associations, and suggests on this basis that it may admit whatever evidence concerning drugs use and trafficking it wishes as "inextricably intertwined with the evidence of the charged crimes." But the bombing conspiracy in this case has nothing to do with drugs or drug sales, and the connection between the charged crimes and the defendant's drug use and drug selling is by no means self-evident. Since the government

4

offers no examples, nor any actual notice, of the drug-related evidence it expects to offer, the Court has no way to assess the validity of its claim that proving the defendant's involvement in the Boston Marathon bombing conspiracy will either require or entitle it to present evidence of his "small-scale drug activities." To the extent that such evidence would be admissible under Rule 404(b), the time for such notice is long since past. And if any of it is arguably admissible as intrinsic to the government's proof of the crimes charged, the Court should prohibit the prosecution from mentioning it during its opening statement and  require the government to provide the defense with advance notice and an opportunity to object prior to eliciting such testimony in the presence of the jury.

      3. <u>Silva's claim that the defendant boasted about a robbery.</u>  The government plans to call a drug dealer and acquaintance of the defendant, Stephen Silva, to testify that Silva loaned him the Ruger handgun that allegedly was eventually used to kill MIT Police Officer Sean Collier.  Silva is expected to describe in detail the circumstances surrounding the defendant's alleged acquisition of the gun and Silva's purported unsuccessful attempts to retrieve it.  In addition to this testimony, the government proposes to have Silva testify that, at some point in February or March, 2013, the defendant told Silva that he used the Ruger to rob two University of Rhode Island students, claiming that  the students had used a BB gun to attempt to rob him of a half-pound of marijuana, and that he took the students' BB gun as a "trophy."  DT-0087291-92.  Other than Silva's claim that the defendant made this statement, the government has no evidence that any such robbery ever took place, or that the students or their BB gun even exist.

5

The government will presumably argue that the evidence is linked to the charged crimes by the supposed use of the Ruger pistol. But nothing in Silva's story independently corroborates that the defendant either possessed or used the Ruger: the government's evidence is simply an unsupported allegation that the defendant admitted to committing an additional uncharged crime with the same gun. Neither the defendant's admission nor the robbery itself are corroborated by any evidence.

Even considered together with all of the government's other evidence, Silva's bare assertion, without more, is insufficient to support a finding by the jury that the defendant actually robbed the two drug-dealer/students, much less that he used the Ruger to do it. "The first benchmark [for admission of 404(b) evidence] is that the finder of fact 'can reasonably conclude that the act occurred and that the defendant was the actor.'" *United States v. Raymond*, 697 F.3d 32, 38 (1st Cir. 2012) (quoting *Huddleston v. United States,* 485 U.S. 681, 689 (1988)). The proffered evidence here fails to meet even this threshold requirement.

Next, even if this "first benchmark" were satisfied, whether the defendant used the Ruger to turn the tables on two would-be robbers, as Silva claims he said, has no tendency to prove any material fact at issue beyond Silva's testimony that he loaned the gun to the defendant, and never got it back. No litany of uncorroborated "other crimes" statements involving the gun provide any logical support to Silva's central contention, which is simply that he loaned the Ruger to the defendant several weeks before the bombing and the Collier murder, and the defendant never returned it. However, the evidence, if believed, would tend to prove the defendant's criminal and violent propensity

6

— precisely the evidentiary harm that Rule 404(b) is intended to prevent. *See generally United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000). Moreover, even had the evidence satisfied the requirements for Rule 404(b), its prejudicial effect would require its exclusion under Rule 403. *See United States v. Gilbert*, 229 F.3d 15, 20-25 (1st Cir. 2000).

The unfair prejudice from admitting the Silva robbery claim is compounded by the fact that once admitted, it will remain before the jury at any capital sentencing hearing that may occur in this case. At that point, Silva's uncorroborated claim that the defendant admitted committing a marijuana-related robbery with the Ruger will comprise the sum total of his history of violence prior to April 15, 2013. Had the government alleged this robbery as a nonstatutory aggravating factor at sentencing, it would have assumed the burden of proving that the defendant actually committed it beyond a reasonable doubt. *See* 18 U.S.C § 3593(d) ("The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt."). The government could not have met this heavy evidentiary burden, and should not be permitted to circumvent it by shoehorning the Silva robbery evidence into the guilt-phase record by means of Rule 404(b).

4. Silva's claim that the defendant proposed a second robbery that never occurred. Finally, the government proposes to have Silva testify to a confusing discussion he claims to have had with the defendant about the latter's supposed plan, never carried into effect, to rob a former friend of Silva's. The recently-disclosed interview memo containing this

testimony is so opaque and ambiguous as to defy summarization, so it is best simply

quoted verbatim:

> After TSARNAEV robbed the college students from Rhode Island,
> TSARNAEV approached SILVA in either late March or early April, 2013
> and stated he wanted to do another robbery. TSARNAEV provided SILVA
> with the following information: NATHAN Last Name Unknown (LNU)
> wanted to purchase a half pound of marijuana from TSARNAEV.
> TSARNAEV described NATHAN as Asian and was STEVEN's roommate
> during their freshman year at UMass Dartmouth. NATHAN provided
> information concerning STEVEN storing illegal narcotics in his dorm room
> to the resident assistant (RA). As a result, TSARNAEV disliked NATHAN
> and wanted to rob him of his money. TSARNAEV agreed to sell NATHAN
> half a pound of marijuana .SILVA charged his clients between $1,600 and
> $1,700 for half a pound of marijuana. Since college students paid more
> money for marijuana, TSARNAEV prices were higher. TSARNAEV told
> SILVA he was charging NATHAN $1, 900 for the half pound of marijuana.
> TSARNAEV wanted NATHAN to meet with SILVA in the Boston area to
> purchase the marijuana. TSARNAEV instructed SILVA to steal
> NATHAN'S money instead of selling him the marijuana. TSARNAEV
> wanted to split the $1,900 with SILVA. SILVA agreed, but the robbery
> never occurred when NATHAN did not agree to purchase the marijuana for
> $1,900. SILVA suspects the majority of the discussion between
> TSARNAEV and himself occurred via text message.

DT-0087293 (FBI Interview of Stephen S. Silva (third proffer session), September 4,

2014) at 4-5. This statement suggests that Silva, not Tsarnaev, had the motive to rob

Nathan and was the person who was actually supposed to carry out the robbery. The

statement also includes no mention of the Ruger. The robbery never occurred. Tellingly,

however, Silva later admitted to the FBI that he himself had used the Ruger to commit a

similar drug-related robbery in Central Square in Cambridge in which the defendant had

no involvement. Silva admitted that he had failed to mention this robbery during

previous proffer sessions because "he wanted to make himself look better." (Silva

proffer interview, Sept. 17, 2014) at 1.

8

All of the reasons why Rule 404(b) does not authorize admission of Silva's claim that the defendant admitted an actual robbery with the Ruger apply with even greater force to this supposed inchoate and vague robbery scheme. Given the government's disclosures to date, this is propensity evidence pure and simple. It does not further link the Ruger to the defendant, but merely depicts him as someone whose character is such that he would propose and help plan a robbery of Silva's former acquaintance. The evidence has no logical connection to the crimes charged in this case, and should not be admitted. Moreover, even if the evidence had some relevance to establishing the defendant's possession of the Ruger or some other fact at issue in the case, such probative value is substantial outweighed by the danger of unfair prejudice and confusion of the issues, and so the evidence should be excluded on that basis as well. *See* Fed. R. Evid. 403.

## CONCLUSION

The government's 404(b) evidence should be excluded due to lack of timely notice, or, in the alternative, because it is insufficiently probative of any material fact at issue under Rule 404(b), and too unfairly prejudicial under Rule 403. To the extent that the government claims that particular acts of drug dealing or drug use are inextricably tied to the government's case, and thus are admissible notwithstanding Rule 404(b), the Court should order the government to provide advance notice of each such act before offering it or referring to it in opening statements to permit objections where appropriate, and rulings by the Court.

9

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document has been served upon counsel for the United States by e-mail PDF this 9th day of January, 2015.