UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION TO LIMIT TESTIMONY OF
GOVERNMENT TERRORISM EXPERTS**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files this reply to the Government's Opposition to Defendant's Motion to Limit Testimony of Government Terrorism Experts [DE __ (under seal), filed Jan. 5, 2015].

The government seeks to evade the protections of Rule 403 and *United States v. Mehanna,* 735 F.3d 32 (1st Cir. 2013), in two ways. First, it greatly exaggerates its need for inflammatory evidence that has only the most tenuous link with the defendant's own beliefs and ideas, suggesting that because he "contests his guilt" – by which apparently is meant that he has pled not guilty – the Court should allow the government free rein to prove his intent by parading before the jury whatever inflammatory biographical or historical data it can dig up about each of the authors whose works were found on his computer. Second, it cites inapposite cases in which the defendant's knowledge of or intent to promote terrorist activity was either an element of at least some of the offenses charged, the key disputed issue at trial, or both. *See, e.g., United States v. Farhane,* 634 F.3d 127, 160 (2nd Cir. 2011) (expert testimony about results of internet searches for

publicly-known al-Qaeda terrorist activities in Saudi Arabia was admissible to show that doctor who volunteered to work for al-Qaeda and had lived in Saudi Arabia for a year would have known about al-Qaeda's terrorist activities); *United States v. El-Mezain,* 664 F.3d 467 (5th Cir. 2011) (evidence of Hamas-sponsored violence found on defendants' premises was admissible to rebut their denial that they supported Hamas); *United States v. Jayyousi*, 657 F.3d 1085, 1108 (11th Cir.2011) (edited video clip of interview with Usama bin Laden was admissible in material-support prosecution, given evidence that defendants "referred to bin Laden by his nickname 'Abu Abdallah,' which was known only to his supporters and identified him as one of the biggest backers of jihad in Afghanistan" ); *United States v. Abu-Jihaad,* 630 F.3d 102, 133-34 (2nd Cir, 2010) (in prosecution of navy serviceman for communicating national defense information respecting the movements of a United States Navy battlegroup to unauthorized persons and of providing material support to terrorists, admission of potentially inflammatory material from jihadi website that defendant could have viewed when he visited the site was not an abuse of discretion). In all of these cases, whether the defendant actually supported jihadi causes and activity was an element of the crime charged or at least a key disputed issue of fact. Here it is neither, and so these cases do not entitle the government to inject into this case whatever it chooses from the recent history of violent Islamic extremism.

The need for caution in admitting extraneous evidence of violent Islamic extremism has been underscored by the extremely disturbing events in Paris this week – events which are now being widely compared in both local and national news media to

2

the case against this defendant. *See e.g.* Kevin Johnson, "Paris and Boston attacks pose striking parallels," USA TODAY (Jan. 8, 2015) ("'Against the backdrop of jury selection for (surviving bombing suspect) Dzhokhar Tsarnaev, it's like Boston is reliving what happened all over again,' said Rep. William Keating, D-Mass, referring to the start of Tsarnaev's murder trial."); Andrew J. Bacevich, "Paris attack shows the West is not free from terrorism," BOSTON GLOBE (Jan. 9, 2015);[1] Erin Burnett, "Similarities between suspects and Tsarnaev brothers?" CNN International (Jan. 8, 2015), available at <http://edition.cnn.com/videos/us/2015/01/08/erin-dnt-feyerick-kouachi-tsarnaev-comparison.cnn>. In another pleading filed today, the defendant has drawn the Court's attention to the prejudicial impact of a series of highly-publicized violent incidents that have occurred over the past six months. Suffice it to say here that it will be impossible to provide this defendant with a fair trial – in which he is judged on the basis of his own legal and moral guilt, rather than on the basis of each day's fresh outrages from around the world – if the government is allowed to conflate his own knowledge and intent with that of every supporter of religious terrorism whose name appears in, or can be linked to, the files found on his computer.

---

[1] Prof. Bacevich's Boston Globe article of this morning begins, "Striking similarities link this week's terrorist incident in Paris to the Boston Marathon bombing of 2013. In each case, a vicious attack perpetrated in broad daylight in the middle of a great city, kills and maims innocents. In each, the attack originates not from abroad, but from within. Both assaults involve brothers who identify with Islam. Both shock Western consciences and evoke a spirit of transatlantic solidarity. In an Internet instant, the phrase 'Je suis Charlie' has become omnipresent, a tribute to slain Parisian satirists, who, it seems fair to say, few of us had ever heard of just days ago. It's 'Boston Strong' with a French accent."

Before concluding, the defendant would add a word about another aspect of the government's terrorism expert testimony that is the subject of a *Daubert* challenge. In his Sealed Motion to Exclude Unsupported "Scientific" Opinions of Government Terrorism Experts [DE 731], the defendant pointed to the government's expressed intention to have one or more of its three terrorism experts testify concerning, among other things, the "circumstances associated with family members' playing a substantial role in the radicalization process and their absence in this case." The defendant challenged this seemingly empirically-based conclusion under *Daubert*, Rule 702, and 18 U.S.C. § 3593 as lacking any basis in either fact or science. The government's response [DE 785], appears to concede that its experts will offer no research or other social science support for the contention that "circumstances associated with family members' playing a substantial role in the radicalization process [are absent] in this case," but instead will simply posit as an alternative explanation that "Tsarnaev became radicalized in part by imbibing radical ideas from traditional sources such as books, magazines, lectures, recordings, videos, and websites." DE 785 at 3. This response raises a new question as to whether the government's terrorism experts' "scientific . . . or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," namely, the extent to which the defendant's radicalization was influenced by his older brother. Fed. R. Evid. 702(a). In the absence of any indication that the government's terrorism experts' opinions on this important question will be based on anything more than on their own unsupported hunches, the opinions should be excluded.

4

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document has been served upon counsel for the United States by e-mail PDF this 9th day of January, 2015.