FILED
IN CLERKS OFFICE
2015 JAN 20 AM 11: 20
U.S. DISTRICT
DISTRICT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

## DEFENDANT'S MEMORANDUM REGARDING JUROR 38

The defendant, Dzhokhar Tsarnaev, by and through counsel, hereby files under seal the following Memorandum setting forth additional information relevant to the qualifications of Juror 38, who was questioned on January 16, 2015. The Court deferred its ruling on this juror's fitness to serve pending review of the voir dire transcript and further argument.

As the Court will recall, Juror 38 is a self-employed information technology consultant who claimed a hardship on his questionnaire (Q. 10: "I need to work to pay my mortgage and health insurance bills. Without working I have no income.") His questionnaire further revealed that

- he had formed opinions that the defendant was guilty and should be sentenced to death, Q. 77,

- he had expressed these opinions to both his spouse and his mother, Q. 78,

- that the two court cases he had followed in the past 10 years were this case and "the trials related to [Tsarnaev's] friends in UMass Dartmouth," Q. 50,

- he had seen "a lot" of media coverage about the case, Q. 73,

1

- his reaction upon receiving his jury summons included "stress" and "anger," Q. 74, and

- he had two friends at the finish line of the 2013 Boston Marathon, a Boston police officer who was a first responder, and a cousin who was "at the Marathon medical tent." Q. 80.

The Court followed up on the statement concerning the juror's friend who was a first responder as follows:

> THE COURT: Question 80 on Page 20, we asked if you or a family member or close friend actually witnessed the events, and you said a friend responded as a first responder at the finish line.
> THE JUROR: Yup.
> THE COURT: He's a Boston officer. And a cousin was at the Marathon medical tent.
> THE JUROR: Yup. My cousin was running the tent for, like, the cool-down.
> THE COURT: That was where, in Copley Square?
> THE JUROR: Yup, yup. He was there during that. And then a friend of mine was one of the first officers there at the finish line. I think he was actually at the finish line when it all happened.
> THE COURT: Have you talked to him about his experience there, that is, well before this case?
> THE JUROR: Yeah.
> THE COURT: Or thereafter, too, but I meant around the time.
> THE JUROR: A little bit. More of it was he was on the cover of Time Magazine, so it was talking about that.
> THE COURT: I guess what I'm wondering about is have you -- has he been --
> THE JUROR: I haven't talked --
> THE COURT: -- a significant source of information about the events to you as opposed to, for example, the media?
> THE JUROR: No, not to me.
> THE COURT: Now, I'm not clear on which person we're talking about actually.
> THE JUROR: My friend that's the police officer.
> THE COURT: The police officer, okay. That's what I thought. And the cousin, was he involved in responding in any way after the event?

> THE JUROR: I think he was just there and coordinating everything that was going on and kind of made a triage area. But I haven't really -- we didn't really talk about it.

The Court then went on to question the juror about his opinions and their effect, if any, on his impartiality. The Court did allow counsel for the parties to ask follow-up questions, but by that point the Court's and the parties' focus appeared to be on the juror's impartiality, and all follow-up questions concerned that ultimate issue.

It now appears that while the juror may have responded truthfully to the Court's somewhat narrow question about his police officer friend (Q: "I guess what I'm wondering about is has . . . he been . . a significant source of information about the events to you as opposed to, for example, the media?" A: "No, not to me."), follow-up on this issue would likely have revealed considerable additional information relating to his impartiality. The only Time Magazine cover to which the juror could have been referring is this one:



That iconic image of the Marathon bombing aftermath is a cropped version of Government's Exhibit 38, which the government proposes to introduce through Boston



Police Officer Tommy Barrett. Officer Barrett's identity as the rescuer of the little boy depicted in the photograph has been widely reported in the press. *See e.g.* Meghan Irons, "Officer's rescue of boy makes cover of Time Magazine," Boston Globe (April 19, 2013); Andrew Katz, "A Hero Among Heroes: A Boston Cop's Story at the Marathon," Time Magazine (April 22, 2013). Former Police Commissioner Ed Davis has also publicly praised Officer Barrett as the policeman who extinguished flames on the clothing of a bombing victim moments after the second blast on Boylston street. Tony Hanson, "Boston Top Cop Recalls Marathon Bombings for Police Chiefs' Convention in Philadelphia," CBS Philly (October 22, 2013) (quoting Commissioner Davis as stating that "Officer Tom Barrett approached one of the victims, who was on fire, and Tommy used gloved hands to put the fire out"). The government intends to introduce surveillance

4

video from the Forum Restaurant showing Officer Barrett's actions in the immediate aftermath of the second blast. Government's Exhibit 25.

Officer Barrett was listed on the prospective jurors' Witness List A as "Tommy Barrett, BPD." In response to Question 85, which asked whether Juror 38 knew anyone listed on the witness list, he wrote, "None."

It thus appears that Juror 38's friend is Officer Barrett, who will be depicted at trial as the heroic figure of rescue in what is perhaps the single most emotionally powerful photograph of the entire Marathon bombing.[1] Under these circumstances, knowing that the juror's friend was not "a significant source of information about the events to you as opposed to, for example, the media" — and this for a juror who acknowledged having seen "a lot" of media coverage — provides no assurance that Officer Barrett's experiences at the blast site would not affect Juror 38's judgment if he were to serve as a member of the jury.

Given everything else that this juror has already disclosed, his friendship with Officer Barrett raises grave doubts as to this juror's impartiality. The defendant's motion to excuse him should therefore be granted. Should the Court nevertheless entertain any uncertainty on this matter, however, it will at least be necessary to recall Juror 38 to explore what he learned from Officer Barrett, how the bombing affected him, and the extent to which his friendship with Officer Barrett may affect his impartiality. In addition, this new information will require further questioning to explore what the juror

---

[1] The poignancy of this photograph is increased for anyone who knows, as Officer Barrett surely did, that the father of the injured, terrified child depicted in the photograph had just lost a leg in the blast.

5

may have learned about or from his cousin who was "coordinating everything that was going on and kind of made a triage area" at the Marathon medical tent following the blasts, as well his relationship with the cousin and how he was affected by the events .

Finally, information gathered by the defense indicates that the juror's consulting business, RyComm, is located at the Prudential Center. His office is thus near the site of the second blast, and is in a building to which many people fled for safety after the explosions. Only further questioning can determine whether the juror was at work that day, or was affected in any other way by the proximity of his office to the Marathon bombing. However, we submit that it is unnecessary to recall Juror 38 for further questioning, since the present record already mandates his disqualification.

## Conclusion

For the forgoing reasons, the defendant requests that his challenge to Juror 38 be granted.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/ David I. Bruck

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101

(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that this document was served upon opposing counsel by email on January 19, 2015.

/s/ David I. Bruck