UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

OPINION AND ORDER
February 6, 2015

O'TOOLE, D.J.

On January 22, 2015, the defendant filed his third motion for a change of venue.[1] On January 28, the motion was opposed by the government. That same day, the defendant moved to file a reply to the government's opposition (without attaching the requested reply brief) and on January 30, filed a motion for leave to file under seal a reply brief with a proposed reply. On February 2, the next business day, operations in the courthouse were limited due to weather. Then, at the end of the day on February 3, the defendant filed a motion to stay jury selection pending the disposition of a second petition for mandamus apparently filed that same day.

## I.      Defendant's Motions for Leave to File a Reply Brief

As an initial matter, the motions for leave to file a reply (dkt. nos. 993, 996) are DENIED. The venue issues have been thoroughly briefed and rebriefed. In his motion to file a reply, the defendant points to the government's use of "features of the ongoing voir dire procedure" and seeks to file a reply in order to "similarly cite" material from voir dire. (Mot. for Leave to File Reply to Gov't's Opp'n to Third Mot. for Change of Venue at 1 (dkt. no. 993).)

---

[1] The relevant procedural history regarding the defendant's prior motions to change venue is fully described in the Court's January 2, 2015 Opinion and Order (dkt. no. 887).

First, the defendant filed his third venue motion while the conduct of individual voir dire was ongoing, but chose to focus exclusively on data from the juror questionnaires. A reply brief is not the proper place to raise new arguments which could have been advanced in the supporting memorandum. Cf. United States v. Bradstreet, 207 F.3d 76, 80 n.1 (1st Cir. 2000) (citing United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993)). Second, as voir dire advances on a daily basis, new data will also emerge on a daily basis. Permitting the defendant to add select quotes from the transcript of the ongoing voir dire process will only serve to encourage unhelpful serial briefing as the process develops daily. Third, having reviewed the defendant's proposed reply brief, I find that permitting the defendant to file it would not materially change my analysis, chiefly because the defendant's strategic selections of quotes and specific experiences with a few jurors during voir dire are misleading and not representative of the process as a whole.[2]

## II.   Defendant's Third Motion for Change of Venue

The third motion for a change of venue is denied, for reasons both old and new. The old reasons are essentially the same reasons the prior motions were denied, and those opinions are hereby incorporated by reference.[3]

The new reason is that, contrary to the defendant's assertions, the voir dire process is successfully identifying potential jurors who are capable of serving as fair and impartial jurors in

---

[2] To the contrary, the experience of voir dire suggests instead that the full process—including summonsing an expanded jury pool; utilizing a lengthy questionnaire jointly developed by the parties and the Court; giving the parties ample time to review questionnaires, research jurors, and consult with their jury selection advisers; and permitting both the Court and the parties to conduct thorough voir dire—is working to ferret out those jurors who should appropriately be excused for cause.

[3] I again reject the defendant's attempt to rely upon the declaration of Neil Vidmar, which has now been disallowed four times, and the portions of the Josie Smith declaration which have already been stricken.

this case. In light of that ongoing experience, the third motion to change venue has even less, not more, merit than the prior ones.

That the voir dire process has been time-consuming is not an indication that a proper jury cannot be selected for this case. It is rather in the main a consequence of the careful inquiry that the Court and counsel are making into the suitability of prospective jurors. That takes time, and we have been taking it.

It is also necessary to have a large pool of qualified jurors available for the next phase of jury selection, which is the exercise of peremptory challenges. Because this is a death penalty case, both sides have significantly more peremptory challenges than they would in other criminal cases. Whereas in a typical non-capital federal case the parties might have <u>between them</u> a total of 18 to 22 peremptory challenges (depending on the number of alternates seated), in this case they <u>each</u> have 23, for a possible total of 46. That requires that we clear for possible service a minimum of 64 potential jurors, many more than commonly necessary. Indeed, if this were a typical criminal case of the sort tried routinely in this Court, we would likely already be finished. We have made substantial progress toward achieving the goal of the ongoing voir dire process. There is no reason to expect that such progress will cease, and there is no reason to halt a process that is doing what it is intended to do.

At base, the defendant's argument purports to be based on an examination of the written questionnaires completed by prospective jurors in early January. While the questionnaires remain an important source of information about jurors and their attitudes, they are no longer the only source, nor for some matters the best source. Some questions on the written form asked jurors to answer by selecting from various options presented, usually by checking a box. Other questions asked jurors to respond in their own words. Checking a box may result in answers that appear

more clear and unambiguous than the juror may have intended or than is actually true. On the other hand, answers in the jurors' own words can often be unclear, inapposite, or incomplete. In the voir dire that is underway, the Court and the parties have been able to follow up on the written answers as appropriate to try to clarify what may be ambiguous, to explore whether a juror would qualify or amplify an apparently unambiguous answer, and to probe matters not expressly addressed in the questionnaire. In other words, at this stage the questionnaire answers are only a starting point. Decisions to qualify or excuse any prospective juror will be made on the basis of all the information available, but especially on the individual interviews of each of the jurors, face to face. It is therefore a fundamental flaw in the defendant's argument in support of his motion that it relies primarily on the questionnaire answers. As pointed out above regarding the motion to file a reply, when the defendant filed his motion it was open to him to support it by reference to what emerged during voir dire, but he apparently chose not to do so. The technique of saving main arguments for a reply brief is one the defendant has previously sought to employ on this issue.

The defendant is correct that in answering the questionnaire a substantial number of jurors checked the box "yes" in responding to a question whether, based on media reports or other information, they had formed an opinion that the defendant is guilty.[4] The government is likewise correct in pointing out that a substantial number of those jurors also indicated, again by checking a box, that they would be "able" to set such an opinion aside and decide the issues in the case based solely on the evidence presented at trial. Neither answer needs or deserves to be

---

[4] To this point, it is worth noting that the percentage the defendant claims checked the box (68%) was substantially smaller than the percentage of poll respondents who thought the defendant was clearly or probably guilty in the <u>four jurisdictions</u> previously surveyed by the defendant. (Reply to Gov't's Opp'n to Def.'s Mot. for Change of Venue and Submission of Supplemental Material in Supp., Decl. of Edward J. Bronson, Ex. 4f at 5 (dkt. no. 461-23) (92% in Boston, 84% in Springfield, 92% in Manhattan, and 86% in Washington, D.C.).)

4

accepted at face value, and voir dire has afforded an opportunity, participated in by counsel for both parties, to explore the issues further with jurors. Some jurors who said on the form they would be "able" to put a prior opinion aside and decide issues solely on the trial evidence backed off from that position when questioned during voir dire and said they would not be able to do so. Other jurors confirmed their answer, usually explaining why they thought they would be able to decide the case only on the trial evidence. For example, one human resources professional explained that it was a common occurrence in her experience for her initial impression of the merits of a workplace controversy to be altered or even reversed when she had information from a fuller or more careful investigation, and so she had learned to keep her judgment suspended until she had all the necessary information. Other jurors have said that as citizens they understand and are committed to the principles of the presumption of innocence and proof beyond a reasonable doubt. Others have said they do not always accept media coverage as reliable. Neither such reversals of position nor added explanations can appear from examination of the questionnaires alone. They are the product of the voir dire process that the defendant seeks to interrupt.

The defendant also contends that there are too many jurors who have some "connection" to the Marathon events. There are many different kinds of possible "connections," from participation in the race itself to presence as a spectator to relationships with victims to donations to charitable funds to possession of "Boston Strong" merchandise. To understand whether any such "connection" should disqualify a juror otherwise qualified to serve requires going beyond the face of the questionnaire and asking jurors directly about it. That also is happening in the voir dire process and permits the development of additional, and thus helpful, information about the nature and strength of any "connection" in a face-to-face, give-and-take with a juror.

It must also be noted that the defendant's presentation of a series of selective quotations from the 1300-plus questionnaires is misleading because the quotations are not fairly representative of the content of the questionnaires generally. It is possible to match the defendant's selection with a different group of quotations that, considered by themselves, would lead to opposite conclusions. The selected quotations are attention-getting, and they have gotten attention from the media. After putting them in a public filing and thus having effectively invited the media to give them publicity, the defendant now piously complains about the level of media coverage.[5]

When I learned that the defendant's memorandum included quotations from the confidential juror questionnaires, on my own motion I ordered the unredacted memorandum to be placed under seal. In that brief electronic order, I described the public filing of contents of the questionnaire as improper, and I adhere to that characterization. (See infra Part IV.) At the time jurors filled out the questionnaires, I told each panel of jurors that the completed questionnaires would initially be reviewed only by the participants in the case and by the Court, and that they would not become part of the public record unless and until I determined whether they include any sensitive information that should be kept confidential permanently. All parties were aware of that advice to jurors. Notwithstanding, the defendant made parts of completed questionnaires part of the public record without leave of Court, and that is unfortunate. It not only nullified the assurance I had given the jurors, but it also invited further public discussion of matters to be raised in the voir dire process, creating a possible impediment to the success of that process.

---

[5] During the voir dire process, interviewed jurors have assured me that they have followed my instructions to avoid media stories about this case.

Concerns about jurors who have fixed opinions or emotional connections to events, or who are vulnerable to improper influence from media coverage, are legitimate concerns. The Court and the parties are diligently addressing them through the voir dire process.

The defendant's third motion for a change of venue (dkt. no. 980) is DENIED.

### III.    Defendant's Motion to Stay

On February 3, the defendant apparently filed with the Court of Appeals a second petition for mandamus, and in connection with that filed at 5:19 p.m. a motion with this Court to stay proceedings pending resolution of the petition. The motion for a stay (dkt. no. 1003) is DENIED.

### IV.    Defendant's Motion to Amend Electronic Order re: Change of Venue Filing

The defendant asks the Court to amend the electronic order finding as improper the defendant's memorandum copying specific quotes from prospective juror questionnaires. For the reasons described above, the defendant's request (dkt. no. 984) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge