UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )  <br> ) <br> v.                                             ) <br> ) <br> DZHOKHAR A. TSARNAEV,           ) <br> Defendant              ) | Crim. No.13-10200-GAO |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO REFERENCE AND/OR QUOTE CERTAIN MATERIAL IN PUBLIC**

On February 3, 2015, Defendant Tsarnaev filed a Second Petition for Mandamus in the Court of Appeals seeking relief related to his claim for a change of venue. He now seeks leave to publicly disclose and discuss information contained within: (1) the jury questionnaires; (2) the transcripts of the publicly-conducted voir dire; and (3) the transcripts of the parties' arguments and this Court's decisions on individual juror qualification. He further seeks leave to publicly disclose and discuss the aggregate number of jurors the Court has provisionally deemed qualified as of particular dates. The government opposes Tsarnaev's Motion. Tsarnaev has failed to show that this Court's reasons for sealing the materials in the first instance, that is, to protect the integrity of the jury selection process and concern for juror privacy, are outweighed by any countervailing considerations. Tsarnaev argues that he should be able to discuss the details of the facts at issue in oral argument before the U.S. Court of Appeals. But he has already presented those facts to the Court of Appeals in his written pleadings, and he has offered no compelling reason to violate juror privacy or to encourage further public dissemination of and speculation about juror information that he might then use to argue, improperly, demonstrates the need for a change of venue. *See* D.1021. His motion should be denied.

**Argument**

The only case cited by Tsarnaev in support of his request is *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). The government does not, of course, argue with the general principle that the public has a right of access to judicial documents. However, as the court in *Kravetz* noted, that right "is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Kravetz,* 706 F.3d at 59. In *Kravetz*, a third-party media representative sought sealed documents related to Kravetz's sentencing after the imposition of the final judgment. The media representative's only means of accessing the documents, which had been sealed without the requisite particularized basis, was to request their unsealing. Here, in contrast, the only relevant audience for the material Tsarnaev seeks to have unsealed is the Court of Appeals, which has already signaled both that the initial sealing was appropriate to protect the integrity of the selection process and that it has full access to the materials. Tsarnaev can easily direct the Court with specific references to the page and document in the record without further disclosure of particular juror information and without quotation of specific juror statements. He can still make general references to the nature of juror responses or to the number of responses to a particular question, just without identification of the specific juror who provided the information.

The timing of the disclosure sought by Tsarnaev also distinguishes his situation from *Kravetz*. By the time the issue of sealing in *Kravetz* was brought before the Court of Appeals, final judgment had entered. Courts have long recognized that there is a difference in the interest-balancing between public access and sealing when information is released during the jury selection and when it is released during the trial. The release of information during trial presents on-going concerns about both the protection of juror privacy and the need to encourage candid

responses by potential jurors during jury selection. *See United States v. King*, 140 F.3d 76, 83 (2nd Cir. 1998) (affirming district court's decision to deny media access to voir dire transcripts during on-going trial because one of the issues involved potential racial bias). As this Court has said, the use of "selected quotations [from the 1300 –plus questionnaires] are attention-getting, and they have gotten attention from the media." [Dkt. 1021, p. 2]. Allowing Tsarnaev to quote from the entire record of jury selection at this point would serve no purpose other than to garner further public and media attention and speculation.

Tsarnaev also fails to address the fact that providing access to full unredacted transcripts of the voir dire of individual jurors might well reveal other information including sensitive information such as health issues and criminal records. Despite the best intentions of all the parties, the current, unredacted transcripts available at this time contain several inadvertent uses of the last name of several potential jurors. At this point, neither party has had the opportunity to suggest redactions to the record as is normally done before a transcript is publicly filed. *See* Fed. R. Crim. P. 49.1. Regardless whether Tsarnaev intends to use or reference those matters, the unsealing of the transcripts will make that information available to the public.

With respect to the questionnaires, Tsarnaev posits that the lack of personal identifiers is sufficient protection to allay the Court's concern about unsealing. But Tsarnaev' s argument fails to consider the great wealth of personal information that is provided in the questionnaires about each individual juror, including, among other things, the town in which the juror resides, the nature and general area of employment, and family members and their employment.

The questionnaires required jurors to reveal deeply personal information, including their views on the death penalty (and the reasons why they hold those views, which may relate to moral, religious or philosophical attitudes) and their views and opinions relating to certain

religions and/or ethnic groups. Although the jurors may not yet be identified, it is quite possible that both jurors who have been individually questioned in voir dire and future potential jurors whose questionnaires are included in Tsarnaev's filings may be identified by other individuals who know of their presence and who can piece together the information.

In this case, jurors were specifically advised that the completed questionnaires would not be part of the public record unless and until the Court determined whether the questionnaires contained sensitive information that should be kept confidential permanently. As the Court noted, the earlier unauthorized release by Tsarnaev "nullified the assurance [the Court] had given the jurors, but it also invited further public discussion of matters to be raised in the voir dire process, creating a possible impediment to the success of that process. [Dkt. 1021, p. 6]. It is ironic that it was Tsarnaev who initially resisted having the public entering the courtroom.  His attempt to unseal both jury questionnaires and voir dire transcripts at this time is nothing more than an effort to place sensitive information before the public during jury selection so that he can complain that the intense media scrutiny is depriving him of due process.

In that vein, Tsarnaev's attempt to disclose the parties' arguments and the Court's initial determination regarding challenges for cause and/or hardship, must also fail.  As this Court is aware, the parties' motions to strike jurors for cause after individual voir dire have been made at sidebar on the record, but outside of the presence of the public.  Tsarnaev fails to mention that these portions of the voir dire were not publicly conducted, and he provides no reason why these portions of the transcripts should now be unsealed and provided to the public.  At the time the parties made these arguments, the media representatives had left the courtroom and audio to the overflow courtroom ceased.   It was certainly the government's understanding that this was no different than the district's long-standing practice of sealing the arguments and the objections for

cause, and ensuring that they would not be made public. As the Court knows, those sidebar discussions involved personal details relating to the potential juror, including aspects of their demeanor and character.  Disclosure and/or use of this information by Tsarnaev could, potentially, invite unwarranted public speculation as to why certain jurors were excused, cause embarrassment and concern for those individuals, influence future prospective jurors, and engender renewed media attention.  In any event, Tsarnaev provides no reason why he requires this information.

      Finally, Tsarnaev seeks the aggregate number of jurors provisionally qualified. In an Order dated February 13, 2015, this Court revealed that fifty-four jurors had been provisionally qualified as of February 13, 2015.  [Dkt. 1031].  Tsarnaev presents no basis for request of other information relating to the number of jurors selected on other dates.  That there were fewer jurors selected prior to February 14 or that there will be more jurors selected in the future may relate to the speed of the process but provides no substantive information. To the extent that Tsarnaev seeks any further information about the number of jurors provisionally qualified, his request should be denied.

                        Respectfully submitted,

                        CARMEN M. ORTIZ
                        United States Attorney

By:    /s/Nadine Pellegrini
        Nadine Pellegrini
        William D. Weinreb
        Aloke S. Chakravarty
        Steven D. Mellin
        Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

                                                /s/Nadine Pellegrini
                                                Nadine Pellegrini
                                                Assistant United States Attorney

Date: February 15, 2015