UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | UNDER SEAL |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY OF DAVID KING, M.D.

The government, by and through undersigned counsel, respectfully opposes

Tsarnaev's motion to exclude the testimony of Dr. David King.

INTRODUCTION

The charges against Tsarnaev include use of a weapon of mass destruction

resulting in death, in violation of 18 U.S.C. § 2332a, and bombing a place of public

use resulting in death, in violation of 18 U.S.C. § 2332f.   Both are crimes of

terrorism under federal law.   See 18 U.S.C. §§ 2331(5), 2332b(g)(5)(B)(i).   The

government's theory of the case is that Tsarnaev is a terrorist who detonated

improvised explosive devices ("IEDs") at the Boston Marathon and in Watertown in

order to advance a violent extremist agenda propounded by overseas terrorist groups

and individuals.   To prove this theory it intends to offer evidence that the bombs

Tsarnaev used are the type used by terrorists the world over, namely, IEDs packed

with tiny pieces of shrapnel designed to shred flesh, shatter bone, and cause victims

to suffer painful, bloody deaths and disfigurement.

During the penalty phase (if there is one), the government must also prove (among other things): that Tsarnaev "intentionally and specifically engaged in acts of violence, knowing that the acts created a grave risk of death to a person or persons, other than one of the participants in the offense, such that the participation in the acts constituted a reckless disregard for human life;" that Tsarnaev "knowingly created a grave risk of death to one or more persons in addition to the victim of the offense;" that he "committed the offense in an especially heinous, cruel and depraved manner in that it involved serious physical abuse to the victim;" that he "committed the offense after substantial planning and premeditation to cause the death of a person and commit an act of terrorism;" that he "intentionally killed and attempted to kill more than one person in a single criminal episode;" and that Tsarnaev "is responsible for the death of a victim, Martin Richard, who was particularly vulnerable due to youth."  See Gov't Notice of Intent to Seek the Death Penalty.  Once again, the government intends to prove all of these aggravators in part through evidence that Tsarnaev helped build and detonate improvised explosive devices filled with tiny pieces of shrapnel designed to shred flesh and shatter bone so that victims suffered painful, bloody deaths and/or disfigurement.

Dr. David King is a trauma surgeon in the Division of Trauma, Massachusetts

General Hospital, Emergency Surgery and Surgical Critical Care.   He is

board-certified by the American Board of Surgery in the fields of surgery and

surgical critical care and is an expert in the field of surgery and surgical critical care.

His expertise extends to all traumatic conditions, including traumatic brain injury,

pneumothorax, hemothorax, pulmonary contusion, blunt cardiac injury, liver and

splenic lacerations, pancreatic injury, mesenteric lacerations, pelvic fractures, spine

fractures, renal injuries, and all injuries to the intestines and blood vessels.   He has

experience treating traumatic conditions both as a trauma surgeon at MGH and as

Chief of Surgical Services during parts of Operation Enduring Freedom and

Operation Iraqi Freedom.

On August 1, 2014, the government notified Tsarnaev that during the trial's

guilt phase, Dr. David King, who treated many Marathon bombing victims, will

provide a medical explanation of the ways in which shrapnel-filled IEDs injure

people, and will opine that many Marathon bombing victims suffered those types of

medical injuries.   It also stated that, if there is a sentencing phase, Dr. King will

opine that Tsarnaev created a grave risk of death to one or more persons in addition

to the victim(s) of the offenses; that Martin Richard was particularly vulnerable to

the effects of a ground-based IED because of his youth and corresponding physical

characteristics; and that Martin Richard's injuries, including the evisceration of his

abdomen, would not have killed him instantly and would have caused him

excruciating and unbearable pain in the moments after the blast and leading up to his

death.

## ARGUMENT

Tsarnaev argues that Dr. King's testimony is unnecessary, and thus more

prejudicial than probative, because "the facts he is offered to establish are

uncontested and indeed self-evident." [Deft. Mot. at 2]. By this Tsarnaev means

"[t]here will be abundant testimonial and photographic evidence that the injuries and

deaths inflicted on April 15, 2013 were caused by ground-placed improvised

explosive devices." Id. at 2-3. According to Tsarnaev, all that "Dr. King adds to

this already clear and uncontested evidentiary picture is his ability to compare the

Marathon bombing to the carnage and suffering he witnessed as an Army surgeon in

Afghanistan . . . . And the inevitable effect of such a comparison is to create a

spurious but inflammatory and prejudicial connection between the Boston Marathon

bombing and the deaths and injuries suffered by American soldiers over the last

thirteen years of war." Id. at 3. Tsarnaev concludes: "The irrelevance of the

wars in Iraq and Afghanistan to this prosecution should be self-evident." Id.

Tsarnaev is wrong on all counts. In proving its case in the liability phase, the

government is not limited only to that which may or may not be "self-evident" from

other testimony and evidence, namely, that bombs exploded at the Marathon, killing three people and injuring hundreds more.   See United States v. Sampson, 486 F.3d 13, 43 (1st Cir. 2007).    It is entitled to provide expert medical testimony about *how* those bombs caused death and injury.   The average juror is unlikely to know the difference between different types of bombs, their respective purposes, or the respective ways in which they kill and injure people.   Nor should the government, which has the burden of proving its case beyond a reasonable doubt, be forced to let jurors "connect the dots" rather than offer a witness who can do it for them.   Dr. King is well-qualified to do that based on his training and experience.

In addition, there is nothing spurious, prejudicial or even inflammatory about testimony that the Marathon bombs are the types of bombs used by terrorists in Afghanistan and other parts of world.   On the contrary, the government's theory is that Tsarnaev is a terrorist who learned to make bombs by reading terrorist publications such as Inspire and participated in the Marathon bombings precisely because he wished to punish America for the actions of its soldiers in Afghanistan and elsewhere.   Dr. King thus is uniquely qualified by training and experience to offer testimony that will help establish Tsarnaev's motive for committing the charged crimes in the place and manner that he did.

By Tsarnaev's own admission, a key issue in this case will be the reasons for his criminal acts. The government will argue that the note Tsarnaev wrote on the inside of the boat in Watertown (among other things) shows that he shared the goals and beliefs of the foreign Muslim combatants against whom American troops have been fighting. Evidence that Tsarnaev chose to kill his victims using the very same means those foreign Muslim combatants advocate powerfully corroborates the government's theory. The government should not be precluded from offering such evidence merely because jurors may believe that Tsarnaev's motives are worse than the motives that animate other murderers.

Turning to the sentencing phase, virtually every one of the statutory aggravating factors alleged in the Indictment depends on facts relating to the construction, mechanics, operation, and effects of the IEDs that exploded on Boylston Street. The government, which must prove each and every one of those factors to a unanimous jury beyond a reasonable doubt, should be entitled to offer expert testimony that (among other things) the bombs "knowingly created a grave risk of death to one or more persons in addition to the victim of the offense," were "an especially heinous, cruel and depraved manner" of committing murder because they "involved serious physical abuse to the victim," reflect "substantial planning

and premeditation to cause the death of a person and commit an act of terrorism," and rendered Martin Richard an especially vulnerable victim.

The risk that jurors will treat Tsarnaev as a "stand in" for other criminals is no greater here than in other cases, and it certainly does not warrant the exclusion of a well-qualified expert witness who will offer highly probative testimony on a variety of critical facts.   The Court will instruct the jury that it must decide the case solely on the evidence presented in Court, and must sentence Tsarnaev based on an evaluation of his character and the nature of his crimes.   Jurors are presumed to follow those instructions.   See Blueford v. Arkansas, 132 S.Ct. 2044, 2051 (2012); Weeks v. Angelone, 528 U.S. 225, 234 (2000).

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's motion to exclude or limit Dr. King's testimony.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:   /s/ William D. Weinreb
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys
STEVEN MELLIN
Trial Attorney, U.S. Department of Justice

7

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on January 4, 2015.

/s/ William D. Weinreb
WILLIAM D. WEINREB