UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No.13-10200-GAO |
| ) | |
| DZHOKHAR A. TSARNAEV, ) | **UNDER SEAL** |
| Defendant ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## TO LIMIT TESTIMONY OF GOVERNMENT'S TERRORISM EXPERTS

The United States, by and through undersigned counsel, respectfully opposes Tsarnaev's motion to limit the testimony of the government's terrorism experts.

### INTRODUCTION

The charges against Tsarnaev include use of a weapon of mass destruction resulting in death, in violation of 18 U.S.C. § 2332a, and bombing a place of public use resulting in death, in violation of 18 U.S.C. § 2332f. Both are crimes of terrorism under federal law. See 18 U.S.C. §§ 2331(5), 2332b(g)(5)(B)(i). The government's theory of the case is that Tsarnaev is a terrorist who detonated improvised explosive devices ("IEDs") at the Boston Marathon and in Watertown in order to advance a radical agenda propounded by overseas terrorist groups and individuals. It will seek to prove that he is a terrorist by offering evidence of his terrorist acts and jihadi writings, including the manifesto he wrote on the inside of the boat in Watertown and various on-line communications and postings. It will also offer evidence that he acquired his radical beliefs in part by reading, listening to, and watching jihadi materials that he obtained from the internet and elsewhere. Most of those materials were found on his computer, although some were found in his residences, vehicles, and a discarded backpack in a landfill.

The nature of the jihadi materials that Tsarnaev consumed is beyond the ken of most jurors.

Most lay people who read, listened to, or watched them would not understand what they mean, let alone how they could radicalize someone to the point where he was able to murder and maim hundreds of people at a sporting event and then calmly buy milk at a Whole Foods in Cambridge 20 minutes later. Accordingly, the government intends to offer expert testimony to explain the materials. The experts will discuss who authored them, what they are about, what they mean, and how and why they have the power to radicalize. Some of the materials, for example, have the power to radicalize because they were written by individuals -- such as Shaykh Omar Abdel Rahman ("the Blind Shaykh"), Abu Mohamed al-Maqdisi, or Abdullah Azzam -- whose lives, exploits and/or writings inspire terrorists all over the world. Some of the materials, such as Inspire Magazine, are powerful because of their content, and some, such as Anwar al-Awlaki's lectures, are powerful largely because the speaker is charismatic.

Tsarnaev argues that the expert testimony must be excluded because the government cannot "establish that the facts being recounted [by the experts] were known to and endorsed by the defendant." Deft. Mot. at 1. He argues, in essence, that despite evidence of Tsarnaev's radicalization, and the fact that most of the jihadi files were on his laptop computer, the jury cannot infer that Tsarnaev read all of them, let alone that he "personally endorsed and supported all of the specific terrorist acts . . . woven into the expert's narrative." Deft. Mot. at 5. He further argues that even if the government could make these showings, the information would still have to be excluded because "the defendant's motive here is not seriously in dispute." Deft. Mot. at 8. Tsarnaev's argument is based on misstatements of the applicable facts and law. His motion lacks merit and should be denied.

**ARGUMENT**

Whether Tsarnaev actually read, listened to, or watched particular materials found in his possession is a question of fact for the jury. So is the question of whether he knew or "endorsed" any of the authors' exploits, writings, or beliefs. The circumstances of this case support an inference that he did. The government will offer evidence that Tsarnaev made extensive use of his laptop computer to access the internet, among other things. The jury can reasonably infer that he downloaded (or uploaded) the materials found on his computer, and that he did so in order to read, watch, or listen to them. The jury can also infer from his terrorist acts, writings, and on-line communications that he knew and endorsed some if not all of the authors' exploits, writings and/or beliefs. If Tsarnaev wants to attack those inferences, he can do so through cross-examination of the government's witnesses, or through the introduction of contrary admissible evidence. But the evidence that Tsarnaev in fact read the materials in his possession is sufficiently strong to permit an expert to testify about what they mean and how and why they have the power to radicalize. Many courts have admitted similar testimony. See, e.g., United States v. Mubayyid, 658 F.3d 35, 56 (1st Cir. 2011); United Statgs v. El–Mezain, 664 F.3d 467, 509–10 (5th Cir.2011); United States v. Jayyousi, 657 F.3d 1085, 1108 (11th Cir.2011); United Stateges v. Abu–Jihaad, 630 F.3d 102, 133–34 (2nd Cir. 2010)

There is no legal or logical basis for Tsarnaev's contention that any fact relating to the jihadi materials found in Tsarnaev's possession – such as the acts that make Shaykh Omar Abdel Rahman an inspiration to terrorists – is off-limits unless it actually appears within those materials. A jury seeking to ascertain what motivated Tsarnaev to commit a terrorist attack on American soil will benefit from knowing that he possessed a book with a preface written by Abdel Rahman, but only if they also know that Abdel Rahman helped plan the 1993 bombing of the World Trade

3

Center. The jury can fairly infer from Tsarnaev's own actions and writings, and from his possession of the book in question, that he knew about Abdel Rahman's exploits and was inspired by them, even if those exploits are not recounted in the book itself. Once again, if the inference that Tsarnaev knew or "endorsed" facts that do not appear in materials on his computer is a weak one, that is a matter Tsarnaev can develop through cross-examination and admissible rebuttal evidence; it is not a basis for excluding the facts from evidence altogether.

An argument analogous to the one Tsarnaev makes here was rejected by the Second Circuit in United States v. Farhane, 634 F.3d 127 (2nd Cir. 2011). An issue in that case was whether the defendant, "who had lived in Saudi Arabia for a year, and who proposed to support al Qaeda's efforts there by serving as the organization's on-call doctor, would know that he was providing support to an organization that engaged in terrorism." Id. at 160. The district court allowed Evan Kohlmann to testify about "terrorist activities in Saudi Arabia [that were] derived in part from Internet sources" without first demanding proof from the government that the defendant actually knew about those terrorist activities or had consulted the same internet sources. Id. The Second Circuit affirmed, holding that the jury could reasonably infer that the defendant would have been familiar with such "generally available information." Id. It further held that "[t]he prosecution's failure to adduce specific evidence of Sabir's familiarity with the information went to the weight of Kohlmann's testimony rather than to its admissibility." Id. Here, likewise, the jury can reasonably infer that Tsarnaev was familiar with "generally available information," such as who Abdul Rahman is, despite the absence of an Abdul Rahman biography on his computer.

Tsarnaev's second argument – that the expert testimony lacks probative value, or is cumulative, because his motive "is not seriously in dispute" – is disingenuous. The government's theory is that Tsarnaev committed the charged crimes to advance a terrorist agenda that he

4

acquired in part by reading, listening to, and watching jihadi materials; the defense theory is that Tsarnaev committed the charged crimes in obedience to his brother. Put another way, the government's theory is that the inspirational power of the materials found in Tsarnaev's possession is a sufficient explanation for his behavior independent of any filial influence; Tsarnaev's theory is that but for his brother's influence, he would not have committed the charged crimes. Expert testimony is needed to explain what the materials in question are and how they could have inspirational power. And so long as Tsarnaev contests his guilt and therefore makes an issue of his motive and intent, proof of motive and intent is admissible and may be proved with the help of expert testimony. See generally United States v. Mehanna, 735 F.3d 32, 60-62 (1st Cir. 2013).

Tsarnaev's reliance on Mehanna is misplaced. The First Circuit noted in Mehanna that "[it] is hen's-teeth rare that two cases involving different parties, different facts, and different scenarios will be of much assistance through a comparative analysis of Rule 403 determinations." Id. at 61. This case proves the wisdom of that observation. The rule 403(b) analysis in Mehanna has limited applicability here because it did not involve a dispute about expert testimony. Rather, the defendant in Mehanna sought to exclude "dozens of terrorism-related pictures, videos, and printed materials" including "dozens of images portraying gripping scenes, such as the World Trade Center engulfed in flames and al-Qa'ida leaders exhorting their followers." Id. at 59-60. The difference between the often dry and academic nature of expert testimony and the potentially inflammatory nature of graphic images and video is obvious. Mehanna provides precious little support for excluding the former when the Court in that case upheld the admissibility of the latter. Id.

The Mehanna court also did not establish a special "test" for the admissibility of evidence

5

about "terrorist leaders and attacks in which the defendant was not involved." [Deft. Mot. at 8]. In particular, although the court stated that the disputed evidence in that case was "central to the government's narrative . . . [because] the government's case depended on proving that the defendant's actions emanated from views that, over time, had aligned with al-Qa'ida's," id. at 62, it made that statement only to distinguish the facts before it from those in United States v. Al–Moayad, 545 F.3d 139 (2nd Cir. 2008), which the defendant had argued was controlling, see id. at 61-62. It never held that motive and intent evidence in a terrorism case *has to be* "central" or necessary to the government's case to offset the risk of unfair prejudice. On the contrary, it wrote that the "emotionally charged" nature of "terrorism-related evidence" is not a basis to exclude it under Rule 403(b) because "much of this emotional overlay is directly related to the nature of the crimes that the defendant has set out to commit," and "Rule 403 does not ensure that trials -- even criminal trials -- will be antiseptic affairs." Id. at 64.

The government is aware that a focused presentation of expert testimony is a virtue and tends to obviate Rule 403(b) concerns. We intend to be mindful of that principle when we examine our expert witnesses. In particular, the government's experts are not expected to say everything that appears in their reports. Tsarnaev's concerns are best addressed in the context of actual testimony rather than in a motion in limine.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's motion to limit the testimony of the government's terrorism experts.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:  /s/ Aloke Chakravarty
ALOKE S. CHAKRAVARTY
WILLIAM D. WEINREB
NADINE PELLEGRINI
Assistant U.S. Attorneys
STEVE MELLIN
Trial Attorney, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on January 5, 2015.

/s/ Aloke Chakravarty
Aloke Chakravarty