UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 13-cr-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV  ) | **UNDER SEAL** |

**OPPOSITION TO DEFENDANT'S MOTION
TO LIMIT DISCLOSURE OF FOREIGN DEFENSE WITNESSES**

The United States, by and through undersigned counsel, respectfully opposes Tsarnaev's motion to limit disclosure of foreign defense witnesses to the government. Relying on unsupported claims that the disclosure of witness identities to the government will result in witness intimidation, Tsarnaev seeks permission to conceal the witnesses' identities from the government until well into the penalty phase of trial. For the reasons below, the motion should be denied.

**INTRODUCTION**

On September 18, 2014, the Court ordered the parties "to file a joint proposed schedule regarding pretrial witness disclosures on or before 10/2/14." [Dkt. 569]. Tsarnaev sought, and obtained, two separate extensions of time in which to file his witness list: first to October 16, 2014 [Dkt. 592], then to October 24, 2014 [Dkt. 605].

On October 24, 2014, instead of actually filing a witness list, as the Court had ordered, Tsarnaev filed a pleading in which he proposed to disclose his witness list to the Court and prospective jurors at the beginning of voir dire but to conceal the names from the government (and withhold any corresponding Rule 26.2 statements) until the day before each witness was to testify. [Dkt. 617]. In that pleading, Tsarnaev accused law enforcement of creating an "atmosphere or fear and intimidation" in "the lives of many potential defense witnesses" and

predicted that, upon learning the witnesses' names, agents would "descend on each of" them. Tsarnaev cited no facts in support of these allegations and submitted no affidavits or other evidence in an effort to prove them. On the contrary, his pleading suggests that the only manner in which law enforcement agents have "descend[ed] on" witnesses and created an "atmosphere of fear and intimidation" in their lives is by interviewing them.

The government opposed Tsarnaev's proposal. [Dkt. 648]. It argued that pretrial witness-list disclosure by both parties is consistent with both the letter and spirit of Local Rule 117.1(a)(9) and the Federal Death Penalty Act ("FDPA"), which guarantees both parties a right "to rebut any information received at the [penalty-phase] hearing." 18 U.S.C. § 3593(c). The government noted that a right to rebut the other party's information is meaningless without sufficient notice of that information. Thus, courts have held that "[t]he policies underlying the FDPA and the Federal Rules of Criminal Procedure support the disclosure of penalty-phase information by the defendant," United States v. Lujan, Crim. No. 05-924, Slip Op. at *3 (D. N.M. May 18, 2011), and that a district court has inherent authority to further the goals of the FDPA, see United States v. Sampson, 335 F.Supp.2d 166, 200 (D. Mass. 2004); United States v. Catalan Roman, 376 F.Supp.2d 108, 112 (D.P.R. 2005). The government also observed that Tsarnaev had offered no evidence of witness intimidation and was essentially seeking a tactical advantage that other criminal defendants are routinely denied.

On November 13, 2014, the Court rejected Tsarnaev's proposal and ordered him to provide the government with a guilt- and penalty-phase witness list on or before December 29, 2014 -- three business days before trial. [DE 650].

During the six weeks between the Court's November 13, 2014 Order and the December 29, 2014 deadline, Tsarnaev was silent on the matter of his witness list. Then, on the date the

Court had ordered him to produce it, he decided not to produce it and filed the instant motion instead. The motion seeks exactly the same relief he first requested on October 24, 2014, namely, to disclose his witness list to the Court and prospective jurors but not the government, and it is based on the same spurious and unsupported allegations of witness intimidation that the Court previously rejected. The instant motion differs from the previously-rejected one only insofar as it is limited to foreign witnesses and proposes seven-day rather than one-day advance notice of their identities to the government. But its effect is the same: to block the government from equal access to defense witnesses and thereby limit the government's ability to cross-examine them effectively or rebut their testimony.

## ARGUMENT

Tsarnaev's motion should be denied for two reasons. First, its timing is unlawful and unfair. The Court made clear on September 18, 2014, that it expected both parties to produce witness lists in advance of trial and ordered the parties to propose dates for doing so. Tsarnaev twice sought and obtained additional time to propose such a date only to propose no date at all. When the Court rejected that proposal and ordered disclosure on December 29, 2014, Tsarnaev waited six weeks, until that date arrived, to file the instant motion. The Court should deny the motion because Tsarnaev's repeated disregard of Court-imposed deadlines, and his repeated attempts to relitigate matters the Court has already decided, is unlawful, unfair to the government, and contrary to the interests of justice.

Second, Tsarnaev's motion is contrary to fundamental principles of the adversary process, which conditions a defendant's right to compel the testimony of favorable witnesses on his compliance with pretrial disclosure rules that facilitate effective cross-examination of them. As the Supreme Court explained in Taylor v. Illinois, 484 U.S. 400 (1988):

> Rules that provide for pretrial discovery of an opponent's witnesses serve the same high purpose [as the right to compulsory process]. . . . [Like] cross-examination, [they] minimize[] the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The 'State's interest in protecting itself against an eleventh-hour defense,' Williams v. Florida, 399 U.S. 78, 81–82 (1970), is merely one component of the broader public interest in a full and truthful disclosure of critical facts.

Id. at 411-12.

Tsarnaev's claim that foreign witnesses might decide not to testify if they are contacted by FBI or other law enforcement agents is not sufficient to overcome the need for pretrial disclosure of their identities. For one thing, the claim is speculative and unsupported by any evidence. For another, it is legally unavailing. The Supreme Court held in Taylor:

> It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

Id. at 414-415 (1988).

Pretrial production of Tsarnaev's complete witness list is important to the truth-seeking process for two reasons. First, the line between the guilt and penalty phases of a capital trial is permeable: evidence introduced during the former may be considered by the jury during the latter. See 18 U.S.C. § 3593(c). The government cannot intelligently fashion its guilt-phase strategy and presentation of evidence without knowing who will be testifying for the defense in the penalty phase. This consideration is especially weighty where, as here, Tsarnaev is likely to call few if any witnesses in the guilt phase and save all of his powder for the penalty phase.

Second, as the government has pointed out on several occasions, it cannot adequately prepare to cross-examine witnesses, let alone gather evidence to rebut their testimony, if it does not even know who they are. Effective cross-examination is typically based on research into a witness's testimonial capacities, possible bias, and motives to lie, among other things; the government cannot conduct that research if it does not know who the witnesses are. Moreover, it is reasonable to assume that Tsarnaev's foreign witnesses will testify about matters that can be rebutted only by other foreign witnesses. Yet, it will likely be impossible for the government -- in the middle of the penalty phase of trial -- to identify, locate, interview, authorize travel for, and transport witnesses to this country in seven days or less. If the government is to play its part in minimizing "the risk that [the] judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony," Taylor, 484 U.S. at 411-12, it needs a witness list now.

The Court should reject any comparison between this case and United States v. Munyenyezi, No. 10-CR-0085-SM (D. N.H.), in which the district court allowed the defense to conceal the identities of Rwandan witnesses until they arrived in the United States, and the government agreed to designate a firewalled ICE agent to coordinate witnesses' administrative parole. For one thing, the defense theory in that case was that the Rwandan government had fabricated the crimes the defendant was accused of covering up and had intimidated witnesses into telling government-sanctioned stories in court. For another thing, the court's decision to allow the defense to withhold its witness list produced predictable results: most of the defense witnesses gave false testimony that the simplest of investigations would have exposed, but it could not be exposed because time constraints, geographic distance, and logistical obstacles made even simple investigation impossible.

Further, the court's order proved completely unnecessary, and served no purpose except to benefit the defense. Rwandan witnesses testified for the defense on three separate occasions – in Munyenyazi's first trial, in her retrial, and in the companion case of United States v. Kantengwa, Crim. No. 08-10385-RGS (D. Mass.). Each time, the Rwandan government knew the witnesses' identities beforehand because it processed their paperwork, and the United States parole authorities knew their identities for purposes of security vetting and setting necessary parole restrictions. Yet no evidence emerged that any witness was intimidated by any Rwandan or United States government official.

The argument for giving Tsarnaev special treatment at the expense of the truth-seeking process is even weaker in this case than in Munyenyezi. Russia is no Rwanda. There is no history in Russia of potential witnesses in United States criminal trials being coerced or intimidated into giving testimony favorable to the United States government. And there has been no evidence of any witness intimidation in connection with this case. Tsarnaev appears to conclude from the purported reluctance of some foreign witnesses to testify that they have (or will be) the victims of intimidating law enforcement practices. But he offers no evidence of that, nor can he: the law enforcement agents who have interviewed witnesses in this case have candidly identified themselves, asked only for voluntary interviews, and have conducted themselves in a polite and respectful manner. Chechens throughout the United States have been able to travel back and forth from Russia, before and after the Marathon bombings, without being intimidated by the Russian government or anyone else. There simply is no basis in this case to hold that Tsarnaev's mere fear of witness intimidation outweighs the "countervailing public [interest in the] . . . integrity of the adversary process, which depends [in part on] . . . the

rejection of unreliable evidence . . . [and] potential prejudice to the truth-determining function of the trial." Taylor, 484 U.S. at 414-15.

Finally, even if the Court were to grant Tsarnaev's request for delayed witness-list disclosure, it would not be practical to order that the witnesses' identity also be concealed from FBI agents who are part of the prosecution team. That is because members of the prosecution team would need to be involved in the process of seeking administrative parole for foreign defense witnesses who need it. The Department of Homeland Security Immigration and Customs Enforcement (ICE) will grant administrative parole for prospective witnesses only if the agency seeking it (here, FBI) provides (1) information needed to determine if the witnesses pose a threat to national security and (2) a security plan (which can range from limited supervision to temporary custody) to ensure no threat materializes. Obtaining the necessary information, devising an appropriate security plan, and implementing such a plan, could, as a practical matter, be done only by FBI agents assigned to this case and familiar with the witnesses the defense intends to call. Any alternative plan, even if it were theoretically practical, would inevitably delay the process, which normally takes at least several weeks even under ideal conditions.

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's motion to conceal the identities of foreign witnesses on his witness list from the government.

          Respectfully submitted,
          CARMEN M. ORTIZ
          United States Attorney

By:   /s/Aloke Chakravarty
      ALOKE S. CHAKRVARTY
      WILLIAM D. WEINREB
      NADINE PELLEGRINI
      Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document was emailed to Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on January 5, 2014

/s/ Aloke S, Chakravarty
ALOKE S. CHAKRVARTY
Assistant U.S. Attorney

Date: January 4, 2015