UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE OR ARGUMENT
REGARDING MITIGATING EVIDENCE IN THE GUILT PHASE**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits this Opposition to the government's Motion in Limine to Exclude Evidence or Argument Regarding Mitigating Evidence in the Guilt Phase [DE 774]. For the reasons that follow, the motion should be denied.

At the outset, it should be said that the defense has no intention of attempting to present its own affirmative case in mitigation before the sentencing phase of the trial begins, and the government (which already knows who the defendant's sentencing-phase expert witnesses will be) does not appear to suggest otherwise. Rather the issue raised by the government's motion is whether the Court should prohibit the defendant from *responding* to the government's punishment-relevant evidence when it is introduced—as almost all of it will be—at the liability phase of the trial. Among the factual material that the government appears to consider off-limits until sentencing in this prosecution *for conspiracy* is anything bearing on the relationship between the two alleged co-

1

conspirators, including their relative roles in the conspiracy and their relative ages, physiques, personalities, and other relevant characteristics. If there is any authority supporting such a crabbed view of the evidence admissible in a conspiracy case, defense counsel has not found it, and neither, apparently, has the government.

Moreover, granting the motion would unfairly prejudice the defendant's ability to respond to the government's case on the issue of punishment. The government has served notice that it intends to prove six statutory and six nonstatutory aggravating factors in support of its request that the defendant be sentenced to death. Notice of Intent to Seek the Death Penalty, DE 167.[1] All but one of these factors are likely to be established through evidence that the government will introduce at the guilt-or-innocence phase of the trial. In addition, the government intends to introduce large amounts of evidence at the first phase of the trial to prove its "theory of the case," which "is that the defendant considered himself to be part of the global jihad movement and committed acts of terrorism to help achieve the movement's ends." Government's Rule 16 Expert Disclosure letter ("terrorism experts" etc.) at 1 (August 1, 2014). While the prosecution may present evidence of motive as part of its effort to prove a defendant's guilt, there is

---

[1] The government has captioned these alleged statutory aggravating factors as (1) Death During Commission of Another Crime, (2) Grave Risk of Death to Additional Persons, (3) Heinous, Cruel and Depraved Manner of Committing the Offense, (4) Substantial Planning and Premeditation, (5) Multiple Killings, and (6) Vulnerable Victim. The nonstatutory factors are (1) Encouragement of Others to Commit Acts of Violence and Terrorism, (2) Victim Impact, (3) Selection of Site for Acts of Terrorism, (4) Lack of Remorse, (5) Status of Victim, and (6) Participation in Additional Uncharged Crimes of Violence. Of these, only one—victim impact—will be proven primarily by evidence offered only at the sentencing phase.

2

usually no requirement that it do so, and in this case the alleged "jihad" motive is not an element of any the charges in the indictment.

The government now seeks an order prohibiting the defendant from responding to any of these factual allegations at the guilt phase of trial, or to the evidence with which the government plans to prove them, unless he can show that his response amounts to a legal defense to some element of a crime charged in the indictment. Thus, for example, the government apparently believes that it may prove that the defendant's motive was to help "achieve the . . . ends" of the "global jihad movement" at the guilt phase of the trial, but that the defense must wait weeks or even months before pointing out the possibility of a different motive, such as that he was obeying and supporting his powerfully dominant older brother. Indeed, according to the government, during the weeks or months that the government's guilt-phase presentation is underway, the defense should be barred from so much as mentioning that the prosecution's own evidence reveals stark disparities in the two Tsarnaev brother's sizes, ages, characters, degrees of radical indoctrination, and participation in the bombing conspiracy.

The effect of many weeks of such a one-sided presentation would be to condition the jury to accept the government's view of the key issues to be decided at sentencing long before the sentencing hearing has even begun. Given the obvious unfairness of such a process, it is not surprising that the government's three-page motion includes not a single citation of authority. Indeed, so far as defense counsel is aware, no similar motion has ever been *filed*, much less granted, in any prior federal capital case. Nor is it hard to see why no court has ever permitted the government to extirpate from the first phase of

3

the trial anything that might impede the jury's uncritical acceptance of the government's penalty phase claims. While the decisional process in a capital case is bifurcated, the presentation of evidence is not: in most cases, including this one, the bulk of the prosecution's evidence and testimony bearing on punishment is offered and admitted at the guilt phase. While the government expresses concern that the defense will "pre-litigate" the existence of mitigating factors at the guilt phase of trial, the government's proposed remedy is that the Court should allow only the government to "pre-litigate" most or all of its case for the death penalty during the guilt phase, while preventing the defense from providing any rebuttal, correction, explanation or context to the government's aggravation evidence at the time that the jury receives it. *Cf. Gardner v. Florida,* 430 U.S. 349, 362 (1977) (due process guarantees right of capital defendant to deny or explain evidence used to justify sentence of death).

The government's justification for such an unprecedented restriction is, to say the least, unconvincing. According to the government, the jury will be "confused and misled" by any mention of the relative roles of the two alleged co-conspirators in this conspiracy prosecution—so much so that it might even find the defendant not guilty because he appears "less guilty" than his brother. Govt. Mot. at 3. And the government's proposed solution to this fanciful danger is to allow it free rein to present the defendant's own role out of its true context, and thereby provide a distorted and exaggerated picture of his character and moral culpability.

It is apparently the government's expectation that the defendant's opportunity to repair the damage can and should be delayed until near the end of the trial—by which

4

time the jury's view of the defendant is likely to have hardened like concrete. While the government's expressed concerns about jury confusion are wholly imaginary, the dangers posed by the government's proposed remedy are not. One of the most persistent and troubling findings from more than twenty-five years of research into jury decision-making in capital cases is that very large numbers of jurors reach firm decisions regarding whether to impose life or death during the presentation of evidence at the *guilt or innocence* phase of trial, or even earlier. William J. Bowers, Maria Sandys & Benjamin D. Steiner, *Foreclosed Impartiality In Capital Sentencing: Jurors' Predispositions, Guilt Trial Experience, and Premature Decision Making*, 83 Cornell L. Rev. 1476 (1998) (analyzing Capital Jury Project data from 916 post-trial juror interviews in 11 states). The CJP data suggest that

- as many as half of all capital jurors decide what sentence to impose during the presentation of the prosecution's *guilt-phase* case, *id.* at 1488,

- the majority of these "premature" decisions are for death rather than for life imprisonment, *id.,* and

- once made, premature decisions usually remain unchanged by subsequent evidence, argument of counsel, instructions, or jury deliberations. *Id.* at 1491-92.

These research findings provide yet another reason why that the Court should not adopt any procedure that would increase the risk of prejudgment on the question of life and death long before jurors have heard the evidence, arguments of counsel, and the Court's instructions regarding sentence. Because the government's motion would likely have that effect and no other, it should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to restrict or delay the defendant's response to the government's evidence of motive and aggravation that will be presented in the guilt-or-innocence phase of the trial.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/ David I. Bruck

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA BAR # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document was served upon opposing counsel by email and hand delivery on February 27, 2015.

_David I. Bruck_
David I. Bruck