UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION TO EXCUSE JURORS FOR CAUSE
BASED ON NEWLY DISCOVERED INFORMATION**

The defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits this reply to the Government's "Opposition to Defendant's Last-Minute Motions to Strike Various Qualified Jurors for Cause and Request to Foreclose Further Motions to Strike and Further Briefing on the Already-Filed Motions to Strike" ("Govt. Opp."). Defendant submits this reply primarily to correct the record, rather than to re-state arguments already made.

The government focuses largely on the timing of these challenges, without noting that one was filed on February 17 and two (combined into one motion) were filed on January 29.[1] Two others were filed on February 27, the deadline set by the Court without objection from the government. 2/25: 17. It is true that two additional challenges were filed on Friday, February 28, but this was the result of the belated discovery of additional information..

---

[1] Inexplicably, the government has yet to file a response to the challenge to Juror 145, which was filed a month ago. In its opposition, it promised to file a response on March 1. As of 5:30 p.m., the defense had not yet received it.

The government's allegation that the information is not newly discovered is unfounded and begs the question of whether the <u>government</u> previously had discovered this information but chose not to share it with the Court or the defense. Each of the motions was filed within days of defense counsel learning of the new information. Unlike the government, the defense does not have scores of FBI and other government agents at its disposal to scour social media and court records. The suggestion that between January 5 and the beginning of voir dire on January 15, the defense had the ability to thoroughly investigate social media and conduct court searches on more than 1,000 jurors is ridiculous. Even if the defense had focused on *only* the first 700 jurors, the group from which those questioned during voir dire ultimately were selected, the task would have been overwhelming, especially while the defense struggled to absorb and organize additional discovery, provided in nine separate disclosures from January 5 through February 27. At the same time, the defense was participating in voir dire, preparing for trial, and drafting a response to motions in limine that the government neglected to serve on the defense.

As the government and the Court well know, the defense did seek to ask jurors about social media that it had uncovered while voir dire was ongoing. But while voir dire continued, so did the defense investigation of both jurors who had been cleared and those who had not been questioned. The government does not identify a single advantage that the defense could obtain by delaying its disclosures, but still accuses the defense of trying to "game the system".

The government suggests that the defense is seeking to avoid questioning the jurors about the information it has uncovered, ignoring the fact that the motions seek to have the jurors struck or, *in the alternative, questioned further*.  Contrary to the government's claim, it is not too late to ask jurors about the new disclosures, any more than it would be too late to address such issues if they arose during trial.  Further questioning would not prejudice the government and would help assure that biased jurors are not seated.

Instead, the government attempts to conjure possible explanations for the discrepancies between the juror's answers and the information uncovered.  But these imaginative scenarios of what *could* have happened is no substitute for the juror's own explanation.

The government's claim of lack of due diligence is particularly hollow with respect to juror 102.  The defense relied upon the government to provide criminal records.  When the juror disclosed a past case on her questionnaire, the defense asked the government about the reportedly "negative" response to a record check.  It was only after the defense uncovered the juror's use of two other names and asked the government to again run her record that the additional case was disclosed.  The defense promptly filed a motion challenging her.

The government's explanation of the juror's CORI record betrays a lack of familiarity with state district court procedures.  The entries show that she was arraigned on a complaint (standard practice in the district court, where indictments are not returned)

on 8/8/96 and the case dismissed on 9/17/96. The juror would have had to appear in court on that date or a default would have entered.

The government fails to address a crucial issue with respect to Juror 138: that he lied to the Court when he reported, under oath, that no one had commented about this case to him on Facebook.

The government's discussion of Juror 425 is riddled with inaccuracies. The memorandum cited by the defense clearly shows at least one court appearance after his divorce. If the juror did not understand the question, he surely can explain that.

The government's effort to foreclose further inquiry or consideration of evidence of partiality is ironic. Having just argued in the Court of Appeals that a thorough voir dire process will ensure that an impartial jury is seated, it urges the Court to turn a blind eye to evidence of bias and takes the extraordinary step of seeking to bar the defense from bringing any other information about jurors to the court's attention in the future. Does the prosecution really mean to suggest that, if the defense discovers that, for example, a juror is tweeting about the trial once it is underway, the defense should remain silent? Not surprisingly, the government does not provide any authority for such an order, which conflicts directly with the parties' legal and ethical obligations to disclose any evidence of a fraud upon the Court or a violation of its own orders.

The government's proposal would result in post-trial challenges to the jury. Presumably the government would then argue that, having failed to object before trial, the defense had waived claims of juror bias based on information available to it before the jury was sworn or trial was completed. The pending retrial in *United States v. Gary*

*Sampson,* required by post-sentence discoveries of juror bias, should demonstrate the need for resolving or, at a minimum, exploring these issues before trial begins. More recently, the judge in the Aaron Hernandez murder trial excused a total of 12 jurors on the eve of trial; one reportedly had lied during voir dire.

## CONCLUSION

For the foregoing reasons, the Court should allow the pending challenges to seven jurors or, in the alternative, permit further questioning of them.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

s/ Miriam Conrad

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that this document was served upon opposing counsel by email on March 1 and by hand delivery on March 2, 2015.

_____
Miriam Conrad