UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

OPINION AND ORDER
March 13, 2015

O'TOOLE, D.J.

## I.   Introduction

On June 27, 2013, a grand jury returned an indictment that charges the defendant with multiple crimes arising from the detonation of two improvised explosive devices at the 2013 Boston Marathon. On August 22, 2014, the defendant moved to dismiss the indictment based on the selection of the grand jury who returned the indictment, arguing various violations of the District of Massachusetts Plan for Random Selection of Jurors (the "Plan"), the Jury Selection and Service Act (the "Act"), and the Sixth Amendment to the United States Constitution. On October 17, the Court denied the motion. United States v. Tsarnaev, No. 13-cr-10200-GAO, 2014 WL 5308084 (D. Mass. Oct. 17, 2014).

In November 2014, approximately 3000 summonses were mailed to potential jurors for the selection of a petit jury in this case. On December 29, pursuant to 18 U.S.C. § 3432, the defendant was furnished with a list of those veniremen. On January 5, 2015, jury selection commenced with approximately 1373 qualified jurors coming to the courthouse to complete jury questionnaires over the course of three days. Because of space limitations at the courthouse, the

summonsed jurors were divided into six panels of a little more than 200 jurors each. With a few minor exceptions due to scheduling conflicts of a few jurors, the panels of jurors were summonsed in order from the list of veniremen, with the first 200 coming in on Monday morning, the second 200 coming in on Monday afternoon, and so on. The defendant received a list of jurors who completed questionnaires at the end of each day. On January 7, after all questionnaires had been completed, the defendant received a list of all jurors in what is known informally as the "Judge's List," a list of all prospective jurors who completed questionnaires and remained in the pool.

On January 2, the Friday before jury selection began, the defendant filed a motion for the production of records regarding the summonsing of jurors for the petit jury. On January 20, the Court met with the Jury Administrator, who then began assembling the requested materials. On January 21, the Court indicated to the defense that the motion was generally granted, subject to data maintenance and retrieval. On February 5, the Court memorialized the granting of the motion in a written order. On February 13, the Jury Administrator provided the jury records.

On February 26, the defendant filed a second motion to dismiss the indictment, arguing that the procedures used to select the petit jury in this case violated the Plan, the Act, and the fair cross-section requirement of the Sixth Amendment. On March 4, I denied the motion in open court, noting that an explanatory opinion would follow. This is that opinion.

## II.     Discussion

Section 1867(a) of Title 28 of the United States Code provides:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

Invoking this provision, the defendant moves to dismiss his indictment, arguing that: (1) the Plan was violated by re-ordering each panel of jurors after they completed questionnaires; and (2) the Plan itself violates the fair cross-section requirement of the Sixth Amendment because it permitted the excuse, upon request, of any person over the age of 70, and because it supposedly resulted in the underrepresentation and systematic exclusion of African-Americans.

A. Timeliness of Motion

As an initial matter, the defendant's claim under the Act appears untimely. A defendant "may move to dismiss the indictment . . . on the ground of substantial failure to comply" with the Act in the procedures for the selection of a petit jury "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." Id. Here, the defendant did not move to dismiss the indictment before voir dire. Additionally, he did not do so within seven days after receipt of the Judge's List on January 7, the date he could have discovered any purported deficiencies based on the order of jurors, nor did he move within seven days after receipt of the jury records on February 13, the date he could have discovered any purported deficiencies based on fair cross-section requirements. His present motion can be denied on an untimeliness basis alone.

B. Reordering of Jurors Within Each Panel

Even if his motion were considered timely, it lacks merit on substantive grounds as well. As to the reordering of jurors within each panel, the defendant's argument is premised on a fundamental misunderstanding. As was explained to the defendant on January 9, the reordering of jurors within each panel had nothing to do with "non-random factors such as arrival time" as the defendant now alleges. (Second Mot. to Dismiss Indictment and Stay Proceedings Pending

Reconstituting Jury Wheel to Conform with Statutory and Constitutional Requirements at 2 (dkt. no. 1080).) In each session, after all jurors had checked in, a computer program randomly assigned a number to each juror in the panel to create the Judge's List. I understand that this is the regular procedure used for the selection of all juries in the District.

Even if the random assignment of jurors within each panel was a strict violation of the Plan, the defendant would have to show that the procedure resulted in a "substantial failure to comply" with the Act in order to obtain relief. United States v. Royal, 174 F.3d 1, 11 (1st Cir. 1999). As explained in the Court's prior order, "[a] substantial failure is one that contravenes one of . . . two basic principles . . . : (1) random selection of jurors, and (2) determination of juror disqualification, excuses, exemptions, and exclusions on the basis of objective criteria." Tsarnaev, 2014 WL 5308084, at *2 (quoting Royal, 174 F.3d at 11). "Technical violations, or even a number of them, that do not frustrate [the random selection and cross-section requirements] and do not result in discrimination and arbitrariness do not constitute a substantial failure to comply." Id.

The random ordering of each panel of jurors to create the Judge's List if anything furthers the Act's goal of the random selection of jurors. The defendant's expert appears to agree. (Second Mot. to Dismiss Indictment, Ex. 1 at 2, ¶ 5 (Decl. of Jeffrey O'Neal Martin) (dkt. no. 1080-1) ("If the re-ordering merely reordered the potential jurors within groups of 200 or so without the introduction of any non-random factor such as arrival time, then, on average, there would not be any systematic effects on the randomness of the order.").) Arrival time had no effect on the generation of the Judge's List.

Martin also says that "certain potential jurors have moved from group to group causing the re-ordering to be non-random and the effect on cognizable groups to not be neutral." (Id.)

4

However, the randomized assignment of juror numbers within each panel is a separate matter from the rescheduling of a few jurors to different panels to accommodate their own scheduling conflicts. The defendant has not provided any evidence as to those specific jurors which would allow the Court to assess any possible impact on the composition of the jury pool or to determine whether it "frustrated" the principles of the Act and resulted in discrimination and arbitrariness. See Royal, 174 F.3d at 11.

The various statistical information the defendant offers in support of his argument does not establish otherwise. For example, the defendant complains that the re-ordering caused five African-Americans who were in the first ninety-four on the list of veniremen to shift below the first ninety-four. But he does not show how that matters when the qualified pool from which the parties exercised peremptory challenges was drawn from the first 700 jurors across the first four panels of jurors who completed questionnaires.

### C.   Alleged Violations of Fair-Cross-section Requirements

The defendant has also failed to establish a prima facie showing of a violation of the fair cross-section requirement of the Act and Sixth Amendment under the criteria articulated in Duren v. Missouri, 439 U.S. 357, 364 (1979). As the defendant concedes, his arguments regarding the fair cross-section are generally foreclosed by the Court's previous decision on the selection of the grand jury. Indeed, the defendant's own memorandum on the subject is virtually identical to his first motion to dismiss. As to African-Americans, the defendant again fails to demonstrate that the disparity of representation—1.89%—of African-Americans is constitutionally meaningful when assessed using the absolute disparity methodology that has been approved by the First Circuit. See, e.g., Royal, 174 F.3d at 10 (no violation where absolute disparity was 2.97%); United States v. Joost, 94 F.3d 640, at *8 (1st Cir. 1996) (table) (no

violation where absolute disparity was 7.13%); United States v. Hafen, 726 F.2d 21, 23 (1st Cir. 1984) (no violation where absolute disparity was 2.02%). The defendant concedes as much. (Second Mot. to Dismiss at 11.) As to persons 70 and older, the defendant's argument that they should be considered a distinctive group for fair cross-section purposes remains unconvincing. See Barber v. Ponte, 772 F.2d 982, 997-1000 (1st Cir. 1985) (en banc) (declining to recognize "young adults" between the ages of 18 and 34 as a distinctive group); United States v. Stile, No. 1:11-cr-00185-JAW, 2014 WL 5465341, at *4-6 (D. Me. Oct. 28, 2014) (persons over 70); see also Brewer v. Nix, 963 F.2d 1111, 1112-13 (8th Cir. 1992) (persons over the age of 65); Silagy v. Peters, 905 F.2d 986, 1010-11 (7th Cir. 1990) (persons aged 70 and over); Wysinger v. Davis, 886 F.2d 295, 296 (11th Cir. 1989) (per curiam) (persons aged 18 to 25); Ford v. Seabold, 841 F.2d 677, 682 (6th Cir. 1988) ("young adults" between the ages of 18 and 29).

Accordingly, the defendant has failed to prove a violation of the fair cross-section requirements of either the Sixth Amendment or the Act.

### III. Conclusion

For the foregoing reasons, the defendant's Second Motion to Dismiss Indictment and Stay Proceedings Pending Reconstituting Jury Wheel to Conform with Statutory and Constitutional Requirements (dkt. no. 1080) was DENIED in open court on March 4, 2015.

/s/ George A. O'Toole, Jr.
United States District Judge