FILED
IN CLERKS OFFICE
2015 AM 9 12
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 13-CR-10200-GAO |
| v. ) | |
| ) | **UNDER SEAL** |
| DZHOKHAR A. TSARNAEV, ) | |
| Defendant ) | |

## GOVERNMENT'S OMNIBUS PENALTY PHASE MOTIONS IN LIMINE AND INCORPORATED MEMORANDUM

The United States of America, by and through undersigned counsel, submits the following motions to preclude certain types of evidence, information, and arguments from the capital sentencing phase of the trial in this case. Because most of the motions are governed by the same general legal principles, the United States submits them in omnibus fashion.

### I. General Principles

Although the Eighth Amendment of the United States Constitution requires that a jury in a capital case be able to consider and give weight to all relevant mitigating evidence, *see Boyde v. California*, 494 U.S. 370, 377 (1990); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), the Supreme Court has clearly established that *relevant* mitigating evidence is evidence related to a defendant's background, character, or record, or the circumstances of his offense. The Court first introduced this definition of mitigating evidence in a plurality opinion in *Lockett v. Ohio*, 438 U.S. 586 (1978). The *Lockett* plurality concluded that the Eighth Amendment "requires that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604 (emphasis in original). Four years later, *Lockett's* reasoning was adopted by a majority of the Court in *Eddings v. Oklahoma*, 455

U.S. 104, 110 (1982) (holding evidence of a defendant's background -- namely, his difficult family history and emotional disturbance -- constituted "relevant mitigating evidence"). Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

Applying this framework in cases prosecuted under the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.* (the "FDPA"), federal courts have repeatedly excluded mitigating factors not relevant to a defendant's background, record, or character, or the circumstances of the offense. For example, the Sixth Circuit, sitting en banc, held that mitigation evidence "is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. May 28, 2013) (en banc). In that case, the Sixth Circuit held that the district court did not err in excluding as a mitigating factor that the State of Michigan did not allow for the death penalty. *Id.* at 521-23. In deciding what "counts as 'constitutionally relevant mitigating evidence,'" *id.* at 521 (quoting *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998)), the court cited Supreme Court precedents indicating that the evidence must be relevant to "the defendant's personal culpability for his crime," or the "defendant's character." *Id.* at 521-22 ("In summary: mitigation evidence is evidence relevant to a 'reasoned moral response to the defendant's background, character, and crime.'") (quoting *Penry*, 492 U.S. at 319).

The court explained in pertinent part:

It is true that the Supreme Court has said that mitigation evidence includes evidence that "the sentencer would reasonably find . . . warrants a sentence less than death." *Tennard v. Dretke*, 542 U.S. 274, 285, 124 S. Ct. 2562, 159 L. Ed.2d 384 (2004) (quotation marks omitted). But the key word there is "reasonably"; and read in the context of the rest of the Supreme Court's mitigation-evidence

2

> caselaw, and *Penry* in particular, that passage simply refers to evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 592 U.S. at 319. Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense – so long as he can show that at least one juror is a firm believer in astrology. To read the *Tennard* passage (and others like it) in the manner Gabrion suggests would be to transform mitigation from a moral concept to a predictive one, and make a caricature of the law. We decline the suggestion.

*Id.* at 522. *See also id.* at 524 (reaching the same conclusion under the statutory structure of the FDPA and stating: "But neither do we have any reason to think that the term 'mitigating factors,' as used in the statute, encompasses facts having nothing to do with 'a reasoned moral response to the defendant's background, character, and crime.'") (quoting *Penry*, 492 U.S. at 319); *Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008) (listing cases in which the Supreme Court has "confirmed that *Lockett* did not make all evidence automatically relevant" and has held that courts may exclude certain evidence from capital sentencing hearings as irrelevant).

Similarly, the Second Circuit has held that the broad standards for admissibility of mitigating evidence do "not mean that the defense has carte blanche to introduce any and all evidence that it wishes." *United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008) (affirming exclusion of defendant's rejected plea agreement, which would have created a "confusing and unproductive inquiry"). Likewise, after acknowledging the broad standards for admissibility of mitigating information under *Lockett*, the Fourth Circuit held that "the district court is not limited in its ability to exclude as irrelevant evidence that does not bear on the defendant's character, prior record, or the circumstances of the offense." *United States v. Hager*, 721 F.3d 167, 193 (4th Cir. 2013) (holding district court properly exercised discretion to exclude execution impact evidence). Also, the Seventh Circuit has stated that "[a] mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in

3

1496

general." *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (explaining that evidence about the existence of maximum security prisons with control units did not establish a proper mitigating factor). *See also United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) (explaining the "trial court retains its traditional authority to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of the offense;" and holding the trial court did not err in excluding involuntary intoxication evidence, as well as other proposed mitigating evidence); *United States v. Chandler*, 996 F.2d 1073, 1086 (11th Cir. 1993) (holding that the "possibility" of receiving a sentence of life imprisonment without parole did not fall within the *Lockett* definition of mitigating factors).

Several of the factors included in Tsarnaev's notice of mitigating factors do not relate to his background, record, character, or circumstance of his offenses. Thus, they have nothing to do with "a reasoned *moral* response to the defendant's background, culpability, or crime." *Penry*, 492 U.S. at 319. Accordingly, this Court should preclude such factors from being introduced at trial and submitted to the jury in the special findings form. Additionally, in his notice of mitigating factors, Tsarnaev indicated that he might seek to include "subsidiary facts that tend to establish or support the factors listed" in the Notice. Should Tsarnaev attempt to establish or speak to any of these subsidiary facts through his own unsworn testimony, the government also moves to exclude his testimony.

### II. Motion to Exclude Unsworn Allocution by Tsarnaev During the Penalty Phase

A statement of allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence."

4

*United States v. Jackson*, 549 F.3d 963, 980 n. 22 (5th Cir. 2008) (citing BLACK'S LAW DICTIONARY 83 (8th ed. 2004)). The government moves in limine to preclude Tsarnaev from offering during the penalty phase an unsworn and un-cross-examined statement to the jury. As set forth below, Tsarnaev does not have a constitutional or statutory right to allocute during the penalty phase, and his right of allocution under Fed. R. Crim. P. 32 is a right to make a statement to the court, not the jury. An unsworn, un-cross-examined allocution by Tsarnaev during the penalty phase would also be more prejudicial than probative within the meaning of the FDPA.

Several courts have held that a defendant has no constitutional or statutory right to make an unsworn, un-cross-examined allocution to the jury in capital sentencing hearings. *United States v. Lawrence*, 735 F.3d 385, 407 (6th Cir. 2013); *United States v. Jackson*, 549 F.3d 963, 980-81 (5th Cir. 2008); *United States v. Honken*, 541 F.3d 1146, 1172 (8th Cir. 2008) ; *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir. 2000).

Fed. R. Crim. P. 32 likewise does not confer upon capital defendants a right to allocution in the penalty phase. *Lawrence*, 735 F.3d at 407. Rule 32(i)(4) provides:

**(4) Opportunity to Speak.**

    **(A) By a Party.** Before imposing sentence, the court must:

    (i)    provide the defendant's attorney an opportunity to speak on the defendant's behalf;

    (ii)   address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

    (iii)  provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

The Rule makes plain that a defendant's right to allocate applies at sentencing, i.e. at the proceeding in which the Court actually imposes sentences, and not at trial, i.e. in the phase in

which the jury makes a sentencing recommendation. *See, e.g., Lawrence*, 735 F.3d at 407 ("Rule 32 does not, however, expressly require the district court to permit the defendant to address *the jury* before the jury decides upon a sentence."); *Purkey*, 428 F.3d at 761 (holding the plain language of the rule does not dictate a right to allocution in the capital sentencing context); *United States v. Hall*, 152 F.3d 381, 391-97 (5th Cir. 1998) (same), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000). Relying on the plain language of Rule 32, therefore, most courts have deemed the Rule satisfied in a federal capital case if the court allows the defendant to speak to the court before the sentence is actually imposed. *Lawrence*, 735 F.3d at 407; *see also Honken*, 541 F.3d at 1172; *Barnette*, 211 F.3d at 820; *Hall*, 152 F.3d at 392-93.

Rule 32 must also be read in light of the FDPA, which was enacted after Rule 32 and contains no provision authorizing allocution. Pursuant to well-established rules of statutory construction, the FDPA controls in the event of a conflict. *See* Sutherland Statutory Construction (5th ed. 1992), § 46.05 at 105 (and authorities cited therein). *See also United States v. McCluskey*, Case No. 10-2734, memorandum op. and order, Doc. 1060 at 3-4 (D.N.M. Jun. 26, 2013) (holding that Rule 32 has been supplanted in the capital context by 18 U.S.C. § 3593(c) sentencing procedures); *United States v. Johnson*, 136 F. Supp. 2d 553, 566-67 (W.D. Va. 2001) (same).

Additionally, while Defendant may argue that allocution is admissible as relevant character evidence in mitigation, it is likely that allocution testimony before the jury would run afoul of the FDPA's evidentiary standard set forth in 18 U.S.C. § 3593(c). Under this section, evidence may be excluded at the penalty phase of trial "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." An

6

unsworn statement by the defendant in the penalty phase – particularly when not subjected to the crucible of cross-examination -- presents a high risk of unfair prejudice and confusion to the jury. Denying the government the ability to cross-examine the defendant would deny the jury essential information it needs to decide important issues regarding the credibility, veracity, timing, and origin of his statement. Unsworn allocution "would in no sense increase the accuracy and reliability of the capital-sentencing process." *McCluskey*, *supra*, Doc. 1060 at 5 (quoting *Hall*, 152 F.3d at 393).

Finally, the defendant cannot deny that he possesses an absolute right to testify on his own behalf -- both during the guilt phase and then again during the penalty phase -- during which he could tell the jury anything he might say during an unsworn allocution. Consequently, there is no reason to allow an unsworn allocution in this case. *See Lawrence*, 735 F.3d at 408 ("Lawrence chose not to personally address the jury under these constraints (under oath and subject to cross-examination), but he has not identified any unfairness inherent in the district court's requirement that any statement be made under oath.").

To be sure, certain district courts have permitted limited opportunities for capital defendants to provide unsworn allocution in capital cases. *See United States v. Williams,* 18 F. Supp.3d 1065, 1068-69 (Hi. 2014); *United States v. Wilson*, 493 F. Supp.2d 509, 510 (E.D.N.Y. 2007); *United States v. Henderson*, 485 F. Supp.2d 831, 845 (S.D. Ohio 2007). As the Sixth Circuit recognized in *Lawrence*, however, those courts allowed allocution "only subject to defined conditions and limitations." *Lawrence*, 735 F.3d at 408. For example, in *Wilson*, the court imposed five specific conditions upon the defendant, including limitations on what the defendant could say and instructions to the jury that it could consider the fact that the statement was unsworn and not subject to cross-examination. *Wilson*, 493 F. Supp. 2d at 510. In

7

*Henderson*, the allocution was permitted only subject to a limiting instruction. *Henderson*, 485 F. Supp. 2d at 845. Regardless, the weight of authority, including the several cases cited above, militates against permitting Tsarnaev to provide unsworn allocution in this case that is not subject to cross-examination. To do otherwise would be to judicially extend the bounds of Rule 32 and the FDPA and grant Tsarnaev the opportunity to make a statement to the jury that would be unsworn, untested, and unreliable.

Accordingly, the Government requests that the Court not permit Tsarnaev to provide an unsworn allocution statement in the penalty phase that is not subject to cross-examination in this case.

### III. Motion to Exclude Execution Impact Evidence

Tsarnaev should be precluded from offering evidence relating to the effect that a death sentence would have on his family, friends, loved ones, or others, including victims who might be opposed to the death penalty in general or in this case. Testimony that the defendant's family and friends love him, that a death verdict would have a negative impact on them, that they (or others) oppose it or believe it should not be imposed in this case, or any general plea for sympathy or mercy are not relevant to a "reasoned moral response" to Tsarnaev's character or his personal culpability for the charged murders. *Gabrion*, 719 F.3d at 521 (setting standard for relevant mitigating information).

Thus, in *Hager*, *supra*, the Fourth Circuit held that "allowing a capital defendant to argue execution impact as a mitigator is improper." *Hager*, 721 F.3d at 194.[1] Myriad other federal

---

[1] In *Hager*, the court excluded mitigating factors concerning the defendant's present and future relationship with his daughters and the impact his execution would have on them. *See* 721 F.3d at 193. The execution impact evidence that was excluded included (1) a videotaped interview of

8

courts have followed suit in excluding such execution impact evidence. *See, e.g., United States v. Snarr*, 704 F.3d 368, 401 (5th Cir. 2013) ("Because such evidence does not reflect on the defendant's background or character or the circumstances of his crime, . . . this court consistently has affirmed the exclusion of execution impact testimony."); *Stenson v. Lambert*, 504 F.3d 873, 892 (9th Cir. 2007) (highlighting that the defendant could not "point to any federal case requiring admission of 'execution impact' testimony because there are no such cases"); *McCluskey, supra*, Doc. 1060 at 8-10 (granting government's motion to exclude execution impact); *United States v. Umana*, Case No. 08-cr-134, 2010 WL 3023498, *15 (W.D.N.C. Jul 27, 2010) (denying motion for new trial based on claim that court erred in refusing to instruct jury that "the execution of Alejandro Enrique Umana would cause grief and loss to his son Rafael and to Monica Reyes;" rejecting defense argument that execution impact factor was relevant to defendant's character and background); *United States v. Taylor*, 583 F. Supp. 2d 923, 944-45 (E.D. Tenn. 2008) (denying motion for acquittal where defense witness was not permitted to testify how her life would be impacted if the defendant were sentenced to death or executed).

There is no merit to the argument that execution impact testimony – particularly testimony that witnesses love Tsarnaev or that it is important for them to spend time with him or have him in their lives – is relevant to Tsarnaev's background or character. Such evidence bears

---

defendant's teenage daughters by a child psychologist; (2) a videotape of the defendant's daughters talking to each other about their relationship with the defendant; and (3) a videotape of the daughters engaged in a telephone conversation with the defendant. *See id.* The court also excluded testimony from the daughters "saying they love their father" or "about how they feel about having their father taken away from them, about the death penalty or anything of that sort." *Id.* at 194 (quoting district court).

9

on the *witness's* background or character, but not the *defendant's*. In *Hager*, the Fourth Circuit concluded:

> In sum, evidence regarding how Hager's execution might affect his daughters would have provided the jury with nothing about *his* character, prior record, or the circumstances of his offense. And the fact that they love him or that it is important to them 'to talk with him, see him, and have him in their lives' provides no insight, either.

*Hager*, 721 F.3d at 196-97 (emphasis added). *See also Coleman v. Saffle*, 869 F.2d 1377, 1393 (10th Cir. 1989) (affirming denial of habeas relief where trial court excluded statements by defendant's wife and sister-in-law that they loved defendant because the statements "in no way concerned an aspect of [defendant's] 'character or record and any of the circumstances of the offense'"); *McCluskey, supra*, Doc. 1060 at 10 (holding that it "is not a reasonable conclusion" that defendant's "background" included how his family would feel if he were executed).

Execution impact evidence is clearly distinguishable from victim impact evidence, which is permitted under the FDPA and Supreme Court precedent. *See* 18 U.S.C. § 3593(a); *Payne v. Tennessee*, 501 U.S. 808 (1991). Because victim impact evidence relates to the harm caused by a defendant, the *Payne* Court held that it is relevant to the jury's assessment of "the defendant's moral culpability and blameworthiness." *Payne*, 501 U.S. at 825. In this respect, victim impact fundamentally differs from execution impact evidence, which in no way reflects on the defendant's culpability. *Snarr*, 704 F.3d at 402; *Hager*, 721 F.3d at 194-95. *See also Taylor*, 583 F. Supp. 2d at 944 ("[W]hile the FDPA specifically provides for victim impact evidence, 18 U.S.C. § 3593(a), there is no parallel provision allowing for execution impact evidence.").

*Payne* itself cannot be made to stand for the proposition that execution impact testimony is admissible. Payne held that victim impact testimony from third parties is admissible because the deceased victim in a capital murder case is not available to provide testimony at trial. Thus,

10

victim impact testimony allows the jury to know about the victim's life. *Hager*, 721 F.3d at 195. The capital defendant, on the other hand, is available to offer the jury all relevant information as to his life, background, character, and the impact any sentence will have on him. *Id.* Execution impact testimony also is not analogous to victim impact testimony because it is highly speculative, calling for predictions about the effect of a future event on a witness's life. *See Taylor*, 583 F. Supp. 2d at 944; *McCluskey, supra*, Doc. 1060 at 9.

Execution impact testimony boils down to a plea for sympathy and mercy. Just as victim impact witnesses are not permitted to cry out for death, execution impact witnesses must not be allowed to cry out for life. Emotionally charged opinions and pleas should not form the basis for a verdict in a capital case regardless of whether the opinions favor death or life. *Taylor*, 583 F. Supp. 2d at 944. In short, because execution impact testimony is not relevant to defendant's character, background, or culpability, and because the testimony is highly speculative and emotionally charged, this Court should exclude it from trial.

Accordingly, the Government requests that the Court preclude execution impact testimony, arguments, and mitigating factors in this case.

**IV.     Motion to Preclude Comparative Proportionality Evidence and Arguments**

The Government moves this Court to preclude Tsarnaev from submitting evidence or arguments in the penalty phase comparing the facts of this case to any other case, particularly factually analogous cases in which a sentence of death was not imposed. Comparative proportionality review is not constitutionally required and is not relevant mitigating information.

The Supreme Court has clearly held that "comparative proportionality" review is not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37, 40 (1984). In *Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007), the Sixth Circuit explained the distinction between the proportionality

11

required by the Eighth Amendment and the "comparative proportionality" the Government seeks to preclude. The court explained that "Eighth Amendment proportionality, as defined by the Supreme Court, refers to an abstract evaluation of the appropriateness of a sentence for a particular crime." *Getsy*, 495 F.3d at 305 (internal quotations omitted). The court went on to say that, in those cases in which the Supreme Court has struck down a death sentence on proportionality grounds, the disproportionality was not in relation to sentences received by other similarly situated defendants, but rather in relation to the particular crime that the particular defendant had committed. *Id.* Citing *Pulley* and *McCleskey v. Kemp*, 481 U.S. 279 (1987), the court concluded that a defendant could not prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive the death penalty. *Id.* (rejecting habeas claim that petitioner's death sentence was disproportionate to life sentence imposed upon co-defendant who was purported mastermind of capital murder); *see also Beuke v. Hook*, 537 F.3d 618, 652 (6th Cir. 2008) (rejecting habeas claim that petitioner's death sentence was disproportionate to sentences imposed upon ten other defendants convicted of aggravated murder in the same Ohio county); *United States v. Ebron*, 683 F.3d 105, 155-56 (5th Cir. 2012) (rejecting claim that death sentence was arbitrary in light of fact that three co-defendants did not receive death sentences).

In this case, which is governed by the FDPA, Eighth Amendment individual proportionality is ensured by the requirement that the government prove to the jury beyond a reasonable doubt at least one of the "gateway" or "threshold" intent factors listed in 18 U.S.C. § 3591(a)(2)(D). No inquiry into how Tsarnaev's case compares to other capital murder cases in this District, or anywhere else for that matter, is required or should be permitted.

12

In fact, any such comparisons by the jury would run afoul of precedents from the Supreme Court and circuit court opinions regarding the scope of relevant mitigation evidence and information. The facts and circumstances of other cases, including the backgrounds and characteristics of other defendants, have nothing to do with a "reasoned moral response" to the background and character of the defendant in this case, or the circumstances of the offense in this case. *See Gabrion*, 719 F.3d at 522 (defining standard for relevant mitigation evidence).

Further, the probative value of information from other cases is outweighed by the danger of confusing the issues and misleading the jury. *See* 18 U.S.C. § 3593(c). Every case is different and it is unlikely that the jury could be fully informed as to why a death penalty was not returned in any other case. The comparative proportionality evidence would also distract the jury from its individualized determination of whether the death penalty is justified in *this* case. *See United States v. Sampson,* 335 F. Supp. 2d 166 (D. Mass. 2004); *United States v. Caro*, 461 F. Supp. 2d 459, 465 (W.D. Va. 2006) ("[A]llowing the defendant during closing arguments to reference totally unrelated cases in which the death penalty was not sought or the defendant was not sentenced to death, would lead to a confusion of the issues and mislead the jury, nonetheless."), *affd.* 597 F.3d 608 (4th Cir 2010).

In *Sampson*, the district court addressed the issue of proportionality and concluded that the presentation of the results of other cases would mislead the jury and cause confusion. The court stated that "the proffered capital case verdicts cannot be compared in any meaningful way unless the cases are effectively retried to this jury." *Sampson,* 335 F. Supp. 2d at 198. On appeal, the First Circuit held that the district court had "ample reason" to exclude this evidence. *United States v. Sampson,* 486 F.3d 13, 45 (1st Cir. 2007). The First Circuit noted that the district

13

court did not abuse its discretion by concluding that the comparative list had "limited probative value" and a "high risk of juror confusion." *Id.*

In *United States v. Taylor*, 583 F. Supp. 2d 923, 933-36 (E.D. Tenn. 2008), the district court specifically held that comparative proportionality evidence is not a proper mitigating factor. Thus, the court excluded testimony from Attorney Kevin McNally, director of the Federal Death Penalty Resource Center, regarding a number of other federal capital cases that did not result in death sentences. *Id.* at 935-36. The court reasoned in pertinent part:

> The outcomes of the other cases and the races of victims and defendants in other cases have nothing to do with the defendant in this case or the circumstances of his offense or any of the mitigating factors in § 3592(a). Therefore, the Court concludes comparative proportionality review with defendants unconnected to this case is not a proper task for the jury. Within its collective knowledge, the jury will be aware of some circumstances and outcomes of other cases, but its decision on life or death must run on its understanding of this case, the offenses involved, and this defendant, not on the specifics of other cases and other defendants. To hold otherwise would necessitate turning the trial into a series of mini-trials over the facts and circumstances of other prosecutions, in a situation where the specific facts and circumstances and the exact reason the juries reached their decisions in those other prosecutions are not available to the parties. Such information has no probative value and would confuse and mislead the jury with irrelevant information.

*Id.* at 935-36. *See also United States v. McCluskey*, Case No. 10-2734, memorandum op., Doc. 1418 (D.N.M. Nov. 18, 2013) (denying defense motion to admit testimony of Kevin McNally regarding summaries of other federal capital cases); *United States v. Umana*, Case No. 08-134, 2010 WL 1740487, *4 (W.D.N.C. Apr. 28, 2010) (rejecting mitigating factors that would amount to proportionality review because evidence was "irrelevant to [defendant's] character or the circumstances of the offense, and is likely to confuse and mislead the jury"); *Caro*, 461 F. Supp. 2d at 464-65 (granting government's motion in limine to preclude comparative proportionality evidence); *United States v. Regan*, 221 F. Supp. 2d 659, 660-61 (E.D. Va. 2002) (holding

14

proportionality evidence relating to the harm done in other espionage cases could not be used as a mitigating factor because it lacked probative value and there was a significant danger of confusing the issues and misleading the jury).

Applying the principles and precedents set forth above, this Court should preclude Tsarnaev from introducing comparative proportionality evidence or arguments during the penalty phase in this case.

### V.    Motion to Preclude Arguments That "Beyond a Reasonable Doubt" Standard Applies to Weighing Process

The Government moves this Court for an order precluding defense counsel from arguing to the jury at the penalty phase that the Government must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors or that a sentence of death is justified. In order for the jury to impose a sentence of death, the FDPA requires the government to prove that "the aggravating factor or factors found to exist *sufficiently outweigh* all the mitigating factor or factors found to exist to justify a sentence of death." 18 U.S.C. § 3593(e) (emphasis added). There is no provision requiring the "beyond a reasonable doubt" burden of proof at the final phase of deliberations.

All of the Courts of Appeals to have addressed this issue have concluded that the Sixth Amendment's requirement that findings of fact be made beyond a reasonable doubt does not apply to the FDPA's weighing determination. *See United States v. Sampson,* 486 F.3d 13, 31-32 (1st Cir. 2007); *United States v. Gabrion,* 719 F.3d 511, 532-33 (6th Cir. 2013) (en banc); *United States v. Runyon,* 707 F.3d 475, 516 (4th Cir. 2013); *United States v. Fields,* 516 F.3d 923, 950 (10th Cir. 2008); *United States v. Mitchell,* 502 F.3d 931, 993-94 (9th Cir. 2007), *cert. denied,* 553 U.S. 1094 (2008); *United States v. Fields,* 483 F.3d 313, 345-46 (5th Cir. 2007), *cert. denied,* 552

15

Case 1:13-cr-10200-GAO   Document 1201-1 SEALED   Filed 03/25/15   Page 16 of 18

U.S. 1144 (2008); *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005). As the First Circuit clearly stated in *Sampson,* "we hold that Congress did not intend the reasonable doubt standard to apply to the weighing process." *Sampson*, 486 F.3d at 31. The *Gabrion* court explained that the FDPA's weighing process requires not a finding of fact, but a "moral judgment" determining whether a sentence of death is "just." *Gabrion*, 719 F.3d at 533. Thus, the jury need not be instructed on the beyond a reasonable doubt standard, as if it was making a finding of fact. *Id.*, Tsarnaev should be precluded from arguing to the contrary.

### VI. Motion to Exclude Evidence of Arguments that Massachusetts Does Not Have a Death Penalty

Tsarnaev may seek to offer mitigating evidence that the Commonwealth of Massachusetts has abolished the death penalty. The Sixth Circuit, sitting en banc, held "[t]hat [the state] lacks a death penalty is irrelevant to a reasoned moral response to Gabrion's background, character, and crime." *Gabrion*, 719 F.3d at 523. The Fourth Circuit likewise held, in *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), that a defendant's ineligibility for the death penalty under Maryland law was not mitigating evidence. *Id.* at 328. Likewise, in *Taylor,* the district court held that the abolition of the death penalty in France was not a mitigating factor. *Taylor*, 583 F. Supp. 2d at 943. "It is not an aspect of a defendant's character or record of any of the circumstances of the offense." *Id.* (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988)). Consequently, the Court should exclude any evidence or argument that the Commonwealth of Massachusetts has abolished the death penalty.



### VIII. Motion to Exclude Evidence or Argument that Imposing the Death Penalty would Increase rather than Reduce the Danger of Future Terrorist Attacks.

Defendant's mitigation factor Seven claims that "under the circumstances of this case, executing the defendant would increase rather than reduce the danger of future terrorist attacks." While the hypothetical and speculative nature of such a claim is reason enough to preclude it, the Court should also bar it because it is clearly irrelevant under the FDPA. The possible future conduct of third parties has nothing to do with the defendant's background, character or the circumstances of the crimes. Speculative predictions about the likely impact of Tsarnaev's execution on the behavior of third parties is no more admissible than speculation about its likely emotional and psychological impact on family members, friends, and victims. In both cases, the information has nothing to do with the defendant's background, character or commission of the crimes. Such evidence could only tend to encourage improperly an irrational result.

### VIII. Conclusion

For the reasons set forth above, the United States requests that this Court enter an order granting each of the seven motions *in limine*.

---

[2] The also incorporates by reference its prior Motion in Limine on this issue.

Respectfully submitted,
CARMEN M. ORTIZ
United States Attorney

/s/ Steven D. Mellin
William D. Weinreb
Aloke Chakravarty
Nadine Pellegrini
Assistant U.S. Attorneys
Steven D. Mellin
Trial Attorney

**Certificate of Service**

I hereby certify that this document electronically provided to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 24, 2015.

/s/ Nadine Pellegrini
Nadine Pellegrini
Assistant U.S. Attorney

18

1511