FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS 2015 MAR 30  AM 9 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13-CR-10200-GAO |
| v. | ) | |
| | ) | |
| DZHOKHAR TSARNAEV | ) | **FILED UNDER SEAL** |

## MOTION TO RECONSIDER DENIAL OF ADMISSION OF EVIDENCE REGARDING RANGE OF TRANSMITTERS

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully moves that this Court reconsider its ruling denying the defense the opportunity to show the range of the transmitters used to detonate the bombs on Boylston Street.

During direct examination of FBI Supervisory Special Agent Edward Knapp, Jr., the prosecutor asked if he knew the range of the transmitters used in the bombing. He said that he did not. During cross-examination, the defense sought to impeach him with his report, in which he incorporated findings by FBI Electronics Engineer Michael McFarlane and others in the FBI's Crytologic and Electronic Analysis Unit ("CEAU"). The government objected on several grounds; the Court ultimately sustained the objection under Fed. R. Evid. 403.

In its opening, the government had asserted that, after the first explosion, the defendant "walked briskly back the way he had come" and detonated the bomb [w]hen he was a safe distance away." Govt. Opening at 5. By making this argument and by asking Knapp if he knew the range of the transmitters, the government opened the door to this testimony. Its relevance is plain. Where the government has sought to portray the

1

defendant as an equal partner with his brother, the difference between the distance that he put between himself and the bomb in front of the Forum and the distance away that he could have put himself, had he been knowledgeable about the range of the transmitter, shows his lack of sophistication.

Further, where the government presented a detailed explanation of the way in which the bombs were constructed and how they operated, the range of the transmission is relevant. *See United States v. Crenshaw,* 698 F.2d 1060, 1066 (9th Cir. 1983) (reversing conviction where defense prohibited from calling witness to rebut government's argument that defendant helped plan robbery); *United States v. Whitman,* 771 F.2d 1348, 1351 (9th Cir. 1985) (reversing conviction where defendant precluded from rebutting government's evidence regarding motive).

Nor can the Court exclude evidence because the Court finds it unpersuasive. *See Blake v. Pellegrino,* 329 F.3d 43, 47-48 (1st Cir. 2003) (granting new trial in civil case where trial judge excluded evidence of cause of death from death certificate based on his conclusion that evidence was unpersuasive); *Bowden v. McKenna,* 600 F.2d 282, 283-85 (1stCir. 1979) (granting new trial where civil defendant not permitted to rebut argument raised by plaintiff).

The error in exclusion of such evidence becomes a constitutional violation when the evidence is proffered on behalf of a criminal defendant. *See United States v. Evans,* 728 F.3d 953, 961-64 (9th Cir. 2013) (granting new trial in criminal case where court excluded birth certificate that prosecution claimed was fraudulently obtained). *See generally Washington v. Texas,* 388 U.S. 14 (1966).

The government's argument against admission was puzzling. After first claiming that the defense should have put the government on notice that it would inquire into this area, prosecutors argued that it should be excluded under Fed. R. Evid. 403 "because the purpose of this examination is to suggest that Tamerlan Tsarnaev could have detonated that second bomb[.]" The defense clearly stated that this was not its purpose. But even if it had been, there was no basis for exclusion.

The government asserted that "the defense knows it's not true." Its basis for this claim was the defendant's un-Mirandized statements, which the defense sought to exclude on the ground that they are involuntary and which the government has agreed not to introduce in its case-in-chief. The defendant's statements are not necessarily true, nor does the defense know them to be true: the defense has never relied upon them and certainly has no intention to offer them. If anything, the circumstances under which the statements were made demonstrate a lack of reliability for the same reasons that they demonstrate involuntariness. And there is more: the statements were made after government agents falsely told the defendant that his brother was alive, giving him an incentive to shoulder more of the blame to protect his brother.

Bur even if the inadmissible statements showed that the defendant had detonated the bomb, knowledge of that fact would not preclude the defense from impeaching a government witness' statement on direct examination. If the government had *independent* information that Tamerlan could not have set off both bombs, it could use it to contradict the evidence offered by the defense. But it cannot rely on the defendant's

3

unconstitutionally-obtained and involuntary statement in support of its Rule 403 argument.

The Supreme Court has allowed the government to use an un-Mirandized statement to impeach a testifying defendant, *Harris v. New York*, 401 U.S. 222 (1971), but has refused to extend the *Harris* exception to the exclusionary rule to permit impeachment of other defense witnesses through the use of unconstitutionally-obtained evidence. *Cf. James v. Illinois*, 493 U.S. 307, 313 (1990) (addressing use of illegally seized evidence). The First Circuit has acknowledged that limitation with respect to an un-Mirandized statement. *United States v. Lanoue*, 71 F.3d 966, 975 (1st Cir. 1995). ("[A]n illegally obtained inconsistent statement of a defendant . . . . can only be used to impeach him (but not a defense witness)").

Of course, if the statements were involuntary, they cannot be used for any such purpose. The Court has reserved ruling on the voluntariness of the defendant's statements. If it is going to permit the government to deploy the defendant's statements to limit his right to confront witnesses or present a defense, the Court should address and resolve the question of voluntariness promptly.

## CONCLUSION

For the foregoing reasons, the Court should permit the defense to introduce evidence regarding the range of the transmitters.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

/s/

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 30, 2015.

Miriam Conrad