FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S
### OMNIBUS PENALTY PHASE MOTIONS IN LIMINE

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully files his Response to the Government's Omnibus Penalty Phase Motions in Limine and Incorporated Memorandum [DE 1209].

The first three of the government's seven motions in limine are moot because the defendant does not intend:

- to present "execution impact evidence" (Government's Point II);

- to present an unsworn allocution to the jury (Government's Point III); or

- to introduce evidence or argue that the death penalty in his case would be disproportionate in light of the sentences imposed in other cases (Government's Point IV).

The defendant responds to the government's remaining four issues below.

**Whether the "beyond a reasonable doubt" standard applies to the jury's weighing process** (Government's Point V). The Court should deny this portion of the government's motion, and should instruct the sentencing jury that the government bears

1

the burden of proving beyond a reasonable doubt to each and every juror both that the aggravating factors sufficiently outweigh the mitigating ones, and that death rather than life imprisonment without possibility of released should be imposed. Even if viewed as mixed questions of law and fact or the application of law to fact, these are determinations on which Mr. Tsarnaev's eligibility for a death sentence depends; thus the Fifth and Sixth Amendments require they be proven to a jury beyond a reasonable doubt.[1]

Moreover, the Eight Amendment also demands that the ultimate determination, as well as the subsidiary ones on which it depends, be made by a jury according to the beyond-a-reasonable-doubt standard, before a death sentence may be imposed. *See Ring v. Arizona*, 536 U.S. 584, 614 (2002) (Breyer, J., concurring in the judgment); *see also Hurst v. Florida*, ___ U.S. ___, 2015 WL 998606 (Mar. 9, 2015) (granting certiorari to decide whether state sentencing scheme that allows for death sentence to be imposed without beyond-a-reasonable-doubt jury determination violates the Sixth or Eighth Amendments).

**Motion to exclude mitigation about Massachusetts's abolition of the death penalty** (Government's Point V). The Court should deny this portion of the government's motion and permit Mr. Tsarnaev to present evidence and argument

---

[1] Mr. Tsarnaev recognizes that this Court is bound by the First Circuit's contrary holding on the Sixth Amendment issue in *United States v. Sampson*, 486 F.3d 13, 30-32 (2007). Still, he presents it to this Court in order to preserve it for later appellate review, including by the *en banc* First Circuit and by the Supreme Court. *See United States v. Gaudin*, 515 U.S. 506, 510-12 (1995); *see also United States v. Gabrion*, 719 F.3d 511, 548-49 (6th Cir. 2013) (*en banc*) (Moore, Martin, White & Stranch, JJ., dissenting).

2

264

regarding the facts that Massachusetts has abolished the death penalty and its state law does not allow for capital punishment.

Massachusetts law has not provided for the death penalty for more than 30 years. Thus, had Mr. Tsarnaev been prosecuted for the charged crimes in state court, he would not have been subject to capital punishment. The Court has already advised every prospective juror, without objection by the government, that Massachusetts law does not provide for the death penalty. This constitutes relevant mitigation under the Federal Death Penalty Act, 18 U.S.C. § 3592(a)(8), and the Eighth Amendment, which defense counsel should be permitted to argue. *See Gabrion*, 648 F.3d at 321-22 (Moore, Martin, White & Stranch, JJ., dissenting); *see also United States v. Mitchell*, 502 F.3d 931, 989 (9th Cir. 207) (letter from Attorney General of the Navajo Nation to the United States Attorney expressing opposition to capital punishment for defendant, a Navajo, was "certainly" material; court notes that letter was admitted at sentencing, and seven jurors found it established a mitigating factor); *United States v. Khalfan Mohamed*, 156 F. Supp. 2d 359, 370 (S.D.N.Y. 2001) (jury permitted to consider mitigating factor that defendant's extradition was in violation of South African law). *Cf.* Michael Mannheimer, *When the Federal Death Penalty Is "Cruel and Unusual,"* 74 U. Cin. L.Rev. 819 (2006).

3



[redacted]

**Evidence or Argument that Imposing the Death Penalty would Increase rather than Reduce the Danger of Future Terrorist Attacks.** (Government's Point VIII). Finally, the government argues in a single conclusory paragraph that the Court should strike as a mitigating factor any information tending to show that under the particular circumstances of this case, executing the defendant would tend to exacerbate rather than reduce the risk of further jihadist violence. In making this argument, the government fails to take into account the expert testimony of Dr. Levitt and the vast amounts of documentary evidence from the defendant's Sony Vaio laptop computer that it has already introduced concerning the history, tactics, and future plans of the "global jihadi movement." It further overlooks the government's own stated intention to present, at the sentencing phase.

  (1) evidence of the impact of the Boston Marathon bombings on the future national security of the United States and on the violent plans and calculations of religious extremists around the world, (Government's Expert Disclosure, Terrorism Experts at 5-6 (Aug. 1, 2014), and

  (2) evidence of as-yet-undetected traumatic symptomatology on the part of Boston-area children that flows from both direct and indirect (i.e. media) exposure to the bombings. Id. at 10-11 (testimony of pediatric psychologist Jonathan Comer, Ph.D.).

Indeed, the government has served notice that it will offer expert testimony to the effect that "successful" terrorists "are often lionized by the global jihad community and, if incarcerated in a non-Muslim country, serve to inspire additional acts of violence by sympathizers." *Id.* at 5. All of this evidence will invite the jury to consider speculative future impacts of the offense.

  In other cases, the government has successfully argued for the admission of the type of evidence it seeks to exclude here. For example, in *United States v. Battle*, 173 F.3d 1343 (11th Cir. 1999), which involved the murder of a correctional officer by a prison inmate, the Eleventh Circuit rejected a defense challenge to sentencing testimony from other guards to the effect that a life sentence would undermine discipline and security at the prison. *See id.* at 1348-49 (approvingly characterizing disputed testimony as "descriptions of . . . the effect the sentence in this case would have on the prison population and guards at this particular prison" and "about how . . . the resulting sentence for [victim's] killer would affect them"). It has always been entirely proper for a sentencing authority to take into account the probable effects of a given sentence on the behavior of others, or on society as a while, and the rule should be no different when it is the defense rather than the government that raises the issue.

6

In sum, neither the Due Process Clause of the Fifth Amendment for the Eighth Amendment's requirement of heightened reliability in the capital sentencing process will permit the government to rely so heavily on evidence designed to stoke the fears of the jury, while eliding from the jury's consideration both commonsense and expert conclusions that the death penalty is likely to prove yet another self-defeating reaction of the kind that organizations like al-Qaeda in the Arabian Peninsula seek to provoke through terrorist attacks. At a minimum, the Court should not issue a categorical bar to the defendant's side of this issue in advance of the penalty phase, but should consider the relevance of the defendant's evidence, both as affirmative mitigation and as rebuttal to the government's "terrorism experts," in the context of the guilt and sentencing phase evidence as a whole.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys

/s/ David I. Bruck

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

7

        Miriam Conrad, Esq. (BBO # 550223)
        Timothy Watkins, Esq. (BBO # 567992)
        William Fick, Esq. (BBO # 650562)
        FEDERAL PUBLIC DEFENDER OFFICE
        51 Sleeper Street, 5th Floor
        (617) 223-8061
        MIRIAM_CONRAD@FD.ORG
        TIMOTHY_WATKINS@FD.ORG
        WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that this document was served by email upon counsel for the government on March 31, 2015.

*/s/ David J. B[...]*