# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | |
| Defendant | ) | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

The United States of America, by and through its undersigned counsel, respectfully

opposes defendant's motion for judgment of acquittal.

## INTRODUCTION

A.    Counts Three, Five, Eight, Ten, Thirteen and Fifteen

There is no merit to Tsarnaev's argument that the Section 924(c) offenses predicated on

the use of bombs at the Marathon and in Watertown are lesser-included versions of those

predicate offenses.  That is logically impossible, because a section 924(c) offense itself

incorporates all of the elements of the predicate offense.  The test of whether one offense is

included within another is the "elements" test established in Blockburger v. United States, 284

U.S. 299, 304 (1932).  See United States v. Rivera-Feliciano, 930 F.2d 951, 953 (1st Cir. 1999).

"By definition, a lesser-included offense does not contain each and every element of the greater

offense, but only 'a subset of the elements of the charged offense.'"  United States v. Gray, 2013

WL 6038485, at *18 (11th Cir. 2013) (quoting Schmuck v. United States, 489 U.S. 705, 716

(1989)).  But a section 924(c) violation does include each and every element of the predicate

offense.  See, e.g., United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997) ("In accordance

with the views of all the circuits considering the question, we hold that a defendant's conviction

under section 924(c)(1) does not depend on his being convicted —– either previously or contemporaneously —– of the predicate offense, *as long as all of the elements of that offense are proved and found beyond a reasonable doubt*.") (emphasis added); United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (same); United States v. Reyes, 102 F.3d 1361, 1365 (5th Cir. 1996) ("[P]roof of the defendant's guilt of a predicate offense is an essential element of a conviction under § 924(c)(1)."). It therefore makes no sense to characterize a section 924(c) charge as a lesser-included version of the predicate offense.

The First Circuit has squarely rejected similar arguments many times. In United States v. Garcia-Ortiz, 528 F.3d 74 (1st Cir. 2008), for example, a defendant charged with both armed robbery (firearm) and possessing a firearm during and in relation to the robbery argued that "the armed robbery. . . contained all the elements of possession of a firearm during the commission of a robbery" and therefore was the same offense for Double Jeopardy purposes. Id. at 85 (citing Blockburger). The First Circuit rejected the argument. It wrote, "Our precedent disposes of the matter, and no further analysis is required. This court held in United States v. Hansen, 434 F.3d 92 (1st Cir. 2006), 'that Congress intended § 924(c)'s firearm violation to serve as a cumulative punishment in addition to that provided for the underlying violent crime and that the Double Jeopardy Clause was therefore not offended.'" Id. (quoting Hansen, 434 F.3d at 104 (quoting United States v. González–Arimont, 268 F.3d 8, 13 (1st Cir. 2001)) (internal quotation marks omitted)). Accord United States v. Khalil, 214 F.3d 111, 120 (2nd Cir. 2000) ("[W]hile the commission of a crime of violence . . . is a necessary predicate for a conviction under section 924(c) . . . we cannot consider the underlying violent felony to be a 'lesser' offense. . . . [because] Congress obviously did not intend the crime of violence to be merged into the firearm offense.")

Congress could not have made it clearer that 18 U.S.C. § 924(c) creates an offense separate from the predicate crime, and that a defendant may be prosecuted and punished for both, even if use of a firearm is an element of the underlying crime. Section 924(c)(1)(D) expressly provides: "Notwithstanding any other provision of law. . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment *imposed for the crime of violence* or drug trafficking crime during which the firearm was used, carried, or possessed" (emphasis added). That is true even if the crime of violence already "provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device." 18 U.S.C. § 924(c)(1)(A).

Nothing in the statute's plain language or legislative history supports Tsarnaev's suggestion that its purpose "was to impose additional punishment for the commission of a crime of violence with a firearm [only] where the crime could be committed with or without a firearm." (Deft. Mot. at 3). The opposite is true. Congress could easily have written such a limitation into the statute had it wanted to, but it did not, indicating that no such limitation was intended. The statute's purpose, moreover, was not merely to impose an enhanced sentence on those who choose to arm themselves when they commit crimes, but also to guarantee that every armed offender serves a prison sentence -– such as here, where none of the predicate crimes carries a mandatory minimum sentence. See, e.g., 114 Cong.Rec. 22237 ("[A]ny person who commits a crime and uses a gun will know that he cannot get out of serving a penalty in jail") (statement of Rep. Rogers).

The history of section 924(c) makes even plainer that its chief purpose is to impose an additional, guaranteed prison sentence on armed offenders even in cases where the predicate crime can be committed only while armed. When Congress first passed section 924(c) as part of

3

the Gun Control Act of 1968, it created a penalty that could not be suspended, could not result in probation, and that increased for a second or subsequent offense.  See Pub. L. No. 90-618, § 102, 82 Stat. 1223.  In 1971, Congress added the requirement that the sentence must run consecutively to the sentence for the underlying crime.  See Pub. L. 91–644.  When the Supreme Court, applying the rule of lenity, held that Congress did not intend this last requirement to apply if the underlying crime itself contained a firearm-based sentence-enhancement, see Simpson v. United States, 435 U.S. 6, 12-13 (1978), Congress swiftly amended the statute to correct that misunderstanding, see Pub. L. No. 98-473, § 1005(a), 98 Stat. 2138-2139.

Two years later, in 1986, Congress added a ten-year mandatory-minimum sentence for use of a machine gun or silencer, see Pub. L. No. 99-308, § 104(a)(2), 100 Stat. 456-457, and in 1988, it increased the mandatory-minimum sentences for certain recidivists and for the use of certain types of guns to 20 years', 30 years', and life imprisonment, respectively, see Pub. L. No. 100-690, § 6460, 102 Stat. 4373.  After the Supreme Court held that "use" of a firearm "during and in relation to a drug trafficking crime" did not include "the action of a defendant who puts a gun into place to protect drugs or to embolden himself," Bailey v. United States, 516 U.S. 137 (1995), Congress promptly repudiated that lenient understanding of the statute as well, spelling out that liability extends to "anyone who, in furtherance of . . .  [a predicate] crime, possesses a firearm."  See Pub. L. 105–386, § 1(a)(1).  Congress also added a seven-year mandatory-minimum sentence if the firearm was brandished and a ten-year mandatory-minimum sentence if it was discharged.

This history makes clear that Congress intended section 924(c) to apply as broadly as possible, and that courts should not write limitations into the statute that Congress itself did not expressly specify.

B.      Counts Seven and Eight (bombing a place of public use)

Title 18, United States Code, Section 2332f provides in relevant part:

(a) Offenses. –

(1) In general. -- Whoever unlawfully delivers, places, discharges, or detonates an explosive or other lethal device in, into, or against a place of public use, a state or government facility, a public transportation system, or an infrastructure facility –

(A) with the intent to cause death or serious bodily injury, or

(B) with the intent to cause extensive destruction of such a place, facility, or system, where such destruction results in or is likely to result in major economic loss,

shall be punished . . . . .

(b) Jurisdiction. -- There is jurisdiction over the offenses in subsection (a) if –

(1) the offense takes place in the United States and

(A) * * * *

(B) the offense is committed in an attempt to compel another state or the United States to do or abstain from doing any act;

(C-E) * * * *

(F) a victim is a national of another state or a stateless person;

(d) Exemptions to Jurisdiction. –

This section does not apply to –

(1-2) * * * *

(3) offenses committed within the United States, where the alleged offender and the victims are United States citizens and the alleged offender is found in the United States, or where jurisdiction is predicated solely on the nationality of the victims or the alleged offender and the offense has no substantial effect on interstate or foreign commerce.

Count Seven of the Indictment charges Tsarnaev with violating section 2332f by using "Pressure Cooker Bomb #1" outside Marathon Sports and aiding and abetting Tamerlan Tsarnaev in doing so.  Specifically, paragraph 62 of the Indictment charges the main elements of the offense; paragraph 63 alleges that jurisdiction exists because "the offense took place in the United States, and . . . (1) it was committed in an attempt to compel the United States to do and abstain from doing any act, and (2) a victim of the offense was a national of another state and the offense had a substantial effect on interstate and foreign commerce;" and paragraph 63 alleges that the offense resulted in the death of Krystle Marie Campbell.  Tsarnaev argues that he must be acquitted on Count Seven (and thus Count Eight as well) because "the government failed to introduce evidence from which a jury can find, beyond a reasonable doubt, that a national of another state was a victim of the offense charged in count seven or that that offense resulted in the death of a national of another state."  (Deft. Mot. at 5).  The government disagrees.

The statute plainly states that there is jurisdiction over the offense if it occurred in the United States and it was "committed in an attempt to compel another state or the United States to do or abstain from doing any act."  The Indictment expressly alleges that jurisdictional ground, and the government introduced ample evidence from which the jury could conclude that it exists.

Although the Indictment also alleges that "a victim of the offense was a national of another state and the offense had a substantial effect on interstate and foreign commerce," that allegation is merely an alternative basis for jurisdiction, and it is hornbook law that the government may allege in the conjunctive but prove in the disjunctive.  See, e.g., United States v. Misla-Aldarondo, 478 F.3d 52, 67 (1st Cir. 2007).  See generally United States v. Miller, 471 U.S. 130, 144 (1985); United States v. Ayala-Lopez, 493 Fed.Appx. 120, 127 (1st Cir. 2012);

United States v. McVeigh, 153 F.3d 1166, 1196 (10th Cir. 1998); United States v. Harris, 530

F.2d 576, 578 (2nd Cir. 1976) (per curiam).

To the extent Tsarnaev's argument depends on the government's purported failure to

negate the "Exemption[] to Jurisdiction" set forth in paragraph (d)(3) of the statute, the argument

fails because such exemptions do not specify elements but rather affirmative defenses on which

the defendant bears the burden of pleading and proof.  See McKelvey v. United States, 260 U.S.

353, 357, (1922) ("[An] indictment or other pleading founded on a general provision defining the

elements of an offense ... need not negative the matter of an exception made by a proviso or

other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one

who relies on such an exception to set it up and establish it"); United States v. Hartsock, 347

F.3d 1, 3 (1st Cir. 2003);  United States v. Santos–Riviera, 183 F.3d 367, 370–71 (5th Cir. 1999)

("[It is a] well-established rule of criminal statutory construction that an exception set forth in a

distinct clause or provision should be construed as an affirmative defense and not as an essential

element of the crime."); United States v. Marcinkewciz, 543 Fed.Appx. 513, 515-16 (6th Cir.

2013) ("Courts, moreover, have long recognized that an indictment is not required to include

facts negating exclusionary conditions."); United States v. Green, 962 F.2d 938, 941 (9th

Cir.1992) ("[A] defendant who relies upon an exception to a statute made by a proviso or distinct

clause, whether in the same section of the statute or elsewhere, has the burden of establishing and

showing that he comes within the exception").

Even assuming for the sake of argument that Tsarnaev did not bear the burden of proving

the exception in paragraph (d), but rather that the government bore the burden of negating it,

Tsarnaev was still obligated to assert the exception in a timely manner and failed to do so.  And

even assuming further that he did assert the exception in a timely manner, the government

sufficiently negated it in its rebuttal case through the introduction of a stipulation that a foreign national was a victim of the bombing charged in Count Seven.  It also negated it by offering sufficient evidence from which the jury could conclude than an "alleged offender" -- Tamerlan Tsarnaev – was a foreign national.

       D.    <u>Counts Nine and Ten</u>

Tsarnaev argues that if the Court acquits him on Counts Seven and Eight it must, for the same reasons, acquit him of "so much of counts nine and ten as involve the death of Martin Richard."  That makes no sense.  Even assuming Tsarnaev's interpretation of section 2332f is correct, nothing in the statute remotely suggests that it applies solely to victims who are foreign nationals.  On the contrary, the statute plainly contemplates the possibility of multiple victims, and it permits, as one possible source of federal jurisdiction, proof that "a victim" is a national of another state -- not all victims.

       E.    <u>Count Nineteen (carjacking)</u>

The federal carjacking statute, 18 U.S.C. § 2119(2), provides in relevant part:

> Whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall * * *
>
>   (2)  if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, * * * *

The Indictment alleges as an overt act that, "[in] the course of making his escape in the Mercedes, DZHOKHAR A. TSARNAEV also caused Richard Donohue, a Massachusetts Bay Transportation Authority officer, to sustain serious bodily injury."  Indictment ¶ 39.  Count Nineteen of the Indictment specifically alleges that the carjacking "resulted in serious bodily injury to Officer Richard Donohue."  Tsarnaev claims that section 2119(2)'s enhanced penalty

applies only where the serious bodily injury is "to the victim of the carjacking" (i.e. the person from whom the vehicle is taken), and only if it results from the "force and violence" used to take the vehicle from that person in the first place.  He is wrong.

The First Circuit has repeatedly rejected Tsarnaev's proposed reading of the statute.  In United States v. Vazquez Rivera, 135 F.3d 172 (1st Cir. 1998) ("Vazquez Rivera II"), for example, the court held that "the injuries covered [by section 2119(2)] are not limited to those resulting from the 'taking' of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle."  Id. at 175.  The defendant in that case carjacked a woman at gunpoint and then drove her "from the busy section of Isla Verde where the incident began to a remote beach area in Naguabo, ordered her to disrobe and get out of the car, and then raped her."  United States v. Vazquez Rivera, 83 F.3d 542, 544 (1st Cir. 1996) ("Vazquez Rivera I").  The First Circuit held that the emotional trauma of the rape "resulted" from the carjacking for purposes of 18 U.S.C. § 2119(2) even though it plainly did not result from the force or violence used to take the vehicle from her in the first place.

In Martinez Bermudez, 387 F.3d 98 (1st Cir. 2004) -- a case factually similar to this one -- the First Circuit reached the same conclusion where an individual other than the person from whom the car was taken suffered serious bodily injury.  The carjacker in that case was spotted in the car he had stolen 45 minutes after the carjacking and during his flight from law enforcement ran over and killed a police officer.  Id. at 102-103.  The First Circuit held, albeit in dicta (it was a sentencing guidelines decision), that this constituted a violation of 18 U.S.C. § 2119(3).  Id.

In short, Tsarnaev has offered no basis for concluding that the statute means something it does not actually say.  His motion for judgment of acquittal on Count Nineteen should be denied.

F.  <u>Counts Twenty-One and Twenty-Two</u>.

William O'Keefe, a Bank of America vice president, testified both that that the bank does business in interstate and foreign commerce and that it is a federally insured institution.  That testimony is sufficient for the jury to find that the robbery had an effect on interstate commerce.

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's Motion for judgment of acquittal in its entirety.

<div style="margin-left: 40%;">

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:      <u>/s/ William D. Weinreb</u>
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys
STEVEN MELLIN
Trial Attorney, U.S. Department of Justice

</div>