UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13-CR-10200-GAO |
| v. | ) | |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION FOR MISTRIAL OR IN THE ALTERNATIVE TO DELAY START OF DEFENSE PENALTY PHASE PRESENTATION**

Defendant, Dzhokhar Tsarnaev, by and through counsel, and pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, hereby moves that the Court declare a mistrial. In the alternative, defendant requests that the Court delay commencement of the defense penalty phase case until a date no earlier than April 27, 2015 (the week following the Patriots Day holiday and the 2015 Boston Marathon).

A mistrial is required because guilt phase jury deliberations are occurring and the penalty phase presentations and deliberations will occur against the backdrop of the approaching 2015 Boston Marathon, and of myriad community activities commemorating the events surrounding the 2013 Marathon as well as the victims and survivors of those events. The visibility and emotional impact of these activities in greater Boston are pervasive and profound; mass media and social media publicity also continue to be intense. Even the most scrupulous and well-intentioned jurors cannot possibly shield themselves completely from this publicity, [1] much less their physical surroundings and

[1] Defendant recognizes that the jury has been intermittently instructed to avoid "reports about the case," *see, e.g.*, 01/15/2015 Tr. at 4-10, and that the Court has made periodic

the emotional impact of these events on the communities in which they live. Simply put, the timing of the trial's denouement coupled with the surrounding circumstances and publicity render impartial jury decision-making impossible.

The pervasive appeals to unity in connection with Marathon-related events are particularly prejudicial in connection with a capital sentencing proceeding, where each juror must exercise *individual* moral judgment. *See generally Mills v. Maryland*, 486 U.S. 367 (1988) (holding that jurors must not be instructed to reach a unanimous finding as to mitigating factors). The Court compounded this prejudice with "team" references in its *ex parte* interaction with the jurors on March 3, 2015, just after empanelment. That colloquy also requires a mistrial, alone and in combination with the timing of the trial and surrounding circumstances. [2]

In the alternative, the Court should delay commencement of the defense penalty phase presentation until a date no earlier than April 27, 2015, to permit the most prejudicial Marathon-related events and publicity to pass. The delay will also help to ensure that foreign witness immigration parole arrangements are completed to permit the

---

inquiry about compliance with those instructions. However, the publicity addressed in this motion is not directed at reports of the testimony at trial.

[2] Should the Court grant a mistrial, a change of venue would be required for the reasons set forth herein as well as the substantive filings (with appended exhibits) made in connection with the fourth venue motion [DE 1108], the third venue motion [DE 980, 981, 996], the second venue motion [DE 686, 696, 774, 779, 780, 852], and the first venue motion [DE 376, 461], as well as filings concerning "leaks" of non-public information by law enforcement [DE 280, 336, 438, 616, 680], incorporated by reference. The totality of the circumstances supports the request for a mistrial and a change of venue. *See, e.g.*, *United States v. Campa*, 459 F.3d 1121, 1138 (11th Cir. 2006) (en banc) (motions for change of venue renewed during trial through motions for mistrial based on community events and trial publicity).

attendance and testimony of foreign witnesses for the defense. Finally, the defendant is currently engaged in the so-called *Touhy* process to obtain the testimony of government employees (*e.g.*, a witness who can testify knowledgeably about BOP conditions of confinement at ADX/Florence and the post-conviction effects of the Special Administrative Measures on the defendant), which remains ongoing more than three months after the defendant initiated it, and which may ultimately require Court intervention.

## I. PUBLICITY AND EVENTS.

The 2015 Boston Marathon will be run on April 20, 2015. Banners bearing promotional images for the 2015 Marathon currently line Boston streets proclaiming, "There's Only One," with a Twitter hashtag, "#weruntogether." *See* Ex. A (photographs in vicinity of Moakley federal courthouse and Post Office Square, where jurors gather each morning to be transported by U.S. Marshals to the Court). The 2015 race banners echo prior appeals to solidarity and unity, including, for example, the "One Fund."

Meanwhile, the cement truck or trucks emblazoned with "Boston Strong" and other related slogans continue to frequent construction sites near the federal courthouse. *See* Ex. B (Boston Herald reporter's photograph and tweet). On March 9, 2015, the artist whose work was on display inside the federal courthouse lobby tweeted: "This art inspired & named after Boston Strong. Thanks for checking it out if you're at the trial." Ex. C. Accompanying the tweet was a photograph in front of her work in the courthouse

lobby with a "Boston Strong" caption hanging on the display. *See id.*[3] Even the yogurt for sale in the courthouse cafeteria carries a marathon theme. *See* Ex. D (scanned cap of yogurt purchased in courthouse cafeteria).

The trial of Mr. Tsarnaev, which began with the start of jury selection on January 5, 2015, remains ongoing. The increasing reminders of the impacts of the events of 2013 on the Boston metropolitan area and the Boston Marathon as the actual running of the 2015 Marathon approaches can only heighten the emotional feelings of community and "Boston Strong," and the emotional impact of deciding the fate of the person charged with the 2013 bombings and their aftermath. The emotional impact of the widespread victimization created by the bombings and their aftermath, together with enhanced emotional publicity continues to preclude fair and impartial adjudication.

The jurors are not sequestered. They have not been instructed to avoid publicity concerning the marathon or anything other than *reports about the case*. Therefore, they could have been exposed to the following types of reporting. The media reports referenced below are attached as Exhibit E.

On March 19, 2015, Boston Mayor Martin Walsh announced that April 15, the anniversary of the 2013 Marathon bombings, will now be known as "One Boston Day." The Mayor said, among other things: "The new tradition will put a mark on a day honoring the strength of our city, its people and their acts of goodness toward one another"; "April 15 is a date that has come to stand for our city's deepest values."

---

[3] At some point after the artist's tweet, the "Boston Strong" label was apparently removed from the courthouse display.

BOSTON HERALD 3/19/2015, "Boston Declares April 15 to be 'One Boston Day.'" *See also* BOSTON GLOBE, 3/19/2015, "Boston Marathon street banners unveiled."; WCVB, 3/19/2015, "Mayor announces 'One Boston Day' to honor anniversary of bombing"; 7NEWS, 3/19-20/2015, "Mayor Walsh announces 'One Boston Day' for April 15"; CBSlocal, 3/19/2015, "Mayor Declares April 15 'One Boston Day'"; FOX25, 3/19/2015, "Marty Walsh unveils new tradition with 'One Boston Day'"; WBUR, 3/19/2015, "Mayor Walsh Declares Anniversary of Marathon Bombings as 'One Boston Day'"; BOSTON MAGAZINE, 3/19/2015, "Mayor Walsh Announces April 15 as 'One Boston Day'"; NECN, 3/19/2015, "Mayor Walsh: April 15 Now Known as 'One Boston Day'"

The death of a child has a particularly compelling, powerful, emotional impact. Indeed, the government began its opening statement with a description of the death of Martin Richard, the eight year old killed on Boylston Street (Tr. 27:3-6), and ended its trial presentation with testimony from the medical examiner about Martin Richard's autopsy, autopsy photographs, and the words, "He was 8 years old." As reported in the media, that testimony had jurors in tears.

Martin Richard has been the focus of a number of articles concerning both the 2015 Marathon and a separate race run on March 22, 2015 to raise money for a foundation established by his parents to honor his memory. The *Boston Herald* reported that the well-known actor Sean Astin ("Rudy" and "Lord of the Rings") will be running in the Marathon "for Team MR8, the Martin Richard Charitable Foundation." In discussing "Martin's story," Astin said: "When he wrote, 'No more hurting people. Peace' it was in response to the Sandy Hook shootings. Little Martin had no idea when

he wrote that, that millions of people would be deeply moved in ways he never could have imagined." BOSTON HERALD, 3/27/2015, "To there and back, for Martin Richard." *See also* WCVB "Actor Sean Astin running Boston Marathon in honor of Martin Richard" ("'The jersey in my hand carries just a little more weight now. The Boston Strong Colors, the red letters TEAM. The word Peace written by a child's hand. Wow. I am part of a team,' Astin wrote on his blog."); 7NEWS, 3/20/2015, "Sean Astin to run Boston Marathon for Team MR8"; 7NEWS, 1/11/2015, "Team chosen to honor boy killed at Boston Marathon"; CBSlocal, 3/20/2015, "'Rudy' Star Sean Astin Running Boston Marathon in Honor of Martin Richard"

  WCVB described "An enduring image from the aftermath of the Boston Marathon bombings is a photo of 8-year old Martin Richard holding a sign that reads 'No more hurting people. Peace'" in reporting on "the inaugural Race for Peace 5K…in honor of [Martin] Richard and the message of peace his memory has come to stand for." "The race title is an acronym for peace, education, athletics, community and empathy." WCVB, 3/25/2015, "Hundreds remember Martin Richard during Run for Peace". *See also* WCVB, 3/21/2015, "Runners to Remember Martin Richard with Race for Peace"; 7NEWS, 3/22-23/2015, "Road race in Hingham honors Martin Richard"; CBSlocal, 3/22/2015, "Hundreds Honor Martin Richard With Race For Peace."

  Other media reports follow the development of the Krystle Campbell Peace Garden in Medford. The *Boston Globe* reported on an event to raise money for the Garden, describing it as "a memorial to Campbell and other [Marathon] bombing victims." It described members of Campbell's family as "overcome by the outpouring of

support" and reported their reaction to the trial, as well as comments from others. BOSTON GLOBE, 3/12/2015, "Support bolster's Marathon victim's kin." *See also* 7NEWS, 2/27/2015, "Medford to build park in honor of Krystle Campbell"; 7NEWS, 3/12-13/2015, "Krystle Campbell peace garden expected to be completed in 2016"; CBSlocal, 2/26/2015, "Medford Plans Peace Garden to Honor Krystle Campbell"; FOX25, 3/12/2015, "Peace Garden dedicated to Boston Marathon bombing victim in the works"

On March 8, 2015 the *Boston Globe* reported that $2,500 had been raised for the Officer Sean Collier Self Sponsor Scholarship Fund "created …in memory of the Wilmington native, who authorities allege was slain on the MIT campus by the Boston Marathon bombing suspects." BOSTON GLOBE, 3/08/2015, "$2,500 raised for Sean Collier scholarship fund."

Other news of victims of the bombings include a report describing the death and remembrance of a police officer "in the middle of the Watertown shoot-out with the Tsarnaev brothers" who died suddenly nearly a year after the bombings. His father said: "What I would like to see in terms of justice is for every community to come out in support of the officers." 7NEWS, 3/03-04/2015, "Family remembers DJ Simmonds as 5th bombing week victim." Media also reported on a letter written by a survivor to the defendant. *See* 7NEWS, 3/05/2015, "Survivor writes letter to accused Marathon bomber."; CBSlocal, 3/04/2015, "Marathon Bombing Survivor Writes Letter to Tsarnaev."

The breadth of coverage of victims is perhaps illustrated by a report that two of the victims who had married in April 2014 were to be divorced. CBSlocal, 3/02/2015, "Newlyweds Injured in Boston Marathon Bombings Split." Even the reports of the recent, unrelated shooting of Boston police officer John Moynihan relate back to the Marathon bombings as they recall his participation as a first responder in Watertown who helped save officer Richard Donahue. *See* BOSTON GLOBE, 3/29/2015, "Bullet is removed from officer who was shot in Roxbury"; CBSlocal, 3/30/2015, "Obama Salutes 'Hero' Boston Police Officer Shot in Face"; WCVB, 3/30/2015, "Vice President visits hospitalized 'hero' police officer shot in face."

WCVB reported on the Massachusetts Resiliency Center and the emotional impact of the trial on survivors on March 9, 2015. The resiliency center "serves as a hub for resources available to the families of those who died and the more than 260 injured." Its staff "has provided support to Watertown school children traumatized by the manhunt and to the Boston Islamic Center." The report quotes Carlos Arredondo as saying "I have nightmares. I wake up in the middle of the night." WCVB, 3/09/2015, "Resiliency Center is oasis for Boston Marathon bombing survivors."

The Boston Globe reported on the closing of the Forum restaurant, described as "a symbol of hope and resilience after the bombing." BOSTON GLOBE, 2/28/2015, "Patrons gather to bid farewell to Forum." *See also* WCVB "Forum, site of Boston Marathon bombing, closes" 2/28/2015; WCVB "Forum, site of Boston Marathon bombing, to close" 2/24/2015.

Finally the media is reporting similarities between the Tsarnaev brothers and two women arrested in New York on April 2, 2015 on charges of planning to build pressure cooker bombs and detonate them at a large outdoor public gathering. *See* www.masslive.com/news/boston/index.ssf/2015/04/new_york_-women_inspired_by_bos.html.

## II. *EX PARTE* JURY COLLOQUY.

On March 3, 2015, after the jury was empaneled, but before jurors were sworn, the Court spoke to the jurors without counsel present. Initially, the Court had intended for the conversation to be off the record. Defense counsel objected, and the Court agreed to have the court reporter present. In relevant part, the Court told the jurors:

> You and I are in this together. *We're on the same side here*. Our side is justice. Our job is to be as fair and impartial as we possibly can, and I know you all can do it because I have seen jurors over the years do exactly this.

3/20/13 Tr. at 20 (sealed) (emphasis added). The Court concluded the conversation by telling the jurors:

> So that's really all I have to say except, finally the Supreme Court of the United States has a very interesting tradition. Before they go out on the bench to hear argument and before they conference a case, they all shake hands with each other, and I thought we'd do that because *we're now teammates*. I'm going to go around and you can do it. (The judge shakes hands with the jurors.) . . . We'll see you bright and early and start our project.

*Id.* at 22 (emphasis added). The *ex parte* colloquy was improper for at least three reasons.

First, it was improper for the Court to have any *ex parte* communications with the jurors. The First Circuit has held that "*ex parte* communications between the judge and

the jury create a presumption of prejudice and violate both Federal Rule of Criminal Procedure 43(a) and the sixth amendment." *United States v. Flaherty*, 668 F.2d 566, 602 (1st Cir. 1981). In fact, a judge's presence alone with a jury, for "any appreciable period of time" — even absent any communication at all — is "pregnant with possibilities for error." *Id.* Here, the Court not only communicated with the jury, but made multiple references to both the Court and the jurors being on the same team, on the "same side".

Second, it was improper for the Court to characterize the jurors, collectively, as a "team." The Court's comments were improper because the jurors themselves are not a "team," particularly in a capital trial. At the penalty phase, every juror must engage in individualized decision-making. For example, when asked to find mitigating factors, the jurors must be the opposite of a "team" and not give any regard to other jurors' findings. *See generally Mills v. Maryland*, 486 U.S. 367 (1988) (finding that jurors do not need to reach a unanimous finding as to mitigation factors).

Third, it was improper for the Court to say that it is on the "same side" as the jurors. The Court and jurors have distinctly different roles in a capital trial. The jurors are the sole determiners of the facts. The Court simply instructs the jurors on the law. The Court should not communicate any opinion about the evidence or proper verdict, and jurors are not supposed to perceive anything the judge says as suggesting such an opinion. Put simply, the judge and jury are not "teammates," they are not starting a "project" together, they are not "in this together," and they are not "on the same side." These comments muddled the critical distinction between the jury and Judge, and misled the jury about its role in the criminal process. *Cf. Cargle v. Mullin*, 317 F.3d 1196, 1222-

23 (10th Cir. 2003) (holding that the prosecutor's mere suggestion that the jurors are on the same "team" as the prosecution and police, rather than "impartial arbiters between the State and the defendant . . . . profoundly misleads the jury about its role in the criminal process.").

In addition to being inaccurate, the Court's remarks misled the jury in a manner that diminished the jury's sense of responsibility. In *Romano v. Oklahoma*, 512 U.S. 1, 8 (1994), the Supreme Court repeatedly stressed "that the jury must not be misled regarding the role it plays in the sentencing decision." (citing *Caldwell v. Mississippi*, 472 U.S. 320, 336 (1985) (plurality opinion). As discussed above, each juror, at the penalty phase, must engage in individualized moral decision-making. The Court plays no role in the jurors' decisions, and the jurors should not perceive their role or decision as united with the role of the Court.

The Court's comments are particularly prejudicial given the timing of the trial, the increased media coverage of the 2015 Boston Marathon, and Mayor Walsh's Announcement of April 15 as "One Boston Day," which adopted the slogan "We Run Together."

**Conclusion**

For the foregoing reasons, the Court should declare a mistrial. Should a mistrial be denied, the Court should continue the penalty phase to a date not earlier than April 27, 2015.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

**Certificate of Service**

I hereby certify that I have caused this document to be served upon counsel of record for the United States by hand delivery on April 7, 2015.