UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>DZHOKHAR A. TSARNAEV,    )<br>Defendant )  | Crim. No.13-10200-GAO<br><br>UNDER SEAL |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO EXCLUDE "CONTRAST VIDEO" AND VICTIM PHOTOS

The government intends to offer only two segments of the so-called Contrast Video into evidence. They will be offered as separate exhibits during the testimony of Steven Woolfenden, who was an eyewitness to the events.

The first segment is a portion of the Forum video that covers the time period immediately before and after the explosion. The area of the video that shows Martin Richard has been enlarged so it is easier to see. Although Tsarnaev claims that "defense counsel had not been made aware that the Forum video was susceptible of such enhancement," the Forum video is an ordinary video file in a standard digital format, any portion of which can be enlarged using any standard video editing tool simply by "cropping" the portion in question and then entering a simple command to enlarge it. Both parties have done precisely that with numerous digital photographs throughout the trial.

This video segment is evidence that Tsarnaev murdered Martin Richard "in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592. "In determining whether the offense was especially heinous, cruel, or depraved, the jury is asked to consider whether there was 'infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing' or 'needless mutilation of the

victim's body.'"  See United States v. Tavares, 488 F.Supp.2d 246, 251 (E.D.N.Y. 2007) (quoting United States v. Hall, 152 F.3d 381, 415 (5th Cir. 1998)).  See also United States v. Sampson, 335 F.Supp.2d 166, 180 (D. Mass. 2004).  The video segment shows that Tsarnaev intended, and inflicted, both gratuitous violence and needless mutilation on Martin Richard.  In addition, the video shows the impact of the crime both on Martin himself, who can be seen lifting his arms to his face at least twice before he expires, and on Denise Richard, who can be seen learning over Martin and trying to protect and comfort him as he dies and then shielding his body after he dies.

The second segment of the so-called Contrast Video the government intends to offer is a short clip of the Forum video that has been overdubbed with sound.  The sound comes from a cell phone recording taken by someone who was standing next door.  This segment is evidence that Tsarnaev committed the offenses "after substantial planning and premeditation to . . . commit an act of terrorism."  18 U.S.C. § 3592(c)(9).  The Forum explosion was terrifying because of how it looked, sounded, smelled, tasted, and felt.  The Forum video currently depicts only what it looked like; it will help the jury to assign appropriate weight to this aggravating factor if they know first-hand what the explosion sounded like as well.

The government also intends to offer into evidence a single photo of each of the 17 amputees.  Collectively, the photos help establish that Tsarnaev "knowingly created a grave risk of death to one or more persons in addition to" the decedents, 18 U.S.C. § 3592(c)(5), that he murdered the decedents in an especially heinous, cruel or depraved manner, 18 U.S.C. § 3592(c)(6), that he committed the offenses "after substantial planning and premeditation to . . . commit an act of terrorism," 18 U.S.C. § 3592(c)(9), that he "targeted the Boston Marathon, an iconic event that draws large crowds of men, women and children to its final stretch, making it especially susceptible to the act and effects of terrorism," Notice of Intent at 6-7, and that he

"participated in additional uncharged crimes of violence, including assault with a dangerous weapon, assault with intent to maim, mayhem, and attempted murder, on April 15, 2013 in Boston, Massachusetts," id. at 7.

Tsarnaev's argument that these photos are more prejudicial than probative is unpersuasive. The photos are plainly probative of several aggravating factors, and they are not gruesome, sensational, or overly emotional. Although it is true that many of the amputees testified (or will testify) during the trial, five of the 17 (Mery Daniel, JP Norden, Paul Norden, Jane Richard, and William White) did not. As for those who did testify, Tsarnaev is wrong in stating that they "displayed their amputated limbs or prostheses to the jury." In fact, the jury's view of the witness' prosthetic limbs was almost entirely eclipsed by the seats in the courtroom, then by the prosecution and defense tables and their occupants, and then by the walls of the witness box itself. It is important for the jury to see the evidence of the amputations with their own eyes in order to determine the proper weight to assign the corresponding aggravating factors. The photos themselves were carefully selected to minimize any possible prejudice while making a point about the nature of the crimes that cannot be made by calling individual witnesses to the stand seriatim over a seven-week period

                Respectfully submitted,

                CARMEN M. ORTIZ
                UNITED STATES ATTORNEY

By:   /s/ Aloke Chakravarty
      ALOKE S. CHAKRAVARTY
      WILLIAM D. WEINREB
      NADINE PELLEGRINI
      Assistant U.S. Attorneys
      STEVE MELLIN
      Trial Attorney, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on April 22, 2015.

/s/ *Aloke Chakravarty*