UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNDER SEAL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE PENALTY-PHASE EXPERT TESTIMONY AND RELATED EXHIBITS

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully responds to the Government's Motion in Limine to Exclude Penalty-Phase Expert Testimony and Related Exhibits, DE 1284. For the following reasons, the Court should deny most of the Government's motion as moot, inasmuch as the defendant does not intend to offer the evidence or testimony complained of. With respect to the testimony of Jay Giedd, M.D., the motion should be denied because it rests on a misunderstanding of the testimony that Dr. Giedd will provide. Dr. Scott Atran's testimony will be revised to conform to the Court's oral ruling made during today's lobby conference; in all other respects, the government's request to exclude it should be denied.

### A. Professor Michael Reynolds

The government's first objection to Prof. Reynolds' testimony is that he is not qualified to opine on Tamerlan Tsarnaev's motivations. Prof. Reynolds will provide a brief description of the characteristics of Chechen and North Caucasian family structure and culture that may be relevant in understanding the significance of certain events in

1

Tamerlan Tsarnaev's life trajectory, but he will not himself offer conclusions on those issues. The government's objection to his offering such opinions is therefore moot.

In addition, the government objects to Prof. Reynolds' PowerPoint presentation, which contains numerous historical photographs, as unduly prejudicial because there is no evidence that the defendant saw the images in the exhibit before committing the crime. The exhibit complained of has been greatly reduced since the government's motion was filed, and will be further edited before it is offered. Most importantly, the government appears unaware that the large majority of the photographs to be offered through Prof. Reynolds was in fact taken from the defendant's computer, and was among the results of a single Google search for "Chechnya" that was made on that computer. The fact that the defendant could—and in fact did—amass so many disturbing images of his family's ancestral homeland so easily and almost instantaneously will illustrate aspects of Prof. Reynolds' testimony, and is relevant to a full understanding of the defendant's background and that of his older brother Tamerlan.

As for images in the PowerPoint series that were not taken from the Sony Vaio, the defense is in the process of eliminating many of them, and those that remain will not even arguably be prejudicial or misleading. The defense will furnish the government with a final version of Prof. Reynolds' slides well in advance of his testimony to allow any remaining concerns to be addressed.

### B. Professor Bernard Haykel

First, the government expresses concern that Prof Haykel will refer to other convicted terrorists such as Nidal Hassan or Umar Farouk Abdulmutallab. These

references are relevant to respond to the contention of the government's witness, Dr. Matthew Levitt, that mere exposure to on-line jihadi propaganda could have sufficed to motivate the defendant to bomb the Marathon, even absent personal interaction with or exhortation by anyone else. Prof. Haykel will dispute the plausibility of this assertion, and will contrast this case with others, in which the offender was personally recruited, incited or aided by others in carrying out attacks. That the defendant is unlikely to have been moved to action simply by his having read jihadi literature, viewed videos and listened to audio files acquired on-line supports the mitigating factor that he acted under the domination of his older brother, and there is no valid reason for restricting the empirical support that Professor Haykel will offer for his opinion.

As for the government's second complaint regarding Dr. Haykel, he will not attempt to offer "expert opinion testimony on the computer habits of 19-year-old college students." In general, the defendant believes that such minor and essentially stylistic quibbles concerning the phrasing of his Rule 16 disclosures would be better asserted, if at all, through objections at trial.

### C. Jay Giedd, M.D.

That the defendant was 19 years old at the time of the offenses of conviction is a relevant sentencing factor in this case. While this fact is undeniably mitigating, the jury has wide discretion in deciding how much mitigating weight to assign to Mr. Tsarnaev's young age. Dr. Giedd's testimony will assist the jury by explaining the neurodevelopmental reasons *why* "[a]dolescence is characterized by heightened emotional reactivity, sensitivity to peer influence, impulsivity, and novelty seeking, [and] a limited capacity to

3

engage self-control to override these emotions and actions." (Defense Rule 16 Disclosure at 4, Nov. 24, 2014). Some or all of these traits have already emerged from the evidence that the government has introduced about the defendant's own behavior in the months before the crimes. This raises the question of whether his immaturity may help to explain his vulnerability to the influence of others, or otherwise shed light on the reasoning and decision-making that preceded his criminal acts. Since the government has given every indication that it intends to try to reconcile the contrasting facets of the defendant's character and life by positing a theory of conscious, deliberate "duality," it will be especially important for the jury to appreciate that dramatic contrasts in emotion, judgment and behavior can also be understood as manifestations of immaturity, and that modern neuroscience has identified developmental reasons why this is so.

The government appears to misunderstand Dr. Giedd's testimony as concerned with "Tsarnaev's prospects for rehabilitation." Mot. at 5. Of course, one could so characterize the mitigating factor of youthfulness itself. *Roper v. Simmons*, 543 US 551, 574 (2005). But Dr. Giedd's testimony is simply intended to assist the jury in understanding the neurodevelopmental significance of youthfulness, so that it can make a more informed judgment as to the weight to accord to the undisputed fact that the defendant was 19 years of age in April of 2013.

The government suggests that Dr. Giedd's testimony might have been more relevant if he "propose[d] to tell the jury about his own (or anyone else's) examination of Tsarnaev's brain development." Mot. at 5. But for reasons that Dr. Giedd will explain, the relative neurological maturity of one person as compared to others cannot be assessed

4

by studying any individual at a single point in time. The most that can be done is to educate the sentencer as to the normal rate and patterns of brain development generally, and the significance of the unevenness with which the brain matures in adolescence, sos to permit a more informed assessment of the likely significance of the offender's youth. The information that Dr. Giedd will provide is "individualized" in the sense that it includes the offender's age at the time of the offense, it will be helpful to the jury, and it should be admitted.

Finally, the government expresses concern that if Dr. Giedd is permitted to explain "that there is not a clear line between adolescence and adulthood, and that the normal maturation process is by no means completed at age 19 or 20," the jury may be unable to apply the Court's instruction to treat age 18 and the threshold for imposition of the death penalty. This argument is frivolous. Dr. Giedd will not invite the jury to substitute 19 or 20 for the legal minimum age of 18. Rather, he will simply explain, as a matter of scientific fact, that brain maturation occurs gradually, and will not have ended on the day that an offender becomes eligible for capital punishment by virtue if having attained the age of 18.

### D. Professor Scott Atran

At today's lobby conference, the Court granted a separate motion excluding that portion of Dr. Atran's testimony dealing with the probable effect of the imposing the death penalty in this case on other would-be jihadis. This appears to resolve the crux of the government's present motion. The government is incorrect, however, in its assertion that the rest of Dr. Atran's testimony is irrelevant. Dr. Atran will also provide expert

testimony, based on his own extensive field research and that of others, that supports the primacy of interpersonal relationships and loyalties—including the sort of family tie present here— as more powerful motivators than ideological precepts that lone individuals can simply acquire on-line. This testimony is responsive to that of Dr. Levitt, and directly supports the defendant's mitigating factor that he was dominated and motivated by his older brother.

Respectfully submitted,

DZHOKHAR TSARNAEV
by his attorneys

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document was served on opposing counsel by email on April 17, 2015.

/s/ David I. Bruck