UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

UNITED STATES OF AMERICA        )
                                )
          v.                    )        CRIMINAL NO. 13-10200-GAO
                                )
DZHOKHAR TSARNAEV               )

## OBJECTIONS TO GOVERNMENT PENALTY PHASE TESTIMONY AND EXHIBITS

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully objects to the

introduction of the following penalty phase exhibits, and anticipated testimony:

1.      Exhibits 1449, 1594 (witness Celeste Corcoran).  Exhibit 1449 is a

photograph of post-surgical scars on Sydney Corcoran's legs.  It is not relevant to an

alleged aggravating factor, and in addition is more prejudicial than probative and should

be excluded.  *See* 18 U.S.C. § 3593(c) ("…information may be excluded if its probative

value is outweighed by the danger of creating unfair prejudice, confusing the issues, or

misleading the jury.")  The evidence is also cumulative to Sydney Corcoran's guilt phase

testimony, which included a vivid and powerful account of her nearly-fatal injuries and

their sequelae.  The photos of the surgical scars are disturbing, and do not contribute

measurably to the government's already overwhelming proof that the defendant

knowingly created a grave risk of death to additional persons.  18 U.S.C. § 3592(c)(5).

Finally, as the defendant has previously argued, proof of the actual injuries sustained by

surviving blast victims are unnecessary to prove the "grave risk" statutory aggravating

factor, since the factor is made out simply by proof that the defendant knowingly created a grave *risk*. Evidence of gruesome injuries – including non-life-threatening injuries included here – effectively makes out an additional nonstatutory aggravating factor that the government did not include in its Notice, and is therefore precluded from proving now.

Exhibit 1594 is a pre-blast photograph of the crowd at the finish line (Scene A) with 13 individuals identified by name. An almost identical photograph, but without names of identified individuals, was admitted during the first phase. [Exh. 1473]. The photograph is cumulative, and the names not relevant to an identified aggravating factor, and should be excluded.

2.      Exhibits 10 and 11b (witness Gillian Reny). Exhibit 10 is a photo of a post blast scene. To the extent that post blast scenes are relevant to alleged aggravating factors, several are already in evidence and additional such photographs are cumulative, and should not be admitted. Exhibit 11b was admitted (without audio), during the first phase of this case. The audio portion should continue to be excluded.

2

3.      Victim Impact testimony and exhibits (exhibits 1601 (Krystle Campbell),[1]

1602 (Sean Collier),[2] 1604 (Martin Richard)[3]; and 1596, 1600, 1606 and 1607 (Lingzi

Lu).[4]  Exhibits 1601, 1602 and 1604 are video montages for Krystle Campbell

(1601)(witnesses Karen McWatters, William Campbell, Jr. and William Campbell, Sr.);

Sean Collier (1602)(witness Andrew Collier); and Martin Richard (1604)(witnesses

Michelle Gamble and Denise Richard).  Exhibit 1601 is a 3 minute long video montage

containing 28 photographs of Krystle Campbell beginning with baby pictures, and

continuing throughout her life.  It ends with her name, date of birth and date of death.

Exhibit 1602 is a 3+ minute video montage of Officer Collier's life, also beginning with

baby pictures and continuing throughout his life, ending with a similar slide showing his

name, and dates of birth and death.  Exhibit 1604 is a two-minute video montage of

Martin Richard, again beginning with baby pictures and continuing through his life,

ending with his name, and dates of birth and death.  In combination with the anticipated

witness testimony, these video montages have the feel of memorial services.  We seek to

---

[1] Proposed victim impact witnesses are Karen McWatters, William Campbell Jr., and
William Campbell Sr. Ms. McWatters was already permitted to offer some limited victim
impact during the first phase of the case.

[2] Proposed victim impact witnesses are Chief John DiFava, Andrew Collier and Joe
Rogers.  Chief DiFava was already permitted to offer some limited victim impact during
the first phase of this case.

[3] Proposed victim impact witnesses are Denise Richard, and apparently Michele Gamble
(who works for the FBI).

[4] Proposed victim impact witnesses are Jinyan Zhao, Jing Li or Danling Zhou, and Officer
Lauren Woods.  The government proposes to use the eulogy delivered by Ms. Lu's father
at Ms. Lu's memorial service two years ago.

exclude the montages; pictures of each decedent are already in evidence.  In addition, for

reasons set forth below, we object to victim-impact testimony from Chief Fava to the

extent that it does not concern "the effect of the offense on the victim and the victim's

family."  18 U.S.C. § 3593(a).

Exhibits 1600, 1606 and 1607 are from an actual memorial service for Lingzi Lu,

held at Boston University in 2013.  Exhibit 1600 is the eulogy delivered by her father;

1606 is a picture of Ms. Lu from the cover of a magazine, and 1607 is a one- minute

video montage, showing photographs of Ms. Lu.  Exhibit 1596 is a photograph of Ms.

Lu's gravestone.  With the exceptions noted below, the defendant does not object to use

of the first five minutes of the text of Ms. Lu's father's statement, which provides

information about Ms. Lu and the impact of her death on her family.  As noted

previously, we object to the use of the video background (a BU Memorial service,

attended by a large crowd).  We also object to the use of the magazine photograph

(photographs of Ms. Lu are already in evidence, testified to by Ms. Zhou, see exhibits

1499, 1500, 1501).  We object to the introduction of a photograph of Ms. Lu's

gravestone, and to the anticipated testimony of Officer Wood, who already provided

some limited but emotional victim impact testimony during the first phase, when she

described her personal reactions to an order from a superior officer that she leave Ms. Lu

at the scene.

While the defendant does not agree, and wishes to preserve objections to the

admissibility of victim impact testimony, it is clear that the Supreme Court has found

4

"victim impact" evidence admissible.  However both the Court, and Congress have placed limits on such evidence.

In *Payne v. Tennessee*, 501 U.S. 808, 822-827 (1991), the Court reviewed a capital defendant's challenge to a brief snippet of testimony from a family member that the victim's young son cried for his mother and missed his younger sister, both of whom had been murdered.  The Court held that this appropriately provided a "'quick glimpse of the life'" of each victim, to ensure that she did not become a "faceless stranger" amidst all the mitigating evidence about the defendant.  The Court concluded that "a State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed."  In doing so, the Court substantially overruled *Booth v. Maryland*, 482 U.S. 496 (1987), which had prohibited all such victim-impact evidence, on Eighth Amendment grounds.  *Payne* elaborated that "victim impact evidence is not offered to encourage comparative judgments of this kind [assets to the community] – for instance, that the killer of a hardworking, devoted parent deserved the death penalty, but that the murderer of a reprobate does not.  It is designed to show instead *each* victim's "uniqueness as an individual human being," whatever the jury may think the loss to the community resulting from his death might be.  *Id*. at 823 (citation omitted).  Finally, the Court recognized that victim impact evidence that "is so unduly prejudicial that it renders the trial fundamentally unfair" would violate due process.  *Id*. at 825.

The Federal Death Penalty Act, enacted three years after *Payne,* limited the scope of victim impact to "factors concerning the effect of the offense on the victim and the

victim's family, [which] may include oral testimony, a victim impact statement that
identifies the victim of the offense and the extent and scope of the injury and loss
suffered by the victim and the victim's family, and any other relevant information."
Thus, in defining the kind of impact that may be treated as an aggravating factor,
Congress did not include the effect of the offense on friends, colleagues, groups or
institutions in the community, or society as a whole. The victim's personal
characteristics are logically admissible only to the extent they influenced, and thus reveal
something about, the relationships the victim had with his or her family, and thus show
the effect that losing the victim had on those relatives. *See Jones v. United States*, 527
U.S. 373, 399 (1999) ("'personal characteristics'" of the victim, as used in victim-impact
aggravating factor "refer[red] to those aspects of the victim's character and personality
that her family would miss the most.").

    4.    Exhibits 1603 and 1605 (witness Michelle Gamble). Exhibit 1603 is a
video montage of photographs of multiple survivors; Exhibit 1605 is a photo board of the
same group of individuals.   These exhibits are not relevant to an alleged aggravating
factor, and in addition are more prejudicial than probative and should be excluded. *See*
18 U.S.C. § 3593(c) ("…information may be excluded if its probative value is
outweighed by the danger of creating unfair prejudice, confusing the issues, or
misleading the jury.")

    5.    Exhibit 1595 (witness Deputy U.S. Marshal Gary Olivera). This exhibit is
a still image taken from a U.S. Marshal video of Mr. Tsarnaev in a holding cell on the
day of his arraignment in July 2013. The still captures Mr. Tsarnaev looking into a

camera (apparently looking at a reflection of himself) with his middle finger pointing upward ("shooting a bird"). The image is taken out of context; indeed, it appears that Mr. Tsarnaev occasionally looked in the direction of the camera, using the reflection off the glass to fix his hair and look at himself. Immediately before the still image the government extracted from the video, Mr. Tsarnaev climbs on the bench, looks closer in the direction of the camera, holds two fingers up in a peace sign, and then appears to "shoot a bird" in the direction of the camera. It is unclear whether he is aiming that at himself, or the camera. Given the context, this evidence must be excluded as more prejudicial than probative. *See* 18 U.S.C. § 3593(c) ("…information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). In addition, the film should never have been produced to the government, as no crime was committed by the defendant. The Marshals were acting as custodians of the defendant, not as an investigative agency. Mr. Tsarnaev's actions were not assaultive, aggressive, or criminal.

6.      Exhibits 1608, 1609, and 1610 (witness Mark Fucarile). These exhibits are x-rays of Mr. Fucarile's hip and groin area, chest area, and legs. They are not relevant to an alleged aggravating factor and, in addition, are more prejudicial than probative and should be excluded. *See* 18 U.S.C. § 3593(c) ("…information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.")

7.      Exhibit 21-03 and 21-18 (Forum stills – witness Adrianne Haslet-Davis). Exhibit 21-03 is already in evidence; exhibit 21-18 is a still approximately 42 seconds

later.  It is not relevant to an alleged aggravating factor, and in addition is more prejudicial than probative.  *See* 18 U.S.C. § 3593(c) ("...information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.")

      8.      Exhibits 624, 1593, 1598 and 1599 (witness – Eric Whalley).  Exhibit 624 is a bloody picture apparently of Mr. Whalley; exhibit 1593 is apparently an MRI of Mr. Whalley's head; exhibit 1598 is apparently a sonogram of Mr. Whalley's eye, and exhibit 1599 is a photograph apparently of Mr. Whalley's badly damaged heel.  These exhibits are not relevant to any alleged aggravating factor, and in addition are far more prejudicial than probative.  *See* 18 U.S.C. § 3593(c) ("...information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.")  The photograph of Mr. Whalley's heel is especially gruesome, but has no tendency to prove the grave-risk-of-death aggravating factor, or any other.  Additionally, the government has provided notice that Mr. Whalley will testify "that he knew it was a bomb because he had previously been in a terrorist bombing."  The Court should exclude such a reference to an unrelated terrorist bombing as inflammatory, irrelevant, and more prejudicial than probative.

      9.      Exhibit 1597 (witness – Steve Woolfenden).  Exhibit 1597 is a post-blast photograph of the area around the Forum restaurant featuring a child's stroller.  The exhibit is duplicative of photographs already admitted into evidence (see e.g., Exhibit 34), is not relevant to an alleged aggravating factor, and, in addition, is more prejudicial than probative.  *See* 18 U.S.C. § 3593(c).

10.    Exhibits 12 and 35 (witness Dr. David King). Exhibit 12 is already in evidence. Exhibit 35 is a post-blast photograph showing Mr. Richard holding his son Henry, his daughter still sitting on the ground, and others immediately post blast. It is virtually identical to Exhibit 24 which is already in evidence; thus it is cumulative. In addition, the exhibit is not relevant to an alleged aggravating factor, and is more prejudicial than probative. *See* 18 U.S.C. § 3593(c) ("…information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.")

11.    Exhibit 1347 is a collection of selected e-mail messages to the defendant from an automated Internet-based service called "Zamzar" that converts computer files from one format to another. Specifically, the government has selected 21 e-mail messages from Zamzar containing Islamic "nasheeds" that were converted from ".flv" (video) format to ".mp3" audio format from among scores of other music files that were converted in a similar manner and also e-mailed to the defendant. The defendant's possession of nasheeds was a topic of testimony in the guilt phase that has no bearing on any aggravating factor that the government has alleged in the penalty phase. Therefore, the exhibit is irrelevant and should be excluded.

12.    Finally, at approximately 7 p.m. on Monday evening, April 20, 2015, the government emailed an additional fifteen (15) exhibits, five pictures of portions of the grate (apparently from the second blast scene), four pictures of a tree trunk and the ground around it, two pictures of the crowd at the finish line, one photo of a person on a stretcher, and two stills from Exhibit 11. We object to admission of these exhibits on the

9

grounds set forth above, including relevancy and the exhibits being cumulative and more prejudicial than probative.

For the foregoing reasons, it is requested that the Court limit testimony and exclude exhibits as set forth above.

Respectfully submitted,

David I. Bruck
Judy Clarke
Miriam Conrad
Timothy Watkins
William Fick

## Certificate of Service

I hereby certify that this document was served on government counsel by email on April 20, 2015.

/s/  Robert Rieske