UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | <u>UNDER SEAL</u> |
| Defendant | ) | |

GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE
NON-DIGITAL PENALTY-PHASE EVIDENCE
<u>IDENTIFIED IN DEFENDANT'S WITNESS AND EXHIBIT LISTS</u>

The United States of America, by and through its undersigned counsel, respectfully

moves in limine to exclude certain testimony and exhibits identified in the witness and exhibit

lists provided by Tsarnaev on April 14, 2015.

Exhibit 3067 ("Admission by party opponent"). This exhibit should be excluded. The

Court has already ruled repeatedly that this portion of the government's opposition to the

defendant's motion to suppress evidence is not admissible.

Exhibits 3200 ("Rus Gov Doc") and 3200a ("Eng tran"). This document should be

excluded as irrelevant and likely to confuse and mislead the jury because Tsarnaev cannot show

that it is what it purports to be, namely, "text messages between Tamerlan's mother, Tsarnaeva

Zubeidat who at the time was located in the US and the ex-husband of her older daughter Bella,

Mamakaev Rizvan in Chechnya." Although the document contains the words just quoted,

neither Tsarnaev nor the government has any idea who wrote those words, or whether the words

are true and accurate. Nor does either party have any idea whether the remainder of the

document is true and accurate. The document in question was given to the FBI by the Russian

government without any assurances of its authenticity or any explanation of how the Russian

government might have obtained the alleged text messages. It is thus no more or less

trustworthy than the information that members of Tsarnaev's defense team were misrepresenting themselves in Russia as FBI agents – information that the FBI received from the Russian government in an equivalent manner, and that Tsarnaev adamantly denies. Because no reasonable jury could find that the document is what it purports to be without speculation, it must be excluded.

Exhibits 3201 ("Rus Gov Doc") and 3201a ("Eng tran"). Exhibit 3201 purports to be a conversation between Zubeidat Tsarnaeva and Magomed Kartashov. It was acquired in exactly the same way as Exhibit 3200, suffers from the same lack of authenticity, and is equally irrelevant, non-probative, and prejudicial. It must therefore be excluded as well.

Exhibits 3201 and 3201a are also unnecessary and a waste of time in light of Exhibit 3202, which is a 15-page document reflecting notes of an FBI interview with Mr. Kartashov. Although the statements in Exhibit 3202 are hearsay and exhibit no particular indicia of reliability, at least the notes themselves are authentic.

Exhibit 3202 ("Kartashov Magomed FB302"). Portions of this exhibit -- notes of an FBI interview with Magomed Kartashov -- should be excluded because they are irrelevant or more prejudicial than probative. Most of the objectionable portions consist of unreliable double hearsay (i.e. Kartashov repeating information he has heard from third parties), speculation (i.e. Kartashov guessing what other people were thinking), or inadmissible opinion testimony (i.e. Kartashov opining about matters as if he were an expert on them). A copy of the Kartashov 302 highlighting the portions to which the government objects is attached as Exhibit A.

Exhibit 3203 ("Homeland Security Committee Report"). Exhibit 3203 is a 38-page report from the U.S. House of Representatives Committee on Homeland Security entitled, "The Road to Boston: Counterterrorism Challenges and Lessons from the Marathon Bombings." It

2

states on its cover that it was "Prepared by the Majority Staff of the Committee on Homeland Security." This document should be excluded on the grounds that it contains a great deal of irrelevant information and its probative value is outweighed by the danger of confusing the issues, misleading the jury, creating unfair prejudice, and wasting time.

Exhibit 3203 is a compilation of information derived from other sources -- some of them second-, third-, or even fourth-hand sources. For example, much of the information in the report is sourced to newspaper reports, magazine articles, press releases, and Congressional testimony, which in turn contain information from unidentified sources. Tsarnaev cannot show that any of the information in the report is accurate and reliable; but there is a danger the jury will accept the information as true simply because several Congressmen appear to have accepted it as true. The beliefs of political figures about the reliability of information sourced to newspapers and magazines are not a proper substitute for the jury's own determination of reliability. The jurors should hear information from first-hand sources and judge its accuracy and reliability for themselves so they can give it the weight it actually deserves rather than the weight assigned to it by others.

Exhibit 3203 is also riddled with criticism of the FBI and other intelligence agencies, "findings" about those agencies' shortcomings, and "recommendations" for how to address those shortcomings. That is all prejudicial information that with no probative value whatsoever. Exhibit 3203 should be excluded in its entirety.

Exhibit 3204 ("Intelligence Community Report") and Exhibit 3204a. Exhibits 3204 and 3204a are a report and an excerpt from that report, respectively, drafted by the Inspectors General of various government agencies. The report is titled "Unclassified Summary of Information Sharing and Handling Prior to the April 15, 2013 Boston Marathon Bombings."

These exhibits should be excluded for essentially the same reasons as Exhibit 3203.  The jurors

have no way of assessing the accuracy or reliability of any of the information in the Inspectors

General report; yet, once again, there is a danger they will accept the information as true just

because the authors are important government officials who appear to have accepted it as true.

These exhibits should also be excluded because they are irrelevant.  The fact that the

Russian government informed the United States in 2011 that it believed Tamerlan and Zubeidat

were "adherents of radical Islam" does not relate to the defendant's character, criminal history,

or the circumstances of his crimes.  And because the Russian government communication was

authored anonymously and gave no reason for the Russian government's beliefs, the jury has no

way of determining whether those beliefs were based on accurate and reliable information or on

rumor, ethnic prejudice, speculation , or a combination of all three.  The steps taken (or not

taken) by the FBI to follow up on the Russian communication likewise have absolutely nothing

to do with the defendant's character, criminal history, or the circumstances of his crimes.   At a

minimum, any probative value the information might have is outweighed by the risk of

confusing the issues, misleading the jury, prejudicing the government, and wasting time.

Exhibit 3205 ("Reynold's slides").  The government renews its motion to exclude this

slide show on the same grounds given in its previously-filed motion in limine.  The government

is aware that some of images were found on Tsarnaev's computer.   The government's motion in

limine relates to the images that were not found on his computer.

Exhibit 3206 ("MEMA After Action Report").  This exhibit is a 128-page "after action"

report that summarizes the law enforcement and emergency management response to the events

of April 15-19, 2013 and offers extensive analysis of that response, including an analysis of "best

practices" and "areas needing improvement."  It should be excluded for the same reasons as

Exhibits 3203 and 3204.  In most cases it is a second- (if not third- or fourth-hand) summary of information available elsewhere in a more accurate and reliable form, and it is filled with irrelevant, duplicative, and prejudicial information.  Its probative value is far outweighed by the danger of confusing the issues, misleading the jury, and wasting time.

Exhibits 3207, 3207a, 3216, 3217, 3239 should be excluded because they relate to the Waltham triple homicide, all evidence of which has already been ruled inadmissible by the Court.  The documents also should be excluded because they contain information that is irrelevant and will confuse the issues, mislead the jury, prejudice the government, and waste time.

Exhibits 3235 ("FBI 4-14-11 Interview w parents") and 3236 ("FBI 4-22-11 Interview with TT").  These exhibits document FBI interviews with Anzor Tsarnaev and Tamerlan Tsarnaev in 2011 -- two years before the Marathon bombings.  They do not mention the defendant, the Boston Marathon, violent extremism, or anything having to do with this case.  They bear no relation to, and shed no light on, the defendant's character, criminal history, or the circumstances of the crimes he committed.  They are simply irrelevant.  Yet, the mere fact that the FBI conducted interviews of Anzor and Tamerlan Tsarnaev in 2011 has great potential to confuse the issues, mislead the jury, and prejudice the government, in part because it suggests that the FBI might have had foreknowledge of the defendant's crimes, or at least some reason to suspect the Tsarnaevs of plotting criminal activity, none of which is even alleged to be true.  In view of the documents' negligible probative value and their obvious potential for prejudice, they should be excluded.

Exhibit 3237 ("Matanov, Khairullozhon").  This exhibit -- notes of an FBI interview with Khairullozhon Matanov -- should be excluded because the admission of out-of-court statements

by a witness who is not under oath or subject to cross-examination creates a risk of misleading the jury, confusing the jury, and wasting their time. Tsarnaev has the ability to compel Matanov's testimony and should be required to do so if he wishes to put his testimony before the jury.

It is particularly important that Matanov testify in person because he recently pleaded guilty to four separate counts of making false, fraudulent and misleading statements about the very same matters about which he will be called to testify. See United States v. Matanov, Crim. No. 14-10159-WGY. Matanov was interviewed by law enforcement numerous times about Tamerlan Tsarnaev and repeatedly changed his account of events, sometimes candidly admitting that he had just lied for over an hour and wanted to start anew, only to lie again. The Matanov 302's produced to the defense in discovery show that he made numerous inconsistent and contradictory statements about the Tsarnaevs, his own relationship with them, and his own efforts to cover up his knowledge of them. The jury cannot properly evaluate Matanov's credibility or assign appropriate weight to his testimony unless he can be cross-examined about all of these matters.

If Matanov declines to testify on grounds of possible self-incrimination, then his testimony should simply be excluded altogether, just as it would have been had he been called as a witness during the liability phase. Although the Federal Rules of Evidence do not apply at penalty-phase hearings, Congress expressly preserved the Court's authority to exclude unreliable evidence. The unsworn, un-cross-examined hearsay testimony of an admitted liar convicted of making false statements about the very subject matter of his hearsay testimony could hardly be more unreliable.

If the Court holds that Matanov's out-of-court statements are admissible, portions of

6

them should nevertheless be excluded as irrelevant, speculative and prejudicial.   A copy of the

Matanov 302 highlighting those portions is attached as Exhibit B.

Exhibit 3238 (Saisselin email).   This exhibit -- which purports to be an email from

Amanda Saisselin -- should be excluded because the admission of out-of-court statements by a

witness who is not under oath or subject to cross-examination creates a risk of misleading the

jury, confusing the jury, and wasting their time.  Tsarnaev has the ability to compel Ms.

Saisselin's testimony and should be required to do so if he wishes to put his testimony before the

jury.

The email is also irrelevant and more prejudicial and probative.   In the email, Ms.

Saisselin claims that Tamerlan Tsarnaev physically abused Katherine Tsarnaeva, yet she admits

in the email that she did not see the abuse and is merely speculating about what happened based

on something she believes she heard.  Katherine Tsarnaeva has consistently denied that Tamerlan

Tsarnaev ever physically abused her (as the defense is aware).   The email also makes highly

inflammatory charges (such as that Tamerlan Tsarnaev "has a history of being violent") without

revealing whether that is personal knowledge, rumor, or just calumny.  Unless Ms. Saisselin

testifies under oath and is subject to cross-examination, the jurors will have no good way of

knowing whether to believe her accusations.  The jurors should not be permitted to speculate

about such inflammatory matters.

Exhibit 3243 ("Silva, Steven 302").  This exhibit -- notes of an FBI interview with Steven

Silva -- should be excluded because the admission of out-of-court statements by a witness who is

not under oath or subject to cross-examination creates a risk of misleading the jury, confusing the

jury, and wasting their time.  Tsarnaev has the ability to compel Steven Silva's testimony and

should be required to do so if he wishes to put his testimony before the jury.  It is particularly

important that Silva appear in Court if the defense wishes to offer his testimony because there is reason to believe that Silva has a mental illness that affects his ability to perceive, recall, and relate events accurately. There is also reason to believe that if Silva testified he would repudiate some of his earlier statements as the product of bias.

If the Court holds that Silva's out-of-court statements are admissible despite his availability as a witness, portions of the Silva 302 should nevertheless be excluded as irrelevant as and more prejudicial than probative. A copy of the Silva 302 highlighting those portions that are irrelevant and/or based on speculation is attached as Exhibit C.

Exhibit 3248 ("The Predator War - The New Yorker"). This New Yorker article on the CIA's use of Predator drones overseas should be excluded as irrelevant, prejudicial, and a waste of time.

Exhibit 3249 ("Statement of remorse"). This handwritten note of the defendant's should be excluded because it is unreliable and likely to mislead the jury and confuse the issues. Tsarnaev should not be permitted to put such an important statement before the jurors without making it under oath and submitting to cross-examination. The government incorporates by reference its previously-filed motion to exclude unsworn allocution testimony.

Exhibit 3253 ("NYTimes ADX photo"). This photo, an aerial shot of Florence ADX, should be excluded as irrelevant and more prejudicial than probative. It has nothing to do with the defendant's character, criminal history, or the circumstances of the offenses. Presumably, Tsarnaev intends to offer it show that a successful escape from Florence ADX would be impossible. But the Bureau of Prisons' ability to successfully incapacitate prisoners is not a fact about Tsarnaev that will assist the jury in judging whether he is more or less deserving of the death penalty than other murderers because it applies to all murderers equally. BOP's ability to

8

incapacitate prisoners is an argument about whether the death penalty is needed at all. The photo in question should be viewed simply as an effort to stir the jurors' sympathies and lead them to reach a verdict based on emotion rather than reason.

Exhibit 3255 ("Letter 2014-09-18 to Holder Ortiz"). This letter, and the accompanying handwritten note from Tsarnaev, should both be excluded. A letter from Tsarnaev's attorneys to the government obviously does not relate to the defendant's character, criminal history, or the circumstances of the offense, no matter what it says. To put a letter from Tsarnaev's attorneys into evidence, moreover, would effectively make them witnesses in the case, requiring the jurors to assess their credibility, which would be prejudicial and improper.

Tsarnaev's handwritten note is unsworn allocution testimony and should be excluded for the reasons set forth in the government's previously-filed motion in limine. If the defendant wishes to make a statement to the jury he must take the stand, make the statement under oath, and subject himself to cross-examination about his meaning, motives, and sincerity in making the statement (among other things). Otherwise, the jury will have no idea what weight to give the statement. Indeed, because the jury is likely to take an enormous interest in anything Tsarnaev has said or might yet say, there is a commensurately enormous likelihood that his words will confuse the issues, mislead the jury, and prejudice the government if they are not given under oath and subject to cross-examination.

Exhibits 3270, 3271, 3272 (Dolakov 302's and grand jury transcript). Exhibits 3270 and 3271 are notes of FBI interviews with Magomed Dolakov. Exhibit 3272 is a transcript of Dolakov's grand jury testimony. The defense has informed the jury that despite diligent efforts it is unable to locate Dolakov in order to subpoena him. The government objects to certain

portions of Exhibits 3270 and 3271 as irrelevant, speculative, or more prejudicial than probative.
The documents are attached as Exhibits D and E, respectively, and the objectionable portions are
highlighted in yellow.  The government objects to Exhibit 3272 in its entirety as being largely
cumulative of the other two documents.  If Mr. Dolakov were on the witness stand, he would not
be permitted to testify to the same information on direct examination over and over.

Exhibits 3278 to 3292, 3401 to 3431, 3450 to 3479, 3501-001 to 3501-148, 3570 to
3584.  These exhibits comprise approximately 250 family photos and videos.  Few of them
appear to have any bearing on the defendant's character, criminal history, or the circumstances of
the offenses.   Together, they are plainly cumulative.  They should be excluded unless they
illustrate or corroborate relevant and admissible witness testimony or independently establish a
mitigating fact, and are not cumulative of other photos.

Exhibit 3297 ("Instagram comments").  This exhibit consists of multiple photos, captions,
and responses posted by Tsarnaev on others on Instagram.  They should be excluded as
irrelevant, cumulative, and more prejudicial than probative.

Exhibit 3500-001 to 3500-032 (emails).  These exhibits appear to be emails among
various Tsarnaev family members and family friends.  Few if any appear to have any bearing on
the defendant's character, his criminal history, or the circumstances of his crimes.  Many are
written by individuals (e.g., Bella Tsarnaeva, Joanna Herlihy) who are available to testify and
should be called to testify under oath if their information is in fact relevant and admissible.  The
government moves to exclude them.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    /s/ William D. Weinreb
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys
STEVEN D. MELLIN
Trial Attorney
Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on April 24, 2014.

*/s/ William Weinreb*
WILLIAM D. WEINREB

11