UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | (UNDER SEAL) |
| Defendant | ) | |

### GOVERNMENT'S MOTION IN LIMINE
### TO EXCLUDE DEFENSE EXHIBITS 3566 AND 3567

The United States, by and through undersigned counsel, respectfully moves to exclude defense Exhibits 3566 and 3567, which are drafts of an essay written by Tsarnaev when he was in the ninth grade. The defense intends to introduce these drafts through ▮▮▮▮▮ who will testify about them and their significance. In Exhibit 3566, which appears to be Tsarnaev's first draft of the essay, he writes, among other things, that after his brother Tamerlan joined him in this country, Tamerlan forced him to read six hours a day, making him extremely angry and filling him with hate about something (the draft ends abruptly in the middle of a sentence before Tsarnaev states exactly what the experience made him hate). Exhibit 3567, which appears to be a later draft, is nearly identical to the first draft, except in this one Tsarnaev expresses far less anger at his brother and makes no reference to hating anything.

The drafts -- and all other written statements by Tsarnaev -- should be excluded for two reasons. First, to the extent they are being offered for the truth of the matters asserted, Tsarnaev's availability to testify under oath about those same matters makes the written statements more prejudicial than probative. Second, to the extent the drafts are being offered on the theory that the differences between them give rise to inferences about Tsarnaev's thoughts and feelings when he wrote them, they call for speculation and are likely to mislead the jury and confuse the issues

unless Tsarnaev submits to cross-examination about them. If Tsarnaev does not submit to cross-examination about them, the government's only way of attacking the proposed inferences will be to highlight the need for cross-examination, thus drawing attention to Tsarnaev's failure to testify. These are all sufficient reasons to exclude the drafts in light of their low probative value.

The Court has previously ruled that a witness's written statement generally should not be admitted if the witness is available to testify because the inherent unreliability of an unworn, un-cross-examined statement normally outweighs its probative value. If follows from that ruling that none of the defendant's written statements should be admissible for the truth of the matter asserted, because he is available to make the same statements under oath and subject to cross-examination. That logic applies with special force to any written statement by the defendant about his brother's treatment of him, his feelings for his brother, or both, because the jury will likely give any such statement disproportionate weight, making the need for an oath and for cross-examination especially high.

The drafts should be excluded even if they are offered not for the truth of the matter asserted but simply to show that the defendant revised his original draft because he was reluctant to criticize his brother, fearful of expressing anger at him, or was discouraged from doing either by his parents or others. First, because the jury will naturally be intensely interested in the defendant's own writings, they will find it hard not to consider them for the truth of the matter even if they are not offered for that purpose. Second, the jury should not be invited to speculate about the defendant's thoughts or feelings when he wrote the drafts, or his reasons for revising the essay, when he is available to take the stand and testify about his own state of mind.

The differences between the two drafts illustrate the importance of cross-examination in

1727

this instance. There are any number of reasons why the defendant might have revised his first draft to remove any reference to his anger at his brother. He might have done it because he believed that expressing anger for his brother was inappropriate, or dangerous. Or he might have done it because he had been exaggerating. The jury should not be left to speculate. They should hear the reason from the defendant's own mouth and judge for themselves whether they believe it.

The fact that the defense intends to introduce the exhibits through ▮▮▮ does not change the analysis. Federal Rule of Evidence 703 prohibits the proponent of expert testimony from introducing otherwise inadmissible evidence on which the expert has relied unless its probative value substantially outweighs its prejudicial effect. In this case, as we have shown, it does not. Although Rule 703 does not formally apply during the penalty phase, the Court may use it as a guide in interpreting and applying 18 U.S.C. § 3593(c) and should do so in this instance.

The Court's decision should also be guided by solicitude for the defendant's Fifth Amendment rights. In cross-examining ▮▮▮ about the significance of the revised essay, the government will have no choice but to draw attention to the defendant's failure to take the stand and testify about its significance. The defense has effectively waived any objection to that line of cross-examination by offering the drafts into evidence. Even so, it remains an additional reason for the Court to exclude the drafts as creating too great a risk of distracting the jury and confusing the issues.

WHEREFORE, the government respectfully moves in limine to exclude Defense Exhibits 3566 and 3567.

1728

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By: /s/ William Weinreb
WILLIAM D. WEINREB
ALOKE S. CHAKRAVARTY
NADINE PELLEGRINI
Assistant U.S. Attorneys
STEVE MELLIN
Trial Attorney, U.S. Department of Justice

### CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on May 3, 2015.

/s/ William Weinreb

4