UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION TO BAR EVIDENCE AND ARGUMENT
CONCERNING SUPPOSED ADX PRISON PROGRAMMING AND AMENITIES**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully moves to exclude any evidence, cross-examination or argument concerning programming or amenities available to federal prisoners, including to prisoners confined to H-Unit at ADX Florence, that is not relevant or responsive to the defendant's alleged mitigating factor that "[i]f sentenced to life imprisonment without the possibility of release, [he] is highly unlikely to commit any acts of serious violent misconduct in the future."

In support of the mitigating factor, the defendant intends to introduce evidence that he has no inmate disciplinary violations documented on his Bureau of Prisons institutional record over the two-year period since his arrest on April 19, 2013. In addition, he intends to inform the jury of the operation of the Special Administrative Measures (SAMs) which the Attorney General implemented in his case in August, 2013. The purpose of the defendant's SAMs evidence is to establish that, even if the jury credits the government's assertions that he incited others to commit acts of terrorism prior to his arrest, the effect of this evidence (and also of his alleged success at concealing his violent intentions from friends and acquaintances) is lessened because he will not be in a position

1

to incite or foment further acts of violence in the future if sentenced to life imprisonment rather than to death. This evidence includes

- the procedures by which the SAMs are reviewed and reinstituted annually,

- the existence of a special security unit (H-Unit at ADX-Florence, Colorado) at which the Bureau of Prisons implements the SAMs restrictions on prisoners who are subject to them, and

- the way in which the SAMs restrictions are actually put into effect on H-Unit, which includes single-cell confinement, restrictions on movement and communication within the unit, restricted contact with persons outside of the prison, and monitoring of the limited telephonic and mail communication that is allowed.

The government has indicated that it intends to counter this evidence by offering testimony and exhibits depicting certain amenities, such as the availability of limited basic cable television on small flat-screen television monitors, and other video-based educational, religious and recreational programming that is made available to inmates n H-Unit at ADX. None of this evidence is responsive or relevant to the question of whether prisoners in H-Unit are able to communicate with unauthorized persons inside or outside of the institution. Rather, it is apparently designed to counter a case that the defendant has not made, namely, that imprisonment at ADX is especially onerous and without the slightest relief or stimulation. Whether a convicted offender will be allowed to watch cable television in his cell — a privilege that no law requires, and that can be

withdrawn at any time at the discretion of prison officials — has no bearing on whether a life sentence will adequately protect society by eliminating the defendant's ability to communicate with others or incite violence in the future. Such "amenities" evidence can have no effect other than to inflame the jury and provoke it to impose the death penalty simply to foreclose the possibility that the defendant might be permitted some minimal distractions over the course of his lifetime of imprisonment. *See Bland v. Sirmons*, 459 F.3d 999, 1027 (10th Cir. 2006) (condemning prosecution argument that "[m]aybe the Defendant will be in prison, maybe he will be behind that concrete and those jail bars with his T.V. and his cable and good food. But one thing . . . is for sure, [the victim] won't be here and his family won't be able to be with him, they won't be able to share holidays with him."); *Le v. Mullins*, 311 F.3d 1002, 1014-16 (10th Cir. 2002) (improper for prosecutor to argue, inter alia, "[D]o you really think that justice would be done if this man goes to prison, gets three meals a day and a clean bed every night and regular visits from his family while [the victim] lays [sic] cold in his grave[?]"); *United States v. Johnson*, 713 F. Supp. 2d 595, 631 (E.D. La. 2010) (granting new sentencing hearing in federal capital prosecution in part based on government's argument that "[h]e [defense counsel] essentially asks you to send him [Johnson] to his room where he gets privileges, three squares, and the ability to have visitors. The only visitors that [the victim] will have come to his grave site.")

Moreover, if the government is permitted to introduce such "amenities" evidence, fundamental fairness will require that the defense be permitted to respond by showing the full physical and psychological impact of segregated incarceration under Special

Administrative Measures. This would include affidavits or testimony from current or former ADX inmates describing the psychological disintegration and suffering that they experienced as a result of extreme social and sensory deprivation — with or without access to cable TV and commissary privileges — at ADX. An example of such evidence, contained in an excerpted 2012 affidavit by H-Unit inmate Nidal A. Ayyad, is attached hereto as Exhibit 1. *Ayyad v. Holder*, 1:05-cv-02342-WYD-MJW [DE 295-5, -6] (February 27, 2012). The Ayyad affidavit describes life on H-Unit as it is experienced by a prisoner under SAMs, and includes the prisoner's own perception of his declining mental functioning over the years of his close confinement Ayyad Affidavit at 51-56.[1]

It would be fundamentally unfair to allow the government to depict day-to-day conditions in the H-Unit cells as comfortable or enjoyable while preventing the defense from showing the full effect of H-Unit confinement under the SAMs, or that the few amenities or programs as are available are minimally necessary to further the institution's goal of prisoner management and mitigate the risk of severe physical and psychological harm associated with prolonged solitary confinement. But there is no need for a detailed exploration of daily life in an H-Unit cell. The government has listed the defendant's alleged incitement to violence as a reason to sentence him to death; he is entitled to show that the government has and will substantially eliminate the risk of such incitement in the future. That is the sole purpose of the defendant's ADX evidence. The government's

---

[1] Mr. Ayyad's declaration also provides a daily log of interactions with H-Unit staff over the course of five months in mid-2011, noting the elapsed time in seconds of each interaction. Again, the defendant has no intention of exploring the evidence of such extreme isolation, but he cannot fairly be kept from doing so if the government is allowed free rein to point to whatever small amenities he may be permitted as an H-Unit inmate.

cross-examination and rebuttal, if any, should be confined to whether the defendant's continued existence in the federal prison system poses any substantial risk of renewed violence or incitement to violence. Whether the defendant will be able to buy food through the prison canteen or watch cable television at the sufferance of the prison administration has no bearing on this or any other issue relevant to whether he should be sentenced to death. The Court should not permit the government to delve into these extraneous but potentially inflammatory issues.

        Respectfully submitted,

        DZHOKHAR TSARNAEV
        by his attorneys

        */s/ David I. Bruck*

        Judy Clarke, Esq. (CA Bar # 76071)
        CLARKE & RICE, APC
        1010 Second Avenue, Suite 1800
        San Diego, CA 92101
        (619) 308-8484
        JUDYCLARKE@JCSRLAW.NET

        David I. Bruck, Esq.
        220 Sydney Lewis Hall
        Lexington, VA 24450
        (540) 460-8188
        BRUCKD@WLU.EDU

        Miriam Conrad, Esq. (BBO # 550223)
        Timothy Watkins, Esq. (BBO # 567992)
        William Fick, Esq. (BBO # 650562)
        FEDERAL PUBLIC DEFENDER OFFICE
        51 Sleeper Street, 5th Floor
        (617) 223-8061
        MIRIAM_CONRAD@FD.ORG
        TIMOTHY_WATKINS@FD.ORG
        WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document and attachment was served upon opposing counsel by email on May 4, 2015.

/s/  David I. Bruck