UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**MOTION IN LIMINE TO PROHIBIT CROSS-EXAMINATION OF MARK
BEZY ON REMOTE PERSONNEL MATTERS**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully moves that

he Court prohibit the government from cross-examining Mark Bezy, a defense expert on

prison security and operations as it related to the mitigating factor that "[he] is highly

unlikely to commit any acts of serious violent misconduct in the future."

In support of the mitigating factor, the defendant intends to introduce evidence

that he has no inmate disciplinary violations documented on his Bureau of Prisons

institutional record over the two-year period since his arrest on April 19, 2013.  In

addition, he intends to inform the jury of the operation of the Special Administrative

Measures (SAMs) which the Attorney General implemented in his case in August, 2013.

The purpose of the defendant's SAMs evidence is to establish that, even if the jury credits

the government's assertions that he incited others to commit acts of terrorism prior to his

arrest, the effect of this evidence (and also of his alleged success at concealing his violent

intentions from friends and acquaintances) is lessened because he will not be in a position

to incite or foment further acts of violence in the future if sentenced to life imprisonment

rather than to death.  This evidence includes:

1

- the procedures by which the SAMs are reviewed and reinstituted annually,

- the existence of a special security unit (H-Unit at ADX-Florence, Colorado) at which the Bureau of Prisons implements the SAMs restrictions on prisoners who are subject to them, and

- the way in which the SAMs restrictions are actually put into effect on H-Unit, which includes single-cell confinement, restrictions on movement and communication within the unit, restricted contact with persons outside of the prison, and monitoring of the limited telephonic and mail communication that is allowed.

The government has indicated that it is considering attempting to introduce evidence of two minor personnel matters from over nine years ago. Specifically, these matters include:

1. A complaint made against Mr. Bezy by a deputy warden for using crude language during a staff meeting.

2. Allegations that Mr. Bezy, while a warden in the employ of the BoP, made improper use of BOP staff for, among other things, asking a staff member to take care of his dogs while he was away from the prison.

A similar government attempt to cross-examine Mr. Bezy about these matters was prohibited in the recent capital prosecution in Indiana of *United States v. Briseno*, District of Indiana Criminal No. 2:11-CR-77. A copy of the relevant portion of the transcript of the trial judge's decision is attached hereto as Exhibit A. As the *Briseno* court did, this

court should preclude the line of cross-examination as irrelevant, confusing, and prejudicial under 18 U.S.C. § 3593(c).

**ARGUMENT**

Mr. Bezy, a former warden in BoP, will testify regarding the security features available at USP Florence Administrative Maximum to eliminate any risk that Mr. Tsarnaev will incite or foment further acts of violence in the future if sentenced to life imprisonment rather than to death. As summarized in the attached *Briseno* transcript that is attached, the testimony the government may seek to elicit centers around a remark Mr. Bezy made over nine years ago, when he crudely directed a comment to a deputy warden to the effect of "where the fuck do you work?" Mr. Bezy later talked to an investigator regarding the matter, acknowledged he made the quoted remark, and never heard anything further about it. He did not receive any papers in connection with the allegation, and there is nothing in his personnel file about it.  He took full retirement without any derogatory marks on his record.

After Mr. Bezy left BOP, OIG wrote a report addressing the incident. The OIG report determined that there was sufficient evidence that Mr. Bezy directed unprofessional comments and profanity towards the deputy warden as described above. The report noted that, when interviewed by OIG, Mr. Bezy acknowledged making the comment and explained that he previously apologized to the deputy warden the next day. He also apologized in front of the staff who witnessed the original comment prior to being contacted by OIG. This was done before any investigation was launched. In addition, the OIG report is not in Mr. Bezy's personnel file.

The other allegations against Mr. Bezy, all of which were made by the deputy warden who was the recipient of Mr. Bezy's crude comment, were that (1) Mr. Bezy used staff to care for his dogs while he was away, (2) Mr. Bezy asked another staff member to teach Mr. Bezy's son how to box, (3) Mr. Bezy asked a staff member to write a paper on the death penalty for Mr. Bezy's son, and (4) Mr. Bezy had asked a staff member to prepare an employment application for a position at a private prison.

Although the allegation regarding the employment application was sustained, as to the other allegations, OIG reported that "Bezy' s action regarding this matter were not determined to be a misuse of his official position."

Admission of the crude comment and the incidents, which have nothing to do with credibility and are based for the most part on unreliable and irrelevant hearsay, must be excluded as irrelevant and likely to cause unfair prejudice, and so pursuant to 18 U.S.C. § 3593(c) is the "type of unreliable or prejudicial evidence that might render a trial fundamentally unfair." *United States v. Johnson*, 378 F.Supp.2d 1051, 1069 (N.D.Iowa 2005)(intimal quotations omitted). Section 3593(c) grants this Court "greater discretion to exclude unfairly prejudicial or confusing information" than the analogous Federal Rules of Evidence provide during the trial phase.  *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010).  *See also United States v. Fell*, 360 F. 3d 135, 145 (2d Cir. 2004)("[T]he presumption of admissibility of relevant evidence is actually narrower under the FPDA than under the FRE."); *United States v. Gilbert*, 120 F.Supp.2d 147, 151-52 (D.Mass.2000) ("The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases."); *United States v.*

4

*Taylor*, 302 F.Supp.2d 901, 905 (N.D. Ind. 2003)("[T]he evidentiary standard found in §

3593(c) of the FDPA upholds the constitutional required balance between the needs for

heightened reliability and individualized sentencing by enabling the judge, as gatekeeper,

to bar unreliable or unfair sentencing information.").

The use of profane language by Mr. Bezy in 2006 does not shed any light onto the

substance of Bezy's testimony or his character for truthfulness.  Rather there is a

substantial risk of misleading the jury into focusing on this colorful comment.  There is

there even the slightest suggestion that he was ever less than candid in the investigation

of the 2006 incident; he quite openly acknowledged directing the crude comment to the

deputy warden after having fully apologized for the comment, and he cooperated fully in

the investigation of the other incidents. Most importantly, showing that any of these

violations occurred in 2006 or earlier has absolutely nothing to do with any contested

issue in this case.  None of the allegations or findings have any bearing on Mr. Bezy's

credibility.  They similarly have no bearing on the subject matter of his testimony or his

qualifications to discuss factual issues regarding security in the BoP.  The subject is

entirely collateral and irrelevant, has not the slightest probative value, invites a sideshow

that might well distract the jury, and will suggest unfairly that the witness's testimony

about uncontroversial features of the BoP's Special Security Unit at the USP

Administrative Maximum Prison in Florence and the BoP's ability to safely and securely

house Mr. Tsarnaev he is sentenced to life in prison.

As the *Briseno* court correctly ruled, the cross-examination on these collateral

matters do not have any relevance at all to the issue at hand, because the government's

argument is illogical. Exhibit A at 4-5. It boils down to "attempting to say that the Bureau of Prisons somehow is an unsafe environment because on one occasion a warden yelled at a deputy warden in a disrespectful way." *Id.* at 5. In any event, any probative value is "outweighed by the risk of confusing the issues with the jury, a needless consumption of time, and a risk of unfair prejudice." *Id.* As the court did in *Briseno*, this Court must prohibit the suggested inquiry on cross-examination.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

*/s/ David I. Bruck*

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document and attachment was served upon opposing counsel by email on May 5, 2015.

*/s/   David I. Bruck*