UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-10200-GAO |
| ) | |
| DZHOKHAR TSARNAEV ) | |

**DEFENDANT'S MOTION TO EXCLUDE
REBUTTAL TESTIMONY OF WITNESSES NICOLET AND OLIVER**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully moves to exclude the testimony of the government's proposed rebuttal witnesses Michelle Nicolet and John Oliver on the grounds that the testimony

- is not proper reply,

- would largely duplicate rather than contradict the testimony of former Warden Mark Bezy to which it is purportedly responsive, and

- to the extent that it includes new or different matter, its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S. Code § 3593(c).

In addition, as explained below, much of the proposed rebuttal information cannot be evaluated or subjected to adversary testing without a great deal of additional background data which the defense has requested but which the government has not yet provided.

Ms. Nicolet's and Mr. Oliver's proposed rebuttal testimony, quoted verbatim from the government's May 9, 2015 expert disclosure, is set forth and discussed below.

### 1. FBI Supervisory Special Agent Michelle Nicolet.

**A. "If SAMs are not renewed, they lapse."** Mr. Bezy has already testified to this effect. ("Q. You agree that if the SAMs is not renewed, it lapses in a year, correct? A. Yes." Tr. 56:34.

**B. "SAMs may be modified – and have been modified – at the request of defense counsel, to avoid litigation, and at the suggestion of courts."** This is consistent with Mr. Bezy's testimony that no court has ever ordered a removal or modification of a SAMs, Tr. 57-57, and that the courts have engaged with the Department of Justice regarding SAMs issues in an advisory fashion. Tr. 56:34-35. The negotiated SAMs modifications about which Ms. Nicolet will testify, moreover, generally involve minor changes to SAMs inmates' lists of approved visitors and correspondents—subjects far removed from any relevant issue in this case.

**C. "The SAMs in this case have already been modified."** As the Court knows, the SAMs in this case were imposed prior to trial while his defense counsel were preparing to meet a capital prosecution, and all of the SAMs issues and modifications in this case concerned the reasonable requirements of his defense team while it investigated his case and prepared for trial. Such SAMs-related issues will not recur if the defendant receives a life sentence, and so are irrelevant to any matter now before the jury. However, there is great potential for prejudice in any exploration of such questions. Why, for example, did the defense request (and receive) some limited measure of confidentiality (through the use of a firewalled FBI agent) during meetings between the defendant and his sisters? Answering such questions would invite only speculation and prejudice. The defendant

cannot fairly respond to the government's introduction of evidence concerning pretrial SAMs modifications without making clear how irrelevant these modifications were to the defendant's future status. But any such exploration will take the jury far afield into irrelevant, confusing and prejudicial side issues. The entire area of SAMs modifications during the pretrial period of this case should be off-limits, and is not a proper subject for rebuttal testimony.

**D. "In the past five years, SAMs restrictions on at least nine ADX inmates convicted of terrorism charges have been removed."** Mr. Bezy testified to this effect. "Q. Okay. So since 2009, there have been nine inmates convicted of terrorism who had a SAMs housed at ADX who since that time that SAM has been removed or not renewed, right? A. Yes." Tr. 57:9.

**E. "Approximately five inmates come off SAMs restrictions each year."** This is not inconsistent with Mr. Bezy's testimony, and is in any event irrelevant and misleading, since the proffered statistic is not limited to inmates convicted of terrorism-related offenses (much less to those convicted of terrorism offenses resulting in death). The normal ebb and flow of SAMs restrictions in factually dissimilar cases sheds no light on the likelihood that SAMs will be removed from the defendant in the future. Rather such testimony would only serve to confuse the jury and divert it from an assessment of the relevant facts of this case.

**F. "SAMs have been violated in other cases, and . . . there have been at least 80 attempts to violate SAMs in the last five years."** Based on recent defense interviews with Ms. Nicolette, we can represent to the Court that many or all of the "80 attempts to

violate the SAMs in the past five years" at H-Unit were both trivial and unsuccessful. It appears that the FBI classifies every non-compliance with SAMs rules—including by inmates' family members or other contacts, and regardless of the inmate's knowledge or involvement—as a SAMs "violation." These can be as inconsequential as a failure of an inmate's son to include his full name on the return address of a piece of mail (a "violation" which means that the inmate will never receive the item, and so may never even learn of the miscue).

Given this extremely broad definition of "attempted violation," on May 7, 2015, the defense made a written discovery request for the facts of these 80 SAMs violations. Attachment 1. The request was renewed today, after the defense received notice late yesterday afternoon of the government's intention to present rebuttal testimony on the total number of attempted SAMs violations. Attachment 2. As of this filing, the government has responded to neither discovery request. The defense is therefore currently unable to cross-examine Ms. Nicolet about the actual effectiveness of the SAMs restrictions in H-Unit in light of the government's claim of 80 "attempts to violate" them.

Under the circumstances it would be unfair and very misleading to allow the government to place before the jury that there have been "80 attempts to violate SAMs" at the ADX H-Unit over the past 5 years. The jury cannot possibly evaluate this statistic without knowing what counts as an "attempt," and what each of these "attempts" actually involved. Without this information, the proposed testimony is as likely to validate as to impeach Mr. Bezy's testimony that the SAMs have not been successfully breached for H-Unit terrorism inmates, but the jury will have no way of knowing whose characterization

- 4 -

is correct. Ms. Nicolet's testimony on this point therefore poses a "danger of creating unfair prejudice, confusing the issues, or misleading the jury," is not proper rebuttal, and should be excluded.

### 1. Warden John Oliver

The government proposes that ADX Warden Oliver will briefly describe:

**A. "ADX-Florence, including its physical location, as well as the H Unit, the H Unit phase-down process, and the ADX and BOP step-down process."** This contains no suggestion that the testimony is proper rebuttal to anything testified to by Mr. Bezy. Absent a disclosure that actually identifies some area of inconsistency between Mr. Bezy's description of the phase-down and step-down processes and what Mr. Oliver proposes to say, it would appear that the government's actual goal is simply to gain the benefit of a more favorable "spin" on uncontested facts (including the "physical location" of ADX-Florence, a subject that the government has already explored at surprising length while cross-examining Mr. Bezy). This is not proper rebuttal. If the government actually has something about Mr. Bezy's testimony on these points that Mr. Oliver can rebut, it should identify what it is.

**B. "He will clarify the impact of SAMs on an inmate's placement at ADX and an inmate's ability to visit and communicate with others."** Again, the government offers no indication of what, if anything, Mr. Oliver's "clarification" on these points will actually rebut in Mr. Bezy's testimony, nor why these clarifications will address anything that is material to the mitigating factor at issue, namely, that the defendant "is highly

- 5 -

unlikely to commit or facilitate any acts of serious violence in the future while serving a life-without-release sentence in federal custody."

**C. "He will testify that of the seven terrorism convicts under SAMs placed in the ADX H Unit when it was first activated in 2002, only three remain in H Unit, and at least one is no longer at ADX."** As with Ms. Nicolet's proposed testimony about the 80 "attempted violations" of SAMs restrictions on H-Unit, this statistic is meaningless and potentially very misleading without more information about the inmates and cases involved. Accordingly, the defense has requested this information from the government. See Attachment 2. On its face, the statistic about the seven original terrorism-related inmates in H-Unit tends to corroborate, rather than rebut, Warden Bezy's prediction that the defendant in this case will likely remain at ADX even if the government elected to lift the SAMs restrictions. But whether the seven inmates who have left or remained at H-Unit have any actual relevance to this case at all depends on whether their cases are generally similar or different from Mr. Tsarnaev's. Accordingly, the Court simply cannot conclude that the testimony is admissible as rebuttal until the government responds to the defense request for information concerning these seven cases. And for the same reason, the jury would have no basis for assessing the relevance of these inmates' current custody status and institutional assignment without knowing who the inmates are, what crimes they committed, whether the FBI and the prosecution agreed to or opposed their removal from SAMs restrictions (for those who did see the SAMs lifted), and a number of other factors that would indicate whether their situations are in any way similar to the defendant's.

**D. Oliver "will testify about the standards and procedures used to determine where inmates are placed initially and whether they are transferred."** This vague description includes no indication that the witness will actually contradict or rebut Mr. Bezy's testimony on any material issue. Significantly, it does not suggest that Mr. Oliver will disagree that the defendant is virtually certain to be assigned to H-Unit at ADX as an initial matter— a point that the government itself has now acknowledged to the Court, if not to the jury. While the Warden can presumably provide much greater detail about the bureaucratic and organizational processes by which inmates can be reassigned within H-Unit and to other cellblocks at ADX if the government chooses to withdraw SAMs restrictions, none of this constitutes proper rebuttal unless it is relevant to some material issue raised in the defense case. Absent such a proffer, and until the government has provided the discovery information without which the relevance of the Warden's proposed testimony cannot be assessed, the Court should exclude this aspect of Mr. Oliver's rebuttal testimony.

**E. "Warden Oliver will also describe H Unit's physical layout and the cells it contains. He will briefly describe the typical services and privileges available to inmates at ADX."** Here, at last, is the nub of the matter. The government still wishes to distract the jury from the question of whether the defendant will be able to communicate with others in such a way as to foment or further acts of additional violence. And it proposes to do so by shifting the jury's attention to the non-security-related conditions of his daily life at ADX. Specifically, the government continues to seek to inject

- 7 -

inflammatory but irrelevant details such as educational programming in his H-unit cell, the availability of various psychological services, and —above all — the BOP's decision to provide (for now) access to a restricted package of commercial cable TV programming. The defendant has already addressed the unfairness of allowing the government to tell the jury about the availability of cable TV access for this population of locked-down, single-celled prisoners without also permitting any exploration of the psychological damage that the extreme isolation of ADX confinement tends to inflict on the men held there. Sealed Motion to Bar Evidence and Argument Concerning Supposed ADX Prison Programming and Amenities, DE ___ (May 4, 2015). The government has shown no basis to justify reconsideration of the Court's decision to bar such "amenities" cross-examination and evidence. Under these circumstances, the government should not now be permitted to elicit from Mr. Oliver an inflammatory, one-sided and unrebuttable description of a handful of supposed amenities of ADX confinement that are without relevance to the issue of the defendant's ability to communicate with others after conviction.

As the foregoing discussion makes clear, the issues surrounding the SAMs and ADX confinement that the government proposes to delve into in rebuttal are factually complex and fraught with the potential for unfairness, prejudice, and needless confusion. At bottom, the government appears aggrieved by its not having been able to choose the witnesses to outline how the Bureau of Prisons restricts the communications of inmates like the defendant. But the material facts *have been* presented, and the government has yet to identify a single material misstatement or omission by Mr. Bezy that warrants

correction on rebuttal. The government's desire to repackage the same evidence in a more prosecution-friendly form does not convert its witnesses' proposed testimony into proper rebuttal. The testimony of Ms. Nicolet and Mr. Oliver should therefore be disallowed.

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

/s/ David I. Bruck

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## CERTIFICATE OF SERVICE

I hereby certify that copies of this document filed under seal have been served on Assistant U.S. Attorneys William Weinreb, Aloke Chakravarty, Nadine Pellegrini and Steven Mellin by email and will be served by hand delivery on May 10, 2015.

*s/ David I. Bruck*