UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

## MOTION IN LIMINE TO BAR IMPROPER PROSECUTORIAL ARGUMENT

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully moves that

the Court order the government to refrain, in its penalty phase closing and rebuttal

arguments, from engaging in any of the following forms of improper argument:

1.    **Urging the jury to ignore or disregard legitimate mitigating evidence.**

*See United States v. Rodriguez*, 581 F.3d 775, 800-801 (8th Cir. 2009) ("[a] prosecutor

errs by directing the jury to ignore a proposed mitigating factor" citations omitted);

*Sinisterra v. United States*, 600 F.3d 900, 909 (8th Cir. 2010) ("To ensure the reliability

of the determination that death was the appropriate punishment, a prosecutor may not

argue that [meaningful] consideration [of potentially relevant mitigating evidence] is

forbidden."); *Le v. Mullin*, 311 F.3d 1002, 1018 (10th Cir. 2002) (prosecutor may not

imply that "the jury had the ability to ignore the legal requirement that it must consider

mitigating evidence").

2.    **Suggesting that mitigating evidence requires a nexus to the crime or to**

**the defendant's culpability for the offense.**  *See Tennard v. Dretke*, 542 U.S. 274, 285

(2004); *Smith v. Texas*, 543 U.S. 37, 45 (2004); *United States v. Fell*, 531 F.3d 197, 222

(2d Cir. 2008) ("A capital defendant's mitigating evidence need not have a nexus to the

1

murder for which he has been convicted, but need only allow 'the sentencer to reasonably find that it warrants a sentence less than death'") (quoting *Tennard,* 542 U.S. at 285); *Small v. State*, 51 A.3d 452, 459-63 (Del. 2012) (on plain error review, reversing death sentence because of prosecutorial misconduct in repeatedly characterizing mitigating circumstances as "excuses" or "attempts to shift the blame").

      An example of such argument occurred in the prosecutor's penalty phase opening statement in this case:

> Because ask yourselves if there's anything about Tamerlan Tsarnaev or any other person that will explain to you how Dzhokhar Tsarnaev could take a bomb, leave it behind a row of children, walk away, down the street, and detonate it. Is there anything that will explain how he could walk away from that happy and crowded scene, look back over his shoulder, knowing that he just left death there to go off, and he kept on going?
>
> You may hear about family dynamics, family history, family dysfunction. But many people — millions of people, one would venture — face troubles throughout their lives. Who among them murders a child with a bomb?

Tr. 47:11.  This argument misstated what mitigating evidence is, and the role it plays in capital sentencing.  It is not necessary that any mitigating factor "explain" why a defendant committed the capital crimes charged before the jury may consider it.  *See Tennard*, *supra*. Nor must a mitigating factor differentiate a capital defendant from "millions" of other people before it can be weighed on the side of life. While a prosecutor may permissibly argue that a given mitigating factor should be accorded little weight in the context of the evidence as a whole, the test created by this argument invited the jury to disregard the defendant's case for life entirely unless it met the virtually impossible test of "explaining" a crime to which — given the defendant's conviction — he had no

legal defense.  As the Kansas Supreme Court observed in *State v. Kleypas*, 40 P.3d 139, 281-282 (1991) (Kan. 2001), prosecution arguments that the defendant's alleged mental disorders and drug use should not be considered mitigating unless they excused or justified the crime "were clearly improper [and]. . . reflect a complete lack of understanding of the concept of mitigating circumstances."

> While neither Kleypas' brain damage nor schizophrenia may have caused the murder, both conditions are relevant in the determination of whether either should reduce the moral culpability or blame assigned to Kleypas. In a general sense, they are mitigating because "they might serve 'as a basis for a sentence less than death.'" *See Skipper* [*v. South Carolina*]*,* 476 U.S. 1, 4–5 (1986). By his comments, the prosecutor told the jury not to consider them as mitigators in direct contravention of *Skipper* and *Eddings* [*v. Oklahoma*]*,* 455 U.S. 104, 113–14 (1982). This constituted prosecutorial misconduct.

The Court should not permit a repetition of this type of argument in the prosecution's closing and rebuttal arguments.

In addition, the defendant moves in limine to bar the following additional forms of improper prosecutorial argument, many of which have surfaced in prior federal capital trials:

**3.     Arguing that, because the defendant faces life sentences on other charges, a death sentence is the only way to fully punish him for his conduct**.  *See State v. Smith*, 755 S.W.2d 757, 767 (Tenn. 1988) (improper for the prosecutor to tell jurors that "to give life, a punishment of life, in this second killing is the equivalent of giving no punishment at all" because the argument "effectively eliminated the option of life imprisonment as a sentence" for the defendant in the case before the jury); *People v. Kuntu*, 752 N.E.2d 380, 403 (Ill. 2001) (vacating death sentence because of the

prosecutor's argument that, because life imprisonment was the mandated punishment for two or more killings, the jury's failure to impose a death sentence in the case of a defendant who had killed seven victims would "be giving defendant five free murders"). 

4.      **Adverting to any victim's family's or surviving victim's desire for a death sentence.**  *See United States v. Lighty*, 616 F.3d 321, 360 (4th Cir. 2010) (finding "little doubt" that prosecution acted improperly when, "[t]wice during closing argument at the sentencing phase, the AUSA informed the jury that [the victim's] family was asking the jury to impose the death penalty.").

5.      **Inviting a death verdict on behalf of the victims or the victims' families.**  *See United States v. Rodriguez*, 581 F.3d 775, 803 (8th Cir. 2009) (direct review of federal death sentence; "improper" to appeal excessively to jurors' emotions through claim to "speak for" the victim).

6.      **Invoking comparative justice in a victim-impact argument.**  *See Brooks v. Kemp*, 762 F.2d 1383, 1411 (11th Cir. 1985) (*en banc*) ("[I]t is wrong to imply that the system coddles criminals by providing them with more procedural protections than their victims. A capital sentencing jury's important deliberation should not be colored by such considerations.").

7.      **Invoking comparative worth in a victim-impact argument.**  *See United States v. Johnson*, 713 F. Supp. 2d 595, 630 (E.D. La. 2010) (district court granted defendant's motion for a new sentencing hearing based in part on the government's inappropriate "call for the death penalty in order to affirm that the victim's life was

worthier than that of the 'evil' defendant," argument was "an improper and inflammatory appeal to juror passion and emotion."). □

**8.     Inviting the jurors to experience the crimes vicariously.**  *See Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) (prosecution may not urge jurors to identify individually with the victims with comments like "[i]t could have been you" the defendant killed or "[i]t could have been your children"); *Wilson v. Sirmons*, 536 F.3d 1064, 1119-20 (10th Cir. 2008) (improper to ask the jury to put themselves "in the victim's shoes").

**9.     Inflaming the jurors' fears for their own safety or that of others close to them.**  "[I]nvoking a jury's general fear of crime to encourage the application of the death penalty in a particular case is unfairly inflammatory." *Weaver v. Bowersox*, 438 F.3d 832, 841 (8th Cir. 2006), *cert. dismissed sub nom., Roper v. Weaver*, 550 U.S. 598 (2007).

**10.     Suggesting jurors will bear responsibility for future acts of violence if the defendant is not sentenced to death.**  *See Bates v. Bell*, 402 F.3d 635, 642, 644, 648-49 (6th Cir. 2005) (granting habeas relief based, in part, on an improper "appeal to the fears of individual jurors and to emotion" by prosecutorial argument that "[t]here are other people in the penitentiary system that deserve our protection: the administrative staff there, the guards. . . . Please don't vote for life for [the defendant] and death for them.").

**11.     Portraying jurors as an arm of law enforcement**.  *See Cargle v. Mullin*, 317 F.3d 1196, 1222-23 (10th Cir. 2003) ("extremely improper" for prosecutor to suggest

to jurors that they "are part of 'the team' of the prosecution and police, rather than impartial arbiters between the State and the defendant").

**12.      Suggesting jurors must impose death to prevent incompetence or mistakes of other actors in the criminal justice system.**   *See Darden v. Wainwright*, 477 U.S. 168 (1986) (holding that prosecution acted improperly in arguing, in a case where defendant committed murder while out or prison on weekend furlough, that death verdict was "the only way that I know that he is not going to get out on the public.  It's the only way I know. It's the only way I can be sure of it. It's the only way that anybody can be sure of it now, because the people that turned him loose.").

**13.      Asking the jurors to sentence the defendant to death to "send a message."**   *See United States v. Runyon* 707 F.3d 475, 514-15 (4th Cir. 2013) ("send a message" argument improper because it "invites [the jury] to play to an audience beyond the defendant to use its decision not simply to punish the defendant, but to serve some larger social objective or to seek some broader social approval as well").

**14.      Suggesting that the jurors have a civic duty to return a sentence of death**.   *See Weaver v. Bowersox*, 438 F.3d 832, 840 (8th Cir. 2006) (such arguments are calculated to remove reason and responsibility from the sentencing process," and "diametrically opposed to the requirement that capital sentencing be at the jury's discretion."); *Brooks v. Kemp*, 762 F.2d 1383, 1412, 1413 (11th Cir. 1985) (*en banc*) (characterizing juror as soldier ordered to kill the enemy "misrepresents the task the jury is charged by law to carry out" and undermines the individualized consideration of the capital defendant).

15.      **Commenting on the costs or alleged comforts of life imprisonment.**

*See Miller v. Lockhart*, 65 F.3d 676, 682, 685 (8th Cir. 1995) (improper to refer to

"tremendous burden" that life imprisonment would "put on the taxpayers" and to ask the

jury to consider "[t]he cost of food, clothing, shelter, and guards"); *United States v.*

*Johnson*, 495 F.3d 951, 979 (8th Cir. 2007) (direct appeal of federal judgment of death;

government "strayed over the line" and "went beyond the bounds of permissible

argument," in argument that ten, twenty, thirty years from now the child victims will still

be dead, and that "[n]o matter how small [the defendant's] cell may be, it's going to be

larger than the coffin that [the victims] are laying [sic] in now.").

16.      **Vouching for or bolstering government witnesses.**  *See United States v.*

*Young*, 470 U.S. 1, 18-19 (1985) (expressions of prosecutor's personal belief in reliability

of government witnesses or evidence "can convey the impression that evidence not

presented to the jury, but known to the prosecutor, supports the charges against the

defendant and can thus jeopardize the defendant's right to be tried solely on the basis of

the evidence presented to the jury; and the prosecutor's opinion carries with it the

imprimatur of the Government and may induce the jury to trust the Government's

judgment rather than its own view of the evidence.").

17.      **Suggesting additional evidence beyond that adduced at trial.**  *See*

*Miller v. Lockhart,* 65 F.3d 676, 682, 684-85 (8th Cir. 1995) (granting habeas corpus

relief in death penalty case where, among other things, the prosecutor argued that the

defendant had a history of escape, where no such evidence was introduced during the

trial).

18.     **Asking the jury to infer lack of remorse from defendant's silence or**

**failure to testify**.   *See United States v. Caro*, 597 F.3d 608, 630(4th Cir. 2010)

(acknowledging that the Fifth Amendment prohibits considering a federal capital

defendant's silence in support of an aggravating factor of lack of remorse).

19.     **Asking the jury to infer lack of remorse from defendant's courtroom**

**demeanor or non-testimonial conduct.**   *See Borodine v. Douzanis*, 592 F.2d 1202, 1210-

2011 (1st Cir. 1979) (prosecutor's comments "on the defendant's expressionless

courtroom demeanor. . .were improper in the sense of being irrelevant (a defendant's

'courtroom behavior off the stand is (not) in any sense legally relevant to the question of

his guilt or innocence of the crime charged')"); *United States v. Shuler,* 813 F.2d 978 (9th

Cir. 1987) (holding, *inter alia,* that "in the absence of a curative instruction . . . a

prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of

the due process . . . right not to be convicted except on the basis of evidence adduced at

trial.").

20.     **Inviting the jury to consider defendant's decision to plead not guilty or**

**his exercise of trial rights.**  *See Zant v. Stephens*, 462 U.S. 862, 885 (1983) (capital-

sentencing scheme may not "authorize[] a jury to draw adverse inferences from conduct

that is constitutionally protected," such as, "for example, the request for trial by jury.")

(citing *United States v. Jackson*, 390 U.S. 570 (1968)).

21.     **Commenting on the defendant's failure to have discussed or**

**apologized for the crime before trial.**   *See Gholson v. Estelle*, 675 F.2d 734, 736-37,

741 (5th Cir. 1982) (psychiatrists' testimony that defendants did not demonstrate remorse

during competency evaluation "necessarily violated their fifth amendment rights . . . .
Defendants . . . maintained silence regarding their guilt or innocence in response to
questions about crimes for which they had been charged . . . . The defendants in this case,
as in every criminal case, were under no duty to confess guilt").

22.     **Denigrating defense counsel or the defense.**  *See United States v. Young*,
470 U.S. 1, 9 (1985) (counsel "must not be permitted to make unfounded and
inflammatory attacks on the opposing advocate"); *United States v. Montgomery*, 635 F.3d
1074, 1098 (8th Cir. 2011) (federal capital 2255 appeal; noting that the Sixth Amendment
"right to present a defense" includes the right to offer testimony and compel witness
attendance and holding that "the prosecution cannot use the defendant's exercise of
specific fundamental constitutional guarantees against him at trial.").

23.     **Demonizing the defendant**.  *See United States v. Allen,* 247 F.3d 741 (8th
Cir. 2001) (condemning as improper prosecutor's reference, during penalty-phase closing
argument, to the defendant as a "murderous dog").  

24.     **Misleading the jurors on the consequences of non-unanimity.**  *See
Hooks v. Workman*, 606 F.3d 715, 742-44 (10th Cir. 2010) (concluding that prosecutors
"engaged in wholesale and repeated attempts to mislead the jury as to its sentencing role
under [state law]" and "invaded [petitioner's] Eighth Amendment rights" by improperly
informing jury, contrary to state law, that "(1) the jury's work would be wasted if it failed
to reach a unanimous verdict, (2) defense counsel's argument that it took the vote of only
one juror to prevent imposition of the death penalty constituted a request for 'jury

nullification,' and (3) failure to deliberate in a manner leading to a unanimous verdict would amount to operating outside the law.").

25.     **Arguing that mercy is never appropriate.**  *See Wilson v. Kemp*, 777 F.2d 621, 626 (11th Cir.1985) (granting penalty-phase habeas relief based on prosecution argument that mercy was not an appropriate consideration under the law; argument "strikes at the core of the jury's role in capital sentencing" and withdraws "from the jury one of the most central sentencing considerations, the one most likely to tilt the decision in favor of life."); *United States v. Higgs*, 353 F.3d 281, 331 (4th Cir. 2003) (argument in federal capital case that "mercy is not in the instructions" and "not something you do in this case" arguably "crossed into argument in contradiction of the district court's instructions," as "the jury is empowered to show mercy to reject a death sentence.").  ☐ ☐

Respectfully submitted,

DZHOKHAR TSARNAEV
By his attorneys

*/s/ David I. Bruck*

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)

Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

### Certificate of Service

I hereby certify that this document and attachment was served upon opposing counsel by email on May 11, 2015.

*/s/  David I. Bruck*