UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S MEMORANDUM REGARDING JURY INSTRUCTIONS ON THE CONSEQUENCES OF NON-UNANIMITY AT SENTENCING**

  The defendant, Dzhokhar Tsarnaev, by and through counsel, hereby files the following memorandum in response to the Government's recently-filed objection to his Requested Jury Instruction No. 3 (Instruction Regarding the Effect of an Inability to Reach a Unanimous Sentencing Decision), and in support of his position that the sentencing jury should be informed, through instructions and verdict forms, of the consequences of a failure to agree on sentence. For the reasons that follow, the defendant submits that the Court should employ the approach recommended by Leonard Sand et al., MODERN FEDERAL JURY INSTRUCTIONS, Instruction No. 9A-20 (2011 Supp.), and adopted by the court in *United States v. Sampson,* 335 F. Supp. 2d 166. 240-241 (D. Mass. 2004), as well as by most other federal courts to have tried cases under the Federal Death Penalty Act, and should provide the sentencing juror with accurate information on this important point.

  Judge Wolf's post-trial memorandum opinion in *Sampson* succinctly sets forth the reasons why such an instruction should be given along with both the verdict form and the instructions actually employed in that case:

1

The court told the jury what would occur if it failed to reach a unanimous verdict in favor of the death penalty. In Part Six of the verdict forms, the court gave the jury three options. The first was a unanimous vote that the government had met its burden of proving that death was the appropriate sentence. The second was a unanimous vote that the government had failed to meet its burden of proving that death was the appropriate sentence. The third was that "[a]fter making all reasonable efforts, the jury is unable to reach a unanimous decision on whether the government" met its burden of proof.

The court recognized that the Eighth Amendment does not require that the jury be told the consequences of their failure to agree and that the government has a strong interest in a unanimous verdict—one way or the other—in a death penalty prosecution. *See Jones v. United States,* 527 U.S. 373, 381–82 (1999). However, the Supreme Court in *Jones* did not forbid this sort of instruction. Instead, it held that the constitution does not require it and that the Court would not exercise its supervisory powers to require that it be given in every case.

This court chose to inform the jury of the consequences of deadlock for several reasons. First, viewing this instruction as part of the overall instructions regarding deliberations, the court believed that the government's interest in a unanimous verdict was adequately protected. Second, informing the jurors of the consequences of deadlock emphasized the individual responsibility of each juror. Ensuring that jurors were cognizant of this responsibility was also an important government interest. Third, the instruction also ensured that jurors undertook their deliberations accurately understanding the consequences of their actions. Declining to instruct the jury on the consequences of a deadlock could result in jurors deliberating based on a misunderstanding of the law rooted in speculation and incorrect assumptions.[43]

---

[43]The court instructed the jury as follows:

> If, after making all reasonable efforts, at the conclusion of your deliberations on a particular count, you have not reached unanimous agreement on whether the prosecution has proven that the death penalty is justified, you will not be a hung jury. And in contrast to the conventional criminal case, this case will not have to be tried again because the jury did not reach a unanimous verdict. Rather, if you are unable to reach a unanimous verdict on whether the government has proven the death penalty is justified on a particular

count, the law provides that I must sentence Mr. Sampson to life in prison without possibility of release on that count, and I will do so.

Although, as the *Sampson* Court noted, the Supreme Court's decision in *Jones v. United States* does authorize district courts to withhold from the jury the fact that a life sentence will automatically follow from the jurors' failure to agree, many federal courts to have tried cases under the Federal Death Penalty Act since its enactment in 1994 have exercised their discretion to provide this information in some form. The Tenth Circuit Pattern Jury Instructions include such a charge (Inst. 3.01 (2005) "If you cannot unanimously agree on the appropriate punishment, I will sentence the defendant to life imprisonment without the possibility of release"). So too, in modified form, do Judge Sand's pattern instructions:

> If, after engaging in the balancing process . . . all twelve members of the jury do not unanimously find, beyond a reasonable doubt, that the Defendant should be sentenced to death . . . then you may not impose the death penalty. In that event, Congress has provided that life imprisonment without any possibility of release is the only alternative sentence available. If the jury reaches this result, you should do so by unanimous vote, and indicate your decision [on the verdict form].
>
> Before you reach any conclusion based on a lack of unanimity . . . you should continue your discussions until you are fully satisfied that no further discussion will lead to a unanimous decision.

1 Leonard B. Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS — Criminal, Inst. 9A-20 (2011). Many federal trial courts have followed the same approach to this issue. Attached to this motion is an affidavit by Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project, listing some 71 FDPA cases to have reached jury sentencing verdicts in which the trial courts advised the sentencing jury of the

consequences of a "deadlock" or non-unanimous result. The only other FDPA case to have been tried in the District of Massachusetts besides *Sampson*, *United States v. Gilbert,* No. 98-30044-MAP, also featured such instructions.

There are likely a number of reasons why so many federal courts have exercised their discretion in this manner. **First,** deprived of any instructions on the consequences of a deadlock, most jurors will wrongly assume that a failure to agree on sentence would require the case to be retried before a new jury. Especially after a case as lengthy and emotionally exhausting as this one, involving so much testimony by maimed and grieving victims and survivors, such a misapprehension would surely have an extraordinarily coercive on minority jurors to abandon conscientiously-held views merely for the sake of agreement. **Second,** requiring unanimity in order to reject the death penalty is in arguable tension with the express statutory (and constitutional) requirement that jurors not be required to render unanimous verdicts on the existence of mitigating factors. 18 U.S.C. § 3593(c) ("[a] finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established."); *accord*, *Mills v. Maryland*, 486 U.S. 367 (1988); *McKoy v. North Carolina*, 494 U.S. 433, 439-443 (1990). Requiring jurors who have arrived at substantially different conclusions regarding mitigating factors to nevertheless achieve unanimity before they can return a life sentence may unduly pressure them to harmonize their findings regarding mitigating factors in a manner that neither the FDPA nor the Eighth Amendment permits. And

4

**third**, failing to provide accurate instructions on the effect of nonunanimity on the issue of sentence will require a series of additional instructions to ensure that the jury is not prejudicially misled.  Such instructions would include:

- a caution that jurors should not attempt to harmonize their individual findings concerning mitigating factors simply to justify or permit a unanimous sentencing decision;

- an assurance that lack of unanimous agreement on either life imprisonment *or* death will neither require or permit imposition of any *lesser* sentence than life imprisonment without release, and thereby lead to the defendant's eventual release, *see People v. LaValle,* 3 N.Y.3d 88, 817 N.E.2d 341, 783 N.Y.S.2d 485 (2004) (finding New York's post-*Gregg* death penalty statute unconstitutional on this ground); and

- a further assurance that any failure to agree on sentence will have no effect upon the validity of the defendant's underlying *convictions*.

But the Court would do best to avoid the necessity for most of these additional safeguards by simply telling the jury the truth to start with: unless all 12 jurors vote for death, the defendant must and will receive the alternative sentence of life imprisonment without release.

## Conclusion

For all of these reasons, the defendant submits that this Court should provide accurate and non-misleading information concerning the effect of an inability to reach a unanimous sentencing decision.

                                       Respectfully submitted,

                                       DZHOKHAR TSARNAEV
                                       by his attorneys

                                       s/ *David I. Bruck*

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Judy Clarke, Esq. (CA Bar # 76071)
CLARKE & RICE, APC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484
JUDYCLARKE@JCSRLAW.NET

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 12, 2015.

<u>s/</u>     <u>David I. Bruck</u>