UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF REQUESTED INSTRUCTION THAT DEMEANOR OF NON-WITNESSES IS NOT EVIDENCE**

Among the nonstatutory aggravating factors alleged as justifying a death sentence in this case is that "Dzhokhar Tsarnaev demonstrated a lack of remorse." As explained in his Motion to Admit Testimony of Sister Helen Prejean, DE____ (May 8, 2015), the supposed factual basis and temporal reach of this allegation have greatly expanded since the government first levelled it in its Notice of Intent to Seek the Death Penalty on January 30, 2014. DE 167 at 7. What appeared to refer to the defendant's inscriptions in the boat where he was arrested on April 19, 2013, has now grown to include a momentary, ambiguous gesture in a courthouse holding cell nearly three months later, and most recently, to the defendant's present mental state as he sat silently in court during the prosecution's opening statement on April 21, 2015. As summarized in the defendant's memorandum regarding the proposed testimony of Sr. Helen Prejean, the prosecution's opening statement included a claim that the evidence "will tell you that Dzhokhar Tsarnaev was *and is* unrepentant, uncaring, and untouched by the havoc and the sorrow that he has created." Tr. 4/21/13 (opening statement) at 13 (emphasis added). *See also id*. at 11 ["H]e simply *is callous and indifferent to human life*" ) (emphasis

added); *id.* at 17 (arguing that he "remains the unrepentant killer that he is"); *id.* ("And for Dzhokhar Tsarnaev, his decisions and his actions and his beliefs made up who he was *and who he is.*") (emphasis added).

Since the defendant has not testified, the evidentiary basis of the government's claim to have proven that he *presently* lacks remorse is unclear. With both sides now having presented their cases within the evidentiary rules applicable to capital sentencing hearings, the question properly becomes the jury's to resolve.

Against this highly charged backdrop, the need for unambiguous and precise instructions as to what the jury may properly consider as evidence in deciding the question of the defendant's alleged lack of remorse has become clear. Given the highly emotional nature of the Government's testimony and exhibits, and its inflammatory claims regarding the defendant's *present* mental state made in the opening statement, this issue presents special dangers that the jury's sentencing deliberations may center on ambiguous aspects of his courtroom demeanor as he sits silently at counsel table, and in this way become infected by "passion, prejudice, or . . . other arbitrary factor[s]" in violation of 18 U.S. Code § 3595(c)(2)(A) and the Fifth and Eighth Amendments. For this reason, the jurors needs to be clearly instructed that they may only consider the evidence presented to them by the Government and the defense, and that they may not consider legally irrelevant matters such as Mr. Tsarnaev's courtroom demeanor and non-testimonial conduct. *See Borodine v. Douzanis*, 592 F.2d 1202, 1210-2011 (1st Cir. 1979) (prosecutor's comments "on the defendant's expressionless courtroom demeanor

. . . were improper in the sense of being irrelevant (a defendant's 'courtroom behavior off the stand is (not) in any sense legally relevant to the question of his guilt or innocence of the crime charged')"); *accord United States v. Shuler,* 813 F.2d 978 (9th Cir. 1987) (holding, *inter alia,* that "in the absence of a curative instruction . . . a prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of the due process . . . right not to be convicted except on the basis of evidence adduced at trial.").

Instructing the jury that it may only consider as evidence the demeanor and conduct of witnesses who have testified through the legal process, and not the demeanor and conduct of non-witnesses (such as the defendant, counsel, courtroom spectators and the Court) comports with basic principles of relevance. In the context of a capital penalty phase, however, failure to ensure that the jury is properly instructed on those basic principles carries special constitutional peril. The peril arises not only because a non-testifying defendant's demeanor and conduct during the trial is not legally relevant, but because without such an instruction there arises a constitutionally unacceptable risk that the jury will use highly unreliable evidence in an arbitrary and capricious manner.

Not surprisingly, research on capital jury decision-making has shown that jurors who perceive a defendant as remorseless are far more likely to impose a death sentence, and if not instructed otherwise, are likely to use the defendant's in-court demeanor as evidence of his remorselessness. See, Scott E. Sundby, *The Capital Jury and Absolution*, 83 CORNELL L. REV. 1557, 1563 (1998). While a jury's use of non-witnesses' demeanor as evidence is a Due Process violation in and of itself, *Borodine v. Douzanis*, supra; *United States v. Shuler,* supra, in the death penalty context it also rises to an Eighth

Amendment violation because a jury's use of demeanor is inherently unreliable and opens a pathway to invidious discrimination. As one scholar recently concluded after an exhaustive review of the literature:

> People are far less adept at evaluating demeanor than they believe, and than the legal system assumes them to be.[1] This problem is greatly exacerbated by empathic divides in situations where demeanor must be evaluated across cultural,[2] ethnic[3] or racial lines,[4] or where juvenile[5] or mentally impaired defendants[6] are being judged.

Susan Bandes, *Remorse and Demeanor in the Courtroom: Cognitive Science and the Value of Contrition* 18 (forthcoming 2015) (manuscript attached) (footnotes are citations within manuscript excerpt).

---

[1] Olin Guy Wellborn III, *Demeanor*, 76 CORNELL L. REV. 1075 (1990). Jeremy A. Blumenthal, *A Wipe of the Hands, A Lick of the Lips: The Validity of Demeanor Evidence in Assessing Witness Credibility*, 72 Neb. L. Rev. 1157(1993).

[2] Martha Grace Duncan, *So Young and So Untender: Remorseless Children and the Expectations of the Law*, 102 COLUMBIA L. REV. 1469 (2002).

[3] Ronald S. Everett & Barbara C. Nienstedt, *Race, Remorse, and Sentence Reduction: Is Saying You're Sorry Enough?* 16 JUST. Q. 99, 118 (1999).

[4] Sheri Lynn Johnson, *The Color of Truth: Race and the Assessment of Credibility*, 1 MICH. J. OF RACE & L. 261 (1996); Joseph W. Rand, *The Demeanor Gap: Race, Lie Detection, and the Jury,* 33 CONN. L. REV. 1 (2000); Joseph W. Rand, *The Demeanor Gap: Race, Lie Detection, and the Jury,* 33 CONN. L. REV. 1 (2000); Georgina Stobbs & Mark Rhys Kebbell, *Jurors' Perception of Witnesses with Intellectual Disabilities and the Influence of Expert Evidence*, 16 J. APPLIED RES. INTELL. DISABILITIES 107 (2003) (finding that mock jurors found such witnesses to be honest but not reliable and that expert testimony can help ameliorate prejudicial assumptions).

[5] Martha Grace Duncan, *So Young and So Untender: Remorseless Children and the Expectations of the Law*, 102 COLUMBIA L. REV. 1469 (2002).

[6] Zhong, Baranoski, Feigenson *et al*, *So You're Sorry? The Role of Remorse in Criminal Law* 36 (Pending Publication on File at J. OF THE AM. ACAD. OF PSYCHIATRY & L.) (qualitative study based on interviews with sitting judges).

A number of the identified factors (cultural, ethnic and age-related) are especially relevant to this case. The danger that discrimination will occur is especially grave where the jurors are trying to assess the demeanor of a defendant from a different ethnicity or culture, as will be the case with Mr. Tsarnaev. With respect to the closely analogous category of race, the Capital Jury Project found that:

> Observing the same defendant and interpreting the same mitigating evidence, black jurors saw a disadvantaged upbringing, remorse, and sincerity, while white jurors saw incorrigibility, a lack of emotion, and deceptive behavior. They discovered that where a white juror sees black witnesses as faking or putting on, a black juror sees them as sincere. Where a white female juror interprets the black defendant's demeanor as hard and cold, a black male juror sees him as sorry.

William J. Bowers, Benjamin D. Steiner & Marla Sandys, *Death Sentencing in Black and White: An Empirical Analysis of the Role of Jurors' Race and Jury Racial Composition*, 3 U. PA. J. CONST. L. 171, 257-58 (2001). The very small number of cases involving Muslim, Russian-speaking or immigrant defendants precludes similar analyses of how members of such groups are perceived. But studies based on race-linked differences in juror perception of demeanor supports the inference that permitting jurors to consider a non-testifying defendant's demeanor as evidence risks contaminating the jury's assessment of the defendant's remorse with unfounded speculation, unreliability, and bias.

## CONCLUSION

Given reliance on a non-testifying defendant's in-courtroom demeanor to divine the presence or absence of remorse is unacceptably unreliable and speculative, invites the jury to base its sentencing decision on factors other than the evidence presented in court,

and opens a pathway through which bias is likely to infect the jury's deliberations, the defense requests that the Court give his Requested Penalty Phase Instruction No. 5 to make clear that the conduct or demeanor of non-witnesses is not evidence.

    Respectfully submitted,

    DZHOKHAR TSARNAEV
    By his attorneys

    */s David I. Bruck*

    Judy Clarke, Esq. (CA Bar # 76071)
    CLARKE & RICE, APC
    1010 Second Avenue, Suite 1800
    San Diego, CA 92101
    (619) 308-8484
    JUDYCLARKE@JCSRLAW.NET

    David I. Bruck, Esq.
    220 Sydney Lewis Hall
    Lexington, VA 24450
    (540) 460-8188
    BRUCKD@WLU.EDU

    Miriam Conrad, Esq. (BBO # 550223)
    Timothy Watkins, Esq. (BBO # 567992)
    William Fick, Esq. (BBO # 650562)
    FEDERAL PUBLIC DEFENDER OFFICE
    51 Sleeper Street, 5th Floor
    (617) 223-8061
    MIRIAM_CONRAD@FD.ORG
    TIMOTHY_WATKINS@FD.ORG
    WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 12, 2015.

/s *David I. Bruck*