UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) Crim. No.13-10200-GAO ) ) |
| DZHOKHAR A. TSARNAEV, Defendant | ) ) |

## GOVERNMENT'S MOTION IN LIMINE
## TO EXCLUDE THE TESTIMONY OF SISTER HELEN PREJEAN

The United States, by and through undersigned counsel, respectfully submits this Motion in Limine to exclude the testimony of Sister Helen Prejean, who proposes to testify that Tsarnaev is remorseful and has the capacity for redemption. Sister Prejean is a celebrity anti-death penalty crusader with no expertise on any issue relevant to sentencing.  Her testimony is simply a thinly disguised way for Tsarnaev to offer statements of remorse without having to make them under oath, submit to cross-examination, and allow the jurors to gauge his sincerity for themselves.  It is also an impermissible attempt to bolster his own credibility by expressing his purported remorse through the testimony of a celebrity and a nun. Because Tsarnaev did not put Sister Prejean's name on his witness list, the jurors were not asked if they know her or are aware of her anti-death penalty views; yet because she is a celebrity and was the subject of a major motion picture ("Dead Man Walking"), it is likely that one or more of the jurors will recognize her.

1

Finally Tsarnaev's notice of his intent to call her – made nearly eight months after the deadline for noticing expert witnesses and four months past the deadline for noticing non-expert witnesses – has made it impossible the government to prepare an effective rebuttal.

## ARGUMENT

On April 22, 2015, Tsarnaev notified the government of its intent to call Sister Helen Prejean as an expert witness. The disclosure came nearly eight months past the deadline for identifying expert witnesses, providing a written summary of their opinions (and the bases and reasons for those opinions), and the witness's qualifications to offer them. It also came nearly four months past the final deadline for providing notice of the identity of non-expert witness. The entire expert disclosure for Sister Prejean consisted of the following three sentences:

> We write to add Sister Helen Prejean to our witness list. She will be offered to rebut the government's allegation that Mr. Tsarnaev is "unrepentant, uncaring and unchanged." She will testify to her observations of Mr. Tsarnaev that tend to rebut the government's characterization, and regarding his prospects for change.

The disclosure did not summarize the witness's testimony; it did not disclose the bases or reasons for Sister Prejean's belief that Tsarnaev is remorseful; and it did not disclose her qualifications to offer that opinion.

In an informal conversation in Court two days ago, defense counsel informed government counsel that Sister Prejean has spoken to Tsarnaev about

2

faith and other matters, and that, based on her years of experience ministering to death row inmates, she believes he is "remorseful and capable of redemption."

Sister Helen Prejean is a Catholic nun and a vocal death penalty abolitionist. She wrote a book entitled "Dead Man Walking," which was later made into a popular motion picture that was nominated for four Academy Awards. On the strength of the book and movie's success, Sister Prejean has launched a second career as a celebrity anti-death penalty crusader. She is a constant presence in the media, at conferences, and on the lecture circuit. She served as National Chairperson of the National Coalition to Abolish the Death Penalty from 1993 to 1995 and has helped launch other abolitionist groups and campaigns. Her second book, "The Death of Innocents: An Eyewitness Account of Wrongful Executions," was published in December 2004. It tells the story of the execution of two men whom Sister Prejean has concluded were innocent.

> A. The testimony should be excluded because Sister Prejean is not qualified to opine about Tsarnaev's remorsefulness or capacity for redemption.

There is no such thing as an expert on remorsefulness or capacity for redemption. Sister Prejean is not a penology expert, a mental health expert or a social scientist of any stripe. She lacks any specialized training or education that would touch on any appropriate penalty phase issue. She has no better ability to judge Tsarnaev's remorsefulness or capacity for redemption than the jurors themselves. Even assuming Sister Prejean has extensive experience counseling

3

other death penalty inmates (the government cannot say because neither her qualifications nor the bases and reasons for her opinion have been disclosed), that does not make her an expert. Tsarnaev has not shown, and cannot show, that Sister Prejean's knowledge will aid the jurors, that her proposed testimony is based on sufficient facts or data, that the testimony is the product of reliable principles and methods, and that she has reliably applied the principles and methods to the facts of this case. See Fed. R. Evid. 702. Absent such a showing, the evidence is unreliable and is far more likely to mislead the jury, confuse the issues, and waste their time than it is to help them make a fair and impartial sentencing recommendation.

Mitigation "is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." United States v. Gabrion, 719 F.3d 511, 522 (6th Cir. 2013) (en banc). It also does not authorize the introduction of unreliable evidence. In keeping with these principles, the Fourth Circuit has affirmed the exclusion of speculative opinions concerning a defendant's prospects in prison. United States v. Lighty, 616 F.3d 321, 364 (4th Cir. 2010). The defendant in that case proposed to call an experienced prison inmate to testify that the defendant could have a positive influence on others while in custody. The Fourth Circuit held that the testimony was properly excluded as

calling "for no more than rank speculation." Id. Sister Prejean's proposed testimony should be excluded on the same grounds.

> B. If Sister Prejean is not being offered as an expert, then her testimony should be excluded as thinly disguised unsworn allocution evidence

If Sister Prejean is not an expert with specialized knowledge – if she is just offering a lay opinion -- then her testimony should be excluded as thinly disguised unsworn allocution testimony. To accept Sister Prejean's opinions, the jury will necessarily have to infer that the defendant made statements of remorse to her, that she believes them, and that because she believes them, the jury should believe them also. That is plainly improper. If the defendant wishes to convince the jury of his remorsefulness and capacity for redemption by making statements, he should make them on the witness stand so that he can be sworn, cross-examined, and the jury can gauge his sincerity for themselves.

An allocution is "[a]n unsworn statement . . . in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." United States v. Jackson, 549 F.3d 963, 980 n. 22 (5th Cir. 2008). Every circuit to consider the question has held that defendants have no right to allocute before the jury in capital sentencing hearings. See United States v. Hall, 152 F.3d 381, 391-97 (5th Cir. 1998), *abrogated on other ground,* United States v. Martinez-Salazar, 528 U.S. 304 (2000); United States v. Barnette, 211 F.3d 803, 820 (4th Cir. 2000); United States v. Purkey, 428

F.3d 738, 761 (8th Cir. 2005).  Capital defendants also have no right to the functional equivalent of allocution in the penalty phase.  See Lighty, 616 F.3d at 365 (referring to a proffered letter of remorse as an attempted "end-run around this court's precedent holding that a defendant does not have a . . . right to allocution").

The need for testimony to be given under oath and subject to cross-examination is at its zenith when it comes to statements of remorse.  Remorse can be a critical factor in a jury's sentencing decision; yet in deciding whether a defendant sincerely feels it, the jurors generally have to take the defendant's word for it.  At a minimum, the jurors should be able to hear those words from the defendant's own mouth in order to judge their sincerity.   The Pennsylvania Supreme Court, noting that "[a] capital defendant has motive to deceive when declaring his remorse," has upheld the exclusion of unsworn letters of remorse to friends and family.  Com. v. Johnson, 107 A.3d 52, 84-85 (Pa. 2014).  Sister Prejean's testimony is like an unsworn letter of remorse and should likewise be excluded.

    C. Sister Prejean's celebrity and clerical status make her testimony more prejudicial than probative.

Even assuming for the sake of argument that Sister Prejean's proposed testimony is relevant and passes the minimum reliability threshold, it should still be excluded because her celebrity and clerical status virtually ensure that her testimony will confuse the issues and mislead the jury.  There are 49,000 nuns in

the United States, See Center for Applied Research in the Apostolate, Special Report, fall 2014 at 2, yet Tsarnaev has chosen an internationally famous death penalty abolitionist who was the subject of a major motion picture to testify in this case. There is a substantial likelihood that one or more jurors – none of whom were asked if they know her -- will recognize her and give her views undue weight because she is a celebrity. In addition, her clerical status will imbue Tsarnaev's purported feelings of remorse with undeserved credibility. Cf. United States v. Kinsella, 622 F.3d 75, 84 n.1 (1st Cir. 2010) (noting the court could not "expect that witnesses will possess the credibility of people of the cloth, such as . . . nuns"). Finally, her vehement anti-death penalty views have no place in the courtroom, yet would need to be brought to the jury's attention in order to demonstrate her bias.

> D. Tsarnaev's late notice has deprived the government of a fair opportunity to rebut the proposed testimony.

Had the government received timely notice of this proposed testimony, it could have taken many steps to prepare to rebut it. For example, the government could have sought to identify a witness to testify that Sister Prejean has been fooled before. It could also have sought to identify its own "expert" on remorse and capacity for redemption and sought a ruling enabling that expert to speak to the defendant and offer a second opinion on whether his remorse is genuine and whole-hearted. As the government argued numerous times in pleadings filed

7

during the course of this case, notice received in the middle of the penalty phase is not adequate notice, because the demands of litigating the penalty phase preclude that kind of investigation.

    E. **Sister Prejean's testimony will open the door to the use of Tsarnaev's statements at Beth Israel Hospital to impeach her.**

Sister Prejean is not the only person Tsarnaev has spoken to since his arrest; he also made statements to two FBI agents at Beth Israel Hospital in which he expressed the opposite of remorse. If Sister Prejean testifies, the government should, at a minimum, be permitted to confront her with those statements so the jury can determine whether she is someone who simply accepts any prisoner statements that conform to her abolitionist beliefs and rejects those that do not.

## CONCLUSION

Based on the foregoing, the government respectfully urges this Court to exclude the testimony of Sister Helen Prejean.

                                    Respectfully submitted,

                                    CARMEN M. ORTIZ
                                    United States Attorney

By:    /s/ William D. Weinreb
        WILLIAM D. WEINREB
        ALOKE S. CHAKRAVARTY
        NADINE PELLEGRINI
        Assistant U.S. Attorneys
        STEVEN D. MELLIN
        Trial Attorney
        Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on May 6, 2015.

                                              */s/ William D. Weinreb*
                                              STEVEN D. MELLIN