UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | (UNDER SEAL) |
| Defendant | ) | |

GOVERNMENT'S REPLY TO DEFENDANT'S
OPPOSITION TO ITS MOTION IN LIMINE
TO EXCLUDE THE TESTIMONY OF SISTER HELEN PREJEAN

The United States, by and through undersigned counsel, respectfully files this reply to Tsarnaev's "Motion to Admit Testimony of Sister Helen Prejean." Although captioned a "Motion to Admit," Tsarnaev's pleading is in fact an opposition to the government's motion in limine, and it should be treated as such. The Court's directions to the parties plainly contemplated that the defense would respond to the government's motion by noon on Friday, the government would reply by 5:00 p.m. on Saturday, and that would complete the briefing of this issue.

A. Sister Prejean's testimony should be excluded in its entirety because she was not included on Tsarnaev's witness list, precluding necessary voir dire.

Tsarnaev's failure to include Sister Prejean on his witness list should preclude her from testifying, because there is a reasonable likelihood that one or more jurors will not be able to judge her testimony fairly and impartially. She is a Catholic nun, and many of the jurors are Catholic. Remorse and the capacity for

redemption are central concepts in the Catholic religion. Some jurors may believe that nuns have special expertise and insight in this area. Because Tsarnaev's late notice made it impossible to voir dire the jurors about these issues, Tsarnaev should be precluded from choosing a nun over all other possible non-clerical witnesses to provide an opinion about his remorsefulness.

The problem is compounded in this case because of Sister Prejean's celebrity. "Dead Man Walking" is the story of how Sister Prejean alone was able to detect remorse in a convicted murderer whom others believed was beyond redemption. It depicts her as a brave, compassionate, self-sacrificing hero with extraordinary insight into the human soul. The hardcover version of "Dead Man Walking" spent 31 weeks at the top of the New York Times bestseller list. It is still a popular book and is frequently taught in high schools and colleges. It was made into a major motion picture that earned four Academy Award nominations, and it was turned into a stage play and an opera. It turned Sister Prejean into an international anti-death penalty celebrity who travels the world speaking out against the death penalty. There is a reasonable likelihood that one or more of the jurors will recognize Sister Prejean's name and will judge her testimony at least in part on the basis of a fictional depiction of her. Tsarnaev could have picked anyone in the world to offer a lay opinion of Tsarnaev's remorsefulness; he should

not be permitted to pick Sister Prejean when it is now too late to voir dire the jurors about her.

In sum, Tsarnaev can offer no compelling reason why Sister Prejean should be allowed to testify despite his failure to include her on his witness list. The need to voir dire the jurors about Sister Prejean is obvious and compelling, while the need to call her – as opposed to someone else – to testify about Tsarnaev's remorsefulness is neither obvious nor compelling. The Court should bar her testimony on this ground alone.

> B. In the alternative, the Court should limit Sister Prejean's testimony to a lay opinion about Tsarnaev's remorsefulness.

If the Court permits Sister Prejean to testify despite Tsarnaev's failure to include her on his witness list, it should limit her to testifying that she became a Catholic nun in 1957 and has, among other duties, ministered to convicted murderers since 1982; that she met with Tsarnaev five times over the past sixty days for a total of five hours in order to minister to him; that they discussed many matters, including religion, spirituality, Tsarnaev's crimes, and the effects of the crimes on the victims; and that, in her opinion, Tsarnaev is sincerely remorseful.

Tsarnaev should be precluded from eliciting: the nature and history of Sister Prejean's work with other convicted murders (proffer ¶¶ 3, 4, and 5); that defense counsel engaged her to help Tsarnaev "continue to process the pain and grief he has caused" (proffer ¶ 6, first sentence); that she and Tsarnaev discussed "the pain,

grief, loss and sorrow that he has caused," along with his "regret" (proffer ¶ 7); that she "sees in Dzhokhar an awareness of the pain and anguish that he has caused," or anything he specifically told her (proffer ¶ 9); that she believes Tsarnaev "will painfully remember and relive his actions and the harm he caused for the rest of his life" or the bases for that belief (proffer ¶ 9); that she believes Tsarnaev is "a very young man with the potential to grow and mature, and to continue to grasp and face up to the harm he has caused (proffer ¶ 10); or that "[if] she is allowed to do so, she would visit him in the years ahead, and accompany him on his way" (proffer ¶ 10).

1. Experience testimony

Because Sister Prejean is offering lay opinion testimony it is important that the jury not mistake her for an expert. Federal Rule of Evidence 701(c) states that a lay witness's opinion testimony must "not [be] based on . . . specialized knowledge." Sister Prejean is not an expert on remorse, potential for moral growth, or whether a person "will painfully remember and relive their actions," nor is she being offered as one. Yet paragraphs 3, 4, and 5 of the proffer suggest that she has specialized knowledge in those areas because of her years of experience working with other convicted murderers. To permit Sister Prejean to testify about her work with other prisoners, and expressly or implicitly invite the jury to compare Tsarnaev to other prisoners she has worked with, would mislead

the jury and confuse the issues. See 18 U.S.C. § 3593. The Court should therefore preclude the testimony in paragraphs 3, 4, and 5 of the proffer.

   2. Testimony about defense counsel's observations and beliefs

According to the first sentence of paragraph 6 of the proffer, Sister Prejean will testify that defense counsel "asked her to meet with Dzhokhar, in the hope that she would be able to help him continue to process the pain and grief he has caused." That testimony should be precluded because it essentially permits defense counsel to testify through Sister Prejean that Tsarnaev had already been "process[ing]" the pain and grief he caused even before Sister Prejean met him. Defense counsel should not be witnesses in this case, and their own observations and opinions about Tsarnaev should not be admissible as evidence.

   3. Unsworn allocution in disguise

The Court should preclude Sister Prejean from testifying about the content of her conversations with Tsarnaev except at the highest level of generality, and it should preclude from her from essentially giving voice to his purported out-of-court statements about regret, remorse, and the victims' pain and suffering. Because Tsarnaev's purported statements about regret, remorse, and the victims' pain and suffering cannot be cross-examined if they are voiced by Sister Prejean, they are unreliable and likely to mislead the jury and confuse the issues. The Court has already ruled that 18 U.S.C. § 3593 precludes hearsay from available witnesses

in part because the probative value of such hearsay is vastly diminished when first-hand testimony is available. The same ruling should apply here.

Sister Prejean can effectively convey the basis for her lay opinion by stating *the topics* of her conversations with Tsarnaev – e.g., religion, spirituality, remorse, the victims' pain and suffering – and then opine that based on those conversations and her observations of Tsarnaev, he is sincerely remorseful. To allow her also to repeat, indicate, suggest, or imply the substance of what he actually said to her would be to permit unnecessary hearsay with a vast potential to mislead the jury – something 18 U.S.C. § 3593 counsels against. One question on direct examination about the topics of Sister Prejean's conversations with Tsarnaev, followed by an answer that hews to the "topics only" requirement, will suffice to inform the jury about the basis for Sister Prejean's opinion without exposing the jury to potentially explosive, unreliable hearsay.

4. Opinion testimony that no layperson is qualified to give.

The Court should preclude Sister Prejean from offering opinion testimony that no layperson is qualified is give. Specifically, Sister Prejean should be precluded from testifying:

- that she "sees in Dzhokhar an awareness of the pain and anguish that he has caused;"

- that he "will painfully remember and relive his actions and the harm he caused for the rest of his life;"

6

- that he is "a very young man with the potential to grow and mature, and to continue to grasp and face up to the harm that he has caused."

(Proffer ¶¶ 9-10). These statements are speculative and argumentative. They are not "rationally based on the witness's perception," FRE 701(a), nor "helpful," FRE 701(b), and therefore not admissible lay opinions. And Sister Prejean has no special expertise, information, or insight that would enable her to render these opinions.

5. Testimony about Sister Prejean's desire to continue meeting with Tsarnaev.

Finally, Sister Prejean should not be permitted to testify that, "[if] she is allowed to do so, she would visit [Tsarnaev] in the years ahead, and accompany him on his way." (Proffer ¶ 10). This testimony obviously has nothing to do with Tsarnaev's character and is therefore irrelevant. And the desires of a 76 year-old nun to visit Tsarnaev "in the years ahead" and to "accompany him on his way" are too vague to satisfy the reliability standards of 18 U.S.C. § 3593

WHEREFORE, the government respectfully requests that the Court preclude or appropriately limit the testimony of Sister Helen Prejean as set forth in this reply.

7

                    Respectfully submitted,

                    CARMEN M. ORTIZ
                    UNITED STATES ATTORNEY

By:   /s/ Aloke Chakravarty
       WILLIAM D. WEINREB
       ALOKE S. CHAKRAVARTY
       NADINE PELLEGRINI
       Assistant U.S. Attorneys
       STEVE MELLIN
       Trial Attorney, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on May 9, 2015.

                                      */s/ William Weinreb*