UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>DZHOKHAR A. TSARNAEV,<br>Defendant. | CRIMINAL ACTION<br>NO. 1:13-cr-10200-GAO |

## MEMORANDUM OF BOSTON GLOBE MEDIA PARTNERS, LLC IN SUPPORT OF MOTION FOR ACCESS TO JURY LIST

Boston Globe Media Partners, LLC (the "Globe") submits this memorandum in support of its motion for public access to the jury list in this case. As shown below, the public has a right of access to the jury list (including the jurors' names and addresses) under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1863, et seq. and the District of Massachusetts Plan for Random Selection of Jurors, § 10(a). See In re Globe Newspaper Co., 920 F.2d 88 (1st Cir. 1990). The public also has a commensurate right of access to the jury list under the First Amendment. See generally Press–Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (constitutional right of access to transcript of jury voir dire).

The Globe recognizes that district courts in this district have briefly delayed post–verdict access to jury lists in order to provide jurors with an opportunity to reflect on their experience and to resume their normal activities before their identities become public. See United States v. Sampson, 297 F. Supp. 2d 348, 349 (D. Mass. 2003) (releasing jury list in Federal Death Penalty Act prosecution seven days after verdict). See generally United States v. Doherty, 675 F. Supp. 719 (D.

Mass. 1987) (postponing access to jury list for one week to protect juror privacy); United States v. Butt, 753 F. Supp. 44 (D. Mass. 1990) (postponing disclosure for seven days); Sullivan v. Nat'l Football League, 839 F. Supp. 6, 7 (D. Mass. 1993) (postponing disclosure for ten days).   The Globe respectfully submits that the twenty−eight days that have elapsed since the verdict was reached in this case strikes the appropriate  balance between the "the personal and privacy interests of the jurors" and the "significant public interest" in a "Federal Death Penalty Act prosecution reached in a state whose laws do not provide for capital punishment." Sampson, 297 F. Supp.2d at 349.

## ARGUMENT

**A.**     **The Press and the Public Have a Right of Access to the Jurors' Names and Addresses Under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1863, et seq. and the District of Massachusetts Plan for Random Selection of Jurors, § 10(c).**

The Jury Selection and Service Act of 1968, 28 U.S.C. § 1863, et seq., (the "Act") requires each District to adopt a jury selection plan.  Section 1863(b)(7) of the Act requires that each plan "fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public. If the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case **where the interests of justice so require**."  (Emphasis added).

The District of Massachusetts Plan for Random Selection of Jurors (the "Plan") implements the Act in this District.  Section 10(a) of the Plan provides:

> No person shall make public or disclose to any person not employed by this Court the names drawn from the Master Jury Wheel until the jurors have been summoned and have appeared, or failed to appear, in response to the summons. **Any judge of this Court may order that the**

**names of jurors remain confidential thereafter if the interests of justice so require.** (Emphasis added).

Applying the interests of justice standard of the Act and the Plan, the <u>Globe</u> Court reversed a district court's decision denying public access to the names and addresses of jurors after a verdict had returned. 920 F.2d at 91. The district court's ruling was based on (1) the personal preferences of the jurors and (2) the court's concern that juror interviews would (a) disclose the contents of juror deliberations, (b) demean the administration of justice in the public's view, and (c) inhibit present and prospective jurors from frank discussion for fear of subsequent public disclosure. <u>Id.</u> at 90 n.1.

The <u>Globe</u> Court identified several substantial benefits resulting from public access to jurors' names and addresses:

> "Knowledge of juror identities allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system."

> "It is possible, for example, that suspicions might arise in a particular trial (or in a series of trials) that jurors were selected from only a narrow social group, or from persons with certain political affiliations, or from persons associated with organized crime groups. It would be more difficult to inquire into such matters, and those suspicions would seem in any event more real to the public, if names and addresses were kept secret."

> "Furthermore, information about jurors, obtained from the jurors themselves or otherwise, serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it. … Juror bias or confusion might be uncovered, and jurors' understanding and response to judicial proceedings could be investigated."

> "Public knowledge of juror identities could also deter intentional misrepresentation at voir dire."

920 F.2d at 94. <u>See</u> <u>generally</u> <u>Commonwealth</u> v. <u>Fujita</u>, 470 Mass. 484, 490, 23 N.E.3d 882, 888 (2015) ("Access to information about the operation of the

administration of justice, including information about jurors who render justice, promotes confidence in the judicial system by, among other things, providing an independent nongovernmental verification of the impartiality of the jury process, and educating the public as to their duties and obligations should they be called for jury service.").

Given the benefits of public access to juror identities, the governing "interests of justice" standard mandates that "withholding should occur only in an exceptional case" and requires trial courts to find "specific and convincing reasons why, in the particular case, the juror identities are required to be withheld." 920 F.2d at 93.  To justify impoundment under the interests of justice standard after a trial has ended, moreover, requires the court to "find a significant threat to the judicial process itself."   920 F.2d at 91.   "Such circumstances include a credible threat of jury tampering, a risk of personal harm to individual jurors, and other evils affecting the administration of justice, but do not include the mere personal preferences or views of the judge or jurors."  920 F.2d at 97.

The Globe Court recognized that withholding the names of jurors after the trial has terminated "involves a clash of constitutionally protected interests."  Id. "On the one hand, impounding juror names implicates the press's First Amendment right of access to criminal trials.  [Citations omitted].  On the other hand, disclosure may implicate the defendant's Sixth Amendment right to a fair trial [or the jurors'] interest in having their privacy protected."  Id.  For example, the Court addressed concerns that, in publicized cases, jurors would be "forced to run a press gauntlet and have their identities exposed to a public which they might fear will contain a few vengeful or unbalanced persons."  920 F.2d at 97. Here too, the presumption remained in favor of public access, with exceptions warranted only when justified by findings of a significant threat to the judicial process:

> [F]irst, jurors may avoid many problems by flatly refusing press interviews when approached.  Second, while privacy concerns following a publicized trial are real – and may understandably include some nervousness about personal security – these unfocused fears must be balanced against the loss of public confidence in our justice system that could arise if criminal juries very often consisted of anonymous persons. …   Jurors may be citizen soldiers, but they are soldiers nonetheless, and like soldiers of any sort, they may be asked to perform distasteful duties.  Their participation in publicized trial may sometimes force them into the limelight against their wishes.   We cannot accept the mere generalized privacy concerns of jurors, no matter how sincerely felt, as a sufficient reason for withholding their identities under the interests of justice standard.

920 F.2d at 97-98.

The reasoning and holding of the <u>Globe</u> Court compel the conclusion that there are no "specific, valid reasons necessitating confidentiality in [this] particular case."   920 F.2d at 91.   All of the benefits of public access to juror identities identified by the <u>Globe</u> Court are present in a case such as this one involving horrific crimes and a death penalty verdict. As the Supreme Judicial Court recently observed, "[i]t is beyond debate that, absent extraordinary circumstances, the identities of jurors empanelled to serve at criminal trials are presumptively public under long-standing Massachusetts law, practice, and tradition, even in high–profile and contentious cases." <u>Fujita</u>, 470 Mass. at 486 & n.8, 23 N.E.3d at 885 & n.8 (citing, <u>inter</u> <u>alia</u>, prosecutions of the British soldiers charged with the Boston Massacre).

## B.    The Public Has a First Amendment Right of Access to the Jurors' Names and Addresses.

Although <u>Globe</u> did not reach the issue, the court recognized that many of the purposes underlying the public's First Amendment right of access to judicial proceedings "are equally served by access to the identities of the jurors."   920 F.2d at 94.  As the Supreme Court has recognized:

> Underlying the First Amendment right of access to criminal trials is the common understanding that "a main purpose of that Amendment was to protect the free discussion of governmental affairs." By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government. … Thus to the extent that the First Amendment embraces a right of access to criminal trials, it is to ensure that this constitutionally protected "discussion of governmental affairs" is an informed one.

Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604-605 (1982).

Applying this broad constitutional principle, the Supreme Court has recognized that the critical role performed by jurors in our criminal justice system requires that the public have a commensurate right to inform itself about the functioning of the jury system.  Accordingly, in Press−Enterprise I, the Supreme Court held that the First Amendment provides the public with a presumptive right of access to the transcript of the jury voir dire conducted in criminal cases.  Tracing the early history of trial by jury, the Press−Enterprise Court noted that the jury selection process by tradition has been open to the public, that jurors commonly were known to the community, and that such openness serves important public interests.  464 U.S. at 505-508.

> Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.   [Citation omitted]. … [P]ublic proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected.

464 U.S. at 508-509.

Further recognition of the constitutional nature of the public's right to inform itself about the functioning of juries is found in decisions holding that the public has a First Amendment right to conduct post−verdict interviews of jurors.  Journal Publishing Co. v. Mechem, 801 F.2d 1233 (10th Cir. 1986); In re Express News Corp., 695 F.2d 807 (5th Cir. 1982); United States v. Sherman, 581 F.2d 1358 (9th

Cir. 1978).   That constitutional right would be an empty one without a commensurate right to obtain the identities of jurors needed to conduct such interviews.

Accordingly, the same imposing constitutional standard that governs the public's right of access to judicial proceedings and documents applies to the public's right of access to jury lists:

First, "where…the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is [a] necessitated by a compelling governmental interest and [b] narrowly tailored to serve that interest."  Globe, 457 U.S. at 606-07; Press−Enterprise I, 464 U.S. at 509-510.

Second, before public access may be restricted, it must be demonstrated that closure will effectively serve its intended interests.   Globe, 457 U.S. at 610; Press−Enterprise I, 464 U.S. at 510 (1984).   Without such a showing, there is absolutely no assurance that the restriction of First Amendment rights is, in the words of the Supreme Court, "essential to preserve higher values." Press−Enterprise I, 464 U.S. at 510.

Finally, in those "exceptional" circumstances where access to the jury list may be restricted, the justification for doing so must be supported by findings. Richmond Newspapers Inc. v. Virginia, 448 U.S. at 581; Press−Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14 (1986).

For the reasons described in more detail in §A supra, this constitutional standard cannot be met on the facts of this case.   Under these circumstances, the Globe respectfully submits that the First Amendment provides a right of access to the jurors' names and addresses.

CONCLUSION

For the foregoing reasons, the Globe respectfully requests that the Court grant its motion for public access to the jury list in this case.

By its attorneys,


/s/Jonathan M. Albano
Jonathan M. Albano BBO #013850
Emma D. Hall BBO #687947
MORGAN LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110
(617) 951-8000

Dated: June 12, 2015

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 12, 2015.


/s/Jonathan M. Albano
Jonathan M. Albano


DB3/ 200238213.1