UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, also | ) | |
| known as Jahar Tsarni, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

**EXCERPT OF DISPOSITION**

**REMARKS BY THE HON. GEORGE A. O'TOOLE, JR.,
DISTRICT JUDGE**

John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Wednesday, June 24, 2015

Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

1    APPEARANCES:

2        OFFICE OF THE UNITED STATES ATTORNEY
         By: William D. Weinreb, Aloke Chakravarty and
3            Nadine Pellegrini, Assistant U.S. Attorneys
         John Joseph Moakley Federal Courthouse
4        Suite 9200
         Boston, Massachusetts  02210
5        - and -
         UNITED STATES DEPARTMENT OF JUSTICE
6        By: Steven D. Mellin, Assistant U.S. Attorney
         Capital Case Section
7        1331 F Street, N.W.
         Washington, D.C.  20530
8        On Behalf of the Government

9        FEDERAL PUBLIC DEFENDER OFFICE
         By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10           Federal Public Defenders
         51 Sleeper Street
11       Fifth Floor
         Boston, Massachusetts  02210
12       - and -
         CLARKE & RICE, APC
13       By: Judy Clarke, Esq.
         1010 Second Avenue
14       Suite 1800
         San Diego, California  92101
15       - and -
         LAW OFFICE OF DAVID I. BRUCK
16       By: David I. Bruck, Esq.
         220 Sydney Lewis Hall
17       Lexington, Virginia  24450
         On Behalf of the Defendant

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

* * *

1               THE COURT:  First, I want to acknowledge the presence
of a number of the jurors and alternates who participated in
the trial of this case.  They are here at my invitation.  It is
my practice, after a verdict in every criminal trial, to talk
informally with the discharged jurors, principally to thank
them again personally for their service.  It is my habit on
such occasions to invite them to return to attend the
sentencing hearing, and sometimes they do.

Consistent with that practice, I extended a similar
invitation to the jurors in this case to attend.  As you can
see, many of them accepted and are here.  Because so many were
interested and because we have limited public seating in the
courtroom, as a courtesy and as a gesture of respect for their
service, I authorized them to sit in the jury box.  I do want
to emphasize, of course, that they are present now simply as
members of the public.  They are no longer a jury, but a group
of citizens who are here, each in his or her individual
capacity.  Nonetheless, I take this occasion again to thank the
now-former jurors for their exceptional service.

Much of the evidence in this case was hard to hear and
see.  We made great demands on their time and asked them to
insulate themselves from potential extraneous influences in
ways that an ordinary person would find difficult or

1    uncomfortable.  We asked them to make significant changes to

2    their daily routines and to spend a long time away from work

3    and other pursuits.  We also asked them to accept the

4    responsibility to set aside any preconceived ideas, and instead

5    to reason from the evidence presented in this trial to any

6    conclusions and not the other way around.

7         Above all, we asked them, as they acted to perform

8    their high duty, to be utterly fair and impartial in their

9    deliberations.  Their careful verdict satisfies me that they

10   did what they were asked to do.  Theirs was not the only

11   possible verdict, but it is certainly a rational one on the

12   evidence.

13        That they performed their duty so well and faithfully

14   came as no surprise to me.  I've been presiding over jury

15   trials in this state for more than 30 years, and I know how

16   seriously Massachusetts jurors take the responsibilities of

17   jury service.  I had no doubt that we could select a jury for

18   this case that would accept and perform their high duty

19   conscientiously and justly.  The proof is in the pudding.

20        This was an extraordinary case.  Those of us who sat

21   through it from beginning to end saw and heard things we will

22   never forget, both good and bad.  First, we will never forget

23   the victims of these crimes and their individual stories.  We

24   appreciate the presentations made here today.  It takes a good

25   deal of courage to stand up in this setting and to make such

1    intensely personal statements.

2          Today's presentations were relatively brief.  We had a

3    fuller opportunity to see and hear those victims who testified

4    as witnesses during the trial.  Their courage throughout their

5    extended ordeal was exemplary.  We were impressed by their

6    dignity.  What I'll never forget is how, as the tragic events

7    unfolded, one after another victims, who themselves were

8    grievously wounded, worried about someone else:  a spouse, a

9    parent, a child, a friend.  Concern for others was everywhere

10   on display that day, even from people who were themselves

11   experiencing the deepest anguish.

12          We will all remember the heroes.  And there were many.

13   One thing that particularly stands out for me, for example, is

14   that when Boston police officers like Lauren Woods and Tommy

15   Barrett saw people running away from danger, they ran toward

16   it, not knowing what they would encounter.  Days later,

17   Watertown police officers put their lives on the line in the

18   shootout on Laurel Street.

19          But it was not just those who had official duties.

20   After the explosions, people in the crowd immediately responded

21   to help where they could.  How many times did we hear of

22   someone at the scene spontaneously taking off his belt to use

23   it as a makeshift tourniquet for one of the injured, or using a

24   drink to try to douse burning clothing, or simply trying to

25   give comfort to one of the injured?  Nor can we forget the

1    bravery of Dun Meng, whose courageous escape was the beginning

2    of the end for the fugitive brothers.

3         The medical response was similarly heroic, from the

4    EMTs to the nurses and doctors in the medical tents and at the

5    hospitals.  I have two particularly vivid memories from the

6    testimony:  One was EMS Chief Hooley's description of the red,

7    yellow, green triage process at the medical tent, crucial

8    life-or-death decisions being made instantly because they had

9    to be; the other was Dr. Heather Studley's testimony about how

10   she and her team at Mount Auburn literally revived Dic Donohue

11   after what might have been regarded as clinical death.

12        Finally, I commend what appears from this vantage

13   point to have been the meticulous professionalism of the law

14   enforcement post-crime investigation.  I'm sure there were

15   hitches and glitches.  There always are.  But the painstaking

16   collection and analysis of evidence was extraordinary.  If you

17   want a real-life example of looking for a needle in a haystack,

18   how about looking for a knapsack in a landfill?

19        Those are some of the good things I'll remember.  The

20   bad things, however, will be even harder to forget.  I turn to

21   those now as I address the defendant.  One of Shakespeare's

22   characters observes:  "The evil that men do lives after them.

23   The good is oft interred with their bones."  So it will be for

24   Dzhokhar Tsarnaev.

25        Whenever your name is mentioned, what will be

1  remembered is the evil you have done.  No one will remember

2  that your teachers were fond of you.  No one will mention that

3  your friends found you funny and fun to be with.  No one will

4  say you were a talented athlete or that you displayed

5  compassion in being a Best Buddy or that you showed more

6  respect to your women friends than your male peers did.  What

7  will be remembered is that you murdered and maimed innocent

8  people and that you did it willfully and intentionally.  You

9  did it on purpose.

10       You tried to justify it to yourself by redefining what

11  it is to be an innocent person so that you could convince

12  yourself that Martin Richard was not innocent, that Lingzi Lu

13  was not innocent, and the same for Krystle Campbell and Sean

14  Collier and, therefore, they could be, should be killed.  It

15  was a monstrous self-deception.  To accomplish it, you had to

16  redefine yourself as well.  You had to forget your own

17  humanity, the common humanity that you shared with your brother

18  Martin and your sister Lingzi.

19       It appears that you and your brother both did so under

20  the influence of the preaching of Anwar al-Awlaki and others

21  like him.  It is tragic, for your victims and now for you, that

22  you succumbed to that diabolical siren song.  Such men are not

23  leaders but misleaders.  They induced you not to a path to

24  glory but to a judgment of condemnation.

25       In Verdi's opera Otello, the evil Iago tries to

1    justify his malice.  "Credo in un Dio crudel," he sings.  "I

2    believe in a cruel god."  Surely someone who believes that God

3    smiles on and rewards the deliberate killing and maiming of

4    innocents believes in a cruel god.  That is not, it cannot be,

5    the god of Islam.  Anyone who has been led to believe otherwise

6    has been maliciously and woefully deceived.

7         Mr. Tsarnaev, if you would stand, please.

8                         *  *  *

1                   C E R T I F I C A T E

2

3          I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4    the United States District Court, do hereby certify that the

5    foregoing transcript constitutes, to the best of my skill and

6    ability, a true and accurate transcription of my stenotype

7    notes taken in the matter of Criminal Action No. 13-10200-GAO,

8    United States of America v. Dzhokhar A. Tsarnaev.

9

10   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
11   Official Court Reporter

12
     Date:  6/24/15
13

14

15

16

17

18

19

20

21

22

23

24

25