```
             UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS
```

```
                               )
UNITED STATES OF AMERICA,      )
                               )
      Plaintiff,               )
                               )  Criminal Action
v.                             )  No. 13-10200-GAO
                               )
DZHOKHAR A. TSARNAEV, also     )
known as Jahar Tsarni,         )
                               )
      Defendant.               )
                               )
```

```
    BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
           UNITED STATES DISTRICT JUDGE
```

### EXCERPT OF SENTENCING TRANSCRIPT

```
      John J. Moakley United States Courthouse
               Courtroom No. 9
               One Courthouse Way
          Boston, Massachusetts  02210
            Wednesday, June 24, 2015
                   1:37 p.m.


           Marcia G. Patrisso, RMR, CRR
              Official Court Reporter
          John J. Moakley U.S. Courthouse
          One Courthouse Way, Room 3510
          Boston, Massachusetts  02210
                 (617) 737-8728

    Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:

 2        OFFICE OF THE UNITED STATES ATTORNEY
          By: William D. Weinreb, Aloke Chakravarty and
 3            Nadine Pellegrini, Assistant U.S. Attorneys
          John Joseph Moakley Federal Courthouse
 4        Suite 9200
          Boston, Massachusetts  02210
 5        - and -
          UNITED STATES DEPARTMENT OF JUSTICE
 6        By: Steven D. Mellin, Assistant U.S. Attorney
          Capital Case Section
 7        1331 F Street, N.W.
          Washington, D.C.  20530
 8        On Behalf of the Government

 9        FEDERAL PUBLIC DEFENDER OFFICE
          By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10            Federal Public Defenders
          51 Sleeper Street
11        Fifth Floor
          Boston, Massachusetts  02210
12        - and -
          CLARKE & RICE, APC
13        By: Judy Clarke, Esq.
          1010 Second Avenue
14        Suite 1800
          San Diego, California  92101
15        - and -
          LAW OFFICE OF DAVID I. BRUCK
16        By: David I. Bruck, Esq.
          220 Sydney Lewis Hall
17        Lexington, Virginia  24450
          On Behalf of the Defendant
18

19

20

21

22

23

24

25
```

```
 1                       P R O C E E D I N G S
 2                              * * *
 3            THE CLERK:  All rise for the Court.
 4            (The Court enters the courtroom at 1:37 p.m.)
 5            THE CLERK:  For a continuation of the Tsarnaev
 6    sentence.  Be seated.
 7            THE COURT:  Ms. Clarke?
 8            MS. CLARKE:  Thank you, your Honor.  Before
 9    we -- before Mr. Tsarnaev addresses the Court, I wanted to
10    address the Court with regard to a few matters.  There have
11    been comments over time with regard to Mr. Tsarnaev lacking
12    remorse and lacking an apology and for being sorry for his
13    actions.  And I think it's incumbent upon us to let the Court
14    know that Mr. Tsarnaev offered to resolve this case without a
15    trial as far back as October of 2013, and in January of 2014
16    provided a letter of apology.  But he will also speak today and
17    address those issues as well.  It is the government's right to
18    have refused the offer of settlement and the letter, but we're
19    here with legal issues to address.
20            Mr. Weinreb asked that the Court enter a restitution
21    order today.  I would note that the presentence report
22    indicated that the government would be providing a date by
23    which it would submit information with regard to restitution.
24    As a result, we filed nothing in that regard, anticipating the
25    litigation would be later.
```

1              We do need to note to the Court that we will be
2     objecting to the entry of an order of restitution on the
3     grounds of *Apprendi*.  I know that that's speaking Greek, but
4     the Court understands the language.  It is a live and debatable
5     issue, and we think that the Court should not impose the order
6     of restitution.  The same goes for forfeiture.
7              Your Honor, the government filed a forfeiture motion
8     on the 19th of June.  It was our understanding that we had two
9     weeks to respond to that; that it would not be entered before
10    we could respond.  The same *Apprendi* argument will apply to the
11    forfeiture order, and we ask that the Court defer until we can
12    raise that appropriately before the Court.
13             It is my understanding that the recommendation of the
14    government, although I didn't hear it -- but the recommendation
15    of the government and probation, I believe, is that there be no
16    fine imposed because of the lack of ability to pay.  We do
17    understand that the Court would be imposing special assessments
18    on each of the 30 counts in the amount of $100 each for a
19    $3,000 total.  We have discussed with the government how
20    that -- how the judgment should read in terms of the
21    responsibility to pay it, as we all know that Mr. Tsarnaev will
22    be serving -- facing executions -- awaiting for the execution
23    of his death sentences and will not be having, you know,
24    income.
25             We would ask that the Court -- we have some language

1    for the Court to include in the judgment.  If the Court wants
2    me to say it orally or simply provide it to the Court
3    afterwards, it regards how it -- how the assessment is
4    collected from wages.  The language would be "Shall be
5    collected from prison wages, if any are earned, and not from
6    funds deposited in the commissary account."
7             If there is some concern about overages in the
8    commissary account, which we do not ever envision but the
9    government has hypothesized about, we would ask that the Court
10   allow there to be a minimum below which the commissary account
11   could not be taken.  As the Court knows, that is for some very
12   basic necessities.
13            THE COURT:  Let me just say to that point, I'm
14   inclined to the latter; that is, that there be some floor below
15   which assessments could not be drawn.  I don't know whether the
16   Bureau of Prisons has any regular practice with respect to such
17   matters and whether there might already be a regulation that
18   provided that.
19            MR. WEINREB:  I believe there is, your Honor.  I
20   believe that the Bureau of Prisons normally takes the position
21   that the first $75 -- basically, $75 per month of a defendant's
22   commissary monies are exempt from the payment towards any fines
23   or special assessments, restitution and so on, and that that is
24   pretty standard for --
25            THE COURT:  Well, accepting your representation

1    without researching it, I think that's adequate and we can rest
2    on that, just as to that point.
3              MS. CLARKE:  And I could -- well, we think there
4    should be a slightly higher threshold.  But I could also
5    provide the Court with a judgment where language was used and
6    that has been complied with.
7              THE COURT:  Well, no, I think we've resolved that.  I
8    think that -- it's amendable.  If it turns out to be an issue
9    of some kind --
10             MS. CLARKE:  A clear error.
11             THE COURT:  -- we can readdress it.
12             MS. CLARKE:  The other issue I believe was addressed
13   in the objections in the presentence report, and that is the
14   applicability of supervised release to any sentences other than
15   those that are a term of years.  In this case, the term of
16   supervised release is, you know --
17             THE COURT:  I'm not going to impose supervised release
18   in this case.  It's unnecessary as a practical matter in light
19   of the other structural sentence I will announce.
20             MS. CLARKE:  Thank you, your Honor.
21             The other area is what the government filed last night
22   and the proposed language for the judgment following the
23   Statute 3596 and then the C.F.R.s.  The government filed
24   proposed language, and then amended it with a revised proposed,
25   and we don't -- we think that the Court needs more thought than

1  that and we should respond.  The government has identified
2  Indiana as the state that the Court should identify in the
3  judgment where the execution will take place.
4          I know that the Court is probably aware of Judge
5  Wolf's analysis in *Sampson*, and it is more of a balancing act
6  than that.  That seems to be a bureaucratic desire on behalf of
7  the government which, frankly, flies in the face of the
8  government's venue arguments in this case.  And Judge Wolf in
9  *Sampson* noted that it's a -- I can just quote the language.
10 "The execution of a human being by the state is perhaps the
11 most solemn and significant act a government can perform.  It
12 should not be reduced to an invisible bureaucratic function.
13 There is, therefore, a strong public interest in the execution
14 being as accessible as possible to the people most interested
15 in it and impacted by it."  And as a result, Judge Wolf
16 identified the state of New Hampshire because Massachusetts
17 does not have a manner of execution.
18         We do have some language.  I think that probably the
19 safest course of action for the Court is to adopt the judgment
20 language that Judge Wolf used in *Sampson*.  And we have that and
21 can submit it to the Court.  It lays out the language that
22 should be included in the judgment with regard to execution.
23         THE COURT:  Do you want to respond to that?
24         MR. WEINREB:  Your Honor, the defense's proposal, as I
25 understand it, essentially tracks the language of the

```
 1   regulation and adds in this other language based on Judge
 2   Wolf's opinion regarding New Hampshire.  The regulation is not
 3   what controls in this case; it's the statute.  I believe it's
 4   18 U.S.C. 3596, is what specifies what the -- how -- I've got
 5   to find the provision --
 6           MS. CLARKE:  I've got it.
 7           MR. WEINREB:  -- the implementation of a sentence of
 8   death, and it explains the legal requirement.
 9           The statute -- the regulation simply directs the
10   government to submit a proposed order.  It's not a direction to
11   the Court.  And in any event, to the extent that it's not
12   consistent with the statute, the statute controls.
13           The language that the government proposed in its
14   revised motion which we submitted last night is language that
15   has been worked out over time among various interested parties
16   who actually are involved in the implementation of the
17   sentence - the BOP, the U.S. Marshal's Service among them - and
18   is what the government normally recommends in all of these
19   cases.  And it is typically, to our understanding, of course,
20   adopted in cases.  It is consistent with the statute and it is
21   a -- it both fulfills the statutory requirements and is a
22   practical set of instructions that the government is familiar
23   with and will facilitate the orderly execution of the sentence.
24           MS. CLARKE:  Well, Judge, I'm not sure that's
25   exactly right.  And 3596 provides "If the law of the state does
```

```
 1  not provide for implementation of a sentence of death, the
 2  Court shall" -- the Court, not the government or the Bureau of
 3  Prisons -- "designate another state, the law of which does
 4  provide for the implementation of a sentence of death, and the
 5  sentence shall be implemented in the latter state in the manner
 6  prescribed by law."
 7            So it is a Court determination of which state will
 8  implement the sentence of death.  And Judge Wolf went through a
 9  balancing determination in *Sampson* and determined, as I read
10  one of the reasons -- part of the reasons was because of the
11  people most affected need to have access to the execution, and
12  that it is not just a bureaucratic administrative act but a
13  very solemn, profound act by our government.
14            THE COURT:  Okay.  This is not an issue that was
15  raised or briefed.  It was not formally presented.  I did spend
16  some time thinking about it nonetheless, and I think the
17  government's suggestion is an acceptable one.  Indiana is the
18  location of the institution, Terre Haute, which is the federal
19  death row, as they say in casual language.  And I think that
20  makes an appropriate default position.  So I will accept the
21  government's recommendation on that.
22            MS. CLARKE:  Your Honor, I have a couple of
23  ministerial matters that do not affect the imposition of
24  sentence and can be delayed.  I think Mr. Tsarnaev is prepared
25  to address the Court.
```

```
 1              THE COURT:  All right, Mr. Tsarnaev.
 2              MS. CLARKE:  May I move the microphone?
 3                              * * *
```

C E R T I F I C A T E

I, Marcia G. Patrisso, RMR, CRR, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 13-10200-GAO, United States of America v. Dzhokhar A. Tsarnaev.

/s/ Marcia G. Patrisso
MARCIA G. PATRISSO, RMR, CRR
Official Court Reporter

Date: 7/8/15