```
                 UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff,                  )
                                    )   Criminal Action
v.                                  )   No. 13-10200-GAO
                                    )
DZHOKHAR A. TSARNAEV, also          )
known as Jahar Tsarni,              )
                                    )
        Defendant.                  )
                                    )


          BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                UNITED STATES DISTRICT JUDGE
```

**LOBBY CONFERENCE**

```
      John J. Moakley United States Courthouse
                  Courtroom No. 9
                 One Courthouse Way
            Boston, Massachusetts  02210
              Wednesday, May 13, 2015
                     8:45 a.m.



            Marcia G. Patrisso, RMR, CRR
               Official Court Reporter
            John J. Moakley U.S. Courthouse
           One Courthouse Way, Room 3510
             Boston, Massachusetts  02210
                    (617) 737-8728

     Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3             Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Jeffrey Kahan, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10             Federal Public Defenders
           51 Sleeper Street
11         Fifth Floor
           Boston, Massachusetts  02210
12         - and -
           CLARKE & RICE, APC
13         By: Judy Clarke, Esq.
           1010 Second Avenue
14         Suite 1800
           San Diego, California  92101
15         - and -
           LAW OFFICE OF DAVID I. BRUCK
16         By: David I. Bruck, Esq.
           220 Sydney Lewis Hall
17         Lexington, Virginia  24450
           On Behalf of the Defendant
18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Good morning.  So just I wanted to have a
 3  last-minute check on things before we proceed, if there is
 4  anything really we need to address.  This is not the occasion
 5  where counsel for the defense has to preserve your objections
 6  to the instructions.  You'll have that opportunity --
 7            MR. BRUCK:  That comes afterwards, yeah.
 8            THE COURT:  Yes.  So if there's anything that you
 9  think is important to be pointed out.  We're in the process of
10  finalizing it, and I wanted to give you a last chance both as
11  to the instructions and as to the slip.
12            I guess I could highlight we made one minor change to
13  the slip, the verdict slip.  It's at the -- it's the last part
14  of Section 6, after the some-but-not-all question.
15            MS. CONRAD:  Sorry.  What page?
16            THE COURT:  Well, I have the marked up so --
17            MS. CLARKE:  After the "some but not all."
18            THE COURT:  So if you go to the next page where it
19  says, "With regard to the above listed capital counts, we vote
20  unanimously that the defendant shall be sentenced to death for
21  each count," I would then delete the next sentence.  I don't
22  think it's necessary.  In other words, for the others, he'll be
23  sentenced to life.  That follows, I think, as a matter of law
24  and it's not necessary for the jury to say that.  The way it
25  says it, "We sentence him to life," that's not actually
```

1    accurate in the technical sense.
2            I think it's sufficient for them to say -- if they've
3    written Counts 2, 4, 6, 8 above, that they then say, "With
4    respect to those counts, we sentence him to death," and say no
5    more.  So it's just fuzziness, I guess.  That's the only
6    change, I guess, I would say.
7            And I think we made a couple of minor language changes
8    to the instructions.
9            MR. WEINREB:  Your Honor, we have some quibbles with a
10   few of the things but we won't bother with most of them since
11   the government doesn't need to preserve objections.  But there
12   is one that we think actually may just be substantively
13   incorrect, and that is on page 30.
14           THE COURT:  My page is going to be different --
15           MR. WEINREB:  Oh, it's the instruction concerning
16   cruel, heinous and depraved.  I'll just give counsel a chance
17   to get to it if they want to have it.
18           We believe under *Ortiz* -- the *Ortiz* case, that this is
19   not correct in that --
20           THE COURT:  Let me just get to it.
21           MR. WEINREB:  Oh, I'm sorry.
22           THE COURT:  Okay.  All right.
23           MR. WEINREB:  That in determining whether the
24   defendant committed the offenses in an especially heinous,
25   cruel or depraved manner, they may consider accomplice and

1  coconspirator behavior.  Although this restriction might apply
2  to substantial planning and premeditation, it does not apply to
3  this aggravating factor.
4         MR. BRUCK:  I have to check.  I assume this is from
5  Sand.  And it goes -- it opens up a rat's nest of issues if one
6  starts having vicarious or accessorial liability for
7  heinousness and cruelty.  One could picture circumstances under
8  which -- but you would have to explain in minute detail what
9  those circumstances are.  And this is substantively -- this
10 conveys correctly the overriding principle.
11        MR. WEINREB:  Your Honor, the case that I was
12 referring to, the *Ortiz* case, it's not a Supreme Court case;
13 it's an Eighth Circuit case.
14        THE COURT:  Do you have the cite at hand?
15        MR. WEINREB:  No.  We can get it for you quickly.
16        THE COURT:  But it applies, you say --
17        MR. WEINREB:  Well, not according to the *Ortiz* case.
18 The substantial planning and premeditation, there's a case in
19 the Fifth Circuit, *Ebron*, that seems to suggest that it could
20 apply to the substantial planning and premeditation.  I don't
21 know if the defense is asserting that.  We're just trying to
22 make sure that we get it correct, get it right.
23        MR. BRUCK:  We have been hit with a head cold by all
24 of this.
25        MR. WEINREB:  We all got in at 9:30 last night, so

1  we're all catching up.
2          THE COURT:  Yeah, I think that might be my attitude.
3          MR. WEINREB:  Okay.
4          THE COURT:  If they're not binding precedent for me, I
5  think we may just leave it alone.
6          Okay.  With respect to the closing statements,
7  Mr. Mellin is warming up someplace?
8          MR. WEINREB:  He is.
9          MS. PELLEGRINI:  He is.
10         MR. WEINREB:  Winding up, is more like it.
11         THE COURT:  I hope he doesn't get too hot.
12         MR. WEINREB:  We understand.
13         THE COURT:  Well, I just wanted to raise how we will
14 deal with the Collier autopsy photograph.
15         MR. WEINREB:  It's not going in.
16         THE COURT:  It's not going to be used?
17         MR. WEINREB:  It's not going to be used.
18         THE COURT:  Because I have to shut down the monitors
19 and things like that.
20         MR. WEINREB:  Right.
21         THE COURT:  Okay.  So that's out.
22         And so my estimate of the timing is:  My instructions
23 are going to take a while.  I would say probably 45 minutes
24 anyway.  Then we'll go into the first closing, probably take a
25 break after that, second closing, rebuttal.  I have

```
 1    very -- unlike -- I have imported the evidence stuff into the
 2    first segment, so my second phase will be very short.
 3              MS. CLARKE:  You're essentially giving the packet
 4    of --
 5              THE COURT:  Yes.
 6              MS. CLARKE:  Are they going to get this?
 7              THE COURT:  Yes.
 8              MS. CLARKE:  And will they have a copy of the verdict
 9    slip?
10              THE COURT:  When I go through the details of the
11    steps, we're going to have it on the monitor.  Jane will scroll
12    through it so they can see it as I'm talking about Section 2,
13    Section 3 and so on and so forth.  I think the visual will help
14    them a little.  But in the jury room they will have -- they
15    won't have the draft during the instructions --
16              MS. CLARKE:  Right.
17              THE COURT:  -- but they will have the draft in the
18    jury room with them when they deliberate.
19              MS. CLARKE:  Okay.
20              MR. WEINREB:  Your Honor, yesterday or the day before
21    the defense filed a motion to preclude the government from
22    making improper closing argument, and we have a similar kind of
23    motion to make.  I have no more reason to suspect the defense
24    would do anything improper than I'm sure they have to believe
25    we would, but there is one issue that I want to raise, and that
```

1  is a request that the parties not instruct the jury on what
2  their deliberations should be like in the jury room.  That goes
3  beyond what the Court will instruct them in the instructions.
4  In other words -- and the reason I raise this is I remember
5  that during voir dire we did have some differences about
6  whether the jurors should be told just how much they -- whether
7  the jurors should be cautioned against trying to persuade each
8  other of a different point of view in an effort to come to a
9  unanimous verdict.
10          The Court's crafted an instruction in that regard
11 that, frankly, I think is quite strong and --
12          THE COURT:  I've actually strengthened it.
13          MR. WEINREB:  And so it's already quite strong.
14          And my request is simply that -- and I agree that it
15 is appropriate for counsel to refer to the closing arguments,
16 and to underline or underscore ones they want the jury to pay
17 attention to, but there's a difference between that and going
18 beyond it, and instructing them on things that the Court has
19 not instructed them on, embellishing or elaborating.  We would
20 ask that that not be done in this case because I think that
21 both because the jury's task is hard enough and it will confuse
22 them, and also, because it's a matter of great importance to
23 both parties.  And I'm sure the Court has given an enormous
24 amount of thought to exactly what the wording should be.  And
25 it would be unfair for it to be essentially amended at the last

1      moment unilaterally by one party or the other.
2              MR. BRUCK:  Well, the defense doesn't plan to instruct
3      the jury on anything, but clearly the implications of
4      instructions and how things play out are largely about the
5      subject of closing argument, and Ms. Clarke isn't going to
6      transgress any lines there.
7              THE COURT:  Well, I will have said it by the time the
8      arguments occur, so you'll know what I have said and --
9              MS. CLARKE:  Has the Court changed what's in the
10     instruction?
11             THE COURT:  A little bit, yeah.  Basically
12     personalizing it a little.  I point out to them that they've
13     spent a lot of time together and they may have found some
14     personal regard for each other and that should not cause them
15     to think that they need to act as their fellows are acting;
16     they should individually make their own choice.
17             MS. CLARKE:  I think that's pretty much where I'm
18     coming down in my argument.
19             THE COURT:  I will have said it.
20             MS. CLARKE:  Then I'll look really smart.
21             MR. WEINREB:  And, frankly, the only reason I say this
22     is really that no attorney wants to object in the middle of
23     another attorney's closing argument.  I think both parties have
24     been quite good about refraining from doing that.  And we don't
25     want to have to do it, but this is the one area where I think

1   the government will feel compelled to rise and object if the
2   instructions go beyond what the Court's instructions state.
3           THE COURT:  All right.  There's one sort of dangling
4   issue about the SAMs and orders of the Court and so on and so
5   forth.  I'm not going to add anything to the instructions, but
6   I don't think that there should be argument that this Court
7   ordered any changes, okay?  Obviously, it is an issue whether
8   and how the SAMs might be amended, relieved in general, but not
9   to put it to what's historical in this case, okay?
10          I think we're -- I'm a little nervous because our
11  sound system is apparently on the fritz.  So what I was going
12  to say is I think the exhibits are okay.  I haven't actually
13  checked with the tech people this morning, but I haven't had an
14  indication that they're not.  But I'll just --
15          MR. WEINREB:  Yeah.  You know, I imagine both parties
16  probably share this sentiment:  That it would be best, I think,
17  to wait to get that sound system, make sure it's --
18          THE COURT:  Oh, absolutely.  Oh, yeah, yeah, yeah.  I
19  mean, I've already started thinking is there another courtroom
20  we can go to.  No, absolutely.  We can't do it under those type
21  of adverse conditions, so.
22          MS. CLARKE:  Well, you have a wonderful deep voice
23  today.  Maybe you could just --
24          THE COURT:  I don't know whether this is an allergy or
25  a spring cold or whatever, but its timing was impeccable.

1          (Laughter.)
2          THE COURT:  Finally, I know from voir dire that people
3  have kind of checked on jurors' tweets and Facebooks and things
4  like that.  I want to know if anybody has any issue or concern
5  about anything they may have seen or heard about the jurors
6  before we commit this case to them.  Any reservations about the
7  deliberating jurors in any way?
8          MR. WEINREB:  None from the government.
9          MS. CLARKE:  We have none.  We still do ask, though,
10 that the Court make a matter of record the juror that was ill
11 that day.
12         THE COURT:  Do you have the roster?  I will tell you.
13 It's -- I think he's the fourth seat in.  The young man in the
14 front row.  And he was Juror 138, 5.  Juror 5.  He was -- I'm
15 told.  I haven't talked to him about it, but the nurse saw him,
16 and he was vomiting in the restroom, and apparently she had
17 connected it to migraines, and he hadn't taken -- or he didn't
18 have with him his migraine medication that would have
19 ameliorated it.  That's what she told me.
20         So I take it these jurors are fine?
21         MR. FICK:  Other than we wouldn't waive, of course,
22 the arguments we made prior to their --
23         THE COURT:  Oh, yeah, yeah, yeah.  No, no.  But I
24 mean --
25         MR. FICK:  Because some of that involves social media.

1            THE COURT:  No, but I mean nothing I haven't heard, is
2   what I'm getting at, about these people.
3            MR. BRUCK:  If anything new has happened, we don't
4   know about it, I guess is the answer we could make.
5            THE COURT:  I can only ask you for what you know.  As
6   I say, because I know people peek at social media from time to
7   time about what may be going on, and I don't.  So I don't know
8   what's out there.  So everybody is content that these jurors
9   cab deliberate?
10           MS. CLARKE:  As far as we know.  Are you trying to
11  lock us into something we don't know?
12           THE COURT:  No, I'm not trying to lock you into
13  anything.  I just don't want to find something in the middle of
14  the deliberations that somebody knows or saw something on
15  Facebook or a comment or anything.  I just want to be sure we
16  can sail out of port free here.  Okay.
17           MR. BRUCK:  Do you intend to dismiss the alternates
18  after sending the jury out?
19           THE COURT:  I was not going to; I was going to
20  preserve them.
21           MR. WEINREB:  Why would we dismiss them?
22           THE COURT:  There's still a possibility -- if anything
23  should happen -- one could substitute.  They would have to
24  start all over again, obviously.  And in that case, I suppose
25  what we would do is to the extent there was a partially

```
 1   filled-out verdict slip, we would impound it and give them a
 2   clean one.
 3            MS. CLARKE:  There are issues regarding substitution
 4   of alternates that just haven't arisen yet.  I guess we could
 5   take that up if the time comes.
 6            THE COURT:  Right.  Hopefully we won't have to.
 7            MS. CLARKE:  Yes.
 8            THE COURT:  Okay.  So as soon as our technical staff
 9   is completed successfully their work, we'll get going.
10            (The proceedings adjourned at 9:00 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, Marcia G. Patrisso, RMR, CRR, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 13-10200-GAO, United States of America v. Dzhokhar A. Tsarnaev.

/s/ Marcia G. Patrisso
MARCIA G. PATRISSO, RMR, CRR
Official Court Reporter

Date:  8/24/15