```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS



                                   )
UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )  Criminal Action
v.                                 )  No. 13-10200-GAO
                                   )
DZHOKHAR A. TSARNAEV, also         )
known as Jahar Tsarni,             )
                                   )
        Defendant.                 )
                                   )



         BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                UNITED STATES DISTRICT JUDGE
```

### LOBBY CONFERENCE

```
         John J. Moakley United States Courthouse
                     Courtroom No. 9
                   One Courthouse Way
                Boston, Massachusetts  02210
                 Wednesday, March 11, 2015
                        4:02 p.m.



              Marcia G. Patrisso, RMR, CRR
                 Official Court Reporter
              John J. Moakley U.S. Courthouse
              One Courthouse Way, Room 3510
              Boston, Massachusetts  02210
                    (617) 737-8728

        Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb and Aloke Chakravarty
 3             Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Steven D. Mellin, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, Federal Public Defender
10         51 Sleeper Street
           Fifth Floor
11         Boston, Massachusetts  02210
           - and -
12         CLARKE & RICE, APC
           By: Judy Clarke, Esq.
13         1010 Second Avenue
           Suite 1800
14         San Diego, California  92101
           - and -
15         LAW OFFICE OF DAVID I. BRUCK
           By: David I. Bruck, Esq.
16         220 Sydney Lewis Hall
           Lexington, Virginia  24450
17         On Behalf of the Defendant

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE COURT:  So the boat.  I think it would be beneficial for the jury to see the whole boat, so I think we'll arrange a view.  I've talked to the marshals about handling the jury for that.  So I don't know what the logistics are.  My understanding is that it would be taken to another facility where it could be set up, a lift like the one we used yesterday for people to see.

Now, I don't know that I've ever done a view as a federal judge but I did a lot as a superior-court judge.  In those days, the view was simply a view.  There was no evidence taken.  There was a reporter there but the practice was simply, counsel have an opportunity to ask the jurors' attention be directed to the front left corner without any further comment and things like that.  And then -- so there's no commentary or evidence; the jurors could just see the boat.

So I don't know what the timing is.  You have the FBI, what they could do to get it to a place.  When they do, our thought is to do it first thing in a morning.  So I guess that would mean if you could do it tomorrow -- that would be awfully fast -- or if not, Monday morning, because we would take the jurors from their location -- their meeting location and then go directly to the place and then come here.

That would be the easiest for them, it would be the least likely to cause followers and attention, so...

1          MR. WEINREB:  So if we can get it done in time, we'd

2    still like to have the portion of the boat that has the message

3    on it brought into court because we're really concerned that

4    the jurors are not going to take the time, necessarily be

5    comfortable enough or have the proximity that they would need

6    to really see it and read it unless we do that.

7          THE COURT:  My impression from yesterday is that it's

8    a lot easier to read your exhibit that's in evidence than it is

9    to read the side of the boat.  It's faded, I'm told.  So I

10   don't know how much value there is for the jurors to look at

11   the Rosetta Stone itself as opposed to the text of it.

12          It's not contested either, is it?

13          MS. CLARKE:  No.

14          THE COURT:  But anyway, if you want -- I guess if,

15   after the whole boat view, they want to take it apart, do you

16   have any objection to that?

17          MS. CLARKE:  Can they put it back together?

18          THE COURT:  Well, I assume if a piece comes out, it

19   goes back in.

20          MR. WEINREB:  Yes, I believe we could put it back

21   together.

22          MS. CLARKE:  I don't think that's a problem.

23          THE COURT:  I think it's a waste of effort myself

24   but --

25          MS. CLARKE:  I do too.

1          THE COURT:  -- if it's after the whole boat viewing,

2    then I guess I don't have a problem.

3          MS. CLARKE:  Well, we may see a problem.

4          MS. CONRAD:  I think it's cumulative because they've

5    got the pictures, they've got the text.  You know, to have it

6    sitting there as if it is a tablet.

7          MR. WEINREB:  That would be true of the view itself.

8    It's also cumulative.

9          MS. CONRAD:  That's not correct.  They haven't seen

10   the entire thing.

11         THE COURT:  So I don't know when -- if you think --

12         MR. WEINREB:  We definitely would not want to do it

13   tomorrow.

14         THE COURT:  Right.  So Monday would be -- Monday or

15   Tuesday?

16         MR. WEINREB:  Monday or Tuesday would be more

17   feasible.

18         THE COURT:  Why don't you consult with your people and

19   let us know.  I want to give the marshals a heads-up so they

20   can arrange their travel plans.  We do have to decide how

21   publicly we announce what we're doing.  I mean, I'm not sure we

22   could keep it nonpublic.

23         MR. WEINREB:  Can we make it public after it's done?

24         THE COURT:  I don't know.  I think that's an issue I

25   want to think through.

1          You know, we've had -- I've said this before.  We've

2     had generally good relations with the press.  And I want to

3     keep that going.  I don't want to necessarily do something that

4     they interpret as hostile; but on the other hand, you know, the

5     evidence is important and the jury's ability to absorb the

6     evidence without being under examination by -- so it's a

7     possibility we might do a pool kind of thing, but I don't know.

8     I haven't thought that through.  I raise the issue.

9          MR. WEINREB:  We're strongly in favor of not having

10    the press there for the view.  I mean, it's fine for them to

11    report on the fact that there was a view, but keeping the

12    appropriate element of decorum, and so on, and not having the

13    jurors feel like they are part of a publicized proceeding I

14    think is very --

15         THE COURT:  Yeah.  No, that is...

16         MS. CONRAD:  Well, I was going to say a pool reporter,

17    a single pool reporter.

18         THE COURT:  Everybody can think about it and talk

19    about it.

20         MR. CHAKRAVARTY:  Your Honor, just -- I'm sorry.

21         MS. CLARKE:  I do understand that there is a location

22    big enough right here at the courthouse for the boat to be.

23         THE COURT:  I don't want to do it at the courthouse.

24    The logistics around here are just miserable because of all the

25    construction, the snow piles, the closed roads anyway.  It

1   would just be a logistical problem.  Too much of a

2   logistical -- something more wide-open space.

3          MR. WEINREB:  I think what the FBI has in mind,

4   actually, is a hangar at Logan Airport.  The airport is very

5   close, just five minutes from here, and --

6          THE COURT:  That's my understanding --

7          MR. WEINREB:  Yeah.

8          THE COURT:  -- from the marshals.

9          And that would be fine.  It is close, it presumably is

10  spacious, and it won't take long.  I wouldn't think this

11  would -- you know, assuming people get there on schedule,

12  without traffic issues, I don't think it would take more than

13  an hour.  So, again, with no commentary.  They just look at it

14  and leave.

15         MR. CHAKRAVARTY:  So my concern is one of just the

16  record, of the posture of what gives rise to the view in the

17  sense of originally it came up because we were intending to cut

18  a piece of the boat.

19         THE COURT:  Right.

20         MR. CHAKRAVARTY:  We are now willing to forgo that, at

21  least -- and depending on how the view goes, alternative relief

22  for the -- posed by the defense was to do the view.  The note

23  has come into evidence.  We object to the view regardless

24  because we don't think it's necessary to provide context to the

25  note, the substance of the note.  And it rather goes to 402 or

1    403, unrelated materials.  Your Honor obviously has determined

2    it could be relevant.

3          But we're probably not going to discuss this again

4    when we're going out to do the view, so is it a correct

5    understanding to say that this is being treated as a motion for

6    a view by the defense over the government's objection as being

7    allowed or is this something else?

8          THE COURT:  If you want it that way.

9          MR. CHAKRAVARTY:  Well, I'm not sure which is better.

10   I just want to make sure it's clear so it doesn't seem like a

11   relief request.

12         THE COURT:  Yeah, I think without having the document

13   in front of me, I think that's pretty much what the defense

14   position was.

15         MR. WEINREB:  Well, the defense position --

16         THE COURT:  I guess -- so I guess to the extent that

17   paper moved for a view, and I'm agreeing to it, I guess that's

18   granted.  The spoliation part was at least before a view, and

19   it was now discussed.  If you want to saw it up after the view

20   has been taken, I don't have any objection.  So that's been

21   partly granted and partly denied, I guess, to prevent you from

22   doing that.  There's plenty of pictures of it anyway, right, I

23   assume?

24         MS. CLARKE:  And that's the cumulative.

25         MR. CHAKRAVARTY:  Then I don't know what the question

1    is why we need this.

2            THE COURT:  The argument can go both ways.  Having

3    seen it, I think it will be beneficial to the jurors in their

4    overall assessment of the evidence of the case to actually be

5    able to view the boat.  How much?  That's up to them.  Okay.

6            MS. CLARKE:  Thank you.

7            THE COURT:  So we'll keep Monday and Tuesday in mind.

8    Great.

9            (The proceedings adjourned at 4:10 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4    the United States District Court, do hereby certify that the

5    foregoing transcript constitutes, to the best of my skill and

6    ability, a true and accurate transcription of my stenotype

7    notes taken in the matter of Criminal Action No. 13-10200-GAO,

8    United States of America v. Dzhokhar A. Tsarnaev.

9

10   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
11   Official Court Reporter

12
     Date:  9/30/15
13

14

15

16

17

18

19

20

21

22

23

24

25