```
 1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
 2

 3
                                        )
 4    UNITED STATES OF AMERICA,         )
                                        )
 5            Plaintiff,                )
                                        )  Criminal Action
 6    v.                                )  No. 13-10200-GAO
                                        )
 7    DZHOKHAR A. TSARNAEV, also        )
      known as Jahar Tsarni,            )
 8                                      )
              Defendant.                )
 9                                      )

10

11          BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                    UNITED STATES DISTRICT JUDGE
12

13
                        **LOBBY CONFERENCE**
14
                        **SEALED TRANSCRIPT**
15

16
           John J. Moakley United States Courthouse
17                     Courtroom No. 9
                       One Courthouse Way
18              Boston, Massachusetts  02210
                   Tuesday, March 24, 2015
19                        4:03 p.m.

20

21            Cheryl Dahlstrom, RMR, CRR
                Official Court Reporter
22           John J. Moakley U.S. Courthouse
             One Courthouse Way, Room 3510
23             Boston, Massachusetts  02210
                     (617) 737-8728
24
          Mechanical Steno - Computer-Aided Transcript
25
```

1  APPEARANCES:

2      OFFICE OF THE UNITED STATES ATTORNEY
       By: William D. Weinreb, Aloke Chakravarty and
3          Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
4      Suite 9200
       Boston, Massachusetts  02210
5      - and -
       UNITED STATES DEPARTMENT OF JUSTICE
6          By:  Steven D. Mellin, Assistant U.S. Attorney
       Capital Case Section
7      1331 F Street, N.W.
       Washington, D.C.  20530
8      On Behalf of the Government

9      FEDERAL PUBLIC DEFENDER OFFICE
           By:  Miriam Conrad, William W. Fick and Timothy G.
10         Watkins, Federal Public Defenders
       51 Sleeper Street
11     Fifth Floor
       Boston, Massachusetts  02210
12     - and -
       CLARKE & RICE, APC
13         By:  Judy Clarke, Esq.
       1010 Second Avenue
14     Suite 1800
       San Diego, California  92101
15         - and -
       LAW OFFICE OF DAVID I. BRUCK
16         By:  David I. Bruck, Esq.
       220 Sydney Lewis Hall
17     Lexington, Virginia  24450
       On Behalf of the Defendant

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2             THE COURT:  I just have a couple of quick things.  One
 3   is Tazhayakov.  There was a motion on the PSR, but I assume the
 4   government has some disclosures for a witness to whom I suppose
 5   there have been some -- maybe there isn't.  Have there been any
 6   promises, inducements, et cetera?
 7             MR. CHAKRAVARTY:  No, there haven't been.  So there
 8   was an agreement after his conviction --
 9             THE COURT:  Right.
10             MR. CHAKRAVARTY:  -- that -- there was an agreement
11   drafted with the government, which they have.  There's nothing
12   else.  The PSR doesn't have anything more than the statement of
13   relevant conduct.  It does have a guidelines calculation.  Said
14   he smoked pot and he committed the crimes.  We have the PSR,
15   obviously.  We don't think it's actually going to be that
16   useful to them.
17             THE COURT:  I don't think so either.  Is there any
18   problem with allowing them to see it?
19             MR. CHAKRAVARTY:  No.  We don't want to violate
20   another judge's --
21             THE COURT:  Well, Judge Woodlock has released it for
22   this purpose.
23             MR. CHAKRAVARTY:  That's fine.
24             THE COURT:  As long as it's held confidential.
25             MS. CONRAD:  Sure, of course.
```

```
 1               THE COURT:  So I don't have any problem with that.
 2               MS. CONRAD:  Okay.  So the government will provide it
 3    or the Court will provide it?
 4               MR. CHAKRAVARTY:  We will.
 5               THE COURT:  The government will.  I have it, but I
 6    think it should come from the government.
 7               MS. CONRAD:  I've also made some inquiries regarding
 8    his immigration status.  Mr. Tazhayakov was originally arrested
 9    on his immigration detainer and held for a couple of weeks
10    before he was charged criminally.  So, obviously, you know,
11    pending immigration matters, which create potential bias, which
12    I think are fair game on cross -- and I've asked the government
13    to provide me with documentation and information which came in
14    at some of the other trials, I think, including maybe his
15    suppression hearing, but certainly at the trial of Robel
16    Phillipos.
17               THE COURT:  That's between you.
18               MS. CONRAD:  I've asked.  I haven't gotten an answer.
19               THE COURT:  I got dragged in because of the PSR.
20    We've done that.
21               This is a real small matter.  The media motions about
22    access to the witness and exhibit list, is that solved or only
23    part of it solved?
24               MR. WEINREB:  No.  It's all solved.
25               THE COURT:  So any pending motion by the media for
```

```
 1   access can be treated as moot?
 2           MR. WEINREB:  Well, they actually withdrew the motion
 3   for access --
 4           THE COURT:  Well, that was -- it wasn't complete
 5   enough.  That's what raised the question.  It seems to have
 6   withdrawn something but not something else.  That's why I'm
 7   asking.
 8           MR. WEINREB:  My recollection is that their intention
 9   was to withdraw the motions for the witness list and exhibit
10   list as well.  But I do know that right now there's essentially
11   an agreement, that they're content with the way things are
12   working.  Maybe they haven't withdrawn it because they just
13   haven't gotten around to it, and maybe they haven't withdrawn
14   it because they may want to press it at a later date.  But
15   right now I know they're not pressing it.
16           THE COURT:  When will we get to the autopsy evidence?
17           MR. WEINREB:  We think Thursday.
18           THE COURT:  Okay.  So with respect to the pictures,
19   they're -- one, I will allow some autopsy pictures as a general
20   matter.  There's a motion to exclude them all, but I don't
21   think they all should be excluded.  From what I've seen, it's a
22   rather limited offer, but I do have a couple of issues with it.
23   One, I would like the faces of the victims to be masked.  You
24   can show the wounds without showing the faces.  I think that
25   will reduce emotional impact to some degree.
```

 1           There is one of Krystle Campbell that is a close-up of
 2   a wound that is particularly gory.  I didn't know why the
 3   close-up showed more than the, more or less, full body.
 4           MS. PELLEGRINI:  If I remember that one, your Honor --
 5   and there are a couple -- I think it was because that one
 6   actually shows what is being removed is a piece of shrapnel,
 7   which there is also a picture of.
 8           THE COURT:  I'll look at it with that in mind.
 9           There's one of Martin Richard clothed, I guess,
03:06 10   post-event, pre-autopsy.
11           MS. PELLEGRINI:  Pre-autopsy.
12           THE COURT:  Just different.  There wasn't anything for
13   the others.  I just didn't --
14           MS. PELLEGRINI:  At the time that we were considering
15   those photos, it wasn't quite clear to me that we had to put in
16   everything that we were going to use for simply liability but
17   possibly penalty as well.  But I don't think, after review of
18   that, that that one needs to go in at this time.
19           THE COURT:  Okay.  So you'll mask the faces of the
03:06 20   victims?
21           MS. PELLEGRINI:  We're going to have to find a way to
22   do it.
23           MS. CONRAD:  May I just inquire --
24           THE COURT:  I think you can just put something over
25   and recopy it.

```
 1            MS. PELLEGRINI:  That's what we'll do.
 2            MS. CONRAD:  I can't recall -- there was some back and
 3  forth about, you know, not displaying these publicly or
 4  releasing them publicly.
 5            THE COURT:  We'll do the same thing.  We did it with
 6  Collier.
 7            MS. CONRAD:  I'm concerned because apparently the
 8  Collier autopsy photos were displayed to the press after the
 9  fact.  I thought the Court's ruling had been that they would
10  not -- that the autopsy photos would not be disclosed except to
11  the jury and not to spectators or the public.
12            It's my understanding they weren't provided copies,
13  but I think actually displaying the photos to the press seemed
14  inconsistent with what I understood the Court's ruling to be.
15  And I wanted to make sure that we were all on the same page
16  with respect to the civilian, as it were, victims.
17            MR. WEINREB:  I didn't actually think there was a
18  ruling from the Court other than a ruling permitting us not to
19  display them, in the courtroom, to the audience, as it were,
20  because we had family members and friends of the victims in the
21  audience, and we didn't want them to have to leave.  But the
22  autopsy photos themselves are being entered -- offered into
23  evidence and shown to the jury.
24            And our arrangement with the press -- part of the
25  reason why they have -- they're content now and willing to
```

```
 1    withdraw their motion is we've taken the position with them
 2    that they are entitled to report on all of the evidence but not
 3    necessarily have copies of it or the ability to photograph it
 4    or reproduce it and post it on the internet or on the front
 5    pages of newspapers.
 6              For them to be able to report it, they have to be able
 7    to see it and describe what's in it in words without actually
 8    having -- getting the image.
 9              THE COURT:  They don't get the image?
10              MR. WEINREB:  They don't get the image.  We show them
11    the image, but they're not allowed to take pictures of it.
12    They're not allowed to videotape it.
13              MS. CONRAD:  This idea -- I'm sorry.
14              THE COURT:  I hadn't addressed this specific issue,
15    focused on it.
16              MS. CONRAD:  It seems to me this idea of an
17    extrajudicial display --
18              THE COURT:  It's not --
19              MS. CONRAD:  -- of evidence -- it is.
20              THE COURT:  You mean a private display to the press?
21              MS. CONRAD:  To the press, yes.
22              MS. PELLEGRINI:  But it's an item that is in evidence.
23              MS. CONRAD:  The exhibits belong to the court once
24    they're admitted.  I think for the government then, having
25    represented that it will not be showing them to the general
```

|   |   |
|---|---|
| 1 | public or to the media in the courtroom, to arrange a private |
| 2 | viewing for the press -- |
| 3 | THE COURT:  Well, I haven't thought about it.  Let me |
| 4 | think about it.  I'm inclined to say it's okay as long as they |
| 5 | don't get copies and can't reproduce it.  If they can see it |
| 6 | and write about it so they can describe the image, I think |
| 7 | that's probably okay, but I'll reflect on -- |
| 8 | MS. CONRAD:  I think the potential for prejudice there |
| 9 | is pretty high. |
| 03:09 10 | THE COURT:  No.  Okay.  I'll consider it. |
| 11 | MR. WEINREB:  I'd just like to add, I see no potential |
| 12 | for prejudice.  The jury is being shown the images, so we have |
| 13 | no worries about the jury. |
| 14 | THE COURT:  Right. |
| 15 | MR. WEINREB:  And as for the victims, I'm not sure who |
| 16 | exactly is being prejudiced here, whose rights the defense is |
| 17 | seeking to protect here, but the victims are aware of this |
| 18 | arrangement and are okay with it. |
| 19 | MS. CONRAD:  We are concerned about the victims. |
| 03:10 20 | We're also concerned about the general public, which includes |
| 21 | members of the jurors' families who might read about it and |
| 22 | comment to them, you know, Gee, I read that these pictures are |
| 23 | pretty horrible.  What was that like?  We don't know, and it |
| 24 | seems to be taking a risk that we don't need to take. |
| 25 | THE COURT:  The jurors have seen so much more evidence |

1    about this case now at this point than any member of the
2    public.  I doubt very much that their views are going to be
3    influenced by something somebody will say outside compared to
4    what they've seen here.  Anyway, I will think about it
5    overnight and let you know briefly in the morning because I
6    haven't previously considered it.  I think that's my list.
7               MR. MELLIN:  Your Honor, I think it's unlikely we wrap
8    up Thursday then.  I'm not sure.  It's going to be a defense
9    case.
03:11 10        MR. CLARKE:  We've been in conversation about that,
11   and we've talked about names of people we intend to call.
12   Hopefully, we'll have a good list.  Does the Court want the
13   list, too?
14              THE COURT:  I do.  And I'd like to know, just for
15   planning purposes, if there's a defense case, how many days
16   because we're getting to the point where we have to look
17   forward for a possible second case, second phase, and I just
18   want to figure out the timing of that as we go forward.  My
19   thought is we'll have to take some kind of a break.  I don't
03:11 20   want it to be very long.  It could be a natural break.  If the
21   case is scheduled to finish on Thursday, we could pick up
22   perhaps as soon as Monday, maybe Tuesday.  I don't want to
23   leave a jury half through its work out dangling someplace.  So
24   I want to -- I want it to be realistic but as short as
25   possible.

MS. CLARKE:  Sure.  We had estimated, I think, to the Court in a lobby conference before a couple of days depending on cross-examination.  And the primary -- most of our substantive evidence will come from experts.  I've talked to Mr. Weinreb about them.  We do have some records and foundational issues.  I don't think there are authentication issues.  We just have to figure out whether there's a witness to put them into evidence.

THE COURT:  Right.  So rough estimate, nobody being held to it?

MS. CLARKE:  Two, maximum three, days.

THE COURT:  Okay.  That's what I was getting at.  If the government were to wrap up on Thursday, Tuesday or Wednesday?

MS. CLARKE:  Sure.

MR. MELLIN:  Would the Court want to close the following day or give --

THE COURT:  I don't know.  That's what I want to think about.  Tuesday, maybe yes; Wednesday, maybe not.  It's likely to be a busy weekend for people.  It is both -- as I understand it, both Christian holidays and the Jewish holidays.  So, you know, jurors and others will have things to do.  That's one of the factors I'm trying to play with in my head.

MR. WEINREB:  I will say, your Honor, although Miss Clarke has previewed for me a couple of the witnesses who the

|    |    |
|----|----|
| 1  | defense might call in their case in chief, the time has come |
| 2  | where we could really use a list of witnesses and exhibits |
| 3  | coming in through those witnesses as we gave them and have been |
| 4  | continuing to give them. |
| 5  | MS. CLARKE: Sure. I mean -- |
| 6  | THE COURT: Even if it's tentative. It's been |
| 7  | tentative on this side. Even if it's tentative. |
| 8  | MS. CLARKE: Sure. |
| 9  | MR. WEINREB: At least with respect to our first |
| 03:13 10 | couple witnesses, or first 20 witnesses, frankly, they had it |
| 11 | weeks and weeks in advance. And we're just asking for a few |
| 12 | days. |
| 13 | MR. CHAKRAVARTY: Especially since, if there are going |
| 14 | to be expert witnesses, we may want an expert present, and |
| 15 | those people are not local. |
| 16 | MS. CLARKE: Yes. I've talked to Bill about their |
| 17 | names. |
| 18 | THE COURT: Finally, the other end-of-case thing is, |
| 19 | of course, instructions, jury slip, and so on. |
| 03:13 20 | MR. WEINREB: That's at the top of my list. |
| 21 | THE COURT: Like everything else. |
| 22 | MS. CLARKE: Does the Court have a standard set of |
| 23 | instructions that it gives, I mean, outside of the elements on |
| 24 | these offenses? |
| 25 | THE COURT: More or less, I say the same thing. I |

1    don't know if you'd call it a standard set.  I don't -- I try,
2    and almost always, avoid reading to the jury.  I talk to them.
3    So it follows an outline, but it doesn't always come out the
4    same way.  Even when I write it out, it doesn't come out the
5    same way because I deviate liberally from it when I talk to
6    them.  I cover the usual topics.
7               MS. CLARKE:  Rule 30 would give the parties an
8    opportunity to see the Court's instructions and to object to
9    them.  So, typically, my experience is not that courts ad-lib
10   their instructions but that they provide them with --
11              THE COURT:  This case may be an exception.  Certainly,
12   because of the elements, I think they will be quite literal.
13   Just on that, I was thinking -- I don't know whether anybody
14   would object.  And I don't know whether I'm going to do it or
15   not or whether it's feasible or worth it -- to have sort of a
16   PowerPoint presentation as I'm going through the elements.  I'm
17   just thinking of visualizing, you know, Element No. 1 comes up
18   on the screen and Element No. 2 comes up on the screen.  I just
19   think people learn visually as well as orally, and it may help
20   on what are relatively complex charges.
21              MR. WEINREB:  The government has no objection.
22              MR. CHAKRAVARTY:  We would have no problem.  We would
23   like to see that before.
24              THE COURT:  Of course.  Okay.
25              MR. WATKINS:  One quick matter.  Can I follow up the

1    sidebar in regard to Dowd to make one last pitch, for what it's
2    worth?  After that sidebar, the government put on that further
3    evidence about a bullet hole in 40 Laurel Street, which is now
4    the other side of Dexter Avenue.  So I think that changes
5    things a little bit about what the jury might and might not be
6    able to -- given the problem of a stray bullet there, given
7    there's no testimony about who fired that bullet into 40
8    Dexter.  But it certainly could be the case now, the jury could
9    start to think, Wow, if the bullet made it that far, it could
10   have made it down to Officer Donohue.  So for those reasons,
11   once again, I'd make the pitch to re-call Trooper Dowd to talk
12   about that issue.
13            THE COURT:  I don't think so, but I will say I had --
14   the same thought went through my head when I was listening to
15   that.  I think the more the government skirts it, the more
16   dangerous it becomes.  As I said, I think at the sidebar, I
17   think it's irrelevant to both sides but --
18            MR. WATKINS:  They think it's relevant.
19            MR. WEINREB:  We've moved on from Watertown so that's
20   it.
21            MS. CLARKE:  But they moved on from Watertown after
22   repeatedly suggesting this bullet from one of the Tsarnaevs hit
23   Donohue.  The testimony about the bullet in the house, nobody
24   could even identify what the bullet was.  So the government
25   puts it in to suggest that it's a Tsarnaev-related bullet.  It

1   just seems unfair.
2           MR. WEINREB:  It is a Ruger bullet.  That's why the
3   government put it in.
4           MS. CLARKE:  Well, there's no testimony to that, no
5   evidence to that.
6           MR. WEINREB:  But that, in fact, is the fact so
7   there's no prejudice.  I'm proffering that that's the case.
8           THE COURT:  It is the same place.
9           MS. CONRAD:  What about striking the 40 Dexter
10  testimony then?
11          THE COURT:  No.
12          MR. MELLIN:  Your Honor, I'm assuming we're not
13  sitting on Patriots' Day?
14          THE COURT:  Right.  That is one of the -- at the
15  beginning of the case, we said "except when there's a Monday
16  holiday."  This is a state holiday, not a federal holiday.  But
17  I thought about it partly as a distraction for the jurors from
18  what else is going on, but then I thought that the logistics
19  may be difficult, their getting into Boston in the usual way
20  and so on and so forth.  I just didn't want to get tangled up
21  in traffic problems and things like that.  Massachusetts
22  residents are used to having that day off and having the rest
23  of the week.  So that week would be a Tuesday-through-Friday
24  week.  Okay.  Thanks.
25  (Whereupon, at 4:18 p.m. the lobby conference concluded.)

```
 1                      C E R T I F I C A T E
 2
 3
 4         I certify that the foregoing is a correct transcript
 5   of the record of proceedings in the above-entitled matter to
 6   the best of my skill and ability.
 7
 8
 9
10
11
12   /s/Cheryl Dahlstrom                October 7, 2015
13   Cheryl Dahlstrom, RMR, CRR        Dated
14   Official Court Reporter
15
```