```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


                                  )
UNITED STATES OF AMERICA,         )
                                  )
        Plaintiff,                )
                                  )  Criminal Action
v.                                )  No. 13-10200-GAO
                                  )
DZHOKHAR A. TSARNAEV, also        )
known as Jahar Tsarni,            )
                                  )
        Defendant.                )
                                  )


          BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                 UNITED STATES DISTRICT JUDGE
```

**LOBBY CONFERENCE**

```
      John J. Moakley United States Courthouse
                  Courtroom No. 9
                 One Courthouse Way
            Boston, Massachusetts  02210
              Tuesday, March 31, 2015
                     2:57 p.m.



           Marcia G. Patrisso, RMR, CRR
              Official Court Reporter
           John J. Moakley U.S. Courthouse
          One Courthouse Way, Room 3510
            Boston, Massachusetts  02210
                   (617) 737-8728

   Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3             Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Steven D. Mellin, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10             Federal Public Defenders
           51 Sleeper Street
11         Fifth Floor
           Boston, Massachusetts  02210
12         - and -
           CLARKE & RICE, APC
13         By: Judy Clarke, Esq.
           1010 Second Avenue
14         Suite 1800
           San Diego, California  92101
15         - and -
           LAW OFFICE OF DAVID I. BRUCK
16         By: David I. Bruck, Esq.
           220 Sydney Lewis Hall
17         Lexington, Virginia  24450
           On Behalf of the Defendant
18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2           THE COURT:  So I don't know if anybody wants to do
 3   more briefing on the issue we were just dealing with.
 4           MR. WEINREB:  Yeah.  Well, we will be briefing a Rule
 5   29 motion as a whole.
 6           THE COURT:  Okay.  And it will be within that,
 7   perhaps?  Although -- well, okay.  Anybody can submit whatever
 8   they want on the issues.
 9           MR. WATKINS:  Be careful what you wish for.
10           THE COURT:  It should be by, if we could, the end of
11   the week so that we could deal with it before Monday.
12           MR. WEINREB:  Sure.
13           THE COURT:  I don't know -- the government had filed a
14   motion in limine with respect to the penalty phase evidence
15   last week sometime, and there's a response.  Has it arrived or
16   is it coming.
17           MS. CLARKE:  It's ready.
18           MR. WATKINS:  Oh, that was due at ten o'clock today.
19   It is done.  It is ready.
20           THE COURT:  Okay.  As soon as you can get it to us.
21           MR. WATKINS:  Sorry.
22           THE COURT:  That timing is not as crucial as other
23   things because that's off a little bit in the future, so.  But
24   we would like to start thinking about those issues.  Now, I
25   don't know if you've talked with Paul about the JERS project.
```

```
 1              THE CLERK:  I've been on them, Judge.  Hopefully
 2    within the next few days we'll get the CDs.
 3              THE COURT:  And everybody has to -- so all of the
 4    accounting has to be done, so everybody --
 5              THE CLERK:  We're working on that as well, Judge.
 6              THE COURT:  Okay.  And I don't know whether -- so
 7    there's a question about the physical exhibits.  You know, in a
 8    case like this where there's zillions of them, we don't
 9    typically, obviously, load them into the jury room.  They
10    should be available for inspection by the jury.  I don't know
11    how -- my thought is to find a jury room back here that is of
12    comparable size so that they could all fit in there somehow.  I
13    don't know whether the parties could agree to some kind of
14    guide to be present to help them find things.  I mean, they
15    can't just go rooting through boxes.  I don't know.  That's a
16    little unorthodox.
17              MS. CLARKE:  Well, if you put them out in order, then
18    they can find them.
19              THE COURT:  How many -- anybody have any idea of how
20    many physical exhibits there are?
21              MR. CHAKRAVARTY:  At least 700, your Honor.
22              MS. CONRAD:  700 physical as opposed to just
23    photographs?
24              THE COURT:  In evidence?
25              MR. WEINREB:  All of these boxes went in, and many of
```

1     the boxes contain little exhibits.  We could have them in the
2     courtroom if the marshals are going to keep it secure, and then
3     if they ask for any particular exhibit, we can find it for them
4     and it could be brought in.  Or if they just want to see them
5     all, we could send them in 20 by 20 or 50 by 50.  We could have
6     somebody available to do that.
7             THE COURT:  Well, that's something to think about, I
8     guess, for people.  They should be able to see them if they
9     wish.
10            Just on physical exhibits, I think there was one thing
11    we left undone, which is whether the pressure cooker exemplars
12    would be admitted formally as exhibits.  I think it's best
13    they're not.  So we'll just leave that.
14            MR. WATKINS:  May I raise one more thing?  On
15    exhibits, there is this -- actually, two D exhibits which will
16    not go in on JERS, as I understand it.  So I'm interested to
17    know how we intend to put those into the jury room.
18            THE COURT:  What we've done in the past with digital
19    evidence that isn't compatible with JERS, to have a clean
20    computer that has only that on it, and they can have that.
21            MR. WATKINS:  My concern now is what it's always been,
22    that that highlights a specific kind of evidence where that
23    interactive exhibit is going to be there for the jury to --
24            THE COURT:  JERS is interactive.
25            MR. WATKINS:  Yes, but this highlights one specific

1    class of exhibits that in a way is favorable to the government.
2            THE COURT:  Well, I just think it's controlled by the
3    way it exists.
4            MS. CONRAD:  On the 2D exhibit, in light of the Court
5    instructing them, the jury not to disregard the label on 410
6    Norfolk Street as the residence of Tamerlan and Jahar Tsarnaev,
7    can that be redacted before it goes back to the jury?
8            THE COURT:  This is the heading?  Yeah, that should
9    be.
10           MR. WEINREB:  We'll figure out a way to do that.
11           MR. CHAKRAVARTY:  We'll try to do that.
12           MS. CONRAD:  I'm not sure if all of the pieces of that
13   actually went in; for example, the path portion.
14           MR. CHAKRAVARTY:  The paths went in.
15           MS. CONRAD:  I don't know if that was actually
16   admitted as an exhibit as opposed to a chalk.  I think the maps
17   of Boylston Street were, I don't know the animation of the
18   path --
19           THE COURT:  I think it did, but that's just a
20   recollection.
21           MR. WEINREB:  We can check.  We would have to check
22   the transcript of Tony Imel's testimony because --
23           MS. CONRAD:  Because he basically agreed that it was
24   not accurate, so, in terms of them walking side by side.
25           MR. CHAKRAVARTY:  The testimony, I think --

1    MR. WEINREB:  I think the testimony will speak for
2 itself.  I don't think we did agree that it was not accurate.
3 It may be not photo realistic.
4    MR. CHAKRAVARTY:  There's one issue on the 2D.  There
5 were two, I think, overlays that were not testified to at
6 trial.  So as we had discussed, we will excise those.
7    MS. CONRAD:  So basically we'd like to see the 2D
8 before it goes in.
9    THE COURT:  Of course.
10    MR. WEINREB:  Is the clean computer something the
11 Court supplies or the government supplies?
12    THE COURT:  In the past the government has.
13    THE CLERK:  The government.
14    MS. CONRAD:  With respect to having people -- and we
15 can talk about this.  If it's a representative of the
16 prosecution team who's there to retrieve exhibits for the jury,
17 I think there certainly should be someone from the defense.  We
18 shouldn't basically have ex parte contact even if it's through
19 a court officer.
20    MR. WEINREB:  Okay.  I was just going to say we
21 wouldn't be the ones bringing it in, obviously.
22    THE CLERK:  What's that?
23    THE COURT:  No, no, no, we're talking about a guide,
24 somebody who's familiar enough with them to be able to point
25 them -- the security officer can be with them to protect the

1    integrity of the process, obviously, but they don't know
2    anything about the exhibits, so they're no help in terms of
3    finding things.  The question is whether it would be useful to
4    have a live person who could be that museum guide to tell
5    people --
6             MR. WEINREB:  All the exhibits do have exhibit
7    stickers on them.
8             THE COURT:  Maybe that's enough.  If you put them in
9    big boxes and say "Exhibits 1 through 100," you know, "101
10   through 200."
11            MR. WEINREB:  If we took -- I don't know if the Court
12   has other business to do in other cases in the meantime, but if
13   not, we could reassemble the tables in the way they were during
14   voir dire, and that would be a very big space where things
15   could be laid out for the jurors to examine --
16            THE COURT:  I'll think about that.  I'll think about
17   that.  At least we've scheduled Fridays, so we do have other
18   things.
19            We'll have to think a little bit about how we handle
20   alternate jurors once they've been separated.  I'm just -- I
21   just had that thought today, so I hadn't really thought it
22   through.  Just a couple of observations:  I don't know that it
23   would be a good idea to have six of them sitting around the
24   table in the same room, becoming a six-person jury in absentia.
25   So if you want, I'll just leave them to their lives until

1  they're needed.  They'll be needed -- if there's a second
2  phase, they'll come back and join us for the evidence.  Anyway,
3  it's just something to think about, how to handle them.
4          MR. WEINREB:  We'll give that some thought too.
5          THE COURT:  And obviously, for a second phase they
6  will know who they are.  That's unavoidable, I guess.  If they
7  don't already.
8          I think that's my list for now.  As a practical
9  matter, we'll probably not begin in the courtroom until
10 something like ten o'clock on Monday.  We'll get the jurors
11 here as usual, but there will probably be some things we'll
12 have to deal with on Monday morning.
13         How long do you think your arguments will be?  And
14 this will be --
15         MR. CHAKRAVARTY:  An hour and a half for us.
16         THE COURT:  This will be in the traditional form:
17 Government, defense, rebuttal, right?  Does that hold on the
18 second phase?
19         MR. WEINREB:  Yes.
20         THE COURT:  The same?
21         MR. WEINREB:  It does.
22         THE COURT:  Okay.
23         MR. WATKINS:  As far as the length of time?
24         THE COURT:  No, no, no, no, no.  Order.  So hour and a
25 half?

1            MR. CHAKRAVARTY:  I think that's generous, but yes.
2            MS. CLARKE:  Not that long.
3            THE COURT:  Not this time anyway.  Okay.
4            MR. WEINREB:  Your Honor, we'd ask for a date on which
5    the parties can exchange their actual witness lineups with
6    associated exhibits like we've had in the guilt phase.  I think
7    this is going to be a much more compressed phase.  I doubt the
8    government will be even an entire week, going nine to four.
9            THE COURT:  Really?
10           MR. WEINREB:  Yeah, I think four days seems likely.  I
11   mean, one can never know for sure.  And so -- and during that
12   time we're obviously going to be very busy with putting on
13   those witnesses, so we need the defense's lineup and their
14   exhibit list before the whole process starts.  And I know that
15   the beginning -- if there is a second phase, the date that
16   begins is still a little uncertain, but it's very possible the
17   parties will have motions in limine with respect to each
18   other's exhibits, and it would be useful if we had some time in
19   advance to file those for the Court to consider them.
20           MS. CLARKE:  We'll do our best.  I mean, the
21   government already knows some of our penalty phase by virtue of
22   what we noticed for guilt phase and pulled, so they're laid out
23   already.  I know that they get very nervous about this but...
24           THE COURT:  Yeah.  So, you know, obviously you never
25   know how long a jury will take in its deliberations.  If they

1     were to complete sometime within the week next week, if they
2     begin, if they finish by the end of the week we could be
3     looking at the beginning of the next week for starting even
4     with some time built in to get everybody organized.  But if it
5     wasn't Monday, it would be Wednesday or whatever.  I'd like to,
6     you know, move it along whenever, but we won't know that until
7     we know how long it takes them to do the first part of it.
8              So we'll be flexible but, you know, within five days
9     of their verdict we'd be underway on the second round.
10             MS. CLARKE:  We're very concerned with the timing of
11    our putting on the penalty phase on Patriots' Day and the day
12    of the marathon and that time around.  I mean, there's already
13    been a declaration of a One Boston Day, the 15th, there's
14    Patriots' Day and the marathon running.  And we're very
15    concerned about how to raise that issue with the Court and seek
16    some accommodation which alleviates the obvious prejudice.
17             THE COURT:  Okay.  I --
18             MS. CLARKE:  Just to give you a --
19             THE COURT:  I hear you.  I'll consider what you want
20    to propose.  I think I've said this before:  I'm not as
21    concerned.  I think this jury is now so immersed in the details
22    of this case that they're unlikely to be influenced much by
23    outside information, but I'll hear you on it.
24             MR. WEINREB:  Well, we would then propose that the
25    parties exchange witness lists and associated exhibits by

1  Friday of next week.  It seems like that would be --
2          THE COURT:  That sounds fine.  Which is the 10th, I
3  guess.
4          MR. WATKINS:  So the government would be the Friday
5  before they're going to begin on Monday in the penalty phase?
6  Your witness list to us.
7          MR. WEINREB:  Oh, I thought we were saying there would
8  be five days between them.
9          THE COURT:  That was just a marker.
10         MR. WATKINS:  Well --
11         MS. CONRAD:  But still you're saying --
12         THE COURT:  It could be.  Why don't we hold off on it.
13 Let's just see what happens the beginning of next week, see how
14 things are going.
15         I guess that's it for now.
16         MR. WEINREB:  I guess I have one thing that I would
17 just put on the record in this setting.  With respect to the
18 defense's efforts to obtain parole for foreign witnesses, since
19 the Court's order was filed, we had some discussions back and
20 forth.  The last we heard, the defense hadn't contacted ICE,
21 who they were working with directly, and we haven't heard
22 anything about it since.
23         I'm assuming no news is good news, at least from the
24 perspective of our involvement.  And I just want that -- I just
25 want to make a record of that.

```
 1              MR. WATKINS:  We left the wrong guy behind here.
 2              MS. CLARKE:  We'll raise it with the judge if we have
 3    a concern, or with you.  I don't know what else to say.
 4              THE COURT:  Okay.  I would like to have defense
 5    counsel stay for just a moment on 12.2.
 6              (The government is excused and the proceedings
 7    concluded at 3:12 p.m.)
 8                                 * * *
```

C E R T I F I C A T E

I, Marcia G. Patrisso, RMR, CRR, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 13-10200-GAO, United States of America v. Dzhokhar A. Tsarnaev.

/s/ Marcia G. Patrisso
MARCIA G. PATRISSO, RMR, CRR
Official Court Reporter

Date:  10/28/15