

# Office of the Attorney General
## Washington, D.C. 20530

August 27, 2013

<u>LIMITED OFFICIAL USE</u>

MEMORANDUM FOR CHARLES E. SAMUELS, JR.
                            DIRECTOR
                            FEDERAL BUREAU OF PRISONS

FROM:     THE ATTORNEY GENERAL

SUBJECT:   Origination of Special Administrative Measures Pursuant to
               28 C.F.R. § 501.3 for Federal Bureau of Prisons
               <u>Pretrial Inmate Dzhokhar Tsarnaev</u>

Federal Bureau of Prisons (BOP) pretrial inmate Dzhokhar Tsarnaev is charged in a thirty-count indictment with, among other things, use of a weapon of mass destruction, bombing a place of public use, carjacking, conspiracy, and firearms violations. Tsarnaev is currently housed by BOP at the Federal Medical Center Devens in Ayer, Massachusetts, pending trial. The United States Attorney for the District of Massachusetts (USA/DMA) has requested that Special Administrative Measures (SAM) be imposed on Tsarnaev because there is a substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons. The Federal Bureau of Investigation (FBI) concurs in this request.

As detailed in the attached request from the USA/DMA and as later supplemented telephonically, on April 15, 2013, Tsarnaev and his brother, Tamerlan Tsarnaev, carried out a pre-meditated and coordinated detonation of improvised explosive devices in Boston, Massachusetts, that killed, dismembered, or injured dozens of people during the Boston Marathon. Tsarnaev and his brother were inspired to commit the attack by Anwar al-Aulaqui, a deceased leader of al-Qaeda, and used bomb-making instructions from "Inspire," an al-Qaeda publication. Tsarnaev employed operational tradecraft in communicating during the time leading up to the bombing (including purchasing a dedicated cell phone to communicate with respect to the bombings), and in disposing of evidence after the attack, including discarding a remaining bomb detonator and smashing his cell phones.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 2
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 2

During the days following the attacks, as law enforcement engaged in a massive manhunt for the perpetrators, Tsarnaev and his brother made additional bombs, and Tsarnaev convinced his associates to attempt to destroy evidence related to the Boston Marathon bombing. In addition, on April 19, 2013, Tsarnaev and his brother killed a Massachusetts Institute of Technology police officer, carjacked a civilian, and attempted to kill law enforcement officers during a violent confrontation. Tsarnaev's brother was killed during the drawn-out altercation, while Tsarnaev evaded capture and eventually hid inside a drydocked boat in a residential neighborhood. While hiding, Tsarnaev scrawled messages on the boat including: "The U.S. Government is killing our innocent civilians"; "I can't stand to see such evil go unpunished"; "We Muslims are one body, you hurt one you hurt us all"; "Now I don't like killing innocent people it is forbidden in Islam but due to said [unintelligible] it is allowed"; and "Stop killing our innocent people and we will stop."

On or about April 22, 2013, following his capture, Tsarnaev was interviewed by the FBI. During the interview, Tsarnaev reaffirmed his commitment to jihad and expressed hope that his actions would inspire others to engage in violent jihad. There is no indication that Tsarnaev's intentions have changed since.

On May 3, 2013, the FBI arrested three associates of Tsarnaev for their involvement, at Tsarnaev's behest, in attempting to destroy evidence and obstruct the government's investigation. On August 8, 2013, two of these associates were indicted on charges of obstruction of justice and conspiracy to obstruct justice. The FBI continues to investigate whether additional accomplices remain at large.

On May 24, 2013, while incarcerated, Tsarnaev was permitted to call his mother in Russia, who recorded the call and subsequently released portions of the call to the media, in an apparent effort to engender sympathy for Tsarnaev. Tsarnaev has also gained widespread notoriety while incarcerated, as evidenced by his receipt of nearly one thousand pieces of unsolicited mail.

On June 27, 2013, a federal grand jury in the District of Massachusetts indicted Tsarnaev on thirty counts that included use of a weapon of mass destruction, bombing a place of public use, carjacking, conspiracy, and firearms violations.

The USA/DMA believes there is a substantial risk that Tsarnaev's communications may result in the death of or serious bodily injury to persons, based on: Tsarnaev's participation in planning and executing the Boston Marathon bombings; his ensuing acts of violence and flight to avoid apprehension; his extensive obstruction of justice; and his explicit and continuing desire to incite others to engage in violent jihad.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 3
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 3


     Based upon information provided to me of Tsarnaev's proclivity for violence, I find that
there is a substantial risk that his communications or contacts with persons could result in death
or serious bodily injury to persons.  Therefore, I am requesting that you, pursuant to 28 C.F.R.
§ 501.3, implement SAM to restrict Tsarnaev's access to the mail, the media, the telephone, and
visitors.  Implementation of the SAM will commence immediately upon notice to the inmate, and
the SAM will be in effect for one year from the date of my approval, subject to my further
direction.

1.    **General Provisions**

    a.    **Adherence to Usual United States Marshals Service (USMS), BOP, and
Detention Facility (DF) Policy Requirements** - In addition to the below-listed
SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF
policies regarding restrictions, activities, privileges, communications, etc.  If there
is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein,
where the SAM are more restrictive than usual USMS/BOP/DF policies, then the
SAM shall control.  If usual USMS/BOP/DF policies are more restrictive than the
SAM, then USMS/BOP/DF policies shall control.

    b.    **Interim SAM Modification Authority** - During the term of this directive, the
Director, Office of Enforcement Operations (OEO), Criminal Division, may
modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.    Does not create a more restrictive SAM;

        ii.    Is not in conflict with the request of the USA/DMA, FBI, or
USMS/BOP/DF, or applicable regulations; and

        iii.    Is not objected to by the USA/DMA, FBI, or USMS/BOP/DF.

    c.    **Inmate Communications Prohibitions** - The inmate is limited, within the
USMS/BOP/DF's reasonable efforts and existing confinement conditions, from
having contact (including passing or receiving any oral, written, or recorded
communications) with any other inmate, visitor, attorney, or anyone else, except
as outlined and allowed by this document, that could reasonably foreseeably result
in the inmate communicating (sending or receiving) information that could
circumvent the SAM's intent of significantly limiting the inmate's ability to
communicate (send or receive) threatening or other terrorism-related information.


LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 4
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 4


    d.    **Use of Interpreters/Translators by the USMS/BOP/DF -**

        i.    The USMS/BOP/DF may use Department of Justice (DOJ) approved interpreters/translators as necessary for the purpose of facilitating communication with the inmate.

        ii.    No person shall act as an interpreter/translator without prior written clearance/approval from the USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/DMA.

        iii.    Interpreters/translators utilized by the USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Interpreters/translators shall not be alone with the inmate, either in a room or on a telephone or other communications medium.

2.    **Attorney-Client Provisions**

    a.    **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document -** The inmate's attorney (or counsel) – individually by each if more than one – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his or her awareness and understanding of the SAM provisions and his or her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney and precleared staff[2]

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/DMA, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his or her individual capacity.

[2] "Precleared," when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's attorney with the inmate's defense, has submitted to a background check by the FBI, has

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                              Page 5
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 5

acknowledge the restriction that they will not forward third-party messages to or from the inmate.

    i.    The USA/DMA shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

    ii.    After initiation of the SAM and prior to the inmate's attorney being permitted to have attorney-client privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/DMA.

    iii.    The USA/DMA shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and to the USMS/BOP/DF.

  b.    **Attorney Use of Interpreters/Translators -**

    i.    **Necessity Requirement -** No interpreter/translator shall be utilized unless absolutely necessary where the inmate does not speak a common language with the attorney. Any interpreter/translator shall be precleared.[3]

    ii.    **Attorney Immediate Presence Requirement -** Any use of an interpreter/translator by the attorney shall be in the physical and immediate presence of the attorney – *i.e.*, in the same room. The attorney shall not

---

successfully been cleared by the FBI, and has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his or her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

    [3] "Precleared," when used with regard to an interpreter/translator, refers to an interpreter/translator who is actively assisting the inmate's attorney with the inmate's defense, has submitted to a background check by the FBI, has successfully been cleared by the FBI, and has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                    Page 6
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 6

patch through telephone calls, or any other communications, to or from the
inmate.

    iii.    **Translation of Inmate's Correspondence** - An attorney of record may
only allow a federally approved interpreter/translator to translate the
inmate's correspondence as necessary for attorney-client privileged
communication.

c.    **Attorney-Client Privileged Visits** - Attorney-client privileged visits may be
contact or non-contact, at the discretion of the USMS/BOP/DF.

d.    **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may
disseminate the contents of the inmate's communication to third parties for the
sole purpose of preparing the inmate's defense – and not for any other reason – on
the understanding that any such dissemination shall be made solely by the
inmate's attorney, and not by the attorney's staff.

e.    **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** -
The inmate's attorney's precleared paralegal(s) may meet with the inmate without
the need for the inmate's attorney to be present.  These meetings may be contact
or non-contact, at the discretion of the USMS/BOP/DF.

f.    **Simultaneous Multiple Legal Visitors** - The inmate may have multiple legal
visitors provided that at least one of the multiple legal visitors is the inmate's
attorney or precleared paralegal.  These meetings may be contact or non-contact,
at the discretion of the USMS/BOP/DF.  An investigator or interpreter/translator
may not meet alone with the inmate.

g.    **Legally Privileged Telephone Calls** - The following rules refer to all legally
privileged telephone calls or communications:

    i.    **Inmate's Attorney's Precleared Staff May Participate in Inmate
Telephone Calls** - The inmate's attorney's precleared staff are permitted
to communicate directly with the inmate by telephone, provided that the
inmate's attorney is physically present and participating in the legal call as
well.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 7
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 7

    ii.    **Inmate's Initiation of Legally Privileged Telephone Calls** - Inmate-initiated telephone communications with his attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney.  This privilege is contingent upon the following additional restrictions:

    (1)    The inmate's attorney will not allow any non-precleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

    (2)    The inmate's attorney must instruct his or her staff that:

    (a)    The inmate's attorney and precleared staff are the only persons allowed to engage in communications with the inmate.

    (b)    The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's calls, or any other communications, to third parties.

    (3)    No telephone call/communication, or portion thereof, except as specifically authorized by this document:

    (a)    Is to be overheard by a third party.[4]

    (b)    Will be patched through, or in any manner forwarded or transmitted, to a third party.

    (c)    Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties.  This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 8
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 8

        (d)    Shall be in any manner recorded or preserved.[5]  The inmate's attorney may make written notes of attorney-client privileged communications.

    (4)    If the USMS/BOP/DF, FBI, or USA/DMA determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

h.    **Documents Provided by Attorney to Inmate** - During a visit, the inmate's attorney may provide the inmate with, or review with the inmate, documents related to his defense, including discovery materials, court papers (including indictments, court orders, motions, etc.), and/or material prepared by the inmate's attorney, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator.  Any documents not related to the inmate's defense must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2.i. and 3.g.  Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

i.    None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/DMA and FBI.

ii.    The USA/DMA may authorize additional documents to be presented to the inmate.  If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document may be obtained from the USA/DMA without the need to formally seek approval for an amendment to the SAM.

---

[5] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                           Page 9
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 9

      i.     **Legal Mail**[6] - The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail, or any portion of its contents (legal or otherwise), to third parties.

             In signing the SAM acknowledgment document, the inmate's attorney and precleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his or her staff will forward third-party mail to or from the inmate.

3.    **Inmate's Non-legal Contacts**

    a.    **Non-legally Privileged Telephone Contacts -**

        i.    The inmate is limited to non-legally privileged telephone calls with his immediate family members.[7]

        ii.    The quantity and duration of the inmate's non-legally privileged telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one call per month.

    b.    **Rules for Telephone Calls -** For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

        i.    Is to be overheard by a third party.

        ii.    Is to be patched through, or in any manner forwarded or transmitted, to a third party.

        iii.    Shall be divulged in any manner to a third party.

---

[6] "Legal mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                    Page 10
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 10

      iv.     Shall be in any manner recorded or preserved.[8]

All telephone calls shall be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is available to contemporaneously monitor the telephone call. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

   c.   **Telephone SAM Restriction Notifications** - For all non-legally privileged telephone calls to the inmate's immediate family member(s):

      i.     The USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

      ii.    The USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the SAM restrictions. The USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

      iii.   The USMS/BOP/DF shall document each such telephone notification.

   d.   **Family Call Monitoring** - All calls with the inmate's immediate family member(s) shall be:

      i.     Contemporaneously monitored by the FBI.

      ii.    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

      iii.   A copy of each inmate/immediate family member telephone call recording shall be provided by the USMS/BOP/DF on a single, individual cassette tape or compact disk (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

---

[8] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                    Page 11
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 11

e.   **Improper Communications** - If telephone call monitoring or analysis reveals that
     any call or portion of a call involving the inmate contains any indication of a
     discussion of illegal activity, the soliciting or encouraging of acts of violence or
     terrorism, or actual or attempted circumvention of the SAM, the inmate shall not
     be permitted any further calls to his immediate family members for a period of
     time to be determined by the USMS/BOP/DF.  If contemporaneous monitoring
     reveals such inappropriate activity, the telephone call may be immediately
     terminated.

f.   **Non-legal Visits** -

     i.    **Limited Visitors** - The inmate shall be permitted to visit only with his
           immediate family members. The visitor's identity and family member
           relationship to the inmate will be confirmed by the USMS/BOP/DF and
           FBI in advance.

     ii.   **English Requirement** - All communications during non-legal inmate
           visits will be in English unless a fluent USMS/BOP/DF- or FBI-approved
           interpreter/translator is readily available to contemporaneously monitor the
           communication/visit.  Arranging for an interpreter/translator may require
           at least fourteen (14) days' advance notice.

     iii.  **Visit Criteria** - All non-legal visits shall be:

           (1)   Contemporaneously monitored by the USMS/BOP/DF and/or FBI,
                 in a manner that allows such visits to be analyzed for indications
                 the visit is being used to pass messages soliciting or encouraging
                 acts of violence or other crimes, or to otherwise attempt to
                 circumvent the SAM.

           (2)   Permitted only with a minimum of fourteen (14) calendar days'
                 advance written notice to the USMS/BOP/DF facility where the
                 inmate is housed.

           (3)   Without any physical contact.  All such meetings shall be non-
                 contact to protect against harm to visitors or staff.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                     Page 12
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 12

        (4)    Limited to one adult visitor at a time.  However, the FBI-verified
children of the inmate may visit with a pre-approved adult visitor.

g.    **Non-legal Mail -** Non-legal mail is any mail not clearly and properly addressed
to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing).
Non-legal mail is limited to only the inmate's immediate family, U.S. courts,
federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or
other federal law enforcement entities.

    i.    **General correspondence with limitations -** Correspondence is restricted
to immediate family members.  The volume and frequency of outgoing
general correspondence with immediate family members may be limited to
three pieces of paper (not larger than 8½" x 11"), double-sided, once per
calendar week to a single recipient, at the discretion of the
USMS/BOP/DF.  The identity and family member relationship to the
inmate will be confirmed by the USMS/BOP/DF and FBI.

    ii.    **General correspondence without limitations -** There is no volume or
frequency limitation on correspondence to/from U.S. courts, federal
judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and
other federal law enforcement entities, unless there is evidence of abuse of
these privileges, threatening correspondence is detected, circumvention of
the SAM is detected, or the quantity to be processed becomes
unreasonable to the extent that efficient processing to protect the security,
good order, or discipline of the institution, the public, or national security
may be jeopardized.

    iii.    All non-legal mail shall be –

        (1)    **Copied -** Shall be copied (including the surface of the envelope) by
the warden, or his or her designee, of the facility in which the
inmate is housed.

        (2)    **Forwarded -** Shall be forwarded, in copy form, to the location
designated by the FBI.

        (3)    **Analyzed -** After government analysis and approval, if appropriate,
the inmate's incoming/outgoing non-legal mail shall be forwarded

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                    Page 13
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 13

> to the USMS/BOP/DF for delivery to the inmate (incoming), or
> directly to the addressee (outgoing).

    iv.    The federal government shall forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

        (1)    A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

        (2)    A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

        (3)    A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

    v.    **Mail Seizure** - If outgoing/incoming mail is determined by the USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action.  The inmate shall be notified in writing of the seizure of any mail.

4.    **Communication With News Media**

The inmate shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, his attorney, or a third party; or otherwise.

5.    **Religious Visitation**

    a.    The inmate shall not be allowed to engage in group prayer with other inmates.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                    Page 14
Pursuant to 28 C.F.R. § 501.3
Inmate - Tsarnaev, Page 14

       b.     If a USMS/BOP/DF- and/or FBI-approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6.    **No Communal Cells and No Communication Between Cells**

       a.     The inmate shall not be allowed to share a cell with another inmate.

       b.     The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7.    **Cellblock Procedures**

       a.     The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

       b.     The inmate shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8.    **Commissary Privileges**

The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by the USMS/BOP/DF to be capable of being converted into dangerous instruments.

9.    **Access to Mass Communications**

To prevent the inmate from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

       a.     **Publications/Newspapers -**

             i.     The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public. This

LIMITED OFFICIAL USE

determination is to be made by the USMS/BOP/DF, in consultation with the USA/DMA.

ii.  Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to the inmate.

iii.  If restricted by the USMS/BOP/DF rules, access to a publication will be denied. If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination. If the FBI's expertise is required, the publication will be forwarded to the FBI for review. The USMS/BOP/DF will also forward the publication to the FBI if translations are needed to make that determination. (In these cases, the FBI shall respond to the USMS/BOP/DF within fourteen (14) business days.) The inmate shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

iv.  In order to avoid the passing of messages/information from inmate to inmate, the inmate shall not be allowed to share the publication(s) with any other inmates.

b.  **Television and Radio** - The inmate is authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

c.  **Termination or Limitation** - If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to the inmate relating to the furtherance of terrorist or criminal activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

10.  **Access to Books**

The inmate may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution. This initial determination is to be made by the USMS/BOP/DF and, if the

LIMITED OFFICIAL USE

USMS/BOP/DF determines that the FBI's expertise is required, the book(s) will be forwarded to the FBI for review.  In conducting its analysis, the FBI will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by this particular inmate would pose a substantial threat to national security.

In order to avoid the passing of messages/information from inmate to inmate, the inmate shall not be allowed to share books with any other inmates.

11.    **Transfer of Custody**

In the event that the inmate is transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for this inmate shall continue in effect, without need for any additional DOJ authorization.

## CONCLUSION

The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to commit additional criminal activity.  Moreover, these measures are the least restrictive that can be tolerated in light of the ability of this inmate to aid, knowingly or inadvertently, in plans that create a substantial risk that the inmate's communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to co-conspirators to arrange terrorist or criminal activities.

With respect to mail privileges, the SAM are reasonably necessary to prevent the inmate from receiving or passing along critically timed messages.  Although I recognize that eliminating the inmate's mail privileges entirely may be an excessive measure except in the most egregious of circumstances, I believe that delaying mail delivery and allowing authorized personnel to examine a copy of the mail is sufficient at this time to adequately ensure that the mail is not used to deliver requests for, or to assist in, violent and/or terrorist activities.  Under these procedures, the inmate can relate personal news to family members, even if delayed, but he may find it difficult or unwise to pass along restricted information.

To the extent that the use of an interpreter/translator is necessary, the government has the right to ensure that the interpreter/translator given access to the inmate is worthy of trust.

<u>LIMITED OFFICIAL USE</u>

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if the inmate advocates terrorist, criminal, and/or violent offenses, or if he makes statements designed to incite such acts. Based upon the inmate's past behavior, I believe that it would be unwise to wait until after the inmate solicits or attempts to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent the inmate from receiving and acting upon critically timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio. Although I recognize that eliminating the inmate's access to such media may be an excessive measure except in the most egregious of circumstances, I believe that limiting and/or delaying such access may interrupt communication patterns the inmate may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent, and/or criminal activities.

## SAM CONTACT INFORMATION

Any questions that you or your staff may have about this memorandum or the SAM directed herein should be directed to the Office of Enforcement Operations, Criminal Division, U.S. Department of Justice, 1301 New York Avenue, N.W., JCK Building, Room 1200, Washington, D.C. 20530-0001; telephone (202) 514-6809; and facsimile (202) 616-8256.