UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, also | ) | |
| known as Jahar Tsarni, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |


BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


**LOBBY CONFERENCE**


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Wednesday, April 8, 2015
8:58 a.m.


Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3              Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         On Behalf of the Government

 6         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, Federal Public Defender
 7         51 Sleeper Street
           Fifth Floor
 8         Boston, Massachusetts  02210
           - and -
 9         CLARKE & RICE, APC
           By: Judy Clarke, Esq.
10         1010 Second Avenue
           Suite 1800
11         San Diego, California  92101
           - and -
12         LAW OFFICE OF DAVID I. BRUCK
           By: David I. Bruck, Esq.
13         220 Sydney Lewis Hall
           Lexington, Virginia  24450
14         On Behalf of the Defendant

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE COURT:  Okay.  So I gave you my proposed answers.

MR. WEINREB:  So the government has no quarrel with the Court's answers as far as they go, but we request that they go further.  Actually, with respect to the first question, we'd be content just with the first sentence.  And I don't know that it's actually necessary to repeat all the rest.  We had a slightly different formulation of it we were going to propose, but it more or less means the same thing.

THE COURT:  The next several paragraphs I've just taken directly from the previous instruction.  I just thought it would be useful to give them the whole -- actually, it's still not the whole, but they have the text of the original instructions anyway, but I just thought it might be easier to just repeat the two elements.

MR. WEINREB:  I mean, I think it's true that the instructions sometimes say "aid or abet" or "aid and abet" and I think they may be over-thinking it --

THE COURT:  They are over-thinking it.

MR. WEINREB:  But to simply reassure them that it's a single concept, the two words.

THE COURT:  All right.  Is that it on that?

MR. WEINREB:  Yes.

THE COURT:  So let's deal with that.

MS. CONRAD:  Basically we agree.  I was going to

1    propose to say, "The words aid and abet" -- "You shouldn't

2    focus on the definition of 'aid and abet' or 'aid or abet' but

3    on the elements of the offense, as I've instructed you," so I'm

4    fine with that.  We actually agree.

5            MR. WEINREB:  We have a proposed answer.

6            THE COURT:  Okay.

7            MR. WEINREB:  As for the answer to the second

8    question, however, we believe that the -- what is prompting

9    that question is confusion about the following:  The theory of

10   the government's case and the theory of the indictment is that

11   the conspiracies to -- the three conspiracies, which are

12   bombing conspiracies, lasted until the last of the bombs were

13   thrown in Watertown on April 19th, but the only place in the

14   indictment in which that theory is spelled out is in the overt

15   act section.

16           That section was not given to the jury.  And at the

17   time that the Court proposed not giving it to the jury, that

18   seemed a somewhat harmless omission to us, but it now appears

19   to us that it has confused them.  In particular, if you look at

20   question -- this is a two-part question, and they seem -- what

21   seems to be concerning them is whether the death of Officer

22   Collier can be said to have resulted from the conspiracy, the

23   bombing conspiracy, and I believe that may be because they're

24   confused about whether the conspiracy charges allegations in

25   the indictment pertain only to the bombings that occurred at

1    the Boston Marathon as opposed to all the bombings in the case.

2    We believe had they had the overt acts it would have been clear

3    that the government's allegation spanned the entire length of

4    the bombing campaign that began on April 15th and concluded on

5    April 19th.

6            And so we have proposed this formulation:

7    Either -- we would propose either that they be given the overt

8    acts, or if it's less confusing, that they simply be informed

9    that the government alleges that the conspiracies lasted from

10   the dates that are alleged in the indictment that there were

11   overt acts committed in furtherance of it throughout its

12   length, and that one of those overt acts that is alleged to

13   have occurred in furtherance in the indictment was the death of

14   Officer Collier, or the killing of Officer Collier.

15           MS. CONRAD:  May I?  First of all, I wrote something

16   out too, although largely what the Court came up with is pretty

17   close to what -- and I would say actually better -- and I'm not

18   just saying that -- than what I came up with.

19           But first of all, in response to Mr. Weinreb's point,

20   I mean, we agreed the overt acts weren't going to the jury,

21   didn't go to the jury.  The conspiracy the indictment alleges

22   from at least February 2013 up to and including on or about

23   April 19th.  So the timeframe is alleged in the indictment and

24   there is no reason to send in the overt acts which are not

25   required that the government prove, many of which weren't the

1     subject of evidence at the trial, much less to focus and

2     highlight the allegation about Officer Collier.

3          The one thing I would say about what the Court has

4     proposed is that it should be, I would submit, that what they

5     must find in order to convict is the conspiracy charged in the

6     indictment.  So it's not enough for them to determine the scope

7     of the conspiracy and the duration of the conspiracy.  Because

8     I think what you have here actually is -- and I have a copy of

9     the *United States versus Morrow* and then a couple of other

10    First Circuit cases that I think are very applicable on the

11    issue of multiple-versus-single conspiracies.

12          Because I think on the evidence here the jury could

13    find -- and I think they should be instructed on that.  I think

14    they could find on the evidence here either arguably the

15    government's theory that there was one single conspiracy, maybe

16    with respect to use of a weapon of mass destruction, not so

17    much as to bombing of a public place.

18          And one of the other things I was going to ask the

19    Court to instruct is that the conspiracy ends when its

20    objective is accomplished.  So the government's evidence here,

21    as argued in the closing, was that after the Boston Marathon

22    bombing, Mr. Tsarnaev returned to his daily life and went about

23    his business, suggesting that the conspiracy had ended -- had

24    accomplished its purpose.  And that after the pictures were on

25    TV, then they came up with this plan to build more bombs, to

1    murder Officer Collier and so forth.  Those are two separate

2    conspiracies.

3         I understand one could say that the evidence is

4    capable of leading to either of those two conclusions, but if

5    it leads to the latter conclusion that there were two or more

6    separate conspiracies, then the government has not proved

7    beyond a reasonable doubt the charges in the indictment.

8         And I have a couple of cases with me, they're cited in

9    there, First Circuit cases having to do with, for example, a

10   conspiracy to rob where the evidence showed only that the

11   defendant conspired to commit one robbery but the indictment

12   charged conspiracy to commit a string of robberies.  So the

13   other thing, in addition to -- that it ends when the purpose is

14   accomplished, I think I put in there that -- I put something in

15   there I think about multiple conspiracies.

16        The other thing I would say is that the death must be

17   in terms of "death resulting," that it must be within the scope

18   of the conspiracy.  I realize I didn't object to this in the

19   Court's original instructions, but the Court's instruction on

20   death resulting from a conspiracy was that the death would not

21   have occurred but for the crime, which is the language from

22   *Burrage* when you're talking about a substantive offense.

23        But I think it's different when you're talking about a

24   conspiracy because you cannot be held liable for a death that

25   resulted sort of from the actions of a coconspirator if it was

1    not in furtherance of the original conspiracy.  But the Court

2    did instruct them with respect to *Pinkerton*.

3         I'm not trying to overly complicate this but I think

4    the single multiple conspiracy point is an important one and I

5    think the conspiracy charged is an important one because as

6    much -- and I totally agree with the way the Court has laid

7    this out here, that they have to find the scope and what the

8    scope of the defendant's agreement was.  But I think it has to

9    be somehow tied to what's charged in the indictment.

10        MR. WEINREB:  May I respond?

11        So, your Honor, this is a single question separated by

12   a line.  And the question begins by asking whether the

13   conspiracy pertains to a sequence of events over multiple days

14   or a distinctive end.  But a conspiracy is an agreement.  It

15   doesn't require any events to take place.

16        And so the question does not seem to be directed so

17   much to whether a conspiracy can last more than one day, which

18   is what the Court's answer is mostly focused on, but rather,

19   the events that may occur in the course of the conspiracy.  And

20   it is undoubtedly focused on the "death results" because that

21   is the only -- since there were no overt acts given to the jury

22   to decide upon, the only event that they are required to

23   determine occurred that pertains to the conspiracy is whether

24   death resulted.  So I think that it is fair for the government

25   to ask that the answer focus on the gravamen of the jury's

1   concern here.

2        The only way that -- it is unusual for a case to

3   charge that something -- an action resulted from the

4   conspiracy, but it is not unusual -- in fact, it's extremely

5   common to charge that acts were committed in furtherance of the

6   conspiracy.  And in this case the government did, in fact,

7   charge that the death of Officer Collier -- we specifically

8   charged that that was an act in furtherance of the conspiracy.

9        That seems to embrace Ms. Conrad's concern that it

10   be -- that the death result not accidentally or simply by

11   coincidence from a conspiracy, but that it had been within the

12   scope of the conspiracy, it had been in furtherance of the

13   conspiracy.

14        I don't believe it's the case that the conspirators

15   must agree ahead of time that these deaths are part of the

16   object of the conspiracy.  That is not what it means for

17   something to result from a conspiracy or from something to be

18   an act in furtherance of the conspiracy.  They simply have to

19   agree on a -- to do something the law forbids, such as bombing

20   a place of public use, using a weapon of mass destruction.  And

21   then various acts such as stealing a gun in order to arm

22   themselves for a continuing bombing campaign can be an act in

23   furtherance of the conspiracy.

24        So I think it would affirmatively mislead them to

25   suggest that these A, B, C and D events were acts that had to

1    be part of the agreement.

2              MS. CONRAD:  Well --

3              MR. WEINREB:  That's simply not true.

4              MS. CONRAD:  -- I would agree with that last part, and

5    if I said that, I misspoke.  I think the deaths have to result

6    from acts in furtherance of the original conspiracy.  In other

7    words, you can't add another conspiracy on; it's got to be

8    within that scope.  So that's what I meant to say.

9              But just this point about highlighting Officer

10   Collier, we really object --

11             THE COURT:  No, I'm not going to do that.

12             MS. CONRAD:  Okay.

13             THE COURT:  So I think what I will add is a reminder

14   that -- I'll double-check it, but I think I can say -- your

15   proposal as the government alleges, I may say as the indictment

16   alleges in Counts 1, 6 and 11, conspiracies that span these

17   dates, and that their focus should be on a conspiracy as

18   alleged in the indictment.  There are three.  They may be the

19   same, they may be different.  It's up to them.  And leave it at

20   that, and otherwise use what I have.

21             But I'll draw their attention to the span that is

22   alleged in the indictment which takes -- I think partially

23   meets your point, it takes it through April 19th.  But I'm not

24   going to get specific about details of any of the conspiracies.

25             MS. CONRAD:  What about the point that it ends when

1    its purpose is accomplished?

2            THE COURT:  I don't think so.

3            MR. WEINREB:  Furthermore, your Honor, for the record,

4    we would -- we disagree with the characterization that the

5    government argued in any way that the conspiracy ended and then

6    a new one began.  What the government argued was that

7    Mr. Tsarnaev went back to his former life in order to lay low,

8    essentially, and wait till the time was right for the next

9    bombings to occur.

10            MS. CONRAD:  I just meant that the jury could

11   interpret the evidence that way, not that you argued it.

12            THE COURT:  All right.  Thank you.

13            COUNSEL IN UNISON:  Thank you, your Honor.

14            (The proceedings adjourned at 9:11 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3            I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

 4    the United States District Court, do hereby certify that the

 5    foregoing transcript constitutes, to the best of my skill and

 6    ability, a true and accurate transcription of my stenotype

 7    notes taken in the matter of Criminal Action No. 13-10200-GAO,

 8    United States of America v. Dzhokhar A. Tsarnaev.

 9

10    /s/ Marcia G. Patrisso
      MARCIA G. PATRISSO, RMR, CRR
11    Official Court Reporter

12
      Date:  10/29/15
13

14

15

16

17

18

19

20

21

22

23

24

25
```