UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | (Leave to file granted on 12/4/15) |
| Defendant | ) | |

**SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR NEW TRIAL**

The United States of America, by and through its undersigned counsel, respectfully submits this supplemental memorandum in support of its opposition to Tsarnaev's motion for judgment notwithstanding the verdict and new trial. This memorandum explains why the "divisibility" of crimes as that term is used in *Descamps v. United States*, 133 S.Ct. 2276 (2013), does not turn a formalistic distinction between "elements" and "means." It also demonstrates that even assuming for the sake of argument that the predicate statutes underlying the section 924(c) counts in this case proscribe both violent and non-violent versions of a criminal offense, *Shepard*-approved documents reveal – with respect to at least some of the predicates – that the jury convicted Tsarnaev of the violent versions.

**ARGUMENT**

18 U.S.C. § 924(c)(1) mandates enhanced penalties for offenders who arm themselves when committing a "crime of violence" or drug trafficking crime. Section 924(c)(3)(a) defines "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." In our opposition to Tsarnaev's motion for new trial we demonstrated that all of the predicate crimes underlying the section 924(c) counts in the indictment are "crimes of violence" no matter which versions of the

crimes were committed, because all of the versions necessarily involve the use of actual, attempted, or threatened physical force against the person or property of another.  Tsarnaev disagrees.  He argues that the statutes defining the predicate crimes proscribe both violent and non-violent non-conduct.  As set forth below, even assuming Tsarnaev is correct, an examination of the indictment, jury instructions, and verdict form is authorized by *Descamps v. United States* and reveals in several instances that violent versions of the predicate offenses were charged and proved.

      I.      Determining The Divisibility of a Crime Does Not Require Parsing It Into "Elements" And "Means."

Section 924(c) does not explain how to determine whether an "offense" has "as an element" the actual, attempted, or threatened use of physical force.  In making that same determination under the similarly-worded Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), however, the Supreme Court has mandated a "formal categorical approach":  a court "must look only to the statutory definitions of the prior offenses . . . and not to the particular facts underlying those convictions."  *Taylor v. United States*, 495 U.S. 575, 600 (1990).  The Court has also authorized a "modified categorical approach" in cases where a statute proscribes both violent and non-violent versions of an offense; in those cases, a court may consider certain documents -- including the indictment, jury instructions, and verdict form -- to determine whether the violent or the non-violent version of the offense was found by the jury.  *See United States v. Shepard*, 544 U.S. 13, 20-21 (2005).  In *Shepard*, for example, the defendant had pleaded guilty on four occasions to violating a Massachusetts burglary statute, Mass. Gen. Laws Ann., ch. 266, § 16, that prohibits burglary of a "building, ship, vessel or vehicle."  Under the ACCA, "burglary" is a crime of violence only if it involves a building or enclosed space.  *See* 544 U.S. at 15-16.  The Court held that because no approved "judicial record" reflected whether

the defendant in *Shepard* had been convicted of burglarizing a building rather than a ship, vessel, or vehicle (the charging document simply tracked the language of the statute, mentioning all four possibilities), his convictions did not qualify as "violent" for ACCA purposes. *Id.* at 26.

In *Descamps*, the Court held that the modified categorical approach applies only to "divisible" statutes. *See Descamps*, 133 S.Ct.at 2281-82. The Court explained that a "divisible" statute "comprises multiple, alternative versions of the crime," some violent, some not. *Id.* at 2284. By contrast, an indivisible statute is "one not containing alternative elements . . . [but] that criminalizes" an offense that can be committed both violently and non-violently. *Id.* at 2281.

Tsarnaev's argument that the section 924(c) predicates in this case are not divisible depends partly on a spurious distinction between "elements" and "means." He argues that a statute is divisible if it specifies alternative "elements" (i.e. circumstances on which the jury must unanimously agree), but indivisible if it specifies alternative "means" of committing the offense (i.e. circumstances on which the jury may disagree yet still convict). The *Descamps* Court, however, was not concerned with a formalistic distinction between "elements" and "means." It used "divisible" to mean simply any offense that covers some conduct that is a crime of violence, and some that is not, in divisible provisions, where the provision that gave rise to the defendant's conviction can be determined from an examination of the documents approved in *Shepard*. Put another way, *Descamps* held that if a statute specifies alternative means of committing a crime, but *Shepard*-approved documents reveal that the jury was presented with only one of those alternatives (and thus had to find it unanimously), then that alternative is an "element" for purposes of divisibility analysis.

This understanding of "divisible" is evident in the majority's discussion of Justice Alito's dissent in *Descamps*. Justice Alito wrote that the Court had applied the modified categorical

approach in several earlier cases where the statutes set out "merely alternative means, not alternative elements" of an offense. *Id.* at 2297 (Alito, J., dissenting). The Court disagreed that the statutes in those cases set out alternative means rather than alternative elements. *Id.* at 2285. n.2. But it went on to say, in effect, that it made no difference. The Court wrote:

> And if the dissent's real point is that distinguishing between 'alternative elements' and 'alternative means' is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in *Taylor* and *Shepard* -- i.e., indictment, jury instructions, plea colloquy, and plea agreement -- would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense."

*Id.* In other words, when a law is drafted in the alternative, there is no need formally to classify the alternatives as "elements" or "means," because an alternative is revealed to be an "element" for purposes of divisibility analysis if *Shepard*-approved documents show that the alternative was found by the jury unanimously and thus gave rise to the defendant's conviction.

This understanding of "divisible" also comports fully with the principles that underlie the Court's opinion. The Court held that applying the modified categorical approach to an indivisible statute would "contravene our prior decisions and the principles underlying them" by "authorizing a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test." *Id.* at 2281-82. The Court thus understood an "indivisible" statute to be one that cannot be categorized as violent or non-violent without examining "information about a case's underlying facts." But whether a statutory alternative is classified as an "element" or a "means" does not affect a court's ability to categorize an offense without examining information about a case's underlying facts if *Shepard*-approved documents reveal which of the several alternatives gave rise to the defendant's conviction.

The idea that a statutory circumstance is functionally an "element" in some cases even if the statute's drafters did not classify it as one is familiar from the *Apprendi* line of cases.  In *Apprendi*, 530 U.S. 466 (2000), the Court held that any statutory fact -- regardless of its classification -- that increases the statutory maximum sentence for an offense must be deemed an "element" of the offense – i.e. charged in the indictment and found by the jury beyond a reasonable doubt.  The *Descamps* Court held, analogously, that any factual circumstance set forth in a criminal statute -- even if it is one of several means of committing an offense -- is an "element" for divisibility purposes if *Shepard*-approved documents reveal that the jury in convicting the defendant was required to find it unanimously

The Descamps Court gave an example of a hypothetical divisible crime consistent with this understanding of "divisible": "a burglary statute . . . that prohibits 'entry of an automobile as well as a building.'"  The Court explained:

> One of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not.  In a typical case brought under the statute, the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly.  So if the case involves entry into a building, the jury is 'actually required to find all the elements of generic burglary,' as the categorical approach demands.  Ibid.  But the statute alone does not disclose whether that has occurred.  Because the statute is "divisible" -- i.e., comprises multiple, alternative versions of the crime -- a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary."

Id. at 2284.  The Court's observation that "[in] a typical case . . . the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly," reflects an understanding that what matters for divisibility analysis is whether the statute actually specifies alternatives and whether *Shepard*-approved documents reveal that one of those alternatives (but not both) gave rise to the defendant's conviction.  It makes no difference in the example whether the alternatives are properly classified as "elements" or "means" – an issue not even discussed.

5

The *Descamps* Court also identified an indivisible statute: California Penal Code Ann. § 459 (West 2010), which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." *Descamps*, 133 S.Ct. at 2282. To qualify as "burglary" under the ACCA, a state burglary statute must require that the entry be unlawful. *Id.* California's statute does not. The Court found the statute to be indivisible because it does not specify alternative versions of the crime, one involving unlawful entry and one involving lawful entry. Accordingly, in the case before the Court, neither alternative appeared in the charging document, and the only way to establish if the entry was unlawful was to examine the facts underlying the defendant's conviction, which both the categorical and modified categorical approach forbid.

The First Circuit's cases concerning the divisibility of various statutes have never made any distinction between elements and means, either before or after *Descamps*. For example, in <u>United States v. Castro-Vasquez</u>, 802 F.3d 28 (1st Cir. 2015), a post-*Descamps* case (and the First Circuit's latest decision in this area), the court considered Puerto Rico's robbery statute, which criminalizes a person's "unlawfully tak[ing] personal property belonging to another in the immediate presence of said person and against his/her will by means of violence or intimidation," P.R. Laws Ann. Tit. 33, § 4826. The court characterized this as an "apparently divisible robbery statute" that establishes "alternative crimes" consisting of "robbery either by 'violence' or by 'intimidation.'" <u>Id.</u> at 37. The court did so even though the statute expressly identifies "violence" and "intimidation" as alternative "means" of committing the crime.

The Tenth Circuit has been even more explicit. In *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014), the question was whether a defendant convicted of violating Oklahoma's general conspiracy statute had committed a crime of violence. That statute states: "If two or


more persons conspire . . . [t]o commit any crime . . . they are guilty of a conspiracy." Okla. Stat. Ann. tit. 21, § 421(A). Noting that the statute "cross-references all state criminal offenses," the Tenth Circuit held that it is divisible because it "lays out 'multiple, alternative versions of the crime' of conspiracy, according to what underlying crime provides the conspiracy's object." *Trent*, 767 F.3d at 1057. The court then held that "the various statutes cross-referenced by the Oklahoma conspiracy statute" are "'elements' (in the sense of the word used by *Descamps*)," i*d.* at 1058, regardless of whether under state law they are "alternative elements or just alternative means," *id.* at 1059, because the *Descamps* Court's use of "elements" was simply "shorthand" that "capture[d] the Court's concerns in explaining the proper sphere of the categorical approach." *Id.* at 1060. In other words, the *Descamps* Court used "elements" as shorthand for all statutory circumstances in divisible provisions that must be found unanimously by the jury (or admitted by the defendant).

To the government's knowledge, only a panel of the Ninth Circuit, in a case called *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), has held that a statute is divisible only if it contains multiple alternative elements as opposed to multiple alternative means. *Id.* at 1086. But nine of the Ninth Circuit judges (a minority) voted to rehear that decision en banc, explaining that "[t]he panel's opinion simply ignores, without explanation, the Court's clear command" in *Descamps* to disregard any formal distinction between "elements" and "means." *Rendon v. Holder*, 782 F.3d 466 (9th Cir. 2015) (Graber, J., dissenting from denial of petition for rehearing en banc). And in *Almanza-Arenas v. Lynch*, 785 F.3d 366 (9th Cir. 2015), a post-*Rendon* case about divisibility, the Ninth Circuit has granted en banc review and allowed supplemental briefing on the significance of the "elements" vs. "means" distinction. The law in the Ninth Circuit is therefore unsettled.

In sum, the section 924(c) predicates in this case are divisible if they specify alternative versions of the offense and an examination of the indictment, jury instructions, and/or verdict form reveal which version Tsarnaev was convicted of committing in the corresponding section 924(c) counts.

In convicting Tsarnaev of the section 924(c) offenses, the jury made special findings that provide additional information about how the corresponding predicate crimes were committed. For example, in Count Twenty, the jury found not only that Tsarnaev had carjacked a vehicle but that "during and in relation to" the carjacking he "brandished" a "firearm" (or aided and abetted another in doing so). The Supreme Court has never decided whether the language of section 924(c) (alone or in combination with other factors) mandates a categorical approach to the "crime of violence" determination, or whether, even assuming it does, a court is precluded from considering a jury's special findings in making that determination. The government has assumed for purposes of argument that a court must take a categorical approach and may not consider a jury's special findings unless those findings effectively replicate divisible provisions of the predicate offense; but it does not concede that these assumptions are mandated by law and reserves the right to argue the opposite in future proceedings (in this case and others) if the need arises.

    II.    *Shepard*-Approved Documents Show That the Jury Convicted Tsarnaev of Versions of Certain Predicate Offenses That Even Tsarnaev Appears to Concede Are Violent Versions.

    A.    <u>Use of a weapon of mass destruction (Counts 3, 5, 16, 24, 26, 28, 30)</u>

18 U.S.C. § 2332a(a) provides that "A person who . . . uses a weapon of mass destruction . . . against any person or property within the United States . . . shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for

any term of years or for life."  Another paragraph of the statute defines a "weapon of mass destruction" as "(A)  any destructive device as defined in section 921 of this title; (B)  any weapon that is designed or intended to cause death or serious bodily injury through the release, dissemination, or impact of toxic or poisonous chemicals, or their precursors; (C)  any weapon involving a biological agent, toxin, or vector (as those terms are defined in section 178 of this title); or (D)  any weapon that is designed to release radiation or radioactivity at a level dangerous to human life."  18 U.S.C. § 2332a(c).  Tsarnaev argues that section 2232a "is a broad statute criminalizing a variety of conduct -- including use of chemicals, biological agents, radiation -- not all of which entail violent force" and therefore is not categorically a "crime of violence."  [Deft. Reply Br. at 14].

Assuming for the sake of argument Tsarnaev is correct, it makes no difference, because an examination of *Shepard*-approved documents shows that Tsarnaev was charged and convicted of the version of the offense that involves use of a destructive device.  The relevant counts of the indictment charge that Tsarnaev "used" (or "conspired with Tamerlan Tsarnaev to use") "a weapon of mass destruction, namely, a destructive device as defined by Title 18, United States Code, Section 921."  The Court instructed the jury that "us[e] [of] a weapon of mass destruction" was an element of the crime and that "a 'weapon of mass destruction' for these purposes means a destructive device which is defined by statute as any explosive bomb."  [Tr. 4/6/15 at 18-19].  In finding Tsarnaev guilty on Count Two, the jury indicated on the verdict form that Tsarnaev had "[used] a weapon of mass destruction (Pressure Cooker Bomb #1)."  [Dkt. 1261 at 3].  In finding him guilty on Count Four, the jury indicated on the verdict form that he had "[used] a weapon of mass destruction (Pressure Cooker Bomb #2)."  [Dkt. 1261 at 5].  In finding him guilty on Counts Twenty-Three, Twenty-Five, and Twenty-Seven, and Twenty-

Nine, the jury found that he had used "Pressure Cooker Bomb #3," "Pipe Bomb #1," "Pipe Bomb #2," and "Pipe Bomb #3," respectively. [Dkt. 1261 at 24, 26, 28, 30]. Tsarnaev thus was convicted in Counts Three, Five, Sixteen, Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty of a version of the predicate crime that even Tsarnaev appears to concede is a crime of violence.

    B.    <u>Bombing a place of public use (Counts 8, 10, 17)</u>.

18 U.S.C. § 2332f(a) provides in relevant part: "Whoever unlawfully delivers, places, discharges, or detonates an explosive or other lethal device in, into, or against a place of public use . . . shall be punished as provided under section 2332a(a) of this title [which provides for the death penalty if "death results"]." Section 2332f(e)(8) defines "explosive" as an "explosive" within the meaning of 18 U.S.C. § 844(j) "insofar that it is designed, or has the capability, to cause death, serious bodily injury, or substantial material damage." 18 U.S.C. § 844(j) states that "explosive" means "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion." Section 2332f(e)(9) defines "other lethal device" as "any weapon or device that is designed or has the capability to cause death, serious bodily injury, or substantial damage to property through the release, dissemination, or impact of toxic chemicals, biological agents, or toxins (as those terms are defined in section 178 of this title) or radiation or radioactive material." Tsarnaev argues that section 2332f is not categorically a "crime of violence" because

10

(1) "neither delivery nor placement [of a bomb] necessarily involves or even leads to the use of 'violent physical force' if there is never an actual or attempted detonation," and (2) the crime can be committed using a "'lethal device' that, for example, employs 'toxic chemicals, biological agents, or toxins.'"  [Deft. Reply Br. at 15].

Once again, even assuming for the sake of argument Tsarnaev is correct, *Shepard-*approved documents reveal that the jury unanimously convicted Tsarnaev of committing the crime by discharging explosive bombs (either personally or in agreement or partnership with another).  The Court instructed the jury that one element of the section 2332f crimes was that "the defendant knowingly delivered, placed, discharged or detonated an explosive," and that "[f]or these purposes, an explosive means gunpowders, powders used for blasting, blasting materials, fuses other than electric circuit breakers, detonators and any chemical compounds, chemical mixture or device that contains any oxidizing or combustible units or other ingredients in such proportions, quantities or packing that ignition by fire or by detonation of the compound, mixture or device or any part thereof may cause an explosion in so far that it is designed or has the capability to cause death, serious bodily injury or substantial material damage."  [Tr. 4/6/15 at 33-35].  In Count Seven, the jury found Tsarnaev guilty of having caused the death of Krystle Marie Campbell by "bombing" a place of public use using "Pressure Cooker Bomb #1" [Dkt. 1261 at 8], and in Count Eight, it found that this bomb was a "destructive device" that had been "discharged" [Dkt. 1261 at 9].  In Count Nine, it found Tsarnaev guilty of having caused the death of Lingzi Lu and Martin Richard by "bombing" a place of public use using "Pressure Cooker Bomb #2" [Dkt. 1261 at 10], and in Count Ten it found that this bomb was a "destructive device" that had been "discharged" [Dkt. 1261 at 11].  (Count Six charged conspiracy to commit Counts Seven and Nine and was the predicate for Count Seventeen.)

*Shepard*-approved documents thus reveal that Tsarnaev was convicted in Counts Six, Seven and Nine of bombing people to death (or conspiring to do so) by discharging explosive bombs -- a version of section 2332f that even Tsarnaev apparently concedes involves the actual, attempted, or threatened use of physical force.

      C.    <u>Malicious destruction of property (Counts 13, 15, 18)</u>.

18 U.S.C. § 844(i) provides in relevant part: "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property" is guilty of a crime, "and if death results to any person," is subject to "the death penalty or to life imprisonment." Tsarnaev argues that section 844(i) is not categorically a crime of violence because (1) it "may be committed by the passive employment of fire, which . . . does not require violent physical force," and (2) it "does not necessarily require *intentional* use of violent physical force." [Deft. Reply Br. at 15 (emphasis in original)].

Count Twelve of the indictment charged that Tsarnaev violated section 844(i) by "plac[ing] and detonat[ing] an explosive ('Pressure Cooker Bomb #1')." Count Fourteen charged that Tsarnaev committed the crime by "plac[ing] and detonat[ing] an explosive ('Pressure Cooker Bomb #2')." (Count Eleven, which charged Tsarnaev with conspiring to commit Counts Twelve and Fourteen, was the predicate for Count Seventeen.)

The Court instructed the jury: "Count Twelve charges that the defendant placed an explosive bomb in the vicinity of Marathon Sports on Boylston Street in Boston. . . . The indictment and verdict form refer to this alleged explosive as Pressure Cooker Bomb No. 1." [Tr. 4/6/15 at 39]. The jury found that Tsarnaev committed the crime "by means of an explosive (Pressure Cooker Bomb #1)." [Dkt. 1261 at 13]. The Court further instructed the jury: "Count Fourteen charges that the defendant placed an explosive bomb in the vicinity of the Forum

12

Restaurant on Boylston Street in Boston. . . . "The indictment and verdict form refer to this alleged explosive as Pressure Cooker Bomb No. 2." [Tr. 4/6/15 at 40]. The jury found that Tsarnaev committed this crime "by means of an explosive (Pressure Cooker Bomb 2)." [Dkt. 1261 at 15]. These documents – alone and in combination – establish that Tsarnaev violated section 841(i) by means of an explosive, not by "the passive employment of fire."

With respect to Tsarnaev's second argument, although the jury's verdicts on Counts Thirteen and Fifteen establish that Tsarnaev committed the 844(i) offenses intentionally -- the jury found that he "used or carried" bombs "during and in relation" to the offenses and "discharged" them -- the government, for purposes of this motion, relies on the argument in its opposition that section 844(i) is a crime of violence whether committed intentionally or "with deliberate disregard of the likelihood that damage or injury will result" – the two possibilities on which the Court instructed. [Tr. 4/6/15 at 38].

    D.    <u>Carjacking (Count 20)</u>

18 U.S.C. § 2119(2) provides: "Whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation" is guilty of a felony. Tsarnaev argues that a carjacking "accomplished by 'intimidation' . . . does not necessarily require the use or threat of violent physical force." [Deft. Reply Br. at 18]. Once again, although the jury's verdict on Count Twenty establishes that Tsarnaev committed the carjacking through the threatened use of physical force -- the jury unanimously found that he "used or carried" a firearm "during and in relation to" the carjacking and "brandished" it (or aided and abetted another in doing so) [Dkt. 1261 at 32] -- the government, for purposes of this motion, relies on the argument in its opposition that

"intimidation" for section 2119(2) purposes necessarily involves the actual, threatened, or attempted use of force.

    E.    <u>Hobbs Act robbery (Count 22)</u>

18 U.S.C. § 1951(a) provides in relevant part: "Whoever [commits] . . . robbery" is guilty of a felony. Section 1951(b) defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." Tsarnaev argues that section 1951 is not categorically a crime of violence because "the Hobbs Act element of 'generating fear of injury' does not require the use or threat of violent force." He adds: "even threats to inflict economic harm on an intangible asset (like shares of stock) can constitute a threat to 'injure property' under section 1951's robbery definition." [Deft. Reply Br. at 20]. Here again, although the jury's findings that Tsarnaev "brandished" a firearm "during and in relation to" the offense [Dkt. 1261 at 23] show that in Count Twenty-Two it convicted him of committing the robbery "by means of actual or threatened force," 18 U.S.C. § 1951(b), we rely on the argument in our opposition that all versions of Hobbs Act robbery necessarily involve the actual, threatened, or attempted use of physical force.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Tsarnaev's motion for new trial in its entirety for the reasons set forth in our initial opposition as well as in

this supplemental memorandum.

          Respectfully submitted,

          CARMEN M. ORTIZ
          UNITED STATES ATTORNEY

By:   /s/ William D. Weinreb
      WILLIAM D. WEINREB
      ALOKE S. CHAKRAVARTY
      NADINE PELLEGRINI
      STEVEN MELLIN
      Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

          */s/ William D. Weinreb*
          WILLIAM D. WEINREB