UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 13-10200-GAO |
| | ) | |
| DZHOKHAR TSARNAEV | ) | Leave to file granted:  12/4/2015 |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT NOTWITHSTANDING VERDICT AND FOR NEW TRIAL**

Defendant, Dzhokhar Tsarnaev, by and through counsel, respectfully submits this supplemental memorandum in support of his Motion [DE 1490] for Judgment Notwithstanding Verdict and for New Trial to address arguments that the government raised for the first time at the motion hearing on December 1, 2015.  Contrary to the government's arguments at the hearing:  1) the Court may not look to documentation of underlying offense conduct to determine whether the predicate convictions in this case are "crimes of violence" under the force clause of section 924(c) because the predicate statutes are not divisible; and 2) the government's argument that failure of the section 924(c) counts of conviction would not require a new trial lacks supporting authority and conflicts with arguments and oncessions the government made earlier when opposing the defendant's motion to dismiss "surplus" counts.

1

**I.  THE PREDICATE STATUTES OF CONVICTION ARE NOT DIVISIBLE. THEREFORE, THE COURT MAY NOT LOOK TO DOCUMENTATION OF UNDERLYING OFFENSE CONDUCT (THE "MODIFIED CATEGORICAL APPROACH") TO DETERMINE WHETHER PREDICATE CONVICTIONS IN THIS CASE ARE "CRIMES OF VIOLENCE" UNDER THE FORCE CLAUSE OF SECTION 924(c).**

In the initial exchange of briefs concerning the impact of *Johnson II* on the section 924(c) counts of conviction, the parties properly focused their arguments on the question of whether or not predicate crimes of conviction *categorically* qualified as "crimes of violence" under section 924(c). In other words, the dispute is not whether the conduct underlying Mr. Tsarnaev's predicate offenses was "violent" in some ordinary or lay sense of the term, but whether the criminal statutes underlying the section 924(c) convictions are categorically " crimes of violence" — that is, whether *all* of the conduct covered by those statutes necessarily entails the use of *violent physical force*. This categorical analysis is required under *Descamps v. United States*, 133 S. Ct. 2276 (2013), where, as here, underlying statutes are indivisible.

At the motion hearing, the government argued for the first time that the Court could look to underlying offense conduct to determine whether the predicate offenses of conviction in this case satisfied the "force" clause of section 924(c):

> [T]o the extent that there's any question as to whether these statutes violate the force — satisfy the force clause or not despite the presence within the statutory text of multiple means of committing them, that can be — any doubt on that score can be resolved by recourse of *Shepard*-approved documents like the indictment, the jury instructions and the verdict form. There's no need to find — that, of course, does require finding that the statutes are divisible, but it is not necessary to find that the particular means of committing the offense are elements in the *Apprendi* sense, meaning that they actually creates [sic] separate crimes.

12/1/2015 Tr. at 20. The government's argument, made without citation of any supporting authority, misconstrues the governing analytic framework under *Descamps* and its progeny. Moreover, the government still has made no effort to explain how, in its view, each of the specific predicate offenses at issue here might be divisible. They are not.

### A. Under *Descamps,* a Divisible Statute Must Have Alternative *Elements*, Not Merely Alternative *Means*.

"The first set of rules to be applied" in determining whether a predicate offense qualifies as a "crime of violence" under the force clause of section 924(c), "forms what is known as the 'categorical' approach." *United States v. Fish*, 758 F.3d 1, 5 (1st Cir. 2014); *see also Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013). This approach "requires an assessment of 'the elements of the statute of conviction, not . . . the facts of [the] defendant's conduct.'" *Fish*, 758 F.3d at 5 (citation omitted); s*ee also Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if *all* of the "criminal conduct covered by a statute, *including the most innocent conduct*, qualifies as a crime of violence." *Fish*, 748 F.3d at 5 (emphasis added).

For the limited purpose of "help[ing to] implement the categorical approach," in a "narrow range of cases," a court may look beyond the legal definition of the offense to a small list of judicial document to determine whether a predicate is a "crime of violence."

*Descamps*, 133 S. Ct. at 2283, 2285; *see also Fish*, 748 F.3d at 6.  This approach, known, as the modified categorical approach, is also driven by the elements.

In *Descamps*, the Supreme Court clarified that a court  "may apply the modified categorical approach only if the [ ] crime at issue is divisible." *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) (citing *Descamps*, 133 S. Ct. at 2283).  An offense is divisible if it has alternative elements — some which constitute a "crime of violence" and some which do not.  *Id*.  If a statute is divisible, a federal sentencing court may look at the limited number of authorized documents only "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct at 2284.

To be clear, merely because a statute has multiple disjunctive phrases separated by the word "'or' in the definition of a crime does not automatically render the crime divisible."  *Omargharib*, 775 F.3d at 198 (citing *Royal*, 731 F.3d at 341-42); *see also United States v. Fuertes,* 805 F.3d 485, 498  (4th Cir. 2015) ("A statute is indivisible when 'the  jury need not agree on anything past the fact that the statute was violated.'"); *Rendon v. Holder*, 764 F.3d 1077, 1086-87 (9th Cir. 2014) (reasoning that when a criminal law "is written in the disjunctive . . . , that fact alone cannot end the divisibility inquiry").  Rather, "a crime is divisible under *Descamps* only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime).  Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." *Omargharib*, 775 F.3d at 198-99 (internal quotation marks

4

and citations omitted).  Only when a statute is divisible with alternative elements — not alternative means — does the modified categorical approach apply.

      The Fourth Circuit's decisions in *Royal*, *Omargharib* and *Fuertes* illustrate this point well.  In *Royal*, at issue was whether the defendant's prior Maryland second degree assault conviction qualified as an ACCA "violent felony."  Although second degree assault under Maryland law is defined as requiring either "offensive physical contact" or "physical harm," the Fourth Circuit found that these phrases were "alternative means of satisfying a single element" rather than alternative elements.  *Royal*, 731 F.3d at 341.  The Court relied on the Maryland second degree assault jury instruction to reach its conclusion.  *See id*.  The Court explained that "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on a whether the defendant caused either 'offensive physical contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which."  *Id*.  Therefore, the Court found that Maryland second degree assault is an indivisible offense with alternative means — not alternative elements that trigger the modified categorical approach.  *Id*.

      Similarly, in *Omargharib*, the Fourth Circuit held that Virginia grand larceny is indivisible, even though Virginia law defines the offense as a "wrongful *or* fraudulent taking."  *Id*. at 198 (emphasis added).  The court explained that "Virginia juries are not instructed to agree 'unanimously and beyond a reasonable doubt' on whether defendants charged with larceny took property 'wrongfully' or 'fraudulently.'  Rather as in *Royal*, it is enough for a larceny conviction that each juror agrees only that either a 'wrongful or

5

fraudulent' taking occurred, without settling on which." *Id*. The Fourth Circuit relied in part on the Virginia pattern jury instruction to reach its conclusion: "The model jury instruction does not tell the jury to distinguish between wrongful and fraudulent takings . . . . rather, it only requires a finding of a taking 'without the consent of the owner." *Id*. (citing 2-36 Virginia Model Jury Instructions – Criminal G36.100 (2014)). Hence, the court concluded that "wrongful or fraudulent taking are alternative means of committing larceny, not alternative elements." *Id*. at 200. In turn, the court concluded that Virginia larceny is indivisible as a matter of law, and the modified categorical approach had no role to play. *See id*.

Finally, in *Feurtes*, the court held that the federal sex trafficking statute, 18 U.S.C. § 1591, which prohibits a variety of actions ("recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means") with two alternative mental states ("knowing . . . or in reckless disregard") involving one or more additional factors ("force, threats of force, fraud, coercion") is not divisible. *See* 805 F.3d at 498 ("although § 1591(a) refers to alternative means of commission, it contains a single, indivisible set of elements, and the categorical approach applies.").

## B. The Predicate Statutes of Conviction in this Case Are Not Divisible.

None of the federal predicate offense at issue here is divisible under Descamps and its progeny. Analysis of Hobbs Act Robbery, 18 U.S.C. § 1951(a), is illustrative. The offense is defined as follows:

> The term "robbery" means the unlawful taking or unlawful taking or obtaining of personal property from the person in the presence of another, against his will, by means of actual or threatened force, or violence, or fear

6

of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute].

18 U.S.C. § 1951(b)(1) (emphasis added).

Although Hobbs Act robbery is defined with multiple phrases — "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property" — these disjunctive terms are merely means, not alternative elements which a unanimous jury must select. Jurors are never asked to specify which one of these phrases served as the basis for the conviction. Specifically, jurors are not asked to determine whether the defendant took the property in question 1) by means of actual or threatened force, or 2) by means of fear of injury. Further, unanimity is not required on the question of whether fear or injury was future or immediate to person or property.Rather, all of these terms go the jury in one clump, and "it is enough that each juror agree only that one of [these means] occurred, without settling on which." *Royal*, 731 F.3d at 341.

Indeed, the Modern Federal Jury Instructions make this plain. These instructions set forth the following elements for Hobbs Act robbery:

> First, that the defendant knowingly obtained or took the personal property of another, or from the presence of another;
> Second, that the defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and
> Third, that as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

7

Modern Federal Jury Instructions - Criminal 50-3 (emphasis added).

The second element is further detailed as follows:

> The second element the government must prove beyond a reasonable doubt is that a defendant unlawfully took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future.
>
> In considering whether the defendant used, or threatened to use force, violence or fear, you should give those words their common and ordinary meaning, and understand them as you normally would. The violence does not have to be directed at the person whose property was taken. The use or threat of force or violence might be aimed at a third person, or at causing economic rather than physical injury. A threat may be made verbally or by a physical gesture. Whether a statement or physical gesture by the defendant actually was a threat depends upon the surrounding facts.

Modern Federal Jury Instructions - Criminal 50-5 (emphasis added).

Critically, these instructions confirm that unanimity is not required regarding whether the defendant "robb[ed]" by means of actual or threatened force or violence or by means of fear of injury to person or property. *Id.*; *see also* Pattern Crim. Jury Instr. 1st Cir. 4.16 (1998) (defining "by means of actual or threatened force, or violence, or fear of injury to his/her person or property" as a single unified element of Hobbs Act robbery); Pattern Crim. Jury. Instr. 11th Cir. OI 70.3 (2010) (same). The jury does not have to find unanimously one of these phrases to the exclusion of another, Therefore, these different ways of committing Hobbs Act robbery are alternative means of a single element.

Individual cases, too, show that courts instruct juries in a way that does not require jurors to agree on whether a Hobbs Act robbery offense was committed by force or violence versus fear of injury to person or property. In one case, jurors were simply

asked whether the defendant took "property against the victim's will, by actual or threatened force, violence, or fear or injury, whether immediately or in the future." *United States v. Henry*, Crim. No. 06-33, 2007 WL 2458555, at *8 (E.D. Pa. Aug. 24, 2007) (finding no error in this instruction); *see also United States v. Potter*, Civ. No. 08-4518, 2009 WL 320605, at *4 (E.D. Pa. Feb. 6, 2009) (affirming similar instruction).

Therefore, Hobbs Act robbery is not divisible. To be sure, Hobbs Act robbery can be committed in different ways. But jurors in Hobbs Act cases are not required to agree on the means by which a robbery was carried out. Thus, Hobbs Act robbery does not contain alternative elements within the meaning of *Descamps*. As a result, the categorical approach — not the modified categorical approach — applies in determining whether Hobbs Act robbery qualifies as a career offender "crime of violence."

The same analysis applies to the other predicates at issue in this case. Use of a weapon of mass destruction, 18 U.S.C. § 2332a, can be committed by multiple means, including by non-violent means or "weapons." Yet the pertinent element — what the jury must find unanimously — is simply that that some "weapon of mass destruction" was used, not which particular species of weapon under the definition was used. Bombing a place of public use, 18 U.S.C. § 2332f, does not require a unanimous jury finding that specifies the action ("delivers, places, discharges, or detonates") or mechanism ("explosive" or "other lethal device"). Malicious destruction of property, 18 U.S.C. § 844(i), does not require unanimous specification as to the mechanism ("fire" or "explosive") or mens rea (the "malicious" element can include intentional or reckless conduct). Carjacking, 18 U.S.C. § 2119, does not require the jury to specify a finding of

9

"force and violence" versus "intimidation" (which, as demonstrated earlier at length, *see* DE , does not necessarily require the use or threat of violent physical force). Simply put, as to each predicate, key elements include within them both violent and non violent means. Since the jury must simply find the element, the statutes are indivisible for purposes of the section 924(c) "crime of violence" analysis.

**II.   FAILURE OF THE SECTION 924(C) COUNTS OF CONVICTION REQUIRES A NEW TRIAL.**

In the Memorandum in Support of the Motion for Judgment Notwithstanding Verdict and for New Trial, the defense argued that failure of the section 924(c) counts in the wake of *Johnson II* required a new penalty trial [DE 1506 at 29]. The government did not address this argument in its written Opposition [DE 1542]. At the December 1 motion hearing, however, the government responded:

> There is absolutely no reason to believe that if the 924(c) counts had not even been in the indictment in the first place, the result would have been any different. And that's particularly true in this case because the addition of the 924(c) counts did not open the door to any additional evidence that would have not otherwise been admissible, and the defense has not even claimed that's the case. They simply talk about some ineffable effect of having additional counts.

12/1/15 Tr. at 19.

Not only is the government's argument contrary to the authorities cited by the defense, it also contradicts the express position the government, itself, took earlier in its Opposition [DE 223] to the defendant's Motion to Dismiss Surplus Counts of the Indictment [DE 208]. In that pleading, filed in March 2014, the government contended:

> Tsarnaev's argument that a defendant who commits multiple armed violent crimes in a single criminal episode may be charged with only one section

10

> 924(c) count based on only one of those violent crimes would lessen the likelihood of conviction and thus undermine the guarantee of prison time. It makes no sense to conclude that Congress intended its words to be applied in a way that would undermine its stated aim.

DE 223 at 12.  In other words, according to the government, the multitude of section 924(c) counts increased the probability of conviction and thus the "guarantee" of a severe sentence of "prison time."  The government affirmatively conceded the prejudicial impact of multiple section 924(c) counts, arguing that this very prejudice was intended by Congress and therefore justified its charging decisions.  The same logic applies with equal force to the government's efforts to obtain an even more severe sentence of death.  Having made the decision to "play the odds" and to "stack the deck" with fifteen counts charging violations of section 924(c), and having expressly conceded its strategic motivation in doing so, the government cannot now escape the consequences of *Johnson II*, which undermines the section 924(c) convictions and thus the balance of factors the jury necessarily considered in choosing the ultimate penalty.

      The Court must vacate all of the section 924(c) convictions and should order a new trial.

                                      Respectfully submitted,

                                      DZHOKHAR TSARNAEV
                                      by his attorneys

                                      */s/  William W. Fick*

                                      Judy Clarke, Esq. (CA Bar # 76071)
                                      CLARKE & RICE, APC
                                      1010 Second Avenue, Suite 1800
                                      San Diego, CA 92101
                                      (619) 308-8484

JUDYCLARKE@JCSRLAW.NET

David I. Bruck, Esq.
220 Sydney Lewis Hall
Lexington, VA 24450
(540) 460-8188
BRUCKD@WLU.EDU

Miriam Conrad, Esq. (BBO # 550223)
Timothy Watkins, Esq. (BBO # 567992)
William Fick, Esq. (BBO # 650562)
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
(617) 223-8061
MIRIAM_CONRAD@FD.ORG
TIMOTHY_WATKINS@FD.ORG
WILLIAM_FICK@FD.ORG

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 11, 2015.

/s/   William W. Fick