**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No.: PWG-13-15 |
| | * | |
| **TIFFANY RENEE EDMUNDSON,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Memorandum Opinion supplements my ruling on the bench at a December 17, 2015, hearing. Defendant Tiffany Renee Edmundson had moved to dismiss Count 2, using and carrying a firearm during and in relation to a crime of violence, and vacate her guilty plea. Subsequently, Edmundson withdrew her motion to withdraw the guilty plea but persisted in her motion to dismiss the firearm count. I ruled that Edmundson's plea to conspiracy to commit Hobbs Act robbery did not meet the requirements in 18 U.S.C. § 924(c)(3)(A) and that 18 U.S.C. § 924(c)(3)(B) is void for vagueness.

I.  **BACKGROUND**

On February 11, 2013, Defendant Tiffany Renee Edmundson pleaded guilty to one count of conspiracy to interfere with interstate commerce by robbery ("Hobbs Act Conspiracy"), 18 U.S.C. § 1951(a), and one count of using and carrying a firearm during and in relation to a crime of violence ("Firearm Offense"), 18 U.S.C. § 924(c)(3). *See* Plea Agr., ECF No. 21. Her

sentencing was delayed for reasons unrelated to the issues raised in the pending dispute. On August 17, 2015, Edmundson filed a Motion to Dismiss Count Two and to Vacate Guilty Plea on Said Count. Def.'s Mot., ECF No. 38. The Government filed an opposition. Opp'n, ECF No. 46. The Office of the Public Defender requested, ECF No. 49, and was granted, ECF No. 52, permission to file an amicus brief, Amicus Br., ECF No. 53, and supplement, Amicus Suppl., ECF No. 54.

The gist of Edmundson's motion is that the Supreme Court's recent decision in *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015), requires me to permit her to withdraw her plea of guilty to Count 2 and to order that the Firearm Offense be dismissed. Edmundson argued she was entitled to this relief because the predicate offense to which she pleaded guilty, Hobbs Act Conspiracy, did not have as an element the use, attempted use, or threatened use of physical force required by 18 U.S.C. § 924(c)(3)(A) (the "§ 924(c) force clause"), and that based on *Johnson*, the residual clause of 18 U.S.C. § 924(c)(3)(B) (the "§ 924(c) residual clause") was unconstitutionally vague in violation of the Fifth Amendment Due Process Clause.

A hearing was held on December 17, 2015. At the beginning of the hearing, Edmundson withdrew her motion to withdraw her guilty plea to the Firearm Offense but persisted in her motion to dismiss that count for the reasons asserted in her motion. I ruled that Edmundson's plea to Hobbs Act Conspiracy did not meet the § 924(c) force clause and that the § 924(c) residual clause is void for vagueness under *Johnson*. I then ordered the parties to brief the issue of whether my determinations that the neither the § 924(c) force clause nor the § 924(c) residual clause applied required me to dismiss Count 2 prior to sentencing. This Memorandum Opinion supplements my ruling from the bench.

## II.  DISCUSSION

18 U.S.C. § 924(c)(1)(A)(ii) provides that a person convicted of using and carrying a firearm during and in relation to a "crime of violence" must be sentenced to a minimum term of imprisonment of seven years, to run consecutively to any other sentence imposed.  A crime of violence is defined under the § 924(c) force clause as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), or alternatively under the § 924(c) residual clause as any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B).

### A.  The § 924(c) Force Clause

18 U.S.C. § 1951(a) defines Hobbs Act Conspiracy as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or *conspires to do so* . . . shall be fined under this title or imprisoned for more than twenty years, or both.

(emphasis added).  The Government and Edmundson agree that, unlike the general conspiracy statute, 18 U.S.C. § 371—where the essential elements include a requirement that the conspirators "do any act to effect the object of the conspiracy"—the statutory definition of Hobbs Act Conspiracy does not expressly require as an element the commission of an overt act. The parties have not cited, nor has my own research revealed, any authority that Hobbs Act Conspiracy (as opposed to robbery under the Hobbs Act) constitutes a crime of violence under the § 924(c) force clause, which is unsurprising considering the fact that this clause only focuses on the elements of an offense to determine whether it meets the definition of a crime of violence,

3

and it is undisputed that Hobbs Act Conspiracy can be committed even without the use, attempted use, or threatened use of physical force against the person or property of another.

In analogous circumstances, the Fourth Circuit has held that the North Carolina offense of conspiracy to commit robbery with a dangerous weapon does not "have as an element the use, attempted use, or threatened use of physical force against the person of another" for purposes of the force clause of the Armed Career Criminal ("ACC") statute, 18 U.S.C. § 924(e)(2)(B)(i) (the "ACC force clause"), which is identical to the § 924(c) force clause.[1] *See United States v. White*, 571 F.3d 365, 368–69 (4th Cir. 2009) ("[a]pplying a categorical analysis to the Conspiracy Offense, we observe that it does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another'" and concluding that it did not meet the requirement of the ACC force clause); *United States v. Melvin*, 621 Fed. App'x 226, 226–27 (4th Cir. 2015) (vacating the defendant's enhanced sentence under the ACC based on two prior North Carolina convictions for conspiracy to commit robbery with a dangerous weapon because these offenses did not qualify as a violent felony under either the ACC force clause (by virtue of *United States v. White*) or its residual clause (by virtue of *Johnson*)).[2]  There is no principled

---

[1]     When evaluating whether an offense meets the ACC force clause or similar statute, courts use the categorical approach (focusing only on the statutory definition of the offense—its elements—and not the circumstances surrounding how the defendant committed it), unless the statute is "divisible," i.e., comprised of elements in the alternative creating multiple versions of the crime, in which case the court may consider a limited number of materials beyond the statute itself. *See United States v. Cabrera-Umanzor*, 728 F.3d. 347, 349–50 (4th Cir. 2013); *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). In *White*, the Fourth Circuit used the categorical approach to determine whether the North Carolina offense of conspiracy to commit robbery with a dangerous weapon met the ACC force clause. *White*, 571 F.3d at 368–69.

[2]     In *United States v. Naughton*, 621 Fed. App'x 170 (4th Cir. 2015), the Fourth Circuit considered whether the predicate offense of conspiracy to commit sex trafficking (as opposed to the crime of sex trafficking) qualified as a crime of violence under either the § 924(c) force clause or the § 924(c) residual clause. It concluded that, under a categorical analysis, the offense did not qualify under the force clause because there were non-violent means of committing sex trafficking, and so, by the same analysis, there were non-violent means of committing conspiracy

4

reason not to use the same reasoning that the Fourth Circuit used in *White* (in evaluating whether the North Carolina offense of conspiracy to commit robbery using a deadly weapon met the ACC force clause) to determine whether the offense of conspiracy to commit Hobbs Act robbery meets the identically worded § 924(c) force clause. The elements of neither conspiracy offense require the defendant to commit an overt act in furtherance of the conspiracy. Accordingly, I conclude that Edmundson's guilty plea to conspiracy to commit Hobbs Act robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another, " and therefore does not fall within the § 924(c) force clause. Thus, the Government's ability to seek an enhanced sentence against her pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) will be determined by whether her plea of guilty to Hobbs Act Conspiracy

---

to commit sex trafficking. Further, it concluded that, under the residual clause, conspiracy to commit sex trafficking does not categorically involve substantial risk that the defendant will use physical force in the course of committing the offense. *Id.* at 177–78. In its analysis, the court stated "[a]lthough the predicate offense at issue here involves a conspiracy to commit sex trafficking, rather than the actual crime of sex trafficking, that distinction does not alter our analysis or our application of the holding in [*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015)], because a conspiracy cannot be 'divorced from its violent [or nonviolent] objective.'" *Id.* at 178 (alterations in original) (quoting *White*, 571 F.3d at 372). Importantly, the citation to *White* was to the court's discussion under 18 U.S.C. § 924(e)(2)(B)(ii) (the "ACC residual clause"), where the focus is not on the elements of the predicate offense but rather whether, by its nature, it involves a substantial risk that physical force against the person or property of another may be used in committing the offense. *See White*, 571 F.3d at 372. This analysis necessarily focuses on more than the elements of the predicate offense, unlike the ACC force clause, which more narrowly focuses only on the elements. *Compare id.* (analyzing the applicability of the ACC residual clause), *with id.* at 369 (analyzing the applicability of the ACC force clause). When, as with Hobbs Act Conspiracy, those elements do not involve the use, attempted use, or threatened use of physical force, *White* makes it clear that the court must focus on the elements of the conspiracy, and not its violent objective, when analyzing the § 924(c) force clause. Accordingly, *Naughton* does not modify the logic of *White* that offenses involving conspiracy to commit robbery that lack the element of an overt act in furtherance of the robbery do not meet the § 924(c) force clause. This reasoning is confirmed by the Fourth Circuit's subsequent analysis in *Melvin*, decided over a month after *Naughton*, which cited with approval its earlier opinion in *White*. *See Melvin*, 621 Fed. App'x at 226. *Naughton* declined to reach the issue of whether, under *Johnson*, the conspiracy offense could meet the § 924(c) residual clause, the issue that I must resolve. *See Naughton*, 621 Fed. App'x at 178 n.4.

5

constitutes a crime of violence as defined by the § 924(c) residual clause. This, in turn, depends on whether the § 924(c) residual clause is unconstitutionally vague for the reasons stated by the Supreme Court in *Johnson*.

### B. The § 924(c) Residual Clause

The § 924(c) residual clause defines a crime of violence to include a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In *Johnson*, the Supreme Court recently held that imposing an enhanced sentence under the ACC residual clause violated due process because it was impermissibly vague. *See Johnson*, 135 S. Ct. at 2557. Although similar to the § 924(c) residual clause, the ACC residual clause has obvious differences. It defines a "violent felony" as "burglary, arson, or extortion, involves use of explosives or otherwise involves conduct that represents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Justice Scalia, writing for the Court, pointed out that the ACC residual clause, unlike the ACC force clause, directs a court to focus not on the elements of the predicate offense, but instead

> requires a court to picture the kind of conduct that the crime involves in 'the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury . . . . The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has *as an element* the use . . . of physical force," the residual clause asks whether the crime "*involves conduct*" that presents too much risk of physical injury.

*Johnson*, 135 S. Ct. at 2557 (alterations in original). He concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and

6

invites arbitrary enforcement by judges," and that "[i]ncreasing a defendant's sentence under the clause denies due process." *Id*. Importantly, Justice Scalia explained that

> [t]wo features of the residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory elements. . . . At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise "serious potential risk" standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction.

*Id*. at 2557–58. Thus, the ACC residual clause was unconstitutionally vague because it involved a double-helping of indeterminacy. *See id.* First, there was indeterminacy in the court's estimate of how to evaluate the degree of risk posed by a crime, unmoored from its elements or the actual conduct committed by the defendant in a particular case. Additionally, it added a second level of indeterminacy by creating uncertainty about "how much risk" it takes for the crime to be a violent felony.

Edmundson and amicus counsel argue that the § 924(c) residual clause suffers from the identical double-indeterminacy flaw and therefore is unconstitutionally vague as well. *See* Def.'s Mot. 8; Amicus Br. 5. The Government disagrees and argues that the § 924(c) residual clause is different in an essential way from the ACC residual clause. *See* Opp'n 20–22. The latter includes a list of four comparator offenses (burglary, arson, extortion, or crimes that involve use of explosives) that the court must evaluate in trying to assess the requisite risk of physical injury the predicate offense involves. *See* 18 U.S.C. § 924(e)(2)(B)(ii). The Government argues that, in the absence of these confusing comparators, the clause would not be impermissibly vague. *See* Opp'n 22–23. Because the § 924(c) residual clause does not include these comparator offenses (or any others), the Government argues that it is free from the indeterminacy that doomed the ACC residual clause. *Id.*

7

A careful reading of *Johnson* shows that the Government is mistaken. It was the requirement that the court engage in the abstract evaluation of the kind of conduct the predicate offense involved in the "ordinary case," *see Johnson*, 135 S. Ct. at 2557, as opposed to evaluating the actual conduct of the defendant or the elements of the offense that created the vagueness, not the listing of confusing comparators the court was to consider in doing so. To be sure, including the four comparator crimes compounded the indeterminacy, *see id.* at 2558, but they made an already impermissibly vague definition worse. They were not the sole cause in fact of the vagueness.

The § 924(c) residual clause suffers from exactly the same double indeterminacy as the ACC residual clause because it requires the court to evaluate the offense "by its nature," not by its elements (as both the § 924(c) force clause and ACC force clause do) and not by the defendant's actual conduct when committing the predicate offense. As with the ACC residual clause, § 924(c) residual clause requires the court to imagine what the "ordinary case" of the predicate crime involves in the abstract (level one indeterminacy) and then to engage in conjecture about whether the amount of risk the ordinary case involves constitutes a "substantial risk" that physical force against the person or property of another may be used in the course of committing the predicate offense (level two indeterminacy). This is exactly the same dual indeterminacy that was fatal to the ACC residual clause. The fact that the language in the ACC was made even worse by the additional presence of the four listed crimes does not save the § 924(c) residual clause from impermissible vagueness.

The correctness of this conclusion is confirmed by Justice Scalia's response to the dissenting opinion in *Johnson*. Justice Scalia criticizes the dissent, which he says mischaracterizes the majority opinion as placing "dozens" of federal and state criminal laws

8

containing language like "substantial risk," "grave risk," and "unreasonable risk" in constitutional doubt. *See id.* at 2561. Justice Scalia responded "Not at all," explaining:

> Almost none of the cited laws links a phrase such as 'substantial risk' to a confusing list of examples [such as the four crimes listed in the ACC residual clause]. . . . More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*. As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree" . . . . The residual clause, however, requires application of the "serious potential risk" standard to an idealized ordinary case of the crime. Because "the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect," this abstract inquiry offers significantly less predictability than one "[t]hat deals with the actual, not with the imaginary condition other than the facts."

*Id.* (third, fourth, and fifth alterations in original) (internal citations omitted). Significantly, while Justice Scalia first referred to the "confusing list" of comparator offenses contained in the ACC residual clause as an example of how it is impermissibly vague, this was not the most important reason why this was so. Rather, and "more importantly," most of the federal and state laws cited by the dissent were not unconstitutionally vague under the standard announced in *Johnson* because they required the court to measure "substantial risk" against "real-world conduct," as opposed to the abstract "ordinary case" manifestation of the predicate offense, divorced from its statutory elements or the defendant's actual conduct when the offense was committed.

All that is needed to see the essential difference between laws that are and are not unconstitutionally vague under *Johnson* is to compare the § 924(c) residual clause—which requires the court to imagine the risk imposed by the predicate offense "by its nature," a judicial abstraction of the "ordinary case" of the offense—with an example or two from the list of federal laws cited by the dissent that Justice Scalia said would *not* be unconstitutionally vague. One

9

such statute is 18 U.S.C. § 1365(a), which states, relevantly "'[w]hoever, with *reckless disregard for the risk* that another person will be placed in danger of death or bodily injury *under circumstances manifesting extreme indifference to such risk*, tampers with any consumer product . . . .'" *See* Supp. Br. for the United States, at *2a, *Johnson*, 135 S. Ct. 2551 (No. 13-7120) (quoting 18 U.S.C. § 1365(a)) (emphasis added). Another example is 18 U.S.C. § 1365(c)(1), which states, relevantly "'[w]hoever knowingly communicates false information that a consumer product has been tainted, . . . and *if such tainting, had it occurred, would create a risk of death or bodily injury to another person* . . . .'" *See id.* at *2a–2b (quoting 18 U.S.C. § 1365(c)(1)) (emphasis added). A third example is 18 U.S.C. § 2118(e)(3) which provides that "'the term 'significant bodily injury' means bodily injury which *involves risk of death, significant physical pain, protracted and obvious disfigurement, or a protracted loss or impairment of the function of a bodily member, organ, or mental or sensory faculty*.'" *See id.* at *4a (quoting 18 U.S.C. § 2118(e)(3)) (emphasis added).

Each of these examples involves a qualitative measurement of risk by a court looking to actual "real-world conduct," not by use of a judicial abstraction of what the "ordinary example" of an offense would involve, disassociated from actual acts that occurred. And each of these examples illustrates a law that Justice Scalia observed would not run the risk of being constitutionally vague. In contrast, the § 924(c) residual clause demonstrates exactly the type of double indeterminacy that Justice Scalia said was the primary reason why the ACC residual clause was unconstitutionally vague; this result is not changed by the absence in the § 924(c) residual clause of the four "confusing examples" of comparator statutes present in the ACC residual clause.

Finally, I note that the Ninth Circuit recently reached a similar result when, in light of *Johnson*, it examined 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16(b), which defined "crime of violence" for purposes of determining whether the petitioner was a removable alien as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Dimaya v. Lynch*, 803 F.3d 1110, 1112 (9th Cir. 2015). This is the exact same language found in the § 924(c) residual clause. The Ninth Circuit determined that the statute combined "indeterminacy about how to measure the risk posed by [the predicate] crime with indeterminacy about how much risk it takes for the crime to qualify as 'a crime of violence,'" *id.* at 1117 (quoting *Johnson*, 135 S. Ct. at 2558), concluding:

> [a]s with [the ACC], [18 U.S.C. §] 16(b) (as incorporated in 8 U.S.C. § 1101(a)(43)(F)) requires courts to 1) measure the risk by an indeterminate standard of a "judicially imagined 'ordinary case,'" not by real-world-facts or statutory elements and 2) determine by vague and uncertain standards when a risk is sufficiently substantial. Together, under *Johnson*, these uncertainties render the [] provision unconstitutionally vague.

*Id.* at 1119. Because I agree with the analysis employed by the Ninth Circuit in its review of a statute containing identical language to the § 924(c) residual clause, and based on the foregoing discussion of *Johnson*, I conclude that the § 924(c) residual clause, 18 U.S.C. § 924(c)(3)(B), also is unconstitutionally vague.

### III. CONCLUSION

Having concluded that Edmundson's plea to the predicate offense of Hobbs Act Conspiracy does not meet the definition of a "crime of violence" for purposes of imposing an enhanced sentence for Count 2 under 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(3)(A), and 924(c)(3)(B), I have asked the parties to research the issue of whether, notwithstanding her

11

having withdrawn her motion to withdraw her plea of guilty to Count 2 of the indictment, I must nonetheless dismiss this count because there is no legally permissible ground for sentencing her under it. I have set sentencing to take place on January 13, 2016. At that time I will issue my ruling with respect to this issue.


Dated: December 23, 2015                                       /S/
                                                        Paul W. Grimm
                                                        United States District Judge