UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>      v.                                            )<br>)<br>DZHOKHAR TSARNAEV,             ) | CRIMINAL ACTION<br>NO. 13-10200-GAO<br><br>(Leave to File Granted 4/6/16) |

**BOSTON GLOBE MEDIA PARTNERS, LLC'S REPLY IN SUPPORT OF
MOTION FOR PUBLIC ACCESS TO CRIMINAL JUSTICE ACT MATERIALS**

Boston Globe Media Partners, LLC (the "Globe") submits this Reply Brief to Defendant's Opposition to the Globe's Motion for Public Access to Criminal Justice Act Materials (D.E. 1647) (the "Opposition"). Defendant contends that 18 U.S.C. § 3599 requires that, in capital cases, "disclosure of CJA funding information is authorized to occur only *after* disposition of any habeas corpus challenge to the conviction and sentence." Opposition at 1 (emphasis in original). The primary basis for Defendant's position is § 3599(g)(3)'s provision that "amounts paid under this paragraph for services in any case shall be disclosed to the public, after the disposition of the petition."

The Court should reject Defendant's proposed construction of 18 U.S.C. § 3599(g)(3), as did the court in *United States v. Williams*, No. 06-00079 JMS/KSC, 2014 WL 2932365 (D. Haw. June 30, 2014) (attached hereto as Exhibit 1), the only decision of which the Globe is aware that addresses the argument raised by Defendant. *Williams* held that § 3599(g)(3) "does not preclude disclosure of the amount of defense fees and costs before disposition of any [habeas] petition that might be filed in [a capital] case." *Id.* at *2. Defendant's contrary position cannot overcome the presumption against implied repeals and, in addition, would lead to the "absurd result" of permanently forbidding disclosure in all cases where defendants do not file a habeas petition. *Id.* In short, because there is no evidence that Congress intended to prohibit courts from releasing *any* CJA materials relating to *any* stage of a capital case, *unless* and *until* a habeas petition has been filed and disposed of (a potentially indefinite period of time), the Court should reject

Defendant's interpretation of § 3599(g)(3) and enter an Order allowing public access to the CJA materials sought in the Globe's Motion.

## I.  ARGUMENT

### A.  The Plain Meaning of § 3599(g)(3) Does Not Support Defendant's Argument.

Defendant argues that § 3599(g)(3) prohibits the disclosure of CJA funding information in capital cases until after disposition of any habeas corpus challenge to the conviction and sentence.  Opposition at 1 (emphasis in original).  But that is not what the statute says.

Section 3599 "grants federal capital defendants and capital habeas petitioners enhanced rights of representation, in light of what it calls 'the seriousness of the possible penalty and ... the unique and complex nature of the litigation.'"  *Martel v. Clair*, 132 S.Ct. 1276, 1284–85 (2012) (citation omitted).  The statute establishes minimum experience requirements for counsel and authorizes increased compensation for legal, investigative and expert services in death cases.  *Id.*  The statute also grants a right to counsel to habeas petitioners facing execution who cannot afford adequate representation.  *See* 18 U.S.C. § 3599(a)(2).  Section 3599(g)(3) further provides that "[t]he amounts paid under this paragraph for services in any case shall be disclosed to the public, after the disposition of the petition."

The statute's requirement that the amounts paid for services "shall be disclosed" after disposition of a habeas petition does not prohibit earlier disclosure of CJA trial expense information.  Rather, § 3599(g)(3) simply "provides that the court *must* make this disclosure after disposition of the habeas petition, and leaves silent whether the court *may* exercise its discretion in disclosing such information earlier."  *Williams*, 2014 WL 2932365, at *2 (emphasis in original).  *See also id.* ("this language just as easily may be construed as setting the latest date by which the court must disclose this information").  Nor does the statute in any way address the disclosure of vouchers justifying expense requests (as opposed to the "amounts paid").  Accordingly, the statute's "plain language" permits the disclosure of CJA materials prior to disposition of any habeas petition that might later be filed in this case.  *Williams*, 2014 WL 2932365, at *2.

- 2 -

This conclusion is underscored by the statutory language of § 3006A, language which amply demonstrates that when Congress intends to prohibit the disclosure of CJA materials, it knows how to say so with emphatic, unmistakable clarity.  Section 3006A(4)(e) provides:

> If there is an appeal, the court ***shall not*** release unredacted copies of the vouchers provided by defense counsel to justify the expenses to the court ***until*** such time as the appeals process is completed, ***unless*** the court determines that none of the defendant's interests set forth in subparagraph (D) will be compromised.

18 U.S.C. § 3006A(4)(E) (emphasis added.).  If Congress intended § 3599(g)(3) to bar all disclosures of all CJA materials in capital cases until after disposition of any habeas corpus challenge, as Defendant contends, it easily could have, and would have, employed the same prohibitory language it used in § 3006A.  *See generally Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176-77 (1994) ("Congress knew how to [prohibit disclosure] when it chose to do so.").  Congress instead chose language that establishes an outer date by which CJA materials in habeas cases must be disclosed, without stripping district courts of all discretion to order disclosure earlier based on the facts and circumstances of individual cases.

### B.     Defendant Cannot Overcome the Presumption Against Implied Repeals.

Defendant is left to argue that § 3599(g) somehow implicitly repeals the disclosure requirements of § 3006A.  But "repeals by implication are not favored, . . . and will not be found unless an intent to repeal is clear and manifest."  *Rodriguez v. United States*, 480 U.S. 522, 524 (1987).  Where a statute does not explicitly repeal a prior statute, a court "must read the statutes to give effect to each if it can do so while preserving their sense and purpose."  *Watt v. Alaska*, 451 U.S. 259, 266 (1981).  Sections 3599(g)(3) and 3006A easily can be read together in a way that accomplishes that result.

Section 3006A contains at least eight provisions that govern when and the extent to which CJA materials shall be disclosed.  *See* 18 U.S.C. § 3006A(d)(4)(A) (disclosure of amounts paid for services); *id.* § 3006A(d)(4)(B)(i) (redaction of vouchers during pretrial and trial phases); *id.* § 3006A(d)(4)(B)(i)(ii) (disclosure of amounts paid by 13 categories during pretrial

and trial phases); *id.* § 3006A(d)(4)(C)(i) (disclosure of unredacted vouchers filed post-trial); *id.* § 3006A(d)(4)(C)(ii) (authorizing redaction of vouchers filed post-trial but requiring disclosure of amounts paid by categories listed in subsection B); *id.* § 3006A(d)(4)(D)(i)-(vi) (interests justifying redaction of vouchers); *id.* § 3006A(d)(4)(E) (governing release of vouchers after trial and while appeal is pending); *id.* § 3006A(e)(4) (disclosure of amounts paid for non-legal services). The net effect of these provisions is to establish a "clear presumption in favor of early disclosure." *Williams*, 2014 WL 2932365, at *2.

Defendant claims that when Congress adopted § 3599(g)(3), it intended to gut all of the foregoing provisions of § 3006A in capital cases. There is an obvious alternative interpretation of § 3599(g)(3) that does no violence to the detailed statutory framework of § 3006A and gives meaning to each statute.

Section 3599(g), unlike § 3006A, grants a right to counsel to habeas petitioners facing execution who are financially unable to obtain adequate representation or services. *See* 8 U.S.C. §3599(a)(2) (defendant "shall be entitled" to counsel). *Compare* 18 U.S.C. § 3006A(2) and (2)(B) (counsel "may be provided" when the "interests of justice so require"). Read in context, § 3599(g)(3) simply provides that, in capital *habeas* cases, amounts paid for legal and other services must be disclosed "after the disposition of the petition." Interpreting § 3599(g)(3) as applying only to the disclosure of habeas fees preserves the sense and purpose of both statutes.

This interpretation also has the benefit of common sense. Defendant has failed to "offer[] any explanation as to why Congress would create such a restrictive rule for capital cases in contrast to the mandate for disclosure in all other criminal cases." *Williams*, 2014 WL 2932365, at *2. *See generally United States v. Gonzales*, 150 F.3d 1246, 1264 n.21 (10th Cir. 1998) (discussing how current version of § 3006A indicates a "shift toward increased access to the amounts paid out under the CJA."). "[A]lthough the stakes in a capital case are much higher than other criminal actions, so too is the public interest in disclosure, which to be meaningful must be timely as opposed to many years after a verdict when a defendant has exhausted his direct appeals and § 2255 petition." *Id.* For those reasons, the *Williams* Court rejected an

interpretation of § 3599(g)(3) that would lead to the "absurd result" that "disclosure would *never* occur in cases in which a habeas petition is not filed." *Id.* (emphasis in original).  *See generally Public Citizen v. Department of Justice,* 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would compel 'an odd result,' ... we must search for other evidence of congressional intent to lend the term its proper scope.").

As in *Williams*, this Court should reject the Defendant's contention "that disclosure of defense fees and costs in a capital case may not be disclosed until after disposition of a habeas petition, which may occur several years after a verdict, if at all."  2014 WL 2932365, at *2.  "[T]he plain language of § 3599(g)(3) can be construed to avoid this absurd result and remain faithful to Congress' recognition in the CJA of the importance of public disclosure."  *Id.*

> C. **The Defendant's Proposed Construction is Inconsistent with the Supreme Court's Guidance in *Martel v. Clair*.**

Defendant's reliance on *Martel*, 132 S.Ct. 1276 is misplaced.  *Martel* recognized that § 3599 is a "spin-off" of § 3006A and that the standards of § 3006A can and should provide meaningful guidance for the interpretation of § 3599.  *See id.* at 1285, 1286-87.  For example, *Martel* held that the "interests of justice" standard that governs motions to substitute counsel under § 3006A also applies to substitution motions for capital cases under § 3599, even though the latter statute is silent as to how a court should decide such a motion.

> We know that before § 3599's passage, courts used an "interests of justice" standard to decide substitution motions in all cases -- and that today, they continue to do so in all non-capital proceedings. We know, too, that in spinning off § 3599, Congress enacted a set of reforms to improve the quality of lawyering in capital litigation. *With all those measures pointing in one direction, we cannot conclude that Congress silently prescribed a substitution standard that would head the opposite way*.  Adopting a more stringent test than § 3006A's would *deprive capital defendants of a tool they formerly had, and defendants facing lesser penalties still have, to handle serious representational problems*.  That result clashes with everything else § 3599 does.  By contrast, utilizing § 3006A's standard comports with the myriad ways that § 3599 seeks to promote effective representation for persons threatened with capital punishment.

*Id.* at 1286 (emphasis added).

Defendant's interpretation similarly does not "comport with the origins of § 3599," particularly the statutory recognition of a right to counsel in habeas cases. Defendant asks the Court to conclude that Congress *implicitly* prescribed a new standard prohibiting disclosure of pre-habeas materials, an approach which "would head the opposite way" of both (1) the CJA's general presumption favoring disclosure and (2) § 3599's purpose of "improving the quality of lawyering in capital litigation." Just as the State's proposed standard in *Martel* would have "deprived capital defendants of tool they formerly had . . . to handle serious representational problems," Defendant's proposed interpretation here would deprive the *public* of an important tool it formerly had, and currently has in other federal cases, to oversee and evaluate the criminal justice system's effectiveness in handling these same "serious representational problems."

## II.     CONCLUSION

For the reasons stated above and in the Globe's initial memorandum of law, the Globe respectfully requests that the Court grant its Motion for Access to Criminal Justice Act Materials.

Respectfully submitted,

**Boston Globe Media Partners, LLC**

By Its Attorneys,

/s/ Emma D. Hall
Jonathan M. Albano
BBO #013850
jonathan.albano@morganlewis.com
Emma Diamond Hall
BBO #687947
emma.hall@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110-1726
+1.617.341.7700

Dated:  April 7, 2016

- 7 -

**CERTIFICATE OF SERVICE**

        I, Emma D. Hall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 7, 2016.

        /s/Emma Diamond Hall
        Emma Diamond Hall