2014 WL 2932365
Only the Westlaw citation is currently available.
United States District Court,
D. Hawai'i.

UNITED STATES of America, Plaintiff,

v.

Naeem J. WILLIAMS, Defendant.

Crim. No. 06–00079 JMS/KSC.
|
Signed June 30, 2014.

**Attorneys and Law Firms**

Steven D. Mellin, U.S. Department of Justice, Washington, DC, Darren W.K. Ching, Office of the United States Attorney, Honolulu, HI, for Plaintiff.

Barry D. Edwards, Kaneohe, HI, John Timothy Philipsborn, Michael N. Burt, Law Office of Michael Burt, San Francisco, CA, for Defendant.

*ORDER AUTHORIZING DISCLOSURE OF THE AGGREGATE COSTS OF DEFENSE SERVICES PROVIDED TO DEFENDANT UNDER THE CRIMINAL JUSTICE ACT*

J. MICHAEL SEABRIGHT, District Judge.

## I. *INTRODUCTION*

*1 During jury deliberations in the selection phase of this action, the Clerk's Office received a request from the Honolulu Star–Advertiser seeking disclosure of the costs and fees for defense services provided to Defendant Naeem Williams ("Defendant"). [1] The court raised this issue with counsel on June 13, 2014, *see* Doc. No. 2826, and had further discussions with counsel on June 17, 2014, where a reporter for the Star–Advertiser stated that he was seeking the aggregate amount spent for the defense. On June 17, 2014, Defendant filed an Objection to disclosure of this information, Doc. No. 2831, and the government filed a Response on June 18, 2014, agreeing with Defendant that the information is not subject to disclosure. Doc. No. 2833. Further discussion with counsel was held on June 18, 2014. On June 20, 2014, the Star–Advertiser submitted a letter to the court modifying its request, stating that it requests

that the court, at the conclusion of Defendant's sentencing hearing, disclose the total dollar amount of public money spent on his defense. Doc. No. 2839. On June 27, 2014, the jury returned a verdict that will result in a sentence of life imprisonment rather than the death penalty. Based on the following, the court finds that the Clerk's Office may disclose the aggregate amount paid for defense costs and fees at this time, as opposed to waiting for the conclusion of Defendant's sentencing hearing.

## II. *DISCUSSION*

Two different statutes address disclosure of defense costs. The Criminal Justice Act (the "CJA"), 18 U.S.C. § 3006A, is directed to ensuring adequate representation of criminal defendants, and includes various provisions for the appointment and payment of defense counsel and related defense costs. And § 3006A(d)(4)(A) provides that disclosure of amounts paid for defenses costs "shall be made available to the public by the court upon the court's approval of the payment." *See also id.* § 3006A(e)(4) (requiring disclosure of fees for services other than counsel). Prior to the end of trial, detailed information contained in vouchers submitted is to be redacted. *Id.* § 3006A(d)(4)(B). After trial, the court may release unredacted versions subject to consideration of the defendant's Fifth and Sixth Amendment rights, the attorney-client privilege, the work product privilege, safety of any person, and any other interest justice may require. *Id.* § 3006A(d)(4)(D). Thus, under the CJA, Congress sought to encourage prompt disclosure of defense costs and fees, taking into consideration the defendant's rights to confidentiality of such information. *See also United States v. Gonzales,* 150 F.3d 1246, 1264 n. 21 (10th Cir.1998) (discussing how current version of § 3006A indicates a "shift toward increased access to the amounts paid out under the CJA").

The second statute, 18 U.S.C. § 3599, is directed specifically to capital cases, and "grants federal capital defendants and capital habeas petitioners enhanced rights of representation, in light of what it calls 'the seriousness of the possible penalty and ... the unique and complex nature of the litigation.' " *Martel v. Clair,* 132 S.Ct. 1276, 1284–85 (2012) (quoting 18 U.S.C. § 3599(d) (2006 ed.)). [2] Compared to § 3006A, § 3599(1) requires that attorneys have more legal experience, *id.* § 3599(b)-(d); (2) authorizes higher rates of compensation and more money for investigative and expert services, *id.* § 3599(g)(1) & (2); and (3) provides habeas petitioners facing execution counsel as a matter of right. *Id.* § 3599(a)(2).

2014 WL 2932365

Beyond these "enhanced rights of representation," § 3599(g)(3) also includes a provision regarding disclosure of fees and costs, providing that "[t]he amounts paid under this paragraph for services in any case shall be disclosed to the public, after the disposition of the petition." The parties, and the court, agree that the term "petition" refers to a habeas petition.

**\*2** The parties construe § 3599(g)(3)'s language that the amounts paid "shall" be disclosed after disposition of the petition as setting the earliest possible date for disclosure. In other words, the parties contend that disclosure of defense fees and costs in a capital case may not be disclosed until after disposition of a habeas petition, which may occur several years after a verdict, if at all. This interpretation appears consistent with the Guide to Judiciary Policy, Guidelines for Administering the CJA and Related Statutes ("CJA Guidelines"), Vol. 7A, § 530(b), which provide that "[f]or capital cases, disclosure must be after the disposition of the petition." And the CJA Guidelines provide this construction even though they also recognize that public disclosure of this information should generally be made. *Id.* § 520.40.

Neither the parties nor the CJA Guidelines attempts to reconcile § 3599(g)(3)'s facially limited disclosure with the CJA's clear presumption in favor of early disclosure. Nor do the parties or the CJA Guidelines offer any explanation as to why Congress would create such a restrictive rule for capital cases in contrast to the mandate for disclosure in all other criminal cases. Indeed, although the stakes in a capital case are much higher than other criminal actions, so too is the public interest in disclosure, which to be meaningful must be timely as opposed to many years after a verdict when a defendant has exhausted his direct appeals and § 2255 petition.

Even more troubling are the practical implications of the parties' interpretation—if § 3599(g)(3) is construed to preclude any disclosure until after disposition of a § 2255 petition, then disclosure would *never* occur in cases in which a habeas petition is not filed. The court refuses to interpret § 3599(g)(3) in such absurd manner. *See Haggar Co. v. Helvering,* 308 U.S. 389, 394 (1940) ("A literal reading of [statutes] which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."); *Pub. Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470 (1989) (Kennedy, J., concurring) (describing the absurd results canon as a "narrow exception to our normal rule of statutory construction" that "demonstrates a respect for the coequal

Legislative Branch, which we assume would not act in an absurd way"); *Hurston v. Dir., OWCP,* 989 F.2d 1547, 1554 (9th Cir.1993) ("We are required by traditional canons of statutory construction to avoid a literal interpretation of a statute that leads to an absurd result or that is contrary to Congress' constitutional power.").

And the plain language of § 3599(g)(3) can be construed to avoid this absurd result and remain faithful to Congress' recognition in the CJA of the importance of public disclosure.[3] Specifically, rather than construing § 3599(g)(3)'s requirement that the court "shall" disclose this information after disposition of the petition as setting the earliest date by which the court may disclose this information, this language just as easily may be construed as setting the latest date by which the court *must* disclose this information. In other words, § 3599(g)(3) provides that the court *must* make this disclosure after disposition of the habeas petition, and leaves silent whether the court *may* exercise its discretion in disclosing such information earlier. The court therefore finds that § 3599(g)(3) does not preclude disclosure of the amounts of defense fees and costs before disposition of any petition that might be filed in this case.

**\*3** Turning to the precise request at hand, the Star–Advertiser seeks disclosure, at the conclusion of Defendant's sentencing, of the aggregate amount spent for the defense in this action. The Star–Advertiser seeks disclosure at the conclusion of Defendant's sentencing hearing (as opposed to now after the verdict has been reached) in light of *Gonzales,* which in a non-capital, multi-defendant case affirmed the trial court's decision to release the total amount paid to each defendant's attorney only after the last defendant was sentenced. 150 F.3d at 1264. *Gonzales* delayed disclosure because counsel for these multiple defendants were working together to avoid duplicative efforts such that disclosure prior to the last defendant's sentencing would prejudice that defendant by causing him to "reveal his defense." *Id.* (quoting H.R.Rep. No. 88–864 (1963), *reprinted in* 1964 U.S.C.C.A.N. 2990, 2990). No such concerns exist in this case, particularly where the jury has not imposed the death penalty. Rather, the court finds that disclosure of the aggregate amount disbursed by the Clerk's Office at this time will not prejudice Defendant—trial has ended such that there is no concern that disclosing this amount would cause Defendant to reveal his defense.

### III. *CONCLUSION*

The court GRANTS the Star–Advertiser's request for disclosure. Because the court finds that disclosure at this time will not prejudice Defendant, however, the court directs the Clerk's Office to make publicly available the total amount of payments made to date for Defendant's defense in this action at this time, as opposed to after sentencing as requested.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2014 WL 2932365

Footnotes

1    After this request, a subsequent request was made for juror-related costs. These costs will be provided with disclosure of defense-related fees and costs.

2    Congress enacted " § 3599 to govern appointment of counsel in capital cases, thus displacing § 3006A for persons facing execution (but retaining that section for all others)." *Martel,* 132 S.Ct. at 1284 (citations omitted).

3    *Martel* makes clear that § 3006A standards can be borrowed to provide meaningful guidance to § 3599. *Martel,* 132 S.Ct. at 1285.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.