UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


)
UNITED STATES OF AMERICA,      )
)
        Plaintiff,             )
                               )   Criminal Action
v.                             )   No. 13-10200-GAO
                               )
DZHOKHAR A. TSARNAEV, also     )
known as Jahar Tsarni,         )
                               )
        Defendant.             )
                               )


BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


### JURY TRIAL - DAY SIXTY


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Thursday, May 14, 2015
9:04 a.m.



Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

1  APPEARANCES:

2      OFFICE OF THE UNITED STATES ATTORNEY
       By: William D. Weinreb, Aloke Chakravarty and
3           Nadine Pellegrini, Assistant U.S. Attorneys
       John Joseph Moakley Federal Courthouse
4      Suite 9200
       Boston, Massachusetts  02210
5      - and -
       UNITED STATES DEPARTMENT OF JUSTICE
6      By: Steven D. Mellin, Assistant U.S. Attorney
       Capital Case Section
7      1331 F Street, N.W.
       Washington, D.C.  20530
8      On Behalf of the Government

9      FEDERAL PUBLIC DEFENDER OFFICE
       By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10          Federal Public Defenders
       51 Sleeper Street
11     Fifth Floor
       Boston, Massachusetts  02210
12     - and -
       CLARKE & RICE, APC
13     By: Judy Clarke, Esq.
       1010 Second Avenue
14     Suite 1800
       San Diego, California  92101
15     - and -
       LAW OFFICE OF DAVID I. BRUCK
16     By: David I. Bruck, Esq.
       220 Sydney Lewis Hall
17     Lexington, Virginia  24450
       On Behalf of the Defendant

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          THE CLERK:  All rise for the Court and the jury.

3          (The Court and jury enter the courtroom at 9:04 a.m.)

4          THE CLERK:  Be seated.

5          THE COURT:  Good morning, jurors.

6          THE JURORS:  Good morning, your Honor.

7          THE COURT:  Let me ask you all, including the

8   alternates, whether you have continued to abide by my

9   instructions to avoid any discussion of the case with anyone

10  outside the court or outside -- yes?

11         THE JURORS:  Yes.

12         THE COURT:  All right.  And also have avoided any

13  media coverage of the events of the trial?

14         THE JURORS:  Yes.

15         THE COURT:  All right.  Well, the record will reflect

16  that all deliberating jurors and all alternates have returned,

17  and I will direct the deliberating jury to resume its

18  deliberations.

19         THE CLERK:  All rise for the Court and the jury.  The

20  Court will be in recess.

21         (The Court and jury exit the courtroom and there is a

22  recess in the proceedings at 9:06 a.m.)

23         THE CLERK:  All rise for the Court.

24         (The Court enters the courtroom at 11:41 a.m.)

25         THE CLERK:  Be seated.

1          THE COURT:  Good morning.

2          COUNSEL IN UNISON:  Good morning.

3          THE COURT:  You've seen the note from the jury?

4          MR. WEINREB:  We have, your Honor.

5          MR. BRUCK:  Yes.

6          THE COURT:  I'll read it for the record.  "In

7    connection with the 'gateway factors,' do we base each

8    question's answer on our <u>own</u> interpretation or follow <u>exactly</u>

9    how each count is written (that is, should we take aiding and

02:45 10   abetting into consideration)?

11          "Same question to apply to 'conspiracy' as noted in

12   counts."

13          I solicit your views.

14          MR. WEINREB:  Your Honor, we propose -- though it's

15   not entirely clear, I think, from the face of it exactly what

16   they're getting at, we would propose to simply say that they

17   should follow exactly how it's written and take aiding and

18   abetting and conspiracy into account since the alternative,

19   which is -- they seem to be asking about a question of law.

02:46 20   They shouldn't be applying their own interpretations of the

21   law.  I believe the Court in its instructions instructed them

22   on aiding and abetting.

23          THE COURT:  Yes.

24          MR. WEINREB:  So that does seem to be the appropriate

25   thing for them to do.

1          THE COURT:  Mr. Bruck?

2          MR. BRUCK:  Your Honor, we think the answer to the

3     question is in the Court's instructions already, and the Court

4     should simply direct them back to the relevant instructions.

5     Particularly, we point to the second paragraph on page 18.

6          THE COURT:  Well, my --

7          MR. BRUCK:  Well, I'll tell you which paragraph.  "Any

8     finding that a gateway factor has been proven as to a

9     particular capital count must be based on Mr. Tsarnaev's

02:46 10     personal actions and intent and not on the actions of

11     intent" -- "or intent of anyone else.

12          "Intent or knowledge may be proven like anything else.

13     You may consider any statements made and acts done by

14     Mr. Tsarnaev and all the facts and circumstances in evidence

15     which may aid in a determination of Mr. Tsarnaev's knowledge or

16     intent."  And then "you may but are not required to infer" and

17     so forth.

18          THE COURT:  I think that may beg the question whether

19     "intent" as used in that paragraph includes the intent of an

02:47 20     aider and abetter.  That's what puzzles me.

21          MR. BRUCK:  Well, it is a factual question as to what

22     the aider and abetter intended to do.

23          THE COURT:  Right.

24          MR. BRUCK:  And that is simply something for the

25     jury -- there is no line between aiding and abetting.  At this

1    point all of these distinctions follow A, and all the jury is

2    concerned about is the defendant's intent to do the things

3    listed in the gateway factors.

4         THE COURT:  Well, to put it another way, is his intent

5    as an aider and abetter to assist Tamerlan's commission of the

6    crime the intent that is addressed here?  I think that's the

7    question.

8              MR. BRUCK:  Well, it's the -- excuse me.

9              (Counsel confer off the record.)

02:48 10         MR. BRUCK:  We think the focus is on the conduct -- on

11   the defendant's own conduct.  That is critical.  And if

12   his -- whether the conduct was with intent to kill or intent to

13   cause great bodily injury.  And an instruction which allows the

14   jury to say, Well, he was aiding and abetting Tamerlan, and

15   Tamerlan had the intent, defeats the purpose of the gateway

16   factors entirely.

17        THE COURT:  But in order to aid and abet -- and he's

18   been convicted of it -- the jury would have to find that he

19   shared the intent of the principal and consciously acted to

02:49 20   advance it.

21        So I guess that -- the question is:  Does the use of

22   the intent in this section/paragraph that you were reading from

23   include that?  It would seem that it does.  Let me just add, to

24   make things worse, that I'm not sure the same applies for

25   conspiracy if it's referring to a *Pinkerton* conspiracy because

1    the intent may not have to be proved in a *Pinkerton*

2    circumstance as long as the principal or the coconspirator in

3    that case acts pursuant to the general plan of the conspiracy

4    as agent for the other conspirators.  Intent could be absent

5    under those circumstances, but I think it's necessarily present

6    with respect to an aider and abetter.

7         MR. BRUCK:  I don't think it is.  The crime -- the

8    substantive charge is -- the charge does not require the intent

9    to kill, the substantive charge alleged in the indictment.  For

02:50 10    example, use of a weapon of mass destruction and death results.

11    What is intended is the use of the weapon of mass destruction,

12    not the resulting death; and, therefore, it would do an end run

13    around the very purpose of the gateway factor.  To say that if

14    the defendant shared the intent of Tamerlan to use the weapon

15    of mass destruction, it would not be further required that he

16    shared the intent to cause death to result.  And that's the

17    whole problem.

18         So I think that's why we think that this -- if you

19    look at the actual gateway factors, the issue is whether

02:50 20    Mr. Tsarnaev intentionally killed, number two is intentionally

21    inflicted, number three is intentionally participated in an act

22    contemplating death, number four is intentionally and

23    specifically engaged in an act knowing grave risk of death.

24    That's the focus now.  It's different than in the indictment.

25    So I really think the government's emphasis on aiding and

1  abetting is mistaken given the limited elements of the

2  indictment.

3           THE COURT:  Well, I agree with you that it's different

4  from the question we asked in the guilt phase because the

5  killing is not an element of the charged offense, but as to the

6  intentionality of an aider and abetter, it is a parallel

7  question, although it involves a different posited element,

8  which is the intent to kill.  It could be a factual question

9  whether the defendant, acting as an aider and abetter to

02:51 10  Tamerlan's principal crime, intended in connection with that

11  crime the killing of a person.

12           They were not asked that precise question before

13  because it was not an element of the offense, but I don't think

14  it negatives the reference or the use of aiding and abetting

15  for that purpose.  But as I say, I think that is not

16  necessarily true of the conspiracy unless it were shown that

17  the coconspirator did share the mental intent to kill.  That

18  gets a little --

19           (Counsel confer off the record.)

02:52 20           THE COURT:  -- perhaps abstruse for the jury.  I don't

21  know how to address that.

22           MR. BRUCK:  I think the problem is that the gateway

23  factor does not charge aiding and abetting liability and I

24  don't think that we can import it in now.

25           THE COURT:  I think that begs the question.  The

```
 1   question is:  Does it?
 2            MR. BRUCK:  Bear with me.
 3            (Counsel confer off the record.)
 4            THE COURT:  Do you know what?  Just so we're not
 5   rushed on this, let's take a short break.  You talk amongst
 6   yourselves and we'll come back in a few minutes and see how
 7   these things have refined.
 8            (The Court exits the courtroom and there is a recess
 9   in the proceedings at 11:50 a.m.)
10            THE CLERK:  All rise for the Court.
11            (The Court enters the courtroom at 12:10 p.m.)
12            THE CLERK:  Be seated.
13            THE COURT:  Were you about to say something?
14            MR. WEINREB:  Yeah.  So, your Honor, I'm trying to
15   make sure I understand what the Court's particular propositions
16   were.  The way that we believe the law is in this area is that
17   we assume that these -- we'll assume, at least hypothetically,
18   that the questions concern the death of Krystle Campbell.  And
19   if the jury finds that the defendant aided and abetted the use
20   of a weapon of mass destruction that resulted in the death of
21   Krystle Campbell, then they have found that he, through his
22   personal actions, killed her, but they would still also have to
23   find that he intended that she die.  Not her personally, of
24   course, but they will have to independently find that he had an
25   intent that death result.
```

1        Similarly, with respect to the conspiracy count, Count

2   1, if they find that he conspired with Tamerlan Tsarnaev to use

3   a weapon of mass destruction and that the death of Krystle

4   Campbell resulted, they will have found that he killed her

5   because the acts there, his personal action, was to agree with

6   Tamerlan Tsarnaev to commit this crime, the death resulted from

7   the crime.  And they still, of course, have to find that he

8   intended that death resulted, and they have to find that based

9   on all the facts and circumstances.

03:15 10        So that's our understanding under of the sort of

11   landscape.  However, we feel that the Court did essentially

12   instruct that in the instructions that it gave, both the ones

13   that Mr. Bruck just read to the Court and the instructions that

14   the Court gave on aiding and abetting and by setting forth the

15   elements of the various offenses.

16        So we are content to simply point the jury to the

17   instructions that have already been given.  We would ask,

18   though, that it not just be limited to the particular one that

19   Mr. Bruck read, but also that the Court point them to the

03:16 20   aiding and abetting instruction and the elements of the

21   offenses and that -- basically tell them the answer can be

22   found within that.  That's our proposal.

23        MR. BRUCK:  Well, we continue to believe that the

24   excerpt I read contains all of the answer to the jury's

25   question.  And I think it's helpful to step back and recall

1    what the purpose -- why Congress enacted these gateway factors

2    to begin with.

3         Criminal law is full of all sorts of rules that

4    substitute or modify or create legal fictions about criminal

5    responsibility.  And in the context of the Eighth Amendment and

6    the death penalty, the Supreme Court encountered the fact that

7    this can dilute the moral and personal culpability of the

8    defendant sometimes so low, as in a case like *Enmund v.*

9    *Florida*, that it would actually violate the Eighth Amendment to

03:17 10   inflict the death penalty.  That, of course, was a wheelman

11   case where the defendant was in the car and didn't know that

12   the killing was taking place.

13        Congress dealt with that by creating a set of

14   gradations, gradations both of personal physical involvement in

15   the homicide and of mental states, A, B, C and D which are

16   rendered as 1, 2, 3 and 4 in these instructions.  They replace,

17   they cut through, they eliminate the whole body of accessorial

18   liability, of conspiratorial liability, of *Pinkerton* liability.

19   They replace it with four levels of culpability which are

03:18 20   self-contained and are intended to focus the jury on the

21   personal actions and culpability of the accused.

22        And it would be a grave error, we think, to begin

23   bringing back rules like aiding and abetting.  And if the Court

24   were to do that, you would be telescoping these four factors

25   arguably into one or two, which is not what Congress did.

1          We don't think there are any questions remaining when

2     the jury is simply directed to the question, Did Mr. Tsarnaev

3     intentionally kill, for example, Krystle Campbell?  Yes or no?

4     Did he intentionally inflict serious bodily injury upon that

5     particular victim?  And if they say no to those, then they have

6     to look at Number 3, did he participate in an act and so forth,

7     or did he engage in an act of violence knowing that the act

8     created a grave risk?  These are descending levels of both

9     physical engagement in the crime leading to her death and of

03:19 10    intent.

11          And we really think that the jury should simply be

12    directed back to these instructions, which are complete and

13    adequate.  We very much disagree that the aiding and abetting

14    instructions, which were given simply to remind the jury of

15    what the other crimes are for the first statutory aggravating

16    factor, should now be imported into the gateway factor.  That

17    would really undo what Congress has created here.

18          So we think that the Court's instructions as they

19    exist now answer the question and the jury should be directed

03:19 20    back to.

21          MR. WEINREB:  So just to clarify, we don't dispute

22    that the defendant's -- that the gateway factors depend on the

23    defendant's personal actions and intent.  They do.  But as the

24    Court noted earlier, that kind of begs the question of what

25    does that mean, personal actions and intent?  If he took

1   actions that effectively make him a principal because he aided

2   and abetted the offense, then that is basing it on his personal

3   actions.

4        I don't believe that the cases, certainly not the

5   Supreme Court cases, make any clear statement about what level

6   of personal action needs to be involved for death penalty

7   consideration.  The case that Mr. Bruck is referring to simply

8   said that being the wheelman in the car wasn't enough but it

9   didn't say what -- you know, what is enough, and it certainly

03:20 10   didn't rule out that being an aider and abetter was

11   insufficient.

12        So, again -- the instructions always have to be read

13   as a whole.  That's a standard principle of the law in these

14   areas.  And we're just -- we're just checking here.

15        (Pause.)

16        MR. WEINREB:  It was not our recollection that the

17   aiding and abetting and all the instructions about the offenses

18   were given solely in connection with an aggravating factor.

19        The Court had instructed them that even though they

03:21 20   had determined in the liability phase that the defendant was

21   guilty of the crimes and they needed to consider the elements

22   again...

23        (Pause.)

24        MR. WEINREB:  We're looking at page 29 of the

25   transcript.  It says, (as read):  Though you have already in

1    the prior phase convicted the defendant of those crimes, I will

2    summarize for you again that the elements of those offenses so

3    that you can determine whether the death as alleged occurred

4    during the course of that conduct.

5           That was the reason for which all the instructions

6    about the offenses, the aiding and abetting and so on, were

7    given to the jury, to determine whether these deaths were

8    caused by these crimes.  So I don't think that part of

9    Mr. Bruck's argument is well taken.

03:22 10           (Pause.)

11           MR. BRUCK:  Your Honor, I do have one last comment

12   about the note itself.  When the jury writes, "Do we follow

13   exactly how each count is written?" it seems as though what

14   they mean by "count" is gateway factor.  Are we -- and on that

15   understanding, the answer would be yes.

16           THE COURT:  If that's what they meant.

17           MR. BRUCK:  I'm sorry?

18           THE COURT:  You know, one alternative is to ask them

19   to perhaps take a second crack at writing the question because

03:23 20   it is a little confusing.  I'm concerned about reference to

21   their own interpretation.  I'm not sure what that means.  It

22   could mean something as benign as they're factfinding but it

23   could mean something more concerning.

24           So I don't know.  Maybe we could just ask them to

25   perhaps clarify the question by restating it.  I think we might

1    benefit from that.  I think it's worth a step, I guess.

2           So what I would propose to do, then, is to write on

3    the bottom of this and just send it back out without bringing

4    them in, and say we're not entirely clear on what you're

5    asking.  Would you try to rephrase the question, making clear

6    what your concern is, or something like that.  Is that all

7    right?

8           MR. BRUCK:  Uh-huh.

9           THE COURT:  On that subject let me just tell you that

03:24 10   we did have a prior note that didn't concern substance at all

11   that I did respond to.  They asked if they could have extra

12   copies of the verdict slip and the instructions so they didn't

13   have to share one copy, and I sent back 12 copies of each, just

14   for the record.

15          So I think we'll do that, and we'll await their

16   response and see what that clarifies, okay?

17          THE CLERK:  All rise for the Court.

18          (The Court exits the courtroom and there is a recess

19   in the proceedings at 12:21 p.m.)

03:50 20          THE CLERK:  All rise for the Court.

21          (The Court enters the courtroom at 12:48 p.m.)

22          MR. WEINREB:  So having had a chance now to review the

23   instructions and reflect more on it, we're actually now in

24   agreement with the defense.  We do think that the

25   appropriate -- basically, we will acquiesce in their request

1    that the jury simply be read or pointed to this paragraph and

2    told that that is the answer.

3              THE COURT:  The only thing that I would suggest adding

4    to that is that what the defendant intended is a question of

5    fact to be determined from all the evidence that they have.  Is

6    that all right?

7              MR. WEINREB:  Yes, that's fine by us.

8              THE COURT:  Okay.

9              (Pause.)

03:52 10         THE COURT:  I'm told they're writing another note, so

11   we might as well wait.

12             So why don't you go out and bring it in when you have

13   it.

14             MR. BRUCK:  To be clear, the add-on, we think, should

15   focus on what the defendant did.  We're not --

16             THE COURT:  All right.  We've been focusing on intent

17   which is why I said it says actions --

18             MR. WEINREB:  I think the --

19             THE COURT:  -- personal actions and intent.  I guess I

03:53 20    could say his -- what were his personal actions and intent is a

21   question of fact -- are questions of fact.

22             MR. WEINREB:  Yes.

23             MR. BRUCK:  Yes.

24             (Pause.)

25             THE COURT:  You know, as I reread the paragraph, I

1    don't think the add-on is necessary.  I think it's included in

2    the paragraph.

3              (Pause.)

4              (The Court reviews an additional question from the

5    jury.)

6              THE COURT:  Share it with counsel.

7              (Pause.)

8              MR. WEINREB:  So, your Honor, counsel have conferred,

9    and with respect to Question 1, we believe the short answer is

04:07 10   yes.

11             THE COURT:  Yes; I agree.

12             MR. WEINREB:  With respect to Question 2 -- although

13   we both agree that it may bear emphasizing to the jury that

14   they do need to be unanimous with respect to A or -- unanimous

15   with respect to B, or unanimous that it's both.

16             THE COURT:  It does appear from their phrasing that

17   they understand that.

18             MR. WEINREB:  It does.

19             THE COURT:  But it is worth emphasizing.

04:07 20        MR. WEINREB:  But we have no objection to

21   reemphasizing.

22             With respect to the second question, our theory is

23   that they may be concerned that if they don't simply check off

24   the box that it applies to all counts, then they're in the

25   position of having to list specific counts, what they are

 1    further wondering is whether they need to specify for each of

 2    those counts whether it was A or B or both.  And the

 3    answer -- if that is, in fact, the question, the answer to that

 4    would be no, that they have to be unanimous.

 5            THE COURT:  They don't have to specify A or B or A and

 6    B?

 7            MR. WEINREB:  They do not need to.

 8            THE COURT:  But they do have to specify the counts.

 9            MR. WEINREB:  They do have to specify the counts and

04:08 10   they have to be unanimous with respect to A or B or both, but

 11    they need not specify which theory.

 12            THE COURT:  Okay.  Are you going to line them up?

 13            You know, coming back to the other question, I've

 14    reread it again and I think I've reversed my position again.

 15            (Laughter.)

 16            THE COURT:  Because the statement in the middle, it

 17    focuses only on intent and not actions, and I think a statement

 18    about what the actions were as a matter of fact as well should

 19    be added at the end.

04:09 20            MR. WEINREB:  Very well.

 21            (Pause.)

 22            THE CLERK:  All rise for the jury.

 23            (The jury enters the courtroom at 1:07 p.m.)

 24            THE CLERK:  Be seated.

 25            THE COURT:  All right, jurors.  We have two questions

now that I'm going to respond to.  I'm going to respond to the
second version of the question that I asked you to rephrase,
and that reads:  "Should gateway factors be considered as an
individual act by the defendant solely or should aiding and
abetting that is stated in a count be considered when
answering, in particular, with Factor 1?"

And I think the way to answer that is to tell you what
I told you in my instructions, that any finding that a gateway
factor has been proven as to a particular count must be based
on Mr. Tsarnaev's personal actions and intent and not on the
actions and intent of anyone else.

Intent and knowledge may be proven like anything else:
You may consider any statements made or abilities done by
Mr. Tsarnaev and all the facts and circumstances in evidence
which may aid in a determination of his knowledge or intent.
You may, but are not required, to infer that a person intends
the natural and probable consequences of his -- of acts
knowingly done or knowingly omitted.  In short, what actions or
intentions or intent the defendant had is a question of fact to
be determined by you from all the evidence you think bears on
that issue.

Let me turn to the other question.  It's actually a
two-part question, I think.  This asks now not about the
gateway factors but about the first aggravating factor.  "On
Question 1 for Section 3, if we all agree to either Part A or B

1    or A and B, do we then check off the first line that we

2    unanimously all agree to the applicable capital counts?"

3           The short answer to that question is yes; that is, if

4    you are all in agreement that Part A has been proved or you're

5    all in agreement that Part B has been proved, or you're all in

6    agreement that parts A and B have been proved, and that applies

7    to all of the counts, then the first option would be the

8    correct option.  I emphasize that when there are alternatives

9    like A and B, and that's important to your decision, you must

04:13 10   be unanimous as to whether it is A or B or both.  Half of you

11   can't think it's A and half B.  That would not be a unanimous

12   answer.

13          Let me turn to the second part of the question.  "If

14   it is specific to just be for some," I interpret that to mean

15   some counts, "do we have to only list the counts?"  Again,

16   assuming you are unanimous as to why the condition is

17   satisfied, because you are unanimous as to A or unanimous as to

18   B or unanimous as to both A and B, as to some counts but not

19   all, then it would be the third option under the -- and you

04:13 20   would check that, and then you would list each of those counts

21   where you found that to be the case, and you would omit listing

22   any count as to which you did not find that, all right?

23          Okay.  Thank you.  We'll ask you to resume your

24   deliberations.

25          THE CLERK:  All rise for the Court and jury.  Court

1  will be in recess.

2            (The Court and jury exit the courtroom and there is a

3  recess in the proceedings at 1:11 p.m.)

4            THE CLERK:  All rise for the Court and the jury.

5            (The Court and jury enter the courtroom at 4:38 p.m.)

6            THE CLERK:  Be seated.

7            THE COURT:  All right, jurors.  You've had a long day

8  of work.  We're going to suspend for the day and resume

9  tomorrow.  Again, I, of course, remind you of my instructions

07:42 10  regarding discussions and contact with outside information.

11  I'm sure you'll find it pleasant to think of other things this

12  evening than the case.  So we ask you to put it out of your

13  mind, and we'll resume again in the morning.

14            We're actually going to begin at 8:30 in the morning

15  so that you're not sitting around excessively waiting for us to

16  signal you can resume deliberations.  So we'll assemble here at

17  8:30 in the morning, as we did this morning.

18            Madam Foreman, we've given you an envelope to put the

19  verdict slip in.  And I would just suggest in addition to

07:42 20  sealing it, that you also sign your name across the flap, so,

21  as an extra security measure that you can be sure it hasn't

22  been opened by anyone.  And you'll be given that in the

23  morning, and can open it and resume your deliberations, all

24  right?

25            So have a pleasant evening and we'll see you tomorrow

1    morning.

2            THE CLERK:  All rise for the Court and jury.  The

3    Court will be in recess.

4            (The Court and jury exit the courtroom and the

5    proceedings adjourned at 4:40 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3            I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4      the United States District Court, do hereby certify that the

5      foregoing transcript constitutes, to the best of my skill and

6      ability, a true and accurate transcription of my stenotype

7      notes taken in the matter of Criminal Action No. 13-10200-GAO,

8      United States of America v. Dzhokhar A. Tsarnaev.

9

10     /s/ Marcia G. Patrisso
       MARCIA G. PATRISSO, RMR, CRR
11     Official Court Reporter

12

13     Date:  5/10/16

14

15

16

17

18

19

20

21

22

23

24

25