```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff,                  )
                                    )  Criminal Action
v.                                  )  No. 13-10200-GAO
                                    )
DZHOKHAR A. TSARNAEV, also          )
known as Jahar Tsarni,              )
                                    )
        Defendant.                  )
                                    )


        BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
             UNITED STATES DISTRICT JUDGE
```

**EX PARTE LOBBY CONFERENCE**

```
     John J. Moakley United States Courthouse
              Courtroom No. 9
              One Courthouse Way
         Boston, Massachusetts  02210
          Thursday, February 26, 2015
                  3:35 p.m.



           Marcia G. Patrisso, RMR, CRR
              Official Court Reporter
           John J. Moakley U.S. Courthouse
          One Courthouse Way, Room 3510
           Boston, Massachusetts  02210
                 (617) 737-8728

    Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:

 2       OFFICE OF THE UNITED STATES ATTORNEY
         By: William D. Weinreb, Aloke Chakravarty and
 3           Nadine Pellegrini, Assistant U.S. Attorneys
         John Joseph Moakley Federal Courthouse
 4       Suite 9200
         Boston, Massachusetts  02210
 5       - and -
         UNITED STATES DEPARTMENT OF JUSTICE
 6       By: Steven D. Mellin, Assistant U.S. Attorney
         Capital Case Section
 7       1331 F Street, N.W.
         Washington, D.C.  20530
 8       On Behalf of the Government

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2           THE COURT:  So we just wanted to -- you know, this is
 3   about exhibits.  The lists we've had have maybe been
 4   identifiable to people familiar with all this material, but I'm
 5   anxious to get it in trial number form.  And maybe -- if that's
 6   what's in the box --
 7           MS. PELLEGRINI:  That's what's in the box partially,
 8   up to Exhibit No. 678.  So we're still getting the rest.
 9           THE COURT:  What's the end number?
10           MR. CHAKRAVARTY:  1482.
11           THE COURT:  Okay.
12           MR. CHAKRAVARTY:  We've prepared a spreadsheet, listed
13   by number, describing exhibits in a conventional form, and we
14   are preparing a thumb drive for your Honor that has copies of
15   those exhibits referencing those numbers.  So, you know, more
16   traditional.
17           THE COURT:  So if we go to Exhibit 78, we'll be able
18   to see Exhibit 78?
19           MR. CHAKRAVARTY:  Correct.  Correct.
20           Now, there are a couple of -- there are a few
21   discrepancies from that formal model which is JERS compatible
22   because the method that we're going to be playing some of the
23   exhibits are in kind of standalone either programs or
24   standalone media.  For compatibility reasons they haven't been
25   able to easily been put into our Sanction trial presentation
```

1  software, and similarly, they're not by themselves JERS
2  compatible.  Dealing with those technological issues is taking
3  a lot of CPU time and that's why we haven't been able to do
4  that yet, give you that.
5          So we expect to have, by tomorrow, so that you have
6  it, the exhibit list and the exhibits in a 95 percent
7  completion, and most of the problems are going to be kind of
8  later down the range so we'll supplement -- replace them.
9          The one exhibit which will be unconventional is a
10 presentation -- what we call the 2D Exhibit.  It's a
11 presentation vehicle, and it's an exhibit unto itself, to
12 present hundreds of photos.  And they put those photos in
13 relation to where specific items of evidence were found on
14 Boylston Street, for example.  So there might be 500 different
15 items of evidence.  So each photo is a pixel or a mark --
16         THE COURT:  So you can sort of hover on it or click on
17 it and it will come up?
18         MR. CHAKRAVARTY:  Exactly. And then for each -- you
19 know, say it's a piece of a backpack.  There might be three
20 photos of the backpack:  The photo in situ, the photo when it
21 was down at the lab and then a photo of an intact backpack
22 that's comparable.  So that took some fancy, you know,
23 programming to create that flash -- it's a flash file like you
24 would get on the Internet.  But because it's a flash file, it's
25 not a static file, it's not readily JERS compatible.  The

1  alternative is to take snapshots of each of those things, but
2  we think for jury purposes as well as our presentation
3  purposes, using that as the vehicle with which this information
4  gets published is the easiest way to do it.
5          We will be giving you that on this thumb drive, but
6  it's not -- each of those is not numbered with the exhibit
7  number that they -- will appear on the exhibit list.  So that's
8  like 500 or so photos.  The photo will be -- will have an
9  exhibit number but --
10         THE COURT:  But not within this particular flash --
11         MR. CHAKRAVARTY:  Correct.
12         THE COURT:  And you say it's not compatible with JERS.
13 Is this something that can be put into JERS?  Our agreement was
14 that we'll deal with JERS at the end of the case, right?
15         MR. CHAKRAVARTY:  Yes.
16         THE COURT:  And just admitted exhibits so you don't
17 have to overload it or so on and so forth.
18         So is that something that can be done at the end of
19 the case, is convert it in some way, or do we have to give the
20 jurors some supplemental equipment to view that if it's in
21 evidence?
22         MR. CHAKRAVARTY:  Well, any computer can view it.
23 It's the --
24         THE COURT:  They don't usually have computers.
25         MR. CHAKRAVARTY:  Yeah, they don't normally have

1    computers.  So there is a way to memorialize.  You know, we can
2    create some less-than-exact -- the method that it's going to be
3    presented in may not be the exact method in which they would be
4    able to view it in the room unless -- you know, so we'll use
5    some other alternative method, although that's definitely
6    something they're still working on to try to figure out, but
7    it's unlikely --
8               MS. PELLEGRINI:  Actually, we can provide a clean
9    computer laptop that will simply play the --
10              THE COURT:  Right.  Right.  So this is interactive,
11   then, right?  So the idea might be that even the jurors would
12   have the interactive capability.
13              MR. CHAKRAVARTY:  Correct.
14              THE COURT:  I'm not sure they'd want it.
15              MR. CHAKRAVARTY:  Actually that really is useful, I
16   think.
17              THE COURT:  Well, as long as they've seen it, I guess,
18   is what I'm saying.  I don't know if they need to play with it
19   themselves.
20              But anyway are there others besides that one or are
21   there more than one?
22              MR. CHAKRAVARTY:  That one covers Boylston Street and
23   a couple of other scenes, so the same principle.
24              THE COURT:  Watertown, probably.
25              MR. CHAKRAVARTY:  Watertown -- no, actually.

1                THE COURT:  No?

2                MR. CHAKRAVARTY:  There's some vehicles which it

3    relates to, and then the dorm room and Norfolk Street, so the

4    residence.  Watertown is a different -- more conventional,

5    traditional, demonstration.  There's some videos and some

6    compilations which I'm not sure yet but I think we're likely to

7    be able to convert them all into Windows media video files that

8    are necessary.  So that we are optimistic of success, but for

9    tomorrow those might not be done.  I can't think of anything

10   else that's categorically --

11               MR. WEINREB:  No, there are a couple of things that we

12   may -- when we show them to -- when we use them in the

13   courtroom and publish them to the jury, they'll actually be in

14   a format like an MOV format, which is a --

15               MR. CHAKRAVARTY:  A movie file.

16               MR. WEINREB:  -- QuickTime file, but they will be able

17   to be converted to a WMV file and then put into JERS.  So it

18   will be the exact same thing, just different visual.

19               THE COURT:  Well, you know, our IT people, you can

20   always work with them.  They know JERS pretty well, so...

21               Okay.  I mean, the immediate occasion for this was we

22   have a pending motion about the first two weeks, and I wanted

23   to be able to navigate that.

24               MR. WEINREB:  So on that, the defense, I believe in

25   their motion that deals with photographs and videos, refers to

```
 1   them by number, by exhibit number, and that's based on a
 2   preliminary exhibit list that we had given them at that time
 3   really for that purpose.  And the numbers on that list are
 4   different from the numbers on the list we're about to give you.
 5   So it's important for the Court to have the list that has the
 6   numbers that the defense is using and --
 7             Did we produce that to the Court as well as --
 8             MS. PELLEGRINI:  We produced the old list, the
 9   preliminary.
10             MR. WEINREB:  Yeah, the preliminary.
11             MS. PELLEGRINI:  Because I think in our response we
12   actually did use the correct numbers.
13             THE COURT:  This one?
14             MS. PELLEGRINI:  The exhibits.  Yes, I just checked
15   them.
16             MR. WEINREB:  So I used different numbers than --
17             MS. PELLEGRINI:  I don't know if you did.  I didn't
18   read theirs; I read yours.
19             THE COURT:  These have numbers, it looks like it, 1
20   through 41?
21             MR. MELLIN:  Your Honor, those are included in the
22   exhibits in the box that we just provided to you.
23             MS. PELLEGRINI:  They do, your Honor.  But as it says
24   here, "preliminary," so they now read slightly differently.  So
25   1 is going to be 0001, '2, '3, '4, '5, to go up.
```

1             THE COURT:  Okay.
2             MS. PELLEGRINI:  But they're close.
3             THE COURT:  Do they track pretty well?
4             MS. PELLEGRINI:  They track closely to that.  In any
5    event, I've also given you the binders, 1, 2 and 3, that cover
6    Exhibits 1 through 678, so --
7             THE COURT:  So those are printouts of the exhibits?
8             MS. PELLEGRINI:  Those are printouts of the exhibits.
9             THE COURT:  Okay.  All right.
10            MR. CHAKRAVARTY:  But they have the final number on
11   it, not the earlier number.
12            MS. PELLEGRINI:  They have the final number on it.
13   But our list in our response does -- with the exception of the
14   autopsy photos, does track very closely to those numbers that
15   are in question.
16            MR. WEINREB:  I mean, there has to be some way to look
17   at the defendant's motion and know exactly which photo they're
18   talking about.
19            MS. PELLEGRINI:  When you say "the two photos depict,"
20   then you have 38 and 39.  They are actually 38 and 39.
21            MR. WEINREB:  Okay.  And is that true for everything
22   that is in the motion?
23            MS. PELLEGRINI:  Let's see.  48 and 41 are correct, 25
24   and 26, I believe, are also correct.  Yup.  25 and 26 are
25   correct, 32 is correct, 11 is correct, 14 is correct, 23

```
 1   and -- 23 is a video, so that will come, although I did, when
 2   we did this list, turn over a disk and a thumb drive that had
 3   the preliminary.  So that 2D and those videos are actually on
 4   that.
 5            THE COURT:  And are they -- how do we identify them on
 6   the list?
 7            MS. PELLEGRINI:  Well, let me see that, your Honor.
 8            THE COURT:  This one?
 9            MS. PELLEGRINI:  Yes.  Okay.  So --
10            THE COURT:  So this is --
11            MS. PELLEGRINI:  So 23 matches -- this says 495, it
12   says "Forum - full"; however, when we give over the list
13   tomorrow, it will have more of an explanation of the name and
14   the file and also the type of file, so you can tell whether
15   it's a video or a photo.
16            THE COURT:  Okay.  But this list doesn't have file
17   names.
18            MS. PELLEGRINI:  And that list is --
19            THE COURT:  This is from the 29th of December.
20            MS. PELLEGRINI:  Yeah.  It's changed.  We'll get you
21   another one.
22            THE COURT:  So this is useless?
23            MS. PELLEGRINI:  Pretty much.
24            THE COURT:  All right.  Well, I mean, the primary --
25   the immediate horizon is to deal with the issues raised by the
```

1  status report and the motion.
2          So they've just reconstituted the courtroom.  The
3  question arose on that special monitor that you want to use --
4  and I'm not -- could you tell me again how and when you want to
5  use it?
6          MS. PELLEGRINI:  It does --
7          THE COURT:  I understand it's a higher resolution.
8          MS. PELLEGRINI:  It's a higher resolution than the
9  monitors in the jury box.
10         THE COURT:  Is that just for any particular exhibit or
11 group of exhibits?
12         MS. PELLEGRINI:  It really was for a few exhibits,
13 including the 2D and also the MIT video.  You know, some of our
14 stuff just isn't able to be enhanced all that much and it needs
15 to have a higher quality.
16         THE COURT:  That's what I understood it was for, was
17 the MIT video, so it's okay.  My concern is that it's bigger
18 and higher than we thought.  I'm not sure -- I mean, is it okay
19 to be against the wall and bring out when you need to use it?
20         MS. PELLEGRINI:  I think so, yes.  That was the point
21 of having it on the stand.
22         THE COURT:  That's what you had in mind?
23         MS. PELLEGRINI:  Yeah.
24         THE COURT:  I thought I once heard somebody wanted to
25 put it there and let it sit and just use it once in awhile, but

```
 1   as far as that, it was a much lower profile than --
 2           THE CLERK:  We were going to bring it in front of
 3   where I'm sitting, in front of that conference table, because
 4   there is a way of hooking it up -- I think Phil or somebody
 5   said that it -- or Chris said that it can be hooked up.  So we
 6   were just going to have it there and I would just be behind it.
 7           THE COURT:  If it's there permanently, it will be in
 8   my way.
 9           THE CLERK:  No, it's not going to be there
10   permanently.  My understanding is it's just going to be for the
11   exhibits that they want to use it for, not for everything.  And
12   it's on wheels so they'll be able to move it around.
13           THE COURT:  Okay.  I just wanted to be sure.
14           MR. WEINREB:  We don't mind bringing it out and
15   putting it back but there are a couple more things I think we'd
16   probably like to use it for.
17           THE COURT:  No, no, it's fine over against the wall.
18   I thought that somebody had once told me it was going to be
19   placed in a position so the jury could see it and stay there
20   throughout the trial because of its use, but the use won't be
21   so regular that it will be a problem to move it into place.
22           MS. PELLEGRINI:  No, it's not necessary for all the
23   exhibits.
24           THE CLERK:  That was my understanding as well, Judge.
25           THE COURT:  Okay.  I guess that's -- oh, yeah.  We
```

```
 1   just stumbled across it, actually.  We have these hearing
 2   assist things that the interpreters sometimes use and they also
 3   will help people with hearing disabilities.
 4           Will there be witnesses who will have hearing
 5   disabilities for the government and will they need to use that
 6   system?
 7           THE CLERK:  Good point.
 8           MS. PELLEGRINI:  Some do.
 9           MR. MELLIN:  But they're generally able to get by
10   without any kind of an assist.
11           THE COURT:  Okay.  All right.  We have -- we
12   hardly -- we use it mostly for interpreters, particularly if
13   there are multiple-defendant situations, but it's there, so
14   just...
15           MR. CHAKRAVARTY:  One thought, that some jurors may
16   actually find that helpful.
17           THE COURT:  That's what first occurred to me because
18   some of the jurors mentioned that.  I don't know that we have
19   very many in the pool that are in that condition.  We can watch
20   for that.  But that's a good use for it as well.
21           Okay.  I think that's all I have.
22           COUNSEL IN UNISON:  Okay.  Thank you.
23           THE COURT:  See you soon.
24           (The proceedings adjourned at 3:49 p.m.)
25
```

C E R T I F I C A T E

I, Marcia G. Patrisso, RMR, CRR, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 13-10200-GAO, United States of America v. Dzhokhar A. Tsarnaev.

/s/ Marcia G. Patrisso
MARCIA G. PATRISSO, RMR, CRR
Official Court Reporter

Date: 5/27/16