1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
2

3
                                        )
4    UNITED STATES OF AMERICA,          )
                                        )
5            Plaintiff,                  )
                                        )   Criminal Action
6    v.                                 )   No. 13-10200-GAO
                                        )
7    DZHOKHAR A. TSARNAEV, also         )
     known as Jahar Tsarni,             )
8                                        )
             Defendant.                  )
9                                        )

10

11           BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                    UNITED STATES DISTRICT JUDGE
12

13
                      SEALED LOBBY CONFERENCE
14

15               Excerpted from Day 57 of Jury Trial

16

17           John J. Moakley United States Courthouse
                          Courtroom No. 9
18                       One Courthouse Way
                    Boston, Massachusetts  02210
19                     Thursday, May 7, 2015
                            12:38 p.m.
20

21
                      Cheryl Dahlstrom, RMR, CRR
22                       Official Court Reporter
                    John J. Moakley U.S. Courthouse
23                  One Courthouse Way, Room 3510
                    Boston, Massachusetts  02210
24                          (617) 737-8728

25           Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3             Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Steven D. Mellin, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, William W. Fick and Timothy G.
10         Watkins, Federal Public Defenders
           51 Sleeper Street
11         Fifth Floor
           Boston, Massachusetts  02210
12         - and -
           CLARKE & RICE, APC
13         By: Judy Clarke, Esq.
           1010 Second Avenue
14         Suite 1800
           San Diego, California  92101
15         - and -
           LAW OFFICE OF DAVID I. BRUCK
16         By: David I. Bruck, Esq.
           220 Sydney Lewis Hall
17         Lexington, Virginia  24450
           On Behalf of the Defendant.

18

19

20

21

22

23

24

25
```

1    (LOBBY CONFERENCE AS FOLLOWS:

2         THE COURT:  So I've been thinking about this issue,

3    and I think it is a substantial enough issue for either side,

4    either way it goes, that I want to take my time on it, and I

5    want more information.  I think we're going to suspend today.

6    If she gets called, she can get called on Monday morning.  If

7    she doesn't get called on Monday morning, we'll do something

8    else.  But I would like from the defense a very specific

9    proffer so I will know exactly what she proposes to say, okay?

11:38 10    Detailed.

11         MS. CONRAD:  Okay.  But should that include, for

12    example, the issue of remorse?

13         THE COURT:  It should include anything you would

14    propose to ask her about.  I could conceive that I would look

15    at it and say, That's okay; that isn't.  That's why I want it

16    so specific.

17         MS. CONRAD:  May we make that ex parte so the

18    government --

19         THE COURT:  No, no, no.  I want them to weigh in on it

11:39 20    too.  I would like that and any authority you would like to

21    submit for doing it this way and so on and so forth, any

22    applicable -- I'd like that, since you've been thinking about

23    this for a while -- I'm not going to squeeze you.

24         MS. CONRAD:  The government just filed last night,

25    but, yeah.

1          THE COURT:  But you know you were going to try to use

2     her.  So by noon tomorrow, if I could, okay?  And then I'd like

3     from the government a response by 5 on Saturday, okay?

4          MR. WEINREB:  That's no problem.

5          THE COURT:  Then I'll have some time to look at it

6     before we convene on Monday morning.

7          MR. WEINREB:  I assume though that that will be it

8     from the defense for Monday morning.  This is not --

9          THE COURT:  That is the end of the evidence for the

11:40 10    defense?

11          MR. BRUCK:  Yes.

12          MR. WEINREB:  So we'll be ready to go on Monday.

13          THE COURT:  So you want to tell us anything about

14     that?

15          MR. WEINREB:  Well, we're still deciding.

16          THE COURT:  This is my nondirective counseling.

17          MR. WEINREB:  The only thing I think we could tell you

18     is that -- because we really think that we didn't quite get

19     enough into B.O.P. today, that we will likely have someone from

11:40 20    B.O.P. who is actually knowledgeable to testify about some

21     matters in rebuttal.  I know it has to be genuine rebuttal.  I

22     understand that.

23          THE COURT:  It has to be genuine rebuttal; it has to

24     be new, that is to say, noncumulative.

25          MR. WEINREB:  Well, noncumulative, but I think that

1   this witness has left a lot of questions with the jury because

2   he -- he gave a lot of answers where he really didn't know what

3   he was talking about.

4        THE COURT:  You know what?  I think maybe we should

5   have a proffer from you on that so the defense can see, and we

6   can fight it out before we're out in front of the public.

7        MR. BRUCK:  You're thinking about one witness or --

8        MR. MELLIN:  I would say possibly two but two very

9   short witnesses, one being Ms. Nicolet and then one being the

11:41 10   warden, again, very focused on specific points.

11        Your Honor, frankly, the other issue is the amenities

12   issue that the Court has kept out up to this point.  Mr. Bezy

13   --

14        THE COURT:  I think they've heard a lot about it,

15   actually.

16        MR. MELLIN:  Not about television and what they can

17   actually listen to while they're in the room.  Mr. Bezy made

18   the point of saying that these people will be locked down in

19   their cell, and that's just leaving an impression with the jury

11:41 20   that --

21        THE COURT:  It will be part of your proffer, so we'll

22   look at it then.

23        MR. WEINREB:  Why hide this from the jury when they've

24   been given so much other information about prison life?  Why

25   hide this one fact, which is a significant fact that we want to

1    put in front of them to complete the picture?

2              MS. CONRAD:  Why hide remorse from the jury?

3              MR. BRUCK:  I mean, we've briefed the issue about why

4    and what the relevance of our showing was, and the fact that

5    Mr. Mellin asked the questions on cross, not about H Unit but

6    about ADX, and got an answer he didn't like doesn't open the

7    door.

8              MR. MELLIN:  I didn't get an answer I didn't like,

9    your Honor.  I just wasn't given a chance to expand on his

11:42 10   answer.

11             THE COURT:  Anyway, put it in your proffer.

12             MR. WEINREB:  So we have that.  The rest of it is

13   really -- I mean, they just finished their case.  We're still

14   trying to --

15             THE COURT:  Do you have a general time estimate?

16             MR. WEINREB:  For when we'll have a list?

17             THE COURT:  No, for how long you'll --

18             MR. WEINREB:  Oh, yes.  I think a day.

19             THE COURT:  Monday?

11:42 20             MR. WEINREB:  Monday.

21             MR. CHAKRAVARTY:  Assuming this last defense witness,

22   if she's called, doesn't take very long, I think we expect to

23   finish in one day.

24             MR. WEINREB:  Yes, I think that's realistic.

25             MR. BRUCK:  A day with B.O.P. or you've got other --

1          MR. WEINREB:  No, no, Probably -- there are half a

2    dozen civilians we're thinking of calling and potentially one

3    expert.

4          MR. CHAKRAVARTY:  Potentially.

5          MR. WEINREB:  Is that right?

6          THE COURT:  Okay.

7          MR. WEINREB:  One or two but they would be brief.

8          MS. CONRAD:  When will we find out who those are and

9    get any *Jencks* that hasn't previously been provided?

11:43 10          MR. WEINREB:  I don't think there's any *Jencks* that

11    wouldn't have previously been provided.  I mean, you know,

12    we've been getting the witness list from the defense and the

13    exhibit lists 7:30 the night before the witnesses have

14    testified.

15          MS. CLARKE:  That's really not correct.  We've tried

16    to help you with the order the night before.  We gave the

17    witness list and in pretty much the order, and we kept trying

18    to give you a more precise order.  That's certainly not true,

19    Bill.

11:43 20          MR. WEINREB:  I disagree.  Big changes have been made

21    along the way that have really prevented us from getting ready

22    for a lot of witnesses till 7:30 the night before.

23          MS. CONRAD:  Are these all witnesses who are all on

24    your statutory witness list?

25          MR. WEINREB:  Yes -- no.  The statute doesn't apply to

1    rebuttal.

2            MS. CONRAD:  So we don't have any notice as to who

3    these witnesses are.

4            MR. MELLIN:  We just gave you the two witnesses from

5    B.O.P.

6            MS. CONRAD:  Right.  I want to know about the civilian

7    witnesses.

8            MR. WEINREB:  Well, we haven't decided yet.  I think,

9    when we decide, we'll let you know.

11:44 10          MS. CONRAD:  Which will be when?

11           MR. WEINREB:  As I said, we'll endeavor to do it as

12    quickly as we can.

13           THE COURT:  How about the other deadline, the Saturday

14    at 5:00?

15           MR. WEINREB:  Well, it's possible there are -- we

16    could give them a preliminary list.

17           THE COURT:  Do what you can.

18           MR. WEINREB:  At least a partial list Saturday at

19    5:00.

11:44 20          MR. BRUCK:  Can you tell us the experts you're

21    considering calling?

22           MR. WEINREB:  Yes.  Park Dietz and --

23           MR. MELLIN:  Al Francis?

24           MR. WEINREB:  Not Edward --

25           MR. BRUCK:  Not Aguirre?

1          MR. WEINREB:  Not Aguirre.

2          MR. BRUCK:  So Park Dietz and --

3          MR. WEINREB:  Al Francis.

4          MS. CONRAD:  Dietz is in rebuttal to what?

5          THE COURT:  Well --

6          MR. WEINREB:  I don't need to get into that.

7          THE COURT:  Some other forum.  This is mine right now.

8          MS. CONRAD:  Well --

9          THE COURT:  One thing, I'm just trying to sketch out

11:44 10  what next week might look like.  And so one possibility is

11   completed on Monday.  If that's the case -- no matter what it

12   is, I think we'll take a day between the completion of the

13   evidence and the proceeding to arguments and charge.  So, for

14   example -- and this is a sketch -- finish Monday.  Tuesday is

15   everybody's working on preparation, and Wednesday we present it

16   to the jury.

17          MR. WEINREB:  Right.

18          THE COURT:  That would sort of track, if it was

19   Tuesday, we'd probably take Wednesday and do it on Thursday.

11:45 20  That's subject to amendment as conditions recommend.

21          MS. CONRAD:  So on Dietz and on the other experts --

22   the other expert, I mean, are we going to get expert witness

23   disclosure?

24          THE COURT:  I presume there was some.

25          MS. CONRAD:  I think there should be a proffer at

10

1       least on Dietz as to whether this is actual rebuttal.

2               MR. WEINREB:  That's the point, your Honor.  We have

3       to wait until the close of the defense case to determine what

4       it is we need to rebut.  We will give a disclosure, yes.

5               THE COURT:  One thing that might affect that and the

6       government's decision-making may be the final list of

7       mitigating factors because then, once that's fixed, they will

8       be able to assess what they need to do, so I'd like to --

9               MR. BRUCK:  We could do that except for the ruling on

11:46 10      Sister Helen.

11              THE COURT:  So it might not be possible until Monday,

12      so that might build in --

13              MR. MELLIN:  Can we not get the final list now or

14      tomorrow so that -- including --

15              THE COURT:  How about this:  How about the final list

16      with her in it?  And then if she's in, fine; if she's not, then

17      that piece comes out or whatever.

18              MS. CLARKE:  Didn't we submit a larger list already?

19              THE COURT:  It's been sketched, I think.  I'm not sure

11:46 20      we have a final.  I want a nonmoving version of it.

21              MR. BRUCK:  We can do that.

22              THE COURT:  Except for the one possible extraction if

23      she doesn't testify, if that happens.  I mean, maybe it doesn't

24      affect the list at all.  But if her testimony would affect the

25      list, include whatever would relate to her testimony; and if

1    she doesn't give it, then it will come out.

2           MR. WEINREB:  I omitted to mention, one witness we

3    might put on would be a -- I don't know if it would be a reader

4    or -- but there are a few records that we may seek to put on

5    just like the defense did.

6           MR. BRUCK:  Whose?

7           MR. WEINREB:  Well, we'll give you notice.

8           THE COURT:  Okay.

9           MR. WEINREB:  We want to compile the list.

11:47 10           THE COURT:  I guess that's it for now.  So we'll

11   excuse the jury.

12           MR. WEINREB:  There's some outstanding motions.

13           THE COURT:  Yes.

14           MR. BRUCK:  Before we leave mitigating factors, the

15   deadline I just agreed to was when?

16           THE COURT:  I don't know that we had one.

17           MR. BRUCK:  Okay, good.  I withdraw the question.

18           MR. MELLIN:  Can we ask for it tomorrow?

19           MS. CLARKE:  I'm beginning to wonder, if we're going

11:47 20   to end up with all of this clog of information over the

21   weekend, if you want to start the jury back on Tuesday so you

22   can resolve rebuttal issues and things on Monday, because I can

23   predict there's going to be a problem.

24           MR. BRUCK:  They will be in the jury room and we'll be

25   struggling.

1          MR. WEINREB:  Or we could bring them back in later on

2     Monday.  I don't think we're going to be long.  If we call

3     civilians they will be quick, at least on direct.

4          MS. CLARKE:  I can just predict, two psychiatrists as

5     experts, we're going to have a real problem trying to figure

6     that out.

7          MR. WEINREB:  There wouldn't be any psychological

8     testimony.  Basically, it would be -- there was a tremendous

9     amount of evidence that came in in the defense case about the

11:48 10    defendant's social history, his background going back several

11    generations, the places that he lived, the conditions under

12    which he was raised, his parents' ability to provide for him,

13    various things like that.  And the testimony that we would

14    propose to offer would simply be on those subjects, to complete

15    the picture, so to speak.

16          MS. CONRAD:  But not opinion?

17          MS. CLARKE:  We put on lay witnesses who were subject

18    to cross-examination.  This is going to open a can of worms for

19    the Court to be able to --

11:49 20          THE COURT:  I can't now on this, but I understand the

21    point that it will require some attention.

22          MR. WEINREB:  Yeah.  The only problem with coming back

23    Tuesday is that then, if we were to take a day off and do the

24    closings and the instructions on Thursday, they wouldn't begin

25    deliberating except after three days -- unless you're going to

13

1      make them come back on Friday.

2              THE COURT:  Oh, yeah.  Once they deliberate, Fridays

3      are in play.  So if they get it on Thursday, they would

4      deliberate Thursday, Friday.

5              MR. CHAKRAVARTY:  We may pare down and --

6              MR. WEINREB:  I think the -- despite my own

7      long-windedness, we could argue these things Monday morning.

8      We'd come in and get started on Monday.

9              MS. CLARKE:  So --

11:50 10        THE COURT:  I think I'd prefer that.  I'd like to keep

11     things moving along.  I don't like the jury sitting out there

12     not working.

13             MR. WEINREB:  We could have them come in at 11.

14             THE COURT:  No.  I think they'll come in, and we have

15     arrangements for them.  So I don't want to start micromanaging

16     that.  So if it takes -- we'll just try -- we could -- we could

17     plan to start at 8:30 to save a little time.  Is that a problem

18     for --

19             MR. WEINREB:  No.

11:50 20        MS. CLARKE:  No.

21             MR. WEINREB:  That's fine.

22             MS. CLARKE:  Can I get rid of these technical things

23     before we push it into Monday?  We have marked Exhibit 4010,

24     which is the disk of Mr. Chakravarty's closing argument, that

25     portion of the closing argument.  I just wanted to have that

1    marked for identification and made part of the record.

2            THE COURT:  Okay.

3            MS. CLARKE:  So that's done.  And then the Court

4    excluded the SMS text message, and that has been previously

5    marked as 3200 and 3200A.

6            THE COURT:  The Zubeidat --

7            MS. CLARKE:  Yes.  That's the Russian text with the

8    English translation which was excluded.  We just want that to

9    be marked for identification as part of the record.  I think

11:51 10  I'm doing it incorrectly.

11           MS. CONRAD:  No, you're not.  That's different.

12           MS. CLARKE:  And also 3249 and 3249A.

13           THE COURT:  Which were this morning's.

14           MS. CLARKE:  Right, should be marked for

15   identification and made part of the record.

16           THE COURT:  I think --

17           MS. CLARKE:  Not for the jury because they've been

18   excluded.

19           THE COURT:  It was my understanding that anything that

11:51 20  has a number has been marked for identification.

21           MS. CLARKE:  Many of the things have never been talked

22   about.

23           MS. CONRAD:  And some haven't been offered.  They need

24   to be part of the court's record for purposes of appeal.

25           THE COURT:  That's a good question.  All right.  I'll

1  have to consult with the IT people about what happens in that

2  circumstance.

3       MS. CLARKE:  Sure.  There were a lot of items provided

4  that were never identified.

5       THE COURT:  This gets into the technical operation of

6  the JERS system.  I think for this -- my brief answer is, I

7  think, for this phase, they are, in fact, marked for

8  identification whether they've been offered or not.  That was

9  not true in the first phase because we didn't load everything

11:52 10  into JERS in the first instance because of the volume.  But as

11  I understand it, in this phase we did.  Whatever marked

12  exhibits either side had was just loaded in.  That's the

13  standard operation of JERS, which is, is the total universe.

14       Then the accounting goes as follows:  There's a date

15  when the item is identified, referred to in testimony, and then

16  there's a date when it is admitted.  So you'll see, for

17  unadmitted exhibits, that it was identified on such and such

18  occasion, but there will be no admission date.  When the system

19  sends the exhibits to the jury monitor for their consideration,

11:53 20  it sends only the subset of admitted exhibits, but there still

21  is a master list that shows they have been identified and not

22  admitted.  I think, for the second phase, we're probably all

23  right, but we'll check with them.

24       MR. FICK:  The exceptions are, as in the first phase,

25  Exhibit 3206 in the second phase were computer files that can't

go on JERS, so that, I presume, will go on the standalone

computer that goes back to the jury.  It's simply an addition.

Then the government's closing is never on the JERS, so we just

want to make sure it's in the transcript what it has been

numbered so the Court of Appeals can identify it later if it

goes on appeal.

MS. CLARKE:  The other thing, we had asked the Court

to make it clear for the record which juror, by number, was

sick.

THE COURT:  I don't know why that matters.

MS. CLARKE:  We don't know why it mattered either, but

it could matter in the future, and we thought that it would

be --

THE COURT:  Why would it matter in the future?

MS. CLARKE:  I don't know.  We don't know.  We don't

know what kind of misconduct could have occurred we don't know

about, whether this is a person we moved to challenge for cause

and stayed on the jury.  We don't know whether there's going to

be some kind of claim of what the sickness was.  We have no way

of knowing, but this is the only time we can ask the Court to

identify the juror for purposes of the record.

THE COURT:  Well, do you have any reason for being

concerned about any particular juror?

MS. CLARKE:  At this point in time, beyond what we

know and have argued in the past about challenges for cause,

1    no.

2         MR. WEINREB:  I don't think it's appropriate to add

3    things to the record when the proponent of it can't offer any

4    grounds for it or any reason for it.

5         MS. CONRAD:  It's just a question of the record.  I

6    mean, it's not --

7         THE COURT:  I don't see its germaneness, but I'll

8    think about it.

9         MR. WEINREB:  Another thing might be worth some

11:54 10  thought -- I don't know -- is whether it's advisable to include

11   in the record items which were marked because of the

12   possibility that they might want to be -- that counsel might

13   want to refer to them in court but never were referred to.  In

14   other words, the defense marked an enormous amount of things, a

15   number of things.  We may have done the same for all I know.

16   It seems odd to say keep all that in the record when --

17        THE COURT:  I think it is a function of the JERS

18   system that it is.

19        MR. WEINREB:  But we could submit a new JERS disk,

11:55 20  like we did at the end of the guilt phase, that is, a list of

21   the things that were actually identified --

22        THE COURT:  I don't know.

23        MR. WEINREB:  -- and then were admitted.

24        THE COURT:  We'll have to talk about that with the IT

25   people.

1          MS. CLARKE:  The last thing is I don't think the Court

2     has ruled on the Waltham issue.

3          THE COURT:  Yeah.  The motion is denied for the usual

4     reasons.  It's been denied before, basically.  That's one

5     reason, that it's not really new matter.  I'm not sure that I

6     straight up have the authority to order the state authorities

7     to give me their law enforcement materials.  I don't know.

8     Maybe I do.  But, in any event, I think the law enforcement

9     privilege applies.

11:56 10          MS. CONRAD:  Certainly, the Court has the authority to

11     order a police department --

12          THE COURT:  I don't know.  In a case where the police

13     department is in front of me, I agree.  It's a separate --

14          MS. CONRAD:  Internal Affairs files for a witness,

15     Boston police officer witness, done all the time.

16          THE COURT:  That's because the officer is in front of

17     me.  Anyway, I don't want to debate it.  There are multiple

18     reasons why the motion is denied.  Most of them you're familiar

19     with.

11:56 20          MR. CHAKRAVARTY:  Your Honor, there's one quick thing.

21     I'm not sure whether we want to ask for this, but for purposes

22     of -- if we -- the last defense witness testifies, we may want

23     to do our own investigation of the witness.  And to the extent

24     that the witness is going to testify about contact she had with

25     the defendant, then we want to make sure we're not running

1       afoul of the SAMS or some other procedures in order to obtain

2       that information, for example, when and where the meetings

3       occurred and the duration of those meetings.

4               MR. WEINREB:  In general, we think there no longer

5       would be a firewall between us and Terence Donnelly (ph), who

6       was overseeing the SAMS.  The case is over pretty much.

7       There's no longer an interest in the secrecy of it.  Now that

8       the defense is offering somebody who was permitted to meet with

9       the defendant pursuant to the SAMS, we need to know.  It's a

11:57 10  waiver.

11              MS. CONRAD:  We need to know what?

12              THE COURT:  I think that has to be part of the proffer

13      actually.  I want to know the basis of her testimony, which

14      would include details about when she had any meetings, what

15      transpired in the meetings, et cetera, in some detail.

16              MR. WEINREB:  But we also need to know the authority

17      under which she went to see the defendant so that we can

18      potentially impeach that.  Basically, we need to know if she's

19      part of the defense team because that would obviously give her

11:58 20  a bias.

21              THE COURT:  Let's see what the --

22              MS. CONRAD:  She's not a paid expert if that's what

23      you're asking.

24              THE COURT:  I understand the point.  So when I say

25      detailed, I mean it.  Okay.  All right.

1          So let's call the jurors out from their lunch probably

2     and let them know that they'll be back on Monday.

3          MS. CONRAD:  Should we let them finish their lunch and

4     then --

5          THE COURT:  They can go back in.

6     .  .  .  END OF LOBBY CONFERENCE.)

7     (The jury entered the courtroom at 1:02 p.m.)

8          THE COURT:  Jurors, again, we appreciate your

9     patience.  There are some issues we've been working on.

01:03 10    Actually, we need a little bit more time.  We're going to

11    actually end the day today here and the week and ask you to

12    come back on Monday.  I think this approach will make it

13    smoother on Monday when we actually get going.  All right.

14          So, once again, I caution you to avoid any discussion

15    of the case.  Don't make up your mind about any of the issues

16    in the case, of course, and, as much as you can, as you've told

17    me you have been able to do, avoid any accounts of the media in

18    the case.

19          Have a good weekend.  It looks like the weather is

01:04 20    going to be delightful for a change.  And we'll see you on

21    Monday morning.  We'll be in recess.

22          THE CLERK:  All rise for the Court and the jury.  The

23    court will be in recess.

24    (Whereupon, at 1:04 p.m. the trial recessed.)

25

1                           C E R T I F I C A T E

2

3

4             I certify that the foregoing is a correct transcript

5    of the record of proceedings in the above-entitled matter to

6    the best of my skill and ability.

7

8

9

10

11

12   /s/Cheryl Dahlstrom

13   Cheryl Dahlstrom, RMR, CRR

14   Official Court Reporter

15

16   Dated:  April 23, 2018

17

18

19

20

21

22

23

24

25