UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                No. 13-CR-10200-GAO

DZHOKHAR TSARNAEV

**MOTION FOR PARTIAL UNSEALING OF
NON-SEATED PROSPECTIVE JURORS' QUESTIONNAIRES**

Defendant-Appellant Dzhokhar Tsarnaev, by and through counsel, and pursuant to the First and Sixth Amendments to the United States Constitution, respectfully moves this Court to unseal in part the 1,355 questionnaires completed during voir dire by venirepersons not seated as jurors or alternates. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press-Enterprise I).[1] To protect the privacy of these prospective jurors, Mr. Tsarnaev does not seek to unseal, and proposes to redact from this group of questionnaires:

- the prospective jurors' names (p.1);
- the prospective jurors' birthdates (Question 1);
- information concerning any "medical, physical, psychological, or emotional problem, issue, or condition," or any "medications," that would affect the prospective jurors' fitness to serve (Questions 9 and 11);
- the ages, occupations, and places of residence of the prospective jurors' children and siblings (Questions 15 and 16);
- information concerning any "mental health or addiction problem" suffered by a prospective juror or a close family member (Question 21);
- whether any prospective juror, family member, or close friend had been "the victim of a crime" (Question 41);

---

[1] The parties agree that the 18 questionnaires completed by the seated jurors and alternates should, with some redactions, be unsealed, and have separately so moved [DE 1737].

1

- information that a prospective juror deemed "private or sensitive" (Question 100).

The following grounds are asserted in support of this motion:

1. In January 2015, 1,373 prospective jurors appeared in response to summonses and completed questionnaires in this case. This Court's preliminary instructions to the venirepersons contemplated that, apart from "sensitive information," the questionnaires would one day become public: "The completed questionnaire[s] will initially be reviewed only by the participants in this case and the Court. The filled out questionnaires will not become part of the public record unless and until I determine whether they include any sensitive information that should be kept confidential permanently. And if they do, I intend to keep that information and any possible further questioning about it from being available to the public." E.g., 1/5/15 (Day 1A) Tr. 7–8.

2. Prospective jurors had several opportunities to indicate that particular answers were sensitive and to seek appropriate protection. For example, this Court advised: "If you would prefer to answer a sensitive question orally rather than in writing, you may write: 'Private' in response to that question." E.g., 1/5/15 (Day 1A) Tr. 13. See also DE 1178 (questionnaire), at 2 (same). Likewise, the questionnaire's instructions read: "If you believe that your response to a particular question is of a sensitive or private nature and would like to request that your response not be made public, please write the number of that question in your response to Question #100." Id. And Question 100, in turn, asked: "Did you have a response to any specific question above that you deem private or sensitive or that you request not be made public at this time? If so, list the number of that question here." Id. at 26.

3. This Court has maintained the questionnaires under seal since January 2015. This Court explained that the purposes of sealing were "to maintain the integrity of the proceedings and to protect the privacy of the jurors." DE 983.

4. Defense counsel are in the process of preparing Mr. Tsarnaev's direct appeal. Among other issues, counsel intend to appeal this Court's denial of Mr. Tsarnaev's motions to change venue. In presenting that issue, applicable precedent dictates that Mr. Tsarnaev determine the percentage of all venirepersons who knew about the case, and the percentage who believed, based on pretrial publicity, that Mr. Tsarnaev was guilty or should receive the death penalty. See, e.g., United States v. Casellas-Toro, 807 F.3d 380, 389 (1st Cir. 2015) (noting percentage of all venirepersons who knew about the defendant's murder of his wife and who knew about the related carjacking); Irvin v. Dowd, 366 U.S. 717, 727 (1961) (noting percentage of all venirepersons who "entertained some opinion as to guilt"). In this case, it is necessary to consult and cite all of the prospective jurors' questionnaires in order to do so. Mr. Tsarnaev's opening brief will also refer to the non-seated prospective jurors' questionnaires in presenting separate issues related to the overall jury selection process.

5. First Circuit Rule 11.0(d) precludes the use of materials sealed in the District Court in an unsealed brief or appendix, or during oral argument. If the non-seated prospective jurors' questionnaires remain under seal, the Rule will require Mr. Tsarnaev to prepare separate, sealed paper volumes of the brief and appendices, see United States Court of Appeals for the First Circuit, Notice to Counsel and Pro Se Litigants, http://www.ca1.uscourts.gov/sites/ca1/files/NoticetoCounselandProSeLitigants.pdf, and

to limit his oral argument by refraining from "disclos[ing] the substance of the sealed material," see 1st Cir. R. 11.0(d)(2). In responding to Mr. Tsarnaev's arguments, the government will be obliged to do the same. So will the First Circuit in deciding the appeal. To avoid these complications, and because "[s]ealing is disfavored as contrary to the presumption of public access to judicial records," Panse v. Shah, 201 F. App'x 3 (1st Cir. 2006), appellant's counsel have conferred with the government in an effort to reach agreement on unsealing the materials that Mr. Tsarnaev intends to use on appeal. Although the parties agree with respect to many of these materials—including that questionnaires completed by seated jurors and alternates should be largely unsealed, with a few redactions, see ante n.1—the government opposes unsealing of the non-seated prospective jurors' questionnaires.

  6.  Under the First and Sixth Amendments, the voir dire of prospective jurors must be open to the public. Presley v. Georgia, 558 U.S. 209, 212–13 (2010) (per curiam); (citing Press-Enterprise I, 464 U.S. at 510). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enterprise I, 464 U.S. at 510. In addition, the interest supporting closure "is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." Id.; see also, e.g., Waller v. Georgia, 467 U.S. 39, 48 (1984) ("[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding,

and it must make findings adequate to support the closure."). Independently, there is "a common-law right of access to 'judicial documents,'" that is, "'materials on which a court relies in determining the litigants' substantive rights.'" United States v. Kravetz, 706 F.3d 47, 52, 54 (1st Cir. 2013) (quoting In re Providence Journal Co., Inc., 293 F.3d 1, 9–10 (1st Cir. 2002)). Finally, this Court has an independent obligation to assure that any exclusion of the public from voir dire is no greater than necessary. "[T]rial courts are required to consider alternatives to closure even when they are not offered by the parties. ... The public has a right to be present whether or not any party has asserted that right." Presley, 558 U.S. at 214; see also, e.g., Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co., 834 F.3d 589, 595 (6th Cir. 2016) ("The court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody. Rather, the court has an independent obligation to consider the rights of the public." (internal quotation marks and citations omitted)).

7.  The presumption of access to voir dire applies with equal force to written juror questionnaires. See, e.g., In re Access to Jury Questionnaires, 37 A.3d 879, 885–86 (D.C. 2012) ("We can think of no principled reason to distinguish written questions from oral questions for purposes of the First Amendment right of public access. Jury questionnaires merely facilitate and streamline voir dire; their use does not constitute a separate process."). Indeed, "[e]very court that has decided the issue has treated jury questionnaires as part of the voir dire process and thus subject to the presumption of public access." Id. at 886 (collecting cases from the Fourth Circuit, the district courts for

z

the Eastern District of Pennsylvania and the District of Columbia, and the state courts of California, Nevada, New York, North Dakota, and Ohio).

8. Here, the written questionnaires, like the oral voir dire, played an integral role in selecting Mr. Tsarnaev's jury. The parties and this Court relied on the questionnaires to screen out venirepersons unqualified to serve. See, e.g., DEs 937 and 938. For those who were called for oral voir dire, their questionnaire answers structured their examinations. For the same reason, the questionnaires constitute judicial documents subject to the common-law presumption of access. They "fall squarely into the category of materials that a court relies on in determining central issues in criminal litigation," namely, the composition of Mr. Tsarnaev's petit jury. Kravetz, 706 F.3d at 56.

9. Because the constitutional and common-law presumptions of public access apply, continued sealing requires "a compelling governmental interest." Press-Enterprise I, 464 U.S. at 510 (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606–07 (1982)). During voir dire, this Court identified two such interests: "the integrity of the proceedings" and "the privacy of the jurors." See ante ¶ 3. Now that the trial has concluded, the first interest is no longer implicated. As to the second, the redactions that Mr. Tsarnaev has proposed—which take the prospective jurors at their word by keeping sealed those answers that the jurors themselves flagged as sensitive— suffice. Press-Enterprise I compels that conclusion. There, the Supreme Court set forth a procedure to ensure an adequate factual basis for closing voir dire to protect the venirepersons' privacy: "[A] trial judge ... should inform the array of prospective jurors, once the general nature of sensitive questions is made known to them, that those

6

individuals believing public questioning will prove damaging because of embarrassment ... may properly request an opportunity to present the problem to the judge in camera." 464 U.S. at 512. "By requiring the prospective juror to make an affirmative request," the Court explained, "the trial judge can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy. This process will minimize the risk of unnecessary closure." Id.

10. Here, this Court correctly followed Press-Enterprise I by inviting the jurors, at least three times, to indicate those answers that implicated privacy concerns. See ante ¶ 2. Mr. Tsarnaev agrees that any answers so flagged, either in response to Question 100 or during voir dire, should remain sealed. That course respects the preferences of the jurors, who know better than the parties or this Court what answers would, if disclosed, cause them embarrassment. In addition, Mr. Tsarnaev acknowledges that any information covered by Fed. R. Crim. P. 49.1(a) (for example, the prospective jurors' birthdates, home addresses, and the names of their minor children) should remain sealed. In an abundance of caution, Mr. Tsarnaev proposes that answers relating to the prospective jurors' children and siblings; their physical and mental health; their history of addiction; and their status as crime victims (Questions 9, 11, 15, 16, 21, 41) also should remain sealed.

11. In light of the presumption of access, and absent an "affirmative request" by a venireperson, however, blanket sealing of all the answers on all the questionnaires—the government's current position—is neither necessary to protect an overriding interest in the jurors' privacy nor narrowly tailored to achieve that objective. By contrast, Mr.

Tsarnaev's proposal implements both forms of tailoring approved in <u>Press-Enterprise I</u>: (i) redaction of sensitive material; and (ii) the withholding of the prospective jurors' names (and birthdates) to anonymize them. <u>See</u> 464 U.S. at 513. Those measures strike an appropriate balance between the interests of the prospective jurors and the interests of the public. And they offer a reasonable alternative to continued complete sealing. <u>See</u> <u>Presley</u>, 558 U.S. at 213–14; <u>Waller</u>, 467 U.S. at 48.

For the foregoing reasons, this Court should unseal the 1,355 questionnaires completed by venirepersons not seated as jurors or alternates, subject to the redactions set forth above.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys:

/s/ *David Patton*
David Patton, Esq.
(NY Bar #3926813)
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700
DAVID_PATTON@FD.ORG

Gail K. Johnson, Esq.
(CO Bar #29703)
Johnson & Klein, PLLC
1470 Walnut Street, Suite 101
Boulder, CO 80302
(303) 444-1885
GJOHNSON@JOHNSONKLEIN.COM

> Clifford Gardner, Esq.
> (CA Bar #93782)
> Law Offices of Cliff Gardner
> 1448 San Pablo Avenue
> Berkeley, CA 94702
> (510) 524-1093
> CASETRIS@AOL.COM

**Certificate of Service**

I certify that the attached Motion for Partial Unsealing Of Non-Seated Prospective Jurors' Questionnaires was filed electronically through the ECF system for the District of Massachusetts, which will send electronic notice to counsel of record for all parties on this the 16th day of July 2018, including the following:

Nadine Pellegrini, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210
Nadine.Pellegrini@usdoj.gov

> /s/ *David Patton*
> David Patton, Esq.
> (NY Bar #3926813)
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, NY 10007
> (212) 417-8700
> DAVID_PATTON@FD.ORG