UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                  )         Crim. No.13-10200-GAO<br>)<br>DZHOKHAR A. TSARNAEV,         )         (UNDER SEAL)<br>          Defendant                      ) | |

GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE DEFENSE EXHIBITS 3249 AND 3249A

The United States, by and through undersigned counsel, respectfully moves to exclude defense Exhibits 3249 and 3249a.  The first is a handwritten statement that the defense represents was penned by their client.  The second is an email from defense counsel to government counsel.  Both items should be excluded for the reasons stated below.

   A.  Exhibit 3249 should be excluded as unsworn allocution testimony.

Exhibit 3249 should be excluded as unsworn allocution testimony.  If the defendant wishes to convince the jury that he is remorseful, he should take the witness stand and say so under oath, subject to cross-examination, so that the jury can gauge his sincerity and determine what weight to give his statements.  An allocution is "[a]n unsworn statement . . . in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence."  United States v. Jackson, 549 F.3d 963, 980 n. 22 (5th Cir. 2008).  Every circuit to consider the question has held that defendants have no right to allocute before the jury in capital sentencing hearings.  See United States v. Hall, 152 F.3d 381, 391-97 (5th Cir. 1998), abrogated on other ground, United States v. Martinez-Salazar, 528 U.S. 304 (2000); United States v. Barnette, 211 F.3d 803, 820 (4th Cir. 2000); United States v. Purkey, 428 F.3d 738, 761 (8th Cir. 2005).  Capital defendants also have no right to the functional equivalent of

allocution in the penalty phase.  See United States v. Lighty, 616 F.3d 321, 365 (4th Cir. 2010) (referring to a proffered letter of remorse as an attempted "end-run around this court's precedent holding that a defendant does not have a . . . right to allocution").

The need for testimony to be given under oath and subject to cross-examination is at its zenith when it comes to statements of remorse.  Remorse can be a critical factor in a jury's sentencing decision; yet in deciding whether a defendant sincerely feels remorse, the jurors generally have to take the defendant's word for it.  At a minimum, the jurors should be able to hear those words from the defendant's own mouth in order to judge their sincerity.  The Pennsylvania Supreme Court, noting that "[a] capital defendant has motive to deceive when declaring his remorse," has upheld the exclusion of unsworn letters of remorse to friends and family.  Com. v. Johnson, 107 A.3d 52, 84-85 (Pa. 2014).

The text of Exhibit 3249 illustrates the critical need for cross-examination to avoid misleading the jury and confusing the issues.  Tsarnaev writes in the note, "Killing and hurting innocent people is wrong."  Without the benefit of cross-examination, the jury will have no idea who, in Tsarnaev's view, qualifies as "innocent."  Are only children like Martin Richard "innocent"?  Are police officers like Sean Collier also "innocent"?  Are our soldiers killing mujahideen in Afghanistan and Iraq "innocent"?  Or does Tsarnaev believe that those soldiers, unlike "innocents," deserve to be blown up by IED's?  In addition, the jury will be supplied with no information about how this statement was written.  Did Tsarnaev's counsel dictate the wording?  Or read a draft and suggest revisions?  Did they coach him?  Encourage him?  All that information is needed for the jury to assess the statement's credibility and to determine what weight to assign it.  Allowing the jury to hear an artfully worded, self-serving, written statement of remorse without the benefit of cross-examination cannot help but mislead them, confuse the

2

issues, and contribute to an arbitrary and unfair sentencing decision.

The Rules of Criminal Procedure permit allocution in a limited setting — sentencing hearings before the court. See Fed. R. Crim. P. 32(i)(4). The rule provides no basis for concluding that defendants enjoy a right to allocute to the jury before it reaches a capital sentencing verdict. Federal capital sentencing procedure is governed by the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. § 3591, *et seq.*, which does not authorize allocution. Because the statute was enacted after Rule 32, the rules of statutory construction dictate that the FDPA controls in the event of a conflict. See Sutherland Statutory Construction (5th ed. 1992), § 46.05 at 105 (and authorities cited therein).

Rule 32's allocution provision was intended to relieve non-capital defendants of a dilemma created by earlier policies that required them to testify at trial if they wanted to be heard before sentencing. See Hill v. United States, 368 U.S. 424 (1962); Green v. United States, 365 U.S. 301 (1961). In a capital penalty phase, the defendant may testify regardless of whether he took the stand during the guilt phase. See Burton v. Thaler, 863 F. Supp. 2d 639, 658 (S.D. Tex. 2012) (holding in a habeas proceeding that nothing impaired the defendant's ability to testify on his own behalf). Furthermore, the defendant may allocute after the jury makes its sentencing recommendation. See Hall, 152 F.3d at 392.

In the absence of any rule authorizing allocution before a capital sentencing jury, Tsarnaev cannot justify such a procedure under the FDPA. See 18 U.S.C. § 3593(c). As noted, the FDPA requires the exclusion of evidence "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." Id. An unsworn and unconfronted statement by the defendant would be, for want of any indicia of reliability, substantially more prejudicial than probative. Cf. California v. Green, 399 U.S. 149, 158 (1970)

3

(referring to cross-examination as "the greatest legal engine ever invented for the discovery of truth"). Permitting Tsarnaev to make an unsworn and unexamined statement would deny the jury essential information necessary for the determination of credibility.

B. <u>Exhibit 3249a should be excluded as untimely and more prejudicial than probative.</u>

Exhibit 3249a should be excluded as untimely and more prejudicial than probative. Exhibit 3249a is an email exchange between defense counsel and government counsel indicating that Exhibit 3249 was sent to the government in the course of plea negotiations. Yet only yesterday, the parties agreed to exclude all evidence of plea negotiations and simply litigate the admissibility of Exhibit 3249. Tsarnaev's effort to admit Exhibit 3249a (which the government first received notice of at 7:35 p.m. this evening) is a violation of that agreement.

Exhibit 3249a is also guaranteed to mislead the jury and confuse the issues. Putting the extrajudicial communications of counsel before the jury will only lead them to speculate about all the other communications that must have occurred that they have not been shown. It turns the attorneys into witnesses and invites the jury to make judgments about their credibility and to speculate about opposing counsels' relationships with each other. Most confusing, the letter adverts to plea negotiations of which the jury knows nothing, and it invites them to speculate about mysterious matters such as to whom the defendant's note should be "pass[ed] along" to. There is simply no reason to put this welter of confusing, misleading, and irrelevant information before the jury, or to involve counsel's communications with one another in their deliberations.

If Tsarnaev has decided to repudiate yesterday's agreement to forego evidence about plea negotiations, his decision has come too late. The Court already ruled that if Tsarnaev wishes to offer evidence of plea negotiations, the government is entitled to complete the picture of those negotiations by offering evidence of the defendant's unwillingness to meet the government's

4

conditions. The parties exchanged draft stipulations regarding plea negotiations but were unable to agree on one. At this point, with Tsarnaev proposing to offer the exhibits tomorrow, it is simply too late to line up witnesses to talk about the tortured history of plea negotiations, which include several unsuccessful attempts to proffer the defendant; draft proffer agreements; various letters, emails, and meetings between the parties; and presentations to the Capital Case Committee in Washington, D.C.

### C. If Exhibit 3249 is admitted, Tsarnaev's oral and written statements at Beth Israel Hospital should be admissible for purposes of impeachment and rebuttal.

If Tsarnaev is permitted through the admission of Exhibit 3249 to testify without taking an oath or submitting to cross-examination, the government should, at a minimum, be permitted to impeach and rebut his testimony with prior inconsistent statements that he made at Beth Israel Hospital – just as it would if he elected to take the witness stand and make his statement of remorse orally instead of in writing.

WHEREFORE, the government respectfully moves in limine to exclude Defense Exhibits 3249 and 3249a.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:   /s/ William Weinreb
　　　WILLIAM D. WEINREB
　　　ALOKE S. CHAKRAVARTY
　　　NADINE PELLEGRINI
　　　Assistant U.S. Attorneys
　　　STEVE MELLIN
　　　Trial Attorney, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic mail on Dzhokhar Tsarnaev's attorney, Judy Clarke, Esq., on May 6, 2015.

/s/ *William Weinreb*