UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DZHOKHAR A. TSARNAEV,<br><br>    Defendant. | Case No. 1:13-cr-10200-GAO |

### THE UNITED STATES' MOTION TO AUTHORIZE
### PAYMENT FROM DEFENDANT'S INMATE TRUST ACCOUNT

The United States of America, by its attorney, Nathaniel R. Mendell, acting United States Attorney for the District of Massachusetts, pursuant to 18 U.S.C. §§ 3613(a) and 3664(n), respectfully moves this Court for an order authorizing the Bureau of Prisons (the "BOP") to turnover to the Clerk of the Court all funds, including any funds subject to administrative hold by BOP, held in the inmate trust account for the defendant, Dzhokhar A. Tsarnaev (the "Defendant") as payment towards his outstanding criminal monetary penalties, including unpaid special assessment and restitution. In support of this motion, the United States sets forth the following:

### BACKGROUND

1. On May 15, 2015, after a sixty-one (61) day trial, the Defendant was found guilty on Counts One through Thirty, in violation of 18 U.S.C. §§ 844(i), 924(c) and (j), 2119(2), 2332a (a)(2), and 2332f (a)(1), (a)(2), and (c). The jury further sentenced the Defendant to death on Count Four, Five, Nine, Ten, Fourteen, and Fifteen. *See* Docket No. 1434

2. On June 24, 2015, the Court entered a Judgment, and on January 15, 2016, entered an Amended Judgment (the "Amended Judgment") ordering the Defendant to pay a $3,000 special assessment and $101,126,627 in criminal restitution. *See* Docket Nos. 1480 and 1618.

3. To date, the Defendant has paid $2,202.03.[1]

4. The Defendant remains in federal custody and is currently assigned to United States Penitentiary Florence ADMAX penitentiary.

5. Since his arrest, various individuals have provided funds to the Defendant. In accordance with BOP regulations, those funds are deposited into the Defendant's inmate trust account maintained by the BOP.[2] As of December 22, 2021, the Defendant has approximately $3,885.06 in his inmate trust account.

6. After the Defendant's sentencing, deposits into the Defendant's inmate trust account became more frequent. Among the deposits are:

　　a. The Defendant received a $1,400 COVID relief payment on June 22, 2021.

　　b. Between May 2016 and June 2021, the Defendant received multiple deposits from the Office of Federal Defenders of New York. The amounts varied between $40 and $250, totaling approximately $11,230.

---

[1] Pursuant to 18 U.S.C. § 3612(c), payments are applied first to the special assessment, then to restitution.

[2] The purpose of inmate trust account or commissary account is to allow the BOP to maintain inmates' monies while they are incarcerated, including monies received by the inmate from prison employment and outside sources. 28 C.F.R. §§ 506.1, 545.11. Any funds for the benefit of the inmate from family, friends, or other sources must be deposited into these accounts. *Id*. Deposits intended for the inmate's account must be mailed directly to the BOP's centralized commissary account. 28 C.F.R. § 540.23.

    c. Between August 2015 and August 2021, an individual residing in Indianapolis, Indiana made monthly deposits between $30 and $60, totaling approximately $2,555.

    d. Between August 2015 and December 2017, an individual residing in Bloomfield, New Jersey made monthly deposits of $50, totaling approximately $1,450.

    e. Between September 2013 and December 2018, an individual residing in Frederick, Maryland made periodic deposits between $50 to $200, totaling approximately $950.

7. The Defendant also received a total of $3,486.60 from 32 other individuals.

8. The Defendant, although not making payments to his victims, has made payments to other third-parties. The largest payment the Defendant made from his account was paid to his siblings for items such as "gifts," "support," and "books." These payments totaled $2,000.

9. In light of the Defendant's payment history and incarceration status, the United States requests that this Court enter an Order authorizing the BOP to turn over all funds, held in the Defendant's inmate trust account, including any funds subject to an administrative hold by BOP, to the Clerk of Court as payment toward the outstanding criminal monetary penalties imposed against the Defendant.

## ARGUMENT

10. By Congressional mandate, the United States has a statutory duty to collect restitution owed to crime victims. *See* 18 U.S.C. §§ 3612(c) and 3771(c). Title 18, United States Code, section 3613 sets forth procedures for the United States to enforce criminal monetary penalties, including restitution and fines. *See* 18 U.S.C. §§ 3613(a) and (f). Pursuant to 18 U.S.C.

§ 3613(c), upon entry of judgment, a lien arose against all of the Defendant's property and rights to property, including the Defendant's interest in funds held by the BOP in his inmate trust account. *See* 18 U.S.C. § 3613(a) (United States may enforce restitution against all property and rights to property of the defendant).

11.   The Mandatory Victim Restitution Act, codified at 18 U.S.C. § 3663A ("MVRA"), grants the United States the power to pursue all available and reasonable means to collect on the restitution debt ordered by the Court.  18 U.S.C. §§ 3613(a), 3664(m)(1)(A).  The MVRA also provides that substantial resources received by the defendant from any source during his term of incarceration must be applied to his outstanding restitution obligation.  *See* 18 U.S.C. § 3664(n).

12.   Further, the Crime Victim Rights Act ("CVRA") affords victims of crime the right to full and timely restitution as provided in law.  *See* 18 U.S.C. § 3771(a)(6).

13.   Numerous courts have held that these statutes create a mechanism by which the United States may request that the Court authorize the turnover of funds in an inmate trust account to the Clerk of Court for application to restitution.[3]

---

[3] *See United States v. Giles,* 819 Fed. Appx. 899 (11th Cir. Sept. 4, 2020) ( citing 18 U.S.C. § 3664(k) to affirm the district court's turnover order, and noting that "[o]ver time, the accumulation of cash in [defendant's] inmate account constituted a 'material change' in his ability to pay that he was obliged to report to, yet withheld from, the district court"); *United States v. Poff*, 727 Fed. Appx. 249, 253 (9th Cir. 2018) (affirming turnover order for funds held in inmate trust account pursuant to § 3664(n), finding no pre-deprivation hearing required where encumbered funds were not needed for defendant's subsistence, entirety of the funds was subject to a statutory lien based on an adjudicated judgment, and funds were only frozen—not distributed—pending resolution of a motion before a district court), *vacated on other grounds in Poff v. United State*s, 139 S. Ct. 790 (2019); *United States v. Lemberger*, 673 Fed. Appx. 579, 580 (7th Cir. 2017) (affirming turnover of funds in inmate trust account pursuant to 18 U.S.C. §§ 3664(m) and (n)); *United States v. Diehl*, 848 F.3d 629, 634-35 (5th Cir. 2017) (affirming turnover order for defendant's inmate trust account in accordance with 18 U.S.C. § 3613); *United States v. Grant*,

14. The United States further submits that an order authorizing the turnover of these funds is appropriate here since the United States has a valid lien against the property of the Defendant, including the funds in his inmate trust account. Because the funds at issue are already in the possession of the United States, it is not necessary for the United States to invoke other collection remedies, such as garnishment of or execution upon property, to obtain these funds.

15. Furthermore, because the funds are cash, they do not fall within any of the applicable categories of exempt property that a defendant may claim in a criminal case. 18 U.S.C. § 3613(a)(1) (setting forth the applicable IRS property exemptions for criminal cases). Federal law provides that, for federal criminal debts, such as restitution, fines, and special assessments, the only categories of exempt property are: (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a trade, business, or profession; (4)

---

235 F.3d 95, 99-101 (2d Cir. 2000) (affirming order directing application of inmate trust funds pursuant to § 3664(k)).

The Court of Appeals for the Fifth Circuit has a recent internal split on the issue of substantiality, where resources received during a period of incarceration must be "substantial" in order for the value of such resources to be applied towards restitution or fine obligations pursuant to 18 U.S.C. § 3664(n). *Compare United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) (rejecting argument that $3,464.85 in accumulated prison earnings was substantial under § 3664(n) and declining to apply § 3664(k) to modify payment schedule) *with United States v. Rand*, 924 F.3d 140, 141 (5th Cir. 2019) (holding that approximately $1,684.57 in inmate trust account was "substantial resource" requiring turnover). Here, the United States submits that such resources are substantial in the eyes of the victims and, regardless, there are other alternative legal remedies that may be used to encumber the same resources, causing them to be paid over to compensate victims for their losses. *See* 28 U.S.C. § 3205(a) ("[a] court may issue a writ of garnishment against property…in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor…").

unemployment benefits; (5) undelivered mail; (6) annuity or pension payments under certain, specified federal statutes; (7) workmen's compensation; (8) judgments for support of minor children; (9) certain service-connected disability payments; and (10) assistance under the Job Training Partnership Act. 18 U.S.C. § 3613(a)(1). Accordingly, the Defendant cannot properly claim that the funds held in his inmate trust account are exempt from payment of his special assessment and restitution obligation.

16. Additionally, the Defendant has not notified this Court that he received these funds as required under the MVRA. Federal law states that the Defendant must notify the Court and the United States of any material change in his "economic circumstances" that might affect his ability to pay his restitution obligation. 18 U.S.C. § 3664(k). Specifically, pursuant to 18 U.S.C. § 3664(k), "[u]pon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." The accumulation of these funds by the Defendant constitutes a material change in his "economic circumstances" that affects his ability to pay his restitution obligation.

17. The United States submits that the requested relief is reasonable and appropriate in this instance, especially in light of the Defendant prioritizing payments to his siblings over the victims of his crimes.

18. The United States will serve the Defendant with a copy of this motion. The United States is not aware of any other party who may claim an interest in the funds.

**CONCLUSION**

WHEREFORE, for the reasons stated herein, the United States respectfully requests that this Court enter an Order authorizing the BOP to turn over all funds held in the inmate trust account for the Defendant to the Clerk of Court as payment toward the criminal monetary penalties imposed in this case.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys

NATHANIEL R. MENDELL
Acting United States Attorney

Date:   January 5, 2022              By:    /s/ Brendan T. Mockler
                                            BRENDAN T. MOCKLER
                                            Assistant United States Attorney
                                            1 Courthouse Way, Suite 9200
                                            Boston, MA 02210
                                            Tel. No. (617) 748-3100
                                            Brendan.Mockler@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true copy of the above document was filed through the ECF system and electronically served on any registered participants.

I further certify that on this date, I served a copy of the same by first-class U.S. mail, postage pre-paid, to the following:

Dzhokhar A. Tsarnaev
Register Number: 95079-038
USP FLORENCE ADMAX
5880 State Highway 67 South
Florence, CO 81226

Date:   January 5, 2022                      /s/ Brendan. T. Mockler
                                             BRENDAN T. MOCKLER