UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 13-CR-10200-GAO |
| DZHOKHAR TSARNAEV | |

**DEFENDANT DZHOKHAR TSARNAEV'S RESPONSE TO THE GOVERNMENT'S MOTION TO AUTHORIZE PAYMENT FROM HIS INMATE TRUST ACCOUNT**

On behalf of Dzhokhar Tsarnaev, we write in response to the government's motion to authorize payment from Mr. Tsarnaev's inmate trust account ("Gov't Mot.") (Dkt. No. 1786).

In the government's telling, Mr. Tsarnaev is hoarding thousands of dollars from benefactors nationwide, ignoring the victims and "prioritizing" payments to his family. That account is not accurate. Mr. Tsarnaev today has access to about $15. The remaining funds sought to be seized are in the government's hands; some have been there for years. Mr. Tsarnaev cooperated with the Bureau of Prisons in creating a financial plan to satisfy his court-ordered monetary obligations and has never failed to make a payment due under that plan. Since this Court entered judgment, Mr. Tsarnaev has made no payments to third parties. His contributions to his sisters came more than seven years ago, before trial, and thus before any restitution obligation arose. Otherwise, Mr. Tsarnaev has spent money only to purchase BOP-approved commissary items (hygiene products, sweat clothes needed for his orderly job), and to pay the exorbitant costs of brief phone calls with his parents, among the few people with whom the government has allowed him to speak during his nine years in solitary confinement. Mr. Tsarnaev did not object to the amount of restitution imposed and did not appeal this Court's restitution order. He acknowledges his financial obligation to the victims and will continue to comply with the amended judgment entered in January 2016.

1

The government's requested relief, however, is not warranted. At the threshold, this Court should not decide the government's motion, but should instead refer this case to this District's Clerk for reassignment. See United States v. Tsarnaev, 968 F.3d 24, 106 (1st Cir. 2020) (citing D. Mass. Local R. 40.1(k)(1)). If this Court retains jurisdiction, then the motion should be stayed so that BOP can create a financial plan for the payment of Mr. Tsarnaev's restitution obligation in the first instance, as this Court's amended judgment directs. Dkt. No. 1618, at 9 ("Restitution payments ... shall be made in accordance with the Federal Bureau of Prisons Inmate Financial Responsibility Program while the defendant is incarcerated."). In the alternative, the motion should be denied. The government's principal factual justification—that Mr. Tsarnaev has "prioritiz[ed]" payments to his family, in dereliction of competing legal duties to the victims—is mistaken. And, as both the Fifth and Tenth Circuits have held, where, as here, a judgment calls for the payment of restitution according to a schedule and the defendant has not defaulted, the government lacks the expansive enforcement authority now claimed.

## BACKGROUND

1. At sentencing in June 2015, this Court imposed a $3,000 special assessment but deferred entry of restitution. Sent'g Tr. (Dkt. No. 1634), at 114–15; Judgment (Dkt. No. 1480), at 7. BOP designated Mr. Tsarnaev to USP Florence ADMAX, where, with his cooperation, staff formulated a plan for the satisfaction of the special assessment. See 28 C.F.R. § 545.10; BOP, Program Statement P5380.08, Inmate Financial Responsibility Program (Aug. 15, 2005), available at https://www.bop.gov/policy/progstat/5380_008.pdf. Mr. Tsarnaev complied with the terms of that plan and paid down his special assessment until June 2020, when the assessment abated by operation of law. 18 U.S.C. § 3013(c); see Gov't Mot. ¶ 3.

2.      In January 2016, this Court imposed restitution of $101,124,027. Amended Judgment (Dkt. No. 1618), at 7. At the hearing on restitution, this Court specified that it was assigning BOP the responsibility to enforce the restitution order: "The Bureau of Prisons will be charged with the assessment and collection of restitution in accordance with the Inmate Financial Responsibility Program." Motion Hr'g Tr. (Dkt. No. 1597), at 56. Under the IFRP, "[o]rdinarily, the minimum payment ... is $25 per quarter." 28 C.F.R. § 545.11(b)(1); see Program Statement P5380.08, at § 8(b)(1). This Court understood and incorporated that "default" rate: "[U]nder that program there is a minimum assessment of $25 per quarter, and that will be the default for at least the commencement of the collection. That is also adjustable depending on the financial circumstances of the defendant. If his income may rise or fall some adjustment under the program would be appropriate, but we will leave it to the [B]ureau's program ... subject to whatever necessary supervision ... might arise if there are issues." Mot. Hr'g Tr. 56–57. The amended judgment thus stated: "Restitution payments shall commence immediately and shall be made in accordance with the Federal Bureau of Prisons Inmate Financial Responsibility Program while the defendant is incarcerated." Dkt. No. 1618, at 9.

3.      Once this Court imposed restitution, the U.S. Attorney's Office for the District of Massachusetts could have sought to modify Mr. Tsarnaev's financial plan to provide for the payment of restitution before the special assessment. Section 8(a)(2)(c) of Program Statement P5308.08 provides: "When the court imposes restitution in conjunction with a special assessment, the inmate and Unit Team may develop a financial plan for satisfying the restitution prior to the special assessment, provided: ... [t]he U.S. Attorney's Office ... in the jurisdiction where the offense occurred has requested it." However, the U.S. Attorney's Office chose to make

no such request, so all of Mr. Tsarnaev's payments were applied to the assessment and routed to a federal government fund, see 34 U.S.C. § 20101(b)(2), not to the victims.

4.  BOP has not developed a financial plan for Mr. Tsarnaev's restitution obligation. Nor has the United States Attorney's Office for the District of Massachusetts sought (and even now does not seek) to create one. Mr. Tsarnaev's most recent BOP progress report indicates that he has no outstanding financial obligations.

5.  As the government recounts (¶¶ 5–7), Mr. Tsarnaev has received deposits while incarcerated. However, the government's account is misleading in several respects:

- (a) Mr. Tsarnaev does not have access to "approximately $3,885.06 in his inmate trust account." ¶ 5. He has access to about $15. BOP has placed the remainder under administrative hold.

- (b) Mr. Tsarnaev does not have access to a "$1,400 COVID relief payment" received "on June 22, 2021." ¶ 6(a). BOP has placed those funds under administrative hold too.

- (c) "[T]he Office of Federal Defenders of New York" has not made "multiple deposits" "totaling approximately $11,230" to Mr. Tsarnaev. ¶ 6(b). Federal Defenders of New York, Inc., has never given Mr. Tsarnaev any institutional funds. All deposits originating from our office have been made over the course of six years by individuals approved to communicate with Mr. Tsarnaev under the governing Special Administrative Measures ("SAMs"), and were made by those individuals in their personal capacities and from their private resources.

- (d) Although several people who are not associated with the case, including some in Indiana, New Jersey, and Maryland, have made deposits to Mr. Tsarnaev's account (¶¶ 6(c)–(e) and 7), Mr. Tsarnaev has never communicated with any of them and did not solicit these contributions. Moreover, BOP has for several years withheld from Mr. Tsarnaev funds deposited by people such as these who have not been approved to communicate with him under the SAMs. Consequently, Mr. Tsarnaev has never had access to most of these funds.

6.  The government criticizes Mr. Tsarnaev for "not notif[ying] this Court that he received these funds," asserting that "[f]ederal law states that [he] must notify the Court and the United States of any material change in his 'economic circumstances' that might affect his ability to pay his restitution obligation." Gov't Mot. ¶ 16 (quoting 18 U.S.C. § 3664(k)). In fact,

§ 3664(k) imposes no freestanding duty to notify, but says: "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." The amended judgment here contains no such language. Dkt. No. 1618, at 7–11.

7.     In any event, before filing this motion, the government had made no notification either. Section 3664(k) provides: "The court may also accept notification of a material change in the defendant's economic circumstances from the United States." As the government explains, each of the deposits made to Mr. Tsarnaev's account had to be sent to BOP in the first instance. See Gov't Mot. 2 n.2 ("Deposits intended for the inmate's account must be mailed directly to the BOP's centralized commissary account." (citing 28 C.F.R. § 540.23)). So the government has long known of all of the deposits cited in its motion—indeed, the government knew of each of these deposits even before Mr. Tsarnaev did—but told this Court nothing. The government has not only known of these deposits for years, but has held many of them for years, too. Mr. Tsarnaev could not have used deposits subject to administrative hold to pay restitution because he did not have access to the money. Only the government did, and it has chosen to withhold these thousands of dollars for years.

8.     Mr. Tsarnaev has made some expenditures from his trust and commissary accounts. Contrary to the government's charge, however, he has not "prioritiz[ed] payments to his siblings over the victims of his crimes." Gov't Mot. ¶ 17. Mr. Tsarnaev gave his sisters $2,000 in 2013 and 2014, before his trial began and before any competing restitution obligation arose. Since this Court entered judgment, Mr. Tsarnaev has made no "payments to other third parties." Gov't Mot. ¶ 8. Rather, he has spent only to purchase BOP-approved commissary items such as food, soap, toothpaste, and the sweat clothes (not issued by USP Florence ADMAX)

5

needed to do his job as a sanitation orderly, and to communicate with his family. For example, the SAMs allow Mr. Tsarnaev only three 15-minute phone calls with his parents each month; Mr. Tsarnaev pays a dollar a minute (or $540 a year) for those calls, which are virtually the only times he speaks with anyone but his legal team. The $15 currently accessible to Mr. Tsarnaev reflects a spartan existence, not one in which he is "prioritizing" expenditures.

9. Mr. Tsarnaev did not object to the amount of restitution imposed (Mot. Hr'g Tr. 56), did not appeal any aspect of this Court's restitution order, and has never refused to make a payment due under his BOP financial plan.

## ARGUMENT

10. At the threshold, this Court should not decide this motion but should instead refer this case to this District's Clerk for reassignment. The First Circuit vacated Mr. Tsarnaev's death sentences "with directions to hold a new penalty-phase trial consistent with this opinion and with Local Rule 40.1(k)(1) of the District of Massachusetts." Tsarnaev, 968 F.3d at 106. Local Rule 40.1(k)(1) provides: "When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a district judge other than the judge before whom the first trial was held." Granted, the First Circuit has stayed its mandate pending the Supreme Court's final disposition of the government's petition for certiorari. Order, United States v. Tsarnaev, No. 16–6001 (1st Cir. Sept. 24, 2020). But the Court of Appeals plainly envisioned that future proceedings in this case would occur before a different district judge.

11. If this Court chooses to retain jurisdiction, then the motion should be stayed so that BOP can create a financial plan for the payment of Mr. Tsarnaev's restitution obligation. This Court ordered that Mr. Tsarnaev pay restitution "in accordance with the Federal Bureau of Prisons Inmate Financial Responsibility Program." Amended Judgment, at 9. BOP has not

created a plan applicable to restitution. By allowing BOP to do so and to address "the assessment and collection of restitution" in the first instance, Mot. Hr'g Tr. 56, this Court would give effect to its own amended judgment. "By statute, it is the district court—not the government—that determines how a defendant is to pay restitution." United States v. Martinez, 812 F.3d 1200, 1202 (10th Cir. 2015); see 18 U.S.C. § 3664(f)(2) ("[T]he court shall ... specify in the restitution order the manner in which ... the restitution is to be paid.").

12.     Reserving primary responsibility to BOP to design and administer a financial plan not only implements this Court's amended judgment but refers the matter to the actor best positioned to reconcile the victims' interest in compensation with Mr. Tsarnaev's legitimate financial needs while incarcerated. This Court accepted that Mr. Tsarnaev would require a baseline monthly reserve for commissary and communications. See Sent'g Tr. 100–01; see also 28 C.F.R. § 545.11(b); Program Statement P5380.08, at § 8(b) ($75 monthly carveout). This Court also knew that under the IFRP, Mr. Tsarnaev's "default" payment would be $25 per quarter. Mot. Hr'g Tr. 56–57; see also 28 C.F.R. § 545.11(b)(1); Program Statement P5380.08, at § 8(b)(1). Within those parameters, BOP is best suited to weigh Mr. Tsarnaev's financial obligations, needs, and resources to arrive at a suitable payment plan. The IFRP's implementing regulations so contemplate: The default minimum payment of $25 per quarter "may exceed $25, taking into consideration the inmate's specific obligations, institution resources, and community resources." 28 C.F.R. § 545.11(b)(1). BOP is also best suited to monitor Mr. Tsarnaev's compliance and to revise his plan as necessary over time. Again, that is what the regulations and the Program Statement anticipate. See 28 C.F.R. § 545.11(c) ("Participation and/or progress in the Inmate Financial Responsibility Program will be reviewed each time staff assess an inmate's demonstrated level of responsible behavior."); Program Statement P5380.08, at § 8(b) (providing

that at biannual program review, inmate's Unit Team has "discretion to consider all monies" above $75/month carveout " to adjust the inmate's IFRP payment plan," and noting that "the determination of commensurate payments is based on individual circumstances").

13. Under both this Court's amended judgment and the IFRP regulatory scheme, BOP makes the fine-grained factual determinations necessary to ensure satisfaction of both Mr. Tsarnaev's financial obligations and his reasonable institutional needs. Until BOP has had the opportunity to do so, this Court's action would be premature. See Palmer Foundry, Inc. v. Delta-HA, Inc., 319 F. Supp. 2d 110, 112–114 (D. Mass. 2004) (discussing "'primary jurisdiction doctrine,'" which "'permits and occasionally requires a court to stay its hand while allowing an agency to address issues within its ken'" (quoting United States Pub. Interest Research Group et al. v. Atl. Salmon of Maine, LLC, 339 F.3d 23, 34 (1st Cir. 2003)).

14. In the alternative, the government's motion should be denied. For one thing, the principal factual justification for the motion is inaccurate. The government argues that turnover of all of Mr. Tsarnaev's inmate trust account is "appropriate" "especially in light of the Defendant prioritizing payments to his siblings over the victims of his crimes." Gov't Mot. ¶ 17. As shown above (¶ 8), that is incorrect: when Mr. Tsarnaev sent money to his sisters, he had no restitution obligation, and he has made no third-party payments since that obligation arose. Mr. Tsarnaev's behavior offers no grounds for punitive intervention.

15. Moreover, as the Fifth and Tenth Circuits have held, where, as here, a judgment calls for the payment of restitution according to a schedule and the defendant has not defaulted, the government cannot seize funds in excess of what the schedule demands. United States v. Hughes, 914 F.3d 947, 949 (5th Cir. 2019) ("When a restitution order specifies an installment plan, unless there is language that the funds are also immediately due, the government cannot

attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan."); Martinez, 812 F.3d at 1207 (10th Cir.) ("The government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms."). Absent contrary First Circuit authority—and the government cites none—this Court should follow Hughes and Martinez. This Court's amended judgment calls for payment of restitution "in accordance with" a BOP-administered plan, not payment in full immediately. Cf. Judgment (Dkt. No. 1480), at 8 (special assessment "is due forthwith"). And Mr. Tsarnaev has never defaulted. The government therefore lacks the authority to supersede the amended judgment's terms.

16.     The government's requested relief would not just supersede but would affirmatively conflict with the background legal principles underlying this Court's amended judgment. The government seeks the full balance of Mr. Tsarnaev's inmate trust account. But this Court ordered the payment of restitution "in accordance with" the IFRP. And under the IFRP, BOP never seizes an inmate's account in full. Rather, at each biannual program review, an inmate's Unit Team must "determine the total funds deposited into the inmate's trust fund account for the previous six months; subtract the IFRP payments made by the inmate during the previous six months; and subtract $450 (i.e., $75 x 6 months [Inmate Telephone System] exclusion." Program Statement P5380.08, at § 8(b). Only funds remaining after that computation "may be considered for IFRP payments." Id. Over the six years since this Court ordered restitution, the standard $75/month carveout alone would have reserved to Mr. Tsarnaev $5,400—more than the government now seeks to take. Moreover, as detailed above (¶¶ 2 and 12), this Court, consistent with the Program Statement, expressed its intent to set a floor "below

which assessments cannot be drawn." Sent'g Tr. 100. So the government's requested relief would contravene both the IFRP and this Court's expressed intent.

17. For these reasons, this Court should refer this case to this District's Clerk for reassignment. If this Court retains jurisdiction, the government's motion should be stayed pending BOP's creation of a financial plan for Mr. Tsarnaev's restitution obligation. In the alternative, the motion should be denied.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys:

/s/ *David Patton*
David Patton, Esq.
Court of Appeals # 1173507
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700
DAVID_PATTON@FD.ORG

**Certificate of Service**

I certify that this document has been served upon counsel for the United States by electronic mail and ECF on this the 19th day of January 2022, including the following:

AUSA Brendan T. Mockler
1 Courthouse Way, Suite 9200
Boston, MA 02210
Brendan.Mockley@usdoj.gov

                                          /s/ *David Patton*
                                          David Patton, Esq.
                                          Court of Appeals # 1173507
                                          Federal Defenders of New York, Inc.
                                          52 Duane Street, 10th Floor
                                          New York, NY 10007
                                          (212) 417-8700
                                          DAVID_PATTON@FD.ORG