UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DZHOKHAR A. TSARNAEV,<br><br>　　　　Defendant. | **LEAVE TO FILE GRANTED ON MARCH 2, 2022**<br><br>Case No. 1:13-cr-10200-GAO |

**REPLY BRIEF OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO AUTHORIZE PAYMENT FROM DEFENDANT'S INMATE TRUST ACCOUNT**

　　　　The United States of America, by its attorney, Rachael S. Rollins, United States Attorney for the District of Massachusetts, submits this reply brief in support of its motion to authorize payment from the defendant Dzhokhar Tsarnaev's (the "Defendant") inmate trust account to the Clerk of Court for victim restitution. As the Court well knows, the horrific crimes committed by the Defendant devastated the City of Boston and led to the tragic deaths of four individuals and lifelong injuries and trauma for several hundred members of our community. In his Response (Dkt. No. 1787), the Defendant does not dispute that he owes $101,124,027 in restitution, or that he has funds (that he cannot access) in his inmate trust account that could be put toward restitution. He even claims that he will comply with his restitution obligation. Yet, despite all this, the Defendant opposes the immediate turnover of almost $3,900 to the Clerk of Court, which would be entirely disbursed to his numerous victims.

　　　　The government acknowledges the amount it seeks is not large compared to the total restitution amount and the harm the Defendant has wrought. But the amount is substantial in light of his assets and ability to pay. Further, the principle—that a defendant is obligated to pay

restitution to his victims and the United States Attorney's Office is obligated to enforce that debt on behalf of those victims —is of critical importance.

Addressing the Defendant's specific arguments, first, as a threshold matter, there is no basis to reassign this motion for decision by another judge. As the Defendant concedes, the First Circuit's remand order is stayed and, in any event, does not concern district court actions that are wholly divorced from any penalty-phase trial (that may never occur).

Second, the Defendant's suggestion that under a Bureau of Prison ("BOP") program statement, the United States Attorney's Office could have, but did not, request that restitution be paid before court assessments, is also incorrect. Congress established the sequence in which criminal monetary obligations are to be satisfied, *see* 18 U.S.C. § 3612(c)—the special assessment must be satisfied first, before restitution, unless the assessment has expired. This sequence is also expressly stated in the Amended Judgment. Dkt. No. 1618 at 8. "The only higher-priority category than restitution is special assessments, 18 U.S.C. § 3612(c)(1), which Congress prioritized because they fund victim assistance programs, see S.Rep. No. 104–179, at 22 (1995)." *United States v. Witham*, 648 F.3d 40, 45 n.6 (1st Cir. 2011). Whatever BOP policy states, it does not govern here.

Finally, the Defendant's main argument, and the only one that actually goes to the merits of the government's motion, is that by referencing payments made through the BOP's Inmate Financial Responsibility Program (the "IFRP") (a voluntary program that an inmate *may* participate in), the Court has barred the government from collecting restitution from any other source while the Defendant is incarcerated. This is not so.

The plain language of the Amended Judgment (Dkt. No. 1618) orders restitution in the amount of $101,124,027, "Payment to begin immediately" *and also*, as "additional terms," refers to payments through the IFRP. Nothing in the Amended Judgment relieves the Defendant from

his ongoing restitution obligation or bars the government from enforcing the restitution judgment, as Congress requires it to do. Indeed, it would be nonsensical to interpret IFRP payments, typically $25 a quarter, as the upper limit on what the government can collect—when, in the very same judgment, the Court orders the Defendant—who will never leave BOP custody—to begin paying $101,124,027 in restitution "immediately." Such a result, in this case, would preclude the government from collecting against *any* assets the Defendant might have and effectively discharge all but a miniscule portion of the Defendant's restitution obligation.

## **ARGUMENT**

### A.   **This Matter Should Not Be Reassigned to a Different Judge.**

The Defendant briefly suggests that this matter must be reassigned to a different judge. *See* Response at ¶ 10. The record and the law refute any such notion.

In its July 31, 2020 decision remanding the case to this Court, the First Circuit stated: "And we vacate [defendant's] death sentences on Counts 4, 5, 9, 10, and 14, with directions to hold a new penalty-phase trial consistent with this opinion and with Local Rule 40.1(k)(1) of the District of Massachusetts." *United States v. Tsarnaev*, 968 F.3d 24, 106 (1st Cir. 2020), *cert. granted*, 141 S. Ct. 1683 (2021). Local Rule 40 provides as follows: "When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a district judge other than the judge before whom the first trial was held." Local Rule 40.1(k)(1).

On September 14, 2020, the First Circuit granted the government's assented-to motion to stay the mandate, stating: "The issuance of the mandate is hereby stayed until December 28, 2020. If within that period a timely petition for writ of certiorari is filed, the stay shall continue until final disposition of such petition by the United States Supreme Court." In the meantime, the Supreme Court has granted the government's petition for a writ of certiorari, received briefing on the merits,

and heard oral argument. *See United States v. Tsarnaev*, No. 20-443 (cert. granted March 22, 2021). The case is now awaiting decision.

Depending on the outcome in the Supreme Court, this case may never be "remand[ed] to this court for a new [penalty-phase] trial." Unless and until the case is actually remanded for a new trial and jurisdiction returns to this Court for that purpose, Local Rule 40.1(k)(1) can have no application. *See Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 93 (1st Cir. 2003) (quotation omitted) ("The district court does not regain jurisdiction over those issues [involved in the appeal] until the court of appeals issues its mandate."). Moreover, the discrete matter at issue here, concerning the disposition of monies in the Defendant's inmate trust account, has no conceivable relevance to any potential retrial that might occur at some future date. The matter is wholly unrelated to the substance of the appeal, and it is one over which this Court retains jurisdiction despite the appeal. *See United States v. Naphaeng*, 906 F.3d 173, 177 (1st Cir. 2018) (district court is divested of jurisdiction to address issues "related to the appeal's substance during the pendency of the appeal"); *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015) (district court retains jurisdiction to address "matters unrelated to the 'substance of the decision' being appealed"); 16A Charles A. Wright, et al., *Federal Practice & Procedure* § 3949.1 (5th ed. 2021) ("The restriction on district court action encompasses only the matters that are comprehended within the appeal."). Thus, nothing in Local Rule 40 or in the First Circuit's opinion even remotely suggests that this Court is disabled from acting on that matter or that a different district judge must be assigned to address it. The Defendant's terse argument to the contrary is baseless, and the Court should reject it.

### B. The United States Code, not a BOP Program Statement, Establishes the Sequence in which Criminal Monetary Obligations Are Satisfied.

In his Response, the Defendant questions why the United States Attorney's Office never modified the Defendant's "financial plan" to provide for payment of restitution before payment of the special assessment, citing section 8(a)(2)(c) of the BOP Program Statement P5308.08. Response, ¶ 3. The reason is simple: Both Title 18 and the Amended Judgment expressly prohibit doing so. *See* 18 U.S.C. § 3612(c) ("Any money received from a defendant shall be disbursed so that each of the following obligations is paid in full in the following sequence: (1) A penalty assessment… (2) Restitution for all victims.  (3) All other fines, penalties, costs, and other payments required under the sentence."); Dkt. No. 1618, at 8 ("Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs."); *see also United States v. Witham*, 648 F.3d 40, 45 n.6 (1st Cir. 2011) ("The only higher-priority category than restitution is special assessments, 18 U.S.C. § 3612(c)(1), which Congress prioritized because they fund victim assistance programs") (citing S.Rep. No. 104–179, at 22 (1995)). To the extent there is any contradiction between the provisions of Title 18 and a BOP program statement, the provisions of Title 18 govern.

Here, because five years have passed since the initial Judgment dated June 24, 2015 imposing the $3,000 special assessment, the assessment has expired. 18 U.S.C. 3013(c) ("The obligation to pay an assessment ceases five years after the date of the judgment. This subsection shall apply to all assessments irrespective of the date of imposition."). Accordingly, all funds turned over to the Clerk of Court will now go to victim restitution.[1]

---

[1] The Defendant makes additional, unwarranted claims. None go to the merits of the pending motion. The Defendant's statement that "[t]he government has not only known of these

### C. The Government's Turnover Motion Should Be Granted.

The Defendant asks the Court to interpret the Amended Judgment as setting a ceiling on what the government can collect in restitution—that ceiling being payments from the Defendant's voluntary participation in the IFRP. *See* Response, ¶¶ 11-13. Such an interpretation would confer a significant benefit on the Defendant, as IFRP payments typically range between $25 and $50 per quarter. Importantly, as the IFRP is voluntary, under his legal theory, the Defendant could avoid restitution entirely by simply electing not to participate in the IFRP. Of particular importance: the Defendant's participation in the IFRP started on August 3, 2017, more than 1.5 *years* after the Court ordered him to begin paying restitution *immediately*. Thus, as the Defendant would have it, the Amended Judgment, on the one hand, imposes restitution of $101,124,027, but, on the other hand, caps restitution at between $25 and $50 per quarter, and only *if* the Defendant opts to participate in a voluntary program. If he chooses not to participate in the IFRP, under the

---

deposits for years, but has held many of them for years, too" (Response, ¶ 7) is inaccurate and misleading. As funds from approved special administrative measures ("SAMs") sources flowed into the account, the Defendant has spent them at roughly the same rate. It is only because of numerous unapproved payment sources—which have always been subject to administrative hold—and the recent stimulus payment, that the Defendant's inmate trust account balance reached $3,900, an amount that necessitated the government's turnover motion.

The Defendant states that other than "about $15", "BOP has placed the remainder under administrative hold." Response, ¶ 5. Not so. Funds paid into the Defendant's inmate trust account fall into three categories: Funds received from his job as a sanitation orderly, funds received from approved sources, and funds received from unapproved sources. The difference between approved and unapproved sources is based on SAMs. Funds received from unapproved sources are immediately subject to administrative hold and cannot be used by the Defendant, absent court order or until the SAMs are released or modified. Funds received from approved sources are *not* subject to administrative hold. SAMs is in place for reasons of national security and its application has nothing to do with the Defendant's obligation to pay restitution. These funds—the ones from approved sources—have been used by the Defendant to pay $2,000 to his siblings, to pay his $402 court filing fee in connection with separate civil litigation against BOP, and to pay $13,451.38 for his commissary items. These funds were restrained only upon the filing of the government's motion, aimed at recovering *all* amounts—from approved and unapproved sources alike.

Defendant's interpretation, the Amended Judgment caps his restitution obligations at $0. And all while preventing the United States Attorney's Office from taking any action to enforce the restitution, as required by 18 U.S.C. § 3612(c). The Amended Judgment does no such thing.

### 1. The Amended Judgment, on its Face, Requires the Defendant to Pay the Full Restitution Amount Immediately.

In relevant part, the Court's Amended Judgment orders restitution "[p]ayment to begin immediately," combined with the additional terms of participation in the IFRP. It further provides that "[u]nless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment." The relevant portions of the Amended Judgment are set forth below:

**SCHEDULE OF PAYMENTS**

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due
　　☐ not later than _____, or
　　☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:
　　(See page 9).

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Page 9 of the restitution order then provides, as *additional* terms:

> **ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES**
>
> Restitution payments shall commence immediately and shall be made in accordance with the Federal Bureau of Prisons Inmate Financial Responsibility Program while the defendant is incarcerated. Any payment made that is less than payment in full shall be divided and distributed proportionately among the victims listed as Victims 1 through 49 in the Appendix to this Amended Judgment. Restitution shall be made to the Massachusetts Victim Compensation Fund pursuant to 18 USC Sec. 3664(j) only after Victims 1 through 49 have received payment in full of the restitution amounts due them.

In short, the Amended Judgment orders payment of restitution of $101,124,027 to begin "immediately" and that it is due while the Defendant is incarcerated.[2] When restitution is due immediately, the Mandatory Victim's Restitution Act ("MVRA") grants the United States authority to pursue all available and reasonable means to collect on the restitution debt ordered by the Court, including the instant motion. *See* 18 U.S.C. §§ 3613(a), 3664(m)(1)(A); *see also United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006) ("The [judgment] must be read harmoniously with the [MVRA] statute," concluding that payment plan in a judgment "is a floor rather than a ceiling"). Accordingly, there is nothing in the plain language of the Amended Judgment barring the immediate turnover of these funds.

Because such turnover is permitted under the Amended Judgment, and fully consistent with the MVRA, there is also no merit to the Defendant's argument (Response, ¶ 11) that the government's motion should be stayed so BOP can create a "financial plan" for the Defendant to pay restitution. Nor is there any need for BOP or the Court to make "fine grained factual determinations" about the Defendant's needs. Response, ¶ 13. The MVRA has a broad reach, authorizing the government to enforce restitution against "all property or rights to property" of the

---

[2] If the Amended Judgment did not provide for restitution payment to begin immediately, 18 U.S.C. § 3572(d)(1) provides that "unless, in the interest of justice, the court provides for payment on a date certain or in installments," a defendant ordered to pay restitution "shall make such payment immediately." Thus, if there is any ambiguity, the default is that the entire restitution amount is due immediately.

Defendant "notwithstanding any other Federal law," 18 U.S.C. § 3613(a), except those property rights that would be exempt from a levy for delinquent taxes, 18 U.S.C. § 3613(c). As explained by the Supreme Court, "[t]he statutory language 'all property and rights to property' … is broad and reveals on its face that Congress meant to reach every interest in property that a [defendant] might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985) (construing similar language in various Internal Revenue Code provisions). The Defendant has funds in his inmate trust account that can and should be applied to restitution immediately.

### 2. *Martinez* and *Hughes*, on Which the Defendant Relies, Are Inapplicable Because They Concern Payment Terms Not Present Here.

To bolster his strained reading of the Amended Judgment, the Defendant cites two cases, *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015) and *United States v. Hughes*, 914 F.3d 947, 949 (5th Cir. 2019). But these cases, unlike the Amended Judgment here, involve judgments that ordered a small amount ($100 and $300) to be paid immediately and the balance to be paid pursuant to installment payment schedules.[3] Based on those payment terms, the *Martinez* and *Hughes* courts held that the government was barred from pursuing other assets of the defendants, as further payment was not yet due. *See Martinez*, 812 F.3d at 1201; *Hughes*, 914 F.3d. at 949 ("When a restitution order specifies an installment plan, unless there is language directing that the

---

[3] In *Martinez*, the district court ordered the defendant to pay "$300 immediately" with the "balance due" through monthly installments based on a percentage of his disposably income. *Martinez*, 812 F.3d at 1203-04. Similarly, in *Hughes*, $100 was "due immediately" with the following payment schedule: "Balance due in payments of the greater of $25 per quarter or 50% of any wages earned while in prison in accordance with the Bureau of Prisons' Inmate Financial Responsibility Program. Any balance remaining after release from imprisonment shall be paid in equal monthly installments of $500 to commence 60 days after the release to a term of supervision." *Hughes*, 914 F.3d. at 948.

9

funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan.").

The Amended Judgment here is readily distinguishable from *Martinez* and *Hughes*, as it contains none of the limiting language present in those cases. As noted, the Amended Judgment states "Payment to begin immediately." It also provides that "*Any payment made that is less than payment in full* shall be divided and distributed proportionally among the victims listed in Victims 1 through 49…" (emphasis added), specifically contemplating that payment could be made in full (as opposed to limited to an installment payment plan).

Further, courts have not construed *Martinez* to preclude the government from enforcing a restitution judgment where, like here, payment is due immediately and the Court *also* orders a payment plan. *See United States v. Daniels*, 2017 WL 1538457 *3 (N.D. Okla. Apr. 28, 2017) ("*Martinez* does not apply to this case because the judgment made clear that '[a]ny monetary penalty [was] due in full immediately'" and allowing the United States to take a tax refund for payment towards restitution even though there was also a court-ordered payment plan). In *United States v. Barber*, No. 14 CR 601-2, 2016 WL 4377136 (N.D. Ill. Aug. 17, 2016), for example, the court distinguished *Martinez* by emphasizing that the defendant was ordered to pay restitution in full immediately, and, if any amount remained unpaid upon release, she was to pay monthly installments of at least ten percent of her net monthly income. *Id.* at *1. "The monthly installment is a floor, not a ceiling, and nothing in the Court's order prevents the government from attempting to collect the amount due by means other than and in addition to the installment payments." *Id.* (citing *Fariduddin*, 469 F.3d at 1113).

10

### 3. Participation in the IFRP or Following a Payment Plan Does Not Preclude the Government's Additional Collection Efforts.

Additionally, nothing about the IFRP or the participation in a payment plan precludes the government's ability to pursue other assets of the Defendant for restitution, as numerous courts have held. "The [IFRP] and the government's ability to collect restitution are not mutually exclusive." *United States v. Lemberger*, 673 F. App'x. 579, 580 (5th Cir. 2017) (affirming district court's order granting the government's request to seize defendant's inmate trust funds to pay his criminal restitution). Regardless of a defendant's participation in the IFRP, "the government remains free to use 'all other available and reasonable means' in collecting restitution." *Id.*; *see also United States v. Brewer*, 699 F. App'x. 318, 319 (5th Cir. 2017) ("Participation in the IFRP and compliance with a payment schedule does not 'preclude[ ] the Government from using other available collection mechanisms to seek payment of monetary penalties'") (quoting *United States v. Diehl*, 848 F.3d 629, 633 (5th Cir. 2017)).[4]

Similarly, courts have held that the United States may enforce beyond a court-ordered payment schedule. *See, e.g.*, *United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) (holding order requiring payments to begin immediately, along with instruction that "Any unpaid restitution balance during the term of supervision ... shall be paid at a rate of not less than 10% of the

---

[4] *See also United States v. Lassiter*, No. 13-20476, 2021 WL 486611, *2-3 (E.D. Mich. Feb. 10, 2021) (granting government's motion to authorize payment from inmate trust fund account where judgment required defendant's participation in IFRP, but did not limit monthly payments to a fixed sum); *United States v. Kieffer*, No. 3:14-CR-30051-NJR-1, 2021 WL 1758815 (S.D. Ill. May 4, 2021) (granting motion to authorize payment from inmate trust fund account notwithstanding defendant's compliance with IFRP, finding that economic stimulus payment constitutes substantial resources under 18 U.S.C. § 3364(n) that must be applied to the payment of restitution); *United States v. Gibbs*, No. 3:92-CR-30119-001, 2015 WL 5895461, at *1 (S.D. Ill. Oct. 8, 2015) (finding defendant's participation in IFRP did not preclude authorizing BOP to turn over funds held in defendant's inmate trust account).

defendant's gross monthly income" is due in full as "[t]he federal criminal code *requires* that restitution be paid immediately unless the district court provides otherwise, 18 U.S.C. § 3572(d)(1), which it did not."); *Fariduddin*, 469 F.3d at 1113 (characterizing defendant's argument that payments were limited to court-ordered installments as a request for "cancellation of the debt"); *United States v. Rush*, No. 5:14CR00023, 2016 3951224, at 3 (W.D. Va. July 20, 2016) ("It was never the intention of the court, in setting up the payment schedule, to give [defendant's] then-unliquidated boat asset a free pass from being subject to execution by the government."); *United States v. James*, 312 F. Supp. 2d 802, 807 (E.D. Va. 2004) ("Court-imposed payment schedules are merely one means available to enforce a restitution judgment.").

### D. The Defendant Is Required to Notify the Court and Government of Material Changes in His Ability to Pay.

In his Response at ¶ 6, the Defendant claims the Amended Judgment lacks the statutorily required language of 18 U.S.C. § 3664(k), which states: "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." The Defendant is incorrect.[5] The first page of the Amended Judgment, in clear and unambiguous terms, provides "[i]f ordered to pay restitution, the defendant must notify the court and the United States attorney of material changes in economic circumstances." Dkt. No. 1618.

---

[5] The Defendant also misstates other facts. In his Response, the defendant claims that he "pays a dollar a minute (or $540 a year) for those calls…," referring to the cost as "exorbitant." Response at ¶ 8. However, due to the pandemic BOP has provided free phone calls—both domestic and international—to inmates since April 2020. *See* 28 C.F.R. § 540.106. Inmates will receive 30 days' advance notice before BOP again charges for calls. Thus, contrary to the Defendant's assertions, he has not paid for phone calls since at least April 2020.

The Defendant failed to notify the Court and the government each time he received a payment, even when significant sums of money were deposited by his counsel, the Federal Defenders of New York. According to BOP's Inmate Center Report dated January 6, 2022, since his sentencing, the Defendant has received a total of $21,889.60, of which only $293 was the result of his IFRP. This document, which lists transaction date, amount, sender's name, and address, reflects the following additional deposits: around $5,960 deposited by the Federal Defenders of New York, around $5,520 deposited by the Attorney-in-Charge of the Federal Defenders for the Eastern District of New York, a $1,400 stimulus payment, and payments totaling $8,716.60 from other individuals.[6]

The Defendant also, incorrectly, conflates the statutory *requirement* imposed on *him* to notify the Court and government of such changes with the statutory *option* available to the government to do the same. 18 U.S.C. § 3664(k) ("…the defendant *shall* notify the court and the Attorney General…The court may also accept notification…from the United States…"). Through this turnover motion, the United States has, in fact, notified the Court of a material change in the Defendant's economic circumstances. The United States also certifies that all victims have been notified pursuant to 18 U.S.C. § 3664(k).

---

[6] The Defendant takes issue with the government's statement that he prioritized payments to his siblings over payments to his victims, arguing that somehow the sibling payments are immunized from review simply because they were made before he was sentenced. After paying commissary expenses totaling $13,451.38, the Defendant's siblings were the recipients of the largest amount of money—$2,000—paid from his inmate trust account. The next largest payment was a $402 court fee, paid in February 2021, in connection with a separate civil lawsuit the Defendant filed against the BOP. And, finally, the next largest total payment—$400—was paid towards his outstanding unexpired special assessments. Further, and as a result of the United States referring the debt to the Treasury Offset Program, the government successfully intercepted a stimulus payment owed to the Defendant, resulting in $1,802.03 being applied towards victim restitution. Another stimulus payment in the amount of $1,400 was deposited into the Defendant's inmate trust account, which, in large part, necessitated the filing of the government's motion.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter an order authorizing BOP to remit the full amount in the Defendant's inmate trust account to the Clerk of Court for application to restitution for the victims of the Defendant's horrific crimes.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys

RACHAEL S. ROLLINS
United States Attorney

Date:  March 2, 2022            By:   /s/ Brendan T. Mockler
                                      BRENDAN T. MOCKLER
                                      NADINE PELLEGRINI
                                      Assistant United States Attorneys
                                      1 Courthouse Way, Suite 9200
                                      Boston, MA 02210
                                      Tel. No. (617) 748-3100
                                      Brendan.Mockler@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true copy of the above document was filed through the ECF system and electronically served on any registered participants.

Date:  March 2, 2022                       /s/ Brendan. T. Mockler
                                           BRENDAN T. MOCKLER