2023 WL 3813780

2023 WL 3813780
Only the Westlaw citation is currently available.
United States Court of Appeals, First Circuit.

UNITED STATES of America, Appellee,
v.
Christopher SAEMISCH, Defendant, Appellant.

No. 22-1076
|
June 5, 2023

**Synopsis**
**Background:** Government moved for order authorizing
Bureau of Prisons (BOP) to turn over money in inmate's trust
account to cover restitution obligations following conviction
for child pornography. The United States District Court for the
District of Massachusetts, George A. O'Toole, Jr., J., ordered
turnover of entire balance of $10,956.36. Inmate appealed.

**Holdings:** The Court of Appeals, Selya, Circuit Judge, held
as a matter of first impression that:

[1] District Court had authority to order turnover of
substantial resources garnered by inmate, even though
restitution order contained payment schedule requiring
inmate to allocate 50% of monthly wages to restitution

[2] payment of $10,555 to settle inmate's lawsuit and
$1,725 in COVID-related stimulus checks were "substantial
resources";

[3] decision to require immediate payment was reasonable;

[4] District Court was not required to make findings on
matters such as assets, projected earnings, and financial
obligations; and

[5] District Court was not required to first identify source of
money in account and restrict any turnover to funds that could
specifically be earmarked as substantial resources.

Affirmed.

**Procedural Posture(s):** Appellate Review; Sentencing or
Penalty Phase Motion or Objection.

West Headnotes (16)

**[1]    Criminal Law**

Turnover order for payment of victim restitution
from inmate's trust account is reviewable for
abuse of discretion. 18 U.S.C.A. § 3664.

**[2]    Criminal Law**

On appeal of turnover order for payment of
victim restitution from inmate's trust account,
Court of Appeals examines district court's
subsidiary factual findings for clear error and its
answers to abstract legal questions de novo. 18
U.S.C.A. § 3664.

**[3]    Sentencing and Punishment**

District court had authority to order Bureau of
Prisons (BOP) to turn over substantial resources
garnered by inmate from settlement of lawsuit
and COVID-19 stimulus checks and remaining
in his trust account, so that those funds could
be applied immediately to inmate's outstanding
restitution obligation, even though restitution
order contained payment schedule requiring
inmate to allocate 50% of monthly wages to
restitution; Congress authorized government to
use "all other available and reasonable means" to
ensure prompt payment and sought to ensure that
windfalls would go to victims, not the prisoner.
18 U.S.C.A. §§ 3664(m), 3664(n).

**[4]    Sentencing and Punishment**

Inmate's windfall or sudden injection of funds
must be considerable in amount, value, or
worth to be "substantial" within meaning of
turnover statute requiring inmate to apply to any
restitution still owed the value of substantial
resources received from any source during a
period of incarceration. 18 U.S.C.A. § 3664(n).

**[5]    Sentencing and Punishment**

Payment of $10,555 to settle inmate's lawsuit to recover value of items stolen from him after his arrest and $1,725 in COVID-related stimulus checks issued by the federal government were "substantial resources" within meaning of turnover statute requiring inmate to apply to any restitution still owed the value of substantial resources received from any source during a period of incarceration. 18 U.S.C.A. § 3664(n).

**[6] Criminal Law** 🔑

Claim made before district court that Congress intended COVID-related stimulus payments to be immune from turnover for victim restitution was waived by failure to repeat claim on appeal. 18 U.S.C.A. § 3664(n).

**[7] Statutes** 🔑

When Congress uses term in statute and does not define it, court generally assumes that term carries its plain and ordinary meaning.

**[8] Statutes** 🔑

Statutory provisions must be interpreted by reference to structure and context of broader statutory scheme in which they reside.

**[9] Sentencing and Punishment** 🔑

What is reasonable for a turnover order requiring inmate to pay victim restitution will necessarily vary from case to case; thus, what is reasonable in one set of circumstances may be unreasonable in another set of circumstances, and some cases will be on the margin, requiring the district court to choose between reasonable, but conflicting, alternatives. 18 U.S.C.A. § 3664(m)(1)(A)(ii).

**[10] Sentencing and Punishment** 🔑

District court's decision to require immediate payment of amount in inmate's trust account to cover restitution obligation from funds including settlement of lawsuit and COVID-19 stimulus checks was reasonable under the circumstances; although inmate complained that he needed the money targeted for turnover for communication purposes and hygienic items, there is nothing in the record to suggest that his future earnings would be insufficient to cover those costs, and he would continue to earn income through his prison job and retain 50% of his prison wages. 18 U.S.C.A. § 3664(m)(1)(A)(ii).

**[11] Sentencing and Punishment** 🔑

Statute requiring court to consider matters such as defendant's assets, projected earnings, and financial obligations when determining amount of restitution owed to each victim did not apply to decision on government's motion for turnover of funds in inmate's prison trust account. 18 U.S.C.A. §§ 3664(f)(2), 3664(m), 3664(n).

**[12] Statutes** 🔑

Courts generally should presume that Congress acts intentionally when it uses particular language in one section of a statute but omits it in another.

**[13] Sentencing and Punishment** 🔑

District court ruling on government's motion for turnover order regarding funds in inmate's trust account to cover restitution obligations was not required to first identify source of money in account and restrict any turnover to funds that could specifically be earmarked as substantial resources, and court could order turnover of $10,956.36 which was amount remaining in account after inmate received substantial resources totaling $12,280 from settlement of lawsuit and COVID-19 stimulus checks and prison wages; it would have been impossible for court to segregate funds that triggered possibility of turnover from those that did not, total of $12,280 was ceiling for turnover order, and court's decision to order immediate turnover of $10,956.36 was reasonable. 18 U.S.C.A. §§ 3664(m), 3664(n).

**[14]**   **Sentencing and Punishment** 🔑

District court must examine source or sources of inmate's account before it may order turnover of funds contained in that account to cover obligation to pay victim restitution. 18 U.S.C.A. §§ 3664(m), 3664(n).

**[15]**   **Sentencing and Punishment** 🔑

If examination discloses that inmate's trust account is comprised, wholly or partially, of funds properly characterized as "substantial resources," then that account, up to total amount of "substantial resources," may be targeted in turnover order to cover inmate's obligation to pay victim restitution; if, however, examination discloses that monies in account consist only of gradually accumulated prison wages or other funds that do not qualify as "substantial resources," turnover statute is not implicated, and district court may not enter turnover order. 18 U.S.C.A. §§ 3664(m), 3664(n).

**[16]**   **Sentencing and Punishment** 🔑

Where district court finds that inmate's funds that constitute substantial resources have been comingled with other funds in a single account, the court ruling on government's motion for turnover order regarding funds in inmate's trust account to cover restitution obligations should consider whether it is practicable to segregate the amount of money derived from substantial resources. 18 U.S.C.A. §§ 3664(m), 3664(n).

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. George A. O'Toole, Jr., U.S. District Judge]

**Attorneys and Law Firms**

Zainabu Rumala, Assistant Federal Public Defender, for appellant.

Raquelle L. Kaye, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

Before Barron, Chief Judge, Selya and Thompson, Circuit Judges.

**Opinion**

SELYA, Circuit Judge.

**\*1** This appeal requires us, for the first time, to address the so-called "turnover" statute. See 18 U.S.C. § 3664(n). Under this legislation, prison inmates are required to put "substantial resources" acquired while incarcerated toward unpaid restitution obligations. Id. Concluding, as we do, that the district court's application of the statute was both lawful and within the compass of its discretion, we affirm its order regarding the disposition of the appellant's funds.

**I**

We briefly rehearse the relevant facts and travel of the case. In March of 2019, a jury convicted defendant-appellant Christopher Saemisch of distributing child pornography. See 🚩18 U.S.C. § 2252A(a)(2)(A). Following his conviction, the district court sentenced him to a 360-month term of immurement and a lifetime of supervised release. It also ordered him to make restitution to the victims of his crime.

See id. § 2259; see also 🚩Paroline v. United States, 572 U.S. 434, 443-48, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014) (explaining special method of calculating restitution in child pornography cases).

The district court's restitution order, incorporated in its amended judgment, fixed the restitution amount at $18,000. Additionally, the order stated that "[p]ayment of the restitution shall begin immediately and shall be made according to the requirements of the Federal Bureau of Prisons' Inmate Financial Responsibility Program while the [appellant] is incarcerated and according to a court-ordered repayment schedule during the term of supervised release."

During the appellant's incarceration, the government learned that his inmate trust account — an account maintained for him by the Bureau of Prisons (BOP) into which "[f]amily, friends, or other sources" may make deposits, 28 C.F.R. § 506.1 — reflected a balance of $10,956.36. Citing an amalgam of

statutory provisions, see 18 U.S.C. §§ 3613(a), 3664(m), (n), the government moved for an order authorizing the BOP to "turnover to the Clerk of the Court all funds held" in the appellant's account, to be used "as payment towards" his outstanding restitution obligation. At the time, the appellant had paid no more than a few hundred dollars on account of that debt. [1]

Proceeding pro se, the appellant opposed the motion. He explained that — between October 1, 2020 and August 13, 2021 — he had received money from three principal sources: $10,555 from the settlement of a lawsuit brought to recover the value of items stolen from him after he was arrested; $1,725 in COVID-related stimulus checks issued by the federal government, see 26 U.S.C. §§ 6428, 6428A, 6428B; and monthly wages earned while working in prison. [2]

 **\*2**  Relatedly, the appellant noted that he was participating in the BOP's Inmate Financial Responsibility Program (IFRP). See 28 C.F.R. § 545.10-11. Through the IFRP, fifty percent of the appellant's monthly earnings from prison wages was to be allocated to his restitution obligation.

Against this backdrop, the appellant argued that turnover of his accumulated funds was not warranted for four reasons. First, he argued that his direct appeal was pending and that, therefore, the turnover motion was premature. [3] Second, he argued that both the funds obtained from the lawsuit and the stimulus checks were beyond the reach of the turnover statute because they were not income. Third, he argued that the stimulus checks were exempt from turnover because Congress intended that money to be used to bolster the economy. Fourth, he argued that, as required by the court's earlier order, he had made all payments required by the IFRP in a timely manner.

The district court found the appellant's objections wanting. Citing 18 U.S.C. § 3664(m)(1)(A) and 18 U.S.C. § 3664(n), the court entered a turnover order. The order directed the BOP to turn over the full amount contained in the appellant's inmate trust account ($10,956.36) to the Clerk of the Court for application toward the appellant's outstanding restitution obligation. This timely appeal followed.

## II

The appellant is now represented by counsel, and he challenges the district court's decision to grant the turnover motion. Viewed from a high level of generality, he advances two contentions. First, he contends that the turnover order "impermissibly supersede[s]" provisions in the restitution order that dictate both the timing and amount of his restitution payments. Second, he contends that — even if the turnover order is not entirely invalid — the district court needed to make certain factual findings before it granted the government's motion.

 **[1]**    **[2]**   We assume, favorably to the appellant, that these claims of error are preserved. Cf. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (explaining that pro se filings are "to be liberally construed"). Consequently, we review the district court's turnover order for abuse of discretion. See United States v. Kidd, 23 F.4th 781, 785 (8th Cir. 2022); United States v. Rand, 924 F.3d 140, 142 (5th Cir. 2019) (per curiam). Within that rubric, we "examin[e] the court's subsidiary factual findings for clear error and its answers to abstract legal questions de novo." United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012); see United States v. Troy, 618 F.3d 27, 35 (1st Cir. 2010) (noting that "questions of statutory interpretation ... entail de novo review").

## III

### A

We start with the appellant's contention that the turnover order is invalid because it "impermissibly supersede[s]" provisions in the restitution order. Because this contention is premised on a perceived conflict between the terms of the two orders, some context is useful.

 **[3]**   As noted above, the appellant's restitution order stated that he was to "begin [payment of restitution] immediately." The order specified that "[p]ayment of the restitution ... shall be made according to the requirements of the [IFRP] while the [appellant] is incarcerated." Although the restitution order does not otherwise describe the IFRP's payment terms, the record makes manifest that the IFRP requires the appellant to allocate fifty percent of his monthly wages to restitution. The appellant contends that, because the restitution order requires payments to be made "according to ... the [IFRP],"

the district court could not authorize turnover of any amount exceeding fifty percent of his monthly wages unless the court first amended the restitution order. We do not agree.

**\*3** Congress has directed district courts to "issue[ ] and enforce[ ]" restitution orders under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664, including orders in child pornography cases, see id. § 2259(b)(3). As relevant here, the MVRA establishes procedures for district courts to follow when fashioning such restitution orders, see, e.g., id. § 3664(a)-(f), and creates mechanisms for adjusting those orders once they have issued, see, e.g., id. § 3664(k). In addition, the MVRA grants the government authority to enforce a restitution order after it comes into effect. See id. § 3664(m).

Of particular pertinence here, the MVRA requires certain defendants to apply to their restitution obligation any sudden windfalls that they receive. Section 3664(n) — the statutory provision relied on by the district court and around which this appeal revolves — states in relevant part that "[i]f a person obligated to provide restitution ... receives substantial resources from any source ... during a period of incarceration, such person shall be required to apply the value of such resources to any restitution ... still owed." Id. § 3664(n).

**[4]** By its terms, this statutory provision establishes a conditional obligation that extends to incarcerated defendants who owe restitution. That conditional obligation is triggered by a defendant's receipt of "substantial resources," id., which courts have held to mean a "windfall[ ] or sudden financial injection[ ]," United States v. Hughes, 914 F.3d 947, 951 (5th Cir. 2019); accord United States v. Carson, 55 F.4th 1053, 1056 (6th Cir. 2022). Because section 3664(n) targets only resources that are "substantial," the windfall or sudden injection of funds must be "considerable in amount, value, or worth." Substantial, Webster's Third New International Dictionary (1993); see Carson, 55 F.4th at 1057. The receipt of such a windfall obligates a defendant — if ordered by the district court — to "apply the value" of that windfall to any unpaid restitution. 18 U.S.C. § 3664(n); see Carson, 55 F.4th at 1056 ("If [a defendant] receives any windfall, that amount would automatically apply toward his restitution obligation.").

**[5]** **[6]** In the case at hand, the district court found that the appellant received funds that qualified as "substantial resources" under section 3664(n). The appellant's settlement payment easily fits within that taxonomy. See 18 U.S.C.

§ 3664(n) (expressly identifying "settlement" payments as eligible for turnover); see also Carson, 55 F.4th at 1058 (explaining that, where inmate otherwise earned "no more than a hundred dollars a month in wages," his receipt of "a few thousand dollars" constituted receipt of substantial resources). Similarly, the COVID-related stimulus checks remitted to the appellant fit within that taxonomy. See United States v. Stark, 56 F.4th 1039, 1041 (5th Cir. 2023) (per curiam) (concluding that COVID stimulus payments constitute "substantial resources" (quoting 18 U.S.C. § 3664(n))). Before us, the appellant does not reprise the claim, made below, that Congress intended the stimulus payments to be immune from turnover. Any such claim is, therefore, waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Inasmuch as the appellant plainly received funds falling under the umbrella of section 3664(n), his argument necessarily hinges on whether the district court could compel him to apply those funds to his unpaid restitution obligation and, if so, whether the court could require that he apply those funds immediately as a lump-sum payment. The appellant posits that resolving these issues requires us to determine the extent to which the turnover order conflicts with the terms of the restitution order. In his view, the restitution order establishes a payment plan (the IFRP) that limits the amount of money he is required to pay toward restitution to fifty percent of his monthly wages. By applying a lump sum that greatly exceeds fifty percent of his wages to his restitution obligation, the appellant's thesis runs, the turnover order contravenes the terms of the restitution order. Building on this foundation, the appellant suggests that — in the absence of either amendment of the restitution order or a default on the payment plan — there is no justification for ordering the turnover of additional funds (even funds that constitute "substantial resources").

**\*4** The government approaches the issue from a different angle. It says that — through section 3664(m) of the MVRA — Congress empowered the district court to enforce orders of restitution in several ways. One such way is to compel a defendant to turn over the full value of any windfall that he receives while in prison. See 18 U.S.C. § 3664(m), (n).

The government's approach is more consistent with the text and purpose of both the MVRA generally and section 3664(n) specifically. Through the MVRA, Congress sought "to ensure that victims of a crime receive [prompt and] full restitution." Dolan v. United States, 560 U.S. 605, 612, 130 S.Ct.

United States v. Saemisch, --- F.4th ---- (2023)

2023 WL 3813780

2533, 177 L.Ed.2d 108 (2010). As one means of achieving that goal, Congress expanded the government's authority to enforce orders of restitution. See United States v. Ridgeway, 489 F.3d 732, 736 n.6 (5th Cir. 2007) (stating that, in enacting the MVRA, Congress "g[ave] the [g]overnment a broader grant of authority to enforce restitution orders"). In addition, Congress supplied the government with a better stocked armamentarium for collecting unpaid restitution. Although Congress specifically enumerated certain of the mechanisms within this armamentarium, see, e.g., 18 U.S.C. §§ 3613, 3664(m)(1)(A)(i), it did not restrict the government's ability to collect restitution to the enumerated mechanisms alone. Instead, Congress clarified that the government may use "all other available and reasonable means" to ensure that defendants promptly and completely satisfy restitution obligations. Id. § 3664(m)(1)(A)(ii).

In this case, the district court — through its reference to 18 U.S.C. § 3664(m) in the turnover order — implicitly determined that immediate application of the windfall amount to the outstanding restitution obligation was an "available and reasonable" means of enforcing the restitution order. Thus, the question reduces to whether that determination is supportable.

**[7]**  The MVRA does not define what it means for a method of enforcement to be "available." "When Congress uses a term in a statute and does not define it, we generally assume that the term carries its plain and ordinary meaning." City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020); see Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014). The plain and ordinary meaning of the term "available" is "capable of use for the accomplishment of a purpose" or "immediately utilizable." Available, Webster's Third New International Dictionary (1993); see Available, Oxford English Dictionary Online (3d ed. 2022) (defining "available" as "[a]ble to be used" or "at one's disposal").

The district court's order plainly indicates that the court understood the turnover of the funds in the appellant's inmate trust account to be an immediately utilizable means through which the appellant could be compelled to satisfy his outstanding restitution obligation. So, too, the order plainly indicates the court's understanding that such a turnover was justified by section 3664(n). We conclude that both the structure and the text of the MVRA support this decision.

**[8]**  In reaching this conclusion, we are guided by the tenet that statutory provisions must be interpreted by reference to the structure and context of the broader statutory scheme in which they reside. See Abramski v. United States, 573 U.S. 169, 179, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014); see also United States v. Seward, 967 F.3d 57, 66 (1st Cir. 2020). The MVRA generally commits determinations regarding the timing of restitution payments to the district court's discretion. See 18 U.S.C. § 3664(f)(2)-(3), (k). And section 3664(n) contains nothing to suggest that this general principle should not apply with unabated force to situations in which a defendant receives a sudden and substantial infusion of cash.

**\*5**  We add, moreover, that the text of section 3664(n) reinforces the idea that district courts retain broad discretion in determining how the value of the substantial resources may be put toward restitution. In enacting section 3664(n), Congress established a clear directive: a defendant must "apply" the value of the newly received substantial resources to restitution. Id. § 3664(n); see Apply, Webster's Third New International Dictionary (1993) (defining "apply" as "to use for a particular purpose"); Apply, Black's Law Dictionary (6th ed. 1990) (defining "apply" as "to appropriate and devote to a particular use"). And although section 3664(n) is silent as to how or when those resources must be applied to restitution, that gap is filled by the statutory directive that such a turnover obligation must be "reasonable." 18 U.S.C. § 3664(m)(1)(A)(ii).

**[9]**  As we have written in other settings, "[r]easonableness is a concept, not a constant." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (quoting United States v. Ocasio, 914 F.2d 330, 336 (1st Cir. 1990)). "What is 'reasonable' " will "necessarily var[y] from case to case." Lopez v. Garriga, 917 F.2d 63, 69 (1st Cir. 1990). Thus, "[w]hat is reasonable in one set of circumstances may be unreasonable in another set of circumstances." United States v. Pagán-Rodríguez, 600 F.3d 39, 42 (1st Cir. 2010). And some cases will be on the margin, requiring the district court to choose between reasonable, but conflicting, alternatives.

**[10]**  Here, the district court's decision to require immediate payment was reasonable under the circumstances. Although the appellant complains that he needs the money targeted for turnover for communication purposes and hygienic items, there is nothing in the record to suggest that his future

earnings will be insufficient to cover those costs. After all, the appellant does not dispute that he will continue to earn income through his job at the prison. He will retain fifty percent of his prison wages under the IFRP. The retained portion will enable him to satisfy his general needs to the extent that those needs are not already met by the BOP. See United States v. Lillard, 935 F.3d 827, 835 (9th Cir. 2019) (explaining that section 3664(n) only applies to defendant's receipt of substantial resources during period of incarceration "because, during such a period, defendants can rely on the [BOP] to provide for their subsistence needs").

What is more, the district court's turnover order is in keeping with Congress's expressed intent in enacting both section 3664(n) and the MVRA writ large. In enacting section 3664(n), Congress sought to ensure "that windfalls received by prisoners from all sources ... will go to pay victims" and "not to the prisoner." 142 Cong. Rec. S3379 (1996) (statement of Sen. Charles Grassley). That intent matches the intent that underlies the MVRA as a whole: "ensur[ing] that victims of a crime receive [prompt and] full restitution." Dolan, 560 U.S. at 612, 130 S.Ct. 2533. The district court's decision to require immediate payment of what remains of the appellant's windfall amount serves both of these aims. That fact — coupled with the appellant's failure to show a demonstrated need for the funds — anchors our conclusion that the district court's requirement of immediate payment was reasonable.

**B**

Contrary to the appellant's importunings, the mere circumstance that the restitution order contains a payment schedule does not demand a different result. [4] When a defendant obtains substantial resources while in prison, section 3664(m)(1)(A)(ii) and section 3664(n), in combination, empower the district court to enforce the defendant's obligation to apply newly emergent funds, constituting substantial resources, toward unpaid restitution immediately, notwithstanding the existence of a payment schedule. See Rand, 924 F.3d at 142-44 (explaining that payment schedule does not function as "shield against collection" and permitting turnover notwithstanding fact that defendant's restitution payments were not to begin, under existing order, until after release from prison).

**\*6** This case illustrates the practical wisdom of such a rule. The payment schedule contained in the initial restitution order

only accounted for funds that the appellant either possessed or was reasonably expected to possess when the order was entered. See 18 U.S.C. § 3664(f)(2) (requiring that restitution order account for defendant's current assets and projected earnings). His later windfall constituted a sudden and unusual infusion of cash that was not anticipated when the district court crafted its initial order. It would, therefore, make no sense to construe the initial order's payment schedule as a bar to the district court's authority (pursuant to sections 3664(m) and (n)) to determine the timing through which the value of the appellant's later-acquired windfall should be applied to restitution.

The appellant's reliance on Hughes, 914 F.3d at 949, and United States v. Martinez, 812 F.3d 1200, 1207 (10th Cir. 2015), is mislaid. Neither of those cases turned on an inmate's receipt of substantial resources. See Hughes, 914 F.3d at 951; Martinez, 812 F.3d at 1203-07.

**C**

We summarize succinctly. Section 3664(m)(1)(A)(ii) authorizes the use of all "available and reasonable means" to enforce restitution. 18 U.S.C. § 3664(m)(1)(A)(ii). When a defendant receives a sudden, unanticipated windfall while in prison, and is required by section 3664(n) to surrender the proceeds, an order requiring the application of those funds to an outstanding restitution obligation is permissible as long as the timing and manner of their application is reasonable. Here, the court's decision to compel the appellant to apply almost the entire balance of his windfall to unpaid restitution without delay was reasonable under the circumstances.

That ends this aspect of the matter. We hold that — under 18 U.S.C. § 3664(m) and (n) — the district court had the authority to order the BOP to turn over the substantial resources garnered by the appellant and remaining in his trust account, so that those funds could be applied immediately to the appellant's outstanding restitution obligation.

**IV**

This leaves the appellant's assertion that the district court overstepped the bounds of its discretion by ordering the turnover of substantial resources without first making certain

antecedent factual findings. That assertion encompasses two independent claims, which we treat separately.

**A**

 **[11]**  We begin with the appellant's claim that the district court was required to assess his financial circumstances before granting the government's turnover motion. In particular, the appellant contends that the court needed to consider the matters limned in 18 U.S.C. § 3664(f)(2)(A)-(C), such as the appellant's assets, projected earnings, and financial obligations. We think not.

By its terms, section 3664(f)(2) only applies when the district court is fashioning its original restitution order. See United States v. Tarnawa, 26 F.4th 720, 724 (5th Cir.), cert. denied, —— U.S. ——, 142 S. Ct. 2887, 213 L.Ed.2d 1101 (2022); Lillard, 935 F.3d at 834-35. The statute's commands have no application to a district court's decision to authorize a turnover under sections 3664(m) and (n).

The text of section 3664(f)(2) leads inexorably to this conclusion. The statute states that it applies "[u]pon [the court's] determination of the amount of restitution owed to each victim." 18 U.S.C. § 3664(f)(2). That determination occurs only once in the lifecycle of a restitution order — and it must be made before the court issues the original restitution order.

To cinch the matter, the statute is framed as a set of instructions regarding the information that the district court must include "in the restitution order." Id. Neither section 3664(f)(2) nor section 3664(n) in any way suggests that those instructions have any application when a court, months or years later, considers whether and to what extent a turnover of substantial resources may be appropriate. Cf. Tarnawa, 26 F.4th at 724-25 (declining to "import" section 3664(f)(2) factors into section 3664(k) because there is no textual link between them).

 **\*7**  **[12]**  The structure of section 3664(n) fortifies this conclusion. Unlike section 3664(f), section 3664(n) does not contain any reference to factors relating to a defendant's financial condition. That omission is critically important, given that courts generally should presume that Congress "acts intentionally when it uses particular language in one section of a statute but omits it in another." Dep't of

Homeland Sec. v. MacLean, 574 U.S. 383, 391, 135 S.Ct. 913, 190 L.Ed.2d 771 (2015); see United States ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28, 35 (1st Cir. 2013). Giving weight to that presumption here, it is conspicuously clear that Congress's decision not to embed in section 3664(n) language directing courts to consider a defendant's financial circumstances was deliberate and that, therefore, Congress did not intend that such factors should inform the turnover calculus.

That is game, set, and match. We hold that the district court did not abuse its discretion by issuing the turnover order without making any findings anent the section 3664(f)(2) factors.

**B**

 **[13]**  Sounding a loosely related theme, the appellant argues that the district court needed to make a different collocation of findings. In his view, the court had to identify and "distinguish[ ]" the source of the funds in his trust account and determine whether those funds could be applied toward restitution before authorizing a turnover.

To put this argument into perspective, we note that a total of $12,280 in funds that fit within the "substantial resources" taxonomy were deposited into the appellant's inmate trust account between November of 2020 and March of 2021. Five months then elapsed before the government moved for a turnover order in August of 2021.

In the nine-month period between the time when the appellant received the first windfall payment and the time when the government moved for a turnover order, the "substantial resources" deposited into the account were comingled with other funds (such as the appellant's prison wages). The appellant contends that this comingling is significant because neither prison wages nor the gradual accumulation thereof trigger the possibility of turnover under sections 3664(m) and (n). See Hughes, 914 F.3d at 951; see also Carson, 55 F.4th at 1057; Kidd, 23 F.4th at 787.

During the same period, money also flowed out of the account: the appellant made expenditures for books, gifts, purchases from the commissary, and other sundries. After accounting for the more than one hundred transactions (including both deposits and withdrawals) that occurred

within this time frame, the account held a balance of $10,956.36. The government's motion sought turnover of that amount.

Seizing upon the fact that his trust account contained a mixture of funds, some of which triggered the possibility of turnover and some of which did not, the appellant argues that — before the district court could order the turnover of a sum of money from the account — it should first have identified the source of that money and restricted any turnover to funds that could specifically be earmarked as "substantial resources." We think that this suggestion overstates the district court's duty.

 **[14]**     **[15]**  Of course, a district court must examine the source or sources of an inmate's account before it may order the turnover of funds contained in that account under sections 3664(m) and (n). See ⚑ Kidd, 23 F.4th at 783-85, 787-88 (vacating turnover when source of funds in inmate's account was "unknown"). If the examination discloses that the account is comprised, wholly or partially, of funds properly characterized as "substantial resources," then that account — up to the total amount of the "substantial resources" — may be targeted in a turnover order. See ⚑ id. at 787. If, however, the examination discloses that the monies in the account consist only of gradually accumulated prison wages or other funds that do not qualify as "substantial resources," section 3664(n) is not implicated and the district court may not enter a turnover order under sections 3664(m) and (n). See ⚑ id.; ⚑ Hughes, 914 F.3d at 951.

 ***8**  **[16]**  In this instance, an examination of the trust account shows that the balance derived from a combination of sources, including the appellant's prison wages. That comingling, the appellant contends, required the district court to conduct additional factfinding to trace the source of every dollar remaining in his trust account and isolate the amount that stemmed from his UNICOR wages. This contention is ill-conceived. Where, as here, a district court finds that funds that constitute substantial resources have been comingled with other funds in a single account, the court should consider whether it is practicable to segregate the amount of money derived from substantial resources.

But money is fungible, see United States v. Rivera-Izquierdo, 850 F.3d 38, 45 n.6 (1st Cir. 2017), and in many cases it will be impossible for the court to make a dollar-by-dollar accounting, tracing individual dollars back to their original

sources, see ⚑ United States v. Ayika, 837 F.3d 460, 472 (5th Cir. 2016) ("[W]hen legitimate money and illegitimate money are placed in the same account, and various withdrawals and other deposits occur over time, there is no method to determine the exact source of any specific dollar or dollars.");

⚑ United States v. Moore, 27 F.3d 969, 976-77 (4th Cir. 1994) (explaining that, once combined, illicitly obtained funds cannot be distinguished from legitimately acquired funds). In that event, the court — under sections 3664(m) and (n) — may order the turnover of any sum of money up to the amount of substantial resources deposited into the account. An important limiting principle is that the district court's turnover order must be in an amount that is reasonable under the circumstances. See 18 U.S.C. § 3664(m)(1)(A)(ii).

The order appealed from satisfies these criteria. Although the court did not expressly consider whether it was practicable to determine how much of the appellant's account balance derived from substantial resources, the record makes pellucid that — given the pervasive comingling — it would have been impossible for the court to segregate the funds that triggered the possibility of turnover from those that did not. Thus, it was sufficient for the court to find — as it did — that the appellant had received substantial resources totaling $12,280, which had been deposited into his trust account. That figure then became the ceiling for a turnover order, and the court's decision to order the immediate turnover of $10,956.36 was reasonable (especially since the reason that the account held less than $12,280 was that the appellant had already spent some of the money).

Given this reasoning, we reject the appellant's claim that additional factfinding was required. Relatedly, we hold that the turnover order was within the ambit of the district court's discretion.

### V

We need go no further. For the reasons elucidated above, the turnover order is

**Affirmed**.

**All Citations**

--- F.4th ----, 2023 WL 3813780

2023 WL 3813780

## Footnotes

1    In the court below, the government asserted that the appellant had paid only $46.82 toward restitution. Record evidence, though, suggests that the government's assertion may have undershot the mark. The apparent discrepancy is not material for present purposes, and we do not attempt to resolve it.

2    The appellant worked in a UNICOR job. "UNICOR is the trade name for Federal Prison Industries, Inc., a government corporation that provides work and training opportunities for federal inmates." United States v. Thompson, 227 F.3d 43, 45 n.4 (2d Cir. 2000); see 28 C.F.R. § 345.11(a). During the period for which the appellant provided data, his monthly prison wages ranged from a low of $23.23 to a high of $138.98.

3    We subsequently affirmed the appellant's conviction and sentence. See United States v. Saemisch, 18 F.4th 50, 66 (1st Cir. 2021). Consequently, this ground of objection has been rendered moot.

4    We assume, without deciding, that the restitution order establishes a payment schedule. The order states that restitution payments "shall be made according to the requirements of the [IFRP]." In turn, the IFRP requires the appellant to remit fifty percent of his monthly wages to restitution. Evidence in the record suggests, though, that the district court may have referred to the IFRP simply to identify the mechanism through which restitution payments were to be made. If that is the case, the default presumption would be that the order does not establish a payment plan. See United States v. Diehl, 848 F.3d 629, 631 (5th Cir. 2017); United States v. Wykoff, 839 F.3d 581, 582 (7th Cir. 2016).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   10