UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DZHOKHAR TSARNAEV | No. 13-CR-10200-GAO |

**DEFENDANT DZHOKHAR TSARNAEV'S RESPONSE
TO THE GOVERNMENT'S STATUS REPORT**

On behalf of Dzhokhar Tsarnaev, we write in response to the government's status report (Dkt. No. 1799), regarding its pending motion to authorize payment from Mr. Tsarnaev's inmate trust account (Dkt. Nos. 1786 and 1791). The government's requested relief remains unwarranted, as intervening factual and legal developments confirm.

1.   With respect to the facts: In September 2022, Mr. Tsarnaev and the Bureau of Prisons agreed upon a financial plan for repayment of Mr. Tsarnaev's restitution obligation. Pursuant to that plan, Mr. Tsarnaev pays $35 per month toward his restitution balance. This rate exceeds the "default" rate of $25 per quarter that this Court, relying on the applicable BOP regulations, contemplated at sentencing. See Mot. Hr'g Tr. (Dkt. No. 1597), at 56–57 ("[I]t's my understanding that under the program there is a minimum assessment of $25 per quarter, and that will be the default for at least the commencement of the collection."); see also 28 C.F.R. § 545.11(b)(1) ("Ordinarily, the minimum payment ... will be $25.00 per quarter."); BOP, Program Statement P5380.08, Inmate Financial Responsibility Program, at § 8(b)(1) (Aug. 15, 2005) (same), available at https://www.bop.gov/policy/progstat/5380_008.pdf. As the records appended to the government's status report reflect, since agreeing to the plan, Mr. Tsarnaev has

1

made 14 monthly payments of approximately $35 each, totaling about $480.[1] Dkt. No. 1799–3, at 14 (payments from October 2022 through January 2024); Dkt. No. 1799–4, at 1 (payments from February 2024 through March 2024). As the government notes, since this Court entered judgment, Mr. Tsarnaev has paid about $2,600 toward the financial penalties imposed at sentencing. Dkt. No. 1799–1, at 1 ¶ 1. Mr. Tsarnaev told this Court two years ago that he "did not object to the amount of restitution imposed, did not appeal any aspect of this Court's restitution order, and has never refused to make a payment due under his BOP financial plan." See Def't Resp. (Dkt. No. 1787), at 6 ¶ 9. That remains true today. Mr. Tsarnaev recognizes his restitution obligation and continues to work toward paying it off.

2.  Since the parties' prior briefing, Mr. Tsarnaev has earned a modest amount (typically, about $15 per month) for working as a sanitation orderly, and he has received periodic small deposits from SAMs-approved sources, primarily his immediate family members. See Dkt. No. 1799–3, at 1–3 (deposits from March 2022 through January 2024); Dkt. No. 1799–4, at (deposits from February 2024 through March 2024). Mr. Tsarnaev has used these funds for only two purposes: (i) paying restitution; and (ii) purchasing BOP-approved commissary items such as allergy medication (not supplied by ADX), sweat clothes needed to do outdoor orderly work (not supplied by ADX), food, and stamps. Mr. Tsarnaev has not sent any money to third parties.

3.  Mr. Tsarnaev continues to receive unsolicited deposits from people whom he has never met. See, e.g., Dkt. No. 1799–3, at 2 (deposits from "Betty Fordyce"). BOP places these funds under administrative hold, and Mr. Tsarnaev has not had access to them. Thus, the

---

[1] BOP is responsible for making withdrawals from Mr. Tsarnaev's inmate trust account and does not notify Mr. Tsarnaev when withdrawals are made, or in what amounts. So Mr. Tsarnaev does not know why BOP made some withdrawals in amounts less than $35 (for example, $33.15 or $27.75, see Dkt. No. 1799–3, at 14), or why, in some months, BOP made no withdrawals.

government's assertion that the "current balance" in Mr. Tsarnaev's inmate trust account is $4,223.86 is again misleading. Dkt. No. 1799, at 3; see Dkt. No. 1787, at 1. Today, Mr. Tsarnaev has access to less than $100. The remainder, including COVID–19 stimulus funds and deposits from non-SAMs-approved sources, has been in BOP's hands for years.

4.   With respect to intervening developments of law: As the government notes, the First Circuit addressed a similar motion for turnover in United States v. Saemisch, 70 F.4th 1 (1st Cir. 2023). But Saemisch, on balance, does not support the government's request. Saemisch addressed 18 U.S.C. § 3664(n), which provides: "If a person obligated to provide restitution ... receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." Saemisch considered a defendant who had received income from three sources: a $10,555 lawsuit settlement; $1,725 in COVID–19 stimulus funds; and prison wages in amounts ranging from $23.23 to $138.98 per month. 70 F.4th at 4 & n.2. Saemisch held that only the settlement and the stimulus funds qualified as "substantial resources" subject to § 3664(n) turnover. See 70 F.4th at 12 (noting that $12,280, the sum of those payments, was "the ceiling for a turnover order").  Saemisch explained that "substantial resources" means "a windfall or sudden financial injection" that "must be considerable in amount, value or worth." Id. at 6 (citations omitted). The First Circuit emphasized that, to be subject to § 3664(n), a deposit must be large, anomalous, and unexpected. See id. at 8 ("a sudden and substantial infusion of cash"); id. at 9 ("a sudden and unusual infusion of cash that was not anticipated when the district court crafted its initial [restitution] order"); id. ("a sudden, unanticipated windfall"). The settlement and the stimulus met that definition, authorizing the turnover of funds up to the total of those deposits. Id. at 6, 12.

5. The defendant's wages, however, were not "substantial resources" and were not subject to turnover. Rather, Saemisch cautioned: "If ... examination discloses that the monies in the account consist only of gradually accumulated prison wages or other funds that do not qualify as 'substantial resources,' section 3664(n) is not implicated and the district court may not enter a turnover order under sections [18 U.S.C.] 3664(m) and (n)." 40 F.4th at 11. Saemisch twice emphasized that only the $12,280 derived from "substantial resources"—the lawsuit settlement and the COVID–19 stimulus funds—fell within § 3664(n)'s scope and were therefore available for turnover. See 40 F.4th at 11 (funds in inmate trust account "up to the total amount of the 'substantial resources' ... may be targeted in a turnover order"); id. at 12 ("substantial resources totaling $12,280 ... became the ceiling for a turnover order").

6. Saemisch's application to this case is straightforward. The only deposit to Mr. Tsarnaev's inmate trust account that ranks as "substantial resources" is the $1,400 COVID–19 stimulus payment that BOP already has placed under administrative hold. See Dkt. No. 1786, at 2 ¶ 6(a); Dkt. No. 1787, at 4 ¶ 5(a). All of the other deposits have been small, gradual, and anticipated. Mr. Tsarnaev's wages range from $5.25 to $15 per month, far less than the $23.23 to $138.98 at issue in Saemisch. Compare Dkt. No. 1799–3, at 1–5 ("Payroll–IPP" deposits from August 2020, when Mr. Tsarnaev began working as an orderly, through January 2024) and Dkt. No. 1799–4, at 1 ("Payroll–IPP" deposits from February 2024 through March 2024) with Saemisch, 70 F.4th at 4 n.2. So too the deposits from individuals. Those from SAMs-approved contacts typically fall in the range of $50–$100—again, lower than the wages excluded from the turnover order in Saemisch—with a handful of $200- or $300 deposits from Mr. Tsarnaev's immediate family. In fact, it appears that the total amount of money he has received from SAMs-approved contacts during his 11 years of incarceration averages a little over $100 per month.

4

These deposits do not rank as the kind of "sudden," "considerable," "unusual," and "unanticipated" "windfalls" that § 3664(n) reaches. See supra ¶ 5.

7. The government implies that Saemisch excludes only Mr. Tsarnaev's wages from turnover. See Dkt. No. 1799–1, at 3 ¶ 9. That is incorrect. Saemisch does exclude Mr. Tsarnaev's wages—not because they are wages, but because they have accumulated in small, periodic amounts that do not constitute "substantial resources" for purposes of § 3664(n). But Saemisch also excludes the individual deposits to Mr. Tsarnaev's inmate trust account that have accumulated in the same way—in small, periodic amounts over a long period of time. Saemisch establishes that any "monies" in an inmate trust account attributable to "gradually accumulated prison wages or other funds that do not qualify as 'substantial resources'" do not "implicate[]" § 3664(n) "and the district court may not enter a turnover order." 40 F.4th at 11.

8. The government's requested relief is therefore unwarranted. The vast majority of the deposits to Mr. Tsarnaev's inmate trust account do not rank as "substantial resources" under § 3664(n) and Saemisch. Moreover, Saemisch does not hold that a district court must order turnover, even of substantial resources, and clarifies that any turnover order must be "reasonable under the circumstances." 40 F.4th at 12 (citing § 3664(m)(1)(A)(ii)). Here, Mr. Tsarnaev is satisfying his restitution obligation just as this Court contemplated that he would. He is making payments "in accordance with the Federal Bureau of Prisons Inmate Financial Responsibility Program." Amended Judgment (Dkt. No. 1618), at 9. Indeed, as this Court envisioned, upon BOP's determination that Mr. Tsarnaev's wages and limited family assistance enabled him to pay more than the "default" of $25 per quarter in the applicable regulation and program statement, Mr. Tsarnaev and BOP agreed to "adjust[]" that rate as "appropriate" to $35 per month. Dkt. No. 1597, at 56–57. He is neither hoarding funds nor spending profligately.

Accordingly, Mr. Tsarnaev respectfully submits that the proper course is to adhere to the payment schedule that this Court set in the amended judgment, with which Mr. Tsarnaev continues to comply in full.

> Respectfully submitted,
>
> DZHOKHAR TSARNAEV
>
> by his attorneys:
>
> /s/ *David Patton*
> David Patton, Esq.
> *Pro Hac Vice*
> 350 5th Avenue, 63rd Floor
> New York, NY 10118
> (212) 763-0883
> DPATTON@KAPLANHECKER.COM

**Certificate of Service**

I certify that this document has been served upon counsel for the United States by electronic mail and ECF on this the 9th day of April 2024, including the following:

AUSA Brendan T. Mockler
1 Courthouse Way, Suite 9200
Boston, MA 02210
Brendan.Mockley@usdoj.gov

/s/ *David Patton*
David Patton, Esq.
*Pro Hac Vice*
350 5th Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
DPATTON@KAPLANHECKER.COM