UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DZHOKHAR TSARNAEV | No. 13-cr-10200-GAO<br><br>PROVISIONALLY FILED UNDER SEAL |

**DEFENDANT DZHOKHAR TSARNAEV'S [PROPOSED] REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECUSAL AND FOR DISCLOSURE**

On behalf of Dzhokhar Tsarnaev, the defense submits this reply to the government's September 17, 2024 response ("Resp."), and in further support of our September 3, 2024 motion for recusal and disclosure ("Mot."). Contrary to the government's argument, this motion is timely. The defense acted with diligence, seeking recusal as soon as the claim was available, and procured no strategic advantage by the timing of this motion. On the merits, Your Honor's public comments about the precise issues presented on remand—in particular, Your Honor's praise for the seated jurors' "remarkable" "public-spiritedness" and confidence that Mr. Tsarnaev received a "fully fair" trial—at the very least "create the appearance of impropriety that [28 U.S.C. §] 455(a) is designed to address." In re Boston's Children First, 244 F.3d 164, 170 (1st Cir. 2001). Pursuant to §§ 455(a) and 455(e) and the Fifth and Eighth Amendments, this Court should recuse, or in the alternative, reserve decision, disclose its public comments about the case and its ex parte communications with the jurors, and allow the defense to supplement this motion.

## ARGUMENT

### I. This Court Should Recuse Itself.

#### A. The Motion Is Timely.

The government argues that this motion is untimely because all of Your Honor's extrajudicial statements "have been publicly available for years." Resp. 4. In the government's

view, even though Your Honor made all of these statements while Mr. Tsarnaev's appeal was pending, the defense should nonetheless "have raised a recusal claim in that appeal or moved this Court to recuse while the appeal was pending." Resp. 1. The government is mistaken.

1. At the outset, the defense could not have raised a recusal claim in the First Circuit on appeal, or in this Court while the appeal was pending. In the Circuit, Mr. Tsarnaev was appealing a judgment, but Your Honor's remarks postdated—and thus offered no grounds to attack—that judgment. See, e.g., United States v. Muriel-Cruz, 412 F.3d 9, 12 (1st Cir. 2005) ("Absent extraordinary circumstances, ... we consult only the record extant at the time the district court rendered its decision."). To be clear, the defense is not arguing that this Court should have recused itself during trial. Rather, the defense is arguing that Your Honor's post-judgment public comments praising the jurors and defending the jury-selection process could now cause a reasonable observer to doubt Your Honor's impartiality on the specific question whether two of the jurors lied during voir dire or were biased against Mr. Tsarnaev. That claim did not materialize until the Circuit ordered the specific remand proceedings now pending.

Moreover, the Circuit's "review" on direct appeal was "limited to the record below." Cipes v. Mikasa, Inc., 439 F.3d 52, 57 (1st Cir. 2006) (citing Fed. R. App. P. 10). See also, e.g., Hurney v. Carver, 602 F.2d 993, 996 (1st Cir. 1979) (declining to consider factual allegations first raised in appellate brief, explaining that "[o]ur scope of review of facts ... is limited to those contained in the district court record"). Fed. R. App. P. 10(a) provides that "the record on appeal" is composed of "the original papers and exhibits filed in the district court," "the transcript of proceedings, if any," and "a certified copy of the docket entries prepared by the district clerk." Thus, in Muriel-Cruz, the Circuit declined to expand the record to include supplemental material not presented to the district court, where that material postdated (and was

thus "immaterial" to) the decision on appeal. 412 F.3d at 12. The government contends that an appellate recusal claim would have been reviewed for plain error (Resp. 5–6), but the government's cases all involved grounds for recusal that arose during district court proceedings, were part of the record, and could have been presented to district judges in the first instance (or to the Circuit on plain error). See, e.g., United States v. Caramadre, 807 F.3d 359, 374 (1st Cir. 2015) (judge's statements in rescript denying motion to withdraw guilty plea); United States v. Reynolds, 646 F.3d 63, 74 (1st Cir. 2011) (judge's presiding at pretrial competency hearing during which defendant made admissions of guilt before presiding at bench trial); United States v. Cruz-Mercado, 360 F.3d 30, 35–36 (1st Cir. 2004) (judge's statements during sentencing and bail revocation hearing). The government cites no case where an appellate court heard a recusal claim challenging a judgment on the basis of events that postdated the judgment and were not part of the record on appeal. That course would have conflicted with First Circuit precedent.

2. Nor could the defense have moved to recuse in this Court because the notice of appeal divested this Court of jurisdiction. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). The government identifies a few out-of-Circuit cases holding that a district court retains authority to recuse itself despite a pending appeal, but the weight of authority is to the contrary. See, e.g., Weiss v. Hunna, 312 F.2d 711, 713 (2d Cir. 1963) (Friendly, J.) (filing of notice of appeal divested district court of jurisdiction to entertain Fed. R. Civ. P. 60(b) motion to vacate judgment on ground that judge should have disqualified

himself).[1] Moreover, § 455(a) concerns recusal in any "proceeding." There was no "proceeding" concerning the jurors before this Court, and so nothing for this Court to be disqualified from. See United States v. Bowens, 291 F. App'x 644, 645 (10th Cir. 2008); United States v. Day, 215 F. App'x 975, 976 (11th Cir. 2007) (both holding that district courts lacked jurisdiction to entertain recusal motions absent pending "proceedings").

3. Moreover, when Your Honor made his public comments, the recusal question was not live. Mr. Tsarnaev's appeal was pending, and it was speculative at best that the case would ever return to Your Honor. By far, the most probable outcomes of the appeal were (i) affirmance, or (ii) remand for a new trial or a new penalty phase, neither of which would have required resolution of the recusal question. If the Circuit affirmed, there would have been no further proceedings before this Court. And if the Circuit remanded for a new trial or a new penalty phase, D. Mass. Local Rule 40.1(*l*)(1) (formerly codified at Local Rule 40.1(k)(1)) would have required reassignment to a new judge: "When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a district judge other than the judge before whom the first trial was held." In the Circuit's first opinion, that is what happened. United States v. Tsarnaev, 968 F.3d 24, 106 (1st Cir. 2020) (vacating death sentences "with directions to hold a new penalty-phase trial consistent with this opinion and with Local Rule 40.1(k)(1)").

When it became clear that recusal was a live issue—that is, when the Circuit did remand for further proceedings concerning the juror misconduct claim—the defense acted with diligence.

---

[1] See also Manookian PLLC v. Burton, 2023 WL 1867456, at *3 (M.D. Tenn. Feb. 9, 2023); Araman v. Real Estate Bd., 2022 U.S. Dist. LEXIS 136516, at *1 (S.D.N.Y. Aug. 1, 2022); Straw v. Dentons US LLP, 2020 WL 4004128, at *1 (S.D.N.Y. July 15, 2020); Mathis v. Goldberg, 2013 WL 4236401, at *1 (D. Md. Aug. 14, 2013); Christian v. United States, 2008 WL 6582216, at *2 (D. Md. March 12, 2008); McCole v. Shannon, 2007 WL 954338, at *5 n.8 (E.D. Pa. March 27, 2007).

Within days of this Court's order scheduling a status conference, we wrote to call this Court's attention to Local Rule 40.1(*l*)(2) and to express our "understanding that the case should be returned to the Clerk for reassignment." DE.1806, at 2. "If this Court is not inclined to refer the case for reassignment," we added, "we wish to advise the Court that we intend to file a separate motion for the Court to recuse itself pursuant to 28 U.S.C. § 455." DE.1806, at 2. The defense took all of these steps before this Court made any rulings on remand, demonstrating that we sought no strategic advantage through timing. See In re United States, 441 F.3d 44, 65 (1st Cir. 2006) (granting mandamus, rejecting district court's ruling that recusal motion was untimely, explaining that timeliness turns on "whether there was a calculated withholding of a recusal motion" or whether motion was "strategic" attempt "to recuse a judge whose rulings have gone against the party") The government does not argue that the timing of the motion was manipulative and identifies no edge that we have attained or prejudice that it has suffered.

For these reasons, each of the government's out-of-Circuit cases (Resp. 4–5) is readily distinguishable. Each involved grounds for recusal known while the case was pending in the district court but not raised until after the movant had lost (or was losing) at trial, so that the motions could be characterized as strategic. See, e.g., United States v. Siegelman, 640 F.3d 1159, 1187–88 (11th Cir. 2011) (rejecting recusal motion that "has all the earmarks of an eleventh-hour ploy based upon [defendant's] dissatisfaction with the jury's verdict and the judge's post-trial rulings," explaining that timing rule's "purpose" is to "'prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge'"); Nat'l Auto Brokers Corp. v. Gen. Motors Corp., 572 F.2d 953, 957–58 (2d Cir. 1978) (rejecting recusal motion made "[a]fter five weeks of trial and at a point when the inadequacy of [movant's] proof

was rapidly becoming apparent"). Here, the basis for recusal did not arise until after entry of judgment and notice of appeal, and the defense gained no strategic edge through delay.

4. Furthermore, the issue of recusal was not ripe until the First Circuit remanded this case to this Court for further proceedings. Until that occurred, there was no reason for any court to decide whether recusal was warranted. The "basic rationale" of ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). "A claim is not ripe ... if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" United States v. Texas, 523 U.S. 296, 300 (1998). Courts ask "whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues,'" mindful that "'delay may see the dissipation of the legal dispute without need for decision.'" Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013). Deciding a recusal issue would therefore have been "premature," Abbot Labs., 387 U.S. at 148, as return of the case to Your Honor was a "contingent future event[]" that "may not [have] occur[red] at all.'" Texas, 523 U.S. at 300. See, e.g., Indus. Network Sys., Inc. v. Armstrong World Health Indus., Inc., 54 F.3d 150, 156 (3d Cir. 1999) (motion to recuse district judge with respect to issue of attorney's fees was "not ripe for review" because there was no matter pertaining to fees before judge); see also, e.g., United States v. Parada, 408 F. App'x 176, 177 (10th Cir. 2011); United States v. Pons, 61 F.3d 914, at *1 (9th Cir. 1995) (table); Bourne v. New Hampshire, 2012 WL 3962759, at *2 (D.N.H. Sept. 11, 2012); United States v. Hendrickson, 2011 WL 1543147, at *2 (E.D. Mich. Apr. 21, 2011) (all deeming recusal motions unripe absent pending proceedings involving actor sought to be recused).

5. Most important, reliance on a dubious time bar to avoid consideration of a substantial recusal question would disserve the interest that § 455(a) is meant to advance: "public confidence in the impartiality of the judicial process." H.R. Rep. 93–1453, 1974 U.S.C.C.A.N. 6351, 6355. Perhaps that is why the government can locate no decision from the First Circuit or this District denying a recusal motion as untimely. In In re United States, 666 F.2d 690, 694 (1st Cir. 1981) (cited at Resp. 3), the Circuit held that a government recusal motion filed before a federal criminal retrial was timely, even though the basis for the motion—the judge's prior "relationships" with several case participants—was "in large outline obvious long before the [first] trial began." The Circuit credited "the prosecutor's position that he had not felt that an earlier motion to disqualify would have been justified by the facts then available to him." Id. And in In re United States, 441 F.3d at 65 (cited at Resp. 3), the Circuit again held a government recusal motion timely, noting that "[a] motion to recuse ... must have a factual foundation; it may take some time to build the foundation." Indeed, even if this motion were untimely (and it is not), this Court would have discretion to reach the merits anyway. See, e.g., United States v. O'Brien, 18 F. Supp. 3d 25, 32 (D. Mass. 2014) ("[B]ecause of the relatively high stakes involved, I am reluctant to deny the motion solely on the grounds that it is untimely. I will therefore proceed to consider the merits."). Finally, § 455(a) is addressed to judges, not litigants. The statute is "automatic, mandatory, and self-executing." United States v. Chantal, 902 F.2d 1018, 1023 (1st Cir. 1990). "In fact, the judge is expected to recuse sua sponte, where necessary, even if no party has requested it." In re Martinez-Catala, 129 F.3d 213, 220 (1st Cir. 1997).

B. This Court's Public Comments Create An Appearance Of Partiality Requiring Recusal.

On multiple occasions over the course of several years, Your Honor "invite[d] trouble" by taking the "very rar[e]" step of speaking to the press and the public about this case while it

was pending on appeal. Boston's Children First, 244 F.3d at 170–71; Mot. 3–7. The government responds that none of Your Honor's statements "constituted a public comment 'on the merits,'" and that all "fell outside the ambit of [Boston's Children First]," so that "none of them violated the constitutional requirement that a judge satisfy the appearance of impartiality." Resp. 2.

The First Circuit remanded this case "to conduct an appropriate investigation of the potential bias suggested by the apparent discrepancies between the answers of Jurors 138 and 286 to the court's inquiries in jury selection and the information contained in their social media communications" and to determine whether "either juror suffered from a disqualifying bias." United States v. Tsarnaev, 96 F.4th 441, 475 (1st Cir. 2024). "If the investigations establish that either juror suffered from a disqualifying bias," vacatur of the death sentence is required. Id. The issues before this Court therefore include whether the jurors: (i) complied with this Court's instructions regarding social media use; (ii) lied during voir dire about their social media activity; or (iii) harbored disqualifying bias against Mr. Tsarnaev, such that the death sentences that each voted to impose must be vacated as fundamentally unfair. With full knowledge of the factual basis for Mr. Tsarnaev's appellate claim—which had been presented to the Court during jury selection, see DE.1100—Your Honor made public comments addressing the "merits" of the precise issues on remand. Regarding the jurors' social media use, Your Honor said that during this trial, he had "heard of no[]" "indication of any breach of duty" by the jurors to "avoid[] extraneous information" on social media and declared: "We ask them to do their duty, and I think they do." Mot. 4. See also Mot. 6 ("[B]y and large my experience has been jurors take their responsibility seriously and ... try to live by those guidelines."). As to their character and honesty, Your Honor appeared to break from his prepared remarks to say: "[T]he public-spiritedness of these jurors was remarkable throughout." Mot. 3. And Your Honor said that Mr.

Tsarnaev "was given what the Sixth Amendment guarantees, a public trial that is fully fair,"—necessarily including a jury of unbiased jurors—such that Your Honor had no "lingering questions or doubts about the Boston Marathon Bombing trial outcome." Mot. 3, 5. The government's effort to explain these remarks proves the point. According to the government, a reasonable observer would have understood the "public-spirited[]" comment as "overall praise for the petit jury." Resp. 12. If so, this reasonable observer could likewise question whether Your Honor could now find that the same "public-spirited[]" jurors who merited effusive "praise" in fact lied in order to impose a death sentence.

In any case, Boston's Children First ordered recusal even though it was "not at all clear that [the district judge] was commenting on the merits," because "the comments were sufficiently open to misinterpretation so as to create the appearance of partiality." 244 F.3d at 168, 170. As the government acknowledges, a violation of Canon 3(A)(6) is not invariably necessary. Resp. 7. The government tries to parry Boston's Children First by invoking the views of the judges who weren't on the panel (Resp. 9), but the actual panel decision is what counts, and it is controlling here. True, recusal is decided on a "case-by-case" basis, but all of the salient facts in Boston's Children First appear here, too. This is a "newsworthy case[] where tensions may be high" and the Marathon bombings were "a matter of significant local concern." Id. at 169. Your Honor, like the district judge in Boston's Children First, took the highly unusual step of speaking several times to the public and the news media about this case during its pendency. "[T]he very rarity of such public statements, and the ease with which they may be avoided, make it more likely that a reasonable person will interpret such statements as evidence of bias." Id. at 170. In addition, Your Honor's comments "may be misinterpreted because of [their] ambiguity." Id. at 170. The government has done its best to characterize these statements as innocuous efforts

to explain court procedures or educate the public. Resp. 2. That reading is inferior to the defense's, but at a minimum, ours is equally plausible, and that suffices to trigger § 455(a). See Boston's Children First, 244 F.3d at 170 ("appearance of partiality" arose from comments that "could easily be characterized as legitimate efforts to explain operative law").

## II. If This Court Does Not Recuse Itself, It Should Disclose All Public Comments That It Has Made About This Case And The Substance Of Any Ex Parte Communications With The Jurors.

The government "has no doubt that the Court would disclose any facts sounding within [§] 455," but nonetheless urges denial of the defense's motion, which is deemed "a speculative request for discovery regarding other possible events in which the Court may have spoken, or other comments it may have made to the jury." Resp. 2, 19. The government's position is incoherent. If the government is confident that this Court "would disclose" any facts relevant to disqualification, then there is no reason to oppose the motion, and likewise no reason for this Court to decline. See Am. Bar Ass'n, Model Code of Judicial Conduct R. 2.11 cmt.5. Moreover, the defense's request is far from "speculative." We know that Your Honor spoke to the public at Boston College Law School on April 6, 2016 and discussed this case, but we do not have evidence of everything that Your Honor said. Mot. 7 n.1. Likewise, we know that Your Honor was scheduled to speak to an audience at the Harvard Club of Boston about "Current Issues Being Presented to the Judiciary for Decision" on November 7, 2017, but we do not have evidence of what Your Honor said. Id. We also know that Your Honor "talk[ed] informally" with the jurors ex parte after the verdict, but aside from "invit[ing]" them to return for sentencing, we do not know what else was said. See Mot. 20 (quoting DE.1476, at 3). Specific requests for disclosure pertaining to known events are the opposite of a "fishing expedition." Resp. 19. They are a good-faith, diligent effort to build an evidentiary record.

## CONCLUSION

This Court should recuse, or in the alternative, reserve decision, disclose its public comments about the case and its ex parte communications with the jurors, and allow the defense to supplement this motion.

Respectfully submitted,

DZHOKHAR TSARNAEV

by his attorneys:

/s/ *Deirdre von Dornum*

Deirdre D. von Dornum, Esq.
Mia Eisner-Grynberg, Esq.
Daniel Habib, Esq.
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 330-1200
deirdre_vondornum@fd.org
mia_eisner-grynberg@fd.org
daniel_habib@fd.org

David Patton, Esq.
*Pro Hac Vice*
350 5th Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
dpatton@heckerfink.com

William Fick, Esq.
Fick & Marx, LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
wfick@fickmarx.com

**Certificate of Service**

I hereby certify that this document will be served by email on counsel for the government on **September 27, 2024.**

/s/ *Deirdre von Dornum*
Deirdre D. von Dornum, Esq.
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 330-1200
deirdre_vondornum@fd.org